# EXHIBIT 5



Not Reported in F.Supp.2d  
2004 WL 2958664 (D.Del.)  
(Cite as: 2004 WL 2958664 (D.Del.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Dannette G. MCLAUGHLIN, Plaintiff,
v.
DIAMOND STATE PORT CORP., Defendant.
**No. C.A.03-617(GMS).**

Dec. 21, 2004.

Laurence V. Cronin, Smith, Katzenstein, & Furlow, Wilmington, DE, for Plaintiff.

Donald E. Reid, Jason A. Cincilla, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Defendants.

*MEMORANDUM*

SLEET, J.

I. INTRODUCTION

*1 Presently before the court is plaintiff Dannette McLaughlin's Motion For Leave To File Her Amended Complaint. (D.I.34.) In McLaughlin's original complaint, filed July 1, 2003, she alleged one count of unlawful gender discrimination in violation of Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000e *et seq.* ("Title VII"), and one count of unequal pay in violation of the Equal Pay Act, 29 U.S.C. § 206 (1998). (D.I.1.) She now seeks to amend by adding a retaliation claim under Title VII, and an equal protection claim under 42 U.S.C. § 1983 (2003). (D.I.34.) Because McLaughlin has unduly delayed her request to amend, and because of the undue prejudice to the defendant that would result from an amendment, McLaughlin's motion will be denied.

II. JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. § 1331 (1993).

III. BACKGROUND

As of the time the complaint was filed, McLaughlin had been a part-time employee of Diamond State Port Corp. ("Diamond State") for six years. (D.I. 1 ¶ 12-13.) From September 2000 through May 2002, McLaughlin applied for various full-time positions with Diamond State. (Id.¶ 18.) However, she was unsuccessful in her bid to become full time and each position for which she applied was eventually filled by a man. (Id.¶ 20.) Although Diamond State proffered nondiscriminatory reasons for not hiring McLaughlin (id.¶ ¶ 21, 26), she has reason to believe gender discrimination to be the true reason (id.¶ ¶ 21-42). As a result, McLaughlin filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("the EEOC") on May 28, 2002. (D.I. 34 Ex. A.) On April 3, 2003, the EEOC issued McLaughlin a right-to-sue letter. (Id.Ex. B.) She then proceeded to file suit against Diamond State and the International Longshoreman's Assoc. on July 1, 2003. [FN1] (D.I.1.) A scheduling conference was held on February 25, 2004 during which the court set the deadline for amendments to the pleadings to be April 30, 2004. The discovery deadline was set at August 31, 2004, and the deadline for case-dispositive motions was set at September 14, 2004. (D.I.17.)

  FN1. International Longshoreman's Assoc. was dismissed as a defendant and only Diamond State remains. (Order of the Court, January 16, 2004.)

On July 29, 2004, McLaughlin signed a second EEOC Charge of Discrimination in which she alleges Diamond State retaliated against her for filing the first discrimination charge by passing her over for promotion. (D.I. 39 Ex. C.) The second charge is based on McLaughlin's assertion that Diamond State supervisor William Stansberry told James Woolford, who told Malik Davidum, who told McLaughlin, that "because [she] put this suit out, that [she'll] never get a job." (McLaughlin Dep. at 165:16-166:6, D.I. 39 Ex. D.) McLaughlin was issued another right-to-sue letter on September 20. (D.I. 34 Ex. D.) In the meantime, on August 30 plaintiff's counsel informed counsel for Diamond State of McLaughlin's intention to amend the complaint to add the retaliation and § 1983 claims:

  Please be advised that plaintiff has filed a new EEOC charge alleging retaliation. As soon as we receive the right to sue, we will be filing a Motion

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to Amend the Complaint. In addition, as discovery has revealed the Port to be a "state actor," we will also be adding a claim under 42 U.S.C. § 1983. I wanted you to be aware of these issues before our Conference with Judge Sleet currently scheduled for September 1, 2004 at 9:00 a.m.

*2 I am on trial this week and will be difficult to reach. Please leave me a message if you have any questions and I will try to return your call before September 1, 2004. Thank you.

(August 30, 2004 Letter from Plaintiff's Attorney to Defendant's Attorney, D.I. 34 Ex. 2.)

Diamond State replied the same day:

I received your letter of today in which you noted that McLaughlin intends to move to amend her complaint to add a claim or [sic] retaliation and a section 1983 claim. You closed your letter by asking that I call if I have any questions. I will do so now. I am writing as well in the event that you are carrying a Blackberry. The schedule entered by the court provides that the time to amend pleadings expired over 4 months ago. Obviously we will oppose any effort on the of [sic] McLaughlin to amend her pleadings to add additional, baseless claims. In all events, if you intend to raise this issue with the Court in any substantive manner at the September 1 teleconference, please send me a detailed email identifying what exactly you intend to present so that I can be prepared to respond.

(August 30, 2004 Email from Defendant's Attorney to Plaintiff's Attorney, D.I. 41 Ex. C.)

The teleconference referenced in the above correspondence actually took place on September 3, and resulted in a revised scheduling order. In particular, the court acceded to the parties' requests to move the discovery deadline to October 1 and the deadline for case-dispositive motions to October 18. (D.I.26.) No mention of McLaughlin's desire to amend her complaint was made to the court by either party.

Pursuant to the amended scheduling order, McLaughlin was deposed on September 28. At her deposition, counsel for Diamond State requested a copy of the second EEOC Charge. (D.I. 41 at 8-9.) It was provided on October 8, along with an offer to make McLaughlin available for another deposition. (Id.Ex. A.) According to McLaughlin, Diamond State declined to re-depose her. (Id. at 9.) McLaughlin filed the present motion on October 14 (D.I.34), and Diamond State filed a motion for summary judgment as to the claims in the original complaint on October 18 (D.I.36.)

