# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-858 SLR |
| ) | |
| TELECHECK SERVICES, INC., ) | |
| ELECTRONIC CLEARING HOUSE, INC., ) | |
| XPRESSCHEX, INC., and ) | |
| NOVA INFORMATION SYSTEMS, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**Deleted:** JURY TRIAL DEMANDED

## SECOND AMENDED ANSWER AND AFFIRMATIVE DEFENSES OF ELECTRONIC CLEARING HOUSE, INC. AND XPRESSCHEX, INC. TO LML PATENT CORP.'S COMPLAINT FOR PATENT INFRINGEMENT

**Deleted:** AMENDED ANSWER AND AFFIRMATIVE DEFENSES OF ELECTRONIC CLEARING HOUSE, INC. AND XPRESSCHEX, INC. TO LML PATENT CORP.'S COMPLAINT FOR PATENT INFRINGEMENT¶

Defendants Electronic Clearing House, Inc. and Xpresschex, Inc. (hereinafter collectively "ECHO") for their Second Amended Answer and Affirmative Defenses to the Complaint for Patent Infringement ("complaint"), and for no other defendant, deny all allegations not specifically admitted and state as follows:

### NATURE OF THE ACTION

**Deleted:**

1. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 1 of the complaint, and, therefore, denies the same.

### PARTIES

**Deleted:**

2. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 2 of the complaint, and, therefore, denies the same.

1

3. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 3 of the complaint, and, therefore, denies the same.

4. ECHO admits the allegations of paragraph 4 of the complaint.

5. ECHO admits the allegations of paragraph 5 of the complaint.

6. ECHO admits the allegations of paragraph 6 of the complaint.

7. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 7 of the complaint, and, therefore, denies the same.

8. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 8 of the complaint, and, therefore, denies the same.

**JURISDICTION AND VENUE**

9. ECHO acknowledges only that the complaint purports to arise under Patent Act, 35 U.S.C. Section 1 *et seq*. Nevertheless, because the allegations of paragraph 9 of the complaint contain only conclusions of law, ECHO is not required to admit or deny such conclusions.

10. ECHO admits the allegations of paragraph 10 of the complaint.

11. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 11 of the complaint, and, therefore, denies the same.

12. ECHO admits the allegations of paragraph 12 of the complaint.

13. ECHO admits the allegations of paragraph 13 of the complaint.

14. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 14 of the complaint, and, therefore, denies the same.

15. ECHO admits the allegations of paragraph 15 of the complaint.

**THE PATENTS IN SUIT**

16. With respect to paragraph 16 of the complaint, ECHO admits only that United States Patent No. 5,484,988 (the "'988 patent") entitled "Checkwriting Point of Sale System" issued on January 16, 1998, that the face of the '988 patent indicates that it was assigned to Resource Technology Services, Inc., and that a copy of the '988 patent is purportedly attached as an exhibit to the complaint. ECHO denies that the '988 patent was duly and legally issued.

2

ECHO is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 16 of the complaint, and, therefore, denies the same.

17. With respect to paragraph 17 of the complaint, ECHO admits only that United States Patent No. 6,164,528 (the "'528 patent") entitled "Check Writing Point of Sale System" issued on December 26, 2000, that the face of the '528 patent indicates that it was assigned to ChequeMark Patent, Inc., and that a copy of the '528 patent is purportedly attached as an exhibit to the complaint. ECHO denies that the '528 patent was duly and legally issued. ECHO is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 17 of the complaint, and, therefore, denies the same.

18. With respect to paragraph 18 of the complaint, ECHO admits only that United States Patent No. 6,283,366 (the "'366 patent") entitled "Check Writing Point of Sale System" issued on September 4, 2001, that the face of the '366 patent indicates that it was assigned to ChequeMark Patent, Inc., and that a copy of the '366 patent is purportedly attached as an exhibit to the complaint. ECHO denies that the '366 patent was duly and legally issued. ECHO is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 18 of the complaint, and, therefore, denies the same.

## THE ACCUSED PRODUCTS

19. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 19 of the complaint, and, therefore, denies the same.

20. ECHO denies the allegations of paragraph 20 of the complaint.

21. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 21 of the complaint, and, therefore, denies the same.

## COUNT I

22. With respect to paragraph 22 of the complaint, ECHO incorporates by reference each and every response contained in paragraphs 1-3, 9-11, 15-16 and 19 above as though fully set forth herein.

23. ECHO is without sufficient knowledge or information to form a belief as to the

3

truth of the allegations of paragraph 23 of the complaint, and, therefore, denies the same.

24. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 24 of the complaint, and, therefore, denies the same.

25. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 25 of the complaint, and, therefore, denies the same.

26. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 26 of the complaint, and, therefore, denies the same.

27. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 27 of the complaint, and, therefore, denies the same.

28. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 28 of the complaint, and, therefore, denies the same.

## COUNT II

29. With respect to paragraph 29 of the complaint, ECHO incorporates by reference each and every response contained in paragraphs 1-3, 9-11, 15, 17 and 19 above as though fully set forth herein.

30. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 30 of the complaint, and, therefore, denies the same.

31. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 31 of the complaint, and, therefore, denies the same.

32. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 32 of the complaint, and, therefore, denies the same.

33. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 33 of the complaint, and, therefore, denies the same.

34. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 34 of the complaint, and, therefore, denies the same.

35. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 35 of the complaint, and, therefore, denies the same.

## COUNT III

36. With respect to paragraph 36 of the complaint, ECHO incorporates by reference each and every response contained in paragraphs 1-3, 9-11, 15, 18 and 19 above as though fully set forth herein.

37. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 37 of the complaint, and, therefore, denies the same.

38. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 38 of the complaint, and, therefore, denies the same.

39. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 39 of the complaint, and, therefore, denies the same.

40. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 40 of the complaint, and, therefore, denies the same.

41. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 41 of the complaint, and, therefore, denies the same.

42. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 42 of the complaint, and, therefore, denies the same.

## COUNT IV

43. With respect to paragraph 43 of the complaint, ECHO incorporates by reference each and every response contained in paragraphs 1-2, 4-6, 9-10, 12-13, 15-16 and 20 above as though fully set forth herein.

44. ECHO denies the allegations of paragraph 44 of the complaint.
45. ECHO denies the allegations of paragraph 45 of the complaint.
46. ECHO denies the allegations of paragraph 46 of the complaint.
47. ECHO denies the allegations of paragraph 47 of the complaint.
48. ECHO denies the allegations of paragraph 48 of the complaint.
49. ECHO denies the allegations of paragraph 49 of the complaint.

## COUNT V

50. With respect to paragraph 50 of the complaint, ECHO incorporates by reference each and every response contained in paragraphs 1-2, 4-6, 9-10, 12-13, 15, 17 and 20 above as though fully set forth herein.
51. ECHO denies the allegations of paragraph 51 of the complaint.
52. ECHO denies the allegations of paragraph 52 of the complaint.
53. ECHO denies the allegations of paragraph 53 of the complaint.
54. ECHO denies the allegations of paragraph 54 of the complaint.
55. ECHO denies the allegations of paragraph 55 of the complaint.
56. ECHO denies the allegations of paragraph 56 of the complaint.

## COUNT VI

57. With respect to paragraph 57 of the complaint, ECHO incorporates by reference each and every response contained in paragraphs 1-2, 4-6, 9-10, 12-13, 15, 18 and 20 above as though fully set forth herein.
58. ECHO denies the allegations of paragraph 58 of the complaint.
59. ECHO denies the allegations of paragraph 59 of the complaint.
60. ECHO denies the allegations of paragraph 60 of the complaint.
61. ECHO denies the allegations of paragraph 61 of the complaint.
62. ECHO denies the allegations of paragraph 62 of the complaint.
63. ECHO denies the allegations of paragraph 63 of the complaint.

## COUNT VII

64. With respect to paragraph 64 of the complaint, ECHO incorporates by reference each and every response contained in paragraphs 1-2, 7-10, 14-16 and 21 above as though fully set forth herein.
65. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 65 of the complaint, and, therefore, denies the same.

66. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 66 of the complaint, and, therefore, denies the same.

67. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 67 of the complaint, and, therefore, denies the same.

68. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 68 of the complaint, and, therefore, denies the same.

69. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 69 of the complaint, and, therefore, denies the same.

70. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 70 of the complaint, and, therefore, denies the same.

## COUNT VIII

71. With respect to paragraph 71 of the complaint, ECHO incorporates by reference each and every response contained in paragraphs 1-2, 7-10, 14-15, 17 and 21 above as though fully set forth herein.

72. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 72 of the complaint, and, therefore, denies the same.

73. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 73 of the complaint, and, therefore, denies the same.

74. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 74 of the complaint, and, therefore, denies the same.

75. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 75 of the complaint, and, therefore, denies the same.

76. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 76 of the complaint, and, therefore, denies the same.

77. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 77 of the complaint, and, therefore, denies the same.

Field Code Changed
Deleted: ¶

## COUNT IX

78. With respect to paragraph 78 of the complaint, ECHO incorporates by reference each and every response contained in paragraphs 1-2, 7-10, 14-15, 18 and 21 above as though fully set forth herein.

79. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 79 of the complaint, and, therefore, denies the same.

80. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 80 of the complaint, and, therefore, denies the same.

81. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 81 of the complaint, and, therefore, denies the same.

82. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 82 of the complaint, and, therefore, denies the same.

83. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 83 of the complaint, and, therefore, denies the same.

84. ECHO is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 84 of the complaint, and, therefore, denies the same.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense
### (Invalidity/Unenforceability)

85. Plaintiff should not prevail because each of United States Letters Patent Nos. 5,484,988 (the "'988 patent") and/or 6,164,528 (the "'528 patent") and/or 6,283,366 (the "'366 patent") (sometimes collectively "the patents-in-suit") are invalid, unenforceable, and void for failure to comply with one or more of the conditions of patentability as set forth in 35 U.S.C. § 100, *et seq.*, including 35 U.S.C. §§ 102, 103, and/or 112.

Second Affirmative Defense

(Non-infringement)

86.     ECHO's accused activities do not infringe United States Letters Patent Nos. 5,484,988 and/or 6,164,528 and/or 6,283,366, literally, or under the Doctrine of Equivalents, nor has ECHO contributed to or induced infringement thereof.

Third Affirmative Defense

(Inequitable Conduct)

87.     The '528, and '366 patents are unenforceable due to plaintiff's inequitable conduct during the course of the prosecution of these patents.

A.     *Failure to Disclose Prior Sale*

88.     Upon information and belief, the systems within the scope of the patents in suit were on sale and in public use more than one year prior to the effective filing date of the '528 and '366 patents. On information and belief, this public use and sale was known to the named inventor of the patents in suit during the pendency of the applications leading to the '528 and '366 patents, but was intentionally withheld from the U.S.P.T.O.

89.     The earliest-filed application leading to the '528 patent was filed on December 31, 1996. The '366 patent is a continuation of the '528 patent and therefore shares the same December 31, 1996 priority date.

90.     In an April 13, 2000 deposition from the litigation captioned *LML Payment Systems, Inc. v. Hills*, CA 99-217-CIV-J-20A (M.D. Fla.), the named inventor on the three patents in suit, Mr. Robert R. Hills, was asked the following regarding the '988 patent: "Beginning in 1991, did you and/or Mr. Nichols ever license the technology, which would later become subject to this patent, to any other companies?" Mr. Hills answered, "At some point, I - - at some point, ChequeMark Systems received exclusive marketing rights."

91.     Upon information and belief, ChequeMark Systems offered for sale and sold a point-of-sale system covered by the '988 patent more than one year prior to the December 31, 1996 priority date of the '528 and '366 patents, and thereby constituted "prior art" with respect to

9

the '528 and '366 patents, and Mr. Hills was aware of the offer for sale or sale.

92. On November 7, 1995, the Sacramento Bee published a news article about a point of sale system being marketed by ChequeMark Systems (attached as Exhibit A). Upon information and belief, and as further indicated within the news article, by the time the news article was published, the system had been marketed in the United States. Thus the point-of-sale system described in the Sacramento Bee was on sale and/or in public use more than one year prior to the December 31, 1996 priority date of the '528 and '366 patents.

93. The November 7, 1995 Sacramento Bee news article describes the ChequeMark Systems point of sale system and process. The described system and process include every element of one or more claims of the '528 patent, including at least claim 10, and every element of one or more claims of the '366 patent, including at least claim 10. The November 7, 1995 Sacramento Bee article, and the system offered for sale, are material prior art to the '528 and '366 patents.

94. Upon information and belief, the applicants knew about the licensing, offer for sale and sale of the point-of-sale system described in the Sacramento Bee article, more than one year prior to the effective priority date of the '528 patent and the '366 patent, and intentionally withheld this material information with the intent to deceive the U.S.P.T.O. This constitutes inequitable conduct that renders the '528 patent and the '366 patent unenforceable.

