IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF DELAWARE

LML PATENT CORPORATION,           :
                                  :
    Plaintiff                     :    NO: 04-858
         v.                       :
TELECHECK SERVICES, INC.          :
ELECTRONIC CLEARING HOUSE, INC.,  :
EXPRESSCHEX, INC., and            :
NOVA INFORMATION SYSTEMS, INC.    :

### SPECIAL MASTER ORDER NO. 1

Presently before the Special Discovery Master (SDM) is a letter motion dated July 14, 2005 requesting the SDM to order defendant TeleCheck Services, Inc. (TeleCheck) to produce 510 documents currently being withheld by TeleCheck on grounds of privilege. It is plaintiff's position that any privilege that may have been associated with these documents has been waived by not being listed on TeleCheck's April 5, 2005 Privilege Log.

The background set forth in the parties' letter briefs tells us that the United States District Judge Sue L. Robinson entered a Scheduling Order on October 22, 2004 providing for the production of all documents no later than March 4, 2005. At a status conference on March 22, 2005, among the issues presented to the court was the claim by the plaintiff of the need for both a privilege log as to withheld documents and the completion of the document production. The first topic pertinent to this motion to come up at the hearing was in respect to the need to complete the production of documents by the defendant. The transcript discloses at Page 6 that counsel for the defendant, when asked, advised the court that two weeks from that date, or April 5, 2005 would be satisfactory. The court stated in regard to that extended deadline "And may I say that if document production is not completed by April 5, we will start talking about sanctions because

this is your date and you told me you could do it and obviously, April 5th is substantially past March 4th. All Right [sic]?."

The Court was obviously emphasizing the notion that the date was important, had been suggested by counsel for TeleCheck, and the Court expected it to be met. Counsel for the plaintiff later moved the court to set a date certain for providing privilege log as to any documents withheld. Counsel stated to the Court at Page 12

> "I'd like to have a date certain by which the Court will compel the defendants to supply privilege logs and at which point, if the logs aren't produced, that the privilege will be considered waived."

After a brief reference from counsel for the defendant as to the difficulty he and plaintiff's counsel have had arriving at an agreement that would identify which documents being transmitted would not be deemed a waiver (for example a transmittal document), counsel for the defendants agreed again that two weeks would be sufficient o get the privilege log out. See Page 13 of the transcript. April 5th came and TeleCheck produced a privilege log to plaintiff but, nearly a month later TeleCheck produced another portion of this privilege log consisting of 85 pages and entitled "Part VI" listing the 510 documents that are the subject of this motion. Plaintiff believes that this additional delay, coupled with a warning that the plaintiff was seeking a waiver and so stated to the Court on March 22, 2005, warrants, when viewed in light of defendant's alleged conduct a waiver of any privilege in respect to the 510 documents listed on Part VI of defendants' belatedly filed privilege log.

Defendant's position is that the Court never ordered a blanket waiver at the March 22, 2005 hearing as a sanction for failure to meet the deadline. Defendant adds that the case law makes it clear that a waiver of privilege in instances like this is an extreme sanction and is reserved for cases of bad faith or flagrant violations of the rules. Finally, defendant suggests that plaintiff cannot point to any prejudice due to defendants' inadvertent omission of documents on

the original log and the addition of those documents less than a month after the extended deadline. Defendant seeks to buttress its view that what has happened should not support a sanction of waiver by reminding the reader that it has produced over a million and a half pages of documents in the case and that the sheer volume of documents required an extensive privilege log that in turn resulted in the inadvertent misplacement of documents resulting in their not being added to the original log. Counsel adds that as soon as the documents were discovered, they were added to the privilege log, presumably in the form of Part VI and provided some three weeks after the April 5, 2005 deadline.

    Plaintiff's counsel challenges the veracity of the defendants' explanation for this delay in providing the privilege log on the following ground. In defendants' response of July 21, 2005 to plaintiff's motion for the waiver sanction, it stated to the SDM that the reason for the late delivery of Part VI of defendants' privilege log was that the documents left off of the original log had been inadvertently misplaced, and upon discovery some three weeks later, were added as Part VI to the privilege log. In an earlier letter dated May 1, 2005, however, defendants' counsel offered as the reason for the late delivery of Part VI was that it had been completed on time but mistakenly not transmitted with the remainder of the log that was provided before the deadline of April 5, 2005. Defendant's counsel endeavored to reconcile these two versions of the events in question at the status conference before the SDM on August 4, 2005.

