IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LML PATENT CORP.,

  Plaintiff,

  v.

TELECHECK SERVICES, INC.,
ELECTRONIC CLEARING HOUSE, INC.,
XPRESSCHEX, INC., and
NOVA INFORMATION SYSTEMS, INC.,

  Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-858 SLR

## SPECIAL DISCOVERY MASTER ORDER NO. 4

Louis C. Bechtle, Special Discovery Master      September 27, 2005

  This Order addresses the plaintiff's motion of August 18, 2005 for the production of

documents from defendant TeleCheck Services, Inc. (TeleCheck) in respect to which TeleCheck

has filed a response dated August 25, 2005 followed by plaintiff's reply dated September 1,

2005. In the Special Discovery Master's (SDM) Order No. 3, the history of the discovery

activity with particular reference to that associated with the privilege log was referred to in that

Order and is incorporated herein.

  It is fair to say that the party's briefs above referred to chronicle a period of

approximately six to seven months of engagement involving document production and the

privilege logs that have resulted in charges and counter charges, each by and to the other in

respect to the manner in which these parties have functioned during this period of the discovery

endeavor. It is the plaintiff's position that the defendants have had over six months to prepare

accurate logs and have failed to do so. It points out that the logs have been changed

15269_1.DOC

supplemented and updated from time to time and there are still serious deficiencies with the thousand or so documents referred to in plaintiff's motion. Plaintiff contends that there are approximately 140 documents for which privilege has been waived because the documents were inadvertently produced and not promptly attended to. Plaintiff also contends that the documents that it seeks should be provided because of the failure of the defendant to conform to the time requirements to either provide the documents or provide an adequate privilege log that conform to the standard necessary to support a claim of privilege. Defendant on the other hand states that the case is a complex case and that the defendants have produced some 1.4 million pages of documents in contrast to the plaintiffs who have only produced some 60,000 pages of documents. Defendant asserts that this discrepancy reflects itself in the privilege logs which lists thousands of documents by defendant while LML has only had to log approximately 400 documents. Another point made by the defendant is that the matters that LML is complaining about on defendant's logs are those that compare to similar entries on plaintiff's log. Defendant contends that a double standard should not apply. Defendant has offered comparisons of certain log entries to demonstrate what it believes is a similarity in plaintiff's entries with those that it complains about concerning the defendant.

The SDM will deny LML's motion that the inadvertently produced documents that it seeks be produced on the ground the SDM concludes that, all circumstances considered, TeleCheck responded appropriately with a reasonable explanation in regard to those documents and for that reason, the privilege has not been waived by reason on the inadvertent production.

The SDM will also deny plaintiff's motion for production based on untimeliness.

There are a number of other differences between the parties that will be covered in the other rulings being made by the SDM at this time.

The SDM convened a telephone conference on August 23, 2005 to address the disputes between the parties respecting the document production and the privilege logs. At the conclusion of that conference, the SDM directed that plaintiff identify 50 entries on TeleCheck's July 28, 2005 privilege log that LML concludes do not support TeleCheck's claim of privilege. The SDM also requested LML to identify an additional 10 entries that were referred to by LML as complaints to the description in the log that simply referred in conclusory fashion to "business operations", which LML contends was an inadequate description. On August 29, 2005, plaintiff set forth in a letter the 60 selections it had made at random from TeleCheck's privilege log. The SDM on September 1, 2005 requested defendant to provide those documents for *en camera* review and in addition, 22 selections made by the SDM at random from various categories contained in plaintiff's motion.

The SDM has reviewed *en camera* these 82 submissions and its findings and rulings as to each of those selections follows:

## I.    General

As noted earlier in this Order, the defendant contends that many of the complaints that plaintiff makes in respect to defendants logs appear in virtually identical form in plaintiff's logs. To the extent that that is correct, it of course cannot be a basis to decide whether plaintiff's claims have merit in respect to defendant's logs. The logical extension of defendant's approach could result in the curtailment of discovery from both sides depending on the degree of non compliance by one party in the preparation of its log. We will not experiment with that prospect here.

