

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LML PATENT CORP.,

        Plaintiff,

      v.

TELECHECK SERVICES, INC.,
ELECTRONIC CLEARING HOUSE, INC.,
XPRESSCHEX, INC. and NOVA
INFORMATION SYSTEMS, INC.,

        Defendants.

C.A. 04-858 (SLR)

## JOINT PROPOSED CLAIM CONSTRUCTION STATEMENT

Pursuant to the Court's Rule 16 Scheduling Order in this matter, the Parties hereby submit the following claim charts to present their respective, proposed constructions of disputed claim terms and their proposed constructions of agreed claim terms in the patent-in-suit, namely, U.S. Patent No. 5,484,988 ("the '988 patent").

# Proposed Constructions of Disputed Claim Terms

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **any bank check** (claims 1, 8) | Any regular check used to draw funds from a normal bank or credit union checking account | any type of check drawn on a financial institution |
| **any consumer bank check** (claim 9) | Any regular check used to draw funds from a normal bank or credit union consumer checking account | same meaning as the phrase "any bank check" set forth above, with the added limitation that the check be "drawn against a consumer bank account" |
| **any** (claims 1, 8, 9) | LML believes that this term should not be separately construed from the entire element in which it appears in the claims, namely the "any bank check" or "any consumer bank check" language construed below. In any event, this plain English term needs no construction. | one or some indiscriminately of whatever kind |
| **consumer bank account information** (claims 1, 2, 3, 8, 9) | Information relating to a consumer's bank account including the MICR line (magnetic ink character recognition line) | only the ABA/transit routing number and bank account number |
| **without using the bank check as a negotiable instrument** (claim 1) | Where the paper check is used as a source of information, and is not accepted or processed | the bank check, at no time, takes on the status of a negotiable instrument |
| **without using the check as a negotiable instrument** (claim 8) | Where the paper check is used as a source of information, and is not accepted or processed | the check, at no time, takes on the status of a negotiable instrument |

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **without using a bank check as a negotiable instrument** (claim 9) | Where the paper check is used as a source of information, and is not accepted or processed | the check, at no time, takes on the status of a negotiable instrument |
| **subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations** (claim 8) | Subsequently transmitting the information relating to the transaction to a bank for subsequent automated clearing house operations | electronically communicating with an automated clearing house for transferring funds electronically based upon the consumer bank account information obtained from any bank check presented at the point-of-sale |
| **enabling automated clearing house communication for transferring funds** (claims 1, 9) | Enabling communication with an automated clearing house for electronically transferring funds | electronically communicating with an automated clearing house for transferring funds electronically based upon the consumer bank account information obtained from any bank check presented at the point-of-sale |
| **for the sole purpose** (claims 2, 8 and 9) | For the only purpose | Defendants contend that this term needs no construction. |
| **adapted to receive consumer bank account information from any bank check** (claim 1) | adapted to receive consumer bank account information from any bank check | adapted to read consumer bank account information directly from any bank check |

2

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **means for reading magnetic ink character recognition numbers appearing on a consumer check** (claim 2) | This limitation should be construed pursuant to 35 U.S.C. Section 112(6). The recited function is "reading magnetic ink character recognition numbers appearing on a consumer check." The structures in the '988 patent that perform that function is any mechanism such as a MICR check reader, optical character recognition ("OCR") equipment, a keyboard for manual entry, or equivalent. | This limitation should be construed pursuant to 35 U.S.C. Section 112(6). The recited function is "reading magnetic ink character recognition numbers appearing on a consumer check." The structures described in the '988 patent that perform that function are a MICR reader and optical character recognition equipment. |
| **reading means for reading magnetic ink character recognition numbers on any consumer bank check** (claim 9) | This limitation should be construed pursuant to 35 U.S.C. Section 112(6). The recited function is "reading magnetic ink character recognition numbers appearing on a consumer check." The structures in the '988 patent that perform that function is any mechanism such as a MICR check reader, optical character recognition ("OCR") equipment, a keyboard for manual entry, or equivalent. | This limitation should be construed pursuant to 35 U.S.C. Section 112(6). The recited function is "reading magnetic ink character recognition numbers on any consumer bank check." The structures described in the '988 patent that perform that function are a MICR reader and optical character recognition equipment. |
| **verifying that account numbers were accurately read at the point of sale** (claim 8) | Verifying that the account numbers from the check were read accurately at the point of sale terminal | visually confirming that account numbers were accurately read by reference to the source document |

3

## Proposed Constructions of Agreed Claim Terms

| Claim Term | Parties' Agreed Proposed Construction |
|---|---|
| **consumer** (claim 9) | person, business or corporation |
| **second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using the bank check as a negotiable instrument** (claim 1); **second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using a bank check as a negotiable instrument** (claim 9) | This function is written in means-plus-function format pursuant to 35 U.S.C. 112(6).<br><br>The recited function of this limitation is enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using the [a] bank check as a negotiable instrument.<br><br>The structures disclosed in the patent for performing the recited function of this limitation are a modem, network interface, enhanced radio transmission interface, satellite communication interface or equivalent.[1] |
| **automated clearing house** (claims 1, 8, 9) | an automated clearing house including, but not limited to, the national U.S. clearing house sometimes referred to as the "ACH" |

4

---

[1] While the parties agree to the recited function of this claim element pursuant to 35 U.S.C. 112(6), the parties dispute the meaning of limitations within that function, as set forth in the Parties' Proposed Construction of Disputed Claim Terms and the parties' briefs.

DATED: October 7, 2005

_/s/ Mary B. Matterer_
Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS
& WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

_Counsel for Plaintiff_
_LML Patent Corp._

_/s/ Timothy Devlin_
William J. Marsden, Jr. (I.D. No. 2247)
Timothy Devlin (I.D. No. 4241)
Sean Hayes (I.D. No. 4413)
FISH & RICHARDSON P.C.
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
302.652.5070
marsden@fr.com
hayes@fr.com

_Counsel for Defendant_
_TeleCheck Services, Inc._

_/s/ Francis DiGiovanni_
Francis DiGiovanni (I.D. No. 3189)
CONNOLLY BOVE LODGE & HUTZ
LLP
The Nemours Building
1007 N. Orange Street
Wilmington, Delaware 19801
302.658.9141
fdigiovanni@cblh.com

_Counsel for Defendants_
_Electronic Clearing House, Inc._
_and Xpresschex, Inc._

_/s/ Richard D. Kirk (rk0922)_
Richard D. Kirk (I.D. No. 922)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
302.429.4208
rkirk@bayardfirm.com

_Counsel for Defendant_
_NOVA Information Systems, Inc._

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2005, I electronically filed a JOINT PROPOSED
CLAIM CONSTRUCTION STATEMENT with the Clerk of Court using CM/ECF which
will send notification of such filing(s) to the following:

>Richard K. Herrmann
>Mary B. Matterer, Esq.
>Morris James Hitchens & Williams
>222 Delaware Avenue, 10th Floor
>Wilmington, DE  19801-4226
>
>Richard D. Kirk, Esq.
>The Bayard Firm
>222 Delaware Avenue, 9th Floor
>Wilmington, DE  19899
>
>Collins J. Seitz, Jr., Esq.
>Connolly Bove Lodge & Hutz LLP
>The Nemours Building
>1007 North Orange Street
>Wilmington, DE  19801

I hereby certify that on October 7, 2005, I have sent by Electronic mail, the

document(s) to the following non-registered participants:

Robert Jacobs, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA  90045

Russell E. Levine, Esq.
Kirkland & Ellis LLP
200 E. Randolph Dr.
Chicago, IL 60601

>Mark C. Scarsi, Esq.
>O'Melveny & Myers LLP
>400 S Hope Street
>Los Angeles, CA 90071

>_/s/ Timothy Devlin_
>Timothy Devlin

**Kim Kilby**

| | |
|---|---|
| **From:** | William Marsden |
| **Sent:** | Friday, October 07, 2005 5:03 PM |
| **To:** | Kim Kilby |
| **Subject:** | FW: Activity in Case 1:04-cv-00858-SLR LML Patent Corp. v. Telecheck Services, et al "Claim Construction Chart" |

------------------------------------------

**From:** ded_nefreply@ded.uscourts.gov[SMTP:DED_NEFREPLY@DED.USCOURTS.GOV]
**Sent:** Friday, October 07, 2005 5:02:21 PM
**To:** ded_ecf@ded.uscourts.gov
**Subject:** Activity in Case 1:04-cv-00858-SLR LML Patent Corp. v. Telecheck Services, et al "Claim Construction Chart"
**Auto forwarded by a Rule**

***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

## U.S. District Court

## District of Delaware

Notice of Electronic Filing

The following transaction was received from Devlin, Timothy entered on 10/7/2005 at 5:02 PM EDT and filed on 10/7/2005

| | |
|---|---|
| **Case Name:** | LML Patent Corp. v. Telecheck Services, et al |
| **Case Number:** | 1:04-cv-858 |
| **Filer:** | Telecheck Services, Inc. |
| | LML Patent Corp. |
| | Electronic Clearing House, Inc. |
| | Xpresschex Inc. |
| | Nova Information Systems, Inc. |

**Document Number:** 281

**Docket Text:**
CLAIM Construction Chart by LML Patent Corp., Telecheck Services, Inc., Electronic Clearing House, Inc., Xpresschex Inc., Nova Information Systems, Inc.. (Devlin, Timothy)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=10/7/2005] [FileNumber=110195-0]
[c1a8086d1be0a73febe7e3287051864e94b288ca412ef97f3fad0b7554df921d859f

10/7/2005

66708f7d47bdd1416b36e130da9e3e847f47fcdbcd7782aef4b365f1526a]]

**1:04-cv-858 Notice will be electronically mailed to:**

Timothy Devlin      tdevlin@fr.com, manis@fr.com

Francis DiGiovanni      fdigiovanni@cblh.com, ddunmeyer@cblh.com

Tara D. Elliott      elliott@fr.com, kilby@fr.com;wsd@fr.com

Richard K. Herrmann      rherrmann@morrisjames.com,

Richard D. Kirk      bankserve@bayardfirm.com, rkirk@bayardfirm.com

William J. Marsden , Jr      marsden@fr.com, manis@fr.com;wsd@fr.com;sub@fr.com;kilby@fr.com

**1:04-cv-858 Notice will be delivered by other means to:**

B

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of Robert H. Hills and Henry R. Nichols

Serial No. NOV
        13
Filed:   1992

Group Art Unit:

Examiner:

FOR:  CHECKWRITING POINT OF SALE SYSTEM

*        *        *        *        *

Hon. Commissioner of Patent
   and Trademarks
Washington, D.C. 20231

Dear Sir:

Enclosed please find the following:

1.    Declaration and Power of Attorney of Henry R. Nichols and
      Robert R. Hills (separate documents)

2.    Verified Statement Claiming Small Entity (Inventor)
      (separate documents)

3.    Specification, 9 Claims, and Abstract

4.    8 informal drawing sheets (11 figures)

5.    Submitted herewith is a check for $395.00 to cover the
      cost of the filing. Any deficiency or overpayment should
      be charged or credited to the Deposit Account of Arter &
      Hadden, No. 01-2520.

