# G

08/257390

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No.                          Group Art Unit:

Filed: Herewith                     Examiner:

For:    CHECKWRITING POINT OF SALE SYSTEM

\* \* \* \* \*

PRELIMINARY AMENDMENT

\* \* \* \* \*

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

Applicants hereby submit the following preliminary amendment to the above captioned patent application.

In the Specification:

Please amend the specification as follows:

Page 3, between lines 2 and 3, insert the following paragraphs:

-- U.S. Patent No. 4,270,042 to Case discloses a point of sale system that requires a consumer to prepay a sum of money into a special account that is accessed only by the system. This amount is inscribed on the card, and when a transaction is made using the system, the amount of the transaction is punched out of a designated area on the card. This amount, along with a signature and other information, is supplied on a draft negotiable instrument, which is given to the merchant at the time of the transaction. Thus, the Case system does away with the use of bank checks in effecting the transacion, but requires the use of

9

LML-EP 000170

specialized prepaid draft negotiable instruments that must be surrendered to the merchant.

U.S. Patent No. 4,823,264 to Deming discloses a home banking system that can be used to transfer funds to different payees in satisfaction of debts incurred through previous purchases, use of utilities, etc. The system is consumer driven; that is, it is contemplated for use by the payor on a home personal computer. While the Deming system does away with the use of bank checks, account and other information must be keyed into the system. The Deming system cannot be used to read account and other information directly from an ordinary bank check and has no use for bank checks as instruments other than negotiable paper. Further, the Deming system cannot be used to transfer funds at the time of purchase and is not workable at the point of sale; the system can only be used to pay debts that have been incurred in the past and have accumulated. --.

Page 3, between lines 16 and 17, insert the following paragraph:

-- Further, some of the currently used systems described above require the use of a bank check as a negotiable instrument which must be surrendered to a merchant. Some of the systems do away with the use of a bank check altogether, but require a debit card or a specialized draft instrument to be used only with the particular system. None of these systems completely does away with the need and use for a negotiable draft instrument while using the consumer's bank check for identification and verification only. It

2

is therefore an objective of the present invention to provide such a system. [[

Page 4, line 6, before "The system is intended" insert -- In contrast to known systems, the present invention is a merchant driven system that can be used to process a transaction at the point of sale and at the time of purchase. --.

Page 8, line 2, delete "as a means of conducting" and insert -- as negotiable instruments in effecting the --.

In the Claims:

Please cancel claims 5 and 10.

Please amend the remaining claims as follows:

1. (Amended) A checkwriting point of sale system comprising:

a point of sale terminal adapted to receive consumer bank account information [and further adapted to accept such information from consumer cards on which the bank account information is stored];

a central computer system;

[a] first communications means integral to said point of sale terminal for electronically communicating with [a] the central computer system;

[a] memory means integral to said point of sale terminal for [allowing the temporary storage of] temporarily storing the consumer bank account information [from the consumer cards];

the central computer system having second communication means [capability adapted to receive] for receiving information from a plurality of said point of sale terminals;

3

the central computer system <u>second</u> communication means [allo<s>wing</s>] <u>enabling</u> said central computer system to communicate with external [data bases] <u>databases</u> for <u>performing a</u> consumer bank account status [verification] <u>search</u> and [allowing] <u>further enabling automated clearing house</u> communication [with banking institutions] for [purposes of transfer of] <u>transferring</u> funds <u>without using a bank check as a negotiable instrument</u>.

2. (Amended) [A] <u>The</u> checkwriting point of sale system according to claim 1 wherein said point of sale terminal [is] further [adapted to read MICR] <u>includes means for reading magnetic ink character recognition</u> numbers appearing on a consumer check [and wherein said consumer check is used to identify] <u>for the sole purpose of identifying and reading</u> the consumer bank account information.

3. (Amended) The checkwriting point of sale system according to claim 1 wherein said point of sale terminal further comprises an alphanumeric display <u>means</u> [adapted to receive] <u>for receiving said</u> consumer bank account information from the memory means [of the point of sale terminal such that said point of sale terminal is adapted to display] <u>and for displaying</u> the consumer bank account information.

4. (Amended) The checkwriting point of sale system according to claim 1 further comprising a printer <u>means for</u> [adapted to receive] <u>receiving</u> information from the memory means of the point of sale terminal [to create point of] <u>and for generating a transaction event</u> sale slip[s].

4

5. ~~6.~~ (Amended) The checkwriting point of sale system according to claim 1 further comprising a resident third party [data base] <u>database</u> wherein consumer banking account status information is stored<u>, the consumer banking account status information being</u> [which is] used for verification of consumer banking account status.

6. ~~7.~~ (Amended) The checkwriting point of sale system according to claim 1 wherein the central computer system further comprises a system subscriber [data base] <u>database, the system subscriber database</u> comprising information regarding merchants and service providers <u>that are</u> authorized to use the checkwriting point of sale system.

7. ~~8.~~ (Amended) The checkwriting point of sale system according to claim ~~7~~ wherein the central computer <u>system</u> further comprises a database comprising information regarding consumers [approved to use the checkwriting point of sale system] <u>whose consumer banking account status is not verified as bad</u>.

9. (Amended) A checkwriting point of sale process comprising the steps of:

    a) presenting a <u>bank</u> check <u>specimen</u> to a point of sale terminal located at a merchant or service provider,

    b) reading the [MICR] <u>magnetic ink character recognition</u> number information on the check <u>for the sole purpose of obtaining consumer bank account information</u>,

5

LML-EP 000174

c) storing the consumer bank account information <u>obtained</u> from the check and verifying <u>that</u> account numbers <u>were accurately read</u> at the point of sale terminal,

d) inputting transaction event information into the point of sale terminal,

e) transmitting the transaction event information and consumer bank account information to a central computer system,

[f)] verifying the authorization status of the consumer,

g) verifying the banking account status of the consumer via a query to a third party data base if a particular consumer is not authorized to use the system ,

h] sending an "approved" message to the point of sale terminal, if the consumer's banking account status is approved for the transaction, and]

f) <u>storing the transaction event information and consumer banking account information, and</u>

[i]g) subsequently transmitting the transaction event information to a bank for subsequent [ACH] <u>automated clearing house</u> operations.

