# EXHIBIT L

2 0 0 0

# ACH RULES

## A Complete GuideTo Rules & Regulations Governing the ACH Network

Copyright 2000 by the National Automated Clearing House Association
All Rights Reserved
Printed in the United States of America
13665 Dulles Technology Drive, Suite 300
Herndon, VA 20171
703-561-1100

# THE 2000 ACH RULES

## TABLE OF CONTENTS


| | | | |
|---|---|---|---|
| I. | UNDERSTANDING THE ACH NETWORK: AN ACH PRIMER | | ACH PRIMER 1 |
| | QUICK FIND: A REFERENCE GUIDE TO THE ACH RULES | | QUICK FIND 1 |
| II. | 2000 REVISIONS TO THE NACHA OPERATING RULES AND NACHA OPERATING GUIDELINES | | R 1 |
| III. | NACHA OPERATING RULES | | |
| | Table of Contents | | OR i |
| | Preface | | OR ix |
| | NACHA Board of Directors Policy Statement on Data Security | | OR xi |
| | NACHA Board of Directors Policy Statement on Electronic Transmission | | OR xiii |
| | NACHA Board of Directors Policy Statement on Spontaneous Internet-Initiated Purchases | | OR xv |
| | Article I | General | OR 1 |
| | Article II | Origination of Entries | OR 1 |
| | Article III | Obligations of Originators | OR 11 |
| | Article IV | Receipt of Entries | OR 13 |
| | Article V | Return, Adjustment, Correction, and Acknowledgment of Entries and Entry Information | OR 16 |
| | Article VI | Settlement and Accountability | OR 19 |
| | Article VII | Recall, Stop Payment, Recredit, and Adjustment | OR 19 |
| | Article VIII | Obligations of Automated Clearing House Operators | OR 25 |
| | Article IX | Check Truncation Entries | OR 26 |
| | Article X | Cross-Border Payments | OR 27 |
| | Article XI | Requirements of Associations | OR 27 |

| | | |
|---|---|---|
| Article XII | Amendment of the Rules | OR 28 |
| Article XIII | Definition of Terms | OR 29 |
| **THE APPENDICES - TECHNICAL SPECIFICATIONS** | | |
| Appendix I | ACH File Exchange Specifications | OR 34 |
| Appendix II | ACH Record Format Specifications | OR 39 |
| Appendix III | Specifications for Data Acceptance | OR 79 |
| Appendix IV | Minimum Description Standards | OR 83 |
| Appendix V | Return Entries | OR 83 |
| Appendix VI | Notification of Change | OR 109 |
| Appendix VII | Acknowledgment Entries | OR 122 |
| Appendix VIII | Rule Compliance Audit Requirements | OR 129 |
| Appendix IX | Compensation Rules | OR 131 |
| Appendix X | Arbitration Requirements | OR 134 |
| Appendix XI | Rules Enforcement | OR 136 |
| NACHA Operating Rules Index | | OR 139 |

**IV. NACHA OPERATING GUIDELINES**

| | | | |
|---|---|---|---|
| Table of Contents | | | OG i |
| Preface | | | OG 1 |
| Section I | Development and Overview of the System | | OG 2 |
| Section II | Participant Relationships and Responsibilities | | |
| | Chapter I | Originators | OG 8 |
| | Chapter II | Originating Depository Financial Institutions | OG 28 |
| | Chapter III | ACH Operators | OG 36 |
| | Chapter IV | Receiving Depository Financial Institutions | OG 41 |
| Section III | Functional Responsibilities | | |
| | Chapter I | Prenotifications | OG 55 |

| | | |
|---|---|---|
| Chapter II | Notifications of Change | OG 57 |
| Chapter III | Returns, Dishonored Returns, Contested Dishonored Returns | OG 62 |
| Chapter IV | Reversals, Reclamations, and ODFI Requests for Return | OG 74 |
| Chapter V | Acknowledgment Entries | OG 77 |
| Chapter VI | Customer-Initiated Entries | OG 79 |
| Section IV | Special Topics | |
| Chapter I | Third Party Processors | OG 80 |
| Chapter II | Addenda Records | OG 86 |
| Chapter III | Audit Controls and Compliance | OG 93 |
| Chapter IV | Rules Enforcement | OG 98 |
| Chapter V | Arbitration and Compensation | OG 105 |
| Chapter VI | Mapping | OG 108 |
| Chapter VII | Automated Enrollment | OG 128 |
| Chapter VIII | Destroyed Check Entries | OG 133 |
| Chapter IX | Cross-Border Payments | OG 135 |
| Chapter X | Re-presented Check Entries | OG 144 |
| Chapter XI | Point-of-Purchase Entries | OG 149 |
| Chapter XII | PPD Accounts Receivable Truncated Check Debit Entries | OG 154 |
| NACHA Operating Guidelines Index | | OG 161 |
| V. | REGIONAL ACH ASSOCIATIONS | REGIONAL ASSOCIATIONS 1 |
| VI. | FEDERAL RESERVE UNIFORM OPERATING CIRCULAR | UOC 1 |
| VII. | REGULATION E | REG E 1 |
| | REGULATION E — OFFICIAL STAFF INTERPRETATION | REG E INTERPRETATION 1 |
| | ELECTRONIC FUND TRANSFER ACT | EFTA 1 |

| | | |
|---|---|---|
| VIII. | FEDERAL TAX DEPOSIT PAYMENTS (EFTPS) | FTDP 1 |
| IX. | TITLE 31 OF THE CODE OF FEDERAL REGULATIONS, PARTS 208 AND 210 | FEDERAL GOVERNMENT PAYMENTS 1 |
| X. | FEDERAL ACH PAYMENT SCHEDULE | FAPS 1 |

UNDERSTANDING THE ACH NETWORK: AN ACH PRIMER
QUICK FIND: A REFERENCE GUIDE TO THE ACH RULES

2000 REVISIONS TO THE NACHA OPERATING RULES
AND NACHA OPERATING GUIDELINES

NACHA OPERATING RULES

NACHA OPERATING GUIDELINES

REGIONAL ACH ASSOCIATIONS

UNIFORM OPERATING CIRCULAR

REGULATION E
OFFICIAL STAFF INTERPRETATION
ELECTRONIC FUND TRANSFER ACT

FEDERAL TAX DEPOSIT PAYMENTS
(EFTPS)

TITLE 31 OF THE CODE OF FEDERAL REGULATIONS, PARTS 208 AND 210

2000 FEDERAL ACH PAYMENT SCHEDULE

# HOW TO IMPLEMENT THE 2000 REVISIONS TO THE NACHA OPERATING RULES AND GUIDELINES

The following pages highlight the rule amendments incorporated in this publication of the *NACHA Operating Rules & Guidelines*. A summary of the year 2000 revisions follows, which explains the rule amendments and offers suggestions on their implementation. Also included within this section is information on rule amendments that became effective in late 1999.

The following material provides information relating to two amendments that were implemented on December 17, 1999 and four amendments that will become effective on September 15, 2000. For rule amendments that will become effective in the year 2000, vertical markings (|) in the left margin of the *NACHA Operating Rules* indicate where amendments (deletions, additions, or wording changes) have taken place. The date of approval is noted in the bottom margin and is immediately followed by the effective date of the rule change. To accommodate rule amendments that will become effective later in 2000, this edition contains both the current wording of the rule, followed by the new rule highlighted in brackets and italics.

Following are highlights of amended rules that became effective on December 17, 1999, in addition to amended rules that will become effective on September 15, 2000. After each subject are the pages corresponding to that amendment.

## EFFECTIVE DECEMBER 17, 1999

### AUDIT REQUIREMENTS

Modified the rules compliance audit requirements within the *NACHA Operating Rules* to (1) require audits of rules compliance to be completed more frequently; audits must be completed annually rather than every three years; (2) provide greater coverage of rules provisions within the audit requirements; (3) require completion of an annual audit of rules compliance by third-party service providers that act on behalf of Participating DFIs; and (4) require retention of documentation by Participating DFIs and third-party service providers that the annual audit has been completed. (Note: The first audit under this rule amendment must be completed by December 1, 2000.)

**Approved April 8, 1999, Effective December 17, 1999**
**(OR 4, 14, 33, 129, 130, 131)**

### PPD ACCOUNTS RECEIVABLE TRUNCATED CHECK DEBIT ENTRIES

Established a short-term rule (effective December 17, 1999 through December 14, 2000) that expands the usage of the PPD format to enable Originators to truncate consumer checks received through the U.S. mail for the payment of goods or services and to collect those payments via ACH debit entries. This short-term rule amendment provides a legal framework within the *NACHA Operating Rules* for the protection of ACH participants while testing the effectiveness and acceptance of this consumer check truncation application.

**Approved October 6, 1999, Effective December 17, 1999 through December 14, 2000**
**(OR 2, 3, 9, 10, 11, 12, 13, 14, 16, 17, 20, 21, 22, 23, 24, 25, 30, 32, 65, 66, 67, 71, 77, 85, 86)**

*****

**EFFECTIVE SEPTEMBER 15, 2000**

CROSS-BORDER PAYMENTS

Establishes two new Standard Entry Class Codes, CBR (Corporate Cross-Border Transaction) and PBR (Consumer Cross-Border Transaction), to be used for the origination and receipt of cross-border ACH entries. These new SEC Codes will enable these types of entries to be readily identified as cross-border payments.

