# EXHIBIT   M

# EXHIBIT   REDACTED

# IN   ITS   ENTIRETY

# EXHIBIT   N

# EXHIBIT   REDACTED

# IN   ITS   ENTIRETY

# EXHIBIT   O

# EXHIBIT  REDACTED

# IN  ITS  ENTIRETY

# EXHIBIT   P

# ACH Volume Grows 20.7 Percent in 2nd Quarter 2004

The Automated Clearing House Network grew by almost 21 percent in the 2nd Quarter of 2004 compared to a year ago, according to NACHA statistics. More than 2.23 billion transactions were conducted during the quarter, worth more than $5.46 trillion. These figures represent growth rates of 20.7% and 5.4%, respectively, over the same quarter of 2003. There were 1.13 billion debits and 1.096 billion credits in the 2nd Quarter, for a total of 2.231 billion. The statistics include commercial inter-bank and government transactions, but not "On-Us" transactions.

| 2nd Quarter 2004 ACH Network Transactions (does not include on-us volumes) | | | | | |
|---|---|---|---|---|---|
| | 2nd Q 2004 | 1st Q 2004 | % change | 2nd Q 2003 | % change |
| ARC | 208,819,904 | 142,357,596 | 46.69% | 23,432,889 | 791.14% |
| CCD Debits | 103,889,488 | 98,910,606 | 5.03% | 93,485,706 | 11.13% |
| CCD Credits | 230,458,089 | 215,977,867 | 6.70% | 210,208,963 | 9.63% |
| CCD + | 32,322,896 | 30,607,225 | 5.61% | 27,616,984 | 17.04% |
| CIE | 21,447,813 | 20,093,159 | 6.74% | 19,010,866 | 12.82% |
| CTX | 7,223,244 | 6,781,466 | 6.51% | 5,991,474 | 20.56% |
| CTX Addenda | 112,559,061 | 103,907,410 | 8.33% | 91,875,681 | 22.51% |
| POP | 41,738,747 | 39,426,614 | 5.86% | 36,206,195 | 15.28% |
| PPD Debits | 538,922,933 | 527,616,908 | 2.14% | 494,411,995 | 9.00% |
| PPD Credits | 832,963,311 | 853,278,853 | -2.38% | 786,413,379 | 5.92% |
| RCK | 5,780,292 | 5,858,296 | -1.33% | 5,419,962 | 6.65% |
| TEL | 45,698,467 | 43,968,298 | 3.94% | 26,454,489 | 72.74% |
| WEB | 170,482,346 | 163,770,786 | 4.10% | 122,757,465 | 38.88% |
| Total Network | 2,230,789,362 | 2,140,838,360 | 4.20% | 1,847,946,805 | 20.72% |

Source: NACHA - The Electronic Payments Association
© 2004 NACHA - The Electronic Payments Association







**ACH Transaction Volume - 2nd Quarter 2004**



236,321,524
(10.6%)



**Commercial ACH Volume - 2nd Quarter 2004**



1,121,199,489
(56.2%)

873,268,349
(43.8%)

■ Debits
■ Credits

# ACH Volume Grows 21.3 Percent in 4th Quarter 2004

The Automated Clearing House Network grew by over 21 percent in the 4th Quarter of 2004 compared to a year ago, according to NACHA statistics. More than 2.44 billion transactions were conducted during the quarter, worth more than $5.65 trillion. These figures represent growth rates of 21.3% and 8.5%, respectively, over the same quarter of 2003. There were 1.32 billion debits and 1.012 billion credits in the 4th Quarter, for a total of 2.442 billion. The statistics include commercial inter-bank and government transactions, but not "On-Us" transactions.

| 4th Quarter 2004 ACH Network Transactions (does not include on-us volumes) | | | | | |
|---|---|---|---|---|---|
|  | 4th Q 2004 | 3rd Q 2004 | % change | 4th Q 2003 | % change |
| ARC | 324,275,474 | 266,232,549 | 21.80% | 73,891,651 | 338.85% |
| CCD Debits | 109,231,766 | 106,497,062 | 2.57% | 98,376,069 | 11.03% |
| CCD Credits | 241,264,825 | 235,613,046 | 2.40% | 216,955,575 | 11.20% |
| CCD + | 35,942,609 | 33,203,844 | 8.25% | 29,254,741 | 22.86% |
| CIE | 23,037,116 | 22,340,765 | 3.12% | 19,238,353 | 19.75% |
| CTX | 7,840,902 | 7,557,926 | 3.74% | 6,496,779 | 20.69% |
| CTX Addenda | 126,561,913 | 117,648,946 | 7.58% | 100,674,278 | 25.71% |
| POP | 41,301,083 | 39,831,083 | 3.69% | 41,517,512 | -0.52% |
| PPD Debits | 563,556,673 | 556,680,624 | 1.24% | 515,190,527 | 9.39% |
| PPD Credits | 848,362,262 | 822,257,537 | 3.17% | 822,578,407 | 3.13% |
| RCK | 5,961,742 | 6,261,765 | -4.79% | 6,006,194 | -0.74% |
| TEL | 51,358,340 | 46,672,559 | 10.04% | 40,847,333 | 25.73% |
| WEB | 202,391,820 | 178,327,149 | 13.49% | 148,430,607 | 36.35% |
| Total Network | 2,442,293,286 | 2,311,381,453 | 5.66% | 2,012,809,947 | 21.34% |

Source: NACHA - The Electronic Payments Association
© 2004 NACHA - The Electronic Payments Association





ACH Dollar Volume







ACH Transaction Volume – 4th Quarter 2004

230,960,994
(9.5%)

■ Commercial
■ Government



Commercial ACH Volume – 4th Quarter 2004

1,304,821,680
(59.0%)

906,510,612
(41.0%)

■ Debits
■ Credits

# EXHIBIT Q

# EXHIBIT   REDACTED

# IN   ITS   ENTIRETY

# EXHIBIT   R



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/975,717 | 11/13/92 | HILLS | |

JON L. ROBERTS
ARTER & HADDEN
1801 K STREET, N.W.
SUITE 400K
WASHINGTON, DC 20006

2SM1/0923

| EXAMINER |
|---|
| PITTS, H |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2505 | |

DATE MAILED: 09/23/93

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined    ☐ Responsive to communication filed on _____    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire ____ month(s), ____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I**    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:
1. ☑ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice of Art Cited by Applicant, PTO-1449.
3. ☐ Information on How to Effect Drawing Changes, PTO-1474.
   2. ☑ Notice re Patent Drawing, PTO-948.
   4. ☐ Notice of Informal Patent Application, Form PTO-152.
   6. ☐ _____

**Part II**    SUMMARY OF ACTION

1. ☑ Claims    1-9    are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims    1-9    are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____ filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

PTOL-326 (Rev. 9-83)                    EXAMINER'S ACTION

CONFIDENTIAL

LML-EP 000139

Serial No. 975,717

Art Unit   250%                          -2-

The following is a quotation of the appropriate paragraphs
of 35 U.S.C. § 102 that form the basis for the rejections under
this section made in this Office action:

A person shall be entitled to a patent unless —
  (b) the invention was patented or described in a printed
publication in this or a foreign country or in public use or
on sale in this country, more than one year prior to the
date of application for patent in the United States.

Claims 1-9 are rejected under 35 U.S.C. § 102(b) as being
anticipated by Case or Deming.

