**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LML PATENT CORP. | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 04-858-SLR |
| vs. | ) |
| | ) |
| TELECHECK SERVICES, INC. | ) |
| ELECTRONIC CLEARING HOUSE, | ) |
| INC., XPRESSCHEX, INC., AND | ) |
| NOVA INFORMATION SYSTEMS, INC. | ) **PUBLIC VERSION** |
| | ) |
| Defendants. | ) |
| | ) |

---

**DECLARATION OF AARON D. CHARFOOS IN SUPPORT OF**
**PLAINTIFF LML PATENT CORP.'S RESPONSIVE BRIEF ON ISSUES OF**
**CLAIM CONSTRUCTION**

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800

Russell E. Levine, P.C.
Jamie H. McDole
Aaron D. Charfoos
Edward K. Runyan
Lesley G. Smith
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Counsel for Plaintiff LML Patent Corp.*

Originally filed October 21, 2005
Public version filed October 28, 2005

## DECLARATION OF AARON D. CHARFOOS

I, Aaron D. Charfoos, declare as follows:

1.  I am an associate of the law firm of Kirkland & Ellis LLP, and counsel for plaintiff LML Patent Corp. ("LML"). I am a member in good standing of the bar of the state of Illinois, and I am admitted to practice *pro hac vice* in the United States District Court for the District of Delaware for this case. The facts set forth below are known to me personally and I could competently testify hereto if called as a witness in this action..

2.  Attached hereto as Exhibit 1 is a true and correct copy of portions of the September 28, 2005, deposition of Gary L. Tinkel.

3.  Attached hereto as Exhibit 2 is a true and correct copy of portions of the September 30, 2005, deposition of Stephen A. Schutze.

4.  Attached hereto as Exhibit 3 is a true and correct copy of definitions of "read" and "receive" from the *Webster's Third New International Dictionary* (1993).

5.  Attached hereto as Exhibit 4 is a true and correct copy of production document LML-EP 000170-9, a June 8, 1994, Preliminary Amendment.

6.  Attached hereto as Exhibit 5 is a true and correct copy of United States Patent Number 4,823,264 to Deming.

7.  Attached hereto as Exhibit 6 is the Declaration of Gary Tinkel in Support of LML's Responsive Brief Regarding Claim Construction.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on this 21st day of October 2005 in Chicago, Illinois.

Aaron D. Charfoos

2

# EXHIBIT  1
# REDACTED  IN  ITS
# ENTIRETY

# EXHIBIT 2
# REDACTED IN ITS
# ENTIRETY

# EXHIBIT 3

# Webster's
# Third
# New International
# Dictionary

## OF THE ENGLISH LANGUAGE

## UNABRIDGED

### *A Merriam-Webster*
REG. U.S. PAT. OFF.

*Utilizing all the experience and resources of more than
one hundred years of Merriam-Webster® dictionaries*

EDITOR IN CHIEF

PHILIP BABCOCK GOVE, Ph.D.

AND

THE MERRIAM-WEBSTER
EDITORIAL STAFF



MERRIAM-WEBSTER INC., *Publishers*

SPRINGFIELD, MASSACHUSETTS, U.S.A.



### A GENUINE MERRIAM-WEBSTER

The name *Webster* alone is no guarantee of excellence. It is used by a number of publishers and may serve mainly to mislead an unwary buyer.

*Merriam-Webster™* is the name you should look for when you consider the purchase of dictionaries or other fine reference books. It carries the reputation of a company that has been publishing since 1831 and is your assurance of quality and authority.

COPYRIGHT © 1993 BY MERRIAM-WEBSTER, INCORPORATED

PHILIPPINES COPYRIGHT 1993 BY MERRIAM-WEBSTER, INCORPORATED

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY
PRINCIPAL COPYRIGHT 1961

Library of Congress Cataloging in Publication Data
Main entry under title:

Webster's third new international dictionary of the English language,
unabridged: a Merriam-Webster/editor in chief, Philip Babcock
Gove and the Merriam-Webster editorial staff.
p.   cm.
ISBN 0-87779-201-1 (blue sturdite).—ISBN 0-87779-202-X
(carrying case). — ISBN 0-87779-206-2 (imperial buckram).
I. English language—Dictionaries.   I. Gove, Philip Babcock,
1902–1972.   II. Merriam-Webster, Inc.
PE1625.W36 1993
423–dc20                                        93-10630
                                                   CIP

