IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP., <br><br> Plaintiff, <br><br> v. <br><br> TELECHECK SERVICES, INC., ELECTRONIC CLEARING HOUSE, INC., XPRESSCHEX, INC. and NOVA INFORMATION SYSTEMS, INC., <br><br> Defendants. | C.A. 04-858 (SLR) |

**ECHO AND XPRESSCHEX'S OBJECTIONS
TO SPECIAL DISCOVERY MASTER NO. 5**

Pursuant to Fed. R. Civ. P Rule 53(g)(2)-(g)(5), defendants Electronic Clearing House, Inc. and Xpresschex, Inc. (collectively hereinafter "ECHO") hereby object to certain rulings rendered by the Special Discovery Master ("the SDM") made at the October 12, 2005 SDM hearing, and set forth in SDM Order No. 5, regarding certain items listed on ECHO's privilege log as set forth hereinbelow.

**I.   NATURE AND STAGE OF THE PROCEEDING**

Pursuant to the Scheduling Order, the parties exchanged privilege logs and have participated in three (3) separate conferences with the SDM regarding privilege log issues. Per the SDM's August 4, 2005 order, letter briefs were submitted regarding LML's issues with ECHO's privilege log items and a hearing was held on October 12, 2005 with the SDM. At the hearing, the SDM reviewed thirty-nine (39) items from ECHO's privilege log complained of by LML and ruled that thirty-two (32) of the thirty-nine (39) items no longer were protected by the attorney-client privilege and/or work

1

product doctrine. *See* **Ex. A,** *SDM Order No. 5,* dated October 24, 2005, and accompanying *"Standards"* promulgated by the SDM.

ECHO respectfully submits that the SDM disregarded applicable case law in making the aforementioned rulings, and that the documents are privileged and/or protected by the work product doctrine as a matter of law.

## II.     FACTUAL BACKGROUND

ECHO first learned of United States Patent No. 5,484,988 (the "'988 patent") prior to the acquisition of Rocky Mountain Retail Systems, Inc. ("RMRS") in or about January 2000. While conducting its due diligence, ECHO learned that ChequeMark Systems, now LML Patent Corp. ("LML"), had contacted RMRS in 1997 regarding RMRS's purported infringement of the '988 patent along with an offer to license the '988 patent. No license was entered into between RMRS and ChequeMark Systems but nevertheless, in an abundance of caution, ECHO sought and eventually obtained an opinion of counsel dated May 5, 2000, regarding the invalidity of the '988 patent from the law firm of Pretty, Schroeder & Poplawski, P.C., co-authored by Denise McKenzie, Esq. and Robert Schroeder, Esq. ("the '988 opinion") (**Ex. H**). In sum, the '988 opinion concluded that the claims of the '988 patent were invalid for obviousness under 35 U.S.C. §103 based upon prior art. Specifically, the opinion cited U.S. Patent No. 4,758,714 ("the Carlson patent") along with numerous references published by banking industry sources prior to the filing date of the '988 application (June 9, 1994).

On May 23, 2001, nearly a year after ECHO obtained the '988 opinion, LML's patent counsel notified the CEO of ECHO, Mr. Jody Barry, regarding both the '988

2

patent and the '528 patent (issued on December 26, 2000).[1] LML alleged that ECHO's products infringed upon its patents and sought to engage in licensing discussions. Consistent with ECHO's handling of the earlier '988 patent matter, ECHO procured an opinion of counsel dated March 7, 2003, from the law firm of Sidley Austin Brown & Wood, LLP regarding the invalidity of the '528 patent co-authored by Denise McKenzie, Esq. and Paul Meier, Esq. ("the '528 opinion"). In addition to the prior art mentioned in the '988 opinion, the '528 opinion also cited U.S. Patent Nos. 5,053,607 and 5,590,197 to reach the conclusion that the '528 patent was invalid for obviousness under 35 U.S.C. §103.

