IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LML PATENT CORP.,

Plaintiff,

v.

TELECHECK SERVICES, INC.,
ELECTRONIC CLEARING HOUSE, INC.,
XPRESSCHEX, INC. and NOVA
INFORMATION SYSTEMS, INC.,

Defendants.

C.A. 04-858 (SLR)

**REDACTED / PUBLIC VERSION**

---

**NOVA INFORMATION SYSTEMS, INC.'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

October 28, 2005

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE 19899
(302) 429-4208
rkirk@bayardfirm.com
Attorneys for defendant,
NOVA Information Systems, Inc.

OF COUNSEL:
Mark C. Scarsi
Vision L. Winter
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
(213) 430-6000

# TABLE OF CONTENTS

**Page(s)**

I.    NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II.   SUMMARY OF ARGUMENT ....................................................................................... 2

III.  FACTUAL BACKGROUND ........................................................................................... 4

    A.   The '988 Patent Claims – Common to All Defendants. ........................................ 4

    B.   The '988 Patent System and Prior Art Systems – Common to All
        Defendants ............................................................................................................ 6

    C.   Prosecution History of the '988 Patent -- Common to All Defendants .................. 7

        1.   The "Negotiable Instrument" Limitations ................................................. 7

        2.   The "Any Bank Check" Limitations .......................................................... 8

        3.   Applicants' Amendments and Arguments Regarding the "Any
            Bank Check" and "Negotiable Instrument" Limitations Secured
            Allowance of the Claims ........................................................................... 9

    D.   The Nova Electronic Check Service .................................................................... 10

IV.   SUMMARY JUDGMENT OF NON-INFRINGEMENT IS LEGALLY PROPER
    IN THIS CASE .............................................................................................................. 12

    A.   Summary Judgment of Non-Infringement Is Proper Where the Material
        Facts About the Accused Device Are Not in Dispute ........................................... 12

    B.   LML Bears the Burden of Proving Infringement. ............................................... 13

V.    AS A MATTER OF LAW, NOVA DOES NOT INFRINGER THE '988
    PATENT UNDER ANY THEORY OF INFRINGEMENT ........................................... 14

    A.   ████████████████████████████████████████████████████
        ████████████████████████████████████████████████████████
        ████████████████████████████████████████████████████████
        ████████████████████████████████████████████████████████
        ██████████████████████████ ......................................................... 15

        2 ████████████████████████████████████████
        ██████████████████████ ............................................................. 17

**TABLE OF CONTENTS**
(continued)

Page(s)

a.    ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████ 22

B.    Substantial Differences Between the Nova Electronic Check
Service and the '988 Patent Preclude a Finding of
Infringement Under the Doctrine of Equivalents .................................................. 23

1.    LML is estopped from trying to apply the doctrine of equivalents
to the asserted claims ................................................................................. 24

2.    Even if the doctrine of equivalents is applied, LML cannot claim
an equivalent which would vitiate the claim limitations ........................... 25

a.    "Negotiable Instrument" ................................................................. 27

b.    "Sole purpose" ................................................................................ 28

c.    "Any bank check" ........................................................................... 28

d.    Visual verification .......................................................................... 28

VI.    CONCLUSION ................................................................................................................ 29

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Allen Engineering Corp. v. Bartell Industries, Inc.*,
  299 F.3d 1336 (Fed. Cir. 2002)...................................................................................... 28

*Avia Group International, Inc. v. L.A. Gear California, Inc.*,
  853 F.2d 1557 (Fed.Cir. 1988)....................................................................................... 15

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).................................................................................................. 15, 16

*Chem. Eng'g v. Essef Indus., Inc.*,
  795 F.2d 1565 (Fed. Cir. 1986)...................................................................................... 16

*Control Components, Inc. v. Valtek, Inc.*,
  609 F.2d 763 (5th Cir. 1980) ......................................................................................... 17

*Corning Glass Works. v. Sumitomo Elec. U.S.A., Inc.*,
  868 F.2d 1251 (Fed. Cir. 1989)...................................................................................... 29

*Eltech Systems Corp. v. PPG Industries Inc.*,
  710 F.Supp. 622 (W.D. La. 1988).................................................................................. 17

*Festo v. Shoketsu Kinzoku Kogyo Kabushiki*,
  535 U.S. 722 (2002)........................................................................................................ 27

*Gentry Gallery, Inc. v. Berkline Corp.*,
  134 F.3d 1473 (Fed. Cir. 1998)...................................................................................... 15

*Johnston v. Ivac Corp.*,
  885 F.2d 1574 (Fed. Cir. 1989)...................................................................................... 16

*Moore U.S.A., Inc. v. Standard Register Co.*,
  229 F.3d 1091 (Fed. Cir. 2000)................................................................................. 15, 28

*Novartis Corp. v. Ben Venue Laboratories, Inc.*,
  271 F.3d 1043 (Fed. Cir. 2001)...................................................................................... 16

*Nutrinova Nutrition Specialties & Food Ingredients GmbH v. U.S. Int'l Trade Comm'n*,
  224 F.3d 1356 (Fed. Cir. 2000)...................................................................................... 16

