IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LML PATENT CORP.,

       Plaintiff,

v.

C.A. 04-858-SLR

TELECHECK SERVICES, INC.,
ELECTRONIC CLEARING HOUSE, INC.,
XPRESSCHEX, INC. and NOVA
INFORMATION SYSTEMS, INC.,

       Defendants.

---

**DECLARATION OF KRIS WINCKLER IN SUPPORT OF ELECTRONIC
CLEARING HOUSE, INC.'S AND XPRESSCHEX, INC.'S MOTION FOR
SUMMARY JUDGMENT OF NON-INFRINGEMENT**

I, KRIS WINCKLER, do hereby declare:

1.     I am a Senior Vice President and Co-General Manager in charge of Electronic Clearing House, Inc.'s Check Conversion and Verification. I have been a Vice President of Xpresschex, Inc. and/or Electronic Clearing House, Inc. (hereinafter collectively "ECHO") since 1999. Xpresschex, Inc. is a wholly owned subsidiary of Electronic Clearing House, Inc.

2.     Prior to joining ECHO, I was the President of Magic Software, a company specializing in check verification, conversion, and ACH software. I have had software programming experience, including programming point-of-sale terminal software in the past. I am familiar with numerous software code languages, including C, FORTRAN, COBOL, BASIC, Verifone TCL, Tcl, C-shell, RPG and UNIX tools (awk, sed, and grep).

3.     I have been active in the check and collection industry for over ten years and have been a member of the Electronic Check Council of NACHA since 1998.

4.     I hold a B.S. degree in Electrical Engineering from the University of New Mexico, an MBA from the University of Illinois, and am an Accredited ACH Professional and a Certified Treasury Professional.

5.    I make this declaration of my own personal knowledge except where otherwise indicated. I am competent to testify to the following facts and, if called upon to testify, I could and would testify thereto.

## ECHO'S PRODUCTS

6.    I am intimately familiar with the details of ECHO's check verification and check conversion products and services from both the technical and business perspectives.

7.    It is important to note that ECHO's check verification products and services are not the subject of this litigation. Check verification has been widely used since the 1980's. These products and services do not eliminate the need for paper checks; bank reconciliation is not accomplished electronically; there is no communication with an automated clearing house; and no funds are transferred through an automated clearing house. In short, these products and services are clearly not the subject of the patent-in-suit.

8.    ECHO's point-of-sale check conversion services, however, are the subject of this litigation. ECHO markets two point-of-sale electronic check conversion services, one under the generic title "Electronic Check Conversion" (formerly XpressConversion, hereinafter "ECC Service" for short) and the other under the title VISA POS Check Service. Both services are able to clear only certain types of checks through the U.S. National Automated Clearing House, commonly known as and referred to herein as the ACH Network.

9.    I am informed that, contrary to assertions made in this litigation, a product called CHEXpedite was not an ECHO brand, but a brand name used by an independent sales group called Redacted who primarily marketed an RCK product. Any point-of-sale (hereinafter "POS") electronic check conversion transactions cleared through the ACH by ECHO for Redacted if any, would have been accounted for under ECHO's Redacted Redacted                                         Thus, to the extent that ECHO cleared any point-of-sale electronic check conversion transactions through the ACH for Redacted the functionality would not differ from that of what I refer to herein as ECHO's ECC Service.

2

**ECHO'S ECC Service**

10.    ECHO's ECC Service is adapted to accept Redacted

                                                                    The
aforementioned checks will hereinafter be referred to as "acceptable checks".

11.    ECHO's ECC Service is configured not to accept checks printed in non-
magnetic ink, checks printed in the wrong font, checks that lack serial numbers, corporate
checks, third party checks, credit card checks, cashier's checks, money orders, traveler's
checks, official checks, checks drawn on the Treasury of the United States, checks drawn
on a Federal Reserve Bank, checks drawn on a Federal Home Loan Bank, checks drawn
on a state or local government, checks payable in a medium other than United States
currency (foreign checks), or checks that were not filled out and signed. The
aforementioned checks will hereinafter be referred to as "unacceptable checks".

12.    There are numerous barriers ("roadblocks") within ECHO's ECC Service
ensuring that unacceptable checks are not accepted and/or processed, as discussed below.

**The First Roadblock** – Merchant Criteria and ECHO Merchant Manuals

13.    The first roadblock is set up at the very beginning of ECHO's ECC Service,
when a customer hands a check to the merchant. The merchant inspects the check to
ensure that it meets the criteria set forth in the ECHO merchant manuals and the
individual merchant's check acceptance criteria (i.e., that it is an acceptable check). If it
is not an acceptable check, the merchant's clerk is directed not to insert the check into the
MICR-Reader and the point of sale terminal, thus, will not receive any information from
the check. Instead, the ECC Service transaction will be terminated.

