



US005484988A

# United States Patent [19]

## Hills et al.

| | |
|---|---|
| [11] | Patent Number: **5,484,988** |
| [45] | Date of Patent: **Jan. 16, 1996** |

[54] **CHECKWRITING POINT OF SALE SYSTEM**

[75] Inventors: **Robert R. Hills**, St. Augustine, Fla.; **Henry R. Nichols**, McLean, Va.

[73] Assignee: **Resource Technology Services, Inc.**, Vienna, Va.

[21] Appl. No.: **257,390**

[22] Filed: **Jun. 9, 1994**

### Related U.S. Application Data

[63] Continuation of Ser. No. 975,717, Nov. 13, 1992, abandoned.

[51] Int. Cl.⁶ ............................................ G06F 15/30
[52] U.S. Cl. .............................. 235/379; 235/380
[58] Field of Search .......................... 235/379, 380

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,824,544 | 7/1974 | Simjian | 340/147 A |
| 3,845,470 | 10/1974 | Schuller | 340/149 A |
| 4,270,042 | 5/1981 | Case | 235/379 |
| 4,404,649 | 9/1983 | Nunley et al. | 364/900 |
| 4,523,330 | 6/1985 | Cain | 382/7 |
| 4,580,040 | 4/1986 | Granzow et al. | 235/379 |
| 4,617,457 | 10/1986 | Granzow et al. | 235/379 |
| 4,672,377 | 6/1987 | Murphy et al. | 340/825.34 |
| 4,673,802 | 6/1987 | Ohmae et al. | 235/379 |
| 4,678,895 | 7/1987 | Tateisi et al. | 235/379 |
| 4,678,896 | 7/1987 | Carlson et al. | 235/380 |
| 4,743,743 | 5/1988 | Fukatsu | 235/379 |
| 4,810,866 | 3/1989 | Lord, Jr. | 235/379 |
| 4,823,264 | 4/1989 | Deming | 235/379 |
| 4,933,536 | 6/1990 | Lindemann et al. | 235/375 |
| 4,934,772 | 6/1990 | Saloma et al. | 350/6.5 |
| 5,053,607 | 10/1991 | Carlson et al. | 235/379 |

*Primary Examiner*—Harold Pitts
*Attorney, Agent, or Firm*—Thomas M. Champagne; Jon L. Roberts; Roberts & Associates

[57] **ABSTRACT**

A point of sale system designed to read information from a consumer's check, credit card, or manual input with a subsequent debiting of a consumer's account and crediting a merchant's account for the goods or services provided. Point of sale terminals are designed to accept a form of credit card with a consumer's bank account information encoded thereon or in the alternative to read the MICR number from a consumer's check in order to verify that a consumer has an appropriate balance to conduct the transaction with a given merchant. Thereafter the transaction of that information is transmitted to a central computer system which verifies the consumer's credit worthiness and stores the transaction event information for subsequent bank reconciliation via the ACH network. The invention eliminates the need for paper checks with all bank reconciliation being accomplished electronically.

**20 Claims, 8 Drawing Sheets**





**FIG. 1**



**FIG. 2**

LML-EP 000064

**U.S. Patent**     Jan. 16, 1996     Sheet 2 of 8     5,484,988



FIG. 3

LML-EP 000065

U.S. Patent        Jan. 16, 1996        Sheet 3 of 8        5,484,988



## FIG. 4

LML-EP 000066



FIG. 5

LML-EP 000067

U.S. Patent          Jan. 16, 1996          Sheet 5 of 8          5,484,988



**FIG. 6**



**FIG. 7**

LML-EP 000069

U.S. Patent          Jan. 16, 1996    ·   Sheet 7 of 8          5,484,988

Merchant Name
Street Address
City, ST  Zip
Merchant Acct #

TIME 00:00 _M                    DATE 00/00/00
BANK ACCT. NO. 000000000000
TRANSIT NO.  000000000

SALE AMOUNT                  $ 0,000.00

TERMINAL ID  0000000000

I herewith authorize ChequeMARK Systems
to electronically access my designated
checking account for the payment of the
above referenced purchase.

Name (PRINT) _____

Street _____

City _____ ST_____ Zip _____

Tel. Number: (_____) _____—_____

I ACKNOWLEDGE THAT RETURN FEES WILL BE
IMPOSED SHOULD MY PAYMENT BE DISHONORED
AND UNDERSTAND THAT IT IS UNLAWFUL TO
AUTHORIZE PAYMENTS FOR WHICH ADEQUATE
MONIES ARE NOT AVAILABLE WITHIN MY
ACCOUNT.

X_____
    Authorizing Signature

*FIG. 8*

LML-EP 000070

Merchant Name
Street Address
City, ST Zip
Merchant Acct #

CUSTOMER BANKING INFORMATION:

BANK ACCT. NO. _____

TRANSIT NO. _____

SALE AMOUNT . . . . . . . . . . . . . . . . . . . $ _____

I herewith authorize ChequeMARK Systems to electronically access my designated checking account for the payment of the above referenced purchase amount.   I acknowledge that sufficient funds are available for the payment of this sale.

Name (PRINT) _____
Street _____
City _____ ST_____ Zip _____
Tel. Number: (_____) _____ — _____

I FURTHER ACKNOWLEDGE THAT RETURN FEES WILL BE IMPOSED SHOULD MY PAYMENT BE DISHONORED AND UNDERSTAND THAT IT IS UNLAWFUL TO AUTHORIZE PAYMENTS FOR WHICH ADEQUATE MONIES ARE NOT AVAILABLE WITHIN MY ACCOUNT.

X_____
Authorizing Signature

**FIG. 9**

LML-EP 000071



5,484,988

1

## CHECKWRITING POINT OF SALE SYSTEM

### RELATED APPLICATION

This application is a continuation of Ser. No. 07/975,717 filed Nov. 13, 1992, now abandoned.

### FIELD OF THE INVENTION

This invention relates to the field of Point-of-Sale systems and more particularly to the integration and processing of purchases whereby a check is used as the basic source of identification of the individual and of the individual's bank and whereby the bank account is debited.

### Background Art

Numerous systems exist for processing checks. For example, U.S. Pat. No. 4,933,536 to Lindemann, et al., describes a check processing device which is used together with a Point-of-Sale terminal. This particular device involves copying and taking a picture of an individual whereby a dishonored check could then be traced to the person who has offered it.

U.S. Pat. No. 4,810,866 to Lloyd, Jr., describes a check validation system again located together with a Point-of-Sale system for imprinting and otherwise physically dealing with a check.

Other systems also deal an apparatus for handling checks at a point of sale. For example, U.S. Pat. No. 4,743,743 to Fukatsu describes one such transaction apparatus where a check is examined by a reader. U.S. Pat. No. 4,672,377 to Murphy, et al. describes a check authorization system wherein a check is imprinted with a bar code and information concerning customers which are stored in a database. U.S. Pat. No. 3,845,470 to Schuller discloses a vending system using a modified form of a check which is imprinted with identification codes, when someone attempts to use the check in purchasing goods and services, a vending operation will not place the order if information associated with the check is not valid in a particular database.

Other check-based financial systems have also been the subject of invention. U.S. Pat. No. 4,617,457 addresses an ATM or automatic teller machine form of cashing checks. Such systems create a picture of the check involved and also involves checking against a specialized database to insure that the check is a "valid" one (see also U.S. Pat. No. 4,580,040 to Granzow et al.).

Another generic category of financial systems deals with methods of handling the financial transactions apart from the physical handling of the check itself. For example, U.S. Pat. No. 3,824,544 to Simjian describes a merchant issued "check" which can be used in the purchase of goods and services and upon purchase, a specialized code is evaluated to determine if the check is being validly utilized.

U.S. Pat. No. 4,404,649 to Nunley et al. describes a document processing system which generally discloses a method of reading checks for processing a wide variety of financial transactions.

U.S. Pat. No. 4,523,330 to Caine also describes a method for processing financial documents which systems also includes a Point-of-Sale terminal for generating image data from checks as they are being processed. This patent is drawn principally to the actual terminal itself.

2

U.S. Pat. No. 4,673,802 to Ohmae et al. describes a central processing system having stored data relating to the accounts of users. Users are approved or disapproved at the Point-of-Sale based upon information in the database.

U.S. Patent No. 4,270,042 to Case discloses a point of sale system that requires a consumer to prepay a sum of money into a special account that is accessed only by the system. This amount is inscribed on the card, and when a transaction is made using the system, the amount of the transaction is punched out of a designated area on the card. This amount, along with a signature and other information, is supplied on a draft negotiable instrument, which is given to the merchant at the time of the transaction. Thus, the Case system does away with the use of bank checks in effecting the transaction, but requires the use of specialized prepaid draft negotiable instruments that must be surrendered to the merchant.

U.S. Patent No. 4,823,264 to Deming discloses a home banking system that can be used to transfer funds to different payees in satisfaction of debts incurred through previous purchases, use of utilities, etc. The system is consumer driven; that is, it is contemplated for use by the payor on a home personal computer. While the Deming system does away with the use of bank checks, account and other information must be keyed into the system. The Deming system cannot be used to read account and other information directly from an ordinary bank check and has no use for bank checks as instruments other than negotiable paper. Further, the Deming system cannot be used to transfer funds at the time of purchase and is not workable at the point of sale; the system can only be used to pay debts that have been incurred in the past and have accumulated.

Finally, U.S. Pat. No. 4,678,896 to Carlson et al. describes a Point-of-Sale system whereby an apparatus is provided to secure the processing and imprinting of checks.

All of these above patents deal with the specific problem of how to accept a check from a customer for the purchase of goods and services. They do not in any way address the subsequent processing of checks nor do they address the process by which checks are cleared through the normal automatic check handling clearinghouse operations that exist in the financial world. Thus, the interaction of these systems with the automated clearing house ("ACH") process is not addressed in any way. This is particularly important since if any Point-of-Sale check handling system is to interact with the ACH mechanism it must adhere to that processing scheme and must lend itself to use with a processing scheme.