A pre-trial conference in this case is scheduled for January 5, 2005, and trial is scheduled for January 24, 2005.

IV. DISCUSSION

Bearing in mind that leave to amend a pleading is to "be freely given," Fed.R.Civ.P. 15(a), it is within the discretion of the court to deny leave where a party will be substantially or unduly prejudiced, or where the court finds "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment," Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir.1993).

As to McLaughlin's § 1983 claim, the court is truly at a loss as to how it escaped counsel for McLaughlin that Diamond State is a state actor. Diamond State correctly points out that McLaughlin should have been alerted to this fact by the reference to Del.Code Ann., tit. 29, § 8735(a) (2003), in Diamond State's answer, filed on July 15, 2003 (D.I. 4 ¶ 3). Section 8735(a) states:

*3 There shall be established within the Department of State a body corporate and politic, with corporate succession, constituting a public instrumentality of the State, and created for the purpose of exercising essential governmental functions which is to be known as the "Diamond State Port Corporation."

Thus, McLaughlin should have discovered Diamond State's status as a state actor as soon as counsel read the answer and did even cursory research as to its substance. Either this research did not happen, or counsel did not realize the potential for a § 1983 claim. Moreover, the court finds it difficult to believe McLaughlin worked for Diamond State for six years without knowing it is an arm of the State of Delaware. It is noteworthy that McLaughlin's submissions are conspicuously vague in outlining the reasons for this oversight. The only concrete explanation for delay the court can discern from the briefs is that McLaughlin "delayed raising the § 1983[sic] until the retaliation claim had perfected in order to avoid a multiplicity of amendment motions." (D.I. 41 at 10.) Yet McLaughlin did not sign her second EEOC complaint until July 29, 2004, which was over one year after she was put on notice of Diamond State's status as a state actor. The court doubts counsel really thought it was proper to sit idly on its § 1983 claim for over a year (allowing the deadline for amendments to pass) in anticipation of a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

retaliation claim. Therefore, the court accords very little weight to McLaughlin's justification for the extraordinary delay in seeking to add the § 1983 claim.

As to the retaliation claim, the court is sympathetic to the plight of the employee who is retaliated against by her employer after the deadline for amendments to the pleadings has passed. Indeed, had McLaughlin's counsel raised the amendment issue at the September 3 teleconference, the court would have given it serious consideration (especially since the whole purpose of the teleconference was to amend the scheduling order). Instead, counsel chose to be inconsiderate of the court's time and burden it with lengthy, eleventh-hour briefing on an issue that could have been disposed at the teleconference with relative ease. Furthermore, counsel offers no excuse for this failure other than to say the defendant requested the issue not be brought up at the teleconference. Based on the defendant's email of August 30, Diamond State merely requested details of the proposed amendment in order to properly prepare his response for the teleconference. Certainly, this was not an unreasonable request. Counsel for McLaughlin argues that such a request was, in fact, unreasonable because counsel for the defendant knew counsel for the plaintiff was on trial and would be unable to respond to a request for details. (D.I. 41 at 9.) In other words, McLaughlin's counsel sprung notification of amendment on Diamond State on the eve of the teleconference, and then condemns Diamond State for not accommodating counsel's busy trial schedule. It goes without saying that McLaughlin's position is untenable. Even further undermining her argument is the fact that the teleconference was actually delayed by two days (from September 1 to September 3), giving McLaughlin ample opportunity to fulfill Diamond State's request for details.

*4 McLaughlin also argues that delay was necessary because she needed to receive a right-to-sue letter before seeking to amend. (Id. at 8.) However, McLaughlin fails to account for the fact that she could have sought leave to amend *before* the end of discovery. She received her right-to-sue letter on September 20, which was eight days before her own deposition and ten days before the end of discovery. Knowing of the impending deadlines, McLaughlin should have been fully prepared to file her motion to amend immediately upon receiving the letter. Instead she delayed until October 14, just two business days before the deadline for case-dispositive motions.

Another explanation is offered in a footnote:
> Plaintiff notes as well that much of the evidence of retaliation was not developed until very recently, after defendant first withheld and then provide [sic] documents and required that plaintiff return to depose a witness about issues on which Defendant prohibited discovery in prior depositions. See, Markow deposition (Affidavit of Laurence V. Cronin ("Cronin Aff.") at Ex. B). Indeed, it was not until Stansbury's deposition in September that defendant finally acknowledged that there had been promotions subsequent to the EEOC charge being filed, having failed to provide any documentation regarding those promotions and assured counsel that there was none. See Stansbury deposition (Cronin Aff. at Ex. D).

(D.I. 41 at 1 n. 2.) This explanation is inadequate for two reasons. First and foremost, McLaughlin obviously had enough information to file a charge with the EEOC in July 2004. Thus, it was not a discovery problem that prevented her from seeking to amend her complaint. Second, the above footnote asks the court to draw inferences from three deposition transcripts with no pinpoint cites. The two Markow depositions total 220 pages and the Stansbury deposition is 137 pages. Counsel once again shows its disregard for the court's time by asking it to sift through 357 pages of testimony to find evidence of dilatory tactics. It is counsel's responsibility to point the court to relevant evidence. Consequently, the court does not accept McLaughlin's explanation for the delay in seeking to add her retaliation claim.

Another consideration in deciding whether to permit an amendment is prejudice to the defendant. Although Diamond State does not explicitly argue this point, the court finds implicit prejudice. The purpose of a scheduling order is to provide concrete deadlines on which the parties can rely in planning their respective litigation strategies. If the court were to permit parties to ignore these deadlines, unfair surprise would abound.