### B. Failure to Disclose Prior Public Disclosure

95. Furthermore, in 1993 ChequeMark Systems, Inc. ("CSI"), a company formed by applicants, publicly disclosed material prior art to the '528 and '366 patents more than one year before their December 31, 1996 priority date. Applicants were aware of that disclosure, but failed to cite the disclosure and documents related to the disclosure to the U.S.P.T.O. In particular, the applicants failed to disclose at least the following documents to the U.S.P.T.O. during the pendency of the applications underlying the '528 and '366 patents: ECHO 0002719-0002748 and LML-EP000054 - LML-EP000242. These documents disclose a system and/or method within the scope of the '988 patent, and within the scope of at least one claim of each of the '528 and '366 patents.

10

96. Upon information and belief, the applicants knew about the public disclosure of the alleged inventions described in and claimed by the '528 and '366 patents more than one year before the priority date of the '528 and '366 patents, and intentionally withheld this material information during the pendency of the applications underlying the '528 and '366 patents with the intent to deceive the U.S.P.T.O. This constitutes inequitable conduct that renders the '528 patent and the '366 patent unenforceable.

### C.    *False and Misleading Declarations to the Patent Office*

97. Furthermore, on July 22, 1999, attorneys for ChequeMark Patent Inc. ("CPI"), an LML subsidiary, filed a terminal disclaimer and affidavit in the application leading to the '528 patent, in order to overcome a rejection based on the '988 patent. [LML-EP000424-000428; LML-EP006104-006105.] In filing the terminal disclaimer, CPI and/or its attorneys were required to and did state that CPI owned all rights in the application leading to the '528 patent.

98. Contrary to its statements to the U.S.P.T.O, CPI did not own all rights in the application, and was aware that it did not own all such rights at the time the terminal disclaimer was filed. At the time the terminal disclaimer was filed, inventor Robert Hills had never assigned his interest in the application leading to the '528 patent to CPI, and refused to do so because of a dispute.

99. In March, 1999, while the '528 patent application was pending, LML and CPI filed a lawsuit in the United States District Court for the Middle District of Florida against Robert R. Hills seeking a declaratory judgment stating that LML and/or CSI had all title and interest in the '528 patent. Attorneys for LML submitted an affidavit stating that Mr. Hills' refusal to assign his interest forced "alternative procedures" in the U.S.P.T.O. to secure allowance, and that the declaratory judgment regarding ownership was required to "clear all doubt" as to CPI's ownership of the application leading to the '528 patent. [LML-EP 006081-006087.]

100. On July 27, 2000, before conclusion of the lawsuit, CPI and/or its attorneys filed a second terminal disclaimer again claiming all rights in the application leading to the '528 patent. [LML-EP 000511.] These statements regarding rights in the patent were material, because they were required for effective filing of the terminal disclaimers, which were required to overcome the rejection based on the '988 patent. In allowing the application, the Examiner stated that

11

failure to file a proper terminal disclaimer would constitute an abandonment of the application. [LML-EP 000508.]

101. Upon information and belief, LML and/or CPI intentionally withheld this material information regarding ownership of the '528 patent with the intent to deceive the U.S.P.T.O. This constitutes inequitable conduct rendering the '528 patent unenforceable.

> D.   *Failure to Disclose Material Prior Art Discovered by LML's Counsel*

102. Furthermore, in 1998 attorneys for LML, as part of their due diligence search regarding the validity and strength of the '988 patent, conducted a prior art search and discovered prior art they considered "to be relevant to U.S. Patent 5,484,988." Attorneys for LML believed and stated that the Examiner of the '988 patent had not conducted a thorough search for prior art regarding the '988 patent. [LML-EP 061874-061877.] The attorneys conducted a further search, and the search results were provided to LML during the pendency of the applications leading to the '528 and '366 patents. [LML-EP 061853-061864.] Several of the references uncovered in the search were never cited to the U.S.P.T.O.

103. LML discovered, but did not disclose to the U.S.P.T.O., the following references, which its attorneys stated were "relevant to U.S. Patent 5,484,988": U.S. Patent 5,496,991 issued to Delfer, III et al.; U.S. Patent 5,38,186 issued to Nair et al.; U.S. Patent 5,373,550 issued to Campbell et al.; U.S. Patent 5,305,196 issued to Deaton et al.; U.S. Patent 4,727,243 issued to Savar; and U.S. Patent 3,852,571 issued to Hall et al.

104. These prior art references were also material to the '528 and '366 patents.

105. Upon information and belief, LML and/or the applicants knew of these relevant prior art references during the pendency of the applications leading to the '528 and '366 patents but intentionally withheld this material information with the intent to deceive the U.S.P.T.O. This constitutes inequitable conduct rendering the '528 and '366 patents unenforceable.