Discussion

    The sanction that plaintiff seeks here is neither new or novel nor is plaintiff's request that it be imposed inappropriate. Deadlines set by the court particularly in complex cases such as this one, are goals that every effort should be made to comply with. This is not just because it is the right thing to do, but for an extremely heavily burdened court deviations from reasonable

established deadlines cause unacceptable havoc with the orderliness and predictability of many, many other cases and matters that the court is expected to address in an orderly and prompt manner. Postponement and adjustment of dates interferes with other dates that are in place for other parties and counsel in other cases on the court's docket. Further, it is both inconvenient and unfair to parties who are expending dedication and resources to comply with a court calendar to experience frustration and delays caused by those who are not.'

The sanction that plaintiff seeks here against the defendants not only can have, but because it lifts a protection of privilege, is likely to have serious consequences upon the defendant in this litigation. It is for this reason that the sanction of waiver is understood to be considered only in cases where there is bad faith or such egregious conduct to warrant a sanction in the extreme. The parties in their briefs have made reference to *In re Painted Aluminum Products Antitrust Litigation*, No. CIV. A. 95-CV-6557, 1996 WL 397472 (E.D. Pa. July 9, 1996). This case supports the notion that the bar of waiver of privilege as a sanction is set quite high. In *Ritacca v. Abbott Labs.*, 203 F.R.D. 332 (N.D. Il. 2001) cited by plaintiff, there was a chronicle of ongoing and long lasting conduct that resulted in at least a dozen episodes of stalling and imprecision regarding a number of document productions. When combined with misinformation on repeated occasions on what could only have been calculated refusal to communicate, the facts that warranted the sanction of waiver. That case demonstrates why the consideration of the sanction of waiver is examined on a case by case basis. The SDM does not believe here that the sanction of waiver was declared by the Court to be the predicted outcome of the failure of the defendant to produce its privilege log by April 5, 2005. Review of the transcript shows that when the issue of the completion of document production was being heard by the court at the March 22, 2005 hearing, the date of April 5, 2005 was suggested by

4

defendants' counsel and agreed to by the Court as the date that the Court was willing to accept. It was in regard to that prospect that the Court stated that if document production was not completed by April 5th, she would start talking about sanctions. It was later that counsel for the plaintiff first raised the question of waiver being a sanction. When plaintiff's counsel requested a date certain the Court did not respond to that suggestion of waiver by plaintiff's counsel but asked at Page 11

>The Court: "And I take it plaintiff has provided its privilege log for all of these documents?"
>
>Mr. Hermann: "We have Your Honor."
>
>The Court: "Alright"

That response by the Court seems short of what one would expect if the Court was agreeing in advance to the imposition of the severe sanction of waiver of privilege for failure to meet the extended deadline. Even if that response could be construed as such a prediction, it most likely would only have come about if an addition to the failure to produce the log, there was evidence of bad faith or egregious conduct that the authorities appear to require for the imposition of the harsh sanction of the waiver of privilege.

For these reasons, the SDM does not believe that the privilege of sanctions should be recommended to be imposed by the court upon the defendant for the failure to produce the logs on April 5, 2005.[1]

The SDM does believe, however, that the failure of the defendant to obey the Court's order warrants a payment to the plaintiff of the reasonable expenses and fees incurred that can be said to have been caused by the failure to comply with the Court's Order of March 22, 2005.

---

[1] Under Federal Rule of Civil Procedure 53( c), a Master appointed by the Court may by Order impose upon a party any noncontempt sanction provided by Rule 37. Accordingly, an order that declares a waiver of privilege in respect to documents cannot be ordered by a Master, but can only be recommended to the Court.

The Court gave the defendant ample opportunity to consider all of the factors associated with the time when the privilege log was to be provided. This was the second opportunity the defendant had to produce the log and the plaintiff was totally justified in seeking a sanction for the second failure to produce the log. This is not an instance of bad faith, recalcitrance or a policy of failure to cooperate. It is simply a question of the failure to comply with a clear, important court order resulting in further delay in respect to which the SDM finds ample warning was given. The delay pushed discovery completion forward allowing less time for resolution of privilege disputes that are emerging at this time. Plaintiff was justified in moving for sanctions in view of the expression by the Court on March 22, 2005, all at unnecessary cost and expense to the plaintiff.

For the foregoing reasons, the following Order is entered:

### ORDER

Defendant is ordered to pay to Plaintiff a sum equal to the reasonable expenses and attorney's fees incurred by plaintiff and its counsel in respect to its letter motion dated July 25, 2005 regarding the failure of the defendant to comply with the Court's Order of March 22, 2005 that required the defendant to complete its document production and to provide a privilege log on or before April 5, 2005 in respect to any document withheld by the defendant on the assertion of privilege.

SO ORDERED:

/s/ Louis C. Bechtle
LOUIS C. BECHTLE
Special Discovery Master

Date: August 5, 2005