Examining 88 documents out of an estimated 1,000, results in a random sample of 8.8 percent. While this will not pass scientific muster, it has provided direction to the SDM in

determining the rulings that should be made in the *en camera* document review as well as the

steps to be followed to resolve all of the current disputes.

**II.**     **SDM's Findings**

These findings will relate to the five categories of complaint made by plaintiff in its

motion to compel and identified therein as follows:

Tab A – entries not involving or identifying an attorney.

Tab B – descriptions not matching identified authors/recipients.

Tab C – documents provided to third parties.

Tab D – inadequate descriptions.

Tab E – documents within scope of waiver.

**Tab A – entries not involving or identifying an attorney**

LML has noted in its motion at Tab A approximately 170 documents in this category.[1]

The plaintiff selected 13 of those documents at random and the SDM selected one for a total of

14 documents. The manner in which the SDM made rulings on these selected documents is to

adopt a series of codes for the various categories of privilege protection that apply. (See Exhibit

A attached to this order.) When applying these codes to the documents reviewed, if the privilege

was allowed, the ruling would show on the schedule for that document a "Y". If it was not

allowed, it would show a "N". An additional ruling of "W" would apply if the privilege was

waived.

Of the 13 documents selected from Tab A, 9 of them were ruled "N", meaning that the

request for privilege was refused. Three of the documents were marked "Y" meaning the

privilege is allowed, and one was disallowed because the privilege was deemed waived ("W").

Of those where privilege was not allowed ("N"), six were found not to qualify for the attorney

---

[1] An estimate is satisfactory for present purposes.

client privilege (Code "A"). Three of the work product claims were denied privilege ("N") because a review of the document made it plain that it was generated in the ordinary course of business of the defendant and not in anticipation of litigation (Code "H").

Five of the attorney client privilege documents have a code designation of "E" (ordinary course of business). In addition in four instances, necessary attorneys, parties or entities were not identified (Code "P"). The finding based on this review suggests that there are some fundamental misunderstandings by those making privilege judgments on behalf of defendant as to the basic elements of attorney client privilege and work product protection.

The four instances where necessary attorneys, parties or entities are not identified results primarily from a failure to provide to the SDM as requested in its letter of August 8, 2005 an alphabetical list of persons whose names would appear on the log, or on documents who would be either senders or recipients and whose status could effect either the existence or the possible waiver of privilege status. This was not provided. It is noted in all four of those instances, however, the privilege was refused ("N") on other grounds.

**Tab B – descriptions not matching identified authors/recipients.**

Plaintiff has enumerated in Tab B of its motion what appear to be 350 documents or so. The principal thrust here by the plaintiff is that the "entries identify an attorney, but the description of the document and the asserted privilege conflict with the individuals identified as the author or recipient." There are 11 documents selected at random by the plaintiff and as a result of the *en camera* review, privilege was allowed in 10 of those documents ("Y") and it was refused in one ("N"). Defendant's response to the complaint of plaintiff here is set forth in its two letters of September 2, 2005, one of which is in response to plaintiff's letter of August 29, 2005, and the other response to the SDM's letter of September 1, 2005 and is as follows:

Defendant contends that in its client's organization, communication by email by and among many persons, presumably with the "need to know", results in a series of emails by, through and among various authors and recipients of communication which chain of emails must be looked at as a unit to determine all of the elements associated with who is communicating to whom and for what purpose. The consequence of that is that often times an email may be simply a transmittal by a non attorney to another series of non attorneys in the defendant's business conveying a communication identified as an earlier attorney client authored document or message. The defendant says that it is clear that in that chain is the name of the attorney about which this communication revolves by either giving advice or being asked for advice. That attorney's name may not appear on the most current email that refers to communication because it is the latest email that is on the log. Defendant contends that it has explained this to the plaintiff on a meet and confer level on a number of occasions and specifically on August 15, 2005, August 16, 2005 and in an August 16, 2005 letter, as well as in the letter briefs submitted to the SDM on August 25, 2005. The SDM finds that the method through the email chain process can, and in the instance of the documents selected under Tab B do, satisfy the attorney client privilege claimed by the defendant in 10 of the 11 documents selected. In the 11th document, the email method did not form the basis for the defeat of the claim, but rather it was determined not to be entitled to privilege on other grounds (*See* Doc.1363839).