Respectfully submitted,

Jon L. Roberts
Registration No. 31,293
Arter & Hadden
1801 K Street, N.W.
Suite 400K
Washington, D.C. 20006

DATED:  November 13, 1992

LML-EP 000080

ABSTRACT

 1

 2       A point of sale system designed to read information from a

 3   consumer's check, credit card, or manual input with a subsequent

 4   debiting of a consumer's account and crediting a merchant's account

 5   for the goods or services provided.  Point of sale terminals are

 6   designed to accept a form of credit card with a consumer's bank

 7   account information encoded thereon or in the alternative to read

 8   the MICR number from a consumer's check in order to verify that a

 9   consumer has appropriate credit to conduct the transaction with a

10   given merchant.  Thereafter the transaction of that information is

11   transmitted to a central computer system which verifies the

12   consumer's credit worthiness and stores the transaction event

13   information for subsequent bank reconciliation via the ACH network.

14   The invention eliminates the need for paper checks with all bank

15   reconciliation being accomplished electronically.

16

17

18

19   jlr-1808

20

-31-

LML-EP 000081

395-201-A 797571

## CHECKWRITING POINT OF SALE SYSTEM

INVENTORS:    ROBERT H. HILLS AND HENRY R. NICHOLS

This application is a continuation of 07/975717 now abandoned.

### FIELD OF THE INVENTION

This invention relates to the field of Point-of-Sale systems and more particularly the integration and processing of purchases whereby a check is used as the basic source of identification of the individual and the bank and bank account be debited.

### BACKGROUND ART

Numerous devices exist for processing checks.  For example, U.S. patent number 4,933,536 to Lindemann, et al, describes a check processing device which is used together with a Point-of-Sale terminal. This particular device involves copying and taking a picture of an individual whereby a dishonored check could then be traced to the person who has offered it.

U.S. Patent No. 4,810,866 to Lloyd, Jr., describes a check validation system again located together with a Point-of-Sale system for imprinting and otherwise physically dealing with a check.

Other systems also deal with an apparatus for handling checks at a point of sale.  For example, U.S. Patent No. 4,743,743 to Fukatsu describes one such transaction apparatus where a check is examined by a reader. U.S. Patent No. 4,672,377 to Murphy, et al. describes a check authorization system wherein a check is imprinted with a bar code and information concerning customers which are disclosed stored in a database.  U.S. Patent No. 3,845,470 to Schuller, involving a vending system using in a modified form of a check which is imprinted with identification codes, when is used by someone attempts to use the check in

-1-

LML-EP 000082

1   purchasing goods, and services, and wherein a vending operation will

2   not place, if information associated with the check is not valid in
    *the order*

3   a particular database.

4       Other check-based financial systems have also been the subject

5   of invention. Patent No. 4,617,457 addresses an ATM or automatic
    *U.S.*

6   telemachine form of cashing checks. Such systems create a picture
    *teller machine*

7   of the check involved and also involves checking against a

8   specialized database to insure that the check is a "valid" one (see

9   also Patent No. 4,580,040 to Granzow et al.).
    *U.S.*

10      Another generic category of financial systems deals with

11  methods of handling the financial transactions apart from the

12  physical handling of the check itself. For example, Patent No.
    *U.S.*

13  3,824,544 to Simjian describes a merchant issued "check" which can

14  then be used in the purchase of goods and services and upon

15  purchase, a specialized code is evaluated to determine if the check

16  is being validly utilized.

17  Patent No. 4,404,649 to Nunley et al. describes a document
    *U.S.*

18  processing system which generally discloses a method of reading

19  checks for processing a wide variety of financial documents.

20  Patent No. 4,523,330 to Caine also describes a method for
    *U.S.*

21  processing financial documents which systems also includes a Point-

22  of-Sale terminal for generating image data from checks as they are

23  being processed. This patent is drawn principally to the actual

24  terminal itself.

25  Patent No. 4,673,802 to Ohmae et al. describes a central
    *U.S.*

26  processing system having stored data relating to the accounts of

-2-

1    users, which users are approved or disapproved at the Point-of-Sale

2    based upon information in the database.

3    Finally, Patent No. 4,678,896 to Carlson et al. describes a

4    Point-of-Sale system whereby apparatuses provided to restore the

5    processing and imprinting checks.

6    All of these above patents deal with the specific problem of

7    how to accept a check from customer for the purchase of goods and

8    services. It does not in anyway address the subsequent processing

9    of checks or indeed address that the issue in anyway of how checks

10    are cleared through the normal automatic check handling

11    clearinghouse operation that exist the financial world. Thus, the

12    interaction of these systems with the ACH process is not addressed

13    in anyway. This is particularly important since if any Point-of-

14    Sale check handling system is to interact with the ACH mechanism it

15    must adhere to that processing scheme and indeed lend itself to use

16    with a processing scheme.

17    It is an objective of the present invention to be adaptable

18    for use with the ACH system and to be smoothly incorporated into

19    it. In this fashion, it will immediately be useful for a much

20    wider range of financial transactions above and beyond those

21    contemplated by the background I discussed above.

22

23    SUMMARY OF THE INVENTION

24    The present invention comprises a process and apparatus which

25    may be employed for the purpose of effecting payments for point-of-

26    sale purchases of goods and services paid from consumer funds

27    secured in bank checking or depository accounts. Each sale or

-3-

LML-EP 000084

1    "Transaction Event" would be an electronic and "paperless" event
2    thereby eliminating reliance on accepting and processing commercial
3    bank drafts (personal or corporate checks) and the physical
4    handling of those bank drafts thus replacing commercial bank drafts
5    at the point-of-sale.

6    The system is intended to be made available to subscribing
7    merchants, businesses, and individuals, herein referred to ~~in this~~
8    ~~application~~ as "system subscribers" wishing to employ the method
9    and apparatus of the present invention for the electronic
10   processing and settlement of consumer purchases. Further, ~~the~~
11   ~~present invention's~~ of the present invention operational parameters allow freedom from
12   customary state or other geographically limiting criteria typical
13   when accepting and processing "paper" checks. The system is
14   designed to act with the national authorization and electronic
15   settlement network known ~~know~~ as the ACH ~~("Automated Clearing House")~~
16   system.

17   The system is designed to perform in a fully automated manner
18   enabling each Transaction Event to be processed by a system
19   subscriber as a point-of-sale transaction in the presence of the
20   consumer. When the transaction event is "approved" funds are
21   debited from an authorized consumer account for credit to the
22   system subscriber and electronic settlement by ACH deposits the transaction amount ~~deposit~~ to the
23   subscriber's designated depository account. Authorized access to
24   consumer accounts and credits to system subscriber depository
25   accounts are ~~would be~~ performed as "Off-Line" transactions by means of
26   Electronic Funds Transfer ("EFT") through the ACH Network or
27   through the Federal Reserve System.

-4-

1    The invention comprises a point-of-sale processing system

2    comprising electronic data processing equipment which allows

3    individual services selections which provide automated, electronic

4    processing from bank checking or depository accounts. It is the

5    objective of the present invention to automate the point-of-sale

6    environment for processing consumer purchases of goods and services

7    which, other than for the ~~applicants'~~ system, would necessitate the *of the present invention*

8    more traditional acceptance and processing of commercial bank

9    drafts (personal and/or corporate checks). Individual Transaction

10   Events ~~would be~~ administered under the ~~applicants'~~ system *of the present invention by* *are*

11   initiating a terminal authorization inquiry and continuing through

12   the electronic settlement of funds representing the Transaction

13   Event from the pre-approved consumer banking accounts.

14   It is a further objective of the present invention to

15   eliminate the need for "paper" checks as an accepted means of

16   consumer payment. In the place of personal and business checks,

17   consumers would be provided ~~their~~ free and unrestricted access to

18   funds secured in bank accounts of various types by means of

19   preauthorized electronic events. System subscribers electronically

20   communicate with the ~~invention's~~ data center for individual *of the present invention*

21   Transaction Event authorizations which, upon reconciliation of a

22   day's activity, result in an ~~Electronic Funds Transfer ("EFT")~~ by *EFT*

23   means of the Automated Clearing House accommodating an "Off-Line"

24   debiting of preauthorized consumer Transaction Events from

25   authorized accounts. Thereafter, each system subscriber ~~would be~~ *is*

26   credited with the total of all such daily authorized Transaction

27   Events to its designated banking depository account.

-5-

LML-EP 000086

1    The present invention comprises logic which allows the
2    following services which when individually performed or where
3    combined with other services establish a wholly unique processing
4    medium enabling preauthorized access to consumers' checking account
5    or bank depository reserves.

6    Authorization - This service supports electronic communication
7    from point-of-sale to the system's central computer. The data
8    center stores positive and negative files concerning consumer
9    accounts thereby providing accurate inquiry responses regarding the
10   current posting status of a consumer's banking account and
11   signaling the system subscriber that said account may be reasonably
12   relied upon for consummating a Transaction Event (i.e., an
13   "Approval") or, where listed as delinquent, indicating that the
14   account ~~could~~ *may* not be so relied upon (i.e., a "Denial").

15   Check Replacement - This capability operates as an extension
16   of Authorization enabling the system subscriber the capability of
17   completing a Transaction Event by electronically logging the sale
18   whereupon a Transaction Event Slip will be printed or manually
19   prepared for consumer execution at the point-of-sale. By
20   execution *of the Transaction Event Slip* the consumer authorizes the electronic accessing of
21   funds secured in his/her authorized banking account in lieu of the
22   more traditional method of issuing personal and business checks.
23   Funding settlement to the system subscriber would be effectuated by
24   means of Electronic Funds Transfer via ACH or the Federal Reserve
25   System as opposed to physically processing and transferring checks
26   among banks.