Please add the following new claims:

31. (New) A checkwriting point of sale system comprising:

a point of sale terminal adapted to receive consumer bank account information;

a central computer system;

6

first communications means integral to said point of sale terminal for electronically communicating with the central computer system; and

memory means integral to said point of sale terminal for temporarily storing the consumer bank account information;

the point of sale terminal comprising reading means for reading magnetic ink character recognition numbers on consumer bank checks for the sole purpose of eliciting consumer bank account information;

the central computer system having second communication means for receiving information from a plurality of said point of sale terminals;

the central computer system second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using a bank check as a negotiable instrument.

10. (New)    The checkwriting point of sale system according to claim 1 further comprising a printer means for receiving information from the memory means of the point of sale terminal and for generating a transaction event sale slip.

11. (New)    The checkwriting point of sale system according to claim 1 further comprising a resident third party database wherein consumer banking account status information is stored, the

7

consumer banking account status information being used for verification of consumer banking account status.

12. ~~14.~~ (New)    The checkwriting point of sale system according to claim ~~11~~ 9 wherein the central computer system further comprises a system subscriber database, the system subscriber database comprising information regarding merchants and service providers that are authorized to use the checkwriting point of sale system.

13. ~~15.~~ (New)    The checkwriting point of sale system according to claim 4, wherein the sales slip includes means for execution by the consumer for proof of bank account access authorization.

14. ~~16.~~ (New)    The checkwriting point of sale system of claim 1, wherein the point of sale terminal further comprises means for automatically logging a point of sale terminal location and transaction date, time, and sales amount.

17. (New)    The checkwriting point of sale process of claim 9, further comprising the steps of:

    a)    verifying the status of the consumer bank account,

    b)    verifying the consumer bank account status of the consumer via a query to a third party database if the consumer bank account is verified as bad, and

    c)    sending an approval message to the point of sale terminal if the consumer's banking account status is approved for the transaction.

18. (New)    The checkwriting point of sale process of claim 9, further comprising the steps of:

8

(A) printing a transaction event sales slip following the sending of an approval message; and

(B) executing of the sales slip by the consumer as proof of bank account access authorization.

19. (New)    The checkwriting point of sale process of claim 17, further comprising the steps of:

(A) printing a transaction event sales slip following the sending of an approval message; and

(B) executing of the sales slip by the consumer as proof of bank account access authorization.

20. (New)    The checkwriting point of sale process of claim 9, further comprising the step of automatically logging point of sale terminal location information and transaction date, time, and sales amount information into the point of sale terminal.

21. (New)    The checkwriting point of sale system according to claim 12, wherein the sales slip includes means for execution by the consumer of proof of bank account access authorization.

22. (New)    The checkwriting point of sale system of claim 9, wherein the point of sale terminal further comprises means for automatically logging a point of sale terminal location and transaction date, time, and sales amount.

9

LML-EP 000178

REMARKS

This preliminary amendment is being filed as part of the above-captioned file wrapper continuation application, the parent application of which is Serial No. 07/975,717, filed November 13, 1992. No new matter has been added by this amendment. The parent application is abandoned as of the filing date of the present application. It is respectfully requested that this amendment be entered, the claims allowed, and the case passed to issue.

Respectfully submitted,

Jon L. Roberts
Registration No. 31,293
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182
(703) 356-7700

June 8, 1994

10

LML-EP 000179

# H



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/257,390 | 06/09/94 | HILLS | B5M1/1028 |

EXAMINER: PITTS, H
ART UNIT: 2514
PAPER NUMBER: 9
DATE MAILED: 10/28/94

JON L. ROBERTS
ROBERTS & ASSOCIATES
1953 GALLOWS RD.
SUITE 220
VIENNA, VA 22182

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined  ☐ Responsive to communication filed on _____  ☐ This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), _____ days from the date of this letter. Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☑ Claims _1-4, 6-9, 11-21_ are pending in the application.
   Of the above, claims _____ are withdrawn from consideration.
2. ☐ Claims _____ have been cancelled.
3. ☐ Claims _____ are allowed.
4. ☑ Claims _1-4, 6-9, 11-21_ are rejected.
5. ☐ Claims _____ are objected to.
6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.
8. ☐ Formal drawings are required in response to this Office action.
9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).
10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).
11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).
12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.
13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. ☐ Other

PTOL-326 (Rev. 2/93)                   **EXAMINER'S ACTION**

10

LML-EP 000180

Serial No. 257,390                             -2-
Art Unit    2514

Claims 1-4, 6-9, 11-21 rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

Which the applicant has discussed ~~case~~ ᵇase and ~~demand~~ ᴼᵉᵐⁱᴺᵘ in the specification, claim 1, for example, does not claim the argued novelty. In addition, there has been no specific comparison of claim language vis-a-vis the prior art of the I.D.S. and as applied in combination in the previous final rejection. One set of independent/dependent claims should be selected as they appear to embody separate inventions.

As understood, the claims, are rejected as set forth in the previous final rejection, with the further notation that to use the check "solely" for the access would be the most trivial modification of systems such as Granzow, etc.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Harold Pitts whose telephone number is (703) 308-0717.

Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 308-0956.

HAROLD PITTS
PRIMARY EXAMINER
GROUP 2500

Pitts/dw
October 26, 1994