**Original Ballot Approved October 22, 1997**
**Change of Implementation Date Ballot Approved October 1, 1998, Effective September 15, 2000**
(OR 2, 13, 30, 32, 35, 36, 42, 45, 52, 61, 63, 64, 65, 67, 68, 69, 70, 71, 72, 73, 74, 76, 77, 79, 88, 89, 92, 96, 99, 105, 109, 110, 111, 113, 118)

POINT-OF-PURCHASE ENTRIES

Modifies the *NACHA Operating Rules* to create a new Standard Entry Class Code, POP (Point-of-Purchase Entry), that will replace the current use of the PPD format for the origination of a one-time ACH debit entry to a Receiver's account for purchases made in-person at the point-of-purchase. The initiation of this type of entry is based on a written authorization and a source document (check) obtained from the Receiver at the point-of-purchase. The Receiver's check will be used as the source document to obtain the routing and account number, as well as the serial number of the check. The check will be voided by the Originator and returned to the consumer at the point-of-purchase. As of September 15, 2000, this new SEC Code will supersede use of the PPD interim rule for point-of-purchase entries.

**Approved April 8, 1999, Effective September 15, 2000**
(OR 2, 4, 12, 13, 20, 32, 53, 61, 63, 64, 65, 66, 67, 68, 71, 72, 74, 77, 79, 82, 83, 84, 85, 129)

RE-PRESENTED CHECK ENTRIES

Establishes a new Standard Entry Class Code, RCK (Re-presented Check Entry), to provide commercial depositors and their financial institutions with a distinct format to use to transmit ACH debit entries to collect items (checks) that have been returned for insufficient or uncollected funds. This rule amendment supersedes an interim rule amendment, which enabled the Prearranged Payment and Deposit (PPD) format to be used to re-present items returned for insufficient or uncollected funds.

**Original Ballot Approved March 4, 1998**
**Change of Implementation Date Ballot Approved October 1, 1998, Effective September 15, 2000**
(OR 2, 3, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 20, 21, 22, 23, 24, 25, 31, 32, 56, 62, 63, 64, 65, 66, 67, 68, 71, 74, 77, 78, 79, 82, 83, 85, 86, 88, 129, 130)

TYPES OF ACCOUNTS FOR ACH TRANSACTIONS

Establishes two new sets of transaction codes to support the transmission of ACH credit and debit entries to financial institutions' general ledger accounts and to support the transmission of credit entries to loan accounts. This rule amendment also accommodates the transmission of reversals to correct erroneous credit entries to loan accounts.

**Original Ballot Approved November 20, 1996**
**Change of Implementation Date Ballot Approved October 14, 1998, Effective September 15, 2000**
(OR 14, 30, 31, 33, 62, 83, 97, 103, 109)

# POINT-OF-PURCHASE ENTRIES (INTERIM AND FINAL RULES)

SUMMARY:

The following two rule amendments modify the *NACHA Operating Rules* to permit Originators (i.e., merchants or billers) to use the ACH Network to initiate one-time ACH debit entries to consumers' accounts for the payment of in-person purchases of goods or services:

- *Interim Rule – Using the PPD Format for Point-of-Purchase Entries*

  This rule amendment is a one-year interim rule (effective September 17, 1999 through September 14, 2000) that provides a framework within the *NACHA Operating Rules* for the initiation of point-of-purchase entries. This amendment expanded the definition of the Prearranged Payment and Deposit (PPD) Standard Entry Class (SEC) Code to allow this format to be used by an Originator to initiate a one-time ACH debit entry to a consumer's account for a purchase made in-person at the point-of-purchase. The initiation of this type of entry is based on the written authorization and source document (check) obtained from the consumer at the point-of-purchase, from which the consumer's routing number, account number, and check serial number are obtained by the Originator. The check must subsequently be voided by the Originator and returned to the consumer at the point-of-purchase.

- *Final Rule – Point-of-Purchase Entries (POP)*

  This rule amendment, which becomes effective on September 15, 2000, establishes a new Standard Entry Class Code, POP (Point-of-Purchase Entry) that allows Originators to initiate a one-time ACH debit entry to a consumer's account for purchases made in-person at the point-of-purchase. The initiation of this type of entry is based on a written authorization and source document (check) obtained from the consumer at the point-of-purchase. The consumer's check is used by the merchant to obtain the consumer's routing number, account number, and check serial number. The check must be voided by the Originator and returned to the consumer at the point-of-purchase. The final rule on Point-of-Purchase entries supersedes the PPD interim rule for the initiation of point-of-purchase entries; as of September 15, 2000, the PPD Standard Entry Class Code will no longer be permitted for use with point-of-purchase entries.

To initiate a point-of-purchase entry, the consumer must present a check that has not been previously voided or negotiated to the merchant. The merchant uses a check reading device to capture the MICR information (Routing Number, Account Number, and Check Serial Number) from the consumer's check. The words "Void, Not Negotiable" or similar language should be stamped on the check by the merchant. The merchant then key enters the amount of the transaction. An authorization for the ACH debit entry is printed, which the customer must sign. The signature on the authorization provides the merchant with authorization to create an ACH debit transaction to the consumer's account at his financial institution. The merchant must provide the consumer with a copy of the authorization and return the voided check to the consumer. The merchant must also provide the Receiver with a receipt containing specific, minimum information relating to both the merchant and the transaction.

Legal Framework

Point-of-purchase entries are subject to the Electronic Fund Transfer Act, the Federal Reserve's Regulation E, and the *NACHA Operating Rules*. (Note: NACHA staff believes, based on discussions with the Federal Reserve Board staff, that point-of-purchase transactions will be governed by Regulation E and, because the check is used only as a source document and subsequently voided, the source document does not constitute an access device as defined by Regulation E.) Point-of-purchase transactions are not be subject to check law and the Uniform Commercial Code for the following reasons:

- the check is not accepted by the merchant as a negotiable instrument; and
- the check is not negotiated by the merchant or deposited into the check collection system.

**IMPACT TO PARTICIPANTS:**

Originators

*Agreements with ODFIs*

Originators choosing to utilize the ACH Network for point-of-purchase transactions should consider modifications to their agreements with their ODFIs to address the origination of these entries. These modifications should address the extent to which the Originator and ODFI will share liability for point-of-purchase transactions and should define any specific processing obligations relating to such transactions.

*Authorization Requirement*

Originators of point-of-purchase entries must obtain the consumer's written authorization prior to initiating a debit entry under this application. Although the *NACHA Operating Rules* do not prescribe specific authorization language for the point-of-purchase application, the authorization must conform to the requirements of the *NACHA Operating Rules*, which require that the authorization (1) be in writing, signed or similarly authenticated by the Receiver, (2) be readily identifiable as an ACH debit authorization, and (3) clearly and conspicuously state its terms. It is strongly recommended that authorization language for point-of-purchase entries specifically state that the check will not be processed. This will assist consumers in understanding the nature of the transaction. Originators must provide a copy of the authorization to the consumer as required by the *NACHA Operating Rules*.

Unlike authorization requirements for most consumer debit entries, Originators of point-of-purchase entries need not include on the authorization the method by which the consumer must revoke the authorization, as these entries are prohibited from being returned using Return Reason Code R07 (Authorization Revoked). Consumers retain their rights to return a transaction for other appropriate reasons, including stop payment (Return Reason Code R08) or as unauthorized (Return Reason Code R10).

*Source Documents*

Originators may only accept a check or sharedraft as a source document for a point-of-purchase debit entry if:

- the check or sharedraft has not been previously negotiated;
- the check or sharedraft has not been previously voided;
- the check or sharedraft contains a pre-printed serial number; and
- the check or sharedraft is drawn on a consumer account.

Checks that may not be used as source documents for point-of-purchase entries include:

- corporate checks;
- third-party checks;
- credit card checks;
- obligations of a financial institution (e.g., cashier's checks, money orders, traveler's checks, official checks, etc.);
- checks drawn on the Treasury of the United States, a Federal Reserve Bank, or a Federal Home Loan Bank;
- checks drawn on a state or local government; or
- checks payable in a medium other than United States currency.

*Receipt Requirements*

Originators must, at the point-of-purchase, provide Receivers with a receipt that contains the following minimum amount of information:

- Originator name (merchant)
- company (merchant)/third-party service provider telephone number;
- date of transaction;
- transaction amount;
- source document check serial number; and
- merchant number (or other unique number that identifies the location of the transaction).

It is also recommended, but not required, that the Originator provide the following information on the receipt provided to the Receiver:

- merchant address;
- merchant identification number;
- Receiver's financial institution routing number;
- Receiver's truncated account number;
- Receiver's truncated identification number; and
- transaction reference number.

Originators must be aware that the Receiver's complete account number and complete identification number are not permitted to be placed on the receipt. At the Originator's discretion, the receipt and the authorization required for point-of-purchase entries may be provided to the consumer on the same document or on different documents.

*Formatting Requirements*

PPD Interim Rule

- Individual Name Field

  In the PPD interim rule, it is required that information be included in the Individual Name Field. Originators must include either (1) the Receiver's name, or (2) a reference number, identification number, or code that the merchant uses to identify a particular transaction or customer. Originators should be aware that, for the PPD interim rule, a point-of-purchase entry may not be returned by the RDFI solely because the individual name was not included in the transaction. A point-of-purchase entry under the PPD interim rule may, however, be returned if the Individual Name Field is left blank.