Note col. 1, lines 53 et. seq. of Case and col. 2 lines 17
et. Seq. of Deming.

Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Harold
Pitts whose telephone number is (703) 308-0717.

Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 308-0956.

HAROLD PITTS
PRIMARY EXAMINER
GROUP 2500

Pitts/tj
September 22, 1993

CONFIDENTIAL

LML-EP 000140

# EXHIBIT   S

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No. 07/975,717      Group Art Unit: 2505

Filed: 11/13/92      Examiner: Pitts, H.

For:    CHECKWRITING POINT OF SALE SYSTEM

\*    \*    \*    \*

RESPONSE TO OFFICE ACTION OF 09/23/93

\*    \*    \*    \*

Commissioner of Patents and Trademarks
Box Non-Fee Amendment
Washington, D.C. 20231

Sir:

Applicant hereby submits the following response to the Office
action of 09/23/93.

In the Specification:

Page 1, line 6, after "particularly" add -- to --.

Page 1, line 8, after "individual and" add -- of --.

Page 1, line 8, between "the" and "bank" add
-- individual's --.

Page, 1, line 8, between "and" and "bank" add -- whereby
the --.

Page 1, line 8, delete "be" and insert -- is --.

Page 1, line 12, before "patent" insert -- U.S. --.

Page 1, line 13, after "together" insert -- with --.

Page 1, line 17, before "Patent" insert -- U.S. --.

Page 1, line 21, delete "the " and insert -- an --.

CONFIDENTIAL

LML-EP 000144

Page 1, line 22, after "point" insert -- of --.

Page 1, line 22, before "Patent" insert -- U.S. --.

Page 1, line 24, before "Patent" insert -- U.S. --.

Page 1, line 27, before "Patent" insert -- U.S. --.

Page 1, line 27, delete "involving" and insert
-- discloses --.

Page 2, line 1, delete "in" and insert -- using --.

Page 2, line 2, before "check" insert -- a --.

Page 2, line 2, after "codes" insert -- . --.

Page 2, line 2, delete "is used by" and insert -- When --.

Page 2, line 2, after "someone" insert -- attempts --.

Page 2, line 3, after "services" delete "and wherein" and
insert -- , --.

Page 2, line 4, after "place" insert -- the order --.

Page 2, line 7, before "Patent" insert -- U.S. --.

Page 2, line 8, delete "telemachine" and insert -- teller
machine --.

Page 2, line 11, before "Patent" insert -- U.S. --.

Page 2, line 14, before "Patent" insert -- U.S. --.

Page 2, line 16, delete "then".

Page 2, line 19, before "Patent" insert -- U.S. --.

Page 2, line 22, before "Patent" insert -- U.S. --.

Page 2, line 23, delete "systems" and insert -- system --.

Page 3, line 1, before "Patent" insert -- U.S. --.

Page 3, line 3, delete "which users" and insert
-- . Users --.

2

CONFIDENTIAL

LML-EP 000145

Page 3, line 5, before "Patent" insert -- U.S. --.

Page 3, line 6, delete "apparatuses" and insert -- an apparatus is --.

Page 3, line 6, delete "restore" and insert -- secure --.

Page 3, line 7, before "checks" insert -- of --.

Page 3, line 9, before "customer" insert -- a --.

Page 3, line 10, Delete "It does" and insert -- They do --.

Page 3, line 10, delete "anyway" and insert -- any way --.

Page 3, line 11, delete "or indeed" and insert -- nor do they --.

Page 3, line 11, delete "that the issue in anyway of how" and insert -- the process by which --.

Page 3, line 13, delete "operation" and insert -- operations --.

Page 3, line 13, after "exist" insert -- in --.

Page 3, line 14, delete "ACH" and insert -- automated clearinghouse ("ACH") --.

Page 3, line 15, delete "anyway" and insert -- any way --.

Page 3, line 17, delete "indeed" and insert -- must --.

Page 3, line 21, before "will" delete "it" and insert -- the present invention --.

Page 3, line 23, delete "by the background I" and insert -- and disclosed in the background references --.

Page 3, line 26, delete ","".

Page 4, line 9, after "individuals" insert -- herein --.

Page 4, lines 9-10, delete "in this application".

3

CONFIDENTIAL

LML-EP 000146

Page 4, lines 12-13, delete "the present invention's".

Page 4, line 13, after "parameters" insert -- of the present invention --.

Page 4, line 17, delete "know" and insert -- known --.

Page 4, line 17, delete "("Automated Clearing House)".

Page 4, line 24, delete "deposit" and insert -- deposits the. transaction amount --.

Page 4, line 27, delete "would be" and insert -- are --.

Page 5, line 9, delete "applicants'".

Page 5, line 9, after "system" insert -- of the present invention --.

Page 5, line 12, delete "would be" and insert -- are --.

Page 5, line 12, delete "applicants'".

Page 5, line 12, after "system" insert -- of the present invention by --.

Page 5, line 19, delete "their".

Page 5, line 22, delete "invention's".

Page 5, line 22, after "center" insert -- of the present invention --.

Page 5, line 24, delete "Electronic Funds Transfer ("EFT")" and insert -- EFT --.

Page 5, line 27, delete "would be" and insert -- is --.

Page 6, line 16, delete "could" and insert -- may --.

Page 6, line 22, after "execution" insert -- of the Transaction Event Slip --.

Page 7, line 8, before "be stored" insert -- may --.

4

LML-EP 000147

Page 7, line 12, delete "would".

Page 7, line 22, delete "and use to" and insert -- to and use of --.

Page 8, line 5, delete "the consumers" and insert -- consumer --.

Page 8, line 6, delete "as well".

Page 8, line 8, before "present" insert -- method of the --.

Page 8, line 9, delete "subscribers" and insert -- subscriber's --.

Page 8, line 9, delete " at a".

Page 8, line 12, after "or" insert -- for --.

Page 8, line 17, delete "invention's".

Page 8, line 18, after "files" insert -- of the present invention --.

Page 8, line 24, before "part" insert -- considered --.

Page 8, line 24, before "invention" insert -- present --.

Page 9, line 2, delete "an" and insert -- a --.

Page 9, line 3, before "executed" insert -- will be --.

Page 9, line 24, after "reader" insert -- , --.

Page 9, line 25, after "character" insert -- recognition --.

Page 9, line 25, after "equipment" insert -- , --.

Page 9, line 26, delete "applicants'".

Page 9, line 27, delete "were" and insert -- of the present invention is --.

Page 10, line 3, delete "The present invention contemplates" and insert -- It is contemplated --.

5

CONFIDENTIAL

LML-EP 000148

Page 10, line 4, delete "on" and insert -- using the present invention with --.

Page 10, line 7, after "system" insert -- of the present invention --.

Page 10, line 10, before "form" insert -- the --.

Page 10, line 12, delete "(PSTN) or" and insert -- ("PSTN") or over --.

Page 10, line 21, after "Individual" insert -- transactions --.

Page 11, line 1, before "instantly" insert -- are --.

Page 11, line 3, delete "subscribers" and insert -- subscribers' --.

Page 11, line 3, delete "are" and insert -- is --.

Page 11, line 4, delete "invention's".

Page 11, line 4, delete "by means of telephonic network" and insert -- of the present invention by means of a telephonic network which is --.

Page 11, line 8, after "response" insert -- sequence --.