*All rights reserved. No part of this book covered by the copyrights hereon may be reproduced or copied in any form or by any means—graphic, electronic, or mechanical, including photocopying, taping, or information storage and retrieval systems—without written permission of the publisher.*

MADE IN THE UNITED STATES OF AMERICA
4647AG/H9594

**reactant** | **1889** | **reading matter**



reading chair

# 1894

# EXHIBIT  4

08/257390

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No.                                    Group Art Unit:

Filed:  Herewith                              Examiner:

For:    CHECKWRITING POINT OF SALE SYSTEM

&ast;   &ast;   &ast;   &ast;   &ast;

**PRELIMINARY AMENDMENT**

&ast;   &ast;   &ast;   &ast;   &ast;

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

Applicants hereby submit the following preliminary amendment to the above captioned patent application.

<u>In the Specification:</u>

Please amend the specification as follows:

Page 3, between lines 2 and 3, insert the following paragraphs:

-- U.S. Patent No. 4,270,042 to Case discloses a point of sale system that requires a consumer to prepay a sum of money into a special account that is accessed only by the system.  This amount is inscribed on the card, and when a transaction is made using the system, the amount of the transaction is punched out of a designated area on the card.  This amount, along with a signature and other information, is supplied on a draft negotiable instrument, which is given to the merchant at the time of the transaction.  Thus, the Case system does away with the use of bank checks in effecting the transacion, but requires the use of

CONFIDENTIAL

LML-EP 000170

9

specialized prepaid draft negotiable instruments that must be surrendered to the merchant.

U.S. Patent No. 4,823,264 to Deming discloses a home banking system that can be used to transfer funds to different payees in satisfaction of debts incurred through previous purchases, use of utilities, etc. The system is consumer driven; that is, it is contemplated for use by the payor on a home personal computer. While the Deming system does away with the use of bank checks, account and other information must be keyed into the system. The Deming system cannot be used to read account and other information directly from an ordinary bank check and has no use for bank checks as instruments other than negotiable paper. Further, the Deming system cannot be used to transfer funds at the time of purchase and is not workable at the point of sale; the system can only be used to pay debts that have been incurred in the past and have accumulated. --.

Page 3, between lines 16 and 17, insert the following paragraph:

-- Further, some of the currently used systems described above require the use of a bank check as a negotiable instrument which must be surrendered to a merchant. Some of the systems do away with the use of a bank check altogether, but require a debit card or a specialized draft instrument to be used only with the particular system. None of these systems completely does away with the need and use for a negotiable draft instrument while using the consumer's bank check for identification and verification only. It

2

CONFIDENTIAL

LML-EP 000171

is therefore an objective of the present invention to provide such a system. ⟨⟩

Page 4, line 6, before "The system is intended" insert -- In contrast to known systems, the present invention is a merchant driven system that can be used to process a transaction at the point of sale and at the time of purchase. --.

Page 8, line 2, delete "as a means of conducting" and insert -- as negotiable instruments in effecting the --.

In the Claims:

Please cancel claims 5 and 10.

Please amend the remaining claims as follows:

1.    (Amended) A checkwriting point of sale system comprising:
a point of sale terminal adapted to receive consumer bank account information [and further adapted to accept such information from consumer cards on which the bank account information is stored];

a central computer system;

[a] first communications means integral to said point of sale terminal for electronically communicating with [a] the central computer system;

[a] memory means integral to said point of sale terminal for [allowing the temporary storage of] temporarily storing the consumer bank account information [from the consumer cards];

the central computer system having second communication means [capability adapted to receive] for receiving information from a plurality of said point of sale terminals;

3

CONFIDENTIAL

LML-EP 000172

the central computer system second communication means [allowing] enabling said central computer system to communicate with external [data bases] databases for performing a consumer bank account status [verification] search and [allowing] further enabling automated clearing house communication [with banking institutions] for [purposes of transfer of] transferring funds without using a bank check as a negotiable instrument.

2. (Amended) [A] The checkwriting point of sale system according to claim 1 wherein said point of sale terminal [is] further [adapted to read MICR] includes means for reading magnetic ink character recognition numbers appearing on a consumer check [and wherein said consumer check is used to identify] for the sole purpose of identifying and reading the consumer bank account information.