This patent infringement action was filed on July 14, 2004, by LML against ECHO, Telecheck Services, Inc. and NOVA Information Systems, Inc. alleging that each of the defendants' systems infringe upon the '988 patent, the '528 patent and United States Patent No. 6,283,366 (the "'366 patent"). The October 22, 2004 Scheduling Order provided for defendants to "advise LML by April 29, 2004 whether it intends to rely on advice of counsel in defense to LML's charge of willful infringement." Accordingly, on April 29, ECHO informed LML of its intent to rely on the advice of counsel to defend against LML's charge of willful infringement for the '988 patent and the '528 patent. As a result, it produced over twenty (20) documents from its privilege log that it believed to fall within the scope of waiver stemming from its reliance on the advice of counsel.

At the October 12, 2005 hearing, the SDM ruled that any attorney client privilege and/or work product immunity that may have attached to document numbers 2-3, 9, 14-

---

[1] The '988 patent and the '528 patent are unrelated patents; the '528 patent is not a reissue, continuation, continuation-in-part, divisional, or otherwise related by parentage to the '988 patent.

3

16, 18-21, 24-31, 35, 44, 49,53-56, 58 and 63 were waived based on ECHO's reliance on the advice of counsel to defend against LML's allegations of willful infringement. *See* **Ex. E**, pp. 31:16-40:2 [document 2]; 40:3-48:2 [document 3]; 48:3-55:8 [document 9]; 64:22 – 75:4 [document 14]; 79:22-80:1 [document 15]; 81:18-86:2 [document 16]; 95:17-101:10 [document 18]; 101:11-106:9 [documents 19-21]; 106:12-108:20 [document 24]; 108:21-113:21 [documents 25-26]; 113:22-120:5 [documents 27-31]; 122:7-124:21 [document 35]; 128:22-129:8 [document 44]; 129:22-146:8 [document 49]; 146:9-150:8 [document 53]; 152:3-157:2 [document 54]; 159:5-160:9 [document 56]; 160:17-19 [document 58]; and 179:6-185:1 [document 63]. *See also* **Ex. A**.[2]

ECHO has respectfully objected to the rulings, based on their faulty legal basis.

### III.    LEGAL BACKGROUND

#### A.    The Court Must Review the SDM's Privilege Log Rulings *De Novo*

Rule 53 of the Federal Rules of Civil Procedure governs objections to a discovery master's orders. The standard for review for issues of law decided by a master is as follows: "The Court must decide de novo all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(g)(5). Issues regarding privileges afforded to documents and communications are issues of law. *See, e.g., U.S. v. Massachusetts Institute of Technology*, 129 F.3d 681, 683 (1st Cir. 1997) ("an appeal respecting a privilege claim . . . pos[es] an abstract issue of law"). Accordingly, the Court must review the SDM's privilege log rulings *de novo*.[3]

---

[2] If the Court seeks to examine any of the documents listed on ECHO's privilege log, they can be made available for *in camera* inspection.

[3] Pursuant to Fed. R. Civ. P. 53(g)(3), fact findings are also reviewed *de novo* where, as here, the parties have not stipulated otherwise. In any event, the rulings made by the SDM contained only conclusions of law.

### B. Reliance Upon an Opinion of Counsel Does Not Result in Waiver of Work Product That Was Not Disclosed to the Client

The scope of the waiver of privilege associated with reliance on an opinion of counsel relates to "the alleged infringer's state of mind." *Cytyc Corp. v. Autocyte, Inc.*, C.A. 99-610-SLR, Mem. Order at 2-3 (D. Del., Sept. 13, 2000) (**Ex. B**). With this in mind, the precedential decisions governing this case hold that reliance upon an opinion of counsel does not result in waiver of work product that was not disclosed to the client. Specifically, as held in *Cytyc v. Autocyte*:

> [D]iscovery is appropriately directed to the exchange of information (including data, mental impressions, conclusions, opinions, or legal theories) between client and counsel, as well as
>
> > facts relating to when [the client] sought the advice, what [the client] knew about the independence, skill and competence to provide the opinions, what [the client knew about the nature and extent of analysis performed by [counsel], and what [the client] knew and had concluded about the credibility, value and reasonableness of the opinions.
>
> [*Thorn EMI North America, Inc. v. Micron Tech.*, 837 F. Supp. 616, 621 (D. Del. 1993)]. In sum, <u>counsel's work product generally is not relevant to a client's state of mind unless communicated to the client</u>.