*Rheox, Inc. v. Entact, Inc.*,
  276 F.3d 1319 (Fed. Cir. 2002)...................................................................................... 15

*S. Bravo Systems, Inc. v. Containment Technologies Corp.*,
  96 F.3d 1372 (Fed. Cir. 1996)........................................................................................ 16

*Sage Products, Inc. v. Devon Industries, Inc.*,
  126 F.3d 1420 (Fed. Cir. 1997)...................................................................................... 27

*Schoell v. Regal Marine Industries, Inc.*,
  247 F.3d 1202 (Fed. Cir. 2001)...................................................................................... 29

iii

*Talbert Fuel Systems Patents Co. v. Unocal Corp.,*
  275 F.3d 1371 (Fed. Cir. 2002)..................................................................................... 15

*Techsearch L.L.C. v. Intel Corp.,*
  286 F.3d 1360 (Fed. Cir. 2002)..................................................................................... 16

*Tektronix, Inc. v. United States,*
  445 F.2d 323 (Ct. Cl. 1971) .......................................................................................... 29

*Ultra-Tex Surfaces Inc. v. Hill Brothers Chemical Co.,*
  204 F.3d 1360 (Fed. Cir. 2000)..................................................................................... 16

*Upjohn Company v. Mova Pharmaceutical Corp.,*
  225 F.3d 1306 (Fed. Cir. 2000)..................................................................................... 29

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,*
  520 U.S. 17 (1997)......................................................................................... 27, 28, 29

*Zodiac Pool Care, Inc. v. Hoffinger Industries, Inc.,*
  206 F.3d 1408 (Fed. Cir. 2000)..................................................................................... 17

## RULES

35 U.S.C. §§ 102-03 ........................................................................................................ 5

Fed. R. Civ. P. 56............................................................................................................ 15

LA2:781551 1

iv

## I.    NATURE AND STAGE OF PROCEEDINGS.

This is a patent infringement litigation initiated by LML Patent Corporation ("LML") against defendants TeleCheck Services, Inc. ("TeleCheck"), Electronic Clearing House, Inc. ("ECHO"), XpressChex, Inc. ("XpressChex") and Nova Information Systems, Inc ("Nova") (collectively, "Defendants"). The patent in suit is U.S. Patent No. 5,484,988 ("the '988 patent"). (Ex. A.)[1]  Fact and expert discovery has concluded, and claim construction briefing is complete. Nova submits this opening brief in support of its Motion for Summary Judgment of Non-Infringement.

This Court is now in a position to resolve this case by granting summary judgment of non-infringement because there are no disputed issues as to the following two critical facts:

1) the Nova Electronic Check Service only accepts completed and signed checks; and

2) the Nova Electronic Check Service only accepts certain types of checks.

Because each of the asserted claims requires a system that does not use paper checks as negotiable instruments and accepts "any" check, Nova does not infringe the patent as a matter of law.

██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████ Based on this undisputed fact, Nova is entitled to summary judgment of non-infringement on claims 2, 8, 9, 10, 11, 16, and 18 ████████████████████████████████
██████████████████████████████████████████████████

Accordingly, Nova is entitled to summary judgment of non-infringement with respect to claim 8 and dependent claims 16 and 18.

Because Defendants' accused products and services are not identical, Defendants are submitting separate motions for summary judgment of non-infringement. To minimize overlap,

---

[1] Exhibits cited in this brief are attached to the concurrently filed Declaration of Vision Winter in Support of Nova's Motion for Summary Judgment of Non-Infringement ("Winter Decl."). Citations to patent text in this brief are of the form x:y, where "x" represents the column number and "y" the line number.

however, Defendants have coordinated regarding issues that do not relate to the individual features of the accused systems. Accordingly, a number of sections below are set forth identically in each Defendant's brief, except for the exhibits numbers. For example, facts related to the '988 patent and its prosecution history are the same in each brief. For clarity, each of the sections common to Defendants' briefs include an introductory note to that effect.

## II.    SUMMARY OF ARGUMENT.

This litigation is nothing more than an attempt by LML to profit from the innovative work done by others. Electronic check cashing existed long before the '988 patent issued. In fact, so many advances had been made in the field that the Patent Office rejected the application that would become the '988 patent several times before the patentee was able to narrow the claims enough to get around the prior art.[2] Ultimately, the Patent Office issued the '988 Patent on a narrow construction of the claim terms, a narrow construction that the patentee acknowledged was necessary to avoid the prior art. Now LML is trying to escape that narrow construction and the prosecution history that defines the patent in order to claim damages from Nova and the other defendants for activities not actually covered by the patent.

Nova offers a variety of services to merchants which allow them to handle different forms of payments from customers. Since 2003, one of these services has been Nova's Electronic Check Service ("ECS"), the accused product in this action.

In an effort to make out a case for infringement, LML has adopted an improperly broad reading of the patent – a construction so broad that it would read on the prior art which was explicitly disclaimed during the application process. No matter how LML attempts to construe

---

[2] The inventors initially applied for broader protection but were forced to amend the claims to overcome cited art. *See* generally applicants' narrowing amendments (Ex. B at LML-EP 000144-61, C at LML-EP 000170-79 and D at LML-EP 000182-210). Nova believes that even the narrow claims obtained by the inventors are invalid and, with the other defendants, has filed a separate Motion for Summary Judgment on Invalidity.

the claims, however, the fact remains that Nova's system simply does not work in the same way as the system claimed in the patent. Nova's system is fundamentally different and, as such, does not include several key claim limitations – no matter which construction the Court adopts.