14.    In ECHO's merchant manuals relating to ECHO's ECC Service, the merchant
is instructed by ECHO not to put the check into the point-of-sale terminal (i.e., no
information is received from the check) if the check is a business check, company check,
payroll check, credit card convenience check or draft, money order, traveler's check, a
check that does not contain a pre-printed serial number, a check that has been previously
negotiated, a check that has been previously voided in connection with another Electronic
Check Service Transaction or with another program pursuant to NACHA check

conversion rules, a Federal Home Loan Bank check, a Government check (including checks drawn on a state or local government), a third party check, a U.S. Treasury checks, a cashiers check, an official check, or a check payable in a medium other than U.S. currency. (*See* **Exhibit 1** at pg. ECHO0027578)  A true and correct copy of ECHO's current merchant manual entitled Redacted

bearing document control numbers ECHO00027570 through 27581, is attached hereto as **Exhibit 1**.

**The Second Roadblock** – ECHO/Merchant Agreements, Only Certain Check Types

15.    The second roadblock is a contractual obligation of the merchants to ensure that merchants perform the first roadblock.  ECHO contractually requires merchants and service providers to agree to certain conditions as part of its Electronic Check Services and Processing Agreements with its customers and individual merchants before they can offer ECHO's ECC Services.  These agreements specify that only "Checks" may be processed under the agreement.  A true and correct copy of an Electronic Check Services and Processing Agreement between ECHO and        is attached hereto as **Exhibit 2**. The term Redacted

16.    ECHO also expressly requires that its merchants and service providers (including those who re-sell ECHO's services) to agree, as part of the ECHO service agreement, to various terms Redacted

17.    Subsection 3.8.1 of the NACHA Operating Rules provides the following: "For POP entries, the following may not be used as source documents:  (1) checks drawn on corporate or business deposit accounts, (2) third-party checks, (3) credit card checks, (4) obligations of a financial institution (e.g., traveler's checks, cashier's checks, official

checks, money orders, etc.), (5) checks drawn on the Treasury of the United States, a Federal Reserve Bank, or a Federal Home Loan Bank, (6) checks drawn on a state or local government, or (7) checks payable in a medium other than United States currency." (**Exhibit 3**, at pg. LML-EP-055429.).  A true and correct copy of the relevant pages of the 2005 ACH Rules is attached hereto as **Exhibit 3**.  Furthermore, NACHA Rule 3.8.2 states that: "The Originator may not key-enter the routing number, account number, or check serial number from the Receiver's source document."  (**Exhibit 3**, at pg. LML-EP-055429).

18.    In fact, ECHO complies with NACHA Rules in connection with the ECHO ECC Service.


**The Third Roadblock** – MCR Reader Hardware/Software

19.    The third roadblock is set up at the point in time when the merchant presents an acceptable check to the POS terminal's MICR-Reader, which may be peripheral to or integrated with the POS terminal.  The MICR-Reader attempts to automatically read the MICR line, if any, printed on the check. The failure of the check reader to read this information is an indication that the check is unacceptable – the MICR line is not magnetic, the MICR line is not E13-B font, or the MICR line is not positioned in the place it should be on a personal U.S. check.  If it is not an acceptable check, the POS terminal will not receive complete and accurate MICR information from the check and the ECC Service transaction will be terminated.

20.    There are at least four fonts used to print the MICR line on checks.  These fonts are popularly referred to as E13-B, CMC-7, OCR-A and OCR-B.

21.    The E13-B and CMC-7 fonts are designed to be read automatically by MICR (magnetic ink character recognition) Readers and, therefore must be printed with special ink containing magnetic particles within a certain range (more than a minimum and less than a maximum content of magnetic particles) in order to be read.

22.    The OCR-A and OCR-B fonts are designed to be optically read automatically by OCR (optical character recognition) equipment and, therefore need not be printed with magnetic ink.

23.    The MICR line on most checks in the U.S. is printed in the E13-B font.

24.    Many checks in the U.S. are printed with non-magnetic ink (or ink containing magnetic particles outside the required range able to be read by a MICR-Reader).

25.    The MICR-Readers used with ECHO's ECC Service are Redacted

26.    The MICR-Readers used with ECHO's ECC Service Redacted

27.    The MICR-Readers used with ECHO's ECC Service Redacted

28.    Many checks outside of the U.S. are printed with non-magnetic ink (or ink containing magnetic particles outside the required range able to be read by a MICR-Reader), including checks printed with CMC-7, OCR-A or OCR-B fonts.