Further, some of the currently used systems described above require the use of a bank check as a negotiable instrument which must be surrendered to a merchant. Some of the systems do away with the use of a bank check altogether, but require a debit card or a specialized draft instrument to be used only with the particular system. None of these systems completely does away with the need and use for a negotiable draft instrument while using the consumer's bank check for identification and verification only. It is therefore an objective of the present invention to provide such a system.

It is an objective of the present invention to be adaptable for use with the ACH system and to be smoothly incorporated into it. In this fashion, the present invention will immediately be useful for a much wider range of financial transactions above and beyond those contemplated and disclosed in the background references discussed above.

### Summary of the Invention

The present invention comprises a process and apparatus which may be employed for the purpose of effecting pay-

LML-EP 000072

5,484,988

3

ments for point-of-sale purchases of goods and services paid from consumer funds secured in bank checking or depository accounts. Each sale or "Transaction Event" would be an electronic and "paperless" event thereby eliminating reliance on accepting and processing commercial bank drafts (personal or corporate checks) and the physical handling of those bank drafts thus replacing commercial bank drafts at the point-of-sale.

In contrast to known systems, the present invention is a merchant driven system that can be used to process a transaction at the point of sale and at the time of purchase. The system is intended to be made available to subscribing merchants, businesses, and individuals herein referred to as "system subscribers" wishing to employ the method and apparatus of the present invention for the electronic processing and settlement of consumer purchases. Further, operational parameters of the present invention allow freedom from customary state or other geographically limiting criteria typical when accepting and processing "paper" checks. The system is designed to act with the national authorization and electronic settlement network known as the ACH system.

The system is designed to perform in a fully automated manner enabling each Transaction Event to be processed by a system subscriber as a point-of-sale transaction in the presence of the consumer. When the transaction event is "approved" funds are debited from an authorized consumer account for credit to the system subscriber and electronic settlement by ACH deposits the transaction amount to the subscriber's designated depository account. Authorized access to consumer accounts and credits to system subscriber depository accounts are performed as "Off-Line" transactions by means of Electronic Funds Transfer ("EFT") through the ACH Network or through the Federal Reserve System.

The invention comprises a point-of-sale processing system comprising electronic data processing equipment which allows individual services selections which provide automated, electronic processing from bank checking or depository accounts. It is the objective of the present invention to automate the point-of-sale environment for processing consumer purchases of goods and services which, other than for the system of the present invention, would necessitate the more traditional acceptance and processing of commercial bank drafts (personal and/or corporate checks). Individual Transaction Events are administered under the system of the present invention by initiating a terminal authorization inquiry and continuing through the electronic settlement of funds representing the Transaction Event from the pre-approved consumer banking accounts.

It is a further objective of the present invention to eliminate the need for "paper" checks as an accepted means of consumer payment. In the place of personal and business checks, consumers would be provided free and unrestricted access to funds secured in bank accounts of various types by means of preauthorized electronic events. System subscribers electronically communicate with the data center of the present invention for individual Transaction Event authorizations which, upon reconciliation of a day's activity, result in an EFT by means of the Automated Clearing House accommodating an "Off-Line" debiting of preauthorized consumer Transaction Events from authorized accounts. Thereafter, each system subscriber is credited with the total of all such daily authorized Transaction Events to its designated banking depository account.

The present invention comprises logic which allows the following services which when individually performed or

4

where combined with other services establish a wholly unique processing medium enabling preauthorized access to consumers' checking account or bank depository reserves.

Authorization—This service supports electronic communication from point-of-sale to the system's central computer. The data center stores positive and negative files concerning consumer accounts thereby providing accurate inquiry responses regarding the current posting status of a consumer's banking account and signalling the system subscriber that said account may be reasonably relied upon for consummating a Transaction Event (i.e., an "Approval") or, where listed as delinquent, indicating that the account may not be so relied upon (i.e., a "Denial").

Check Replacement—This capability operates as an extension of Authorization enabling the system subscriber the capability of completing a Transaction Event by electronically logging the sale whereupon a Transaction Event Slip will be printed or manually prepared for consumer execution at the point-of-sale. By execution of the Transaction Event Slip, the consumer authorizes the electronic accessing of funds secured in his/her authorized banking account in lieu of the more traditional method of issuing personal and business checks. Funding settlement to the system subscriber would be effectuated by means of Electronic Funds Transfer via ACH or the Federal Reserve System as opposed to physically processing and transferring checks among banks.

Bank Transaction Card—As part of this invention an "Off-Line" Debit Card is established on which is stored the information relating to the banking account from which funds representing the Transaction Event would be debited for payment to the system subscriber. This information may be stored on the card itself in encrypted or unencrypted form or may be stored in the central computer where access to such information is gained via special control characters or access codes stored on the card. Electronic authorization for withdrawal of funds from the cardholder's account and subsequent electronic settlement procedures remain essentially identical to processing under the Check Replacement service described above. Information relating to the consumer-cardholder and the appropriate banking account to be debited for a Transaction Event will be encoded upon the magnetic stripe portion of the plastic, and terminal-readable, card.

Thus, the overall objective of the present invention is to provide and support an alternate means for consumer payments for goods and services that operates to replace commercial bank drafts in the point-of-sale environment. Simultaneously, the present invention assures consumers greater access to and use of funds in personal or corporate banking accounts. Further, the system provides system subscribers a significantly improved prospect of collecting the underlying monies for Transaction Events, reduced time for the collecting the cash receipts from Transaction Events, and a pronounced lowering of the present cost of cumbersome procedures otherwise mandated by the existing ACH system for accepting and processing commercial bank drafts.

A further objective of the present invention is to significantly reduce the use of checks as negotiable instruments in effecting the purchase of goods or services and to further reduce the consumers reliance on credit cards or cash for transaction events.

Detailed Description of the Preferred Embodiment

The method of the present invention begins with the electronic recording of consumer information at a system

LML-EP 000073

5,484,988

| 5 | 6 |

subscriber's location using a point-of-sale terminal. This information is obtained in the presence of the consumer and occurs prior to any "Approval" either for the Transaction Event or for the ultimate crediting of the System subscriber's designated depository account. A Transaction Event involves a series of events initiated by a system subscriber's request to sell goods or services by payment from funds secured in a consumer's banking account. First, the consumer's banking account status will be verified through accessing the central computer files of the present invention. Verification that an account may be accessed is established alternatively by means of an encoded, magnetic strip card, or by input of account identification numbers from a consumer's bank account. A more traditional identification of the consumer could also occur including visual examination of driver's license or similar and acceptable picture "ID" however this is not considered part of the present invention.

As an integral portion of each Transaction Event, the system subscriber's location, date and time, and requested sale amount is automatically logged into the system when a system subscriber first accesses the invention. Finally, a Transaction Event Slip ("Sales Slip") will be produced by a printer integral to the point-of-sale terminal and will be executed by the consumer in the amount of the stated purchase with inscribed language defining the Transaction Event and specifically providing consumer authorization for electronic access to his/her banking account. Thereafter, the consumer account will be debited and the proceeds credited to the system subscriber's designated depository account along with all other similar Transaction Events representing the total of the system subscriber's daily activity. Debiting of consumer accounts and settlement deposits to each system subscriber is performed by means of Off-Line electronic funds transfer through and by the ACH or Federal Reserve System.

Equipment Configuration—The present invention can operate with nearly every conceivable manner of point-of-sale equipment system. The central computer system accepts data transmitted from the system subscriber's existing point-of-sale equipment or that which is added to augment service performance. The point of sale terminal of the present invention is implemented in a number of ways, most preferred, however, being activation under a fully automated format. Such a fully automated system generally comprises a dual-port terminal with magnetic stripe reading capabilities interfaced with a logging printer capable of providing individual Transaction Event Slips for consumer execution, and a MICR check reader, optical character recognition ("OCR") equipment, or other device. Variations to this configuration are particularly possible where the system of the present invention is to be activated under a "Split-Dial" feature installed to function within the operational parameters of existing point-of-sale equipment primarily dedicated to bankcard ("credit card") processing. It is contemplated that services may in the future be administered using the present invention with a singular point-of-sale hardware device which, as a function of its design, would incorporate all or most of the service capabilities of an integrated terminal, logging printer, and MICR Check Reading device. The system of the present invention can alternately be interfaced with electronic cash registers now on the market.

Communications links from point-of-sale terminals to the central computer of the present invention will typically be in the form of telephonic network communications over a public switched telephone network ("PSTN") or over other approved networks. Transaction Event verification will occur as a result of point-of-sale terminal access to the central computer's positive and/or negative data files. "Approved" or "Declined" notifications are made to the Point-of-Sale device over the PSTN. All data files will be centrally located and maintained on the invention's central computer data bases. Portions of the data base include but are not limited to third party data files such as the Shared Check Authorization Network ("SCAN") (trademark) data base.

Individual transactions or groupings of transactions are first approved by soliciting an "Authorization" prior to the completion of any requests for electronic funds transfer. To maintain an accurate status of file information for authorizations to subscribing merchants, businesses, and/or individuals, separate data bases are maintained. Current cardholder or banking account status are updated daily and instantly available for point-of-sale inquiry for Transaction Event authorizations, updated daily and are instantly available for point-of-sale inquiry for Transaction Event authorizations.

System subscribers point-of-sale equipment is interfaced to the central computer of the present invention by means of a telephonic network which is able to support communication from a plurality of point-of-sale terminals. Programming of the point-of-sale terminal causes an automatic "Dial-Up" to the central computer and provides an automatic query and response sequence affirming or denying the Transaction Event. The addition of local entry hubs may be installed to better facilitate the speed or economies of communications with the data files. Alternatives to telephonic networks may involve use of satellite communications or enhanced radio transmissions. Similarly, the system's data files and associated Check Replacement Service are contemplated to be responsive to emerging point-of-sale devices intended to seek authorizations by the alternate means of voice pattern recognition, fingerprint identification, retina scan, "smart" chips, and/or consumer or check image and/or signature broadcasting.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1—System overview of the present invention

FIG. 2—The point-of-sale terminal

FIG. 3—The Central Computer System

FIGS. 4-7—The process Data Flow

FIG. 8—Transaction Event Sales Slip

FIG. 9—Manual Transaction Event Sales Slip

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring to FIG. 1 an overall schematic of the present invention is described. Point-of-sale terminals 300 communicate over normal PSTN telephone lines with a central computer system 302 which in turn communicates with a banking institution 304 for purposes of debiting consumer accounts and crediting system subscriber accounts. The banking institution performs its function via normal automated clearing house ("ACH") transactions 306.