In this case, briefing on McLaughlin's motion was completed on November 1. Even if the court would have decided the motion that day, Diamond State would have required time to file another answer. Additionally, it is quite likely that more discovery would have been necessary. [FN2] With the schedule now so compressed, it is likely that the filing of dispositive motions would have been precluded by the court or the time for trial postponed. Clearly, the loss to the defendant of the opportunity to achieve summary disposition of the matter or the delay

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2004 WL 2958664 (D.Del.)  
**(Cite as: 2004 WL 2958664 (D.Del.))**

Page 4

resulting from an accommodation of the plaintiff's request to amend would be prejudicial to Diamond State.

> FN2. McLaughlin disagrees that more discovery would be necessary. She is clearly mistaken. For instance, her main piece of retaliation evidence is at least double hearsay. Although Stansbury's statement may be non-hearsay as an admission of a party opponent, Fed.R.Evid. 801(d)(2), the statement would only become admissible if Woolford testified, or if there were an applicable exception for Woolford's recital of Stansbury's statement to Davidum and for Davidum's recital of Woolford's statement to McLaughlin. Thus, it seems most likely that Woolford would need to be deposed.

V. CONCLUSION

*5 Since McLaughlin does not adequately explain the prolonged delay in filing her motion to amend, and since permitting such an amendment would impose undue prejudice on Diamond State, the court will deny her motion.

ORDER

IT IS HEREBY ORDERED that:

The plaintiff's Motion For Leave To File Her Amended Complaint (D.I. 34) be DENIED.

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV00617 (Docket) (Jul. 01, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 6



Slip Copy
2005 WL 1397217 (E.D.Pa.)
(Cite as: 2005 WL 1397217 (E.D.Pa.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
John S. RIZZO, Plaintiff
v.
PPL SERVICE CORPORATION, Defendant
Gregory GORSKY, Plaintiff
v.
PPL SERVICE CORPORATION, Defendant
Kim GORSKY, Plaintiff
v.
PPL SERVICE CORPORATION, Defendant
No. Civ.A. 03-5779, Civ.A. 03-5780, Civ.A. 03-5781.

June 10, 2005.

Donald P. Russo, Donald P. Russo, Esquire, Bethlehem, PA, for Plaintiff.

Malcolm J. Gross, Gross, McGinley, Labarre & Eaton, LLP, Allentown, PA, Daniel R. Halem, Peter Rahbar, Proskauer Rose, LLP, New York, NY, for Defendant.

*MEMORANDUM*

PRATTER, J.

*1 Plaintiffs in these three related matters filed a Joint Motion for Reconsideration on April 25, 2005 following the Court's grant of summary judgment to Defendant PPL Service Corporation ("PPL") in all three matters on April 19, 2005. Plaintiffs make four arguments in their Joint Motion. First, they contend that the Court erred by not examining the circumstantial evidence of discrimination under a mixed motive standard. Second, Plaintiffs claim that they should be granted leave to amend their complaints to advance the theory of disparate impact and to take limited discovery under the new theory of liability. Third, Plaintiffs argue that the Court inappropriately relied on PPL's Corporate Policy that is dated April 11, 2001, while the punitive employment actions taken against Plaintiffs occurred in February of 2001. Finally, the Joint Motion includes the argument that the Court erred in holding that Plaintiffs had proffered no evidence that PPL has a progressive discipline policy.

PPL filed a Memorandum of Law in Opposition to the Joint Motion on May 9, 2005. In response to PPL's Memorandum of Law, Plaintiffs filed a Joint Motion Seeking Leave of Court to File a Memorandum of Law in Reply [FN1] to which PPL filed a response.

> FN1. The Court grants this Motion and has considered the arguments made in both Plaintiffs' Memorandum of Law in Reply and PPL's Surreply in Opposition.

For the reasons discussed below, the Court denies the Joint Motion for Reconsideration.

I. *STANDARD OF REVIEW*

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). A court should grant a motion for reconsideration "only if the moving party establishes one of three grounds: (1) there is newly available evidence; (2) an intervening change in the controlling law; or (3) there is a need to correct a clear error of law or prevent manifest injustice." *Drake v. Steamfitters Local Union No. 420,* No. 97-585, 1998 WL 564486, at *3 (E.D.Pa. Sept.3, 1998) (citing *Smith v. City of Chester,* 155 F.R.D. 95, 96-97 (E.D.Pa.1994)). "Because federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly." *Continental Casualty Co. v. Diversified Industries, Inc.,* 884 F.Supp. 937, 943 (E.D.Pa.1995). The moving party must show more than mere disappointment with the Court's ruling for reconsideration to be granted. *Burger King Corp. v. New England Hood and Duct Cleaning Co.,* 2000 WL 133756, at *2 (E.D.Pa. Feb.4, 2000); *Glendon Energy Co. v. Borough of Glendon,* 836 F.Supp. 1109, 1122 (E.D.Pa.1993).

II. *DISCUSSION*

At the outset, the Court observes that none of the grounds contained in the Joint Motion for Reconsideration relate to Plaintiff Kim Gorsky's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

complaint or the basis on which summary judgment was granted against her. As to Ms. Gorsky's claim, the Court held that summary judgment was proper due to Ms. Gorsky's failure to produce evidence that she suffered an adverse employment action. Even if the Court were to accept all of the arguments in the Joint Motion for Reconsideration, there would be no basis to reconsider the finding that Ms. Gorsky had not suffered an adverse employment action and, thus, had not established a *prima facie* case of discrimination. Therefore, for purposes of the remainder of this Memorandum, reference to "Plaintiffs" means Plaintiffs Gregory Gorsky and John Rizzo.