> E.   *Failure to Disclose Material Prior Art to the '988 Patent*

106. Furthermore, upon information and belief, applicants intentionally withheld material prior art from the U.S.P.T.O., with the intent to deceive, during the pendency of the application leading to the '988 patent.

107. On December 29, 1992, U.S. Patent No. 5,175,682 to Higashiyama et al. ("the

12

'682 patent," FDC 110131-138) issued from an application filed December 14, 1990. The '682 patent constitutes material prior art to the '988 patent that discloses each and every element of one or more claims of the '988 patent and thus anticipates and/or renders obvious one or more claims of the '988 patent.

108.   The applicants knew about the issuance and existence of the '682 patent during the pendency of the application leading to the '988 patent, as confirmed by Connie Higashiyama, the inventor of the '682 patent, during her deposition. Mr. Henry Nichols, inventor on the '988 patent, further admitted that he sought to purchase the '682 patent. This attempt to purchase occurred during the pendency of the application leading to the '988 patent, as also confirmed by Ms. Higashiyama during her deposition. Upon information and belief, the applicants intentionally withheld this material information with the intent to deceive the U.S.P.T.O. This constitutes inequitable conduct rendering the '988 patent unenforceable.

### F. Failure to Disclose Documents From '988 File History

109.   The applicants failed to disclose relevant documents and information, *i.e.*, LML-EP000054 - LML-EP000242, from the '988 file history to the U.S.P.T.O. during the prosecution of the applications underlying the '528 and '366 patents. Comparative review of each of the claims contained in each of the three patents-in-suit shows that one or more of the claims filed and ultimately allowed in connection with the prosecution of the '528 and '366 patents are strikingly similar to claims that were rejected by the U.S.P.T.O. in connection with the prosecution of the application underlying the '988 patent. These documents are material to patentability of the alleged inventions that ultimately matured into the '528 and '366 patents.

110.   The applicants knew about these documents during the pendency of the applications underlying the '528 and '366 patents but, upon information and belief, the applicants intentionally withheld this material information with the intent to deceive the U.S.P.T.O. This constitutes inequitable conduct rendering the '988 patent unenforceable.

Field Code Changed
Deleted: ¶

Fourth Affirmative Defense
(Estoppel)

111. On information and belief, the Complaint, and each and every cause of action asserted therein against ECHO, is barred, in whole or in part, by the doctrine of estoppel.

Fifth Affirmative Defense
(Laches)

112. On information and belief, the Complaint, and each and every cause of action asserted therein against ECHO, is barred, in whole or in part, by the doctrine of laches.

### ADDITIONAL AFFIRMATIVE DEFENSES

There may be additional affirmative defenses to the causes of action alleged by Plaintiff that are currently unknown to ECHO. Therefore, ECHO reserves the right to amend this answer to allege additional affirmative defenses in the event discovery of other information indicates they are appropriate.

WHEREFORE, ECHO prays for judgment against Plaintiff as follows:

a. That Plaintiff take nothing by reason of its complaint or otherwise;
b. A dismissal of the complaint with prejudice;
c. That judgment be rendered in favor of ECHO;
d. An adjudication that U.S. Patent Nos. 5,484,988, 6,164,528, and 6,283,366 patents are invalid and unenforceable;
e. An adjudication that ECHO has not infringed, has not contributorily infringed, and has not induced acts of infringement by others of U.S. Patent Nos. 5,484,988, 6,164,528, and/or 6,283,366;
f. An Adjudication that this is an exceptional case, under 35 U.S.C. § 285, and accordingly, that ECHO be awarded its reasonable attorneys' fees, costs and other expenses incurred in defense of this action; and

14

g.  For such other and further relief as the Court deems proper.

**DEMAND FOR JURY TRIAL**

ECHO hereby requests a jury trial on all issues for which it is entitled to a jury trial.

Dated: _____                /s/ Francis DiGiovanni
_____                 Fancis DiGiovanni, Esq. (#3189)
                                              James M. Olsen (#3763)
                                              CONNOLLY BOVE LODGE & HUTZ LLP
                                              The Nemours Building
                                              1007 North Orange Street
                                              Wilmington, DE 19801
                                              fdigiovanni@cblh.com
                                              jolsen@cblh.com
                                              Phone: 302-658-9141
                                              Fax: 302-658-5614
                                              *Attorneys* for Defendants,
                                              *Electronic Clearing House, Inc.* and
                                              *Xpresschex, Inc.*

OF COUNSEL:

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
BELASCO JACOBS & TOWNSLEY, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045
(310) 743-1188
Facsimile: (310) 743-1189

15