**Tab C – entries documents provided to third parties.**

None were selected at random for *en camera* examination

**Tab D – inadequate descriptions.**

Plaintiff complains in the motion that the documents listed under Tab D have descriptions on the privilege log that are cursory, overbroad and not sufficient to establish that each element

of the claimed privilege is met. Plaintiff quotes examples from defendant's log (with identifying document numbers) such as "letter re engagement as an independent contractor"; "correspondence containing legal advice from an attorney re business operations"; correspondence containing legal advice from an attorney"; and "correspondence from attorney containing information re another attorney". Plaintiff contends these are sparse, non specific and do not remotely suggest any privilege or protection is applicable. Plaintiff further contends that such descriptions interfere with assessing the scope of any waiver by the defendant including the waiver by all defendants based on their reliance on the advice of counsel as a defense to willful infringement.

Defendant responds that an *en camera* review will show that these descriptions are adequate and these documents are privileged. Defendant also notes in its letter of September 2, 2005 that LML has not included in its 60 documents for *en camera* review any documents whose description includes the phrase "legal advice re business operations."[2] The problem of course with the position by TeleCheck is that implicit in the argument is the notion that *en camera* review is a routine required step to assist the parties seeking discovery in determining what decision that party should make regarding its rights to production concerning such documents. This group of documents contains several hundred document numbers. An *en camera* review of 22 of those documents provided shows that 14 of the documents were not entitled to privilege status. Eight of the documents were entitled to privilege status. Again, while not scientific, the sampling even though small is an indication that the descriptions are woefully inadequate to tell whether the essential elements of privilege are present in the description to allow the plaintiff to make a decision whether to accept the assertion of privilege and to demand production

**Tab E – documents within scope of waiver**.

---

[2] This is not correct. See documents numbered 3, 92, 137, 157, 640, 1885, 2665, 3877 and 1362229.

This category has to do with the waiver that has been invoked by reason of the defendant's reliance on the advice of counsel in defense of the claim of willful infringement. There are approximately 80 documents listed under Tab E as being documents that plaintiff claims are not entitled to privilege because of the application of this waiver doctrine. Six documents were selected at random. *En camera* review revealed that five of those documents were not entitled to privilege status because the privilege had been waived and one was entitled to privilege status because privilege had not been waived.

Again, although a small sample, the extent to which defendant has not satisfied its burden in establishing privilege is sufficiently out of balance to be an amount to entitle plaintiff to some relief.

**Conclusions**

Much of the same background and activity between plaintiff and defendant's counsel has taken place in regard to the TeleCheck disputes as is set forth in Special Discovery Master Order No. 3 regarding ECHO and that is incorporated herein by reference.

TeleCheck furnished to the Special Discovery Master a cast of characters to the extent that it consisted of attorneys and legal assistants which included naming 71 attorneys and 23 legal assistants and their affiliation. TeleCheck's log, however, made reference to David Black (Doc. 3), Amy Berg (Doc. 467), FDMS General Counsel David Money (Doc. 113)  Frank Hinman, May Lee and Scott Betz (Doc. 113) which are not on the attorney list. The SDM was not provided with any information regarding non-attorney or non-legal assistants.

One approach that TeleCheck has made in response to the demand for production by LML is to rely quite heavily on the correctness of its logs by noting that it compares with similar defects complained of by LML in LML's logs. This comparison is referred to on pages 1

through 7 of TeleCheck's response to plaintiff's motion. The better response to that position would be to file a motion to produce a document improperly logged.