-6-

LML-EP 000087

1    Bank Transaction Card – As part of this invention on "Off-
2    Line" Debit Card is established on which is stored the information
3    relating to the banking account from which funds representing the
4    Transaction Event would be debited for payment to the system
5    subscriber. This information may be stored on the card itself in
6    encrypted or unencrypted form or *may* be stored in the central computer
7    where access to such information is gained via special control
8    characters or access codes stored on the card. Electronic
9    authorization for withdrawal of funds from the cardholder's account
10   and subsequent electronic settlement procedures ~~would~~ remain
11   essentially identical to processing under the Check Replacement
12   service described above. Information relating to the consumer-
13   cardholder and the appropriate banking account to be debited for a
14   Transaction Event will be encoded upon the magnetic stripe portion
15   of the plastic, and terminal-readable, card.

16   Thus, the overall objective of the present invention is to
17   provide and support an alternate means for consumer payments for
18   goods and services that operates to replace commercial bank drafts
19   in the point-of-sale environment. Simultaneously, the present
20   invention assures consumers greater access *to and use of* ~~and use~~ to funds in
21   personal or corporate banking accounts. Further, the system
22   provides system subscribers a significantly improved prospect of
23   collecting the underlying monies for Transaction Events, reduced
24   time for the collecting the cash receipts from Transaction Events,
25   and a pronounced lowering of the present cost of cumbersome
26   procedures otherwise mandated by the existing ACH system for
27   accepting and processing commercial bank drafts.

-7-

LML-EP 000088

1    A further objective of the present invention is to

2  significantly reduce the use of checks ~~as a means of conducting~~

3  purchases of goods or services and to further reduce the consumers

4  reliance on credit cards or cash for transaction events ~~as well.~~

5    **DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT**

6    The present invention begins with the electronic recording of

7  consumer information ~~at a system subscribers~~ *subscriber's* location using a ~~at a~~

8  point-of-sale terminal.  This information is obtained in the

9  presence of the consumer and occurs prior to any "Approval" either

10 for the Transaction Event or *for* the ultimate crediting of the System

11 subscriber's designated depository account.  A Transaction Event

12 involves a series of events initiated by a system subscriber's

13 request to sell goods or services by payment from funds secured in

14 a consumer's banking account.  First, the consumer's banking

15 account status will be verified through accessing ~~the invention's~~

16 central computer files. *of the present invention*  Verification that an account may be

17 accessed is established alternatively by means of an encoded,

18 magnetic strip card, or by input of account identification numbers

19 from a consumer's bank account.  A more traditional identification

20 of the consumer could also occur including visual examination of

21 driver's license or similar and acceptable picture "ID" however

22 this is not *considered* part of the *present* invention.

23    As an integral portion of each Transaction Event, the system

24 subscriber's location, date and time, and requested sale amount is

25 automatically logged into the system when a system subscriber first

26 accesses the invention.  Finally, a Transaction Event Slip ("Sales

27 Slip") will be produced by *a* printer integral to the point-of-sale

-8-

LML-EP 000089

terminal and executed by the consumer in the amount of the stated purchase with inscribed language defining the Transaction Event and specifically providing consumer authorization for electronic access to his/her banking account. Thereafter, the consumer account will be debited and the proceeds credited to the system subscriber's designated depository account along with all other similar Transaction Events representing the total of the system subscriber's daily activity. Debiting of consumer accounts and settlement deposits to each system subscriber is performed by means of Off-Line electronic funds transfer through and by the ACH or Federal Reserve System.

Equipment Configuration - The present invention can operate with nearly every conceivable point-of-sale equipment system. The central computer system accepts data transmitted from the system subscriber's existing point-of-sale equipment or that which is added to augment service performance. The point of sale terminal of the present invention is implemented in a number of ways, most preferred, however, being activation under a fully automated format. Such a fully automated system generally comprises a dual-port terminal with magnetic stripe reading capabilities interfaced with a logging printer capable of providing individual Transaction Event Slips for consumer execution, and a MICR check reader, optical character recognition ("OCR") equipment, or other device. Variations to this configuration are particularly possible where the system of the present invention is to be activated under a "Split-Dial" feature installed to function within the operational parameters of existing point-of-sale equipment primarily dedicated to bankcard ("credit card")

-9-

LML-EP 000090

1  processing. *It is contemplated* ~~The present invention contemplates~~ that services may

2  in the future be administered *using the present invention with* ~~on~~ a singular point-of-sale hardware

3  device which, as a function of its design, would incorporate all or

4  most of the service capabilities of an integrated terminal, logging

5  printer, and MICR Check Reading device. The ~~system~~ *of the present invention* can alternately

6  be interfaced with electronic cash registers now on the market.

7  Communications links from point-of-sale terminals to the

8  central computer of the present invention will typically be in *the* form

9  of telephonic network communications over a public switched

10  telephone network *("PSTN") or over* ~~(PSTN) or~~ other approved networks. Transaction

11  Event verification will occur as a result of point-of-sale terminal

12  access to the central computer's positive and/or negative data

13  files. "Approved" or "Declined" notifications are made to the

14  Point-of-Sale device over the PSTN. All data files will be

15  centrally located and maintained on the invention's central

16  computer data bases. Portions of the data base include but are not

17  limited to third party data files such as the Shared Check

18  Authorization Network ("SCAN") (trademark) data base.

19  Individual *transactions* or groupings of transactions are first approved by

20  soliciting an "Authorization" prior to the completion of any

21  requests for electronic funds transfer. To maintain an accurate

22  status of file information for authorizations to subscribing

23  merchants, businesses, and/or individuals, separate data bases are

24  maintained. Current cardholder or banking account status are

25  updated daily and instantly available for point-of-sale inquiry for

26  Transaction Event authorizations.

-10-

LML-EP 000091

1    updated daily and instantly available for point-of-sale inquiry for

2    Transaction Event authorizations.

3      System subscribers' point-of-sale equipment are interfaced to

4    the invention's central computer by means of telephonic network

5    able to support communication from a plurality of point-of-sale

6    terminals.  Programming of the point-of-sale terminal causes an

7    automatic "Dial-Up" to the central computer and provides an

8    automatic query and response affirming or denying the Transaction

9    Event. The addition of local entry hubs may be installed to better

10    facilitate the speed or economics of communications with the data

11    files.  Alternatives to telephonic networks may involve use of

12    satellite communications or enhanced radio transmissions.

13    Similarly, the system's data files and associated Check Replacement

14    Service are contemplated to be responsive to emerging point-of-sale

15    devices intended to seek authorizations by the alternate means of

16    voice pattern recognition, fingerprint identification, retina scan,

17    "smart" chips, and/or consumer or check image and/or signature

18    broadcasting.

19    Brief Description of the Drawings

20    Figure 1 -     System overview of the present invention

21    Figure 2 -     The point-of-sale terminal

22    Figure 3 -     The central Computer System

23    Figures 4-9 -     The process Data Flow

24    Figure 10 -     Transaction Event Sales Slip

25    Figure 11 -     Manual Transaction Event Sales Slip

26

LML-EP 000092

Detailed Description of the Preferred Embodiment

    Referring to Figure 1 an overall schematic of the present
invention is described.  Point-of-sale terminals 300 communicate
normal PSTN telephone lines with a central computer system 302
which in turn communicates with a banking institution 304 for
purposes of debiting consumer accounts and crediting system
subscriber accounts.  The banking institution performs its function
via normal automated clearing house ("ACH") transactions 306.

    Referring to Figure 2 the point-of-sale terminal is described.
The point-of-sale terminal comprises several different entry means.
A key board 310 can be used to input consumer information manually.
Alternatively a card reader 312 can be used whereby the magnetic
stripe on the card is read by the point-of-sale terminal and
finally a check reader 314 is also included to read the MICR number
on checks as a substitute for either a specific card or key board
input.  These various input means provide information to a micro-
processor 316 which comprises logic means 318, memory means 320,
and communication means 322.  The logic means 318 comprises logic
which allows the information received from the various input means
to be processed and stored in the memory 320.  The logic means
further drives a display 324 which provides a visual output of the
account number of the consumer for verification.  The communication
means 322 allows the subscriber terminal to communicate with the
central computer 302 for purposes of processing the consumer's
purchase.

    Referring to Figure 3 the central computer system 329 is
described.  The central computer system receives input from a

-12-

1   plurality of point-of-sale terminals which provide transaction

2   information from a system subscriber and a consumer desiring to

3   purchase goods or services.  The central computer system comprises

4   a system subscriber 330 file which is a file of those merchants who

5   have elected to use the present invention for processing purchases.

6   The central system also comprises an approved consumer file 332

7   which stores the names of those consumers who have already been

8   approved for allowing purchases to take place through the various

9   input means as well as a third party database such as the SCAN

10  (trademark) data base relating to consumer credit.  The computer

11  system also comprises a communications means 334.    The

12  communication means communicates with other outside third party

13  data bases which allows the consumer, to allow any consumer that has not been approved by

14  the system, to have a rapid check of the status of the consumer's

15  banking account and of whether the consumer has current outstanding

16  returns (i.e. bad checks).  Once this SCAN (trademark) or other outside

17  third party data base search is performed and where an approval is

18  given, the approved consumer file 332 is updated with the name of

19  the new approved consumer.

20        As presently configured the central computer 329 already has

21  a third party database known as the SCAN (trademark) database 333

22  resident on the central computer.  Thus credit worthiness can be

23  checked using this SCAN database.  The SCAN (trademark) database is

24  updated daily.

25        The communication means 334 also communicates with a banking

26  institution 338 which instructs to instruct the bank to debit the account of

27  the consumer and credit the account of the system subscriber

-13-

LML-EP 000094

1   (merchant) with the amount of the purchase.  These transactions

2   then take place via the normal ACH transaction process.

3       Referring to Figure 4 the process begins by a consumer

4   presenting a specimen or "blank" check complete with MICR number to

5   the system subscriber (the merchant) 100.  The system subscriber

6   next determines, if the check meets appropriate store policy

7   procedures 102, that the check has appropriate information on the

8   check.  If the check does not meet the store policies, it is

9   returned to the consumer 104.  If the check does meet appropriate

10  store policies the on-line verification process proceeds 106.  The

11  subscriber begins the process by first pressing the appropriate key

12  on a terminal to access the host computer 108.  Thereafter the

13  point of sale terminal prompts the system subscriber to enter the

14  appropriate MICR number 110.  The system subscriber then enters the

15  appropriate MICR number either manually or by passing the check

16  through a check reader which determines the MICR number 112.