- Check Serial Number

  The rules governing point-of-purchase entries require that the Originator provide the check serial number from the Receiver's source document on the entry. For the PPD interim rule, the Originator must ensure that the check serial number from the Receiver's source document is placed within the Individual Identification Number Field of the PPD entry. Originators should be aware that, although the PPD interim rule does not require RDFIs to print the check serial number to the consumer's bank statement, it is provided to the RDFI to assist in addressing any customer service inquiries. Some RDFIs may, at their discretion, choose to print the check serial number to the consumer's statement as a customer service.

- Limitation on Dollar Amount

  Originators must be aware that, for the PPD interim rule, point-of-purchase entries may not be initiated for a dollar amount over $5,000. This restriction will be lifted for the final Point-of-Purchase rule.

- Company Entry Description

  Originators must ensure that all point-of-purchase entries initiated using the interim PPD rule contain the word "PURCHASE" within the Company Entry Description Field of the Company/Batch Header Record.

This will enable the RDFI to distinguish point-of-purchase transactions from other PPD entries and assist them in responding to any customer service inquiries.

POP Final Rule

- Individual Name

  Originators should be aware that, with the new POP SEC Code, the inclusion of information in the Individual Name Field is completely optional. If the Originator chooses to utilize this field, it must include either (1) the Receiver's name, or (2) a reference number, identification number, or code that the merchant uses to identify a particular transaction or customer.

- Check Serial Number

  The rules governing point-of-purchase entries require that the Originator provide the check serial number from the Receiver's source document on the entry. For the new POP SEC Code, the Originator must ensure that the check serial number from the Receiver's source document is placed within the Check Serial Number Field of the POP entry. Originators should be aware that the final POP rule requires RDFIs to print the check serial number to the consumer's bank statement.

- Limitation on Dollar Amount

  The new POP SEC Code rule contains no limitation on the dollar amount of a point-of-purchase transaction.

*Return of Point-of-Purchase Entries*

Originators should be aware that point-of-purchase entries, like other ACH transactions, may be returned for a variety of reasons. Originators should be aware, however, that RDFIs are prohibited from returning point-of-purchase entries based on a consumer's claim that his authorization had been revoked (R07) since these are one-time payments and, by definition, the consumer's authorization must have been obtained by the Originator at the time of purchase and initiation of the entry. The consumer retains the option, however, to (1) request his RDFI to stop the payment of a point-of-purchase entry (R08), (2) request his RDFI to return an unauthorized point-of-purchase entry (R10), or (3) go directly to the Originator (merchant) to request a refund for the transaction.

Originators should also be aware that, because the point-of-purchase entry application does not require the Originator to capture the consumer's name for inclusion on the point-of-purchase entry, the RDFI must rely on the ODFI's warranty regarding the validity of the consumer's account number for posting purposes. The RDFI, therefore, may not return a point-of-purchase entry using Return Reason Codes R03 or R17 solely because the consumer's name is not included in the Individual Name Field of the entry.

Originators must be prepared to handle returned point-of-purchase entries and must establish procedures that enable them to identify and contact the Receiver relating to any unpaid debit entry. Because the Originator does not retain the consumer's voided check as a source document, and because the consumer's name and address are not included as part of the MICR-capture process, Originators will need to develop alternative methods for retaining information necessary to identify the consumer for whom a point-of-purchase debit has been returned. While the *NACHA Operating Rules* do not limit the number of times a point-of-purchase entry may be reinitiated if the entry has been returned for insufficient or uncollected funds, Originators are encouraged to restrict the number of times such entries are reinitiated to lessen the likelihood of customer service inquiries or confusion.

## ODFIs

*Warranties and Liabilities*

In addition to all other general ODFI warranties contained within the *NACHA Operating Rules*, each ODFI that chooses to transmit point-of-purchase entries on behalf of its Originator also warrants to each RDFI, ACH Operator, and ACH Association that:

- the source document provided to the Originator for use in obtaining the Receiver's routing number, account number, and check serial number for the initiation of the point-of-purchase entry is
- returned voided to the Receiver after use by the Originator, and
- has not been provided by the Receiver for use in any prior point-of-purchase entry.

ODFIs should consider modifications to their agreements with their Originators to address the origination of point-of-purchase entries on behalf of their Originators. These modifications should address the extent to which the Originator and ODFI would share liability for point-of-purchase transactions and should define any specific processing obligations relating to such transactions.

*Formatting Requirements*

ODFIs must ensure that, prior to transmission to the ACH Operator, point-of-purchase entries comply with all technical specifications and formatting requirements in accordance with the *NACHA Operating Rules*. ODFIs must ensure that:

PPD interim rule:

- either the Receiver's name or a reference number, identification number, or code that the merchant uses to identify a particular transaction or customer is included in the Individual Name Field of the PPD Entry Detail Record.
- the description "PURCHASE" appears within the Company Entry Description Field of the Company/Batch Header Record.
- the check serial number from the Receiver's check is placed within the Individual Identification Number Field of the PPD entry.
- point-of-purchase entries are not initiated for a dollar amount over $5,000.

POP final rule:

- the check serial number from the Receiver's source document is placed within the Check Serial Number Field of the POP entry.

ODFIs should be aware that, for the POP SEC Code,

- use of the Individual Name Field by the Originator is completely optional. When used, it must contain either (1) the Receiver's name, or (2) a reference number, identification number, or code that the merchant uses to identify a particular transaction or customer.
- there is no limitation on the dollar amount of a point-of-purchase transaction.

*Return of Point-of-purchase Entries*

ODFIs should be aware that point-of-purchase entries, like other ACH transactions, may be returned for a variety of reasons in accordance with the return time frames prescribed by the *NACHA Operating Rules*.

If appropriate, the consumer may (1) request his RDFI to stop the payment of a point-of-purchase entry (R08), (2) request his RDFI to return an unauthorized point-of-purchase entry (R10), or (3) go directly to the Originator (merchant) to request a refund for the transaction. ODFIs should be aware, however, that RDFIs are prohibited from returning point-of-purchase entries based on a consumer's claim that his authorization had been revoked (R07) since these are one-time payments and, by definition, the consumer's authorization must have been obtained by the Originator at the time of purchase and initiation of the entry.

ODFIs should also be aware that, because the point-of-purchase entry application does not require the Originator to capture the consumer's name for inclusion on the point-of-purchase entry, the RDFI must rely on the ODFI's warranty regarding the validity of the consumer's account number for posting purposes. The RDFI, therefore, may not return a point-of-purchase entry using Return Reason Codes R03 or R17 solely because the consumer's name is not included in the Individual Name Field of the entry.

ODFIs should ensure that their Originators are prepared to handle returned point-of-purchase entries and have established procedures that enable them to identify and contact the Receiver relating to any unpaid debit entry. Because the Originator does not retain the consumer's voided check as a source document, and because the consumer's name and address are not included as part of the MICR-capture process, ODFIs should ensure that their Originators understand the need to develop alternative methods for retaining information necessary to identify the consumer for whom a point-of-purchase debit has been returned. While the *NACHA Operating Rules* do not limit the number of times a point-of-purchase entry may be reinitiated if the entry has been returned for insufficient or uncollected funds, ODFIs should encourage their Originators to restrict the number of times such entries are reinitiated to lessen the likelihood of customer service inquiries or confusion.

RDFIs

*Return of Point-of-Purchase Entries*

Point-of-purchase entries may be returned for a variety of reasons in accordance with the *NACHA Operating Rules*. With the exception of entries for which the consumer claims there was no authorization, the RDFI must transmit point-of-purchase entry returns by its ACH Operator's deposit deadline for the return entry to be made available to the ODFI no later than the opening of business on the second banking day following the settlement date of the original entry. For an entry that the consumer claims is unauthorized (R10), the RDFI must transmit the return by its ACH Operator's deposit deadline for the return to be made available to the ODFI no later than the opening of business on the banking day following the sixtieth calendar day following the settlement date of the original entry. For the return of unauthorized entries, the RDFI must obtain a signed affidavit from the consumer on which the consumer claims that the entry was not authorized.

RDFIs must be aware that, under certain circumstances, specific Return Reason Codes should not be used with point-of-purchase entries:

- Return Reason Code R03 (*No Account/Unable to Locate Account*) and Return Reason Code R17 (*File Record Edit Criteria*)

RDFIs must be aware that, for transactions initiated at the point-of-purchase, it is difficult for the Originator to capture the Receiver's name in an automated fashion. For this reason, the Originator is not required to include the individual's name in the point-of-purchase entry, and the RDFI must rely on the ODFI's warranty regarding the validity of the consumer's account number for posting purposes.

The RDFI is prohibited from returning point-of-purchase entries solely because they lack an Individual Name. In general, typical Return Reason Codes used to return entries for which there is no Individual Name (e.g., R03, R17) may not be used by the RDFI for point-of-purchase entries. These Return Reason codes may, however, be used with point-of-purchase entries for other valid reasons.

RDFIs should be aware, however, that for the PPD interim rule, where it is required that information be included in the Individual Name field, Originators must include either (1) the Receiver's name, or (2) a reference number, identification number, or code that the merchant uses to identify a particular transaction or customer. Although a point-of-purchase entry may not be returned by the RDFI solely because the individual name was not included in the transaction, a point-of-purchase entry under the PPD interim rule may be returned if the Individual Name field is left blank.