Page 12, line 4, before "normal" insert -- over --.

Page 13, line 13, delete "which allows the consumer," and insert -- to allow any consumer --.

Page 13, line 14, after "system" delete ",".

Page 13, line 15, before "whether" insert -- of --.

Page 13, line 16, before "outside" insert -- other --.

Page 13, line 26, delete "which instructs" and insert -- to instruct --.

6

CONFIDENTIAL

LML-EP 000149

Page 14, line 7, before "that" insert -- , i.e., --.

Page 14, line 11, delete "enters" and insert -- begins --.

Page 14, line 20, delete "compare" and insert -- compares --.

Page 16, line 6, delete "subscribers" and insert -- subscriber's --.

Page 16, line 10, delete "for access searches".

Page 16, line 11, after "files" insert -- for the purpose of performing access searches --.

Page 16, line 11, after "Each" insert -- data file --.

Page 16, line 13, before "terminal" insert -- ("POS") --.

Page 16, line 15, delete "Terminal" and insert -- The terminal --.

Page 16, line 19, delete "would be" and insert -- are --.

Page 16, lines 21-22, delete "would "slide" a" and insert -- "slides" an --.

Page 16, line 23, delete "enter" and insert -- enters --.

Page 17, line 11, delete "enter" and insert -- enters --.

Page 17, line 13, after "account" insert -- number --.

Page 18, line 11, after "invention" insert -- , --.

Page 18, line 25, after "indicates" insert -- a --.

Page 18, line 25, delete ",".

Page 19, line 2, delete "was" and insert -- as --.

Page 19, line 9, delete "are" and insert -- is --.

Page 19, line 13, delete "invention's".

Page 19, line 13, after "center" insert -- of the present invention --.

7

CONFIDENTIAL

LML-EP 000150

Page 19, line 17, before "invention" insert -- present --.

Page 19, line 20, after "reader" insert -- for --.

Page 19, line 22, delete "are" and insert -- is generated --.

Page 20, line 18, before "present" insert -- the --.

Page 20, line 23, after "and" insert -- a --.

Page 21, line 19, after "or" insert -- as --.

Page 22, line 14, delete "with" and insert -- without --.

In the Claims:

1.    (Amended) A checkwriting point of sale system comprising:

a point of sale terminal adapted to receive consumer bank account information and further adapted to accept such information from consumer cards on which the bank account information is stored;

a communications means integral to said point of sale terminal [to] for electronically [communicate] communicating with a central computer;

a memory means integral to said point of sale terminal [that allows] for allowing the temporary storage of the consumer bank account information from the consumer cards;

the central computer system having communication means capability adapted to receive information from a plurality of point of sale terminals;

the central computer system communication means allowing said central computer system to communicate with external data bases for consumer [credit] bank account status verification and [to allow]

8

CONFIDENTIAL

allowing communication with banking institutions for purposes of transfer of funds.

2.    (Amended) A checkwriting point of sale[s] system according to claim 1 wherein said point of sale terminal is further adapted to read MICR numbers appearing on a consumer check and wherein said consumer check is used to identify the consumer bank account information.

3.    (Amended) The checkwriting point of sale system according to claim 1 wherein said point of sale terminal further comprises an alpha[ ]numeric display adapted to receive consumer bank account information from the memory means of the point of sale terminal [and] such that said point of sale terminal is adapted to display the consumer bank account information.

4.    (Amended) The checkwriting point of sale system according to claim 1 further comprising a printer adapted to receive information from the memory means of the point of sale terminal to create point of sale slips.

5.    (Amended) The checkwriting point of sale system according to claim 1 wherein said central computer system communication means comprises means for communicating with third party data bases for verification of consumer [credit] banking account status.

6.    (Amended) The checkwriting point of sale system according to claim 1 further comprising a resident third party data base wherein consumer [credit] banking account status information is stored [and] which is used for verification of consumer (credit) banking account status.

9

CONFIDENTIAL

LML-EP 000152

7.    (Amended) The checkwriting point of sale system according to claim 1 wherein the central computer system further comprises a system subscriber data base comprising [those] information regarding merchants and service providers authorized to use the [invention] checkwriting point of sale system.

8.    (Amended) The checkwriting point of sale system according to claim 7 wherein the central computer further comprises a database comprising [those] information regarding consumers approved to use the [invention] checkwriting point of sale system.

9.    (Amended) A checkwriting point of sale process comprising the steps of:

a)    presenting a check [or consumer card] to a point of sale terminal located at a merchant or service provider,

b)    reading the [magnetic stripe or] MICR number information on the [credit card or consumer] check,

c)    storing the consumer bank account information from the [card or] check and verifying account numbers at the point of sale terminal,

d)    inputting transaction event information into the point of sale terminal,

e)    transmitting the transaction event information and consumer bank account information to a central computer system,

f)    verifying the authorization status of the consumer,

g)    [if a particular consumer is not authorized to use the system,]verifying the [credit worthiness] banking account

10

CONFIDENTIAL

LML-EP 000153

status of the consumer via a query to a third party data base if a
particular consumer is not authorized to use the system,

h)    sending an "approved" message to the point of sale
terminal, if the consumer's [credit] banking account status is
approved for the transaction, and

i)    subsequently transmitting the transaction event
information to a bank for subsequent ACH operations.

Please add the following new claim:

10.  (New claim)    A checkwriting point of sale process
comprising the steps of:

a)    presenting a consumer card to a point of sale
terminal located at a merchant or service provider,

b)    reading the magnetic stripe information on the
consumer card,

c)    storing the consumer bank account information from
the  consumer card and verifying account numbers at the point of
sale terminal,

d)    inputting transaction event information into the
point of sale terminal,

e)    transmitting the transaction event information and
consumer bank account information to a central computer system,

f)    verifying the authorization status of the consumer,

g)    verifying the banking account status of the consumer
via a query to a third party data base if a particular consumer is
not authorized to use the system,

11

CONFIDENTIAL

LML-EP 000154

h) sending an "approved" message to the point of sale terminal, if the consumer's banking account status is approved for the transaction, and

i) subsequently transmitting the transaction event information to a bank for subsequent ACH operations.

In the Abstract:

Line 9, after "has" insert -- an --.

Line 9, delete "credit" and insert -- balance --.

Line 14, delete "needs" and insert -- need --.

REMARKS

Numerous changes have been made to the specification in order to correct typographical errors and grammatical construction and to generally make the text more clear. No new matter has been added by this amendment.

The claims have been amended to make the language more clear and to more accurately recite the verification of banking account status by the system. Support for verification by the system of banking account status can be found throughout the specification, for example, on page 8, from line 8 to line 24. No new matter has been added by this amendment.

Claim 9 was also amended because recited elements were claimed in the alternative. Claim 9 no longer recites elements in the alternative. New claim 10 was added to recite features formerly claimed in the alternative in claim 9. No new matter has been added by this amendment.

12

CONFIDENTIAL

LML-EP 000155

The Examiner rejected claims 1-9 under 35 U.S.C. § 102(b) as being anticipated by Case or Deming. The Examiner noted column 1, lines 53 et seq. of Case and column 2, lines 17 et seq. of Deming.

Case discloses an electronic funds transfer system that uses a letter of credit identification card and a draft instrument unique to the system in order to effect a funds transfer to a merchant or other "beneficiary".