3. (Amended) The checkwriting point of sale system according to claim 1 wherein said point of sale terminal further comprises an alphanumeric display means [adapted to receive] for receiving said consumer bank account information from the memory means [of the point of sale terminal such that said point of sale terminal is adapted to display] and for displaying the consumer bank account information.

4. (Amended) The checkwriting point of sale system according to claim 1 further comprising a printer means for [adapted to receive] receiving information from the memory means of the point of sale terminal [to create point of] and for generating a transaction event sale slip[s].

4

CONFIDENTIAL

LML-EP 000173

5 6. (Amended) The checkwriting point of sale system according to claim 1 further comprising a resident third party [data base] database wherein consumer banking account status information is stored, the consumer banking account status information being [which is] used for verification of consumer banking account status.

6 7. (Amended) The checkwriting point of sale system according to claim 1 wherein the central computer system further comprises a system subscriber. [data base] database, the system subscriber database comprising information regarding merchants and service providers that are authorized to use the checkwriting point of sale system.

7 8. (Amended) The checkwriting point of sale system according to claim 7 wherein the central computer system further comprises a database comprising information regarding consumers [approved to use the checkwriting point of sale system] whose consumer banking account status is not verified as bad.

9. (Amended) A checkwriting point of sale process comprising the steps of:

a) presenting a bank check specimen to a point of sale terminal located at a merchant or service provider,

b) reading the [MICR] magnetic ink character recognition number information on the check for the sole purpose of obtaining consumer bank account information,

5

CONFIDENTIAL

LML-EP 000174

c)   storing the consumer bank account information
obtained from the check and verifying that account numbers were
accurately read at the point of sale terminal,

d)   inputting transaction event information into the
point of sale terminal,

e)   transmitting the transaction event information and
consumer bank account information to a central computer system,

[f)   verifying the authorization status of the consumer,

g)   verifying the banking account status of the consumer
via a query to a third party data base if a particular consumer is
not authorized to use the system ,

h)   sending an "approved" message to the point of sale
terminal, if the consumer's banking account status is approved for
the transaction, and]

f)   storing the transaction event information and
consumer banking account information, and

[i]g)   subsequently transmitting the transaction event
information to a bank for subsequent [ACH] automated clearing house
operations.

Please add the following new claims:

11.  (New)   A checkwriting point of sale system comprising:
a point of sale terminal adapted to receive consumer bank
account information;
a central computer system;

6

CONFIDENTIAL

first communications means integral to said point of sale terminal for electronically communicating with the central computer system; and

memory means integral to said point of sale terminal for temporarily storing the consumer bank account information;

the point of sale terminal comprising reading means for reading magnetic ink character recognition numbers on consumer bank checks for the sole purpose of eliciting consumer bank account information;

the central computer system having second communication means for receiving information from a plurality of said point of sale terminals;

the central computer system second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using a bank check as a negotiable instrument.

10    12. 9(New)    The checkwriting point of sale system according to claim 11 further comprising a printer means for receiving information from the memory means of the point of sale terminal and for generating a transaction event sale slip.

11    13. 9(New)    The checkwriting point of sale system according to claim 11 further comprising a resident third party database wherein consumer banking account status information is stored, the

7

CONFIDENTIAL

LML-EP 000176

consumer banking account status information being used for verification of consumer banking account status.

12. (New)    The checkwriting point of sale system according to claim 11 wherein the central computer system further comprises a system subscriber database, the system subscriber database comprising information regarding merchants and service providers that are authorized to use the checkwriting point of sale system.

13. (New)    The checkwriting point of sale system according to claim 4, wherein the sales slip includes means for execution by the consumer for proof of bank account access authorization.

14. (New)    The checkwriting point of sale system of claim 1, wherein the point of sale terminal further comprises means for automatically logging a point of sale terminal location and transaction date, time, and sales amount.

17. (New)    The checkwriting point of sale process of claim 9, further comprising the steps of:

    a)   verifying the status of the consumer bank account,

    b)   verifying the consumer bank account status of the consumer via a query to a third party database if the consumer bank account is verified as bad, and

    c)   sending an approval message to the point of sale terminal if the consumer's banking account status is approved for the transaction.

18. (New)    The checkwriting point of sale process of claim 9, further comprising the steps of:

8

CONFIDENTIAL

LML-EP 000177

(A) printing a transaction event sales slip following the sending of an approval message; and

(B) executing of the sales slip by the consumer as proof of bank account access authorization.