*Cytyc v. Autocyte*, op. at 2 (emphasis added).

This is consistent with other opinions from this Court. *See, e.g., Thorn v. Micron*, 837 F. Supp. at 622 ("Counsel's mental impressions, conclusions, opinions, or legal theories are not probative of [the client's] . . . state of mind unless they have been communicated to the client."); *Rhodia Chimie v. PPG Indus., Inc.*, 218 F.R.D. 416, 421 (D. Del. 2003) (holding that attorney work produce was not waived).[4]

---

[4] *But see Mosel Vitelic Corp. v. Micron Technology, Inc.*, 162 F. Supp. 2d 307, 311 (D. Del. 2000); *Novartis Pharma Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 396 (D. Del.

5

Accordingly, reliance upon an opinion of counsel does not result in waiver of work product not disclosed to the client.

### C. Reliance Upon an Opinion of Counsel Results in a Limited Subject Matter Waiver of the Attorney-Client Privilege

The Court has previously held that "the scope of a party's voluntary waiver [of the attorney-client privilege based on reliance on an opinion of counsel] . . . is defined by <u>the subject matter discussed in the opinion letters</u>." *Allergan Inc. v. Pharmacia Corp.*, Civ. A. No. 01-141-SLR, 2002 WL 1268047, *2 (D. Del. May 17, 2002) (emphasis added) (**Ex. C**). The Court reasoned that "[i]n order to determine whether the alleged willful infringer 'reasonably and in good faith relied on' the advice rendered by opinion counsel, it is appropriate to test the knowledge of the alleged willful infringer concerning <u>the subject matter of the opinion</u>." *Id.* (emphasis added) (quoting *Thorn v. Micron*, 837 F. Supp. at 621). *See also Cytyc v. Autocyte*, op. at 3 (waiver pertains only "to the subject matter of the formal opinion letters").

The "subject matter" of the formal opinion letters is properly characterized by the substantive topics covered therein, such as infringement or validity. Where the formal opinion letter addresses only infringement, and not validity, then the "subject matter" of the waiver is only infringement, and not validity. *See Sharper Image Corp. v. Honeywell Int'l Inc.*, 222 F.R.D. 631, 638 (N.D. Cal. 2004) ("Because Sharper Image has not persuaded the court that expanding the subject matter scope of the waiver to include communications about validity or enforceability likely would yield evidence of real

---

2002). Both of these cases were considered and rejected by the Court in *Rhodia Chimie v. PPG Indus.*, 218 F.R.D. at 419-20.

probative consequence on the issue of willfulness, the court will limit the waiver to communications that address infringement."). Stated more globally:

> Subject matter waiver does not mean all opinions as to all possible defenses, but does mean all opinions of the specific issue of advice asserted as the defense to willfulness, be it infringement, validity, enforcement, or combination.

*AKEVA L.L.C. v. Mizuno Corp.*, 243 F.Supp.2d 418, 420, 422 (M.D.N.C. 2003); *see also Verizon California Inc. v. Ronald A. Katz Technology Licensing, L.P.*, 266 F. Supp. 2d 1144, 1148 (C.D. Cal. 2004) (quoting and adopting same); *Micron Separation, Inc. v. Pall Corp.*, 159 F.R.D. 361, 365 n.8 (D. Mass. 1995) (reliance on counsel's advice regarding validity does not waive privilege with respect to advice regarding infringement); *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 421-22 (E.D. Pa. 2001) (waiver scope related only to invalidity, and not to noninfringement or unenforceability).

Finally, the "subject matter" of the waiver does not include attorney advice relating to trial strategy, litigation procedures, or non-litigation response options and the like, none of which relate to the substantive "opinion of counsel" advice upon which the client is relying. *See Cytyc v. Autocyte*, op. at 4 n.2 ("Trial strategy likewise is not discoverable, as opposed to the substantive issues of infringement and validity.").

### D. Reliance Upon an Opinion of Counsel Does Not Result in a Waiver of Communications Occurring After the Date of the Relied-Upon Opinion

The Court has previously held that when there is a waiver of the attorney-client privilege due to reliance on an opinion of counsel, "the alleged infringer [should] disclose all of the information it possessed <u>prior to or at the time it obtained opinions of counsel</u> as to the subject matters discussed in such opinions." *Allergan*, 2002 WL 1268047, at *2

(emphasis added). Accordingly, communications occurring after the date of the relied-upon opinion of counsel do not fall within the scope of the waiver.