- Nova's system requires that the checks take on the status of negotiable instruments in order to be accepted and to transfer funds. Every claim of the patent, however, requires the exact opposite, namely that the checks do not take on the status of negotiable instruments. Based on this unmet limitation alone, summary judgment is appropriate as to every asserted claim of the patent.

-  Again, based on this unmet limitation alone, summary judgment is appropriate as to all claims.

- Again, based on this unmet limitation alone, summary judgment is appropriate as to all claims.

-  Based on this unmet limitation, summary judgment is appropriate as to claims 2, 8, 9, 10, 11, 16 and 18.

- Based on these unmet limitations, summary judgment is

appropriate as to claims 8, 16 and 18.

These substantial differences between the patented invention and the Nova system also mean that, as a matter of law, Nova can not infringe the '988 patent under the doctrine of equivalents. The Federal Circuit is clear: the "doctrine of equivalents" applies only in the absence of *any* substantial difference between the claim element in question and the allegedly equivalent aspects of the accused device. Under the doctrine of equivalents, the accused product and the patented invention must be substantially the same, not only in their function, but in the way in which they perform that function and in the results that they achieve. The features of the Nova Electronic Check Service are so directly contradictory to the requirements of these claim limitations that to find infringement under the doctrine of equivalents would violate a cardinal rule of patent law by vitiating those limitations, effectively reading them out of the claims.

LML does not, and indeed cannot, dispute how the Nova system operates. Because there is no factual dispute about how the accused Nova system works, Nova respectfully requests that the Court grant its motion for summary judgment of non-infringement.

## III.    FACTUAL BACKGROUND.

### A.    The '988 Patent Claims – Common to All Defendants.

The '988 patent generally describes a system and method for converting paper checks to electronic transactions at the point of sale, using the check "as the basic source of identification of the individual and of the individual's bank and whereby the bank account is debited." (Ex. A at 1:13-15.) The '988 patent claims were not allowed until *after* the claims were narrowed to recite conducting transactions "without using the check as a negotiable instrument" (or corresponding language), and further narrowed to recite the capability to transfer funds using account information from "any bank check" or "any consumer bank check." The '988 patent claims therefore require very specific features not present in Nova's Electronic Check Service.

The '988 patent includes three independent claims, numbered 1, 8 and 9. Claim 1 is representative:

1.      A checkwriting point of sale system comprising:

4

a point of sale terminal adapted to receive consumer bank account information from *any bank check*;

a central computer system;

first communications means integral to said point of sale terminal for electronically communicating with the central computer system;

memory means integral to said point of sale terminal for temporarily storing the consumer bank account information;

the central computer system having second communication means for receiving information from a plurality of said point of sale terminals;

the central computer system second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further *enabling automated clearing house communication for transferring funds without using the bank check as a negotiable instrument*.

(*Id.* at 11:36-56.)[3] An "automated clearing house" ("ACH") referred to in claim 1 is a network of entities, typically financial institutions, that work together to electronically transfer funds between bank or checking accounts.

Claims 8 and 9 recite limitations similar to those highlighted in claim 1. Claim 8 is a process claim, and recites "presenting any bank check specimen" to a point of sale terminal, reading magnetic ink numbers "without using the check as a negotiable instrument," and transmitting transaction information for "subsequent automated clearing house operations." (*Id.* at 12:21-42.) Claim 9 is a system claim, and recites means for reading magnetic ink numbers on "any consumer bank check," and means for "enabling automated clearinghouse communication for transferring funds without using a bank check as a negotiable instrument." (*Id.* at 12:43-67.)

As set forth in Defendants' briefing regarding claim construction, the "any bank check" limitations should be construed to require receiving information from *any* bank check or *any* consumer bank check and transferring funds using information from any bank check. The "negotiable instrument" limitations should be construed to require that the check used in the process "at no time, takes on the status of a negotiable instrument."

---

[3] Unless otherwise indicated, emphasis in this brief has been added.

Independent claims 8 and 9 also recite that the check is read for the "sole purpose" of obtaining "consumer bank account information." As set forth in Defendants' claim construction briefing, the phrase "consumer bank account information" should be construed to mean "only the ABA/transit routing number and bank account number," which identify the bank account associated with the check.

**B.    The '988 Patent System and Prior Art Systems – Common to All Defendants.**

The '988 patent discloses that the claimed system and method begins when a customer making a purchase initiates a transaction by providing the merchant with any bank check, preferably a "specimen" or "blank" check. (*Id.* at 7:48.) This bank check is used only for purposes of obtaining bank account information from the check, and each transaction is "an electronic or 'paperless' event thereby eliminating reliance on accepting and processing commercial bank drafts (personal or corporate checks) and the physical handling of those bank drafts thus replacing commercial bank drafts at the point of sale." (*Id.* at 3:4-8.)