29.    The MICR line on checks in the following countries is printed in CMC-7 OCR-A and/or OCR-B fonts: Japan (CMC-7, not all checks); Germany (OCR-B); France (CMC-7) ; Brazil (CMC-7) ; United Kingdom (OCR-B, not all checks) ; Spain (CMC-7) ; Italy (CMC-7 or OCR-B) ; Austria (OCR-B) ; Greece (OCR-B) ; Denmark (CMC-7 or OCR-B); Finland (CMC-7 or OCR-B); Holland (CMC-7 or OCR-B); Netherlands (CMC-7 or OCR-B); Norway (CMC-7 or OCR-B); Portugal (CMC-7 or OCR-B); Scotland (OCR-A); Switzerland (OCR-B); Belgium; (CMC-7 or OCR-B); Israel (CMC-7); Sweden (CMC-7); Chile (CMC-7); Paraguay (CMC-7); Peru (CMC-7); Uruguay (CMC-7); Venezuela (CMC-7); Ivory Coast (CMC-7); Tunisia (CMC-7); Bolivia (CMC-7, not all checks); Ecuador (CMC-7, not all checks); Argentina (CMC-7 or OCR-B); Guyana (OCR-A); Guadeloupe (CMC-7); Martinique (CMC-7).

30.    I am familiar with the MICR-Readers in the field used by ECHO merchants in conjunction with ECHO's ECC Service.  As stated above, none of the MICR-Readers used with ECHO's ECC Service are Redacted

For brevity and simplicity, I will discuss four of the principal MICR-Readers used by merchants in connection with ECHO's ECC Service.

31.    These MICR-Readers are Redacted Redacted
As indicated below, these check readers can only read E13B font that was printed on checks with magnetic ink.  In addition, none of these check readers are capable of optically reading -- using OCR technology -- the MICR lines and transferring the MICR information to the POS terminal for transmission to ECHO's computer system for transferring funds through the ACH Network.

32.    A true and correct copy of the product description for the Redacted Series check reader is attached hereto as **Exhibit 4**.  Reference to the last page of this Exhibit discloses that this check reader is only capable of reading E13B font.  This is the same check reader that I identified at my deposition as having OCR capabilities.  It is clear from the manual, however, that the OCR capability of this MICR-Reader is limited to "assisting" the magnetic reader, such that a failure to read the MICR line magnetically will result in a bad-read.  This reader compares the optically read MICR line against the magnetically read MICR line as a confirmatory step.  Where there is no magnetic read, there can be no comparison – thereby resulting in a bad-read.  In fact, I am informed that ECHO's expert, Steve Schutze, confirmed this fact by running checks printed in E13B font that lacked proper magnetization through the Redacted
was not capable of reading the MICR lines, resulting in bad-reads.

33.    The default configuration for the Redacted                is to read E13B font only.  While the Redacted                is theoretically capable of reading both CMC-7 and E13B fonts, page 10 of the                manual specifies that the check reader must be specifically programmed to do so.  A true and correct copy of the relevant pages of the                are attached hereto as **Exhibit 5**.

Redacted

readers for use with ECHO's ECC Service.  The checks clearly show that CMC-7 functionality is disabled for use with ECHO's ECC Service   A true and correct copy of the document entitled 'Redacted                is attached hereto as **Exhibit 6**.  It is also worthy of note that, while this MICR-Reader is

capable of taking a snapshot of the entire check, the Redacted            is not capable
of optically reading the MICR line off of the check separate and apart from the image of
the entire check.

34.    Likewise, the manual for the Redacted                                at
the bottom of page 9, shows that the reader supports E13B currently and that CMC-7 is
either a future enhancement or an optional feature. Redacted

                                      A true and correct copy of the
manual for the                    is attached hereto as **Exhibit 7**.  It is also worthy of
note that, while this MICR-Reader is capable of taking a snapshot of the entire check, the
Redacted      is not capable of optically reading the MICR line off of the check separate and
apart from the image of the entire check.

35.    The default configuration for the Redacted               integrated check
reader/terminal is to read E13B font only.  Only if specifically programmed to do so, is
the reader/terminal theoretically capable of reading CMC-7 font.  In order to set this
device to read CMC-7 font, the terminal/reader program must use the Redacted

Redacted

36.    MICR-Readers into which checks bearing a MICR line not appearing in E13B
font are inserted will return the following message on the POS terminal's display
Redacted

37.    Redacted

                   these POS terminals are not adapted to receive consumer bank
account information off of foreign checks where the MICR line is not in E13B font.