Referring to FIG. 2 the point-of-sale terminal is described. The point-of-sale terminal comprises several different entry means. A key board 310 can be used to input consumer information manually. Alternatively a card reader 312 can be used whereby the magnetic stripe on the card is read by the point-of-sale terminal and finally a check reader 314 is also included to read the MICR number on checks as a substitute for either a specific card or key board input. These various

5,484,988

7

input means provide information to a microprocessor 316 which comprises logic means 318, memory means 320, and communication means 322. The logic means 318 comprises logic which allows the information received from the various input means to be processed and stored in the memory 320. The logic means further drives a display 324 which provides a visual output of the account number of the consumer for verification. The communication means 322 allows the subscriber terminal to communicate with the central computer 302 for purposes of processing the consumer's purchase.

Referring to FIG. 3 the central computer system 329 is described. The central computer system receives input from a plurality of point-of-sale terminals which provide transaction information from a system subscriber and a consumer desiring to purchase goods or services. The central computer system comprises a system subscriber 330 file which is a file of those merchants who have elected to use the present invention for processing purchases. The central system also comprises an approved consumer file 332 which stores the names of those consumers who have already been approved for allowing purchases to take place through the various input means as well as a third party database such as the SCAN (trademark) data base relating to consumer credit. The computer system also comprises a communications means 334. The communication means communicates with other outside third party data bases to allow any consumer that has not been approved by the system to have a rapid check of the status of the consumer's banking account and of whether the consumer has current outstanding returns (i.e. bad checks). Once this SCAN (trademark) or other outside third party data base search is performed and where an approval is given, the approved consumer file 332 is updated with the name of the new approved consumer.

As presently configured the central computer 329 already has a third party database known as the SCAN (trademark) database 333 resident on the central computer. Thus credit worthiness can be checked using this SCAN database. The SCAN (trademark) database is updated daily.

The communication means 334 also communicates with a banking institution 338 to instruct the bank to debit the account of the consumer and credit the account of the system subscriber (merchant) with the amount of the purchase. These transactions then take place via the normal ACH transaction process.

Referring to FIG. 4 the process begins by a consumer presenting a specimen or "blank" check complete with MICR number to the system subscriber (the merchant) 100. The system subscriber next determines if the check meets appropriate store policy procedures 102, i.e., that the check has appropriate information on the check. If the check does not meet the store policies, it is returned to the consumer 104. If the check does meet appropriate store policies the on-line verification process proceeds 106. The subscriber begins the process by first pressing the appropriate key on a terminal to access the host computer 108. Thereafter the point of sale terminal prompts the system subscriber to enter the appropriate MICR number 110. The system subscriber then enters the appropriate MICR number either manually or by passing the check through a check reader which determines the MICR number 112.

Referring to FIG. 6 the subscriber would verify that the numbers appearing on the terminal match the MICR numbers on the check 114. During the comparison, the subscriber determines that the check number compares accurately 116 to the number displayed on the terminal. If they

8

do compare the verification process proceeds 120. If the check numbers do not compare with that of the terminal the system subscriber clears the terminal and begins the transaction process again 118. If the process is to be reinitiated, the subscriber enters the MICR number into the point of sale terminal 130. Thereafter the system subscriber compares the MICR numbers as before 132. If the MICR numbers compare to the system display 134 the process proceeds. If the numbers do not compare 136 the check is returned to the consumer and the process terminates 137.

Referring to FIG. 5, if the verification process proceeds the terminal next prompts the system subscriber to enter the amount of the sale 122. The subscriber enters the amount of the sale 124 and the terminal thereafter transmits an inquiry to the host data base for verification 126.

The check approval process next takes place 128. If the check is not approved by the central computer the terminal displays a message declining the transaction 140. Thereafter a printer record of the declined transaction is made for purposes of the system subscriber 142 to comply with the Fair Credit Reporting Act and Regulation E of the Board of Governors of the Federal Reserve System.

If the check is approved the terminal displays a message noting the approval 138 and the specimen check is returned to the consumer. The printer further makes a paper record of the transaction 142 and the consumer places any required information on the paper receipt and signs the receipt authorizing the transaction 144.

Referring to FIG. 7, the process description continues. Once the transaction is approved the central computer captures the MICR information and the sale amount and stores that information 146. The central computer subsequently generates a batch message regarding all transaction events for the prior period and transmits all the transaction event information for the day into the ACH network 148.

During the ACH process each checkwriter's account is debited for the exact purchase amount and such an amount is deposited into a system subscriber designated account 150. Thereafter, collected funds for a total day's events are deposited into a subscriber's account 152. The transaction is then complete 154.

## How to Use

The present invention will require the establishment and maintenance of three interconnected but separate data files for the purpose of performing access searches. Each data file will be accessible by dial-up procedures operating, in most instances, under "Split Dial" format from a point-of-sale ("POS") terminal device or electronic cash register installed for the primary purpose of bankcard and/or bank draft authorizations. The terminal prompts an operator/user to process one of three optional inquiry types. Any one or all of three primary functions are capable of being performed at a single point-of-sale terminal within the control of the system subscriber. The inquiry types and data base format responses are as follows:

Card Authorization—Having depressed the assigned Split Dial key and thereafter being prompted, the system subscriber "slides" an encoded magnetic stripped transaction card through the point-of-sale terminal and enters the "Sale Amount" requested for authorization. Thereupon, the terminal's dial-up capabilities direct the inquiry to the central computer for authorization against "POSITIVE" file of current cardholders whose accounts were listed in "good standing". Inquiries where such a "Match" are found cause



5,484,988

9                                            10

an "Approved" return message from the data file to the
inquiring POS terminal. Conversely, a "No-Match" to
inquiry would result in a "Declined" notice to the POS
terminal. An uploading mode of the present invention causes
forwarding of daily status notifications to the central data
files activating new cardholder accounts in the "POSITIVE"
cardholder file or submitting corrective entries to delete
delinquent or terminated accounts.

Check Authorization—Having depressed the assigned
Split Dial key and thereafter being prompted, the system
subscriber manually enters account numbers from a personal
or business check or, where fully automated, enters a speci-
men check through a MICR Check Reader device interfaced
with the terminal, whereupon the terminal's screen would
display the check's numbers, and hence the account number,
for verification. Thereafter, the operator would enter the
"Sale Amount" requested for authorization. The terminal's
dial-up capabilities then direct the inquiry to the computer
data file center for authorization first against the "POSI-
TIVE" file of "prenoted" bank/checking account numbers
whose accounts were listed in "good standing". A successful
"Match" to an inquiry would result in an "Approved" notice
from the data file to the inquiring terminal. A "No-Match" to
inquiry would not, however, immediately result in a
"Declined" response. Each inquiry preliminarily resulting in
a No-Match would be instantly forwarded/"rolled" to the
third data file preceding any return notice to the inquiring
terminal. This third file is anticipated to be the Shared Check
Authorization Network ("SCAN") a negative data file data
base maintained in the system computer data file center.
Referrals to SCAN or any other positive or negative data
files, enable potential acceptance of Transaction Events
involving consumers "Unknown" to the invention's propri-
etary, "POSITIVE" files. A "Match" on the SCAN "NEGA-
TIVE" file would result in a "Declined" notice; a "No-
Match" would conversely send notification to the inquiring
POS terminal of an "Approved" event. Of significant impor-
tance, the bank/checking account information for each such
"Unknown" consumer's transaction would, subsequent to a
SCAN "Approved" notice, be posted to the invention's
"POSITIVE" file and prenoted through the ACH ("Auto-
mated Clearing House") for future Transaction Events. The
invention, presumedly in an automated mode, is capable of
uploading daily corrections to the POSITIVE data file
including notices of new accounts approved through SCAN
(trademark) and deletions where settlement for consumer
checking account events, initially approved, were subse-
quently dishonored. The SCAN data base is similarly
uploaded with daily activity status corrections.

Check Replacement Service—Inquiries initiated as Check
Replacement requests function in nearly an identical manner
as that of Check Authorization. Records for such events,
when culminating in an "Approved" notices, are separately
preserved. Check Replacement inquiries are processed first
through the system's "POSITIVE" data file and, where no
match is found, proceed to the SCAN data file or other data
base file prior to transmitting an "Approved" or "Declined"
notice to the inquiring POS terminal. A Match in the system
data file indicates a consumer-user whose account was in
"good standing" and would not be required to "roll" to
SCAN. Check Replacement events are reported to and
stored by the computer data file center under a file classi-
fication identifying the transaction as a Check Replacement
Service. The total of daily, approved Transaction Events are
"checkless" sales whereby the service subscribing merchant
has submitted requests for electronic ACH settlement for all
preauthorized consumer purchases. No commercial bank

note ("Paper Check") is accepted or processed by the service
subscriber. In each Transaction Event, a Consumer, at the
point-of-sale, has executed an electronic access ("Off-Line
Debit") authority "Sales Slip" which is automatically printed
upon a terminal's receipt of an "Approved" notice.

All terminal programming and all prompt strings for
MICR Check Reader interfacing are stored in the POS
terminal and the computer center of the present invention
controls interactions between the plurality of terminals and
the central system. The following modules are present.

Programming for MICR/Terminal Interface—system sub-
scriber locations to be activated with the present invention
must possess or acquire a terminal. Those utilizing or being
upgraded to terminals such as a Tranz (trademark) 330 or
other terminals with interface capabilities with the check
reader for all suitable point-of-sale terminals.

The preferred format for terminal operations is generated
from a singular split dial key. Thereafter, the "prompt string"
would proceed in a manner such as i) "Card=1"; "Check=2"
requiring operator selection; then, where selecting a check-
ing account inquiry ii) the operator would respond to a
secondary prompt of "Auth=1"; "Replace=2". These entry
selections precede the magnetic stripe "reading" of a card/
submittal or a check through the MICR (Account Identifi-
cation), the entry of the requested sale amount, and the
terminal's dial-up for authorization against the computer
data file center.