A. *Circumstantial Evidence of Discrimination Using Mixed Motives Standard*

*2 Plaintiffs contend that the traditional *McDonnell-Douglas* model that the Court applied in this case has been modified by *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), to allow plaintiffs to demonstrate discrimination by showing it was "a motivating factor" for an employment-related action, not necessarily the only factor. *Desert Palace*, 539 U.S. at 92-94; *see also, Lloyd v. City of Bethlehem*, 2004 WL 540452, at *3 (E.D.Pa. Mar.3, 2004); *Campetti v. Career Educ. Corp.*, 2003 WL 21961438, at *7 (E.D.Pa. June 25, 2003). Plaintiffs then argue that "[h]ad the Court applied a mixed motives analysis in the case at bar, it would have become evident that one of the Defendant's motivating reasons for the investigation of a very small group of older employees may have been to rid itself of older workers." (Pls .' Jt. Motion for Reconsideration, at 4).

PPL responds to this argument by noting initially that the *Desert Palace* reasoning has not been formally applied to ADEA claims, such as those at issue in these cases. PPL further argues that, even if circumstantial evidence is permissible to show a mixed motive, the Court has already ruled on this issue by finding that "neither Mr. Gorsky nor Mr. Rizzo have produced evidence that age was a factor in any manner in PPL's decision to terminate their employment." Further, PPL contends that Plaintiffs have not demonstrated any "manifest error of law or fact" that would require the Court to reconsider the original decision.

The "mixed-motives" test was originally described in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Under this test, the plaintiff has the initial burden to demonstrate that the adverse employment action was "the result of mixed motives (i.e. that it is the 'result of multiple factors, at least one of which is illegitimate' and the illegitimate factor played 'a motivating part' in the adverse decision)." *Watson v. Southeastern Pa. Transp. Auth.*, 207 F.3d 207, 215 (3d Cir.2000) (quoting *Price Waterhouse*, 490 U.S. at 244-45). If the plaintiff satisfies this initial burden, "the burden shifts to the employer to persuade the jury by a preponderance of the evidence that it would have reached the same decision even if the protected trait had not been considered." *Id*. In *Desert Palace*, the Supreme Court found that, in a Title VII discrimination case, either direct or circumstantial evidence can be used to satisfy the plaintiff's burden to show a "mixed-motive." *Desert Palace*, 539 U.S. at 100. However, the Court of Appeal for the Third Circuit in *Monaco v. American Gen. Assurance Co.*, 359 F.3d 296 (3d Cir.2004), held that direct evidence was still required in ADEA cases to show "mixed-motive" without any discussion of *Desert Palace*. *Monaco*, 359 F.3d at 300.

The Court finds that neither the circumstantial evidence nor the direct evidence presented by Plaintiffs satisfied their initial burden of demonstrating that PPL's motivations in the termination of Messrs. Gorsky and Rizzo were illegitimate. Therefore, the Court has no reason to decide whether Plaintiffs could have satisfied their burden by presenting circumstantial evidence. As stated in the earlier Memoranda and Orders, after examining all evidence tendered to the Court, including circumstantial and direct evidence, the Court found that no genuine issue of material fact exists to support an inference of any discrimination. Plaintiffs simply have failed to produce any evidence showing that discrimination was a factor, let alone a motivating factor, in the termination of Messrs. Gorsky and Rizzo.

B. *Leave to Amend Complaint to Include Disparate Impact Claim*

*3 Plaintiffs note that the recent Supreme Court opinion in *Smith v. City of Jackson*, --- U.S. ----, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005), recognizes a plaintiff's right to bring a disparate impact claim under the ADEA. Therefore, Plaintiffs request leave to file an Amended Complaint and to reopen discovery for the limited purpose of pursuing the alleged disparate impact claim. Plaintiffs argue that leave to amend should be granted, according to Rule 15(a) of the Federal Rules of Civil Procedure, "when justice so requires," and the burden is generally on

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the non-moving party to demonstrate why leave to amend should not be granted. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In fact, a court should generally allow amendment of a complaint "absent undue or substantial prejudice ... unless 'denial [can] be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." ' *Lundy v. Adamar of New Jersey, Inc.,* 34 F.3d 1173, 1196 (3d Cir.1994) (quoting *Bechtel v. Robinson,* 886 F.2d 644, 652-53 (3d Cir.1989)). As to the reopening of discovery, Plaintiffs specifically request the opportunity to perform statistical analysis to determine if the investigation at issue did target a disproportionate number of over forty-year-old employees and to determine the average age of the PPL's employees. [FN2]

> FN2. In the Court's earlier Memoranda and Opinion, at page 17, reference is made to "the demonstrable fact that the average age of PPL employees is 46 years old" as one of the points raised by PPL to demonstrate that the investigation affected predominantly older people. Plaintiffs correctly have noted that this age was provided by counsel for PPL during oral argument and is not evidence. However, the Court did not rely on this number as evidence, but merely was a reference point for discussing PPL's arguments in their brief and at oral argument. Further, Plaintiffs may wish to review the earlier Memoranda and Opinions, as the Court rejected PPL's argument in this regard.

PPL argues that leave to amend a complaint after summary judgment has been granted makes "the interests in judicial economy and finality of litigation ... particularly compelling." *Beverly v. Desmond Hotel & Conference Ctr.,* 2004 WL 632707, at *4 n. 2 (E.D.Pa. Feb.25, 2004). PPL further contends that Plaintiffs have not offered any legitimate reason for having delayed in requesting leave to amend. PPL asserts that the *Smith v. City of Jackson* opinion did not change the law of the Third Circuit, where the Court of Appeals had not specifically precluded disparate impact claims in ADEA claims prior to the *Smith* opinion. *See Massarsky v. Gen. Motors Corp.,* 706 F.2d 111, 121 (3d Cir.1983). Further, PPL argues that *Smith* was issued on March 30, 2005 and Plaintiffs, who was aware of the *Smith* opinion, did not seek leave to amend their complaint until nearly a month later and after the Court had issued an order granting summary judgment. Finally, PPL contends that granting leave would be highly prejudicial to PPL, because PPL would need to do additional burdensome and expensive discovery after many years and after completing extensive discovery already in these matters.