Document 134 claims attorney client and work product protection. It is logged as correspondence and a draft of a presentation reflecting advice of counsel containing legal advice from an attorney regarding business operations. An examination of the 16 page document shows that it was provided to 22 people, one of which was Alan Bethsheider, Esq. identified on the list of counsel as an attorney for TeleCheck. A fair reading of the full document demonstrates without doubt that it is a document generated and distributed widely to FirstData (the parent of TeleCheck) people in the ordinary course of business. While in some obscure way, it may, as TeleCheck states "reflect" attorney advice, that does not appear anywhere in the attorney client communication context. It is aimed as a business strategy to be used in connection with participating payor banks. The claim of work product protection is surprising, because the document has nothing to do with anticipated litigation or trial. In Document 1885, attorney client privilege is claimed. This email is not one of a chain of emails, but appears to be communication between non attorneys having to do with a plan to test and pilot acceptance of processing corporate checks electronically. The documents distributed to Cheryl Lanier "owner" and to 37 other people, one of which happened to be "Curtis Kantor" an attorney shown on the attorney list as a TeleCheck attorney. A fair reading of this entire document does not support the claim that is entitled to attorney client privilege protection. A view of many of the documents submitted at random that did not qualify for the privilege claimed gave the distinct impression to the SDM that if the review of the document was in doubt as to its privilege status, it was placed on the log, rather than being produced. Examples of documents in this category include 134, 137, 157, 543, 1885, 3877, 136229, 196000, 1723 and 2905-24.

One of the areas of plaintiff's complaint with the log had to do with alleged inadequate descriptions and specifically that group of documents where the description simply made reference to either correspondence, or notes or seeking legal advice re ". . . business operations". Ten documents were selected at random in this category and in nearly every one a description that would help in assessing whether it should be produced or not was easily available without compromising sensitive information. For Document 3 – it merely had to make reference to the fact that the communication was related to an unrated business acquisition; Document 92 – had to do with "communication regarding terms of an agreement with a customer unrelated to litigation"; Document 137 – "communication with an unrelated potential customer"; Document 157 – "inquiry regarding where to refer certain questions from a third party"; Document 640 – "communication regarding separate litigation in another court". Document 2655 – this discusses contract language in an unrelated warranty matter. Document 3877 – here work product protection is requested for this document described on log as "notes reflecting legal advice re business operations". What the content requires is that the document be produced by reason of the waiver of the attorney-client privilege in this case.

For the foregoing reasons, the SDM orders as follows:

1.    After a thorough review by TeleCheck of this Order, it will reexamine the documents that it has withheld based on privilege set forth in LML's motion of August 18, 2005 and take a final, hard look at each and every document that it continues to contend is entitled to privilege or protection.

2.    On or before seven days after the date of this Order, TeleCheck with notify counsel for LML and the SDM to what extent documents sought to be produced by LML in its motion of August 18, 2005 continue to be withheld by TeleCheck.

3.     To the extent that any documents are either required to be produced by the terms of this order or by reason of the withdrawal of a claim of privilege or protection, they shall be produced to LML within 10 days of the date herein.

4.     In respect to any documents set forth in LML's motion to produce of August 18, 2005 that continue to be withheld based on a claim of privilege or protection, they will be examined *en camera* by the SDM at a hearing to be held in the United States Courthouse of Wilmington, DE at a date, time and location to be determined between the parties and the SDM.

5.     Counsel shall arrange with the clerk of court for a location for the hearing to take place and for the presence of a court reporter.

6.     LML's motion seeking production of documents inadvertently produced by TeleCheck is denied.

7.     To the extent LML's motion seeks production of documents produced in an untimely matter, that motion is denied.

SO ORDERED:

SPECIAL DISCOVERY MASTER

DATED: September 27, 2005

15269_1.DOC                    11

# EXHIBIT A

# SPECIAL DISCOVERY MASTER'S PRIVILEGE CODES

Exhibit A to Special Discovery Order No. 4

## PRIVILEGE CODES

## ATTORNEY CLIENT PRIVILEGE [1]

A      This does not contain a communication to an attorney, and his client or agent, by his/her client, or agent in accordance with standard for the attorney client privilege. The communication does not implicate legal advice or facilitation of legal service.