17      Referring to Figure 5 the subscriber would verify that the

18  numbers appearing on the terminal match the MICR numbers on the

19  check 114.  During the comparison, the subscriber determines that

20  the check number compares accurately 116 to the number displayed on

21  the terminal.  If they do compare the verification process proceeds

22  120.  If the check numbers do not compare with that of the terminal

23  the system subscriber clears the terminal and begins the

24  transaction process again 118.  If the process is to be

25  reinitiated, the subscriber enters the MICR number into the point

26  of sale terminal 130.  Thereafter the system subscriber compares

27  the MICR numbers as before 132.  If the MICR numbers compare to the

-14-

1   system display 134 the process proceeds.  If the numbers do not

2   compare 136 the check is returned to the consumer and the process

3   terminates 137.

4       Referring to Figure 5, if the verification process proceeds

5   the terminal next prompts the system subscriber to enter the amount

6   of the sale 122.  The subscriber enters the amount of the sale 124

7   and the terminal thereafter transmits an inquiry to the host data

8   base for verification 126.

9       The check approval process next takes place 128.  If the check

10   is not approved by the central computer the terminal displays a

11   message declining the transaction 140.  Thereafter a printer record

12   of the declined transaction is made for purposes of the system

13   subscriber 141 to comply with the Fair Credit Reporting Act and

14   Regulation E of the Board of Governors of the Federal Reserve

15   System.

16       If the check is approved the terminal displays a message

17   noting the approval 138 and the specimen check is returned to the

18   consumer.  The printer further makes a paper record of the

19   transaction 142 and the consumer places any required information on

20   the paper receipt and signs the receipt authorizing the transaction

21   144.

22       Referring to Figure 7, the process description continues.

23   Once the transaction is approved the central computer captures the

24   MICR information and the sale amount and stores that information

25   146.  The central computer subsequently generates a batch message

26   regarding all transaction events for the prior period and transmits

LML-EP 000096

1   all the transaction event information for the day into the ACH

2   network 148.

3        During the ACH process each checkwriter's account is debited

4   for the exact purchase amount and such an amount is deposited into

5   a system subscriber designated account 150. Thereafter, collected

6   funds for a total day's events are deposited into a ~~subscribers~~ *subscriber's*

7   account 152. The transaction is then complete 154.

8   <u>HOW TO USE</u>

9        The present invention will require the establishment and

10  maintenance ~~for access searches~~ of three interconnected but

11  separate *data file* data files. Each will be accessible by dial-up procedures

12  operating, in most instances, under "Split Dial" format from a

13  point-of-sale *("POS")* terminal device or electronic cash register installed

14  for the primary purpose of bankcard and/or bank draft

15  authorizations. *The terminal* ~~Terminal~~ prompts an operator/user to process one

16  of three optional inquiry types. Any one or all of three primary

17  functions are capable of being performed at a single point-of-sale

18  terminal within the control of the system subscriber. The inquiry

19  types and data base format responses *are* ~~would be~~ as follows :

20       Card Authorization - Having depressed the assigned Split Dial

21  key and thereafter being prompted, the system subscriber *"slides" an* ~~would~~

22  ~~"slide" a~~ encoded magnetic stripped transaction card through the

23  point-of-sale terminal and *enters* ~~enter~~ the "Sale Amount" requested for

24  authorization. Thereupon, the terminal's dial-up capabilities

25  direct the inquiry to the central computer for authorization

26  against "POSITIVE" file of current cardholders whose accounts were

27  listed in "good standing". Inquiries where such a "Match" are

-16-

LML-EP 000097

1  found cause an "Approved" return message from the data file to the

2  inquiring POS terminal.  Conversely, a "No-Match" to inquiry would

3  result in a "Declined" notice to the POS terminal.  An uploading

4  mode of the present invention causes forwarding of daily status

5  notifications to the central data files activating new cardholder

6  accounts in the "POSITIVE" cardholder file or submitting corrective

7  entries to delete delinquent or terminated accounts.

8       Check Authorization - Having depressed the assigned Split Dial

9  key and thereafter being prompted, the system subscriber manually

10  enters account numbers from a personal or business check or, where

11  fully automated, enters a specimen check through a MICR Check Reader

12  device interfaced with the terminal, whereupon the terminal's

13  screen would display the check's numbers, and hence the account number

14  for verification.  Thereafter, the operator would enter the "Sale

15  Amount" requested for authorization.  The terminal's dial-up

16  capabilities then direct the inquiry to the computer data file

17  center for authorization first against the "POSITIVE" file of

18  "prenoted" bank/checking account numbers whose accounts were listed

19  in "good standing".  A successful "Match" to an inquiry would

20  result in an "Approved" notice from the data file to the inquiring

21  terminal. A "No-Match" to inquiry would not, however, immediately

22  result in a "Declined" response.  Each inquiry preliminarily

23  resulting in a No-Match would be instantly forwarded/"rolled" to

24  the third data file preceding any return notice to the inquiring

25  terminal.  This third file is anticipated to be the Shared Check

26  Authorization Network ("SCAN") a negative data file data base

27  maintained in the system computer data file center.  Referrals to

-17-

LML-EP 000098

1    SCAN or any other positive or negative data files, enable potential
2    acceptance of Transaction Events involving consumers "Unknown" to
3    the invention's proprietary, "POSITIVE" files.  A "Match" on the
4    SCAN "NEGATIVE" file would result in a "Declined" notice; a
5    "No-Match" would conversely send notification to the inquiring POS
6    terminal of an "Approved" event.  Of significant importance, the
7    bank/checking account information for each such "Unknown"
8    consumer's transaction would, subsequent to a SCAN "Approved"
9    notice, be posted to the invention's "POSITIVE" file and prenoted
10   through the ACH ("Automated Clearing House") for future Transaction
11   Events.  The invention, presumedly in an automated mode, is capable
12   of uploading daily corrections to the POSITIVE data file including
13   notices of new accounts approved through SCAN (trademark) and
14   deletions where settlement for consumer checking account events,
15   initially approved, were subsequently dishonored.  The SCAN data
16   base is similarly uploaded with daily activity status corrections.

17        Check Replacement Service - Inquiries initiated as Check
18   Replacement requests function in nearly an identical manner as that
19   of Check Authorization.  Records for such events, when culminating
20   in "Approved" notices, are separately preserved.  Check Replacement
21   inquiries are processed first through the system's "POSITIVE" data
22   file and, where no match is found, proceed to the SCAN data file or
23   other data base file prior to transmitting an "Approved" or
24   "Declined" notice to the inquiring POS terminal.  A Match in the
25   system data file indicates a consumer-user, whose account was in
26   "good standing" and would not be required to "roll" to SCAN.  Check
27   Replacement events are reported to and stored by the computer data

-18-

LML-EP 000099

1   file center under a file classification identifying the transaction

2   was a Check Replacement Service.  The total of daily, approved

3   Transaction Events are "checkless" sales whereby the service

4   subscribing merchant has submitted requests for electronic ACH

5   settlement for all preauthorized consumer purchases.  No commercial

6   bank note ("Paper Check") is accepted or processed by the service

7   subscriber.   In each Transaction Event, a Consumer, at the

8   point-of-sale, has executed an electronic access ("Off-Line Debit")

9   authority "Sales Slip" which are automatically printed upon a

10  terminal's receipt of an "Approved" notice.

11      All terminal programming and all prompt strings for MICR Check

12  Reader interfacing are stored in the POS terminal and the

13  invention's computer center, controls interactions between the

14  plurality of terminals and the central system.   The following

15  modules are present.

16      Programming for MICR/Terminal Interface - system subscriber

17  locations to be activated with the invention must possess or

18  acquire a terminal.  Those utilizing or being upgraded to terminals

19  such as a Tranz (trademark) 330 or other terminals with interface

20  capabilities with the check reader all suitable point-of-sale

21  terminals.

22      The preferred format for terminal operations are from a

23  singular split dial key.  Thereafter, the "prompt string" would

24  proceed in a manner such as i) "Card = 1" ; "Check = 2" requiring

25  operator selection; then, where selecting a checking account

26  inquiry ii) the operator would respond to a secondary prompt of

27  "Auth = 1" ; "Replace = 2".  These entry selections precede the

-19-

LML-EP 000100

1  magnetic stripe "reading" of a card/submittal or a check through
2  the MICR (Account Identification), the entry of the requested sale
3  amount, and the terminal's dial-up for authorization against the
4  computer data file center.

5      The MICR interface results in the transmittal of a query for
6  data center approval of the entire ABA/Transit and personal or
7  corporate checking account numbers. Instances where printed checks
8  add the individual check's number to the end of the account number
9  can be "dropped" by Check Reader switch settings. Subsequent to a
10 terminal's receipt of the MICR number string but prior to the
11 operator's entry of the requested sale amount and authorization
12 dial-up, a verification prompt "flashing" the ABA and account
13 numbers must be displayed on the terminal's screen requiring the
14 operator to depress "Enter" to proceed, if correct, or "Clear", if
15 incorrect and thereby enabling the terminal operator to resubmit
16 the specimen check through the MICR Check Reader. It is important
17 to note that account information may be entered manually as well at
18 the point of sale with the other financial advantages of the present
19 invention still in effect.

20     The computer data file center receives and processes
21 Transaction Event authorization requests utilizing the entire MICR
22 string for accurate, error-free identification of both the consumer
23 bank and a specific checking or depository account to participate in
24 a sale. ACH settlement criteria mandate exact recall for the bank
25 and checking account numbers to properly complete any debit
26 request. This invention conforms to each and every requirement of
27 the ACH transaction regulations.

-20-

1    Each Transaction Event is completed with the logging printer

2    generation of a Transaction Event ("Sales") Slip for each

3    "Approved" authorization inquiry processed (Figure ).

4    Alternatively, a manually created transaction event slip can also

5    be prepared (Figure ). Each such Transaction Event Slip must be

6    exacting in its retention of account numbers and the sale amount

7    enabling both the consumer and system subscriber to be provided

8    "hard copy" receipts of the event. Also included would be a clear

9    printing of the transaction type; "Bank Card", "Check

10   Authorization", or "Check Replacement". Authorization language is

11   printed immediately preceding the consumer's signature line

12   specifically authorizing electronic access in payment of the

13   requested transaction sale amount.