- Return Reason Code R07 *(Authorization Revoked by Customer)*

If appropriate, the consumer may (1) request his RDFI to stop the payment of a point-of-purchase entry (R08); (2) request his RDFI to return an unauthorized point-of-purchase entry using Return Reason Code R10 (Reminder: the RDFI must obtain Receiver's signed affidavit when using this Return Reason Code); or (3) go directly to the Originator (merchant) to request a refund for the transaction.

RDFIs must be aware that they are prohibited from returning point-of-purchase entries using Return Reason Code R07 (Authorization Revoked by Customer) based on a consumer's claim that his authorization had been revoked since this is a one-time payment and, by definition, the consumer's authorization must have been obtained by the Originator at the time of purchase and initiation of entry.

*Stop Payments on Point-of-Purchase Entries*

In general, the *NACHA Operating Rules* regarding ACH stop payments require consumers to place a stop payment order on a debit at least three banking days prior to the scheduled date of the entry. Because the merchant will generally process point-of-purchase transactions quickly, consumers are unlikely to be able to meet the three-day advance notice requirement for placing a stop payment order on such entries. A consumer desiring to place a stop payment order on a point-of-purchase entry must provide the stop payment order to his financial institution in such a time and manner that allows the RDFI a reasonable opportunity to act on the stop payment order prior to acting on the debit entry.

*Statement Requirements*

PPD Interim Rule

For point-of-purchase entry transactions originated from September 17, 1999 through September 14, 2000 using the PPD Standard Entry Class Code, RDFIs are required to provide the descriptive information relating to the entry on the consumer's monthly bank statement as is currently required for PPD entries, including the Originator's (merchant's) name, the description "PURCHASE," etc. Although the check serial number from the consumer's source document is included on the entry to assist the RDFI with customer service inquiries, the RDFI is not required to provide the check serial number on the statement.

POP Final Rule

Effective September 15, 2000, the RDFI will be required to provide the Check Serial Number of the consumer's source document on the consumer's monthly bank account statement for all POP entries. RDFIs will need to modify their DDA systems to ensure that this information is provided on the consumer's statement.

ACH Operators

No new ACH Operator edits are required for the PPD interim rule. For the POP rule, however, ACH Operators will need to modify their software and edit requirements to accommodate the new POP Standard Entry Class Code, including edits to return any point-of-purchase entry credit transactions, with the exception of reversals to correct erroneous entries.

Receivers

Receivers must be aware that, by signing a written authorization and providing a check as a source document, they have authorized the initiation of an ACH debit to their accounts for purchases made at the point-of-purchase. Receivers should be aware that their checks will be voided and returned to them at the point-of-purchase by the Originator, and that their checks will not be cleared through the check collection process. Receivers should understand that information relating to the transaction (i.e., merchant name, amount of the transaction, and, for the final POP rule, source document check serial number) will be provided on their monthly bank account statements to assist in reconciling their accounts. Information pertaining to such entries will be located in the electronic payments section of the bank statement.

SOFTWARE CHANGES FOR ACH OPERATORS:

*Interim Rule:* None

*Final Rule:* ACH Operators will be required to modify their software and edit requirements to accommodate the new POP Standard Entry Class Code.

SOFTWARE CHANGES FOR PARTICIPATING DEPOSITORY FINANCIAL INSTITUTIONS:

*Interim Rule:*

ODFIs

ODFIs will need to ensure, however, that their ACH systems are prepared to handle the following specific formatting/processing requirements related to the use of the PPD format for the interim rule: (1) ODFIs must ensure that the word "PURCHASE" is placed within the Company Entry Description Field of the Company/Batch Header Record; (2) ODFIs must be aware of the requirement to place the check serial number from the source document within the Individual Identification Number Field of the PPD Entry Detail Record; and (3) ODFIs must be aware of the $5,000 limit on the amount of any point-of-purchase entry initiated under the PPD interim rule.

RDFIs

None. RDFIs will need to ensure, however, that they are aware of the following specific processing requirements related to the use of the PPD format for the interim rule: (1) point-of-purchase entries originated under the PPD interim rule can be identified by the word "PURCHASE" in the Company/Entry Description Field of the Company/Batch Header Record; (2) the check serial number of the source document can be located within the Individual Identification Number Field of the PPD Entry Detail Record to assist with any customer service inquiries; (3) RDFIs must be aware that these transactions cannot be returned for Return Reason Codes R03 and R17 solely because the entry does not contain an Individual Name, or for Return Reason Code R07 as the authorization was obtained from the consumer for a single debit entry at the point-of-purchase.

***Final Rule:***

**ODFIs**

**ODFIs will need to modify their ACH software to accommodate the transmission and return of point-of-purchase entries using the new POP Standard Entry Class Code.**

**RDFIs**

**RDFIs will need to modify their ACH software to accommodate the receipt and return of point-of-purchase entries using the new POP Standard Entry Class Code. RDFIs will also need to modify their DDA software, as appropriate, to ensure that the Check Serial Number from each POP entry is printed to the consumer's monthly bank account statement.**

**IMPLEMENTATION DATE:** **September 17, 1999 through September 14, 2000 (PPD Interim Rule)**
**September 15, 2000 (POP Final Rule).**