The consumer using the Case system prepays a sum of money into an account that is to be accessed by the system. This amount is inscribed on the card. When a purchase is made by the consumer, and a transaction is to be made using the system, the amount of the transaction is punched out of a designated area on the card. This amount, along with a signature and other information, is supplied on the draft instrument, which is given to the merchant at the time of the transaction. At the end of the day, the accumulated drafts from all purchases are inserted into a specially designed reader which reads the transaction information and performs an electronic funds transfer.

Thus, in order to use the Case system, the consumer must carry a special card and must hand to the merchant a draft instrument. The card must be backed by a prepaid amount of money that is fixed at the time the card is issued and can never be increased on that particular card. The amount can only be diminished as purchases are made.

In contrast, Applicants' invention does not require the consumer to carry a special identification/debit card, although

13

CONFIDENTIAL

LML-EP 000156

such a card is contemplated for use with Applicants' system. Applicants' card, however, has all necessary information encoded on a magnetic strip, which can be easily read by a MICR device. No time consuming and awkward balance checking or hole punching is required.

Further, the consumer using Applicants' system is not required to furnish the merchant with a special draft instrument. The consumer merely uses a regular check used to draw funds from a normal bank or credit union checking account. This check needn't even be given to the merchant. The checking account information is simply read from the check, which is returned to the consumer. Transaction entries are not made on a debit card using Applicants' system because account information is verified on-line, rather than through a crude system of punched entries.

Thus, the entire amount of the consumer's checking account is available to make purchases using the system, including amounts reflecting recent deposits and other credits, unlike the Case system. Where the Case system enables a complicated and time consuming transaction that requires the transfer of a paper instrument, Applicants' system effects a truly paperless transaction that is easy to use and saves time and money.

It is respectfully submitted that Applicants' claimed system, which obviates the use of checks in a checking account transaction, is completely different from the Case system, which replaces ordinary bank checks with special draft instruments and a complicated, time consuming identification/debit verification

14

CONFIDENTIAL

LML-EP 000157

process. It is therefore respectfully urged that the Case patent does not anticipate Applicants' invention. Applicants respectfully request that the rejection be withdrawn.

Deming discloses an electronic funds transfer system that a payor can use to transfer funds to different payees in satisfaction of debts incurred through previous purchases, use of utilities, etc. The system is contemplated for use by the payor on a home personal computer. Thus, as stated in the patent, this is a "home banking" system.

In contrast, Applicants' invention is a point of sale electronic funds transfer system. The system is utilized as the purchase is being made, with funds being transferred from the consumer's checking account based on information derived directly from an ordinary bank check.

Thus, there are many differences between the Deming system and Applicants' claimed invention. The Deming system is a home banking system; Applicants' invention is a point of sale check writing system. The Deming system is used to pay debts that have been incurred in the past; Applicants' invention is used to pay for purchases as they are made. The Deming system is used to pay a number of debtors, using a personal computer located at the payor's home; Applicants' invention is used to pay only one merchant at a time, at the point of sale only. Account and other information must be keyed into the Deming system; Applicants' invention can read in account and other information directly from the consumer's

15

CONFIDENTIAL

LML-EP 000158

ordinary bank check.  The Deming system subscriber is a payor;
system subscribers to Applicants' system are merchants.

Because of the above-stated and other differences between the
Deming system and Applicants' claimed invention, it is respectfully
urged that the Deming system does not anticipate Applicants'
invention.  It is therefore respectfully requested that the
rejection be withdrawn.

It is respectfully urged that all rejections have been
overcome.  It is therefore respectfully requested that this
amendment be entered and the case passed to issue.

Respectfully submitted,

Jon L. Roberts
Registration No. 31,293
Arter & Hadden
1801 K Street, N.W.
Suite 400K
Washington, D.C. 20006
December 21, 1993     Phone: (202) 775-7980

16

CONFIDENTIAL

LML-EP 000159

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No. 07/975,717                    Group Art Unit: 2505

Filed: 11/13/92                          Examiner: Pitts, H.

For:    CHECKWRITING POINT OF SALE SYSTEM

            *      *      *      *      *

        RESPONSE TO OFFICE ACTION OF 09/23/93

            *      *      *      *      *

Commissioner of Patents and Trademarks
Box Non-Fee Amendment
Washington, D.C. 20231

Sir:

        Enclosed please find the following:

    1.    Response to Office action dated 09/23/93 (16 Pages); and

    2.    Certificate of First Class Mailing.

                        Respectfully submitted,

                        Jon L. Roberts
                        Reg. No. 31,293
                        Arter & Hadden
                        1801 K Street, N.W.
                        Suite 400K
                        Washington, D.C. 20006
                        (202) 775-7980

December 21, 1993

CONFIDENTIAL                                    LML-EP 000160



CERTIFICATE OF FIRST CLASS MAILING

Date of Mailing: _____ December 21, 1993 _____

I hereby certify that the Response to the Office action dated 09/23/93 (16 pages) regarding U.S. Patent application serial no. 07/975,717 for CHECKWRITING POINT OF SALE SYSTEM is being deposited with the United States Postal Service as first class mail under 37 C.F.R. § 1.8 on the date indicated above and is addressed to Commissioner of Patents and Trademarks, Box Non-Fee Amendment, Washington, D.C. 20231.

Thomas M. Champagne, Esq.
Arter & Hadden
1801 K Street, N.W.
Suite 400K
Washington, D.C. 20006

CONFIDENTIAL

LML-EP 000161

# EXHIBIT   T

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No. 08/257,390

Filed: 06/09/94

For: CHECKWRITING POINT OF SALE SYSTEM

Group Art Unit: 2514

Examiner: Pitts, H.

RESPONSE TO OFFICE ACTION OF 10/28/94

RECEIVED
FEB 06 1995
GROUP 2500

Commissioner of Patents and Trademarks
Box Non-Fee Amendment
Washington, D.C. 20231

Sir:

Enclosed please find the following:

1.    Response to Office action dated 10/28/94 (27 pages); and

2.    Certificate of First Class mailing.

Respectfully submitted,

Jon L. Roberts
Registration No. 31,293
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182
Phone: (703) 356-7700

January 27, 1995

CONFIDENTIAL

LML-EP 000182

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No. 08/257,390                Group Art Unit: 2514

Filed:  06/09/94                      Examiner: Pitts, H.

For:   CHECKWRITING POINT OF SALE SYSTEM

\*      \*      \*      \*      \*

RESPONSE TO OFFICE ACTION OF 10/28/94

\*      \*      \*      \*      \*

RECEIVED
FEB U 6 1995
GROUP 2500

Commissioner of Patents and Trademarks
Box Non-Fee Amendment
Washington, D.C. 20231

Sir:

Applicant hereby submits the following response to the Office

action of 10/28/94.

In the Claims:

1.   (Twice Amended)    A checkwriting point of sale system

comprising:

a point of sale terminal adapted to receive consumer bank

account information from any bank check;

a central computer system;

first communications means integral to said point of sale

terminal for electronically communicating with the central computer

system;

memory means integral to said point of sale terminal for

temporarily storing the consumer bank account information;

CONFIDENTIAL

LML-EP 000183

the central computer system having second communication means for receiving information from a plurality of said point of sale terminals;

the central computer system second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using [a] the bank check as a negotiable instrument.