19. (New)    The checkwriting point of sale process of claim 17, further comprising the steps of:

(A) printing a transaction event sales slip following the sending of an approval message; and

(B) executing of the sales slip by the consumer as proof of bank account access authorization.

20. (New)    The checkwriting point of sale process of claim 9, further comprising the step of automatically logging point of sale terminal location information and transaction date, time, and sales amount information into the point of sale terminal.

(New)    The checkwriting point of sale system according to claim 12, wherein the sales slip includes means for execution by the consumer of proof of bank account access authorization.

(New)    The checkwriting point of sale system of claim 9, wherein the point of sale terminal further comprises means for automatically logging a point of sale terminal location and transaction date, time, and sales amount.

9

CONFIDENTIAL

LML-EP 000178

## REMARKS

This preliminary amendment is being filed as part of the above-captioned file wrapper continuation application, the parent application of which is Serial No. 07/975,717, filed November 13, 1992. No new matter has been added by this amendment. The parent application is abandoned as of the filing date of the present application. It is respectfully requested that this amendment be entered, the claims allowed, and the case passed to issue.

Respectfully submitted,

Jon L. Roberts
Registration No. 31,293
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182
(703) 356-7700

June 8, 1994

10

CONFIDENTIAL

LML-EP 000179

# EXHIBIT  5

# United States Patent [19]

Deming

[11]  Patent Number:  **4,823,264**

[45]  Date of Patent:  Apr. 18, 1989

[54]  ELECTRONIC FUNDS TRANSFER SYSTEM

[76]  Inventor:  Gilbert R. Deming, 7853 25th Ave.,
Kenosha, Wis. 53140

[21]  Appl. No.:  866,759

[22]  Filed:  May 27, 1986

[51]  Int. Cl.⁴ ............................................. G06F 15/30
[52]  U.S. Cl. ............................................. 364/408; 902/40;
902/24; 235/379
[58]  Field of Search ............... 235/379, 380; 364/408;
902/24, 39, 40

[56]  **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,852,571 | 12/1974 | Hall | 235/379 |
| 4,270,042 | 5/1981 | Case | 235/379 |
| 4,423,316 | 12/1983 | Sano | 235/379 |

### OTHER PUBLICATIONS

Lipis, Maischall, Linker, Electronic Banking, 1985, Chapter 7.

Susan Renner-Smith, Revolution in Banking, "Popular Science", Sep. 83, pp. 124–138.

*Primary Examiner*—Jerry Smith
*Assistant Examiner*—Steven Kibby

[57]  **ABSTRACT**

The present invention relates to an electronic funds transfer system that assures that funds to be electronically transferred are actually present to be transferred. This is accomplished by sending both the debit side and the credit side of the transaction as described in automated clearing house records to a payor's financial institution or data processor and comparing both records to assure the funds are present before releasing the funds to a payee. The release of funds to a payee is accomplished by the sending of a credit by an automated clearing house record to a payee's financial institution or data processor or by the printing and mailing of a check if the payee is not a member of the automated clearing house.

3 Claims, 1 Drawing Sheet.





*Fig. 1*

4,823,264

1

# ELECTRONIC FUNDS TRANSFER SYSTEM

## BACKGROUND OF THE INVENTION

This invention relates to an electronic transfer of funds system and more specifically to data processing methodology and apparatus for an improved electronic funds transfer system that assures that funds to be transferred are actually present to be transferred.

One growing area of electronic funds transfer is the use of home or personal computers to pay bills. This area is often called home banking.

One problem associated with home banking is that while it is possible for the individual user, called a payor, to connect electronically with the financial institution's computer which maintains the payor's account and request that certain bills be paid, the actual payment of payor's bills by the financial institution is a manual operation, or an electronic operation which requires a large mainframe computer.

Smaller financial institutions may not be able to participate in the area of home banking due to the high capital cost of a large mainframe computer, the associated hardware and software, and the manual operations necessary to process home banking information.

The present invention allows any size institution to participate in the electronic transfer of funds or as it is more commonly known, home banking.