## IV. DISCUSSION

ECHO provides below its arguments as to why certain of its privilege log documents need not be disclosed to LML. The category headings below pertain to discreet categories of the privilege log documents. Some of the documents fall within more than one of the categories, and thus, for those documents, there are multiple reasons why the document need not be disclosed. The annotated privilege log (**Ex. D**) summarizes the reasons with regard to each individual document.

### A. Documents Protected Under the Work Product Doctrine (Documents 18 and 24)

Any privilege and/or immunity attached to documents 18 and 24 contained in ECHO's July 28, 2005 privilege log (**Ex. D**[5]) were ruled by the SDM as being waived. *See* Transcript of October 5 Hearing (**Ex. E**) at pp. 96:19 – 101:10 [document 18] and 106:12 – 108:20 [document 24]. *See also* **Ex. A**.

On their face, documents 18 and 24 are pure attorney work product. Neither of these documents were communicated to ECHO personnel and were sent only to the listed recipients—attorneys at the law firm of Sidley Austin & Wood, LLP. No ECHO personnel ever possessed these documents. Pursuant to Fed. R. Civ. P. 34, ECHO's litigation counsel retrieved these responsive documents from his own archived files.

---

[5]ECHO's privilege log, attached as **Exhibit D**, has been annotated for purposes of filing these Objections by adding a new column (the far right column entitled "Objections"), which indicates, for each document at issue here, the reasons for which the document need not be produced.

Accordingly, these work product documents are outside of the parameters defined by this Court in *Cytyc v. Autocyte*.[6]

### B. Documents Outside the Scope of the Waiver Effected Due to Reliance of Advice of Counsel

#### 1. Non-Substantive Procedural Advice (Documents 2-3, 9, 18, 35, and 44)

Documents 2-3, 9, 18, 35, and 44 concern general legal advice from outside counsel regarding the procedures available to defend against patent infringement allegations and/or prospective actions ECHO may take regarding the same. The substance of the communications does not mention the analysis and/or ultimate conclusions of either the '988 patent invalidity opinion or the '528 invalidity opinion. *See Cytyc v. Autocyte,* op. at 4 n.2. Accordingly, the documents are outside of the scope of the waiver.

#### 2. Infringement Subject Matter (Documents 14-16, 19-21, and 49)

Documents 14-16, 19-21, and 49 deal solely with infringement issues and are not related to the invalidity of the patent-in-suit; thus, they do not relate to the subject matter of the relied-upon opinion of counsel.

Documents 19-21 concerns information describing an ECHO product accused of infringing the patent-in-suit. (*See* **Ex. D**). Clearly, the marketing and service options for

---

[6] It has come to our attention that, with regard to ECHO Privilege Log document 16, the text Special Master Order No. 5 is inconsistent with the SDM's ruling at the October 12 hearing. We have prepared, and will promptly send to the SDM, a letter bringing this to the attention of the SDM. The Order indicates that both the attorney client privilege and work product protection were waived for document 16, but at the October 12 hearing, the SDM ruled that "16 is not waived." *See* October 12 Hearing Transcript, p. 95:16. To the extent that the SDM does not correct the Order to reflect that document 16 need not be produced, ECHO herein objects to the SDM's ruling with regard to document 16 for the reasons stated above with regard to work product documents not communicated to ECHO.

9

an accused product have no relevance to an analysis regarding the validity of the patent being asserted. *See Allergan Inc.*

With regard to document 49, it is an independent opinion of counsel regarding non-infringement obtained by an ECHO client (VISA) having an identical legal interest to that of ECHO.[7]

Documents 14-16 are communications involving ECHO's counsel regarding VISA and noninfringement (not validity).

### 3. Non-Relevant Prior Art (Documents 24, 27-31, 54, and 56)

Documents 24, 27-31, 54, 55 and 56 relate to potential prior art and non-validity issues which were not the basis of the invalidity opinions and did not contribute to the ultimate conclusions stated therein.