Specifically, the merchant obtains bank account information from the Magnetic Ink Character Recognition numbers ("MICR" numbers) across the bottom of the check. (*Id.* at 6:66; 7:64-65.) The bank account information is the "ABA/Transit" and routing number of the check writer's bank. (*Id.* at 10:29-31.) Once the account information is entered, the merchant can initiate a check "verification" process, a well known prior art process in which one or more databases are accessed to determine if a check transaction is likely to be processed successfully. (*Id.* at 7:19-34, 7:63-8:22.) If the verification is approved, the merchant returns the check to the customer at the point of sale and the terminal prints an authorization receipt for the customer's signature. (*Id.* at 8:23-29.) The transaction is later electronically processed for payment through an automated clearinghouse or "ACH" network. (*Id.* at 8:30-42.)

This type of system and method was well-known in the art long before the effective priority date of the '988 patent. Systems and methods enabling the electronic processing of paper checks presented at the point of sale have been discussed in the payments industry, disclosed in prior art patents, and implemented by payment processing corporations since the

early 1980s. Two such patents are U.S. Patent No. 5,053,607 to Carlson ("the '607 patent"), and U.S. Patent No. 5,175,682 to Higashiyama *et al.* ("the '682 patent").

Both the '607 patent and '682 patent describe electronic check processing systems having many or all of the features of the '988 patent. The described systems each included a terminal and a MICR reader for automatically reading the ABA/transit routing number and bank account number from checks presented at the point of sale, communication with databases for check verification, and automated electronic debiting of the consumer's account based on the information obtained from the check. (*See* Defendants' Opening Brief on claim construction, D.I. 288, pp. 5-7.)

## C.     Prosecution History of the '988 Patent – Common to All Defendants.

### 1.     The "Sole Purpose" Limitations

The original application leading to the '988 patent, Serial No. 07/975,717, was filed on November 13, 1992. (Ex. E.) The original independent claims 1 and 9 recited point-of-sale electronic payment processing systems and methods designed to receive consumer bank account information from either debit-type cards or checks, transmit that information to a central computer, perform a verification process, and transfer funds through an automated clearing house network. (*Id.* at LML-EP 000104-06.)

The Examiner initially rejected the pending claims, (*Id.* at LML-EP 000139-43), and the Applicants amended the claims in an attempt to overcome the rejections (Ex. B at LML-EP 000144-61). The Applicants' amendments and related arguments were insufficient to overcome the Examiner's rejections. In a second Office Action, the Examiner maintained rejections based on prior art patents referred to as "Carlson et al." and "Murphy." (Ex. I at LML-EP 000163.)

Following the second rejection, the Applicants filed a continuation application and Preliminary Amendment. (Ex. C. at LML-EP 000170-79.) In the Preliminary Amendment, the Applicants narrowed pending claim 9 by adding the limitation of reading information from the check "for the sole purpose of obtaining consumer bank account information." (*Id.* at LML-EP

000174.) The Preliminary Amendment further added 12 new claims, including another independent claim, that recited a corresponding "sole purpose" limitation. (*Id.* at LML-EP 000176.) These and other amendments were eventually successful in obtaining allowance of the claims.

### 2.     The "Negotiable Instrument" Limitations

The same Preliminary Amendment included narrowing amendments that limited independent claim 1 to transactions that take place "without using a bank check as a negotiable instrument." (*Id.* at LML-EP 000172-73.) The new independent claim similarly recited transferring funds "without using a bank check as a negotiable instrument." (*Id.* at LML-EP 000175-76.)

The Examiner again rejected all pending claims as indefinite, concluding among other things that claim 1 did not capture the argued novelty in the specification. (*Id.* at LML-EP 000181.) The Examiner re-asserted his rejections set forth in previous Office Actions. (Ex. J at LML-EP 000181.)

Applicants filed another Response on January 30, 1995, further narrowing the claims. Claim 9 was amended to include the limitation "without using the check as a negotiable instrument," similar to the limitations previously added to claims 1 and 11. (Ex. D at LML-EP 000184.) Accordingly, at the time of the January 30, 1995 amendment, each independent claim recited a limitation that transactions took place "without using the check as a negotiable instrument." As set forth below, these and other amendments were critical in the eventual allowance of the claims.

### 3.     The "Any Bank Check" Limitations

In the January 30, 1995 Response, the Applicants made other amendments that further narrowed the claims. Each independent claim was also amended to recite processing transactions not from "a" single bank check, but rather from "any" bank check. Specifically, the Applicants amended claim 1 to recite a point of sale terminal adapted to receive information from "any bank check," amended claim 9 to recite presenting "any bank check" at the point of

sale, and amended claim 11 to recite means for reading information from "any consumer bank check." (*Id*. at LML-EP 000183-85.)

At first blush, the "any bank check" amendments might appear to broaden the claims, but in fact the new limitations narrowed the claims considerably. Before the word "any" was added to the claims, a system capable of receiving information and transferring funds using just a single type of check ("a" check), or a small number of checks, could meet these limitations and potentially infringe the claims. Following the amendment, however, a system that functioned with only one type of check, or just a few types of checks, could no longer meet the limitation. Instead only systems that could receive information and transfer funds using *any* type of check or *any* type of consumer check could potentially infringe.