38.     Other than a MICR-Reader, the only other way to automatically read the MICR line directly from a check is through OCR (optical character recognition) equipment. This equipment reads MICR lines optically, not magnetically. Point-of-sale terminals that do not have OCR equipment attached to them are unable to automatically read checks printed in non-magnetic ink. This is where the fourth road block is set up.

**Fourth Roadblock** – ECHO/Merchant Agreements, Redacted

39.

Redacted

**Fifth Roadblock** - ECHO/Merchant Agreements, Redacted

40.     The fifth road block is that ECHO's merchants are contractually obligated not

(*See* **Exhibit 3**, at pg. LML-EP-055429.)

**Sixth Roadblock** – POS Terminal Redacted

41.     The sixth roadblock is set up in the POS terminal's software, which prevents certain operations, including Redacted

Redacted

Theoretically,                                  is the only way to enter MICR information into a POS terminal for checks which cannot be read by the associated MICR-Reader, e.g., for checks with MICR information appearing in fonts other than E13B.

42.    There is a keypad on some POS terminals, which allow manual entry of MICR information <u>when these terminals are used in conjunction only with ECHO's check verification products and services and not with ECHO's ECC Service</u>. The service commonly referred to as "verification" is a check-writer risk determination made by ECHO's NCN database based on positive and negative history relating to the specific account. This "verification" service is commonly included as a step in ECHO's ECC Service.

Redacted

This is where the sixth roadblock is set up.

43.    The sixth roadblock includes Redacted that disables the POS terminals from receiving manual input of bank account information when being used in conjunction with ECHO's ECC Service.[1] Redacted

44.    Each POS terminal contains Redacted that makes the terminal compatible with ECHO's services. Copies of some of the typical POS terminal software programs are identified and introduced as exhibits hereinbelow.

45.    I am familiar with the POS terminals in the field used by ECHO merchants in conjunction with ECHO's ECC Service. Redacted

For brevity and simplicity, I will discuss the three principal families of POS terminals in the field used by merchants in connection with ECHO's ECC Service, i.e., Redacted

---

[1] Redacted

family. Redacted

46.     The <sup>Redacted</sup>     terminals come in families that are programmed in similar or identical fashion, generally with slightly different features on the terminals.  The two main <sup>Redacted</sup>     families are the<sup>Redacted</sup> and the <sup>Redacted</sup>  The <sup>Redacted</sup>terminals are older terminals that are programmed in a language called <sup>Redact</sup><sub>ed</sub>, while the newer <sup>Redacted</sup> series are programmed in      The <sup>Redacted</sup>                    integrated MICR-Reader/POS terminal is programmed in

47.
Redacted

48.
Redacted

49.
Redacted

50.    Redacted

Redacted

51.    Redacted

Redacted

52.    Redacted

53.    Redacted

54.    Redacted

Redacted

55.     Therefore, even if merchants were inclined to Redacted                and not
follow the rules set forth in the manuals, these merchants cannot Redacted
Redacted                          while using the terminals in conjunction with ECHO's ECC
Service.

56.     Where the MICR line is read by the MICR-Reader, it is then transmitted to the
POS terminal and then, upon being prompted to do so, the merchant then enters the sale
amount into the POS terminal.  It should be noted, however, Redacted
Redacted

**The Seventh Roadblock – the NCN Computer** Redacted

57.     Once the U.S. dollar amount is entered into the POS terminal, the information
packet containing the bank account information, the check serial number, the sale
amount, and other indicia to identify the transaction is sent to ECHO's NCN computer
for a check-writer risk assessment ("verification") and Redacted
                                    The bank account information (ABA/transit
routing number and account number) is run against a series of tables and algorithms
including Redacted
                    This table is contained in what is known as the
The parsed routing number is also checked against a database of
Redacted                                            After the foregoing, an
approval/decline decision is made and communicated to the POS terminal.  One ground
for declining a check for ECHO's ECC Service is the Redacted

13

Redacted

58.
Redacted

ECHO's ACH Engine should not be confused with the ACH Network. ECHO's ACH Engine is ECHO's proprietary computer system that conducts the post-decline/approval activities related to transactions, if applicable.

59.
Redacted

60.
Redacted

61.
Redacted

the NCN computer software disables, rather than enables, automated clearing house communications.

62.
Redacted

Redacted

63.

Redacted

64.

Redacted

65.