The MICR interface results in the transmittal of a query
for data center approval of the entire ABA/Transit and
personal or corporate checking account numbers. Instances
where printed checks add the individual check's number to
the end of the account number can be "dropped" by Check
Reader switch settings. Subsequent to a terminal's receipt of
the MICR number string but prior to the operator's entry of
the requested sale amount and authorization dial-up, a
verification prompt "flashing" the ABA and account num-
bers must be displayed on the terminal's screen requiring the
operator to depress "Enter" to proceed, if correct, or "Clear",
if incorrect and thereby enabling the terminal operator to
resubmit the specimen check through the MICR Check
Reader. It is important to note that account information may
be entered manually as well at the point of sale with the other
financial advantages of the present invention still in effect.

The computer data file center receives and processes
Transaction Event authorization requests utilizing the entire
MICR string for accurate, error-free identification of both
the consumer bank and a specific checking or depository
account to participate in a sale. ACH settlement criteria
mandate exact recall for the bank and checking account
numbers to properly complete any debit request. This inven-
tion conforms to each and every requirement of the ACH
transaction regulations.

Each Transaction Event is completed with the logging
printer generation of a Transaction Event ("Sales" Slip for
each "Approved" authorization inquiry processed (FIG. 8).
Alternatively, a manually created transaction event slip can
also be prepared (FIG. 9). Each such Transaction Event Slip
must be exacting in its retention of account numbers and the
sale amount enabling both the consumer and system sub-
scriber to be provided "hard copy" receipts of the event.
Also included would be a clear printing of the transaction
type; "Bank Card", "Check Authorization", or "Check
Replacement". Authorization language is printed immedi-
ately preceding the consumer's signature line specifically
authorizing electronic access in payment of the requested
transaction sale amount.

LML-EP 000076

5,484,988

**11**

In addition to the primary functions for POS terminal programming and MICR Check Reader Interface, each Point-of-Sale terminal location is capable of generating printed summations of daily activity. These reports list and separately total each authorization/service type, whether produced as a singular report or as the result of multiple terminal "closeout" procedures.

Instances will arise with either the Bank Card or Check Replacement Service where previously authorized Transaction Events will require the operational equivalent of a bankcard "Void" or "Credit" notation. The methodology will be available for Split Dial messages to the computer data file center of a post-authorization "Error" or "Transaction Cancellation" notice. The "Cancel" procedure is instituted by depressing for example the "3" key (i.e. "Cancel=3"). By so doing, the system subscriber may cancel a previously approved and logged event. This Transaction Event which was recorded on the data files and reported on the service subscriber's daily Activity Summation Report, thereafter carries an offsetting, "Flagged" cancellation notice.

**Summary**

A flexible purchase transaction system is described which precisely fits within existing ACH procedures for checking account events for processing of pre-authorized electronic debits as a replacement for commercial bank drafts (paper checks). The main advantage to the proposed invention is the fact that a truly paperless transaction may occur. Departures from the proposed system especially with respect to the Point-of-Sale terminals will be apparent to those skilled in the art without departing from the spirit of the invention as described.

We claim:

1. A checkwriting point of sale system comprising:

a point of sale terminal adapted to receive consumer bank account information from any bank check;

a central computer system;

first communications means integral to said point of sale terminal for electronically communicating with the central computer system;

memory means integral to said point of sale terminal for temporarily storing the consumer bank account information;

the central computer system having second communication means for receiving information from a plurality of said point of sale terminals;

the central computer system second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using a bank check as a negotiable instrument.

2. The checkwriting point of sale system according to claim 1 wherein said point of sale terminal further includes means for reading magnetic ink character recognition numbers appearing on a consumer check for the sole purpose of identifying and reading the consumer bank account information.

3. The checkwriting point of sale system according to claim 1 wherein said point of sale terminal further comprises an alphanumeric display means for receiving said consumer bank account information from the memory means and for displaying the consumer bank account information.

**12**

4. The checkwriting point of sale system according to claim 1 further comprising a printer means for receiving information from the memory means of the point of sale terminal and for generating a transaction event sale slip.

5. The checkwriting point of sale system according to claim 1 further comprising a resident third party database wherein consumer banking account status information is stored, the consumer banking account status information being used for verification of consumer banking account status.

6. The checkwriting point of sale system according to claim 1 wherein the central computer system further comprises a system subscriber database, the system subscriber database comprising information regarding merchants and service providers that are authorized to use the checkwriting point of sale system.

7. The checkwriting point of sale system according to claim 6 wherein the central computer system further comprises a database comprising information regarding consumers whose consumer banking account status is not verified as bad.

8. A checkwriting point of sale process comprising:

a) presenting any bank check specimen to a point of sale terminal located at a merchant or service provider;

b) reading the magnetic ink character recognition number information on the check for the sole purpose of obtaining consumer bank account information, without using the check as a negotiable instrument,

c) storing the consumer bank account information obtained from the check and verifying that account numbers were accurately read at the point of sale terminal,

d) providing transaction event information to the point of sale terminal,

e) transmitting the transaction event information and consumer bank account information to a central computer system,

f) storing the transaction event information and consumer banking account information, and

g) subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations.

9. A checkwriting point of sale system comprising:

a point of sale terminal adapted to receive consumer bank account information;

a central computer system;

first communications means integral to said point of sale terminal for electronically communicating with the central computer system; and

memory means integral to said point of sale terminal for temporarily storing the consumer bank account information;

the point of sale terminal comprising reading means for reading magnetic ink character recognition numbers on any consumer bank check for the sole purpose of eliciting consumer bank account information;

the central computer system having second communication means for receiving information from a plurality of said point of sale terminals;

the central computer system second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using a bank check as a negotiable instrument.

LML-EP 000077

5,484,988

13

10. The checkwriting point of sale system according to claim 9 further comprising a printer means for receiving information from the memory means of the point of sale terminal and for generating a transaction event sale slip.

11. The checkwriting point of sale system according to claim 9 further comprising a resident third party database wherein consumer banking account status information is stored, the consumer banking account status information being used for verification of consumer banking account status.

12. The checkwriting point of sale system according to claim 9 wherein the central computer system further comprises a system subscriber database, the system subscriber database comprising information regarding merchants and service providers that are authorized to use the checkwriting point of sale system.

13. The checkwriting point of sale system according to claim 4, wherein the sales slip includes means for execution by the consumer for proof of bank account access authorization.

14. The checkwriting point of sale system of claim 1, wherein the point of sale terminal further comprises means for automatically logging a point of sale terminal location and transaction date, time, and sales amount.

15. The checkwriting point of sale process of claim 8, further comprising:

a) verifying the status of the consumer bank account;

b) verifying the consumer bank account status of the consumer via a query to a third party database if the consumer bank account is verified as bad, and

14

c) sending an approval message to the point of sale terminal if the consumer's banking account status is approved for the transaction.

16. The checkwriting point of sale process of claim 8, further comprising:

(A) printing a transaction event sales slip following the sending of an approval message; and

(B) executing of the sales slip by the consumer as proof of bank account access authorization.

17. The checkwriting point of sale process of claim 15, further comprising:

(A) printing a transaction event sales slip following the sending of an approval message; and

(B) executing of the sales slip by the consumer as proof of bank account access authorization.

18. The checkwriting point of sale process of claim 8, further comprising automatically logging point of sale terminal location information and transaction date, time, and sales amount information into the point of sale terminal.

19. The checkwriting point of sale system according to claim 10, wherein the sales slip includes means for execution by the consumer of proof of bank account access authorization.

20. The checkwriting point of sale system of claim 9, wherein the point of sale terminal further comprises means for automatically logging a point of sale terminal location and transaction date, time, and sales amount.

* * * * *

LML-EP 000078

PATENT APPLICATION SERIAL NO. 07/975717

**U.S. DEPARTMENT OF COMMERCE**
**PATENT AND TRADEMARK OFFICE**
**FEE RECORD SHEET**

060 MB 11/27/92 07975717                    1 201      395.00 CK

103030D  12/15/92  07975717        01-2520  130  201        40.00CR

PTO-1556
(5/87)

LML-EP 000079

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of Robert H. Hills and Henry R. Nichols

Serial No. NOV 13 1992                    Group Art Unit:

Filed:                                    Examiner:

FOR:   CHECKWRITING POINT OF SALE SYSTEM

\*      \*      \*      \*      \*

Hon. Commissioner of Patent
    and Trademarks
Washington, D.C. 20231

Dear Sir:

    Enclosed please find the following:

1.  Declaration and Power of Attorney of Henry R. Nichols and
    Robert R. Hills (separate documents)

2.  Verified Statement Claiming Small Entity (Inventor)
    (separate documents)

3.  Specification, 9 Claims, and Abstract

4.  8 informal drawing sheets (11 figures)

5.  Submitted herewith is a check for $395.00 to cover the
    cost of the filing.  Any deficiency or overpayment should
    be charged or credited to the Deposit Account of Arter &
    Hadden, No. 01-2520.

                        Respectfully submitted,

                        Jon L. Roberts
                        Registration No. 31,293
                        Arter & Hadden
                        1801 K Street, N.W.
                        Suite 400K
                        Washington, D.C. 20006

DATED:  November 13, 1992

LML-EP 000080

08/957390
975717

1    ABSTRACT

2         A point of sale system designed to read information from a

3    consumer's check, credit card, or manual input with a subsequent

4    debiting of a consumer's account and crediting a merchant's account

5    for the goods or services provided.  Point of sale terminals are

6    designed to accept a form of credit card with a consumer's bank

7    account information encoded thereon or in the alternative to read

8    the MICR number from a consumer's check in order to verify that a

9    consumer has an appropriate balance to conduct the transaction with a

10   given merchant.  Thereafter the transaction of that information is

11   transmitted to a central computer system which verifies the

12   consumer's credit worthiness and stores the transaction event

13   information for subsequent bank reconciliation via the ACH network.

14   The invention eliminates the needs for paper checks with all bank

15   reconciliation being accomplished electronically.