In *Foman v. Davis,* the Supreme Court clarified the role of the district court in deciding whether to grant such leave:

> In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*4 *Foman,* 371 U.S. at 182.

After consideration of Plaintiffs' request and with full recognition of the principle that generally leave should be granted, the Court declines to grant leave in any of these caes for the filing of an amended complaint.

The Court finds that three of the reasons enumerated in *Foman* apply here and supply compelling grounds for denying the requested leave to amend. First, the Court finds that Plaintiffs' delay in requesting leave to amend the complaints was undue. Prior to the Court's grant of summary judgment, Messrs. Gorsky and Rizzo were aware of the *Smith* decision. Nonetheless, Messrs. Gorsky and Rizzo did not request leave to amend their complaints at that time, but only made such a request after the Court had granted summary judgment against them. Although it may well be, as PPL suggests, that the law in the Third Circuit was such that Plaintiffs could have originally alleged disparate impact claims, it is clear that, once *Smith* was issued on March 30, 2005, a plaintiff would not have had to deal with any ambiguity and could have filed a disparate impact claim under the ADEA. These Plaintiffs simply failed to request leave to amend their complaint in a prompt manner and have not presented any reason for that delay. As a result, both PPL and the Court have expended resources in connection with the summary judgment motion.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Reopening this matter via amended pleadings to advance new theories would result in undue prejudice to PPL. The Court has little doubt that all parties have expended a great deal of time, resources, and energy in these matters. To reopen them now would not only require PPL to expend even more time, resources, and energy, but, at this extremely late stage, also requires all parties and witnesses to try to recall events and dates now several years in the past.

Finally, the Court finds that disparate impact claims by these Plaintiffs are futile, because the proposed Amended Complaints and the evidence do not support a disparate impact claim. In *Smith,* the Supreme Court held "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is 'responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." ' *Smith, 125 S.Ct. at 1545* (quoting *Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 656, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)* (quoting *Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)*)). In *Smith,* the Supreme Court found that a pay plan that was "relatively less generous to older workers than to younger workers" did not disparately impact the older workers because "the plan was based on reasonable factors other than age." *Id.* The test established by the Supreme Court is not whether "there may have been other reasonable ways" to accomplish a goal, but whether the method used was reasonable. *Id.* at 1546.

*5 In these cases, Messrs. Gorsky and Rizzo rely solely on the assertion that because the internal PPL investigation that resulted in their termination included mostly older employees, it had a disparate impact on older employees. Further, Plaintiffs contend that PPL should have had a larger investigation that did not "target" older workers. Although Plaintiffs' proposal may be a reasonable method for PPL to achieve the goal of preventing misuse of its email services and ensuring that offensive material is not displayed on its computers, the Court finds that the method used by PPL, namely tracking certain inappropriate emails and investigating the distributors and recipients of those emails, was reasonable (and effective). Even if Plaintiffs were to produce evidence that the investigation affected older employees at a disproportionate rate, the Court finds that Plaintiffs cannot show that the investigation was a specific employment practice that illegally disparately impacted older employees.

Any of the individual reasons discussed alone may have been sufficient to overcome the prejudice in favor of granting leave to amend where possible, but all of the foregoing reasons combined lead the Court to the conclusion that allowing leave in this situation would be an unwarranted disservice to the parties and the Court.

C. *Date of Corporate Policy No. 405*

Plaintiffs argue that Corporate Policy No. 405, which prohibited non-business use of email, was dated April 11, 2001. Further, even if PPL's statement that the actual date the Corporate Policy was issued was November 8, 2000, the investigation at issue began in September of 2000. Therefore, Plaintiffs contend that this Policy was not available to them at the time of the investigation and their eventual termination. In other words, Plaintiffs contend that the Court evaluated Plaintiffs' conduct by using a PPL standard that was not even in effect at the time.

The Court is willing to consider, taking the evidence in the light most favorable to Plaintiffs and making all inferences in favor of Plaintiffs, that Corporate Policy No. 405 may not have been available to Plaintiffs at the time of the investigation. However, the Court finds that the removal of Corporate Policy No. 405 from evidence presented here does not have any impact on the Court's granting of summary judgment in favor of PPL. Corporate Policy No. 405 simply stated that "the use of company e-mail or internet [was] for only business purposes." The PPL Standards of Conduct and Integrity states substantially the same policy. Further, both Mr. Gorsky and Mr. Rizzo admitted that they were aware that the PPL email facility was intended for only business purposes. (Greg Gorsky Deposition Transcript, at 37-38, 56-58, 61-62, 70-71; John Rizzo Deposition Transcript, at 32-33, 35, 48-49, 51). Therefore, the Court finds that the mention of Corporate Policy No. 405 in the Memoranda and Orders granting summary judgment was not a "manifest injustice," and did not control the outcome of the Court's decision granting summary judgment in favor of PPL.

D. *Progressive Discipline Policy*

*6 Plaintiffs argue that the Court erred by finding that there was no evidence of a progressive discipline policy. Plaintiffs assert that the "Responsible

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Behavior Program," which lists various levels of discipline, is a progressive discipline policy. Additionally, Plaintiffs now proffer PPL's answer from an interrogatory in another, unrelated, litigtation in which PPL answers the question "Does [PPL] have a progressive discipline policy? If so, how and when was the progressive discipline policy applied to Plaintiff prior to his termination?" by stating "Yes. Consistent with PPL's Responsible Behavior Program, which permits termination as the first step under certain circumstances...."

PPL argues that Plaintiffs are merely attempting to relitigate an issue that has already been decided by the Court. Further, PPL contends that the evidence, in these cases, clearly shows that the PPL Responsible Behavior Program was not a "progressive discipline policy," as Plaintiffs try to characterize it, because, although it contains five levels of discipline, the Program does not mandate that the steps be utilized progressively, i.e. the least drastic step used as a first effort of discipline. Further, PPL asserts that the interrogatory answer provided by Plaintiffs should not be considered by the Court now because it was information available to Plaintiffs prior to the Court's granting summary judgment and Plaintiffs failed to produce it for the Court's consideration at that time.