B      Communication is not confidential/ or the information is not intended to be confidential.

C      Copy to counsel in this instance does not cure failure to qualify for A/C Privilege.

D      This communication is a communication between non-lawyers, and is not covered by the A/C Privilege.

E      This communication appears to be a communication generated in the ordinary course of business and not as required for attorney client privilege protection.

F      This is confidential communication that satisfies the A/C Privilege Standard.

G      The recipients of this communication have a common legal interest[2] in the litigation or the subject of the representation.

## WORK PRODUCT DOCTRINE [3]

H      This communication appears to be generated in the ordinary course of business and not in anticipation of litigation.

I      Same as above, except "in preparation for trial" rather than "in anticipation of litigation".

J      This information is not work product.
K      The recipients of this communication have a common legal interest in litigation.

L      This communication appears to be work-product communicated to and among those who have the "need to know."

M      This communication satisfies the W/P doctrine in anticipation litigation.

N      Same as above, except it was "in preparation for trial" and not "in anticipation of litigation."

O      (Code Unassigned)

## OTHER FACTORS

P      Necessary attorneys, parties or entities not identified.

---

[1-3] The Standard is that set forth in the SDM's Order dated September 23, 2005.

# EXHIBIT B

# TELECHECK DOCUMENTS EXAMINED BY SPECIAL DISCOVERY MASTER AND RULINGS

Page 1 of 7
Date: September 27, 2005
Exhibit B to Special Discovery Master
Order No. 4

**LML Patent Corp. v. TeleCheck Services, Inc., et al.**
Civil Action No.: 04-858-SLR
(District of Delaware)

The documents in these pages 1 through 7 are ruled upon in the
sequential order that they were furnished to the SDM in two 3-ring binders
on September 2 and September 8, respectively.

TELECHECK PRIVILEGE LOG 7/28/05

| Document I.D. | A/C | W/P | CI | M/P | Comments Where Necessary |
|---|---|---|---|---|---|
| 17 | N | N | — | — | P, H. |
| 104 | N | — | — | — | A, E. |
| 113 | Y | N | — | — | F, H. |
| 145 | Y | — | — | — | F. |
| 400 | Y | — | — | — | F. |
| PR 1060-81 | — | N | — | — | H. |
| PR 2306 | — | N | — | — | H. |
| PR 2500 | — | N | — | — | H. |
| PR 2830 | Y | — | — | — | F. |
| PR 2835 | N | — | — | — | P, A, E, C. |
| PR 2959 | W | W | — | — | |
| PR 3164 | N | — | — | — | P, A, E. |

Y = Privilege Allowed
N = Privilege Refused
═ = Privilege Not Claimed
W = Privilege or Protection Waived

A/C = Attorney Client Privilege
W/P = Work Product Protection
C/I = Common Interest Doctrine Protection
M/P= Mediation Privilege

LML Patent Corp. v. TeleCheck Services, Inc., et al.
Civil Action No.: 04-858-SLR
(District of Delaware)

Page 2 of 7
Date: September 27, 2005
Exhibit B to Special Discovery Master
Order No. 4

The documents in these pages 1 through 7 are ruled upon in the
sequential order that they were furnished to the SDM in two 3-ring binders
on September 2 and September 8, respectively.