14       In addition to the primary functions for POS terminal

15   programming and MICR Check Reader interface, each Point-of-Sale

16   terminal location is capable of generating printed summations of

17   daily activity. These reports list and separately total each

18   authorization/service type, whether produced as a singular report

19   or the result of multiple terminal "closeout" procedures.

20       Instances will arise with either the Bank Card or Check

21   Replacement Service where previously authorized Transaction Events

22   will require the operational equivalent of a bankcard "Void" or

23   "Credit" notation. The methodology will be available for Split

24   Dial messages to the computer data file center of a

25   post-authorization "Error" or "Transaction Cancellation" notice.

26   The "Cancel" procedure is instituted by depressing for example the

27   "3" key (i.e. "Cancel = 3"). By so doing, the system subscriber

-21-

1  may cancel a previously approved and logged event.  This

2  Transaction Event which was recorded on the data files and reported

3  on the service subscriber's daily Activity Summation Report,

4  thereafter carries an offsetting, "Flagged" cancellation notice.

5

6  <u>SUMMARY</u>

7     A flexible purchase transaction system is described which

8  precisely fits within existing ACH procedures for checking account

9  events for processing of pre-authorized electronic debits as a

10  replacement for commercial bank drafts (paper checks).  The main

11  advantage to the proposed invention is the fact that a truly

12  paperless transaction may occur.  Departures from the proposed

13  system especially with respect to the Point-of-Sale terminals will

14  be apparent to those skilled in the art, with *without* departing from the

15  spirit of the invention as described.

-22-

LML-EP 000103

1    We claim:

2       1.   A checkwriting point of sale system comprising:

3       a point of sale terminal adapted to receive consumer bank

4    account information and further adapted to accept such information

5    from consumer cards on which the bank account information is

6    stored;

7       a communications means integral to said point of sale terminal

8    to electronically communicate with a central computer;

9       a memory means integral to said point of sale terminal that

10   allows the temporary storage of the consumer bank account

11   information from the consumer cards;

12      the central computer system having communication means

13   capability adapted to receive information from a plurality of point

14   of sale terminals;

15      the central computer system communication means allowing said

16   central computer system to communicate with external data bases for

17   consumer credit verification and to allow communication with

18   banking institutions for purposes of transfer of funds.

19      2.   A checkwriting point of sales system according to claim

20   1 wherein said point of sale terminal is further adapted to read

21   MICR numbers appearing on a consumer check and wherein said

22   consumer check is used to identify the consumer bank account

23   information.

24      3.   The checkwriting point of sale according to claim 1

25   wherein said point of sale terminal further comprises an alpha

26   numeric display adapted to receive consumer bank account

LML-EP 000104

1  information from the memory of the point of sale terminal and
2  display the consumer bank account information.

3      4.   The checkwriting point of sale system according to claim
4  1 further comprising a printer adapted to receive information from
5  the memory of the point of sale terminal to create point of sale
6  slips.

7      5.   The checkwriting point of sale system according to claim
8  1 wherein said central computer system communication means
9  comprises means for communicating with third party data bases for
10 verification of consumer credit.

11     6.   The checkwriting point of sale system according to claim
12 1 further comprising a resident third party data base wherein
13 consumer credit information is stored and used for verification of
14 consumer credit.

15     7.   The checkwriting point of sale system according to claim
16 1 wherein the central computer system further comprises a system
17 subscriber data base comprising those merchants and service
18 providers authorized to use the invention.

19     8.   The checkwriting point of sale system according to claim
20 7 wherein the central computer further comprises a database
21 comprising those consumers approved to use the invention.

22     9.   A checkwriting point of sale process comprising the steps
23 of:

24          a)   presenting a check or consumer card to a point of
25 sale terminal located at a merchant or service provider,

26          b)   reading the magnetic stripe or MICR number
27 information on the credit card or consumer check,

-29-

c)    storing the consumer bank account information from
the card or check and verifying account numbers at the point of
sale terminal,

d)    inputting transaction event information into the
point of sale terminal,

e)    transmitting the transaction event information and
consumer bank account information to a central computer system,

f)    verifying the authorization status of the consumer,

g)    if a particular consumer is not authorized to use
the system, verifying the credit worthiness of the consumer via a
query to a third party data base,

h)    sending an "approved" message to the point of sale
terminal, if the consumer's credit is approved for the transaction
and

i)    subsequently transmitting the transaction event
information to a bank for subsequent ACH operations.

jlr-1808

Add
B 5
C 6

-50-

975717

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of Robert R. Hills and Henry R. Nichols

Serial No.:                           Group Art Unit:

Filed:                                Examiner:

FOR:  CHECKWRITING POINT OF SALE SYSTEM

### DECLARATION

As below inventors, we hereby declare that:

Our residences, post office address and citizenship are as stated below next to our name.

We believe we are the original, first and sole inventors of the subject matter which is claimed and for which a patent is sought on the invention entitled CHECKWRITING POINT OF SALE SYSTEM the specification of which is attached hereto.

We hereby state that we have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

We acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, § 1.56(a).

### POWER OF ATTORNEY

We hereby appoint the following attorney(s) to prosecute this application and to transaction all business in the Patent and Trademark Office connected therewith:

Jon L. Roberts
Arter & Hadden
1801 K Street, N.W.
Suite 400K
Washington, D.C. 20006
(202) 775-7980

We declare that all statements made herein of our own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section

LML-EP 000107

1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Full name of inventor   Robert R. Hills

Inventor's Signature   _____   Date 10-1-92

Residence   5170 Avenue B
            St Augustine (FL 32095

Citizenship   United States


Full name of inventor   Henry R. Nichols

Inventor's Signature   _____   Date_____

Residence   _____

            _____

Citizenship   United States

jlr·1883

LML-EP 000108

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Application of Robert R. Hills and Henry R. Nichols

Serial No.:                          Group Art Unit:

Filed:                               Examiner:

FOR:  **CHECKWRITING POINT OF SALE SYSTEM**

### DECLARATION

As below inventors, we hereby declare that:

Our residences, post office address and citizenship are as stated below next to our name.

We believe we are the original, first and sole inventors of the subject matter which is claimed and for which a patent is sought on the invention entitled CHECKWRITING POINT OF SALE SYSTEM the specification of which is attached hereto.

We hereby state that we have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

We acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, § 1.56(a).

### POWER OF ATTORNEY

We hereby appoint the following attorney(s) to prosecute this application and to transaction all business in the Patent and Trademark Office connected therewith:

Jon L. Roberts
Arter & Hadden
1801 K Street, N.W.
Suite 400K
Washington, D.C. 20006
(202) 775-7980

We declare that all statements made herein of our own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section

LML-EP 000109

1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Full name of inventor ___Robert R. Hills_____

Inventor's Signature _____Date_____

Residence_____

_____

Citizenship___United States_____


Full name of inventor ___Henry R. Nichols_____

Inventor's Signature ___*Henry R. Nichols*_____Date_10/19/92___

Residence____8456 Holly Leaf Dr._____

_____McLean, VA  22102_____

Citizenship___United States_____

LML-EP 000110

07797571

| VERIFIED STATEMENT CLAIMING SMALL ENTITY STATUS (37 CFR 1.9(f) & 1.27(b))--INDEPENDENT INVENTOR | Docket Number (Optional) |
|---|---|

Applicant or Patentee:  ROBERT R. HILLS AND HENRY R. NICHOLS

Serial or Patent No.: _____

Filed or Issued: _____

Title: CHECKWRITING POINT OF SALE SYSTEM

As a below named inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9(c) for purposes of paying reduced fees to the Patent and Trademark Office described in:

[X] the specification filed herewith with title as listed above.

[ ] the application identified above.

[ ] the patent identified above.

I have not assigned, granted, conveyed or licensed and am under no obligation under contract or law to assign, grant, convey or license, any rights in the invention to any person who would not qualify as an independent inventor under 37 CFR 1.9(c) if that person had made the invention, or to any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).

Each person, concern or organization to which I have assigned, granted, conveyed, or licensed or am under an obligation under contract or law to assign, grant, convey, or license any rights in the invention is listed below:

[ ] No such person, concern, or organization exists.

[ ] Each such person, concern or organization is listed below.

Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28(b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

| ROBERT R. HILLS | HENRY R. NICHOLS | |
|---|---|---|
| NAME OF INVENTOR | NAME OF INVENTOR | NAME OF INVENTOR |
| Signature of inventor | Signature of inventor | Signature of inventor |
| October 1, 1992 | | |
| Date | Date | Date |

PTO/SB/09 (11-90)                    Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

LML-EP 000111

PTO/SB/09 (11-90)

| VERIFIED STATEMENT CLAIMING SMALL ENTITY STATUS (37 CFR 1.9(f) & 1.27(b))--INDEPENDENT INVENTOR | Docket Number (Optional) |
|---|---|

Applicant or Patentee: ROBERT R. HILLS AND HENRY R. NICHOLS

Serial or Patent No.:

Filed or Issued: 1992

Title: CHECKWRITING POINT OF SALE SYSTEM

As a below named inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9(c) for purposes of paying reduced fees to the Patent and Trademark Office described in:

[X] the specification filed herewith with title as listed above.

[ ] the application identified above.

[ ] the patent identified above.

I have not assigned, granted, conveyed or licensed and am under no obligation under contract or law to assign, grant, convey or license, any rights in the invention to any person who would not qualify as an independent inventor under 37 CFR 1.9(c) if that person had made the invention, or to any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).

Each person, concern or organization to which I have assigned, granted, conveyed, or licensed or am under an obligation under contract or law to assign, grant, convey, or license any rights in the invention is listed below:

[ ] No such person, concern, or organization exists.

[ ] Each such person, concern or organization is listed below.

Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28(b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

| ROBERT R. HILLS | HENRY R. NICHOLS | |
|---|---|---|
| NAME OF INVENTOR | NAME OF INVENTOR | NAME OF INVENTOR |
| Signature of inventor | Signature of inventor | Signature of inventor |
| Date | Date 10/19/92 | Date |

Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

LML-EP 000112



fig. 1



fig 2

LML-EP 000113







figure 3

LML-EP 000114





08/25/99



Fig. 4

LML-EP 000115

PRINT OF DRAWINGS
AS ORIGINALLY FILED.



figure 5

LML-EP 000116





Ⓐ

COMPARE
CHECK.
TO TERM — 114

#'S COMPARE — 116   YES → Ⓑ

NO

CLEAR
POS TERM
REINIT. — 118

ENTER
MICR
NO. — 130

#'S COMPARE — 132   YES

NO

RETURN
CHECKS — 136

END
SESSION — 137

Fig. 6

LML-EP 000117



08/25739c



C

ACCOUNT NO. TO CENT. COMP. — 146

BATCH GENERATION + TRANSMIT — 148

ACH DEBIT + DEPOSIT — 150

FUNDS TO SUBSCRIBER ACCOUNT — 152

COMPLETE TRANSACT. — 154

fig 7

LML-EP 000118



08/25/3:

```
            Merchant Name
            Street Address
            City, ST Zip
            Merchant Act #


TIME 00:00 _M              DATE 00/00/00
BANK ACT NO. 000000000000
TRANSIT NO. 000000000

SALE AMOUNT              $ 0,000.00

TERMINAL ID  0000000000


I herewith authorize ChequeMARK Systems
to electronically access my designated
checking account for the payment of the
above referenced purchase.

Name (PRINT) _____
Street _____
City _____ST ___Zip_____
Tel. Number:  (_____) _____ - _____


I ACKNOWLEDGE THAT RETURN FEES WILL BE
IMPOSED SHOULD MY PAYMENT BE DISHONORED
AND UNDERSTAND THAT IT IS UNLAWFUL TO
AUTHORIZE PAYMENTS FOR WHICH ADEQUATE
MONIES ARE NOT AVAILABLE WITHIN MY
ACCOUNT.



X_____
Authorizing Signature
```

fig. 8

LML-EP 000119





08/2573 9c

Merchant Name
Street Address
City, ST Zip
Merchant Act #


CUSTOMER BANKING INFORMATION:

BANK ACT NO. _____

TRANSIT NO. _____


SALE AMOUNT . . . . . . . . . . . . . . . . . . $ _____


I herewith authorize ChequeMARK Systems to electronically access my designated checking account for the payment of the above referenced purchase amount.  I acknowledge that sufficient funds are available for the payment of this sale.

Name (PRINT) _____
Street _____
City _____ST ___Zip_____
Tel. Number: (_____) _____ - _____


I FURTHER ACKNOWLEDGE THAT RETURN FEES WILL BE IMPOSED SHOULD MY PAYMENT BE DISHONORED AND UNDERSTAND THAT IT IS UNLAWFUL TO AUTHORIZE PAYMENTS FOR WHICH ADEQUATE MONIES ARE NOT AVAILABLE WITHIN MY ACCOUNT.


X _____
Authorizing Signature

fig. 9



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO. |
|---|---|---|---|
| 07/976,717 | 11/13/92 | HILLS | |

R

JON L. ROBERTS
ARTER & HADDEN
1801 K STREET, N.W.
SUITE 400K
WASHINGTON, DC  20006

2505

DATE MAILED:        01/04/93

### Notice of Incomplete Application

A filing date has NOT been assigned to the above identified application papers for the reason(s) shown below.

1. ☐ The specification (description and claims):
   a. ☐ is missing
   b. ☐ has pages_____missing.
   c. ☐ does not include a written description of the invention.
   d. ☐ does not include at least one claim in compliance with 35 U.S.C. 112.

A complete specification in compliance with 35 U.S.C. 112 is required.

2. ☒ A drawing of Figure(s) #8+9 described in the specification is required in compliance with 35 U.S.C. 111.

3. ☐ A drawing of applicant's invention is required since it is necessary for the understanding of the subject matter of the invention in compliance with 35 U.S.C. 113.

4. ☐ The inventor's name(s) is missing. The full names of all inventors are required in compliance with 37 CFR 1.41.

5. ☐ Other :

All of the above-noted omissions, unless otherwise indicated, must be submitted within TWO MONTHS of the date of this notice or the application will be returned or otherwise disposed of. Any fee which has been submitted will be refunded less a $15.00 handling fee. See 37 CFR 1.53(c).

The filing date will be the date of receipt of all the items required above, unless otherwise indicated. Any assertions that the items required above were submitted, or are not necessary for a filing date, must be by way of a petition directed to the attention of the Office of the Assistant Commissioner for Patents accompanied by the $140.00 petition fee (37 CFR 1.17(h)). If the petition alleges that no defect exists, a request for refund of the petition fee may be included in the petition.

Direct the response to, and questions about, this notice to the undersigned, Attention: Application Branch.

### *A copy of this notice MUST be returned with response.*

Enclosed:

☐ "General Information Concerning Patents". See page _____.
☐ Copy of a patent to assist applicant in making corrections.
☒ "Notice to File Missing Parts of Application", Form PTO-1532.
☐ Other: _____

*Vincent Butler*
For: Manager, Application Branch
(703) 557-3254 508-1202

FORM PTO-1123 (REV. 7-87)                    OFFICE COPY

3

LML-EP 000121



 

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/975,717 | 11/13/92 | HILLS | R | |

|  | EXAMINER |
|---|---|
|  | PITTS,H |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2505 | |

25M1/0923

JON L. ROBERTS
ARTER & HADDEN
1801 K STREET, N.W.
SUITE 400K
WASHINGTON, DC 20006

DATE MAILED:        09/23/93

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined    ☐ Responsive to communication filed on _____    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _____ 2 _____ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I**    **THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☑ Notice of References Cited by Examiner, PTO-892.    2. ☑ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.    4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.    6. ☐ _____

**Part II**    **SUMMARY OF ACTION**

1. ☑ Claims _____ 1-9 _____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _____ 1-9 _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____ ; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

LML-EP 000139

Serial No. 975,717                                    -2-

Art Unit  2505


        The following is a quotation of the appropriate paragraphs
of 35 U.S.C. § 102 that form the basis for the rejections under
this section made in this Office action:

        A person shall be entitled to a patent unless --
        (b) the invention was patented or described in a printed
publication in this or a foreign country or in public use or
on sale in this country, more than one year prior to the
date of application for patent in the United States.

        Claims 1-9 are rejected under 35 U.S.C. § 102(b) as being

anticipated by Case or Deming.

        Note col. 1, lines 53 et. seq. of Case and col. 2 lines 17

et. Seq. of Deming.

        Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Harold
Pitts whose telephone number is (703) 308-0717.

        Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 308-0956.



                                        HAROLD PITTS
                                        PRIMARY EXAMINER
                                        GROUP 2500

Pitts/tj
September 22, 1993

D

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No. 07/975,717                    Group Art Unit: 2505

Filed:    11/13/92                       Examiner: Pitts, H.

For:    CHECKWRITING POINT OF SALE SYSTEM

*      *      *      *      *

RESPONSE TO OFFICE ACTION OF 09/23/93

*      *      *      *      *

Commissioner of Patents and Trademarks
Box Non-Fee Amendment
Washington, D.C. 20231

Sir:

Applicant hereby submits the following response to the Office action of 09/23/93.

In the Specification:

Page 1, line 6, after "particularly" add -- to --.

Page 1, line 8, after "individual and" add -- of --.

Page 1, line 8, between "the" and "bank" add -- individual's --.

Page, 1, line 8, between "and" and "bank" add -- whereby the --.

Page 1, line 8, delete "be" and insert -- is --.

Page 1, line 12, before "patent" insert -- U.S. --.

Page 1, line 13, after "together" insert -- with --.

Page 1, line 17, before "Patent" insert -- U.S. --.

Page 1, line 21, delete "the " and insert -- an --.

LML-EP 000144

Page 1, line 22, after "point" insert -- of --.

Page 1, line 22, before "Patent" insert -- U.S. --.

Page 1, line 24, before "Patent" insert -- U.S. --.

Page 1, line 27, before "Patent" insert -- U.S. --.

Page 1, line 27, delete "involving" and insert

-- discloses --.

Page 2, line 1, delete "in" and insert -- using --.

Page 2, line 1, before "check" insert -- a --.

Page 2, line 2, after "codes" insert -- . --.

Page 2, line 2, delete "is used by" and insert -- When --.

Page 2, line 2, after "someone" insert -- attempts --.

Page 2, line 3, after "services" delete "and wherein" and

insert -- , --.

Page 2, line 4, after "place" insert -- the order --.

Page 2, line 7, before "Patent" insert -- U.S. --.

Page 2, line 8, delete "telemachine" and insert -- teller

machine --.

Page 2, line 11, before "Patent" insert -- U.S. --.

Page 2, line 14, before "Patent" insert -- U.S. --.

Page 2, line 16, delete "then".

Page 2, line 19, before "Patent" insert -- U.S. --.

Page 2, line 22, before "Patent" insert -- U.S. --.

Page 2, line 23, delete "systems" and insert -- system --.

Page 3, line 1, before "Patent" insert -- U.S. --.

Page 3, line 3, delete "which users" and insert

-- . Users --.

2

LML-EP 000145

Page 3, line 5, before "Patent" insert -- U.S. --.

Page 3, line 6, delete "apparatuses" and insert -- an apparatus is --.

Page 3, line 6, delete "restore" and insert -- secure --.

Page 3, line 7, before "checks" insert -- of --.

Page 3, line 9, before "customer" insert -- a --.

Page 3, line 10, Delete "It does" and insert -- They do --.

Page 3, line 10, delete "anyway" and insert -- any way --.

Page 3, line 11, delete "or indeed" and insert -- nor do they --.

Page 3, line 11, delete "that the issue in anyway of how" and insert -- the process by which --.

Page 3, line 13, delete "operation" and insert -- operations --.

Page 3, line 13, after "exist" insert -- in --.

Page 3, line 14, delete "ACH" and insert -- automated clearinghouse ("ACH") --.

Page 3, line 15, delete "anyway" and insert -- any way --.

Page 3, line 17, delete "indeed" and insert -- must --.

Page 3, line 21, before "will" delete "it" and insert -- the present invention --.

Page 3, line 23, delete "by the background I" and insert -- and disclosed in the background references --.

Page 3, line 26, delete ",".

Page 4, line 9, after "individuals" insert -- herein --.

Page 4, lines 9-10, delete "in this application".

3

Page 4, lines 12-13, delete "the present invention's".

Page 4, line 13, after "parameters" insert -- of the present invention --.

Page 4, line 17, delete "know" and insert -- known --.

Page 4, line 17, delete "("Automated Clearing House")".

Page 4, line 24, delete "deposit" and insert -- deposits the transaction amount --.

Page 4, line 27, delete "would be" and insert -- are --.

Page 5, line 9, delete "applicants'".

Page 5, line 9, after "system" insert -- of the present invention --.