**(See also pages OR 2, 4, 12, 13, 20, 32, 53, 61, 63, 64, 65, 66, 67, 68, 71, 72, 74, 77, 79, 82, 83, 84, 85, 129.)**

# OPERATING GUIDELINES
# OF THE
# NATIONAL AUTOMATED
# CLEARING HOUSE ASSOCIATION

# OPERATING GUIDELINES OF THE NATIONAL AUTOMATED CLEARING HOUSE ASSOCIATION

## TABLE OF CONTENTS

PREFACE OG 1

SECTION I DEVELOPMENT AND OVERVIEW OF THE SYSTEM

A. DEVELOPMENT OF THE SYSTEM OG 2

B. OVERVIEW OF THE SYSTEM OG 3

1. Participants OG 3
2. Payment Applications OG 4
3. Advantages to Participants OG 7

SECTION II PARTICIPANT RELATIONSHIPS AND RESPONSIBILITIES

CHAPTER I ORIGINATORS

A. INTRODUCTION OG 8

B. LEGAL RESPONSIBILITIES - AGREEMENTS AND AUTHORIZATIONS OG 8

1. Relationship with ODFI OG 8
2. Relationship with Receiver OG 18

C. ACKNOWLEDGMENT ENTRIES OG 24

D. AUTOMATED ENROLLMENT OG 24

E. CROSS-BORDER ENTRIES OG 24

F. POINT-OF-PURCHASE ENTRIES OG 24

G. RE-PRESENTED CHECK ENTRIES OG 24

H. PPD ACCOUNTS RECEIVABLE TRUNCATED CHECK DEBIT ENTRIES OG 25

I. PRENOTIFICATION OG 25

J. PROCESSING REQUIREMENTS AND RESPONSIBILITIES OG 25

1. Transaction Codes OG 25

2. Relationship with ODFI OG 25

3. Relationship with Receiver OG 27

CHAPTER II ORIGINATING DEPOSITORY FINANCIAL INSTITUTIONS

A. INTRODUCTION OG 28

B. MEMBERSHIP REQUIREMENTS OG 28

C. LEGAL CONSIDERATIONS OG 28

1. Warranties and Indemnifications OG 28

2. Agreements/Relationship with Originator OG 28

3. Agreements/Relationship with Third-Party Service Provider OG 30

D. ACKNOWLEDGMENT ENTRIES OG 30

E. CROSS-BORDER ENTRIES OG 31

F. POINT-OF-PURCHASE ENTRIES OG 31

G. RE-PRESENTED CHECK ENTRIES OG 31

H. PPD ACCOUNTS RECEIVABLE TRUNCATED CHECK DEBIT ENTRIES OG 31

I. PROCESSING REQUIREMENTS OG 31

1. Transaction Codes OG 32

2. File Requirements OG 32

3. File Security OG 32

4. Processing Outline OG 32

J. RELATIONSHIP WITH ACH OPERATOR OG 33

1. Delivery of ACH Files OG 33

2. File Acknowledgments OG 33

3. Returns/NOCs/Rejected Files OG 34

K. SETTLEMENT OG 34

L. AUDIT REQUIREMENTS OG 35

M. DESTROYED CHECK ENTRIES OG 36

CHAPTER III ACH OPERATORS

A. INTRODUCTION OG 36

B. ADHERENCE TO NACHA OPERATING RULES OG 37

C. AGREEMENTS OG 37

1. RDFIs OG 37

2. ODFIs OG 37

D. CLEARING, DELIVERY, AND SETTLEMENT SERVICES OG 38

1. ACH Operator Settlement Functions OG 38

2. Inter-ACH Operator Exchange OG 38

3. Delivery of ACH Files OG 38

E. ACH OPERATOR PROCESSING FUNCTIONS OG 39

1. Editing of Files OG 39

2. File Acknowledgments OG 39

3. Rejection of Files, Batches, or Entries OG 40

4. Audit Trails OG 40

F. EVALUATION OF CREDIT-WORTHINESS AND RISK CONTROL MEASURES OG 40

G. FEDERAL RESERVE POLICY STATEMENT ON PRIVATELY-OPERATED MULTILATERAL SETTLEMENT SYSTEMS OG 41

H. NATIONAL ACH OPERATOR PERFORMANCE STANDARDS OG 41

CHAPTER IV RECEIVING DEPOSITORY FINANCIAL INSTITUTIONS

A. INTRODUCTION OG 41

B. MEMBERSHIP REQUIREMENTS OG 41

C. RECEIPT AND PROCESSING OF ACH FILES OG 42

1. Transaction Codes OG 42

2. Delivery of ACH Files OG 43

3. Processing of ACH Files OG 43

4. Manual Processing of ACH Files OG 48

D. POSTING AND FUNDS AVAILABILITY OG 48

E. ACCOUNTING AND SETTLEMENT OG 49

F. AUTHORIZATIONS AND AGREEMENTS OG 50

1. Corporate Entries OG 50

2. Consumer Entries OG 50

G. AUDIT REQUIREMENTS OG 51

H. RULES ENFORCEMENT OG 52

SECTION III FUNCTIONAL RESPONSIBILITIES

CHAPTER I PRENOTIFICATIONS

A. INTRODUCTION OG 55

B. RESPONSIBILITIES OF ORIGINATORS OG 55

1. Prenotification OG 55

2. Timing of Origination OG 55

3. Format Requirements OG 55

4. Response to Prenotification Returns and Notifications of Change OG 55

C. RESPONSIBILITIES OF ODFIS OG 55

1. Origination of Prenotifications OG 55

2. Returned Prenotifications/Notifications of Change OG 56

D. RESPONSIBILITIES OF RDFIs OG 56

1. Receiving and Identifying Prenotifications OG 56

2. Procedures for Handling Prenotifications OG 56

3. Timing of Responses to Prenotifications OG 57

CHAPTER II NOTIFICATIONS OF CHANGE

A. INTRODUCTION OG 57

B. RESPONSIBILITIES OF RDFIs OG 57

1. Origination of Notifications of Change OG 57

2. Reasons for Change OG 57

3. Timing of Origination OG 58

4. Format Requirements OG 59

5. Use of a Third Party to Originate Notifications of Change OG 59

6. Returned and Refused Notifications of Change OG 59

C. RESPONSIBILITIES OF ODFIs OG 60

D. RESPONSIBILITIES OF ORIGINATORS OG 61

CHAPTER III RETURNS, DISHONORED RETURNS, CONTESTED DISHONORED RETURNS

A. INTRODUCTION OG 62

B. RESPONSIBILITIES OF ORIGINATORS OG 62

1. Returns OG 62

2. Dishonored Returns OG 64

C. RESPONSIBILITIES OF ODFIs OG 64

1. Returns OG 64

2. Dishonored Returns OG 64

D. RESPONSIBILITIES OF ACH OPERATORS OG 66

1. Returns Initiated by ACH Operator OG 66

2. Processing Returns, Dishonored Returns, and Contested Dishonored Returns Initiated by Other ACH Participants OG 66

E. RESPONSIBILITIES OF RDFIs OG 67

1. Returns OG 67

2. Receiving Dishonored Returns OG 73

3. Originating Contested Dishonored Returns OG 74

CHAPTER IV REVERSALS, RECLAMATIONS, AND ODFI REQUESTS FOR RETURN

A. INTRODUCTION OG 74

B. FILE REVERSALS OG 75

1. Duplicate Files OG 75

| | | | |
|---|---|---|---|
| | 2. | Erroneous Files | OG 75 |
| | 3. | Responsibilities of the RDFI | OG 75 |
| | 4. | General Instructions | OG 75 |
| | C. | RECLAMATIONS FOR BENEFIT PAYMENTS | OG 76 |
| | D. | ODFI REQUESTS FOR RETURN | OG 76 |
| | E. | REVERSING ENTRIES | OG 77 |
| CHAPTER V | | ACKNOWLEDGMENT ENTRIES | |
| | A. | INTRODUCTION | OG 77 |
| | B. | RESPONSIBILITIES OF ORIGINATORS | OG 77 |
| | C. | RESPONSIBILITIES OF ODFIs | OG 78 |
| | D. | RESPONSIBILITIES OF RDFIs | OG 78 |
| CHAPTER VI | | CUSTOMER-INITIATED ENTRIES | |
| | A. | INTRODUCTION | OG 79 |
| | B. | CUSTOMER-INITIATED ENTRIES (CIE) | OG 79 |
| | C. | FORMATTING REQUIREMENTS | OG 80 |
| | 1. | CIE Company/Batch Header Record | OG 80 |
| | 2. | CIE Addenda Record | OG 80 |
| **SECTION IV** | | **SPECIAL TOPICS** | |
| CHAPTER I | | THIRD PARTY PROCESSORS | |
| | A. | INTRODUCTION | OG 80 |
| | B. | ORIGINATION OF ACH ENTRIES | OG 81 |
| | 1. | Agreements | OG 81 |
| | 2. | Warranties/Indemnifications | OG 82 |
| | 3. | Reversals/Erroneous Entries | OG 82 |
| | 4. | The Audit Trail | OG 83 |
| | 5. | Returns/NOCs/Rejected Entries | OG 83 |

C. RECEIVING ACH ENTRIES OG 83

1. Agreements OG 83

2. Warranties and Indemnifications OG 83

3. Processing Functions OG 84

D. RULES COMPLIANCE AUDIT REQUIREMENTS OG 84

E. SUMMARY OG 86

CHAPTER II ADDENDA RECORDS

A. INTRODUCTION OG 86

B. CORPORATE PAYMENTS OG 87

1. CCD-Plus OG 87

2. CTX OG 87

C. RDFI OUTPUT OG 89

D. CONSUMER PAYMENTS OG 89

E. OTHER APPLICATIONS OG 89

F. BASIC ASC X12 RULES OG 90

1. X12 Data Segment Requirement OG 90

2. Data Element Requirement OG 90

3. Data Element Types OG 91

G. SEGMENT DIAGRAM KEY OG 92

CHAPTER III AUDIT CONTROLS AND COMPLIANCE

A. INTRODUCTION OG 93

B. AUDIT CONTROLS OG 93

C. INTERNAL OPERATING CONTROL POINTS OG 93

1. Originating Depository Financial Institution OG 94

2. Receiving Depository Financial Institution OG 96

D. COMPLIANCE CHECK LIST OG 97

E. ACH RULES ENFORCEMENT OG 98

CHAPTER IV RULES ENFORCEMENT

A. INTRODUCTION OG 98

B. REPORTING OF POSSIBLE RULES VIOLATIONS OG 98

1. Required Forms and Documentation OG 98

2. Complaints Involving Multiple Participating DFIs OG 99

C. INVESTIGATION OF ALLEGED RULES VIOLATIONS OG 99

1. Receipt of Report of Possible Rules Violation by National Association OG 99

2. Participating DFI Action on Receipt of Notice of Possible ACH Rules Violation OG 99

3. National Association Action on Participating DFI Response OG 100

4. National Association Action on Non-Response to Notice of Possible Rules Violation or Recurrence of Rules Violation OG 100

5. Participating DFI Action on Notice of Possible Fine OG 100

6. National Association Action on Participating DFI Response OG 100

7. National Association Action on Non-Response to Notice of Possible Fine or Recurrence of Rules Violation OG 100

D. RESOLUTION OF COMPLAINT OG 101

E. RULES ENFORCEMENT PANEL OG 101

1. Responsibilities of Rules Enforcement Panel OG 101

2. Selection of Rules Enforcement Panel OG 101

3. Confidentiality of Information OG 102

CHAPTER V ARBITRATION AND COMPENSATION

A. INTRODUCTION OG 105

B. ARBITRATION PROCEDURES OG 105

1. Filing a Request for Arbitration OG 105

2. Complaints Involving Multiple Participating DFIs OG 105

3. Classification of Disputes OG 105

| | | | |
|---|---|---|---|
| | 4. | Selection of Arbitrators | OG 106 |
| | 5. | Presentation of the Case and Decision | OG 106 |
| | 6. | Payment and Appeal of Decision | OG 107 |
| | 7. | NACHA Arbitration Board | OG 107 |
| C. | COMPENSATION | | OG 107 |
| | 1. | Scope of Compensation Rules | OG 107 |
| | 2. | Minimum Claim Amount for Compensation | OG 108 |
| | 3. | Deposit Insurance Assessments | OG 108 |
| CHAPTER VI | MAPPING | | |
| A. | INTRODUCTION | | OG 108 |
| B. | SAMPLE APPLICATIONS AND ASSUMPTIONS | | OG 109 |
| C. | ACH FILE FROM ODFI TO ACH OPERATOR | | OG 110 |
| D. | RETURN AND NOTIFICATION OF CHANGE ENTRIES | | OG 116 |
| E. | DISHONORED RETURN ENTRIES | | OG 122 |
| F. | REFUSED NOTIFICATIONS OF CHANGE | | OG 125 |
| G. | CONTESTED DISHONORED RETURN ENTRIES | | OG 126 |
| CHAPTER VII | AUTOMATED ENROLLMENT ENTRIES | | |
| A. | INTRODUCTION | | OG 128 |
| B. | RESPONSIBILITIES OF DFIs | | OG 128 |
| | 1. | Origination of Automated Enrollment Entries | OG 128 |
| | 2. | Timing of Origination | OG 129 |
| | 3. | Format Requirements | OG 129 |
| | 4. | Responses to Automated Enrollment Entries | OG 131 |
| | 5. | Use of a Third Party to Originate Automated Enrollment Entries | OG 131 |
| | 6. | Returned Automated Enrollment Entries | OG 131 |
| C. | RESPONSIBILITIES OF FEDERAL GOVERNMENT AGENCIES RECEIVING AUTOMATED ENROLLMENT ENTRIES | | OG 132 |