8. (Twice Amended)    A checkwriting point of sale process comprising [the steps of]:

a)    presenting [a] any bank check specimen to a point of sale terminal located at a merchant or service provider,

b)    reading the magnetic ink character recognition number information on the check for the sole purpose of obtaining *without using the check as a negotiable instrument,* consumer bank account information,

c)    storing the consumer bank account information obtained from the check and verifying that account numbers were accurately read at the point of sale terminal,

d)    [inputting] providing transaction event information [into] to the point of sale terminal,

e)    transmitting the transaction event information and consumer bank account information to a central computer system,

f)    storing the transaction event information and consumer banking account information, and

2

LML-EP 000184

g) subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations.

1. (Amended) A checkwriting point of sale system comprising:

a point of sale terminal adapted to receive consumer bank account information;

a central computer system;

first communications means integral to said point of sale terminal for electronically communicating with the central computer system; and

memory means integral to said point of sale terminal for temporarily storing the consumer bank account information;

the point of sale terminal comprising reading means for reading magnetic ink character recognition numbers on any consumer bank [checks] check for the sole purpose of eliciting consumer bank account information;

the central computer system having second communication means for receiving information from a plurality of said point of sale terminals;

the central computer system second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using a bank check as a negotiable instrument.

3

CONFIDENTIAL

LML-EP 000185

15. (Amended) The checkwriting point of sale process of claim 8, further comprising [the steps of]:

    a) verifying the status of the consumer bank account,

    b) verifying the consumer bank account status of the consumer via a query to a third party database if the consumer bank account is verified as bad, and

    c) sending an approval message to the point of sale terminal if the consumer's banking account status is approved for the transaction.

16. (Amended) The checkwriting point of sale process of claim 8, further comprising [the steps of]:

    (A) printing a transaction event sales slip following the sending of an approval message; and

    (B) executing of the sales slip by the consumer as proof of bank account access authorization.

17. (Amended) The checkwriting point of sale process of claim 15, further comprising [the steps of]:

    (A) printing a transaction event sales slip following the sending of an approval message; and

    (B) executing of the sales slip by the consumer as proof of bank account access authorization.

18. (Amended) The checkwriting point of sale process of claim 8, further comprising [the step of] automatically logging point of sale terminal location information and transaction date, time, and sales amount information into the point of sale terminal.

4

CONFIDENTIAL

LML-EP 000186

## REMARKS

Claims 1-4, 6-9, and 11-22 are pending in the application. Claims 1-4, 6-9, and 11-21 were rejected. It is assumed that claim 22 has been overlooked and was intended to be rejected as well. Claims 1, 9, 11, and 17-20 have been amended. Claims 1, 9, and 11 are the independent claims.

The Examiner rejected claims 1-4, 6-9, and 11-21 (and presumably claim 22) under 35 U.S.C. § 112 as being indefinite for failing to particularly point out and distinctly claim the subject matter that Applicants regard as the invention. The Examiner stated that Applicants have discussed the Case and Deming patents in the specification but have not claimed the argued novelty. The Examiner further stated that there has been no specific comparison of claim language vis-a-vis the references cited in the previously submitted I.D.S. or the references cited in combination by the Examiner in the previous final rejection. The Examiner also stated that only one set of claims should be selected as the three sets of claims appear to embody separate inventions.

The Examiner concluded by stating that the claims are rejected as set forth in the previous final rejection, with the further notation that to use the check "solely" for access would be the most trivial modification of systems such as Granzow etc.

The specification was previously amended to discuss the patents to Case and Deming in the Background section. Applicants consider these patents to provide good background material for understanding their invention, which is an improvement on previous

5

CONFIDENTIAL

systems. The Case and Deming patents were merely discussed in this manner; no matters of novelty were argued. The Examiner stated that Applicants have not claimed the novelty of the invention. Applicants assert that the claims, as presented in the preliminary amendment, do in fact recite such novelty, which will be pointed out in the paragraphs that follow.

Applicants respectfully assert that, contrary to the Examiner's contention, specific claim language has been compared to the teachings of the references cited in prior Office actions in order to overcome the Examiner's previous rejections. An examination of responses to prior Office actions will confirm this. Applicants have taken pains to completely review all prior responses to Office actions in this regard. Unfortunately, a comparison of cited references to particular claim language was not provided in the most recent Office action. Nevertheless, in the following paragraphs, each reference, whether cited by Applicants or by the Examiner, will be compared with specific claim language in order to overcome what Applicants presume the Examiner's rejection to be. It will be shown that it is not necessary to compare each element of every claim with each referenced patent because there is at least one element recited in all the independent claims that is not disclosed by any of the referenced patents, and thus any combination of the references could not render the claims obvious.

6

CONFIDENTIAL

LML-EP 000188

Applicants' Invention

The following are brief summaries of the elements recited in Applicants' independent claims.

Claim 1

Claim 1 recites a checkwriting point-of-sale system comprising a point of sale terminal, a central computer, first and second communication means, and memory. The point of sale terminal accepts bank account information from any bank check. The system transfers funds as part of a transaction without using the bank check as a negotiable instrument.

Claim 9

Claim 9 recites a checkwriting point-of-sale process comprising presenting any bank check to a merchant's terminal, reading MICR information from the check for the sole purpose of obtaining bank account information, storing the information, providing transaction event information to the terminal, transmitting the transaction information to a central computer, storing all the information, and transmitting the transaction information to a bank for clearing house functions.

Claim 11

Claim 11 recites a checkwriting point-of-sale system comprising a point of sale terminal, a central computer, first and second communication means, and memory. The point of sale terminal accepts bank account information by reading the MICR information from any bank check. The system transfers funds as part of a

7

CONFIDENTIAL

LML-EP 000189

transaction without using the bank check as a negotiable instrument..

Case 4,270,042

Case discloses an electronic funds transfer system. The system includes use of a letter of credit card and a draft instrument unique to the Case system. Case does not disclose the use of any bank check solely to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Case uses a combination of letter of credit card and system-unique negotiable instrument that is negotiated as part of the transaction. Consumer information is provided by the letter of credit card, and the negotiable draft instrument is given to the vendor to pay for the transaction.

Thus, an element recited in all of Applicants' claims is not disclosed by Case. Further, it would not be trivial to modify Case so that an ordinary bank draft is used for informational purposes only. The entire Case system is set up around a unique pre-paid (and therefore pre-authorized) account in which a system-unique draft instrument is given up, that is, negotiated as part of the transaction. To include the missing elements of Applicants' claims would be to change the entire nature of the Case system from a closed, pre-paid system using unique draft negotiable instruments to one which electronically debits a bank account based on information derived from any ordinary check. Including elements of Applicants' claims is unecessary for Case because each transaction is preauthorized through prepayment. Thus, it is neither possible

8

CONFIDENTIAL

LML-EP 000190

nor proper to combine the system of Case with another system in an effort to result in Applicants' claimed system.

Deming 4,823,264

Deming discloses an electronic funds transfer system used in conjunction with home banking, not a point-of-sale transaction. Deming does not disclose the use of a bank check in a point-of-sale transaction solely to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Deming discloses a home banking method by which all payor and payee information is entered manually into a computer. A bank check is never used, except when a routing and transfer number is not available for the payee, in which case a paper check is issued and mailed for later negotiation by the payee.