## SUMMARY OF THE INVENTION

The present invention is a system for the electronic transfer of funds. The system comprises a means for a payor to designate payor and payee information, including, a transaction amount payor account code is to be debited and payee account code is to be credited and a personal identification code of the payor, means to transfer payee and payor information to a central receiving facility, means for entering payee information including payee account code, payee account code destination and payor information including, payor account code, payor account code destination, payor's personal identification number and the transaction amount into a record capable of being processed by an automated clearing house, means for transmitting the record to an automated clearing house for processing and further transmission to payor account code destination, means for receiving the processed automated clearing house record at the payor account code destination, means for verifying that the transaction amount is in the payor account code and if the transaction amount is present, debiting the payor account code with the transaction amount, means for payor account code destination to then designate payee account code destination in the automated clearing house record, means for transmitting the automated clearing house record to the automated clearing house for further transmission to payee account code destination, and means for receiving the automated clearing house record at payee account code destination and crediting the payee account code with the transaction amount.

The present invention assures payor's financial institution and payee that payor has sufficient funds on deposit in payor's account to cover the transaction amount. The present invention also allows payors and their financial institutions, regardless of size, to utilize the services of an automated clearing house.

2

## BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 is a flow chart illustration of an electronic funds transfer system.

## DETAILED DESCRIPTION OF THE INVENTION

Personal computers are a phenomenon that have found many varied areas of use. One area, whose use had been predicted to grow dramatically, that of the electronic transfer of funds, more popularly known as home banking, has not grown as predicted, perhaps due to a lack of assurance on the part of the person or entity being paid that such electronically transferred funds are valid, and the lack of assurance on the part of the payor's financial institution that the funds are on deposit.

The present invention is a method which will permit an individual to electronically transfer funds from the individual's account which is maintained at a financial institution to either: (a) the financial institution of the person or entity to be paid; (b) directly to the person or entity to be paid; or (c) to a credit printing facility which would generate a paper check for transmission, such as mailing, to the person or entity to be paid.

To simplify the terminology a payor is the person or entity transferring the funds out of payor's account code to pay a person or entity called a payee. Funds are moved from payor's account code, creating a debit to payor's account code and are eventually placed in payee's account code, creating a credit to payee's account code.

Using a personal computer and the method for the electronic transfer of funds of the present invention, it will be possible to make an electronic transfer of funds without being directly electronically connected, for example via a modem (modulator - demodulator) with the financial institution or data processor which maintains the payor's account code.

A payor starts by entering pertinent payor and payee information including a transaction amount for the electronic transfer of funds, from payor's account code to payee's account code, into a personal computer having a program able to accept such information.

Such payee information would include at least the location of the payee and the payee account code to which the transaction amount is to be applied. The word location means a physical location of the payee, payee's account code destination for the transaction amount, or both.

Other pertinent payor and payee information may include:

(1) a physical address and the name of the payee;

(2) a routing and transfer number (RTN) of the payee;

(3) an account number for the payor as assigned by the payee;

(4) an effective date for the transaction;

(5) a description of the transaction; and

(6) a personal identification code (or number (PIN)) assigned to the payor by payor's financial institution.

The entry of payor's personal identification code, PIN, is required payor information that must be entered by payor to prevent the unauthorized electronic transfer of funds.

The pertinent payor and payee information entered by the payor into payor's personal computer, having software able to accept and process such pertinent

4,823,264

3

payor and payee information, is then transferred to a centralized receiving facility or data collector station.

This pertinent information or EFT data (Electronic Funds Transfer data) is either received at the central receiving facility and directly passed to the National Automated Clearing House Association (NACHA) or the EFT data is processed and formatted into a NACHA record that is passed to the NACHA.

The present invention requires the use of the NACHA and follows its rules and regulations. The NACHA assigns Routing and Transfer Numbers to those who utilize the NACHA.

Normally, when an NACHA record is being processed, the debit side (debit being funds removed from payor's account code) of the transaction is routed by an RTN to payor's financial institution's designated data processor. The data processor of the financial institution will then determine if there are sufficient funds to approve the transaction, called good funds, or non-sufficient funds, NSF, prompting denial of the transaction.

Also normally, when an NACHA record is being processed, the credit side (credit being funds added to payee's account code) of the transaction is routed by an RTN to payee's financial institution or the financial institution's designated date processor. Such a transaction does not assure payor's financial institution or data processor and payee's financial institution or data processor that such a transaction is good funds before the actual transaction occurs.