### C. Documents Relating to the Dismissed U.S. Patent No. 6,164,528 (Documents 2-3, 9, 14-16, 18-21, 24-31, 35, 44, 49, 53-54, 56, 58 and 63)

On or about September 27, 2005 the '528 patent and the '366 patent were dismissed from this action with prejudice. *See* D.I 266. The dismissal of the '528 and

---

[7]Document 49 is dated March 27, 2001 and is described as a "[m]emorandum re legal advice re patent(s)-in-suit" and was authored by Johnathan O. Scott, Esq., counsel for Visa USA, Inc. an ECHO client. At the time the disclosures were made ECHO and Visa USA, Inc. shared an identical legal interest: It does not relate to issues of validity. Indeed, ECHO has had an ongoing relationship with Visa USA, Inc. since December 2000, engaging in a joint pilot program for check processing (*see* **Ex. F**). ECHO continues to be the primary third-party check processor under the VISA POS check service offered by Visa USA, Inc. to its member banks and merchants -- a system alleged by LML to infringe the patent-in-suit. The common interest doctrine is an exception to the general rule that the attorney-client privilege will be waived following disclosure of privileged materials to a third party. *Union Carbide Corp. v. Dow Chem. Co.*, 619 F. Supp. 1036, 1047 (D. Del. 1985). Indeed, communications between clients and attorneys "allied in a 'common legal cause'" are privileged, because it is reasonable to expect that parties pursuing common legal interests intended resultant disclosures to be "insulated from exposure beyond the confines of the group." *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996); *Corning, Inc. v. SRU Biosystems*, C.A. 03-6333-JJF, Mem. Order at 3 (**Ex. G**).

'366 patents from this action with prejudice, and the consequent withdrawal of ECHO's reliance on its opinion of counsel regarding the '528 patent, means that there can be no waiver of attorney-client privileged information or work-product materials based on ECHO's production of its '528 patent opinion of counsel.  This is supported by the concept of relevance, the policy behind waiver of privilege in the context of reliance on opinions of counsel, and the work-product doctrine.

### 1. The Documents Regarding the '528 Patent Are Not Relevant

From the standpoint of relevance, the '528 patent is no longer an issue in the case, thus information pertaining to the '528 patent is no longer relevant to this case, unless they independently relate to an issue that is still part of the case.  *See, e.g., Walker v. Mortham*, 158 F.3d 1177, 1182 (11th Cir. 1998) ("[B]ecause [the court] had dismissed all disparate impact claims before trial, employment testing evidence was irrelevant."); *Bowman v. Norfolk Southern Rwy Co.*, 66 F.3d 315, 1995 WL 550079, *5 (4th Cir. 1995) ("The district court dismissed Bowman's claim of negligent entrustment prior to trial . . . . After that claim was dismissed, Whitaker's accident record ceased to be relevant."); *Ballou v. Univ. of Kansas Med. Ctr.*, 159 F.R.D. 558, 560 (D. Kan. 1994) ("The video and transparencies here at issue might have been relevant to the dismissed sexual harassment claim of plaintiff, but they do not appear relevant to the retaliation claim."). Indeed, the stated purpose of the Stipulation and Order of Dismissal (signed by all the parties as well as Judge Robinson) was "to streamline and narrow issues for trial," see Case 1:04-cv-00858-SLR LML Patent Corp. v. Telecheck Services Docket No. 266 at page 1, and the policy behind settlement of claims is to reduce issues and costs.

Accordingly, issues pertaining to the '528 patent are no longer relevant in the case, and discovery on those issues should not be permitted.