### 4. Applicants' Amendments and Arguments Regarding the "Any Bank Check," "Negotiable Instrument," and "Sole Purpose" Limitations Secured Allowance of the Claims

The "any bank check," "negotiable instrument," and "sole purpose" limitations were critical to obtaining allowance of the claims. To overcome the Examiner's rejections, Applicants repeatedly argued that the prior art did not disclose these limitations. The Examiner allowed the claims only after they were narrowed, and only after Applicants relied on these limitations in distinguishing the prior art.

In a Remarks section of the January 30, 1995 Response, the Applicants described the purported invention recited in the amended claim 1:

> The point of sale terminal accepts bank account information from *any bank check.* The system transfers funds as part of a transaction *without using the check as a negotiable instrument.*

(Ex. D at LML-EP 000189.)

Likewise, in arguing over the prior art, the Applicants repeatedly relied on the "any bank check" and "negotiable instrument" limitation. Distinguishing one prior art patent, the Applicants asserted that "Case does not disclose the use of *any bank check solely* to derive consumer information and *not for use as a negotiable instrument*, as recited in independent

9

claims 1, 9 and 11." (*Id.* at LML-EP-000190.) The Applicants also argued over other references based on the negotiable instrument limitation. (*See id.* at LML-EP 000192-206.) In the summary of Applicants' Remarks, the Applicants again highlighted these differences between the purported invention and the prior art, namely that "none of the references discloses a point-of-sale system that uses *any bank check solely* for the purpose of gather customer information and *not as a negotiable instrument* used to pay for goods received in a transaction." (*Id.* at LML-EP 000207.)

These amendments and arguments were essential to securing allowance of the claims. In the following Office Action, the Examiner withdrew the previous rejections based on Carlson, Murphy and other prior art references, instead only asserting a "restriction requirement" that would force the Applicants to "elect" a subset of the pending claims. (Ex. D at LML-EP 000212.) After Applicants argued that no election between claims was necessary, the claims were allowed and the '988 patent issued on January 16, 1996.

**D.    The Nova Electronic Check Service.**

Even before the '988 patent issued, paying by check had come a long way from the days when a merchant would accept a check and hope for the best when it came time to cashing it. In those days, the greatest protection a merchant had was to post checks that had bounced on the side of the register. Now, companies like Nova offer a variety of products and services which make accepting checks easier for the merchant.







**Figure 1. Sample customer check**

## IV.    SUMMARY JUDGMENT OF NON-INFRINGEMENT IS LEGALLY PROPER IN THIS CASE.

### A.    Summary Judgment of Non-Infringement Is Proper Where the Material Facts About the Accused Device Are Not in Dispute.

Summary judgment is appropriate where, as here, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Avia Group International, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed.Cir. 1988) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (additional internal quotations and citations omitted)).

Summary judgment is particularly appropriate in a case, like this one, where there is no dispute as to the structure of the accused device. *See, e.g., Gentry Gallery, Inc. v. Berkline*

12

*Corp.*, 134 F.3d 1473, 1476 (Fed. Cir. 1998) (affirming summary judgment of non-infringement); *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1324 (Fed. Cir. 2002) (holding that summary judgment is appropriate in cases in which the parties do not dispute any relevant facts regarding the accused product). In the absence of a genuine dispute regarding a material fact about the accused device, summary judgment of non-infringement may properly be granted as to both literal infringement and infringement under the doctrine of equivalents. *See Talbert Fuel Systems Patents Co. v. Unocal Corp.*, 275 F.3d 1371, 1376 (Fed. Cir. 2002) (affirming summary judgment of non-equivalence); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1113 (Fed. Cir. 2000) (same).

### B.    LML Bears the Burden of Proving Infringement.

The burden of proving patent infringement rests squarely with LML, the patent owner. "[I]t is axiomatic that the patentee bears the burden of proving infringement." *Ultra-Tex Surfaces Inc. v. Hill Brothers Chemical Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000); *see Nutrinova Nutrition Specialties & Food Ingredients GmbH v. U.S. Int'l Trade Comm'n*, 224 F.3d 1356, 1359 (Fed. Cir. 2000) ("As a general proposition, the law places the burden of proving infringement on the patentee who alleges it."). Summary judgment must be granted where, as here, "the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial." *Techsearch L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002)); *see also Celotex*, 477 U.S. at 322 ("against a party who has failed to introduce evidence sufficient to establish the existence of an essential element of that party's case, on which the party will bear the burden of proof at trial.").

As discussed below, Nova can demonstrate the absence of evidence to support LML's infringement claim. This initial showing shifts the burden to LML to offer evidence to support its infringement contentions. *See Celotex*, 477 U.S. at 325 (Defendant's burden is to "point[] out to the district court that there is an absence of evidence to support the nonmoving party's case."); *see also Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001); *Johnston v. Ivac Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989) ("The motion of an accused

13

infringer for judgment on the ground of non-infringement of a patent may be granted where the patentee's proof is deficient in meeting an essential part of the legal standard for infringement."); *Chem. Eng'g v. Essef Indus., Inc.*, 795 F.2d 1565, 1571 (Fed. Cir. 1986) ("[T]his court has repeatedly upheld a grant of summary judgment in favor of the accused when the patentee failed to establish any genuine issue of material fact and the accused was entitled to a judgment of non-infringement as a matter of law."); *S. Bravo Systems, Inc. v. Containment Technologies Corp.*, 96 F.3d 1372 (Fed. Cir. 1996) (summary judgment affirmed where patentee failed to proffer adequate evidence that defendant's product contained every claim element). LML cannot satisfy that burden.