Redacted

66.    True and correct copies of two excerpts from the code contained in the NCN
computer,Redacted

Redacted

## The Eighth Roadblock

67.

Redacted

68.     The eighth roadblock appears at ECHO's ACH Engine to prevent ECHO's central computer from communicating with an automated clearing house, and thus preventing the transfer of funds from the accounts of unacceptable checks.

69.     It is important to explain that what I refer to as ECHO's "ACH Engine" is not an "engine", and is not run by the ACH Network. This unfortunate nomenclature can be confusing. The word "engine" is a reference to routines built into a computer controlled by ECHO. The reference to "ACH" is a Redacted

To summarize, ECHO's

"ACH Engine" is a set of routines used by ECHO to determine whether transactions will Redacted

70.    Redacted                                                , then NCN sends the "approved" files to ECHO's ACH Engine, which then would determine how a transaction may be cleared (i.e., through the ACH Network Redacted                     or not at all).  While some decision-making is undertaken at the ECHO ACH  Engine level, in many cases, Redacted

71.
Redacted

72.
Redacted

73.
Redacted

17

Redacted

74.    Redacted

Redacted

75.    Redacted

Redacted

76.    Redacted

Redacted

Redacted

77. Redacted

Redacted

78. Redacted

Redacted

79. Redacted

Redacted

LML-EP-055461, LML-EP-055465, and LML-EP-055472. A general description is
given in **Exhibit 3** at pp. LML-EP-055753 through LML-EP-055760.

### The Ninth Roadblock – Redacted

80.     The fact that ECHO's ACH Engine is not able to communicate with any
automated clearing house other than the U.S national clearinghouse serves as the ninth
roadblock, thereby further preventing the processing of foreign checks.

81.     Redacted

Redacted

### The Tenth Roadblock – Checks Must Be Filled-out and Signed

82.     The tenth road block prevents the processing of checks that are not filled-out
and signed.

83.

Redacted

84.     Redacted

Redacted

See **Exhibit 27**, pp. LML-EP-029574 through LML-EP-029575.

85.

Redacted

86.     Redacted

Redacted

87.   Redacted

88.

Redacted

89.

Redacted

**The Eleventh Roadblock – Checks Must Have a Serial Number in the MICR Line**

90.     The eleventh roadblock prevents the processing of checks that do not contain
a check serial number.  By way of example only, when a person initially opens an

21

account, the check may not have a pre-printed Serial Number. Similarly, a check printed at home – using specialized software -- may not contain a Serial Number.

91.   Redacted

See **Exhibit 19**, at pg. ECHO0027557. The serial number is also required for ultimate clearance through the ACH. If the serial number is not present, then the transaction will not be electronically processed – be it through the ACH or via paper draft. (*Id.* and, *see also*, paragraph 76 above.)

92.
Redacted

See **Exhibit 28**, pg. ECHO0001689. A true and correct copy of a document entitled Redacted

is attached hereto as **Exhibit 28**.

Redacted

(*See* **Exhibit 19**, at pg. ECHO0027557.)

93.   Moreover, the current NACHA regulations require customers to be provided receipts that include the "source document check serial number" (*See* **Exhibit 3**, at pp. LML-EP-055429-055430).

94.   Indeed, if the check is accepted for conversion to an electronic item, the paper check is marked by the merchant with the words "VOID." The consumer signs an authorization allowing electronic debiting of the consumer's account. Copies of the authorization and the check marked "VOID" are then handed back to the consumer.

**ECHO's VISA POS Check Service**

95.   In the Visa POS Check Service,
Redacted

Redacted

96.
Redacted

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of October, 2005.

_____
KRIS WINCKLER

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on October 28, 2005, a true and correct copy of the foregoing document was caused to be served in the manner indicated on the attorneys of record at the following addresses:

**VIA E-MAIL AND HAND DELIVERY**
Richard K. Herrmann, Esquire
Morris James Hitchens
  & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801

**VIA E-MAIL AND HAND DELIVERY**
William J. Marsden, Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114

**VIA E-MAIL AND HAND DELIVERY**
Richard D. Kirk, Esquire
The Bayard Firm
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE 19899

**VIA E-MAIL AND FIRST CLASS MAIL**
Russell E. Levine, Esquire, P.C.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

**VIA E-MAIL AND FIRST CLASS MAIL**
Mark C. Scarsi, Esquire
O'Melveny & Myers LLP
400 S. Hope Street
Los Angeles, CA 90071

**VIA E-MAIL AND FIRST CLASS MAIL**
Dale M. Cendali, Esquire
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)