16

17

18

19   jtr-1808

20

-21-

LML-EP 000081



8                    395-201- A /797571'

## CHECKWRITING POINT OF SALE SYSTEM

1   INVENTORS:    ROBERT H. HILLS AND HENRY R. NICHOLS
2   This application is a continuation of 17/975,717 now abandoned.

3   ## FIELD OF THE INVENTION

4        This invention relates to the field of Point-of-Sale systems
5   and more particularly the integration and processing of purchases
6   whereby a check is used as the basic source of identification of
7   the individual and the bank and bank account be debited.

8

9   ## BACKGROUND ART

10       Numerous devices exist for processing checks.  For example,
11   U.S. patent number 4,933,536 to Lindemann, et al, describes a check
12   processing device which is used together with a Point-of-Sale terminal.
13   This particular device involves copying and taking a picture of an
14   individual whereby a dishonored check could then be traced to the
15   person who has offered it.

16   U.S. Patent No. 4,810,866 to Lloyd, Jr., describes a check
17   validation system again located together with a Point-of-Sale
18   system for imprinting and otherwise physically dealing with a
19   check.

20       Other systems also deal with an apparatus for handling checks
21   at a point of sale.  For example, U.S. Patent No. 4,743,743 to Fukatsu
22   describes one such transaction apparatus where a check is examined
23   by a reader.  U.S. Patent No. 4,672,377 to Murphy, et al. describes a
24   check authorization system wherein a check is imprinted with a bar
25   code and information concerning customers which are stored in a
26   database.  U.S. Patent No. 3,845,470 to Schuller, discloses a vending
27   system using a modified form of a check which is imprinted with
28   identification codes, when someone attempts to use the check in

-1-

LML-EP 000082

1  purchasing goods and services, and wherein a vending operation will

2  not place, if information associated with the check is not valid in

3  a particular database.

4      Other check-based financial systems have also been the subject

5  of invention. U.S. Patent No. 4,617,457 addresses an ATM or automatic

6  teller machine form of cashing checks. Such systems create a picture

7  of the check involved and also involves checking against a

8  specialized database to insure that the check is a "valid" one (see

9  also U.S. Patent No. 4,580,040 to Granzow et al.).

10     Another generic category of financial systems deals with

11  methods of handling the financial transactions apart from the

12  physical handling of the check itself. For example, U.S. Patent No.

13  3,824,544 to Simjian describes a merchant issued "check" which can

14  then be used in the purchase of goods and services and upon

15  purchase, a specialized code is evaluated to determine if the check

16  is being validly utilized.

17  U.S. Patent No. 4,404,649 to Nunley et al. describes a document

18  processing system which generally discloses a method of reading

19  checks for processing a wide variety of financial documents.

20  U.S. Patent No. 4,523,330 to Caine also describes a method for

21  processing financial documents which systems also includes a Point-

22  of-Sale terminal for generating image data from checks as they are

23  being processed. This patent is drawn principally to the actual

24  terminal itself.

25  U.S. Patent No. 4,673,802 to Ohmae et al. describes a central

26  processing system having stored data relating to the accounts of

-2-

1   users which users are approved or disapproved at the Point-of-Sale

2   based upon information in the database.

3        Finally, Patent No. 4,678,896 to Carlson et al. describes a

4   Point-of-Sale system whereby apparatus is provided to restore the

5   processing and imprinting of checks.

6        All of these above patents deal with the specific problem of

7   how to accept a check from customer for the purchase of goods and

8   services. It does not in anyway address the subsequent processing

9   of checks or indeed address that the issue in anyway of how checks

10  are cleared through the normal automatic check handling

11  clearinghouse operation that exist in the financial world. Thus, the

12  interaction of these systems with the ACH process is not addressed

13  in anyway. This is particularly important since if any Point-of-

14  Sale check handling system is to interact with the ACH mechanism it

15  must adhere to that processing scheme and indeed lend itself to use

16  with a processing scheme.

17       It is an objective of the present invention to be adaptable

18  for use with the ACH system and to be smoothly incorporated into

19  it. In this fashion, it will immediately be useful for a much

20  wider range of financial transactions above and beyond those

21  contemplated by the background I discussed above.

22

23  SUMMARY OF THE INVENTION

24       The present invention comprises a process and apparatus which

25  may be employed for the purpose of effecting payments for point-of-

26  sale purchases  of goods and services paid from consumer funds

27  secured in bank checking or depository accounts.  Each sale or

-3-

LML-EP 000084

1   "Transaction Event" would be an electronic and "paperless" event

2   thereby eliminating reliance on accepting and processing commercial

3   bank drafts (personal or corporate checks) and the physical

4   handling of those bank drafts thus replacing commercial bank drafts

5   at the point-of-sale.

6   The system is intended to be made available to subscribing

7   merchants, businesses, and individuals, herein referred to in this

8   application as "system subscribers" wishing to employ the method

9   and apparatus of the present invention for the electronic

10  processing and settlement of consumer purchases. Further, the

11  present invention's operational parameters of the present invention allow freedom from

12  customary state or other geographically limiting criteria typical

13  when accepting and processing "paper" checks. The system is

14  designed to act with the national authorization and electronic

15  settlement network known as the ACH ("Automated Clearing House")

16  system.

17  The system is designed to perform in a fully automated manner

18  enabling each Transaction Event to be processed by a system

19  subscriber as a point-of-sale transaction in the presence of the

20  consumer. When the transaction event is "approved" funds are

21  debited from an authorized consumer account for credit to the

22  system subscriber and electronic settlement by ACH deposit to the deposits the transaction amount

23  subscriber's designated depository account. Authorized access to

24  consumer accounts and credits to system subscriber depository

25  accounts would be performed as "Off-Line" transactions by means of are

26  Electronic Funds Transfer ("EFT") through the ACH Network or

27  through the Federal Reserve System.

-4-

1    The invention comprises a point-of-sale processing system

2    comprising electronic data processing equipment which allows

3    individual services selections which provide automated, electronic

4    processing from bank checking or depository accounts. It is the

5    objective of the present invention to automate the point-of-sale

6    environment for processing consumer purchases of goods and services

7    which, other than for the ~~applicants'~~ *of the present invention* system, would necessitate the

8    more traditional acceptance and processing of commercial bank

9    drafts (personal and/or corporate checks). Individual Transaction

10   Events ~~would be~~ *are* administered under the ~~applicants'~~ *of the present invention* system,

11   initiating a terminal authorization inquiry and continuing through

12   the electronic settlement of funds representing the Transaction

13   Event from the pre-approved consumer banking accounts.

14   It is a further objective of the present invention to

15   eliminate the need for "paper" checks as an accepted means of

16   consumer payment. In the place of personal and business checks,

17   consumers would be provided ~~their~~ free and unrestricted access to

18   funds secured in bank accounts of various types by means of

19   preauthorized electronic events. System subscribers electronically

20   communicate with the ~~invention's~~ *of the present invention* data center for individual

21   Transaction Event authorizations which, upon reconciliation of a

22   day's activity, result in an ~~Electronic Funds Transfer ("EFT")~~ *EFT* by

23   means of the Automated Clearing House accommodating an "Off-Line"

24   debiting of preauthorized consumer Transaction Events from

25   authorized accounts. Thereafter, each system subscriber ~~would be~~

26   credited with the total of all such daily authorized Transaction

27   Events to its designated banking depository account.

-5-

LML-EP 000086

1    The present invention comprises logic which allows the

2    following services which when individually performed or where

3    combined with other services establish a wholly unique processing

4    medium enabling preauthorized access to consumers' checking account

5    or bank depository reserves.

6    Authorization - This service supports electronic communication

7    from point-of-sale to the system's central computer.  The data

8    center stores positive and negative files concerning consumer

9    accounts thereby providing accurate inquiry responses regarding the

10   current posting status of a consumer's banking account and

11   signaling the system subscriber that said account may be reasonably

12   relied upon for consummating a Transaction Event (i.e., an

13   "Approval") or, where listed as delinquent, indicating that the

14   account may not be so relied upon (i.e., a "Denial").

15   Check Replacement - This capability operates as an extension

16   of Authorization enabling the system subscriber the capability of

17   completing a Transaction Event by electronically logging the sale

18   whereupon a Transaction Event Slip will be printed or manually

19   prepared for consumer execution at the point-of-sale.  By

20   execution of the Transaction Event Slip the consumer authorizes the electronic accessing of

21   funds secured in his/her authorized banking account in lieu of the

22   more traditional method of issuing personal and business checks.

23   Funding settlement to the system subscriber would be effectuated by

24   means of Electronic Funds Transfer via ACH or the Federal Reserve

25   System as opposed to physically processing and transferring checks

26   among banks.

-6-

LML-EP 000087

1    Bank Transaction Card - As part of this invention on "Off-
2    Line" Debit Card is established on which is stored the information
3    relating to the banking account from which funds representing the
4    Transaction Event would be debited for payment to the system
5    subscriber.  This information may be stored on the card itself in
6    encrypted or unencrypted form or be stored in the central computer
7    where access to such information is gained via special control
8    characters or access codes stored on the card.    Electronic
9    authorization for withdrawal of funds from the cardholder's account
10   and  subsequent  electronic  settlement  procedures  would  remain
11   essentially identical to processing under the Check Replacement
12   service described above.   Information relating to the consumer-
13   cardholder and the appropriate banking account to be debited for a
14   Transaction Event will be encoded upon the magnetic stripe portion
15   of the plastic, and terminal-readable, card.

16        Thus, the overall objective of the present invention is to
17   provide and support an alternate means for consumer payments for
18   goods and services that operates to replace commercial bank drafts
19   in the point-of-sale environment.   Simultaneously, the present
20   invention assures consumers greater access and use to funds in
21   personal or corporate banking accounts.   Further, the system
22   provides  system subscribers a significantly improved prospect of
23   collecting the underlying monies for Transaction Events, reduced
24   time for the collecting the cash receipts from Transaction Events,
25   and a pronounced lowering of the present cost of cumbersome
26   procedures otherwise mandated by the existing ACH system for
27   accepting and processing commercial bank drafts.