The Court declines to speculate as to the meaning of an interrogatory answer in an unrelated case. If Plaintiffs wanted the Court to consider that material here, they should have made it part of the record here in a timely fashion. They did not. The Court found that there was no evidence that PPL had a "progressive" disciplinary policy that precluded PPL's termination of these Plaintiffs in response to their email abuses and infractions. Nothing presented by Plaintiffs has convinced the Court that the earlier conclusion was erroneous.

III. *CONCLUSION*

For the foregoing reasons, the Court denies the Plaintiffs' Motion for Reconsideration. An Order to be entered consistent with this Memorandum follows.

AND NOW, this 10th day of June, 2005, upon consideration of the Plaintiff Kim Gorsky's Motion for Reconsideration (Docket No. 33), Ms. Gorsky's Memorandum of Law (Docket No. 34), Defendant PPL Service Corporation's Response in Opposition (Docket No. 35), Ms. Gorsky's Motion for Leave to File Memorandum of Law in Reply (Docket No. 36) and the accompanying Memorandum of Law, and PPL's Reply to Response to Motion (Docket No. 37),

it is hereby ORDERED that:

1. Plaintiff Kim Gorsky's Motion for Leave to File Memorandum of Law in Reply is GRANTED; and

2. Plaintiff Kim Gorsky's Motion for Reconsideration is DENIED.

2005 WL 1397217 (E.D.Pa.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 7

Westlaw.

Slip Copy                                                                                                          Page 1
2005 WL 1213884 (E.D.Pa.)
(Cite as: 2005 WL 1213884 (E.D.Pa.))

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
UNIVERSAL COMPUTER CONSULTING, INC., et al., Plaintiffs,
v.
PITCAIRN ENTERPRISES, INC., et al., Defendants.
**No. Civ.A. 03-2398.**

May 18, 2005.

James G. Wiles, Yardley, PA, for Plaintiffs.

Robert J. Lohr, II, The Law Offices of Robert J. Lohr, II, West Chester, PA, Jayson R. Wolfgang, Buchanan Ingersoll P.C., Harrisburg, PA, for Defendants.

MEMORANDUM AND ORDER

SCHILLER, J.

*1 Plaintiffs Universal Computer Consulting, Inc. and Universal Computer Maintenance, Inc. bring this action against Defendants Kean Company, Kean Pitcairn, Kris Pitcairn, Pitcairn Enterprises, Inc. ("PE"), and 1862 Lincoln Highway Associates, L.P. ("1862 Associates") for fraudulent conduct in connection with an asset sale. The Complaint currently contains two counts: (1) equitable fraud; and (2) violation of the Uniform Fraudulent Transfers Act. [FN1] Plaintiffs now move for leave to amend the Complaint to add five new counts and an additional defendant. Because Plaintiffs have unduly delayed seeking amendment, and because allowing amendment at this late stage would substantially prejudice Defendants, Plaintiffs' motion is denied.

> FN1. On February 23, 2004, the Court dismissed Plaintiffs' claims for unjust enrichment and tortious interference with contract. (Mem. & Order of Feb. 23, 2004 at 12-16 [hereinafter "Feb. 23 Order"].)

I. BACKGROUND

This case arises from an asset sale allegedly designed to frustrate Plaintiffs' attempt to collect on a judgment. Plaintiffs are Texas corporations that design and install inventory and spare parts control systems, including hardware and software, for car dealers. (*See* Feb. 23 Order at 3.) In 1989, Plaintiffs entered into a series of computer services contracts with PE, a Pennsylvania corporation doing business as "Rcairn Motorcars." (*Id.*) Kean Pitcairn is currently the president and sole shareholder of PE; prior to 2002, Kris Pitcairn, Kean Pitcairn's wife, owned 80% of PE. (Compl. ¶¶ 10-11; Ans. of Defs. Kean Co., Kean Pitcairn, Kris Pitcairn & PE [hereinafter "PE's Ans."] ¶¶ 10-11.)

In 2000, pursuant to a contractual provision requiring arbitration of the parties' disputes, Plaintiffs commenced an American Arbitration Association arbitration against PE in Houston, Texas for various breaches of the computer services contracts. (Feb. 23 Order at 3-4.) In August 2001, the arbitration panel issued an opinion and award in favor of Plaintiffs. (*Id.* at 4.) On April 16, 2002, the United States District Court for the Southern District of Texas confirmed that award and entered a judgment in favor of Plaintiffs and against PE. (*Id.* at 5.)

Thereafter, PE prepared and circulated a bid package for the sale of its assets. (Compl. ¶ 43; PE's Ans. ¶ 46.) On August 5, 2002, PE sold substantially all of its assets to non-party R & S Imports, Ltd. ("Buyer") for a total price of $8.322 million. (Compl. ¶¶ 45, 50, 48[sic]; PE's Ans. ¶¶ 48, 52, 54.) Plaintiffs, despite the arbitration award and judgment in their favor, did not receive any of the $8.322 million purchase price. Instead, a portion of this money was distributed to Torrance Pitcairn, Kean Pitcairn's brother, and to 1862 Associates, a company in which Kean Pitcairn is alleged to have a partnership interest. (Feb. 23 Order at 6-7.) Plaintiffs also allege that, at the asset sale, Buyer and PE entered into a real estate sublease, under which PE had the right to receive a $43,000.00 payment. (*Id.* at 7.) Plaintiffs contend that PE assigned this right to Kean Company, a corporation wholly owned by Kean and Kris Pitcairn, without receiving any consideration for the assignment. (*Id.*) Finally, Plaintiffs aver that, since the asset sale, Kean Pitcairn has transferred $700,000.00 to his personal trust and to Kris Pitcairn, even though neither is a secured creditor of PE. (*Id.* at 6.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 1213884 (E.D.Pa.)
(Cite as: 2005 WL 1213884 (E.D.Pa.))