TELECHECK PRIVILEGE LOG 7/28/05

| Document I.D. | A/C | W/P | CI | M/P | Comments Where Necessary |
|---|---|---|---|---|---|
| 1212263-64 | N | — | — | — | P, A, E. |
| 196000-01 | N | N | — | — | A, D, E, H.  This is the same document as log entry 113. |
| 1018124 | — | N | — | — | Cannot locate this document. |
| 26 | Y | — | — | — | F, H. |
| 57 | Y | — | — | — | F. |
| 75 | Y | — | — | — | F. |
| 89 | Y | — | — | — | F. |
| 335 | Y | — | — | — | F. |
| 467 | Y | — | — | — | F. |
| 506 | Y | — | — | — | F. |
| PR 2338-41 | Y | — | — | — | F. |
| 1362186-88 | Y | — | — | — | F. |

Y = Privilege Allowed
N = Privilege Refused
— = Privilege Not Claimed
W̅ = Privilege or Protection Waived

A/C = Attorney Client Privilege
W/P = Work Product Protection
C/I = Common Interest Doctrine Protection
M/P= Mediation Privilege

**LML Patent Corp. v. TeleCheck Services, Inc., et al.**
Civil Action No.: 04-858-SLR
(District of Delaware)

Page 3 of 7
Date: September 27, 2005
Exhibit B to Special Discovery Master Order No. 4

The documents in these pages 1 through 7 are ruled upon in the sequential order that they were furnished to the SDM in two 3-ring binders on September 2 and September 8, respectively.

TELECHECK PRIVILEGE LOG 7/28/05

| Document I.D. | A/C | W/P | CI | M/P | Comments Where Necessary |
|---|---|---|---|---|---|
| 111614 | Y | — | — | — | F. |
| 240 | N | N | — | — | A, H. |
| 270 | N | N | — | — | A, H. |
| 327 | Y | — | — | — | F. |
| 473 | Y | — | — | — | F. |
| 547 | Y | — | — | — | F. |
| 645 | Y | — | — | — | F. |
| 668 | Y | — | — | — | F. |
| PR 215255 | N | — | — | — | A, E, C. |
| 1362839 | N | — | — | — | A, C. E. |
| PR 3747-50 | Y | — | — | — | F. |
| 85 | Y | — | — | — | F. |

Y = Privilege Allowed
N = Privilege Refused
— = Privilege Not Claimed
W̄ = Privilege or Protection Waived

A/C = Attorney Client Privilege
W/P = Work Product Protection
C/I = Common Interest Doctrine Protection
M/P= Mediation Privilege

LML Patent Corp. v. TeleCheck Services, Inc., et al.
Civil Action No.: 04-858-SLR
(District of Delaware)

Page 4 of 7
Date: September 27, 2005
Exhibit B to Special Discovery Master
Order No. 4

The documents in these pages 1 through 7 are ruled upon in the sequential order that they were furnished to the SDM in two 3-ring binders on September 2 and September 8, respectively.

## TELECHECK PRIVILEGE LOG 7/28/05

| Document I.D. | A/C | W/P | CI | M/P | Comments Where Necessary |
|---|---|---|---|---|---|
| 122 | Y | — | — | — | F. |
| 125 | N | — | — | — | A, E, C. |
| 334 | Y | — | — | — | F. |
| PR 1723 | N | — | — | — | A. |
| PR 3851 | — | N | — | — | H. |
| FDC 4003569 | — | — | — | — | More information is needed here about distribution and the columns of five digit numbers beginning with first page. |
| 43238 | Y | — | — | — | F. |
| 113485 | N | N | — | — | A, B, H. |
| PR 2905-24 | W | W | — | — |  |
| PR. 4381 | W | W | — | — |  |
| PR 4383 | Y | Y | — | — | F, M. |
| PR 4405 | W | W | — | — |  |

Y = Privilege Allowed
N = Privilege Refused
— = Privilege Not Claimed
W = Privilege or Protection Waived

A/C = Attorney Client Privilege
W/P = Work Product Protection
C/I = Common Interest Doctrine Protection
M/P = Mediation Privilege

LML Patent Corp. v. TeleCheck Services, Inc., et al.
Civil Action No.: 04-858-SLR
(District of Delaware)

Page 5 of 7
Date: September 27, 2005
Exhibit B to Special Discovery Master
Order No. 4

The documents in these pages 1 through 7 are ruled upon in the sequential order that they were furnished to the SDM in two 3-ring binders on September 2 and September 8, respectively.