Page 5, line 12, delete "would be" and insert -- are --.

Page 5, line 12, delete "applicants'".

Page 5, line 12, after "system" insert -- of the present invention by --.

Page 5, line 19, delete "their".

Page 5, line 22, delete "invention's".

Page 5, line 22, after "center" insert -- of the present invention --.

Page 5, line 24, delete "Electronic Funds Transfer ("EFT")" and insert -- EFT --.

Page 5, line 27, delete "would be" and insert -- is --.

Page 6, line 16, delete "could" and insert -- may --.

Page 6, line 22, after "execution" insert -- of the Transaction Event Slip --.

Page 7, line 8, before "be stored" insert -- may --.

4

LML-EP 000147

Page 7, line 12, delete "would".

Page 7, line 22, delete "and use to" and insert -- to and use of --.

Page 8, line 5, delete "the consumers" and insert -- consumer --.

Page 8, line 6, delete "as well".

Page 8, line 8, before "present" insert -- method of the --.

Page 8, line 9, delete "subscribers" and insert -- subscriber's --.

Page 8, line 9, delete " at a".

Page 8, line 12, after "or" insert -- for --.

Page 8, line 17, delete "invention's".

Page 8, line 18, after "files" insert -- of the present invention --.

Page 8, line 24, before "part" insert -- considered --.

Page 8, line 24, before "invention" insert -- present --.

Page 9, line 2, delete "an" and insert -- a --.

Page 9, line 3, before "executed" insert -- will be --.

Page 9, line 24, after "reader" insert -- , --.

Page 9, line 25, after "character" insert -- recognition --.

Page 9, line 25, after "equipment" insert -- , --.

Page 9, line 26, delete "applicants'".

Page 9, line 27, delete "were" and insert -- of the present invention is --.

Page 10, line 3, delete "The present invention contemplates" and insert -- It is contemplated --.

5

LML-EP 000148

Page 10, line 4, delete "on" and insert -- using the present invention with --.

Page 10, line 7, after "system" insert -- of the present invention --.

Page 10, line 10, before "form" insert -- the --.

Page 10, line 12, delete "(PSTN) or" and insert -- ("PSTN") or over --.

Page 10, line 21, after "Individual" insert -- transactions --.

Page 11, line 1, before "instantly" insert -- are --.

Page 11, line 3, delete "subscribers" and insert -- subscribers' --.

Page 11, line 3, delete "are" and insert -- is --.

Page 11, line 4, delete "invention's".

Page 11, line 4, delete "by means of telephonic network" and insert -- of the present invention by means of a telephonic network which is ++.

Page 11, line 8, after "response" insert -- sequence --.

Page 12, line 4, before "normal" insert -- over --.

Page 13, line 13, delete "which allows the consumer," and insert -- to allow any consumer --.

Page 13, line 14, after "system" delete ",".

Page 13, line 15, before "whether" insert -- of --.

Page 13, line 16, before "outside" insert -- other --.

Page 13, line 26, delete "which instructs" and insert -- to instruct --.

6

LML-EP 000149

Page 14, line 7, before "that" insert -- , i.e., --.

Page 14, line 11, delete "enters" and insert -- begins --.

Page 14, line 20, delete "compare" and insert -- compares --.

Page 16, line 6, delete "subscribers" and insert -- subscriber's --.

Page 16, line 10, delete "for access searches".

Page 16, line 11, after "files" insert -- for the purpose of performing access searches --.

Page 16, line 11, after "Each" insert -- data file --.

Page 16, line 13, before "terminal" insert -- ("POS") --.

Page 16, line 15, delete "Terminal" and insert -- The terminal --.

Page 16, line 19, delete "would be" and insert -- are --.

Page 16, lines 21-22, delete "would "slide" a" and insert -- "slides" an --.

Page 16, line 23, delete "enter" and insert -- enters --.

Page 17, line 11, delete "enter" and insert -- enters --.

Page 17, line 13, after "account" insert -- number --.

Page 18, line 11, after "invention" insert -- , --.

Page 18, line 25, after "indicates" insert -- a --.

Page 18, line 25, delete ",".

Page 19, line 2, delete "was" and insert -- as --.

Page 19, line 9, delete "are" and insert -- is --.

Page 19, line 13, delete "invention's".

Page 19, line 13, after "center" insert -- of the present invention --.

7

LML-EP 000150

Page 19, line 17, before "invention" insert -- present --.

Page 19, line 20, after "reader" insert -- for --.

Page 19, line 22, delete "are" and insert -- is generated --.

Page 20, line 18, before "present" insert -- the --.

Page 20, line 23, after "and" insert -- a --.

Page 21, line 19, after "or" insert -- as --.

Page 22, line 14, delete "with" and insert -- without --.

<u>In the Claims:</u>

1.    (Amended) A checkwriting point of sale system comprising:

a point of sale terminal adapted to receive consumer bank account information and further adapted to accept such information from consumer cards on which the bank account information is stored;

a communications means integral to said point of sale terminal [to] <u>for</u> electronically [communicate] <u>communicating</u> with a central computer;

a memory means integral to said point of sale terminal [that allows] <u>for allowing</u> the temporary storage of the consumer bank account information from the consumer cards;

the central computer system having communication means capability adapted to receive information from a plurality of point of sale terminals;

the central computer system communication means allowing said central computer system to communicate with external data bases for consumer [credit] <u>bank account status</u> verification and [to allow]

8

<u>allowing</u> communication with banking institutions for purposes of transfer of funds.

    2.   (Amended) A checkwriting point of sale[s] system according to claim 1 wherein said point of sale terminal is further adapted to read MICR numbers appearing on a consumer check and wherein said consumer check is used to identify the consumer bank account information.

    3.   (Amended) The checkwriting point of sale <u>system</u> according to claim 1 wherein said point of sale terminal further comprises an alpha[ ]numeric display adapted to receive consumer bank account information from the memory <u>means</u> of the point of sale terminal [and] <u>such that said point of sale terminal is adapted to</u> display the consumer bank account information.

    4.   (Amended) The checkwriting point of sale system according to claim 1 further comprising a printer adapted to receive information from the memory <u>means</u> of the point of sale terminal to create point of sale slips.

    5.   (Amended) The checkwriting point of sale system according to claim 1 wherein said central computer system communication means comprises means for communicating with third party data bases for verification of consumer [credit] <u>banking account status</u>.

    6.   (Amended) The checkwriting point of sale system according to claim 1 further comprising a resident third party data base wherein consumer [credit] <u>banking account status</u> information is stored [and] <u>which is</u> used for verification of consumer [credit] <u>banking account status</u>.

9

7.    (Amended) The checkwriting point of sale system according to claim 1 wherein the central computer system further comprises a system subscriber data base comprising [those] <u>information regarding</u> merchants and service providers authorized to use the [invention] <u>checkwriting point of sale system</u>.

8.    (Amended) The checkwriting point of sale system according to claim 7 wherein the central computer further comprises a database comprising [those] <u>information regarding</u> consumers approved to use the [invention] <u>checkwriting point of sale system</u>.

9.    (Amended) A checkwriting point of sale process comprising the steps of:

a)    presenting a check [or consumer card] to a point of sale terminal located at a merchant or service provider,

b)    reading the [magnetic stripe or] MICR number information on the [credit card or consumer] check,

c)    storing the consumer bank account information from the [card or] check and verifying account numbers at the point of sale terminal,

d)    inputting transaction event information into the point of sale terminal,

e)    transmitting the transaction event information and consumer bank account information to a central computer system,

f)    verifying the authorization status of the consumer,

g)    [if a particular consumer is not authorized to use the system ]verifying the [credit worthiness] <u>banking account</u>

10

LML-EP 000153

status of the consumer via a query to a third party data base if a particular consumer is not authorized to use the system,

h)    sending an "approved" message to the point of sale terminal, if the consumer's [credit] banking account status is approved for the transaction, and

i)    subsequently transmitting the transaction event information to a bank for subsequent ACH operations.

Please add the following new claim:

10.    (New claim)    A checkwriting point of sale process comprising the steps of:

a)    presenting a consumer card to a point of sale terminal located at a merchant or service provider,

b)    reading the magnetic stripe information on the consumer card,

c)    storing the consumer bank account information from the consumer card and verifying account numbers at the point of sale terminal,

d)    inputting transaction event information into the point of sale terminal,

e)    transmitting the transaction event information and consumer bank account information to a central computer system,

f)    verifying the authorization status of the consumer,

g)    verifying the banking account status of the consumer via a query to a third party data base if a particular consumer is not authorized to use the system,



11

h)    sending an "approved" message to the point of sale terminal, if the consumer's banking account status is approved for the transaction, and

i)    subsequently transmitting the transaction event information to a bank for subsequent ACH operations.

In the Abstract:

Line 9, after "has" insert -- an --.

Line 9, delete "credit" and insert -- balance --.

Line 14, delete "needs" and insert -- need --.

<u>REMARKS</u>

Numerous changes have been made to the specification in order to correct typographical errors and grammatical construction and to generally make the text more clear.  No new matter has been added by this amendment.

The claims have been amended to make the language more clear and to more accurately recite the verification of banking account status by the system.  Support for verification by the system of banking account status can be found throughout the specification, for example, on page 8, from line 8 to line 24.  No new matter has been added by this amendment.

Claim 9 was also amended because recited elements were claimed in the alternative.  Claim 9 no longer recites elements in the alternative.  New claim 10 was added to recite features formerly claimed in the alternative in claim 9.  No new matter has been added by this amendment.

12

LML-EP 000155

The Examiner rejected claims 1-9 under 35 U.S.C. § 102(b) as being anticipated by Case or Deming. The Examiner noted column 1, lines 53 et seq. of Case and column 2, lines 17 et seq. of Deming.

Case discloses an electronic funds transfer system that uses a letter of credit identification card and a draft instrument unique to the system in order to effect a funds transfer to a merchant or other "beneficiary".

The consumer using the Case system prepays a sum of money into an account that is to be accessed by the system. This amount is inscribed on the card. When a purchase is made by the consumer, and a transaction is to be made using the system, the amount of the transaction is punched out of a designated area on the card. This amount, along with a signature and other information, is supplied on the draft instrument, which is given to the merchant at the time of the transaction. At the end of the day, the accumulated drafts from all purchases are inserted into a specially designed reader which reads the transaction information and performs an electronic funds transfer.