CHAPTER VIII DESTROYED CHECK ENTRIES

A. INTRODUCTION OG 133

B. LEGAL CONSIDERATIONS OG 133

C. ORIGINATION OF DESTROYED CHECK ENTRIES (XCK) OG 134

D. RECEIPT OF DESTROYED CHECK ENTRIES (XCK) OG 134

CHAPTER IX CROSS-BORDER PAYMENTS

A. INTRODUCTION OG 135

B. CROSS-BORDER PAYMENT PROCESS OG 135

C. OPERATING RULES AND AGREEMENTS OG 137

D. CROSS-BORDER PAYMENT TECHNICAL STANDARDS OG 139

1. ACH Network Entries Originated by U.S. ODFIs OG 140

2. ACH Network Entries Received by U.S. RDFIs OG 142

3. ACH Network Return Entries Originated by U.S. RDFIs OG 143

4. ACH Network Return Entries Originated by U.S. OGOs OG 143

CHAPTER X RE-PRESENTED CHECK ENTRIES

A. INTRODUCTION OG 144

B. LEGAL FRAMEWORK OG 144

C. ELIGIBLE ITEMS OG 145

D. OBLIGATIONS OF ORIGINATORS OG 145

1. Agreements With ODFIs OG 145

2. Notice Requirement OG 146

3. Restrictive Endorsements OG 146

4. Collection Fees OG 146

5. Number of Presentments OG 146

6. Retention of Original Item/Copy of Item OG 146

7. Return of Re-presented Check Entries OG 147

E. RESPONSIBILITIES OF ODFIs OG 147

1. Warranties and Liabilities OG 147

2. Formatting Requirements OG 147

3. Return of Re-presented Check Entries OG 147

4. Retention of Item/Copy of Item OG 148

F. RECEIPT OF RE-PRESENTED CHECK ENTRIES OG 148

1. Return of a Re-presented Check Entry OG 148

2. Stop Payment on a Re-presented Check Entry OG 148

3. Copy of Check/Original Check OG 149

4. Statement Requirements OG 149

CHAPTER XI POINT-OF-PURCHASE ENTRIES

A. INTRODUCTION OG 149

B. LEGAL FRAMEWORK OG 150

C. OBLIGATIONS OF ORIGINATORS OG 150

1. Agreements with ODFIs OG 150

2. Authorization Requirement OG 150

3. Source Documents OG 150

4. Receipt Requirements OG 150

5. Formatting Requirements OG 151

6. Return of Point-of-Purchase Entries OG 151

D. RESPONSIBILITIES OF ODFIs OG 152

1. Warranties and Liabilities OG 152

2. Formatting Requirements OG 152

3. Return of Point-of-Purchase Entries OG 152

4. Stop Payments on Point-of-Purchase Entries OG 153

E. RESPONSIBILITIES OF RDFIs OG 153

1. Return of Point-of-Purchase Entries OG 153

2. Stop Payments on Point-of-Purchase Entries OG 154

3. Statement Requirements OG 154

CHAPTER XII PPD ACCOUNTS RECEIVABLE TRUNCATED CHECK DEBIT ENTRIES

A. INTRODUCTION OG 154

B. LEGAL FRAMEWORK OG 154

C. ELIGIBLE ITEMS OG 154

D. OBLIGATIONS OF ORIGINATORS OG 155

1. Agreements with ODFIs OG 155

2. Authorization/Notification Requirements OG 156

3. Collection Fees OG 156

4. Number of Presentments OG 156

5. Retention of Item/Copy of Item OG 156

6. Return of PPD Accounts Receivable Truncated Check Debit Entries OG 156

E. RESPONSIBILITIES OF ODFIs OG 157

1. Warranties and Liabilities OG 157

2. Formatting Requirements OG 157

3. Return of PPD Accounts Receivable Truncated Check Debit Entries OG 157

4. Retention of Item/Copy of Item OG 158

F. RESPONSIBILITIES OF RDFIs OG 158

1. Return of a PPD Accounts Receivable Truncated Check Debit Entry OG 158

2. Stop Payment on a PPD Accounts Receivable Truncated Check Debit Entry OG 159

3. Copy of Check/Original Check OG 159

4. Statement Requirements OG 159

**NACHA OPERATING GUIDELINES INDEX** OG 161

**3. COPY OF CHECK/ORIGINAL CHECK**

An RDFI that receives a re-presented check entry may send the ODFI that transmitted the entry a written request for either the original check or a copy of the check to which the re-presented check entry relates. An RDFI requesting the original check to which the re-presented check entry relates must send a written request for the original item within ninety days of the settlement date of the re-presented check entry. An RDFI requesting a copy of the check to which the re-presented check entry relates must send a written request to the ODFI within seven years of the settlement date of the re-presented check entry. Upon receipt of the RDFI's written request, the ODFI must provide the original or copy of the check to the RDFI within ten banking days.

An RDFI requesting the original check to which the re-presented check entry relates warrants to the ODFI that it will not seek an adjustment for the re-presented check entry when (1) a stop payment order has been placed on the item to which the re-presented check entry relates, (2) when notice stating the terms of the re-presented check entry policy was not provided by the Originator, or (3) when the original check was ineligible.

**4. STATEMENT REQUIREMENTS**

*PPD Interim Rule*

For re-presented check entry transactions originated between September 18, 1998 and September 14, 2000 using the PPD Standard Entry Class Code, RDFIs are required to provide the descriptive information relating to the entry on the consumer's monthly account statement as currently required for PPD entries, including the payee's name, the description "REDEPCHECK," etc. RDFIs are not required to provide the Check Serial Number of the original check to which the re-presented check entry relates on the consumer's monthly account statement.

RDFIs should be aware that, with the PPD Interim Rule, they are likely to receive inquiries from consumers trying to identify these transactions on their monthly statements. RDFIs may locate the Check Serial Number for the item to which the PPD debit entry relates within the Individual Identification Number Field of the PPD Entry Detail Record and may choose to provide the Check Serial Number on their customer statements to assist their customers in identifying checks collected via the ACH Network.

*RCK Standard Entry Class Code*

Effective September 15, 2000, the RDFI will be required to provide the Check Serial Number on the consumer's monthly statement for all RCK entries. RDFIs will need to modify their DDA applications to ensure that this information will be provided on the consumer's statement.

# SECTION IV
# SPECIAL TOPICS

# CHAPTER XI
# POINT-OF-PURCHASE ENTRIES

## A. INTRODUCTION

The *NACHA Operating Rules* support an application that enables Originators (i.e., merchants, billers, etc.) to initiate a one-time ACH debit entry to a Receiver's account for in-person purchases made at the point-of-purchase. This application, which is based on a written authorization and account information drawn from a source document (check) obtained from the consumer at the point-of-purchase, provides Originators with an alternative to accepting consumers' checks as the method of payment. This chapter addresses issues relating to the origination and receipt of point-of-purchase entries and applies to both the interim rule (effective September 17, 1999 through September 14, 2000), which enables the PPD Standard Entry Class Code to be used for these transactions, and the final rule amendment (effective September 15, 2000), which implements a new Standard Entry Class Code, POP, for the transmission of point-of-purchase entries. The implementation of the POP Standard Entry Class Code will supersede the PPD interim rule as of September 15, 2000.

A point-of-purchase entry is an ACH debit application used by Originators as an alternative method of payment for the in-person purchase of goods or services. These one-time debit entries are initiated by the Originator to the consumer's account based on a written authorization and account information drawn from a source document (a check) obtained from the consumer at the point-of-purchase. To initiate a point-of-purchase entry, the consumer must present a check or sharedraft that has not been previously voided or negotiated to the Originator. The Originator uses a check reading device to capture the MICR information from the check (i.e., routing number, account number, and serial number), which will be used by the Originator to generate a debit entry to the consumer's account. The Originator may not key enter the MICR information from the check, nor may the Originator key enter the MICR information after the check reader has captured this data. The Originator then key enters the amount of the transaction, after which an authorization will be provided to the consumer to sign, authorizing the debit to his account. The Originator must provide to the consumer (1) the consumer's source document, which the Originator has voided, (2) a copy of the consumer's authorization, and (3) a receipt containing specific information relating to the purchase.

## B. LEGAL FRAMEWORK

Point-of-purchase entries (both the PPD interim rule and the final POP Standard Entry Class Code) are subject to the requirements of the *NACHA Operating Rules*, the Electronic Fund Transfer Act, and the Federal Reserve's Regulation E. Point-of-purchase entries are considered to be ACH entries from start to finish, with the consumer's check used by the Originator solely as a source document for the consumer's routing and account number information. Such transactions are not considered to be truncated checks and do not fall under the requirements of check law or the Uniform Commercial Code for the following reasons:

(1) the check is not accepted by the merchant as a negotiable instrument; and
(2) the check is not negotiated by the merchant or accepted into the check collection system.