Thus, an element recited in all of Applicants' claims is not disclosed by Deming. Further, it would not be trivial to modify Deming so that a bank draft is used for informational purposes only. The Deming system is a home banking system used by a single payor to pay a number of payees. Thus, the payor's information will always be stored on the system; there is no reason to read it from a check. In contrast, Applicants' system will always be used at the payee's place of business, and information must be gathered from a great number of payors. Therefore, the payee's information will always be stored on the system and the payor's information will have to be entered. This is done by reading it from the check. To include the missing elements of Applicants' claims would

9

LML-EP 000191

be to change the very nature of the Deming system from a personal bank at home system to a point-of-sale system. Thus, it is neither possible nor proper to combine the system of Deming with a point-of-sale system in an effort to assemble Applicants' claimed system.

Carlson et al. 5,053,607

Carlson et al. disclose a system adapted for processing checks. The system includes a device that reads MICR information printed on the check. This reading of the MICR data speeds up processing of the check at the point of sale. The check is still used as a negotiated instrument, however, and is turned over to the merchant to complete the transaction. Thus, Carlson et al. do not disclose the use of a bank check in a point-of-sale transaction solely to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, the Carlson et al. system requires negotiation of the check.

Thus, an element recited in all of Applicants' claims is not disclosed by Carlson et al. Further, it would not be trivial to modify Carlson et al. so that a bank draft is used for informational purposes only. The entire Carlson et al. system is set up to process checks in order to speed the debiting and crediting of the negotiated amount at a later date. To include the missing elements of Applicants' claims would be to change the very nature of the Carlson et al. system from a system that prepares checks for negotiation to one which doesn't negotiate checks at all. Thus, it is neither possible nor proper to combine the system

10

CONFIDENTIAL

LML-EP 000192

of Carlson et al. with another system in an effort to result in
Applicants' claimed system.

Carlson et al. 4,678,896

Carlson et al. here disclose a mechanism that includes
security features to prevent unauthorized tampering. This device
includes a MICR reader, but again only processes instruments that
are negotiated as part of the transaction taking place at the point
of sale. Thus, Carlson et al. do not disclose the use of a bank
check in a point-of-sale transaction in order to derive consumer
information and not for use as a negotiable instrument, as recited
in independent claims 1, 9, and 11. Rather, Carlson et al. require
negotiation of the check.

Thus, an element recited in all of Applicants' claims is not
disclosed by Carlson et al. Further, it would not be trivial to
modify Carlson et al. so that a bank draft is used for
informational purposes only. The entire Carlson et al. system is
set up to process checks in order to speed the debiting and
crediting of the negotiated amount at a later date and to provide
security against tampering with checks accepted to complete the
transaction. To include the missing elements of Applicants' claims
would be to change the very nature of the Carlson et al. system
from a system that prepares checks for negotiation to one which
doesn't negotiate checks at all. Further, the protection of
negotiated checks after the transaction provided by Carlson et al.
is completely unnecessary using Applicants' system as the vendor
never takes a check from the purchaser. The check is only

11

CONFIDENTIAL

temporarily given to the vendor so that information may be read. Thus, it is neither possible nor proper to combine the system of Carlson et al. with another system in an effort to result in Applicants' claimed system.

Murphy et al. 4,672,377

Murphy et al. disclose a check authorization system whereby a supermarket customer is assigned a UPC code which is used to access a database used to check the credit status of the customer at each transaction. If the customer's credit is good, acceptance of the check in payment for the transaction is authorized. The check is then negotiated as it would be in any normal transaction. Thus, Murphy et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Murphy et al. provide a credit check before a check is negotiated.

Thus, an element recited in all of Applicants' claims is not disclosed by Murphy et al. Further, it would not be trivial to modify Murphy et al. so that a bank draft is used for informational purposes only. The entire Murphy et al. system is set up to authorize the acceptance of a check as a negotiable instrument in payment for goods. To include the missing elements of Applicants' claims would be to change the very nature of the Murphy et al. system from a system that authorizes the acceptance of negotiable instruments to one which does not accept negotiable instruments at all. To process checks in the manner provided by Applicants'

12

LML-EP 000194

invention would go beyond modification of the Murphy et al. invention; it would do away with the entire purpose behind the Murphy et al. invention. Thus, it is neither possible nor proper to combine the system of Murphy et al. with another system in an effort to result in Applicants' claimed system.

Lindemann et al. 4.933.536

Lindemann et al. disclose a check processing device whereby some form of customer identification, such as a photograph, is reproduced on a bank check that is presented for tender. This identification feature is used as a deterrence to the passing of bad checks. After the identification has been added to the check, the check is processed as it would in any normal transaction, including acceptance of the check as a negotiable instrument in payment for goods and services. Thus, Lindemann et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Lindemann et al. provide an identification feature before the check is negotiated.

Thus, an element recited in all of Applicants' claims is not disclosed by Lindemann et al. Further, it would not be trivial to modify Lindemann et al. so that a bank draft is used for informational purposes only. The entire Lindemann et al. is set up to add an identification feature to a check in order to deter passing bad checks as negotiable instruments. To include the missing elements of Applicants' claims would be to change the very

13

CONFIDENTIAL

LML-EP 000195

nature of the Lindemann et al. system from one which provides security against the acceptance in payment of bad checks to one that doesn't accept checks for payment at all. To process checks in the manner provided by Applicants' invention would go beyond modification of the Lindemann et al. invention; it would do away with the entire purpose behind the Lindemann et al. invention. Thus, it is neither possible nor proper to combine the system of Lindemann et al. with another system in an effort to result in Applicants' claimed system.

Lord, Jr. 4,810,866

Lord discloses a check validation and check writing system whereby coded information is read from a consumer's bank check in order to determine if the associated bank account has sufficient funds to cover a transaction taking place. If sufficient funds are present, a blank check is printed using the device, which imprints the date, transaction total, etc. and presents the check to the customer for signature. Once the check is executed, it is given to the merchant as payment and is negotiated as would be any normal check in such a transaction. Thus, Lord does not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer account information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Lord requires the negotiation of a system-unique check as payment for a transaction.

Thus, an element recited in all of Applicants' claims is not disclosed by Lord. Further, it would not be trivial to modify Lord

14

LML-EP 000196

so that a bank draft is used for informational purposes only. The entire Lord system is set up to print transaction information on a check so that it can be used as a negotiable instrument. To include the missing elements of Applicants' claims would be to change the very nature of the Lord system from one which produces a negotiable instrument to one which does not use a negotiable instrument. To process checks in the manner provided by Lord is contrary to the entire purpose behind Applicants' invention. Printing of transaction information on checks using Applicants' system is unnecessary because the checks are never surrendered to the vendor. Thus, it is neither possible nor proper to combine the system of Lord with another system in an effort to result in Applicants' claimed system.

## Fukatsu 4,743,743

Fukatsu discloses a transaction apparatus. This apparatus is not part of a point-of-sale system, but rather is an automatic teller machine system. The machine accepts checks along with a "bill" which indicates whether money is to be deposited, withdrawn, etc. As a check is entered into the machine, the MICR code is read, simplifying post-processing, which takes place manually at a later time. Thus, Fukatsu does not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Fukatsu discloses a system for processing negotiable instruments prior to later manual reconciliation of the checking account.