The present invention avoids this problem by placing a Pseudo Routing and Transfer Number (PRTN) into the position in an NACHA record normally occupied by the RTN of payee's financial institution or data processor. This PRTN is assigned to payor's financial institution or data processor and use of the PRTN causes the credit side of the transaction to be routed to payor's financial institution or date processor. At this time no funds have yet been released to the payee or payee's account code..

Other pertinent payor and payee information, such as a payee RTN, is placed in the NACHA record in a position not needed for NACHA processing, payee account code destination processing or both. Such payor and payee information is later retrieved from the NACHA record and placed or formatted into those positions needed for NACHA processing, payee account code destination or both.

The payor's financial institution or date processor now compares the debit side of the transaction with the credit side of the transaction. If there are non-sufficient funds in payor's account code the EFT transaction will be cancelled and the payor will be notified that the EFT transaction was cancelled due to insufficient funds. If there are good funds the EFT transaction will be released to the payee or payee's account code destination.

To release these funds to the payee, the RTN of the payee is now entered into the proper position into the NACHA record by payor's financial institution or data processor, so that the credit side of the transaction is routed to payee or payee's financial institution or data processor when the NACHA record is again passed or transmitted to the NACHA for processing.

If no RTN is available for payee, the RTN for a credit printing facility is substituted. Such a service will generate a paper check for mailing to the payee.

FIG. 1 illustrates one flow chart for the present invention. Payors 10 enter pertinent informatin into a

4

computer. This pertinent information is then transferred or transmitted 12, for example via a modem, to a central receiving facility 14. The central receiving facility then passes, directly or with some processing, the pertinent payor and payee information to the NACHA 16 as an NACHA record. The NACHA then routes both the debit side and the credit side of the transactions to payor's financial institution or data processor 18. The credit and debit side of the transaction are compared to determine if payor has sufficient funds to complete and process the transaction.

If payor's funds are insufficient 19, the transaction is not allowed and payor is notified of that fact, by transmitting a message 20 to payor.

If payor's funds are sufficient 22, the transaction is allowed and the RTN of payor's financial institution or data processor is designated 24. If payee's financial institution or data processor RTN is not available, the RTN is that of a credit printing facility 26 which will then print a check ready to be mailed 28 to payee who has no NACHA designated RTN.

The above described arrangement is merely illustrative of the principles of the present invention. Numerous modifications and adaptations thereof will be readily apparent to those skilled in the art without departing from the spirit and scope of the present invention.

I claim:

1. In combination in a system for electronic transfer of funds, the system comprising means for a payor to designate payee and payor information, including a transaction amount a payor account code is to be debited and payee account code is to be credited and a personal identification code of the payor, means to transfer payee and payor information to a central receiving facility, means for entering payee information, including payee account code, payee account code destination and payor information, including payor account code, payor account code destination, payor's personal identification code and the transaction amount into a record capable of being processed by an automated clearing house, means for transmitting the record to an automated clearing house for processing and further transmission to payor account code destination, means for receiving the processed automated clearing house record at the payor account code destination, means for verifying that the transaction amount is in the payor account code and if the amount is present, debiting the payor account code with the transaction amount, means for the payor account code destination to then designate the payee account code destination in the automated clearing house record, means for transmitting the automated clearing house record to the automated clearing house for further transmission to to the payee account code destination, means for receiving the automated clearing house record at the payee account code destination and crediting the payee account code with the transaction amount.

2. A combination, as in claim 1, further comprising means for notifying payor that the transaction amount is greater than amount in payor's account code.

3. A combination, as in claim 2, further comprising means for payor account code destination to designate a credit printing facility for the printing of a credit payable to payee.

* * * * *

# EXHIBIT  6
# REDACTED  IN  ITS
# ENTIRETY

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of October, 2005, I electronically filed the foregoing document, **PUBLIC VERSION OF DECLARATION OF AARON D. CHARFOOS IN SUPPORT OF PLAINTIFF LML PATENT CORP.'S RESPONSIVE BRIEF ON ISSUES OF CLAIM CONSTRUCTION**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Collins J. Seitz, Jr., Esq.
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19801

William J. Marsden, Jr., Esq.
Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 28th day of October, 2005, the foregoing document was served via email and via federal express on the following non-registered participants:

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Mark C. Scarsi, Esq.
Vision L. Winter, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

_____/s/ Mary B. Matterer_____
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS
& WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

Attorneys for Plaintiff LML PATENT CORP.