### 2. Without Reliance on the '528 Patent Opinion of Counsel, There is No Waiver of Attorney-Client Privilege or Work-Product

Because the '528 patent is no longer at issue in the case, and ECHO is not relying on the '528 opinion of counsel, there can be no waiver of attorney-client privilege or work-product due to ECHO's prior production of the '528 opinion. Specifically, the entire concept of "waiver" due to reliance on an opinion of counsel depends upon the party actually relying on the advice of counsel. Without reliance, there is no waiver. The case law in this Court unanimously supports this point. In *Thorn EMI N. America, Inc. v. Micron Technology, Inc.*, 837 F. Supp. 616, 621 (D. Del. 1993), the Court made clear that a waiver of attorney-client privilege is waived only where the party relies on an opinion of counsel. In fact, the entire *Thorn* decision was directed to "the extent to which a contention of good faith reliance of the advice of counsel waives the privilege for information normally protected from disclosure as work product or an attorney-client communication." *Id*. (Emphasis added.) *Allergan v. Pharmacia*, 2002 WL 1268047, similarly premises the entire waiver doctrine on actual reliance on the opinion of counsel: "In order to determine whether the alleged willful infringer 'reasonably and in good faith relied on' the advice rendered by opinion counsel, it is appropriate to test the knowledge of the alleged willful infringer concerning the subject matter of the opinion." *Allergan* at *2 (quoting *Thorn*, 837 F. Supp. at 621) (emphasis added). Likewise, *Cytyc v. Autocyte* sets as a prerequisite to any waiver of privilege the actual reliance on the opinion of counsel: "The question before the court in this discovery dispute is whether defendant,

by relying on the opinions of counsel to respond to a claim of willful infringement, has waived not only its attorney-client privilege, but the protection afforded to attorney work product as well." Op. at 1 (holding that "the focus of the willfulness inquiry remains the same, that is, the state of mind" and that "counsel's work product generally is not relevant to a client's state of mind unless communicated to the client.").

Accordingly, without reliance on the '528 patent opinion—and there is none here because that patent is no longer in suit—then there is no waiver regarding the subject matter of that patent.

Accordingly, documents 2-3, 9, 14-16, 18-21, 24-31, 35, 44, 49, 53-54, 56, 58, which relate to the '528 patent, need not be produced.

**D.    Reliance Upon an Opinion of Counsel Does Not Result in a Waiver of Communications Occurring After the Date of the Relied-Upon Opinion (Documents 2-3, 9, 14-16, 18-21, 24-31, 35, 44, 49, 58 and 63)**

As described above, there is no waiver for communications made "prior to or at the time it obtained opinions of counsel." *Allergan*, 2002 WL 1268047, at *2. Accordingly, communications occurring after the date of the relied-upon opinion of counsel— May 5, 2000, the date of the '988 opinion—do not fall within the scope of the waiver. Those documents are: documents 2-3, 9, 14-16, 18-21, 24-31, 35, 44, 49, 58, and 63. *See* **Ex. D**.

13

## V.  CONCLUSION

For the foregoing reasons, ECHO respectfully requests this Court to reverse the aforementioned rulings of the SDM and maintain the attorney client privilege and/or work product immunity attached to said documents.

        /s/ Francis DiGiovanni
Francis DiGiovanni, Esq. (#3189)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801
Phone: 302-658-9141
Fax: 302-658-5614
Attorneys for Electronic Clearing House,
Inc. and XpressChex, Inc.

OF COUNSEL:

Robert Jacobs, Esq. (Pro Hac Vice)
Mark Mizrahi, Esq. (Pro Hac Vice)
Don H. Min, Esq. (Pro Hac Vice)
BELASCO JACOBS & TOWNSLEY, LLP
6100 Center Drive, Suite 630
Los Angeles, CA 90045
Phone: (310) 743-1188
Fax:  (310) 743-1189

Dated:  November 2, 2005

426143v1

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on November 2, 2005, a true and correct copy of the foregoing document was caused to be served on the attorneys of record at the following addresses:

**VIA E-MAIL AND HAND DELIVERY**
Richard K. Herrmann, Esquire
Morris James Hitchens
 & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19801

**VIA E-MAIL AND HAND DELIVERY**
William J. Marsden, Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114

**VIA E-MAIL AND HAND DELIVERY**
Richard D. Kirk, Esquire
The Bayard Firm
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE  19899

**VIA E-MAIL**
Russell E. Levin, Esquire, P.C.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

**VIA E-MAIL**
Mark C. Scarsi, Esquire
O'Melveny & Myers LLP
400 S. Hope Street
Los Angeles, CA  90071

**VIA E-MAIL**
Dale M. Cendali, Esquire
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036

/s/  Francis  DiGiovanni
Francis DiGiovanni (#3189)

355513_1