**V.     AS A MATTER OF LAW, NOVA DOES NOT INFRINGE THE '988 PATENT UNDER ANY THEORY OF INFRINGEMENT.**

**A.     Based On The Proposed Claim Constructions And The Undisputed Facts, The Nova Electronic Check Service Does Not Literally Infringe The '988 Patent.**

There are several differences between the Nova Electronic Check Service and the '988 patent claims, each of which entitles Nova to summary judgment of non-infringement. If *any* limitation of a claim is absent from the Nova Electronic Check Service, then LML cannot prevail on its infringement claim. *See Zodiac Pool Care, Inc. v. Hoffinger Industries, Inc.*, 206 F.3d 1408, 1415 (Fed. Cir. 2000) ("Absent any limitation of a patent claim, an accused device cannot be held to literally infringe the claim.").[8] This motion focuses on three case dispositive arguments and two arguments that apply to a subset of the asserted claims. Each argument provides a compelling independent basis for finding that Nova's Electronic Check Service does not infringe the '988 patent as a matter of law.[9]

---

[8] Additionally, if the Nova Electronic Check Service does not infringe an independent claim, then it cannot infringe any of that claim's dependent claims. *See Eltech Systems Corp. v. PPG Industries Inc.*, 710 F.Supp. 622, 634, n.10 (W.D. La. 1988), *aff'd*, 903 F.2d 805 (Fed. Cir. 1990) ("By definition, if the claim to which the dependent claim refers is not infringed, the dependent claim cannot be infringed, as a matter of law."); *Control Components, Inc. v. Valtek, Inc.*, 609 F.2d 763, 769-70 (5th Cir. 1980). Since the Nova Electronic Check Service does not infringe independent Claims 1, 8, or 9 (*see* §§A-B, *infra*), it also cannot infringe Claims 2, 4-6, 10, 11, 14, 16 or 18, which depend from Claims 1, 8, or 9.

[9] While the focus of this motion is on the case dispositive arguments, the other arguments are



LML has never alleged that Nova accepts anything other than fully completed and signed checks.

_____

presented and can narrow issues for trial in the event this case is not completely decided on this motion.

15



As discussed in the parties' claim construction briefing, the parties disagree about the

proper construction of the clause "without using the check (or bank check) as a negotiable

instrument."



However, this

issue is a question of law which will be resolved when the Court construes the claims. *Markman*

*v Westview*, 52 F.3d 967, 979 (Fed. Cir. 1995). Because this is a question of law, summary

judgment is of course still appropriate.

There can be no dispute that once a check is filled out and signed, as all of the checks that

meet the requirements of the Nova Electronic Check Service are, the check is a negotiable

instrument. (*See* UCC § 3-104 (2002).)



---

[10] UCC § 3-104 defines negotiable instruments as: (a) Except as provided in subsections (c) and (d), "negotiable instrument" means as unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

    (1) is payable to bearer or to order at a time it is issued or first comes into possession of a holder;

    (2) is payable on demand or at a definite time; and

    (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.
UCC § 3-104 (2002.)



All of the independent claims in the '988 patent require that the point of sale terminal be adapted to receive consumer bank account information from *any* bank check (claim 1), that the point of sale terminal be able to read MICR numbers on *any* bank check (claim 9), or that, in the process claim, *any* bank check specimen may be presented to a point of sale terminal (claim 8).





Not all checks are formatted the same way. For example, there are different types of fonts used in the MICR lines on checks. Two of the most popular fonts used throughout the world are the E13B MICR font (Fig. 2), which is used on checks from U.S. banks, and the CMC-7 MICR font (Fig. 3), which is used by many foreign banks.[12] There are clear differences between the fonts even to an untrained eye.



**Fig. 2**

E13B MICR Font

**Fig. 3**

CMC-7 MICR Font







Subsection 3.8.2 of the NACHA Operating Rules provides that "[t]he Originator may not key-enter the routing number, account number, or check serial number from the Receiver's source document." (Ex. X at LML-EP-055428).







With the "any bank check" limitation, each independent claim of the '988 patent also includes a limitation requiring an electronic transaction based on the information obtained from the bank check. For example, independent claims 1 and 9 each recite "enabling automated clearing house communication for transferring funds." (Ex. A at 11:50-55 and 12:61-66.) Claim 8 recites "subsequently transmitting the transaction event information to a bank for subsequent automated clearinghouse operations." (*Id.* at 12:40-42.)