-7-

LML-EP 000088

1    A further objective of the present invention is to
2 significantly reduce the use of checks ~~as a means of conducting~~
3 purchases of goods or services and to further reduce the consumers
4 reliance on credit cards or cash for transaction events ~~as well~~.

5        DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT
6    The present invention begins with the electronic recording of
7 consumer information ~~at a~~ system subscribers location using a ~~at a~~
8 point-of-sale terminal.   This information is obtained in the
9 presence of the consumer and occurs prior to any "Approval" either
10 for the Transaction Event or the ultimate crediting of the System
11 subscriber's designated depository account.   A Transaction Event
12 involves a series of events initiated by a system subscriber's
13 request to sell goods or services by payment from funds secured in
14 a consumer's banking account.   First, the consumer's banking
15 account status will be verified through accessing the ~~invention's~~
16 central computer files.   Verification that an account may be
17 accessed is established alternatively by means of an encoded,
18 magnetic strip card, or by input of account identification numbers
19 from a consumer's bank account.   A more traditional identification
20 of the consumer could also occur including visual examination of
21 driver's license or similar and acceptable picture "ID" however
22 this is not part of the invention.
23        As an integral portion of each Transaction Event, the system
24 subscriber's location, date and time, and requested sale amount is
25 automatically logged into the system when a system subscriber first
26 accesses the invention.   Finally, a Transaction Event Slip ("Sales
27 Slip") will be produced by an printer integral to the point-of-sale

LML-EP 000089

1   terminal and _will be_ executed by the consumer in the amount of the stated

2   purchase with inscribed language defining the Transaction Event and

3   specifically providing consumer authorization for electronic access

4   to his/her banking account.  Thereafter, the consumer account will

5   be debited and the proceeds credited to the system subscriber's

6   designated  depository  account  along  with  all  other  similar

7   Transaction  Events  representing  the  total  of  the  system

8   subscriber's daily activity.  Debiting of consumer accounts and

9   settlement deposits to each system subscriber is performed by means

10  of Off-Line electronic funds transfer through and by the ACH or

11  Federal Reserve System.

12      Equipment Configuration - The present invention can operate

13  with nearly every conceivable point-of-sale equipment system.  The

14  central computer system accepts data transmitted from the system

15  subscriber's existing point-of-sale equipment or that which is

16  added to augment service performance.  The point of sale terminal

17  of the present invention is implemented in a number of ways, most

18  preferred,  however,  being  activation  under  a  fully  automated

19  format.  Such a fully automated system generally comprises a dual-

20  port terminal with magnetic stripe reading capabilities interfaced

21  with a logging printer capable of providing individual Transaction

22  Event Slips for consumer execution, and a MICR check reader, optical

23  character _recognition_ ("OCR") equipment, or other device.  Variations to this

24  configuration are particularly possible where the applicants'

25  system _of the present invention is_ were to be activated under a "Split-Dial" feature installed

26  to function within the operational parameters of existing point-of-

27  sale equipment primarily dedicated to bankcard ("credit card")

-9-

LML-EP 000090

*It is contemplated*

1   processing. ~~The present invention contemplates~~ that services may

2   in the future be administered on a singular point-of-sale hardware *using the present invention with*

3   device which, as a function of its design, would incorporate all or

4   most of the service capabilities of an integrated terminal, logging

5   printer, and MICR Check Reading device. The system can alternately *of the present invention*

6   be interfaced with electronic cash registers now on the market.

7       Communications links from point-of-sale terminals to the

8   central computer of the present invention will typically be in form *the*

9   of telephonic network communications over a public switched

10  telephone network ~~(PSTN)~~ or other approved networks. Transaction *("PSTN") or over*

11  Event verification will occur as a result of point-of-sale terminal

12  access to the central computer's positive and/or negative data

13  files. "Approved" or "Declined" notifications are made to the

14  Point-of-Sale device over the PSTN. All data files will be

15  centrally located and maintained on the invention's central

16  computer data bases. Portions of the data base include but are not

17  limited to third party data files such as the Shared Check

18  Authorization Network ("SCAN") (trademark) data base.

19      Individual or groupings of transactions are first approved by *transactions*

20  soliciting an "Authorization" prior to the completion of any

21  requests for electronic funds transfer. To maintain an accurate

22  status of file information for authorizations to subscribing

23  merchants, businesses, and/or individuals, separate data bases are

24  maintained. Current cardholder or banking account status are

25  updated daily and instantly available for point-of-sale inquiry for

26  Transaction Event authorizations.

-10-

LML-EP 000091

1  updated daily and instantly available for point-of-sale inquiry for

2  Transaction Event authorizations.

3      System subscribers' point-of-sale equipment are interfaced to

4  the invention's central computer by means of telephonic network-

5  able to support communication from a plurality of point-of-sale

6  terminals.  Programming of the point-of-sale terminal causes an

7  automatic "Dial-Up" to the central computer and provides an

8  automatic query and response affirming or denying the Transaction

9  Event.  The addition of local entry hubs may be installed to better

10  facilitate the speed or economics of communications with the data

11  files.  Alternatives to telephonic networks may involve use of

12  satellite communications or enhanced radio transmissions.

13  Similarly, the system's data files and associated Check Replacement

14  Service are contemplated to be responsive to emerging point-of-sale

15  devices intended to seek authorizations by the alternate means of

16  voice pattern recognition, fingerprint identification, retina scan,

17  "smart" chips, and/or consumer or check image and/or signature

18  broadcasting.

19  Brief Description of the Drawings

20  Figure 1 -    System overview of the present invention

21  Figure 2 -    The point-of-sale terminal

22  Figure 3 -    The Central Computer System

23  Figures 4-9 - The process Data Flow

24  Figure 10 -   Transaction Event Sales Slip

25  Figure 11 -   Manual Transaction Event Sales Slip

26

-11-

1    Detailed Description of the Preferred Embodiment

2    Referring to Figure 1 an overall schematic of the present

3    invention is described. Point-of-sale terminals 300 communicate

4    over normal PSTN telephone lines with a central computer system 302

5    which in turn communicates with a banking institution 304 for

6    purposes of debiting consumer accounts and crediting system

7    subscriber accounts. The banking institution performs its function

8    via normal automated clearing house ("ACH") transactions 306.

9    Referring to Figure 2 the point-of-sale terminal is described.

10   The point-of-sale terminal comprises several different entry means.

11   A key board 310 can be used to input consumer information manually.

12   Alternatively a card reader 312 can be used whereby the magnetic

13   stripe on the card is read by the point-of-sale terminal and

14   finally a check reader 314 is also included to read the MICR number

15   on checks as a substitute for either a specific card or key board

16   input. These various input means provide information to a micro-

17   processor 316 which comprises logic means 318, memory means 320,

18   and communication means 322. The logic means 318 comprises logic

19   which allows the information received from the various input means

20   to be processed and stored in the memory 320. The logic means

21   further drives a display 324 which provides a visual output of the

22   account number of the consumer for verification. The communication

23   means 322 allows the subscriber terminal to communicate with the

24   central computer 302 for purposes of processing the consumer's

25   purchase.

26   Referring to Figure 3 the central computer system 329 is

27   described. The central computer system receives input from a

-12-

LML-EP 000093

1   plurality of point-of-sale terminals which provide transaction

2   information from a system subscriber and a consumer desiring to

3   purchase goods or services.  The central computer system comprises

4   a system subscriber 330 file which is a file of those merchants who

5   have elected to use the present invention for processing purchases.

6   The central system also comprises an approved consumer file 332

7   which stores the names of those consumers who have already been

8   approved for allowing purchases to take place through the various

9   input means as well as a third party database such as the SCAN

10  (trademark) data base relating to consumer credit.  The computer

11  system  also  comprises  a  communications  means  334.  The

12  communication means communicates with other outside third party

13  data bases which allows the consumer, *to allow any Consumer* that has not been approved by

14  the system to have a rapid check of the status of the consumer's

15  banking account and whether the consumer has current outstanding

16  returns (i.e. bad checks).  Once this SCAN (trademark) or *other* outside

17  third party data base search is performed and where an approval is

18  given, the approved consumer file 332 is updated with the name of

19  the new approved consumer.

20      As presently configured the central computer 329 already has

21  a third party database known as the SCAN (trademark) database 333

22  resident on the central computer.  Thus credit worthiness can be

23  checked using this SCAN database.  The SCAN (trademark) database is

24  updated daily.

25      The communication means 334 also communicates with a banking

26  institution 338 which instructs *to instruct* the bank to debit the account of

27  the consumer and credit the account of the system subscriber

-13-

1   (merchant) with the amount of the purchase.   These transactions

2   then take place via the normal ACH transaction process.

3        Referring to Figure 4 the process begins by a consumer

4   presenting a specimen or "blank" check complete with MICR number to

5   the system subscriber (the merchant) 100.   The system subscriber

6   next determines if the check meets appropriate store policy

7   procedures 102, *i.e.,* that the check has appropriate information on the

8   check.   If the check does not meet the store policies, it is

9   returned to the consumer 104.   If the check does meet appropriate

10  store policies the on-line verification process proceeds 106.   The

11  subscriber *begins* enters the process by first pressing the appropriate key

12  on a terminal to access the host computer 108.   Thereafter the

13  point of sale terminal prompts the system subscriber to enter the

14  appropriate MICR number 110.   The system subscriber then enters the

15  appropriate MICR number either manually or by passing the check

16  through a check reader which determines the MICR number 112.

17       Referring to Figure 5 the subscriber would verify that the

18  numbers appearing on the terminal match the MICR numbers on the

19  check 114.   During the comparison, the subscriber determines that

20  the check number *compares* compare accurately 116 to the number displayed on

21  the terminal.   If they do compare the verification process proceeds

22  120.   If the check numbers do not compare with that of the terminal

23  the system subscriber clears the terminal and begins the

24  transaction process again 118.   If the process is to be

25  reinitiated, the subscriber enters the MICR number into the point

26  of sale terminal 130.   Thereafter the system subscriber compares

27  the MICR numbers as before 132.   If the MICR numbers compare to the

-14-

LML-EP 000095

1   system display 134  the process proceeds.  If the numbers do not

2   compare 136 the check is returned to the consumer and the process

3   terminates 137.