Page 2

*2 On August 31, 2002, Plaintiffs transferred the federal district court's judgment to the Court of Common Pleas for Bucks County and filed a writ of execution. (*Id.* at 5.) Though the parties dispute the precise value of the judgment recorded on that date, they agree that the judgment is valued at over $500,000.00. (Compl. ¶ 9; PE's Ans. ¶ 9.) On November 27, 2002, Plaintiffs filed a petition for supplemental relief in aid of execution in the Court of Common Pleas, which was denied on December 23, 2002. (Feb. 23 Order at 5.) On March 4, 2003, Plaintiffs filed a motion to correct judgment, a petition for hearing on all pending motions, and a motion to modify the December 23, 2003 Order, all of which were denied on March 19, 2003. (*Id.*) On April 21, 2003, Plaintiffs commenced the instant action, seeking a constructive trust upon the unsecured proceeds of PE's asset sale, as well as punitive damages.

II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint shall be freely given when justice so requires. Fed. R. Civ. P. 15(a) (2005). Nevertheless, amendment may be inappropriate where the underlying circumstances show "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of the amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Third Circuit has emphasized that, of these considerations, prejudice to the non-moving party is the touchstone for the denial of an amendment. *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir.1989). Moreover, "the moving party bears the burden of proof in explaining the reasons for delay in seeking leave to amend." *Tarkett v. Congoleum Corp.,* 144 F.R.D. 289, 290 (E.D.Pa.1992) (citing *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 70 (2d Cir.1990)). Ultimately, a motion for leave to amend a complaint is addressed to the sound discretion of the district court. *See, e.g., Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1212 (3d Cir.1984).

III. DISCUSSION

Plaintiffs filed their motion for leave to amend on September 29, 2004, over seventeen months after the commencement of this action and just two days before the close of discovery. (*See* Scheduling Order of May 20, 2004 (setting discovery deadline of Oct. 1, 2004).) The motion proposes: (1) adding a count against Defendants PE, Kean Pitcairn, Kris Pitcairn, and Kean Company for breach of fiduciary duty; (2) adding a count against Defendant Kean Pitcairn based on the "participation doctrine"; (3) dismissing the primary liability claims against Defendant 1862 Associates; (4) adding three counts against Defendant 1862 Associates for secondary liability (i.e., conspiracy, aiding and abetting, and equitable subordination); and (5) adding Torrance Pitcairn, Kean Pitcairn's brother, as a defendant on the new secondary liability claims. (Pls.' Mot. at 1-2.)

*3 Plaintiffs assert that their proposed amendments should be allowed because they are based on newly discovered evidence. Specifically, Plaintiffs claim to have recently learned that PE was insolvent from 2000-2002 and that, during this time, Torrance Pitcairn, 1862 Associates, and Kean Pitcairn loaned money to PE. (Pls.' Mem. of Law in Supp. of Mot. at 6.) These loan transactions, according to Plaintiffs, actually deepened PE's insolvency and were intended to prolong PE's life and frustrate Plaintiffs' attempt to collect on their judgment. (*Id.*) The record, however, belies Plaintiffs' argument that this evidence is newly discovered. Furthermore, at this late stage in the proceedings, Plaintiffs' amendments would substantially prejudice the existing Defendants and the proposed new defendant. Therefore, Plaintiffs' motion is denied.

A. Undue Delay

"Although passage of time alone will not support denial of leave to amend, undue delay by a movant in seeking leave to amend will support such a denial." *Tarkett,* 144 F.R.D. at 291 (citing *Foman,* 371 U.S. at 182). In general, the question of undue delay requires the court to focus on the movant's reasons for not amending sooner. *Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir.2001). Delay may become undue when a movant has failed to amend despite previous opportunities to do so. *See, e.g., Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 654-55 (3d Cir.1998) (rejecting proposed second amended complaint when plaintiffs were repleading facts that could have been pled earlier).

Plaintiffs contend that they have not unduly delayed in moving to amend the Complaint because they only recently learned of the facts upon which the proposed amendments are based. Plaintiffs purportedly uncovered this evidence after July 1, 2004 via third-party subpoenas and through a review of PE's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

business records. (Ltr. from Pls. to Ct. of Oct. 11, 2004 Memorializing Arguments on Mot. at 5 [hereinafter "Pls.' Ltr."].) It is undisputed, however, that in April of 2002, counsel for PE sent Plaintiffs PE's 2000 and 2001 financial statements. (*Id.* at 13; *see also* Rep. of Defs. Kean Co., Kean Pitcairn, Kris Pitcairn & PE [hereinafter "PE's Resp."] Ex. 1 (Ltr. from McNees Law Firm to Pls. of Apr. 24, 2002 Enclosing PE's Fin. Stmts).) According to Plaintiffs, those statements show that PE's current assets exceeded its current liabilities; that PE had a seven-figure negative net worth at the beginning of 2000; that PE lost millions of dollars over those two years, despite being lent $3 million by insiders; and that at the end of 2001, PE was still operating on bank overdrafts. (Pls.' Ltr. at 6-7.) Plaintiffs, therefore, possessed evidence of PE's insolvency and the loan transactions in question for as long as a year before the Complaint was originally filed. Mr. Wiles, counsel of record for Plaintiffs, protests that he did not see and was not aware of the 2000 and 2001 financial statements until July 2004. (Aff. of James Wiles ¶ 4.) Nonetheless, Mr. Wiles concedes that these documents were sent to his co-counsel, Mr. Allen, in April of 2002. (Pls.' Ltr. at 13.) Mr. Wiles thus had ample opportunity to obtain and review the documents well before July 2004, and his failure to do so does not serve as an adequate justification for delay. *See, e.g., L.D. Schreiber Cheese Co. v. Clearfield Cheese Co.,* 495 F.Supp. 313, 316 (W.D.Pa.1980) (denying leave to amend where movant did not act in bad faith, but nevertheless delayed over two and a half years in bringing motion).