TELECHECK PRIVILEGE LOG 7/28/05

| Document I.D. | A/C | W/P | CI | M/P | Comments Where Necessary |
|---|---|---|---|---|---|
| PR 4563 | Y | N | — | — | F, H. |
| PR 4627 | W | W | — | — | |
| 3 | N | — | — | — | P. |
| 92 | Y | — | — | — | F. |
| 137 | N | — | — | — | P, A, E. |
| 157 | N | — | — | — | A. |
| 640 | — | — | — | — | TeleCheck has advised that it has agreed to produce this document. |
| PR 1885 | N | — | — | — | P, A, C, E |
| PR 2655 | Y | — | — | — | F. |
| PR 2664 | N | — | — | — | P. |
| PR 3877 | — | N | — | — | H. |
| 1362229 | — | N | — | — | H. |

Y = Privilege Allowed
N = Privilege Refused
— = Privilege Not Claimed
W̄ = Privilege or Protection Waived

A/C = Attorney Client Privilege
W/P = Work Product Protection
C/I = Common Interest Doctrine Protection
M/P= Mediation Privilege

Page 6 of 7
Date: September 27, 2005
Exhibit B to Special Discovery Master
Order No. 4

LMI, Patent Corp. v. TeleCheck Services, Inc., et al.
Civil Action No.: 04-858-SLR
(District of Delaware)

The documents in these pages 1 through 7 are ruled upon in the
sequential order that they were furnished to the SDM in two 3-ring binders
on September 2 and September 8, respectively.

## TELECHECK PRIVILEGE LOG 7/28/05

| Document I.D. | A/C | W/P | CI | M/P | Comments Where Necessary |
|---|---|---|---|---|---|
| 543 | N | N | — | — | A, E, B. H. |
| PR 0941 | Y | — | — | — | F. |
| PR 3333 | Y | — | — | — | F. |
| PR 4377 | W | W | — | — | |
| FDC 4000793 | — | — | — | — | Produced 7/29/05.  Not necessary to provide to SDM. |
| 134 | N | N | — | — | A, C, E, H, J. |
| 299 | Y | — | — | — | F. |
| 471 | Y | — | — | — | F. |
| PR 2424 | Y | — | — | — | F. |
| PR 3051 | Y | — | — | — | F. |
| 119 | Y | — | — | — | F. |
| 320 | Y | — | — | — | F. |

Y = Privilege Allowed
N = Privilege Refused
= Privilege Not Claimed
W = Privilege or Protection Waived

A/C = Attorney Client Privilege
W/P = Work Product Protection
C/I = Common Interest Doctrine Protection
M/P= Mediation Privilege

Page 7 of 7
Date: September 27, 2005
Exhibit B to Special Discovery Master
Order No. 4

**LML Patent Corp. v. TeleCheck Services, Inc., et al.**
Civil Action No.: 04-858-SLR
(District of Delaware)

The documents in these pages 1 through 7 are ruled upon in the
sequential order that they were furnished to the SDM in two 3-ring binders
on September 2 and September 8, respectively.

TELECHECK PRIVILEGE LOG 7/28/05

| Document I.D. | A/C | W/P | CI | M/P | Comments Where Necessary |
|---|---|---|---|---|---|
| 498 | Y | — | — | — | F. |
| 499 | Y | — | — | — | F. |
| 1770-1771 | Y | — | — | — | F. |
| 3228-3230 | W | W | — | — | |
| 109-488 | Y | — | — | — | F. |
| 715 | Y | — | — | — | F. |
| 3151 | W | W | — | — | |
| 3218 | W | W | — | — | |
| 3763 | Y | N | — | — | F, H. |
| 4359 | W | W | — | — | |

Y = Privilege Allowed
N = Privilege Refused
— = Privilege Not Claimed
W̄ = Privilege or Protection Waived

A/C = Attorney Client Privilege
W/P = Work Product Protection
CI = Common Interest Doctrine Protection
M/P= Mediation Privilege