Thus, in order to use the Case system, the consumer must carry a special card and must hand to the merchant a draft instrument. The card must be backed by a prepaid amount of money that is fixed at the time the card is issued and can never be increased on that particular card. The amount can only be diminished as purchases are made.

In contrast, Applicants' invention does not require the consumer to carry a special identification/debit card, although

13

LML-EP 000156

such a card is contemplated for use with Applicants' system. Applicants' card, however, has all necessary information encoded on a magnetic strip, which can be easily read by a MICR device. No time consuming and awkward balance checking or hole punching is required.

Further, the consumer using Applicants' system is not required to furnish the merchant with a special draft instrument. The consumer merely uses a regular check used to draw funds from a normal bank or credit union checking account. This check needn't even be given to the merchant. The checking account information is simply read from the check, which is returned to the consumer. Transaction entries are not made on a debit card using Applicants' system because account information is verified on-line, rather than through a crude system of punched entries.

Thus, the entire amount of the consumer's checking account is available to make purchases using the system, including amounts reflecting recent deposits and other credits, unlike the Case system. Where the Case system enables a complicated and time consuming transaction that requires the transfer of a paper instrument, Applicants' system effects a truly paperless transaction that is easy to use and saves time and money.

It is respectfully submitted that Applicants' claimed system, which obviates the use of checks in a checking account transaction, is completely different from the Case system, which replaces ordinary bank checks with special draft instruments and a complicated, time consuming identification/debit verification

14

LML-EP 000157

process.  It is therefore respectfully urged that the Case patent does not anticipate Applicants' invention.  Applicants respectfully request that the rejection be withdrawn.

Deming discloses an electronic funds transfer system that a payor can use to transfer funds to different payees in satisfaction of debts incurred through previous purchases, use of utilities, etc.  The system is contemplated for use by the payor on a home personal computer.  Thus, as stated in the patent, this is a "home banking" system.

In contrast, Applicants' invention is a point of sale electronic funds transfer system.  The system is utilized as the purchase is being made, with funds being transferred from the consumer's checking account based on information derived directly from an ordinary bank check.

Thus, there are many differences between the Deming system and Applicants' claimed invention.  The Deming system is a home banking system; Applicants' invention is a point of sale check writing system.  The Deming system is used to pay debts that have been incurred in the past; Applicants' invention is used to pay for purchases as they are made.  The Deming system is used to pay a number of debtors, using a personal computer located at the payor's home; Applicants' invention is used to pay only one merchant at a time, at the point of sale only.  Account and other information must be keyed into the Deming system; Applicants' invention can read in account and other information directly from the consumer's

15

LML-EP 000158

ordinary bank check.  The Deming system subscriber is a payor; system subscribers to Applicants' system are merchants.

Because of the above-stated and other differences between the Deming system and Applicants' claimed invention, it is respectfully urged that the Deming system does not anticipate Applicants' invention.  It is therefore respectfully requested that the rejection be withdrawn.

It is respectfully urged that all rejections have been overcome.  It is therefore respectfully requested that this amendment be entered and the case passed to issue.

Respectfully submitted,

Jon L. Roberts
Registration No. 31,293
Arter & Hadden
1801 K Street, N.W.
Suite 400K
Washington, D.C. 20006
Phone: (202) 775-7980

December 21, 1993

16

LML-EP 000159



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No. 07/975,717                    Group Art Unit 2505

Filed:  11/13/92                         Examiner: Pitts, H.

For:    CHECKWRITING POINT OF SALE SYSTEM

                *    *    *    *    *

        RESPONSE TO OFFICE ACTION OF 09/23/93

                *    *    *    *    *

Commissioner of Patents and Trademarks
Box Non-Fee Amendment
Washington, D.C. 20231

Sir:

        Enclosed please find the following:

1.    Response to Office action dated 09/23/93 (16 Pages); and

2.    Certificate of First Class Mailing.

                            Respectfully submitted,

                            Jon L. Roberts
                            Reg. No. 31,293
                            Arter & Hadden
                            1801 K Street, N.W.
                            Suite 400K
                            Washington, D.C. 20006
                            (202) 775-7980

December 21, 1993

LML-EP 000160



CERTIFICATE OF FIRST CLASS MAILING

Date of Mailing: _____ December 21, 1993 _____

I hereby certify that the Response to the Office action dated 09/23/93 (16 pages) regarding U.S. Patent application serial no. 07/975,717 for CHECKWRITING POINT OF SALE SYSTEM is being deposited with the United States Postal Service as first class mail under 37 C.F.R. § 1.8 on the date indicated above and is addressed to Commissioner of Patents and Trademarks, Box Non-Fee Amendment, Washington, D.C. 20231.

Thomas M. Champagne, Esq.
Arter & Hadden
1801 K Street, N.W.
Suite 400K
Washington, D.C. 20006

LML-EP 000161

E




**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:  COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/978,717 | 11/13/92 | PITTS | R | |

|  | PITTS, EXAMINER |
|---|---|

JON L. ROBERTS
GRIER & HADDEN
1301 K STREET, N.W.
SUITE 400K
WASHINGTON, DC  20006

| ART UNIT | PAPER NUMBER |
|---|---|
| 2505 | 7 |

DATE MAILED:    03/09/94

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined   ☑ Responsive to communication filed on 12/22/93  ☑ This action is made final.

A shortened statutory period for response to this action is set to expire ___3___ month(s), ___ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.    35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.        2. ☐ Notice re Patent Drawing, PTO-948.
3. ☑ Notice of Art Cited by Applicant, PTO-1449.            4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.  6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☑ Claims _1-10_ _____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _1-10_ _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
      are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
       examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
       ☐ been filed in parent application, serial no. _____ ; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
       accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

LML-EP 000162

Serial No. 075,717                    -2-

Art Unit   2505


    The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

    A patent may not be obtained though the invention is not
    identically disclosed or described as set forth in section
    102 of this title, if the differences between the subject
    matter sought to be patented and the prior art are such that
    the subject matter as a whole would have been obvious at the
    time the invention was made to a person having ordinary
    skill in the art to which said subject matter pertains.
    Patentability shall not be negatived by the manner in which
    the invention was made.

    Subject matter developed by another person, which qualifies
    as prior art only under subsection (f) or (g) of section 102
    of this title, shall not preclude patentability under this
    section where the subject matter and the claimed invention
    were, at the time the invention was made, owned by the same
    person or subject to an obligation of assignment to the same
    person.

    Claims 1-10 are rejected under 35 U.S.C. § 103 as being

unpatentable over the prior art as discussed previously in view

of the check operated systems set forth in the prior art

statement, for example, the Carlson et al. patents, Murphy etc.

    These patents teach that referenced portions of Case and

Deming would have been obvious to one of ordinary skill in the

art at the time the invention was made to employ with checks at a

point-of-sale for on line transactions, under the rationale of

interchangeable teachings of similar systems.

    Applicant's amendment necessitated the new grounds of

rejection.  Accordingly, THIS ACTION IS MADE FINAL.  See M.P.E.P.

§ 706.07(a).  Applicant is reminded of the extension of time

policy as set forth in 37 C.F.R. § 1.136(a).

LML-EP 000163

Serial No. 975,717                    -3-

Art Unit    2505


A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL
ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS
ACTION.  IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS
OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION
IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED
STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE
ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION.  IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.

    Any inquiry concerning this communication should be directed

to Harold Pitts at telephone number (703) 308-0956.


                              HAROLD PITTS
                              PRIMARY EXAMINER
                              GROUP 2500


Pitts/tj
March 08, 1994

LML-EP 000164

F

08/257390

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No. 07/975,717                    Group Art Unit: 2505

Filed:  11/13/92                         Examiner: Pitts, H.

For:   CHECKWRITING POINT OF SALE SYSTEM

*        *        *        *        *

FILE WRAPPER CONTINUATION APPLICATION
PURSUANT TO 37 C.F.R.  §1.62

*        *        *        *        *

Commissioner of Patent and Trademarks
Box AF
Washington, D.C.  20231

Dear Sir:

This is a request for filing a continuation application under
37 C.F.R §1.62 of the above-captioned prior application.

The correspondence addresses of Applicants are as follows:

Robert R. Hills
5170 Avenue B
St. Augustine, Florida 32095

Henry R. Nichols
8456 Holly Leaf Drive
McLean, Virginia 22102

The above identified prior application, in which no payment of
an issue fee, abandonment, or termination of proceedings has
occurred, is hereby expressly abandoned as of the filing date of
this new application.  Please use all the contents of the prior
application file wrapper, including the drawings, as the basic
papers for the new application.  A verified statement of small
entity status was filed in the parent application and status as a
small entity is still proper and desired.

Please enter the enclosed preliminary amendment.

The prior application is assigned of record to Resource
Technology Services, Inc., 8221 Old Courthouse Road, Suite 202,
Vienna, Virginia 22182.  The power of attorney in the prior
application is to Jon L. Roberts, Reg. No. 31,293.  Address all
future communications to:

Jon L. Roberts
Roberts & Associates
1953 Gallows Road

Suite 220
Vienna, Virginia 22182

It is understood that secrecy under 35 U.S.C. § 122 is hereby waived to the extent that if information or access is available to any one of the applications in the file wrapper of a 37 CFR § 1.62 application, be it either this application or a prior application in the same file wrapper, the Patent and Trademark Office may provide similar information or access to all the other applications in the same file wrapper.

Enclosed is a check in the amount of $355.00 for the filing fee.  This filing fee is calculated on the basis of the claims existing in the prior application as amended by the preliminary amendment.

Respectfully submitted,

Jon L. Roberts
Registration No. 31,293
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182
(703) 356-7700

June 8, 1994

LML-EP 000168



08/257390

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No. 07/975,717                    Group Art Unit: 2505

Filed:  11/13/92                          Examiner: Pitts, H.

For:    CHECKWRITING POINT OF SALE SYSTEM

\*    \*    \*    \*    \*

FILE WRAPPER CONTINUATION APPLICATION
PURSUANT TO 37 CFR § 1.62

\*    \*    \*    \*    \*

Commissioner of Patents and Trademarks
Box AF
Washington, D.C. 20231

Dear Sir:

    Enclosed please find the following:

1.    File wrapper continuation application (2 pages);

2.    Preliminary amendment (10 pages);

3.    Check in the amount of $355.00 for the filing fee; and

4.    Certificate of Express mailing.

Respectfully submitted,

Jon L. Roberts
Reg. No. 31,293
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182
(703) 356-7700

June 8, 1994

LML-EP 000169