## C. OBLIGATIONS OF ORIGINATORS

### 1. AGREEMENTS WITH ODFIs

Originators choosing to utilize the ACH Network for point-of-purchase transactions should consider modifications to their agreements with their ODFIs to address the origination of these entries. These modifications should address the extent to which the Originator and ODFI will share liability for point-of-purchase transactions and should define any specific processing obligations relating to such transactions.

### 2. AUTHORIZATION REQUIREMENT

Originators of point-of-purchase entries must obtain the consumer's written authorization prior to initiating a debit entry under this application. Although the *NACHA Operating Rules* do not prescribe specific authorization language for the point-of-purchase application, the authorization must conform to the requirements of the *NACHA Operating Rules*, which require that the authorization (1) be in writing, signed or similarly authenticated by the Receiver, (2) be readily identifiable as an ACH debit authorization, and (3) clearly and conspicuously state its terms. It is strongly recommended that authorization language for point-of-purchase entries specifically state that the check will not be processed. This will assist consumers in understanding the nature of the transaction. Originators must provide a copy of the authorization to the consumer as required by the *NACHA Operating Rules*.

Unlike authorization requirements for most consumer debit entries, Originators of point-of-purchase entries need not include on the authorization the method by which the consumer must revoke the authorization, as these entries are prohibited from being returned using Return Reason Code R07 (Authorization Revoked). Consumers retain their rights to return a transaction for stop payment (R08) or unauthorized (R10).

### 3. SOURCE DOCUMENTS

***Acceptable Source Documents***

Originators may only accept a check or sharedraft as a source document for a point-of-purchase debit entry if:

- the check or sharedraft has not been previously negotiated;
- the check or sharedraft has not been previously voided;
- the check or sharedraft contains a pre-printed serial number; and
- the check or sharedraft is drawn on a consumer account.

***Unacceptable Source Documents***

Checks that may not be used as source documents for point-of-purchase entries include:

- corporate checks;
- third-party checks;
- credit card checks;
- obligations of a financial institution (e.g., cashier's checks, money orders, traveler's checks, official checks, etc.);
- checks drawn on the Treasury of the United States, a Federal Reserve Bank, or a Federal Home Loan Bank;
- checks drawn on a state or local government; or
- checks payable in a medium other than United States currency.

### 4. RECEIPT REQUIREMENTS

Originators must, at the point-of-purchase, provide Receivers with a receipt that contains the following minimum amount of information:

- Originator name (merchant);
- company (merchant)/third-party service provider telephone number;
- date of transaction;
- transaction amount;
- source document check serial number; and
- merchant number (or other unique number that identifies the location of the transaction).

It is also recommended, but not required, that the Originator provide the following information on the receipt provided to the Receiver:

- merchant address;
- merchant identification number;
- Receiver's financial institution routing number;
- Receiver's truncated account number;

- Receiver's truncated identification number; and
- transaction reference number.

Originators must be aware that the Receiver's complete account number and complete identification number are not permitted to be placed on the receipt. At the Originator's discretion, the receipt and the authorization required for point-of-purchase entries may be provided to the consumer on the same document or on different documents.

**5. FORMATTING REQUIREMENTS**

***PPD Interim Rule***

- Individual Name Field

  In the PPD interim rule, it is required that information be included in the Individual Name Field. Originators must include either (1) the Receiver's name, or (2) a reference number, identification number, or code that the merchant uses to identify a particular transaction or customer. Originators should be aware that, for the PPD interim rule, a point-of-purchase entry may not be returned by the RDFI solely because the individual name was not included in the transaction. A point-of-purchase entry under the PPD interim rule may, however, be returned if the Individual Name field is left blank.

- Check Serial Number

  The rules governing point-of-purchase entries require that the Originator provide the check serial number from the Receiver's source document on the entry. For the PPD interim rule, the Originator must ensure that the check serial number from the Receiver's source document is placed within the Individual Identification Number Field of the PPD entry. Originators should be aware that, although the PPD interim rule does not require RDFIs to print the check serial number on the consumer's bank statement, it is provided to the RDFI to assist in addressing any customer service inquiries. Some RDFIs may, at their discretion, choose to print the check serial number on the consumer's statement as a customer service.

- Limitation on Dollar Amount

  Originators must be aware that, for the PPD interim rule, point-of-purchase entries may not be initiated for a dollar amount over $5,000. This restriction will be lifted for the final POP rule.

- Company Entry Description

  Originators must ensure that all point-of-purchase entries initiated using the interim PPD rule contain the word "PURCHASE" within the Company Entry Description Field of the Company/Batch Header Record. This will enable the RDFI to distinguish point-of-purchase transactions from other PPD entries and assist them in responding to any customer service inquiries.

***POP Final Rule***

- Individual Name

  Originators should be aware that, with the new POP SEC Code, the inclusion of information in the Individual Name Field is completely optional. If the Originator chooses to utilize this field, it must include either (1) the Receiver's name, or (2) a reference number, identification number, or code that the merchant uses to identify a particular transaction or customer.

- Check Serial Number

  The rules governing point-of-purchase entries require that the Originator provide the check serial number from the Receiver's source document on the entry. For the new POP SEC Code, the Originator must ensure that the check serial number from the Receiver's source document is placed within the Check Serial Number Field of the POP entry. Originators should be aware that the final POP rule requires RDFIs to print the check serial number on the consumer's bank statement.

- Limitation on Dollar Amount

  The new POP SEC Code rule contains no limitation on the dollar amount of a point-of-purchase transaction.

**6. RETURN OF POINT-OF-PURCHASE ENTRIES**

Originators should be aware that point-of-purchase entries, like other ACH transactions, may be returned for a variety of reasons. Originators should be aware, however, that RDFIs are prohibited from returning point-of-purchase entries based on a consumer's claim that his authorization had been revoked (R07) since these are one-time payments and, by definition, the consumer's authorization must have been obtained by the Originator at the time of purchase and initiation of the entry. As appropriate, however, the consumer may (1) request his RDFI to stop the payment of a point-of-purchase entry (Return Reason Code R08), (2) request his RDFI to return an unauthorized point-of-purchase entry (Return Reason Code R10), or (3) go directly to the Originator (merchant) to request a refund of the transaction.

Originators should also be aware that, because the point-of-purchase entry application does not require the Originator to capture the consumer's name for inclusion on the point-of-purchase entry, the RDFI must rely on the



LML-EP-058803

ODFI's warranty regarding the validity of the consumer's account number for posting purposes. The RDFI, therefore, may not return a point-of-purchase entry using Return Reason Codes R03 or R17 solely because the consumer's name is not included in the Individual Name Field of the entry. RDFIs may, however, under the PPD interim rule, return a point-of-purchase entry if this field is left blank.

Originators must be prepared to handle returned point-of-purchase entries and must establish procedures that enable them to identify and contact the Receiver relating to any unpaid debit entry. Because the Originator does not retain the consumer's voided check as a source document, and because the consumer's name and address are not included as part of the MICR-capture process, Originators will need to develop alternative methods for retaining information necessary to identify the consumer for whom a point-of-purchase debit has been returned. While the *NACHA Operating Rules* do not limit the number of times a point-of-purchase entry may be reinitiated if the entry has been returned for insufficient or uncollected funds, Originators are encouraged to restrict the number of times such entries are reinitiated to lessen the likelihood of customer service inquiries or confusion.

**D. RESPONSIBILITIES OF ODFIs**

**1. WARRANTIES AND LIABILITIES**

In addition to all other general ODFI warranties contained within the *NACHA Operating Rules*, each ODFI that chooses to transmit point-of-purchase entries on behalf of its Originator also warrants to each RDFI, ACH Operator, and ACH Association that:

- the source document provided to the Originator for use in obtaining the Receiver's routing number, account number, and check serial number for the initiation of the point-of-purchase entry
    - a. is returned voided to the Receiver after use by the Originator, and
    - b. has not been provided by the Receiver for use in any prior point-of-purchase entry.

ODFIs should consider modifications to their agreements with their Originators to address the origination of point-of-purchase entries on behalf of their Originators. These modifications should address the extent to which the Originator and ODFI would share liability for point-of-purchase transactions and should define any specific processing obligations relating to such transactions.

**2. FORMATTING REQUIREMENTS**

ODFIs must ensure that, prior to transmission to the ACH Operator, point-of-purchase entries comply with all technical specifications and formatting requirements in accordance with the *NACHA Operating Rules*. ODFIs must ensure that:

- **for the PPD interim rule:**
    - a. either the Receiver's name or a reference number, identification number, or code that the merchant uses to identify a particular transaction or customer is included in the Individual Name Field of the PPD Entry Detail Record.
    - b. the description "PURCHASE" appears within the Company Entry Description Field of the Company/Batch Header Record.
    - c. the check serial number from the Receiver's check is placed within the Individual Identification Number Field of the PPD entry.
    - d. point-of-purchase entries are not initiated for a dollar amount over $5,000.
- **for the POP final rule:**
    - a. the check serial number from the Receiver's source document is placed within the Check Serial Number Field of the POP entry.
    - b. ODFIs should be aware that, for the POP SEC Code,
        - use of the Individual Name Field by the Originator is completely optional. When used, it must contain either (1) the Receiver's name, or (2) a reference number, identification number, or code that the merchant uses to identify a particular transaction or customer.
        - there is no limitation on the dollar amount of a point-of-purchase transaction.