15

CONFIDENTIAL

LML-EP 000197

Thus, an element recited in all of Applicants' claims is not disclosed by Fukatsu. Further, it would not be trivial to modify Fukatsu so that a bank draft is used for informational purposes only. The entire Fukatsu system is set up to accept and process checks for deposit to a bank. To include the missing elements of Applicants' claims would be to change the very nature of the Fukatsu system to one which does not process negotiated checks at all. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Fukatsu, which is not contemplated for use in a merchant setting and would not work in such a setting. Thus, it is neither possible nor proper to combine the system of Fukatsu with another system in an effort to result in Applicants' claimed system.

<u>Cain 4,523,330</u>

Cain discloses a banking system used to process checks. This system scans checks deposited with the bank in order to read MICR data printed on the checks, and also to read handwritten data using character recognition software. Once character recognition is accomplished, the data is converted to MICR data and printed on the check. Thus, Cain does not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Cain discloses a system for processing previously negotiated checks.

16

CONFIDENTIAL

LML-EP 000198

Thus, an element recited in all of Applicants' claims is not disclosed by Cain. Further, it would not be trivial to modify Cain so that a bank draft is used for informational purposes only. The entire Cain system is set up to accept and process checks that have been deposited to a bank. To include the missing elements of Applicants' claims would be to change the very nature of the Cain system to one which does not accept negotiated checks at all. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Cain. Thus, it is neither possible nor proper to combine the system of Cain with another system in an effort to result in Applicants' claimed system.

Nunley et al. 4,404,649

Nunley et al. disclose a document processing system. This system scans checks deposited with a bank in order to read MICR data printed on the checks, and to tag the check with a source item control number. Thus, Nunley et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Nunley et al. provide processing of previously negotiated checks.

Thus, an element recited in all of Applicants' claims is not disclosed by Nunley et al. Further, it would not be trivial to modify Nunley et al. so that a bank draft is used for informational purposes only. The entire Nunley et al. system is set up to accept and process checks that have been deposited to a bank. To include

17

CONFIDENTIAL

LML-EP 000199

the missing elements of Applicants' claims would be to change the very nature of the Nunley et al. system to one which does not accept negotiated checks at all. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Nunley et al, which is not contemplated for use in a merchant setting and would not work in such a setting. In fact, Nunley et al. specifically rule out the possible use of the system at the point-of-sale. Thus, it is neither possible nor proper to combine the system of Nunley et al. with another system in an effort to result in Applicants' claimed system.

Granzow et al. 4,580,040

Graznow et al. disclose a teller-assisted, customer-operated automatic teller machine check cashing system. According to this system, the automatic teller machine is linked to a teller station equiped with a MICR data reader. When a customer presents a check to be cashed, the MICR data is read, the customer's or the third party payor's checking account balance is check for sufficiency of funds, and cash is dispensed if the account balance is sufficient. Thus, Graznow et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Graznow et al. disclose a bank system for verifying checks to be negotiated.

Thus, an element recited in all of Applicants' claims is not disclosed by Graznow et al. Further, it would not be trivial to

18

CONFIDENTIAL

LML-EP 000200

modify Graznow et al. so that a bank draft is used for informational purposes only. The entire Graznow et al. system is set up to cash checks that have been presented to a bank. To include the missing elements of Applicants' claims would be to change the very nature of the Graznow et al. system from one that has the sole function of accepting checks for negotiation to one which is used as part of a point-of-sale transaction and does not accept the check for negotiation. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Graznow et al. Thus, it is neither possible nor proper to combine the system of Graznow et al. with another point-of-sale system in an effort to assemble Applicants' claimed system.

<u>Graznow et al. 4,617,457</u>

Here, Graznow et al. disclose the same invention as that discussed above, with the addition of an image for presenting an image of the check to be cashed to the teller present at the teller station. Again, Graznow et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Graznow et al. disclose a bank system for verifying checks to be negotiated.

Thus, an element recited in all of Applicants' claims is not disclosed by Graznow et al. Further, it would not be trivial to modify Graznow et al. so that a bank draft is used for informational purposes only. The entire Graznow et al. system is

19

CONFIDENTIAL

LML-EP 000201

set up to cash checks that have been presented to a bank. To include the missing elements of Applicants' claims would be to change the very nature of the Graznow et al. system from one that has the sole function of accepting checks for negotiation to one which is used as part of a point-of-sale transaction and does not accept the check for negotiation. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Graznow et al. Thus, it is neither possible nor proper to combine the system of Graznow et al. with another system in an effort to result in Applicants' claimed system.

Simjian 3,824,544

Simjian discloses a merchandizing arrangement utilizing a coded sales ticket. The customer obtains the coded sales ticket by selecting an item for purchase and paying for the item. The coded ticket is then brought to a merchandise dispensing area and is exchanged for the purchased item. Thus, Simjian does not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Simjian discloses a merchandise vending security system, the point-of-sale aspect of which is conventional.

Thus, an element recited in all of Applicants' claims is not disclosed by Simjian. Further, it would not be trivial to modify Simjian so that a bank draft is used for informational purposes only. The entire Simjian system is set up to provide security

20

CONFIDENTIAL

LML-EP 000202

against shoplifting by controlling access to merchandise. The invention is not even directed to the payment part of the transaction. To include the missing elements of Applicants' claims would be to change the very nature of the Simjian system by adding a new inventive element to the system. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Simjian. Thus, it is neither possible nor proper to combine the system of Simjian with another system in an effort to result in Applicants' claimed system.

Schuller 3.845.470

Schuller discloses a check-controlled vending system. This system uses pre-paid tickets, or "checks", as a payment means for a vending machine. These tickets are coded to provide security features. Thus, Schuller does not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Schuller discloses a payment system for vending machines which uses specialized tickets as negotiable instruments.

Thus, an element recited in all of Applicants' claims is not disclosed by Schuller. Further, it would not be trivial to modify Schuller so that a bank draft is used for informational purposes only. The entire Schuller system is set up to provide security against shoplifting by controlling access to merchandise using pre-paid tickets. The invention is not even directed to the payment

21

part of the transaction. To include the missing elements of Applicants' claims would be to change the very nature of the Schuller system by adding a new inventive element to the system. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Schuller. Thus, it is neither possible nor proper to combine the system of Schuller with another system in an effort to result in Applicants' claimed system.

Ohmae et al. 4,673,802

Ohmae et al. disclose a system for using a bank debit card to pay for merchandise at a point-of-sale. Unlike normal debit card transactions, the Ohmae et al. system allows for a grace period between the time the sale is made and the time the cash is debited from the customer's account. Thus, Ohmae et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Ohmae et al. disclose a system for delaying the posting of a debit to a user's account.

Thus, an element recited in all of Applicants' claims is not disclosed by Ohmae et al. Further, it would not be trivial to modify Ohmae et al. so that a bank draft is used for informational purposes only. The entire Ohmae et al. system is set around the use of a debit card. To include the missing elements of Applicants' claims would be to change the very nature of the Ohmae et al. system to one which electronically debits a bank account

22

CONFIDENTIAL

LML-EP 000204

based only on information derived from a bank check to complete a point-of-sale transaction.  To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Ohmae et al. Thus, it is neither possible nor proper to combine the system of Ohmae et al. with another system in an effort to result in Applicants' claimed system.

Tateisi et al. 4,678,895

Tateisi et al. disclose a normal system for using a bank debit card to pay for merchandise at a point of sale.  The system includes a terminal device, connected to a cash register, for performing the account debit function while the cash register rings up the sale.  Thus, Tateisi et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11.  Rather, Tateisi et al. disclose a system for performing a debit function separate from a tallying function in order to speed transactions.