As set forth in the Defendants' claim construction briefing (*see generally* Defendants' Claim Construction Brief at 13-18), the Court should construe these limitations to mean that the claims require ***processing*** transactions using information from any bank check. Specifically, the Court should construe the phrase "any bank check" to mean "any type of check drawn on a financial institution." The Court should construe the latter phrases to mean "electronically communicating with an automated clearing house for transferring funds electronically based upon the consumer bank account information obtained from any bank check presented at the point-of-sale." Under a proper construction, Nova's ECS system does not meet these limitations.

Nova requires merchants to agree to "Terms and Conditions" before they can offer the Nova Electronic Check Service.



Similarly, Nova complies with rules promulgated by NACHA, including Subsection 3.8.1 of the Operating Rules governing "Point of Purchase" or "POP" transactions which state that certain checks are not eligible for submission as POP transactions.[17]





[17] Subsection 3.8.1 of the NACHA Operating Rules provide that Nova cannot accept third-party checks, checks drawn on the Treasury of the United States, a Federal Reserve Bank, or a Federal Home Loan Bank, checks drawn on a state or local government, or checks payable in a medium other than United States currency.



---

[20] Claim 2 recites "reading magnetic ink character recognition numbers appearing on a consumer check for the sole purpose of identifying and reading the consumer bank account information." Claim 8 recites "reading the magnetic ink character recognition number information on the check for the sole purpose of obtaining the consumer bank account information."  Claim 9 reads: "reading magnetic ink character recognition numbers on any consumer bank check for the sole purpose of eliciting consumer bank account information."



▬▬  In view of these undisputed facts, summary judgment of non-infringement is

appropriate as to claims 8, 16 and 18.

**B.**    **Substantial Differences Between The Nova Electronic Check Service And The '988 Patent Preclude A Finding Of Infringement Under The Doctrine Of Equivalents.**

The same substantial differences which prove that there is no literal infringement of the

patent also prove that, as a matter of law, Nova does not infringe the '988 patent under the

doctrine of equivalents. The doctrine of equivalents is, of course, a narrow doctrine that courts

apply sparingly. The Supreme Court has instructed courts not to apply the doctrine "broadly,"

warning that it would "conflict[] with the definitional and public-notice functions of the statutory

claiming requirement." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17,

29 (1997). Echoing this concern, the Federal Circuit has held that a broad application of the

doctrine of equivalents "would conflict with the primacy of the claims in defining the scope of a

patentee's exclusive rights. . . . [T]hen claims would be reduced to functional abstracts, devoid

of meaningful structural limitations on which the public could rely." *Sage Products, Inc. v.

Devon Industries, Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997) (affirming summary judgment of

non-infringement).

**1.**    **LML is estopped from trying to apply the doctrine of equivalents to the asserted claims.**

An important rule for the application of the doctrine of equivalents is that where, as here,

a patentee disclaims certain constructions and narrows the claims of the patent through

amendments during prosecution, the patentee cannot recapture the subject matter through the

doctrine of equivalents.[22] *Festo v. Shoketsu Kinzoku Kogyo Kabushiki,* 535 U.S. 722, 740 (2002)

(" a patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the

broader subject matter."). Under the doctrine of prosecution history estoppel, there is a

presumption that the patent owner is precluded from asserting the doctrine of equivalents as to

these narrow claims. *Id.*

---

[22] Similarly, as Defendants detailed in their claim construction briefs (*see generally* Defendants'

Given the record over years of prosecution, there can be no question that LML added narrowing limitations to the '988 patent in order to avoid prior art. Accordingly, prosecution history estoppel applies. *See Warner-Jenkinson*, 520 U.S. at 30-31. Under *Festo*, LML's amendments create a presumption that precludes the application of the doctrine of equivalents with respect to these limitations. *Festo*, 535 U.S. at 740. For all of the claims in which the patentee narrowed the claim terms through amendments, which in this case includes all of the asserted independent claims, LML must first overcome this presumption before it can claim infringement under the doctrine of equivalents. *Id.* There is no evidence to support LML's attempt to overcome this presumption.

## 2.    Even if the doctrine of equivalents is applied, LML cannot claim an equivalent which would vitiate the claim limitations.

Even if LML could overcome the presumption against the application of the doctrine of equivalents, it may not claim a range of equivalents which would have the effect of completely nullifying limitations written into the claims. "[I]f a court determines that a finding of infringement under the doctrine of equivalents 'would entirely vitiate a particular claim[ed] element,' then the court should rule that there is no infringement under the doctrine of equivalents." *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003) (citations omitted); *see Warner-Jenkinson*, 520 U.S. at 39 n.8 (noting that, if the patentee's application of the doctrine of equivalents "would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further material issue for the jury to resolve."); *Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002) (courts are "specially vigilant against allowing the concept of equivalence to eliminate any claim limitations completely.").