4        Referring to Figure 5, if the verification process proceeds

5   the terminal next prompts the system subscriber to enter the amount

6   of the sale 122.  The subscriber enters the amount of the sale 124

7   and the terminal thereafter transmits an inquiry to the host data

8   base for verification 126.

9        The check approval process next takes place 128.  If the check

10  is not approved by the central computer the terminal displays a

11  message declining the transaction 140.  Thereafter a printer record

12  of the declined transaction is made for purposes of the system

13  subscriber 141 to comply with the Fair Credit Reporting Act and

14  Regulation E of the Board of Governors of the Federal Reserve

15  System.

16       If the check is approved the terminal displays a message

17  noting the approval 138 and the specimen check is returned to the

18  consumer.  The printer further makes a paper record of the

19  transaction 142 and the consumer places any required information on

20  the paper receipt and signs the receipt authorizing the transaction

21  144.

22       Referring to Figure 7, the process description continues.

23  Once the transaction is approved the central computer captures the

24  MICR information and the sale amount and stores that information

25  146.  The central computer subsequently generates a batch message

26  regarding all transaction events for the prior period and transmits

-15-

LML-EP 000096

1    all the transaction event information for the day into the ACH

2    network 148.

3        During the ACH process each checkwriter's account is debited

4    for the exact purchase amount and such an amount is deposited into

5    a system subscriber designated account 150. Thereafter, collected

6    funds for a total day's events are deposited into a ~~subscribers~~ *subscriber's*

7    account 152. The transaction is then complete 154.

8    HOW TO USE

9        The present invention will require the establishment and

10   maintenance ~~for access searches~~ of three interconnected but

11   separate data files. Each *data file* will be accessible by dial-up procedures

12   operating, in most instances, under *("pos")* "Split Dial" format from a

13   point-of-sale terminal device or electronic cash register installed

14   for the primary purpose of bankcard and/or bank draft

15   authorizations. ~~Terminal~~ *The terminal* prompts an operator/user to process one

16   of three optional inquiry types. Any one or all of three primary

17   functions are capable of being performed at a single point-of-sale

18   terminal within the control of the system subscriber. The inquiry

19   types and data base format responses ~~would be~~ *are* as follows :

20       Card Authorization - Having depressed the assigned Split Dial

21   key and thereafter being prompted, the system subscriber ~~would~~ *slides an*

22   ~~"slide" a~~ encoded magnetic stripped transaction card through the

23   point-of-sale terminal and ~~enter~~ *enters* the "Sale Amount" requested for

24   authorization. Thereupon, the terminal's dial-up capabilities

25   direct the inquiry to the central computer for authorization

26   against "POSITIVE" file of current cardholders whose accounts were

27   listed in "good standing". Inquiries where such a "Match" are

-16-

LML-EP 000097

1    found cause an "Approved" return message from the data file to the

2    inquiring POS terminal. Conversely, a "No-Match" to inquiry would

3    result in a "Declined" notice to the POS terminal. An uploading

4    mode of the present invention causes forwarding of daily status

5    notifications to the central data files activating new cardholder

6    accounts in the "POSITIVE" cardholder file or submitting corrective

7    entries to delete delinquent or terminated accounts.

8        Check Authorization - Having depressed the assigned Split Dial

9    key and thereafter being prompted, the system subscriber manually

10   enters account numbers from a personal or business check or, where

11   fully automated, enters a specimen check through a MICR Check Reader

12   device interfaced with the terminal, whereupon the terminal's

13   screen would display the check's numbers, and hence the account number

14   for verification. Thereafter, the operator would enter the "Sale

15   Amount" requested for authorization. The terminal's dial-up

16   capabilities then direct the inquiry to the computer data file

17   center for authorization first against the "POSITIVE" file of

18   "prenoted" bank/checking account numbers whose accounts were listed

19   in "good standing". A successful "Match" to an inquiry would

20   result in an "Approved" notice from the data file to the inquiring

21   terminal. A "No-Match" to inquiry would not, however, immediately

22   result in a "Declined" response. Each inquiry preliminarily

23   resulting in a No-Match would be instantly forwarded/"rolled" to

24   the third data file preceding any return notice to the inquiring

25   terminal. This third file is anticipated to be the Shared Check

26   Authorization Network ("SCAN") a negative data file data base

27   maintained in the system computer data file center. Referrals to

-17-

LML-EP 000098

1   SCAN or any other positive or negative data files, enable potential
2   acceptance of Transaction Events involving consumers "Unknown" to
3   the invention's proprietary, "POSITIVE" files.  A "Match" on the
4   SCAN "NEGATIVE" file would result in a "Declined" notice; a
5   "No-Match" would conversely send notification to the inquiring POS
6   terminal of an "Approved" event.  Of significant importance, the
7   bank/checking  account  information  for  each  such  "Unknown"
8   consumer's transaction would, subsequent to a SCAN "Approved"
9   notice, be posted to the invention's "POSITIVE" file and prenoted
10  through the ACH ("Automated Clearing House") for future Transaction
11  Events.  The invention, presumably in an automated mode, is capable
12  of uploading daily corrections to the POSITIVE data file including
13  notices of new accounts approved through SCAN (trademark) and
14  deletions where settlement for consumer checking account events,
15  initially approved, were subsequently dishonored.  The SCAN data
16  base is similarly uploaded with daily activity status corrections.
17      Check  Replacement  Service - Inquiries  initiated  as  Check
18  Replacement requests function in nearly an identical manner as that
19  of Check Authorization.  Records for such events, when culminating
20  in "Approved" notices, are separately preserved.  Check Replacement
21  inquiries are processed first through the system's "POSITIVE" data
22  file and, where no match is found, proceed to the SCAN data file or
23  other data base file prior to transmitting an "Approved" or
24  "Declined" notice to the inquiring POS terminal.  A Match in the
25  system data file indicates a consumer-user, whose account was in
26  "good standing" and would not be required to "roll" to SCAN.  Check
27  Replacement events are reported to and stored by the computer data

-18-

LML-EP 000099

1    file center under a file classification identifying the transaction
2    was a Check Replacement Service.  The total of daily, approved
3    Transaction Events are "checkless" sales whereby the service
4    subscribing merchant has submitted requests for electronic ACH
5    settlement for all preauthorized consumer purchases.  No commercial
6    bank note ("Paper Check") is accepted or processed by the service
7    subscriber.   In each Transaction Event, a Consumer, at the
8    point-of-sale, has executed an electronic access ("Off-Line Debit")
9    authority "Sales Slip" which are automatically printed upon a
10   terminal's receipt of an "Approved" notice.

11       All terminal programming and all prompt strings for MICR Check
12   Reader interfacing are stored in the POS terminal and the
13   invention's computer center, controls interactions between the
14   plurality of terminals and the central system.  The following
15   modules are present.

16       Programming for MICR/Terminal Interface – system subscriber
17   locations to be activated with the invention must possess or
18   acquire a terminal.  Those utilizing or being upgraded to terminals
19   such as a Tranz (trademark) 330 or other terminals with interface
20   capabilities with the check reader all suitable point-of-sale
21   terminals.

22       The preferred format for terminal operations are from a
23   singular split dial key.  Thereafter, the "prompt string" would
24   proceed in a manner such as i) "Card = 1" ; "Check = 2" requiring
25   operator selection; then, where selecting a checking account
26   inquiry ii) the operator would respond to a secondary prompt of
27   "Auth = 1" ; "Replace = 2".  These entry selections precede the

-19-

LML-EP 000100

1  magnetic stripe "reading" of a card/submittal or a check through

2  the MICR (Account Identification), the entry of the requested sale

3  amount, and the terminal's dial-up for authorization against the

4  computer data file center.

5      The MICR interface results in the transmittal of a query for

6  data center approval of the entire ABA/Transit and personal or

7  corporate checking account numbers. Instances where printed checks

8  add the individual check's number to the end of the account number

9  can be "dropped" by Check Reader switch settings. Subsequent to a

10  terminal's receipt of the MICR number string but prior to the

11  operator's entry of the requested sale amount and authorization

12  dial-up, a verification prompt "flashing" the ABA and account

13  numbers must be displayed on the terminal's screen requiring the

14  operator to depress "Enter" to proceed, if correct, or "Clear", if

15  incorrect and thereby enabling the terminal operator to resubmit

16  the specimen check through the MICR Check Reader. It is important

17  to note that account information may be entered manually as well at

18  the point of sale with the other financial advantages of the present

19  invention still in effect.

20      The computer data file center receives and processes

21  Transaction Event authorization requests utilizing the entire MICR

22  string for accurate, error-free identification of both the consumer

23  bank and a specific checking or depository account to participate in

24  a sale. ACH settlement criteria mandate exact recall for the bank

25  and checking account numbers to properly complete any debit

26  request. This invention conforms to each and every requirement of

27  the ACH transaction regulations.

-20-

LML-EP 000101

1    Each Transaction Event is completed with the logging printer

2    generation of a Transaction Event ("Sales") Slip for each

3    "Approved"    authorization    inquiry    processed    (Figure ___).

4    Alternatively, a manually created transaction event slip can also

5    be prepared (Figure ___). Each such Transaction Event Slip must be

6    exacting in its retention of account numbers and the sale amount

7    enabling both the consumer and system subscriber to be provided

8    "hard copy" receipts of the event. Also included would be a clear

9    printing    of    the    transaction    type;    "Bank    Card",    "Check

10   Authorization", or "Check Replacement". Authorization language is

11   printed    immediately    preceding    the    consumer's    signature    line

12   specifically authorizing electronic access in payment of the

13   requested transaction sale amount.

14   In addition to the primary functions for POS terminal

15   programming and MICR Check Reader interface, each Point-of-Sale

16   terminal location is capable of generating printed summations of

17   daily activity.    These reports list and separately total each

18   authorization/service type, whether produced as a singular report

19   or the result of multiple terminal "closeout" procedures.