*4 Accordingly, the Court finds that Plaintiffs have unduly delayed in seeking amendment, which alone warrants denial of their motion. The Court's decision is fortified, however, by the fact that the proposed amendments would result in substantial prejudice.

B. Substantial Prejudice

Leave to amend may also be denied if amendment would result in substantial or undue prejudice to the non-moving party. *Cureton,* 252 F.3d at 273; *see also Bechtel,* 886 F.2d at 652 (describing prejudice to non-moving party as "the touchstone" for denial of amendment). "The issue of prejudice requires that we focus on the hardship to the defendants if the amendment were permitted." *Cureton,* 252 F.3d at 273 (citing *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir.1984)). For instance, a defendant who is put to added expense and forced to engage in additional discovery suffers hardship. *See, e.g., Kuhn v. Phila. Elec. Co.,* 85 F.R.D. 86, 88 (E.D.Pa.1979) (denying leave to amend where discovery had already been completed and amendment would have necessitated additional discovery). A defendant may also be burdened by being required to defend itself against new facts or legal theories. *See, e.g., Tarkett,* 144 F.R.D. at 291 (denying leave to amend where proposed amendment raised entirely new issues of law that would have required new defenses).

In this case, Plaintiffs' proposed amendments would result in substantial prejudice to the existing Defendants. Plaintiffs are seeking to dramatically alter the Complaint at the eleventh hour by adding over one hundred new paragraphs, five new counts, and a new defendant. (Pls.' Mot. Ex. A (Proposed Am. Compl.).) As the discovery deadline has long passed, these amendments would force Defendants to incur additional costs by revisiting the discovery process with respect to Plaintiffs' new claims. For instance, were amendment permitted, Defendants would have to retain an expert to determine PE's solvency during the pertinent time period. (PE's Resp. at 11-12; Pls.' Ltr. at 13-14.) Further prejudice would result from the fact that all five new counts are based on new facts and legal theories that Defendants have not yet had an opportunity to defend against. Granting leave to amend at this late juncture would force Defendants to investigate these claims, respond to them, and decide whether to seek dismissal of any or all of them. This is especially burdensome here, where Defendants have already filed and partially succeeded on one motion to dismiss. (*See* Feb. 23 Order (granting in part and denying in part Defendants' motion to dismiss the Complaint).)

Furthermore, if leave to amend were granted, the prejudice to the proposed new defendant, Torrance Pitcairn, would be overwhelming. Plaintiffs insist that Torrance Pitcairn would not be prejudiced because he "has already been deposed, has already produced his documents and has trial counsel in place." (Pls.' Mot. at 2.) But Plaintiffs ignore the crucial fact that Torrance Pitcairn's "participation" to this point has been as a non-party. It would be extremely prejudicial to expect him to file dispositive motions and/or proceed to trial at any time in the near future. Even more significantly, he has not had a chance to participate in the discovery process as a named defendant and it is simply too late for him to conduct meaningful discovery.

*5 Accordingly, Plaintiffs' motion is denied because Plaintiffs have unduly delayed in seeking amendment and because amendment would cause substantial

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 1213884 (E.D.Pa.)
(Cite as: 2005 WL 1213884 (E.D.Pa.))

Page 4

prejudice.

IV. CONCLUSION

For the reasons stated above, Plaintiffs' motion for leave to amend is denied. An appropriate Order follows.

*ORDER*

AND NOW, this 18th day of May, 2005, upon consideration of Plaintiffs' Motion for Leave to Serve an Amended Complaint Adding Certain Claims, Dropping Certain Claims, and Adding an Additional Party, all responses thereto and replies thereon, and for the foregoing reasons, it is hereby ORDERED that:

1. Plaintiffs' Motion (Document No. 37) is DENIED.
2. The Scheduling Order of May 20, 2004 is VACATED and replaced by this Court's Scheduling Order of May 18, 2005.

2005 WL 1213884 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2716411 (Trial Motion, Memorandum and Affidavit) Response of Defendants Pitcairn Enterprises, Inc., Kean Pitcairn, Kris Pitcairn and Kean Co. to Plaintiffs' Motion for Leave to Serve an Amended Complaint Adding Certain Claims, Dropping Certain Claims and Adding an Additional Party (Oct. 01, 2004)

• 2004 WL 2716408 (Trial Motion, Memorandum and Affidavit) Order (Jul. 30, 2004)

• 2004 WL 2716403 (Trial Pleading) Answer With Affirmative Defenses of Defendant 1862 Lincoln Highway Associates, L.P. to Plaintiffs' Complaint (Apr. 26, 2004)

• 2004 WL 2716401 (Trial Pleading) First Supplemental Answer of Defendants Pitcairn Enterprises, Inc., d/b/a Pitcairn Motorcars, Kean Pitcairn, Kris Pitcairn and Kean Co., to Plaintiffs' Complaint in Equity (Apr. 13, 2004)

• 2004 WL 2716398 (Trial Pleading) Answer of Defendants Pitcairn Enterprises, Inc., d/b/a Pitcairn Motorcars, Kean Pitcairn, Kris Pitcairn and Kean Co., to Plaintiffs' Complaint in Equity (Mar. 25, 2004)

• 2003 WL 23902681 (Trial Motion, Memorandum and Affidavit) Order (Jun. 18, 2003)

• 2:03cv02398 (Docket) (Apr. 21, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.