**3. RETURN OF POINT-OF-PURCHASE ENTRIES**

ODFIs should be aware that point-of-purchase entries, like other ACH transactions, may be returned for a variety of reasons in accordance with the return time frames prescribed by the *NACHA Operating Rules*.

The consumer retains the option, however, to (1) request his RDFI to stop the payment of a point-of-purchase entry (Return Reason Code R08), (2) request his RDFI to return an unauthorized point-of-purchase entry (Return Reason Code R10), or (3) go directly to the Originator (merchant) to request a refund for the transaction. ODFIs should be aware, however, that RDFIs are prohibited from returning point-of-purchase entries based on a consumer's claim that his authorization had been revoked (R07) since these are one-time payments and, by definition, the consumer's

authorization must have been obtained by the Originator at the time of purchase and initiation of the entry.

ODFIs should also be aware that, because the point-of-purchase entry application does not require the Originator to capture the consumer's name for inclusion on the point-of-purchase entry, the RDFI must rely on the ODFI's warranty regarding the validity of the consumer's account number for posting purposes. The RDFI, therefore, may not return a point-of-purchase entry using Return Reason Codes R03 or R17 solely because the consumer's name is not included in the Individual Name Field of the entry.

ODFIs should ensure that their Originators are prepared to handle returned point-of-purchase entries and have established procedures that enable them to identify and contact the Receiver relating to any unpaid debit entry. Because the Originator does not retain the consumer's voided check as a source document, and because the consumer's name and address are not included as part of the MICR-capture process, ODFIs should ensure that their Originators understand the need to develop alternative methods for retaining information necessary to identify the consumer for whom a point-of-purchase debit has been returned. While the *NACHA Operating Rules* do not limit the number of times a point-of-purchase entry may be reinitiated if the entry has been returned for insufficient or uncollected funds, ODFIs should encourage their Originators to restrict the number of times such entries are reinitiated to lessen the likelihood of customer service inquiries or confusion.

**4. STOP PAYMENTS ON POINT-OF-PURCHASE ENTRIES**

ODFIs should be aware that, in general, the *NACHA Operating Rules* regarding ACH stop payments require consumers to place a stop payment order on a debit at least three banking days prior to the scheduled date of the entry. Because the merchant will generally process point-of-purchase transactions quickly, consumers are unlikely to be able to meet the three-day advance notice requirement for placing a stop payment order on such entries. To ensure that a consumer has the ability to place a stop payment order on a point-of-purchase entry, the *NACHA Operating Rules* require a consumer to provide a stop payment order to his financial institution in such a time and manner that allows the RDFI a reasonable opportunity to act on the stop payment order prior to acting on the debit entry.

**E. <u>RESPONSIBILITIES OF RDFIs</u>**

**1. RETURN OF POINT-OF-PURCHASE ENTRIES**

Point-of-purchase entries may be returned for a variety of reasons in accordance with the requirements of the *NACHA Operating Rules*. With the exception of entries for which the consumer claims there was no authorization, the RDFI must transmit point-of-purchase entry returns by its ACH Operator's deposit deadline for the return entry to be made available to the ODFI no later than the opening of business on the second banking day following the settlement date of the original entry. For an entry that the consumer claims is unauthorized (R10), the RDFI must transmit the return by its ACH Operator's deposit deadline for the return to be made available to the ODFI no later than the opening of business on the banking day following the sixtieth calendar day following the settlement date of the original entry. For the return of unauthorized entries, the RDFI must obtain a signed affidavit from the consumer on which the consumer claims that the entry was not authorized.

RDFIs must be aware that, under certain circumstances, specific Return Reason Codes should not be used with point-of-purchase entries:

- **Return Reason Code R03 (*No Account/Unable to Locate Account*) and Return Reason Code R17 (*File Record Edit Criteria*)**

  RDFIs must be aware that, for transactions initiated at the point-of-purchase, it is difficult for the Originator to capture the Receiver's name in an automated fashion. For this reason, the Originator is not required to include the individual's name in the point-of-purchase entry, and the RDFI must rely on the ODFI's warranty regarding the validity of the consumer's account number for posting purposes.

  The RDFI is prohibited from returning point-of-purchase entries solely because they lack an Individual Name. In general, typical Return Reason Codes used to return entries for which there is no Individual Name (e.g., R03, R17) may not be used by the RDFI for point-of-purchase entries. These Return Reason Codes may, however, be used with point-of-purchase entries for other valid reasons.

  RDFIs should be aware, however, that for the PPD interim rule, where it is required that information be included in the Individual Name field, Originators must include either (1) the Receiver's name, or (2) a reference number, identification number, or code that the merchant uses to identify a particular transaction or customer. Although a point-of-purchase entry may <u>not</u> be returned by the RDFI solely because the individual name was not included in the transaction, a point-of-purchase entry under the PPD interim rule may be returned if the Individual Name field is left blank.

- **Return Reason Code R07 (*Authorization Revoked by Customer*)**

  If appropriate, the consumer may (1) request his RDFI to stop the payment of a point-of-purchase entry (Return Reason Code R08); (2) request his RDFI to return an unauthorized point-of-purchase

entry using Return Reason Code R10 (Reminder: the RDFI must obtain Receiver's signed affidavit when using this Return Reason Code); or (3) go directly to the Originator (merchant) to request a refund for the transaction.

RDFIs must be aware that they are prohibited from returning point-of-purchase entries using Return Reason Code R07 (Authorization Revoked by Customer) based on a consumer's claim that his authorization had been revoked since these are one-time payments and, by definition, the consumer's authorization must have been obtained by the Originator at the time of purchase and initiation of entry.

**2. STOP PAYMENTS ON POINT-OF-PURCHASE ENTRIES**

In general, the *NACHA Operating Rules* regarding ACH stop payments require consumers to place a stop payment order on a debit at least three banking days prior to the scheduled date of the entry. Because the merchant will generally process point-of-purchase transactions quickly, consumers are unlikely to be able to meet the three-day advance notice requirement for placing a stop payment order on such entries. To ensure that a consumer has the ability to place a stop payment order on a point-of-purchase entry, the *NACHA Operating Rules* require a consumer to provide a stop payment order to his financial institution in such a time and manner that allows the RDFI a reasonable opportunity to act on the stop payment order prior to acting on the debit entry.

**3. STATEMENT REQUIREMENTS**

***PPD Interim Rule***

For point-of-purchase entry transactions originated from September 17, 1999 through September 14, 2000 using the PPD Standard Entry Class Code, RDFIs are required to provide the descriptive information relating to the entry on the consumer's monthly bank statement as is currently required for PPD entries, including the Originator's (merchant's) name, the description "PURCHASE," etc. Although the check serial number from the consumer's source document is included on the entry to assist the RDFI with customer service inquiries, the RDFI is not required to provide the check serial number on the statement.

***POP Final Rule***

Effective September 15, 2000, the RDFI will be required to provide the Check Serial Number of the consumer's source document on the consumer's monthly bank account statement for all POP entries. RDFIs will need to modify their DDA systems to ensure that this information is provided on the consumer's statement.

# SECTION IV
# SPECIAL TOPICS

# CHAPTER XII
# PPD ACCOUNTS RECEIVABLE TRUNCATED CHECK DEBIT ENTRIES

## A. INTRODUCTION

Effective December 17, 1999 through December 14, 2000, a short-term rule is in place that enables Originators to use the PPD format to truncate consumer checks received through the U.S. mail for the payment of goods or services and to collect those checks via the ACH Network. This short-term rule amendment provides a legal framework within the *NACHA Operating Rules* for the protection of ACH participants while testing the effectiveness and acceptance of this consumer check truncation application. In order to originate PPD Accounts Receivable Truncated Check Debit Entries, the ODFI must sign an agreement with the National Association. This chapter addresses issues relating to the origination and receipt of PPD Accounts Receivable Truncated Check Debit Entries.

## B. LEGAL FRAMEWORK

PPD Accounts Receivable Truncated Check Debit Entries are subject to the requirements of the *NACHA Operating Rules*, the Uniform Commercial Code (UCC), and Federal Reserve Regulation CC. These entries are not, however, subject to the Electronic Funds Transfer Act or Regulation E. The legal framework for this application is premised on the fact that the origin of each PPD Accounts Receivable Truncated Check Debit Entry is a paper check that has been written to effect payment for goods or services. Transfers of funds that were "originated by a check, draft, or similar paper instrument" are specifically excluded from coverage under the EFTA (15 U.S.C. 1693(a)(6)) and Regulation E (12 C.F.R. Part 205.3(c)(1)). Accordingly, if a PPD Accounts Receivable Truncated Check Debit Entry is treated as a check transaction for purposes of the EFTA and Regulation E, it follows that the UCC and Regulation CC should continue to be the bodies of law that govern the rights and responsibilities of the parties involved with that payment, even though it has been converted to electronic form.

## C. ELIGIBLE ITEMS

A PPD Accounts Receivable Truncated Check Debit Entry is deemed to be a presentment notice for purposes of Revised Article 4 of the Uniform Commercial Code (1990 Official Text). To that end, the receipt of a PPD