Thus, an element recited in all of Applicants' claims is not disclosed by Tateisi et al.  Further, it would not be trivial to modify Tateisi et al. so that a bank draft is used for informational purposes only.  The entire Tateisi et al. system is set around the use of a debit card.  To include the missing elements of Applicants' claims would be to change the very nature of the Tateisi et al. system to one which electronically debits a bank account based only on information derived from a bank check to

23

complete a point-of-sale transaction. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Tateisi et al. Thus, it is neither possible nor proper to combine the system of Tateisi et al. with another system in an effort to result in Applicants' claimed system.

Sakuma et al. 4,934,772

Sakuma et al. disclose a light beam scanning lens and light beam scanning device. Sakuma et al. disclose a scanning system that has potential utility in scanning information from a check, but such use is not disclosed. Thus, Sakuma et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Sakuma et al. disclose a light beam scanning device.

Thus, an element recited in all of Applicants' claims is not disclosed by Sakuma et al. Further, it would not be trivial to modify Sakuma et al. so that a bank draft is used for informational purposes only. Sakuma et al. merely disclose the optical scanning elements of an undisclosed system. To include the missing elements of Applicants' claims would be to completely redefine the Sakuma et al. invention and is beyond the scope of the Sakuma et al. invention. Thus, it is neither possible nor proper to combine the device of Sakuma et al. with a point-of-sale system in an effort to assemble Applicants' claimed system.

24

CONFIDENTIAL

LML-EP 000206

Summary

None of the referenced patents discloses at least one element recited in all of Applicants' claims. That is, none of the references discloses a point-of-sale system that uses any bank check solely for the purposes of gathering customer information and not as a negotiable instrument used to pay for goods received in a transaction. Because none of these references discloses this element, no combination of these references can disclose Applicants' claimed system, because such a combination would also be missing this element. Further, the addition of this missing element to any of the references is not trivial or obvious, and in fact is not compatible with the stated purpose of the references. None of the references teaches or suggests the utility of adding features of Applicants' claimed invention to the cited reference inventions. Thus, Applicants' claimed invention cannot be rendered obvious by any combination of these references, nor is the combination of these references proper.

It is important to note that Applicants have focussed on only one particular element of the claimed invention in response to the Examiner's rejection. Applicants in no way acknowledge the disclosure of any of the other claimed elements in any of the references, nor do Applicants concede that the chosen element is the only novel and non-obvious aspect of the claimed invention. For organizational ease and clarity in response to the Examiner's broad rejection of the claims, in which no particular reference was applied to any particular claim or element, Applicants chose to

25

CONFIDENTIAL

LML-EP 000207

rely on one novel element in order to overcome the rejection. As shown in the above discussion, one element that is missing from all cited references is enough to show that the claimed invention is novel and non-obvious.

Regarding the Examiner's contention that three separate inventions are present, and that only one set of claims should be selected for continued prosecution, Applicants respectfully traverse. There are in fact three sets of claims. The first set includes independent claim 1 and dependent claims 2-4, 6-8, 15, and 16. The second set includes independent claim 9 and dependent claims 17-20. The third set includes independent claim 11 and dependent claims 12-14, 21, and 22. The first set and the third set recite the system of the present invention as an apparatus. Although the claims differ in scope and in the particular terms used, they do not recite patentably distinct inventions. See MPEP 806.03. The second set of claims recites the system of the present invention as a process. Claiming an invention in terms of two different statutory classes of invention does not in itself render the two sets of claims patentably distinct. These differences among these claims do not satisfy the criteria for a proper restriction under MPEP 803. Applicants will respond to a formal restriction requirement from the Examiner, but respectfully decline to voluntarily cancel two sets of properly submitted claims in response to the Examiner's comments.

It is respectfully urged that all rejections have been overcome. It is therefore respectfully requested that this

26

CONFIDENTIAL

LML-EP 000208

amendment be entered, the claims allowed, and the case passed to issue. Because Applicants have compared all cited references with the recited elements of Applicants' claims, it would be appreciated if the Examiner would reject with more particularity in the future, should more rejections be forthcoming. That is, it would be helpful if the Examiner would compare cited references to the rejected claims and point out which aspects of Applicants' traversal he finds lacking. Please see MPEP 707.07 (d)-(f).

Respectfully submitted,

Jon L. Roberts
Registration No. 31,293
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182
Phone: (703) 356-7700

January 30 1995

27

CONFIDENTIAL

LML-EP 000209



<u>CERTIFICATE OF FIRST CLASS MAILING</u>

Date of Mailing: _____ <u>January 30, 1995</u> _____

I hereby certify that the Response to Office Action dated
10/28/94 (27 pages) directed to the application of Robert H. Hills
and Henry R. Nichols for a CHECKWRITING POINT OF SALE SYSTEM,
Serial No. 08/257,390, filed 06/09/94, is being deposited with the
United States Postal Service as first class mail under 37 C.P.R. §
1.8 on the date indicated above and is addressed to Commissioner of
Patents and Trademarks, Box Non-Fee Amendment, Washington, D.C.
20231.

Jon L. Roberts, Esq.
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182

CONFIDENTIAL

LML-EP 000210

# EXHIBIT  U

# Webster's Third New International Dictionary

## OF THE ENGLISH LANGUAGE

## UNABRIDGED

*A Merriam-Webster*

REG. U.S. PAT. OFF.

*Utilizing all the experience and resources of more than one hundred years of Merriam-Webster® dictionaries*

EDITOR IN CHIEF

PHILIP BABCOCK GOVE, Ph.D.

AND

THE MERRIAM-WEBSTER
EDITORIAL STAFF



MERRIAM-WEBSTER INC., *Publishers*

SPRINGFIELD, MASSACHUSETTS, U.S.A.



### A GENUINE MERRIAM-WEBSTER

The name *Webster* alone is no guarantee of excellence. It is used by a
number of publishers and may serve mainly to mislead an unwary buyer.

*Merriam-Webster™* is the name you should look for when you consider
the purchase of dictionaries or other fine reference books. It carries the
reputation of a company that has been publishing since 1831 and is your
assurance of quality and authority.

COPYRIGHT © 1993 BY MERRIAM-WEBSTER, INCORPORATED

PHILIPPINES COPYRIGHT 1993 BY MERRIAM-WEBSTER, INCORPORATED

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY
PRINCIPAL COPYRIGHT 1961

Library of Congress Cataloging in Publication Data
Main entry under title:

Webster's third new international dictionary of the English language,
unabridged: a Merriam-Webster/editor in chief, Philip Babcock
Gove and the Merriam-Webster editorial staff.
    p.    cm.
    ISBN 0-87779-201-1 (blue sturdite).—ISBN 0-87779-202-X
(carrying case). — ISBN 0-87779-206-2 (imperial buckram).
    1. English language—Dictionaries.   I. Gove, Philip Babcock,
1902–1972.   II. Merriam-Webster, Inc.
PE1625.W36 1993
423–dc20                                         93-10630
                                                    CIP

*All rights reserved. No part of this book covered by the copyrights hereon may be
reproduced or copied in any form or by any means—graphic, electronic, or mechanical,
including photocopying, taping, or information storage and retrieval systems—without
written permission of the publisher.*

MADE IN THE UNITED STATES OF AMERICA
4647AG/H9594



soleprint