The rule against vitiating claim elements is strictly applied. For example, even in cases

---

Claim Construction Brief ) and in Section III (C) *supra*, during the prosecution, the patentee relied on narrow constructions to avoid prior art, disclaiming any broader reading of the claims. Under the theory of prosecution history estoppel, the patent owner cannot now expand its constructions to claim these previously disclaimed elements in order to prove literal infringement.

in which the difference between the accused product and the patented invention was only a matter of percentage points, the Federal Circuit has held that they are not equivalents. In *Moore*, the claim called for adhesive "extending the majority of the lengths" of a mailer's margins but the accused infringer's adhesive extended "about 48%" of those lengths. *See Moore*, 229 F.3d at 1095, 1106. Even though the percentages were relatively close, the Federal Circuit affirmed summary judgment of non-infringement, holding that "to allow a minority (*i.e.* 47.8%) to be equivalent to a majority would vitiate the requirement that the 'first and second longitudinal strips of adhesive . . . extend the majority of the lengths of said longitudinal margin portion." *Id.* at 1106; *see id.* ("it would defy logic to conclude that a minority – the very antithesis of a majority – could be insubstantially different from a claim limitation requiring a majority and no reasonable juror could find otherwise.").

Moreover, LML would have to prove equivalence through a rigorous analysis, rather than simply an "it's-close-enough, trust us" theory of infringement. The Federal Circuit has been clear that a proper application of the doctrine of equivalents requires a rigorous element-by-element analysis. "Each element contained in a patent claim is deemed material in defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson*, 520 U.S. at 29. When performing this analysis, courts typically apply the "function-way-result" test in which courts "determine whether the element performs substantially the same function in substantially the same way to obtain substantially same result as the claim limitation." *Schoell v. Regal Marine Industries, Inc.*, 247 F.3d 1202, 1209-10 (Fed. Cir. 2001); *see Upjohn Company v. Mova Pharmaceutical Corp.*, 225 F.3d 1306, 1309 (Fed. Cir. 2000); *Warner-Jenkinson*, 520 U.S. at 40 (finding equivalency only when "substitute element matches the function, way, and result of claimed element . . . ."). This requires that a corresponding feature in the accused device "does substantially the same thing in substantially the same way to get substantially the same result" as the claimed element. *Corning Glass Works. v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1260 (Fed. Cir. 1989) (quoting *Tektronix, Inc. v. United States*, 445

26

F.2d 323, 329 (Ct. Cl. 1971)).

### a.    "Negotiable Instrument."

The claim term "negotiable instrument" includes the absolute limitation "without using the [bank] check as a negotiable instrument." As detailed in Defendants' Claim Construction Brief, this limitation means that the check, at no time, takes on the status of a negotiable instrument. This limitation would, of course, be rendered meaningless if the limitation could be deemed equivalent to a requirement that the check must be a negotiable instrument to be processed. This is precisely the type of result that the Supreme Court and the Federal Circuit have held the doctrine of equivalents cannot be used to achieve. *See, e.g., Lockheed,* 324 F.3d at 1321, *Warner-Jenkinson,* 520 U.S. at 39 n.8.

As in *Moore*, there can be no finding of equivalence here because the accused process is the antithesis of the claimed process. *Moore*, 229 F.3d at 1095, 1106. A finding of equivalence would require a finding that a check that is completed and signed is equivalent to a check that is not completed and not signed. Even the functions of this feature are completely opposite: in the accused product, the function is to prevent a check from being re-used, while in the patented process, the function is to allow a check to be re-used. Given the fundamental difference in the function, way and result of the two processes, it is impossible for LML to present any evidence of substantial similarity as to this element.

### b.    "Sole purpose."



 LML has no evidence that one

of ordinary skill in the art would consider the function, way and result of these systems to be

substantially equivalent.

### c.    "Any bank check."

Reading the term "any bank check" to include any range of equivalents would entirely

vitiate the "any bank check" limitations.  If the range of equivalents were to include only certain

types of bank checks or a limited number of bank checks, then the equivalent would encompass

the prior art, which is an impermissible application of the doctrine of equivalents.  Such a broad

reading would effectively remove the word "any" from the claims.

 LML has no evidence that these

features would be considered substantially equivalent by one of ordinary skill in the art.

### d.    Visual verification.

 Because there is no equivalent feature to compare, LML

cannot show that the function, the way and the result is substantially the same for the patented

process and the accused Nova process.

## VI.    **CONCLUSION.**

For the reasons set forth above, Nova respectfully requests that the Court grant this

summary judgment motion and find that Nova does not infringe any claim of the '988 Patent.

November 4, 2005                                   THE BAYARD FIRM

                                                  /s/ Richard D. Kirk (rk0922)
                                                  222 Delaware Avenue, 9th Floor
                                                  P.O. Box 25130
                                                  Wilmington, DE  19899
                                                  (302) 429-4208
                                                  rkirk@bayardfirm.com
                                                  Attorneys for defendant,
                                                  NOVA Information Systems, Inc.

OF COUNSEL:
Mark C. Scarsi
Vision L. Winter
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071
(213) 430-6000

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on November 4, 2005, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Richard K. Hermann, Esq.
Mary B. Matterer, Esq.
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th  floor
P.O. Box 2306
Wilmington, DE  19801

William J. Marsden, Jr., Esq.
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114


Francis DiGiovanni, Esq.
Connolly, Bove, Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE 19899


The undersigned counsel further certifies that, on November 4, 2005, copies of

the foregoing document were sent by hand and email to the above local counsel and by

first class mail and email to the following non-registered participants:

Russell E. Levine, Esq.
Christian Chadd Taylor, Esq.
Edward K. Runyan, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL  60601

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA  90045


/s/ Richard D. Kirk (rk0922)