20   Instances will arise with either the Bank Card or Check

21   Replacement Service where previously authorized Transaction Events

22   will require the operational equivalent of a bankcard "Void" or

23   "Credit" notation.    The methodology will be available for Split

24   Dial    messages    to    the    computer    data    file    center    of    a

25   post-authorization "Error" or "Transaction Cancellation" notice.

26   The "Cancel" procedure is instituted by depressing for example the

27   "3" key (i.e. "Cancel = 3"). By so doing, the system subscriber

-21-

LML-EP 000102

1    may cancel a previously approved and logged event.  This

2    Transaction Event which was recorded on the data files and reported

3    on the service subscriber's daily Activity Summation Report,

4    thereafter carries an offsetting, "Flagged" cancellation notice.

5

6    SUMMARY

7         A flexible purchase transaction system is described which

8    precisely fits within existing ACH procedures for checking account

9    events for processing of pre-authorized electronic debits as a

10   replacement for commercial bank drafts (paper checks).  The main

11   advantage to the proposed invention is the fact that a truly

12   paperless transaction may occur.  Departures from the proposed

13   system especially with respect to the Point-of-Sale terminals will

14   be apparent to those skilled in the art, *without* departing from the

15   spirit of the invention as described.

-22-

LML-EP 000103

1   We claim:

2      1.   A checkwriting point of sale system comprising:

3      a point of sale terminal adapted to receive consumer bank

4   account information and further adapted to accept such information

5   from consumer cards on which the bank account information is

6   stored;

7      a communications means integral to said point of sale terminal

8   to electronically communicate with a central computer;

9      a memory means integral to said point of sale terminal that

10  allows the temporary storage of the consumer bank account

11  information from the consumer cards;

12     the central computer system having communication means

13  capability adapted to receive information from a plurality of point

14  of sale terminals;

15     the central computer system communication means allowing said

16  central computer system to communicate with external data bases for

17  consumer credit verification and to allow communication with

18  banking institutions for purposes of transfer of funds.

19     2.   A checkwriting point of sales system according to claim

20  1 wherein said point of sale terminal is further adapted to read

21  MICR numbers appearing on a consumer check and wherein said

22  consumer check is used to identify the consumer bank account

23  information.

24     3.   The checkwriting point of sale according to claim 1

25  wherein said point of sale terminal further comprises an alpha

26  numeric display adapted to receive consumer bank account

23
-26-

1  information from the memory of the point of sale terminal and

2  display the consumer bank account information.

3      4.  The checkwriting point of sale system according to claim

4  1 further comprising a printer adapted to receive information from

5  the memory of the point of sale terminal to create point of sale

6  slips.

7      5.  The checkwriting point of sale system according to claim

8  1 wherein said central computer system communication means

9  comprises means for communicating with third party data bases for

10 verification of consumer credit.

11     6.  The checkwriting point of sale system according to claim

12 1 further comprising a resident third party data base wherein

13 consumer credit information is stored and used for verification of

14 consumer credit.

15     7.  The checkwriting point of sale system according to claim

16 1 wherein the central computer system further comprises a system

17 subscriber data base comprising those merchants and service

18 providers authorized to use the invention.

19     8.  The checkwriting point of sale system according to claim

20 7 wherein the central computer further comprises a database

21 comprising those consumers approved to use the invention.

22     9.  A checkwriting point of sale process comprising the steps

23 of:

24         a)  presenting a check or consumer card to a point of

25 sale terminal located at a merchant or service provider,

26         b)  reading the magnetic stripe or MICR number

27 information on the credit card or consumer check,

24<br>-29-

LML-EP 000105

1      c)   storing the consumer bank account information from
2  the card or check and verifying account numbers at the point of
3  sale terminal,

4      d)   inputting transaction event information into the
5  point of sale terminal,

6      e)   transmitting the transaction event information and
7  consumer bank account information to a central computer system,

8      f)   verifying the authorization status of the consumer,

9      g)   if a particular consumer is not authorized to use
10  the system, verifying the credit worthiness of the consumer via a
11  query to a third party data base,

12      h)   sending an "approved" message to the point of sale
13  terminal, if the consumer's credit is approved for the transaction
14  and

15      i)   subsequently transmitting the transaction event
16  information to a bank for subsequent ACH operations.

17

18

19

20

21  JLr-1808

22

975717

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In the Application of Robert R. Hills and Henry R. Nichols

Serial No.:                          Group Art Unit:

Filed:                               Examiner:

FOR:  CHECKWRITING POINT OF SALE SYSTEM

### DECLARATION

As below inventors, we hereby declare that:

Our residences, post office address and citizenship are as stated below next to our name.

We believe we are the original, first and sole inventors of the subject matter which is claimed and for which a patent is sought on the invention entitled CHECKWRITING POINT OF SALE SYSTEM the specification of which is attached hereto.

We hereby state that we have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

We acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, § 1.56(a).

### POWER OF ATTORNEY

We hereby appoint the following attorney(s) to prosecute this application and to transaction all business in the Patent and Trademark Office connected therewith:

Jon L. Roberts
Arter & Hadden
1801 K Street, N.W.
Suite 400K
Washington, D.C.. 20006
(202) 775-7980

We declare that all statements made herein of our own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section

LML-EP 000107

1001 of Title 18 of the United States Code and that such willful
false statements may jeopardize the validity of the application or
any patent issued thereon.

Full name of inventor   Robert R. Mills

Inventor's Signature _____   Date 10-1-92

Residence_____ 5170 Avenue B

_____ St Augustine (FL 32095

Citizenship   United States


Full name of inventor   Henry R. Nichols

Inventor's Signature _____ Date_____

Residence_____

_____

Citizenship___ United States

Jlr-1053

LML-EP 000108

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of Robert R. Hills and Henry R. Nichols

Serial No.:                              Group Art Unit:

Filed:                                   Examiner:

FOR:  CHECKWRITING POINT OF SALE SYSTEM

## DECLARATION

As below inventors, we hereby declare that:

Our residences, post office address and citizenship are as stated below next to our name.

We believe we are the original, first and sole inventors of the subject matter which is claimed and for which a patent is sought on the invention entitled CHECKWRITING POINT OF SALE SYSTEM the specification of which is attached hereto.

We hereby state that we have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

We acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, § 1.56(a).

## POWER OF ATTORNEY

We hereby appoint the following attorney(s) to prosecute this application and to transaction all business in the Patent and Trademark Office connected therewith:

Jon L. Roberts
Arter & Hadden
1801 K Street, N.W.
Suite 400K
Washington, D.C. 20006
(202) 775-7980

We declare that all statements made herein of our own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section

LML-EP 000109

1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Full name of inventor __Robert R. Hills_____

Inventor's Signature _____Date_____

Residence_____

_____

Citizenship___United States_____

Full name of inventor __Henry R. Nichols_____

Inventor's Signature ____Henry R. Nichols____ Date 10/19/92

Residence____8456 Holly Leaf Dr._____

____McLean, VA  22102_____

Citizenship___United States_____

LML-EP 000110

07/29571

| VERIFIED STATEMENT CLAIMING SMALL ENTITY STATUS (37 CFR 1.9(f) & 1.27(b))--INDEPENDENT INVENTOR | Docket Number (Optional) |
|---|---|

Applicant or Patentee:    ROBERT R. HILLS AND HENRY R. NICHOLS

Serial or Patent No.: _____

Filed or Issued: _____

Title:    CHECKWRITING POINT OF SALE SYSTEM

As a below named inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9(c) for purposes of paying reduced fees to the Patent and Trademark Office described in:

☒ the specification filed herewith with title as listed above.

☐ the application identified above.

☐ the patent identified above.

I have not assigned, granted, conveyed or licensed and am under no obligation under contract or law to assign, grant, convey or license, any rights in the invention to any person who would not qualify as an independent inventor under 37 CFR 1.9(c) if that person had made the invention, or to any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).

Each person, concern or organization to which I have assigned, granted, conveyed, or licensed or am under an obligation under contract or law to assign, grant, convey, or license any rights in the invention is listed below:

☐ No such person, concern, or organization exists.

☐ Each such person, concern or organization is listed below.

Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28(b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

| ROBERT R. HILLS | HENRY R. NICHOLS | |
|---|---|---|
| NAME OF INVENTOR | NAME OF INVENTOR | NAME OF INVENTOR |
| Signature of inventor | Signature of inventor | Signature of inventor |
| October 1, 1992 | | |
| Date | Date | Date |

PTO/SB/09 (11-90)                    Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

LML-EP 000111

PTO/SB/09 (11-90)

| VERIFIED STATEMENT CLAIMING SMALL ENTITY STATUS (37 CFR 1.9(f) & 1.27(b))--INDEPENDENT INVENTOR | Docket Number (Optional) |
|---|---|

Applicant or Patentee:    ROBERT R. HILLS AND HENRY R. NICHOLS

Serial or Patent No.: _____

Filed or Issued: _____ 1992

Title: _____ CHECKWRITING POINT OF SALE SYSTEM

As a below named inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9(c) for purposes of paying reduced fees to the Patent and Trademark Office described in:

[X] the specification filed herewith with title as listed above.

[ ] the application identified above.

[ ] the patent identified above.

I have not assigned, granted, conveyed or licensed and am under no obligation under contract or law to assign, grant, convey or license, any rights in the invention to any person who would not qualify as an independent inventor under 37 CFR 1.9(c) if that person had made the invention, or to any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).

Each person, concern or organization to which I have assigned, granted, conveyed, or licensed or am under an obligation under contract or law to assign, grant, convey, or license any rights in the invention is listed below:

[ ] No such person, concern, or organization exists.

[ ] Each such person, concern or organization is listed below.

Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28(b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

| ROBERT R. HILLS | HENRY R. NICHOLS | |
|---|---|---|
| NAME OF INVENTOR | NAME OF INVENTOR | NAME OF INVENTOR |
| Signature of inventor | Signature of inventor Henry R. Nichols | Signature of inventor |
| | 10/19/92 | |
| Date | Date | Date |

PTO/SB/09 (11-90)                         Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

LML-EP 000112



fig. 1



fig 2

LML-EP 000113







figure 3

LML-EP 000114

PRINT OF DRAWINGS
S ORIGINALLY FILED

08/25773



Fig. 4

LML-EP 000115