


**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/975,717 | 11/13/92 | ROBERTS | R | |

PITTS, H EXAMINER

JON L. ROBERTS
ARTER & HADDEN
1801 K STREET, N.W.
SUITE 400K
WASHINGTON, DC 20006

| ART UNIT | PAPER NUMBER |
|---|---|
| 2505 | 7 |

DATE MAILED: 03/09/94

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined   ☒ Responsive to communication filed on _12/22/93_ ☒ This action is made final.

A shortened statutory period for response to this action is set to expire ___3___ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I** THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☒ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II** SUMMARY OF ACTION

1. ☒ Claims _1—10_ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _1—10_ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____ ; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 9-89)

8

LML-EP 000162

Serial No. 075,717                           -2-

Art Unit    2505


       The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

       A patent may not be obtained though the invention is not
       identically disclosed or described as set forth in section
       102 of this title, if the differences between the subject
       matter sought to be patented and the prior art are such that
       the subject matter as a whole would have been obvious at the
       time the invention was made to a person having ordinary
       skill in the art to which said subject matter pertains.
       Patentability shall not be negatived by the manner in which
       the invention was made.

       Subject matter developed by another person, which qualifies
       as prior art only under subsection (f) or (g) of section 102
       of this title, shall not preclude patentability under this
       section where the subject matter and the claimed invention
       were, at the time the invention was made, owned by the same
       person or subject to an obligation of assignment to the same
       person.

       Claims 1-10 are rejected under 35 U.S.C. § 103 as being

unpatentable over the prior art as discussed previously in view

of the check operated systems set forth in the prior art

statement, for example, the carlson et al. patents, Murphy etc.

       These patents teach that referenced portions of Case and

Deming would have been obvious to one of ordinary skill in the

art at the time the invention was made to employ with checks at a

point-of-sale for on line transactions, under the rationale of

interchangeable teachings of similar systems.

       Applicant's amendment necessitated the new grounds of

rejection. Accordingly, THIS ACTION IS MADE FINAL. See M.P.E.P.

§ 706.07(a). Applicant is reminded of the extension of time

policy as set forth in 37 C.F.R. § 1.136(a).

LML-EP 000163

Serial No. 975,717                    -3-

Art Unit  2505


    A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL
ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS
ACTION.   IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS
OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION
IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED
STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE
ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION.   IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.

    Any inquiry concerning this communication should be directed

to Harold Pitts at telephone number (703) 308-0956.

                                    HAROLD PITTS
                                PRIMARY EXAMINER
                                    GROUP 2500

Pitts/tj
March 08, 1994

LML-EP 000164

PATENT APPLICATION SERIAL NO. 08/257390

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

100 MG 06/17/94 08257390        1 201    355.00 CK

PTO-1556
(5/87)

LML-EP 000165

BAR CODE LABEL

# U.S. PATENT APPLICATION

| SERIAL NUMBER | FILING DATE | CLASS | GROUP ART UNIT |
|---|---|---|---|
| 08/257,390 | 06/09/94 | 235 | 2505 |

**APPLICANT**

ROBERT R. HILLS, ST. AUGUSTINE, FL; HENRY R. NICHOLS, MC LEAN, VA.

**CONTINUING DATA**********************
VERIFIED    THIS APPLN IS A CON OF   07/975,717 11/13/92

**FOREIGN/PCT APPLICATIONS************
VERIFIED

FOREIGN FILING LICENSE GRANTED 07/28/94    ***** SMALL ENTITY *****

| STATE OR COUNTRY | SHEETS DRAWING | TOTAL CLAIMS | INDEPENDENT CLAIMS | FILING FEE RECEIVED | ATTORNEY DOCKET NO. |
|---|---|---|---|---|---|
| FL | 8 | 9 | 2 | $355.00 | |

**ADDRESS**

JON L. ROBERTS
ROBERTS & ASSOCIATES
1953 GALLOWS RD.
SUITE 220
VIENNA, VA  22182

**TITLE**

CHECKWRITING POINT OF SALE SYSTEM

This is to certify that annexed hereto is a true copy from the records of the United States Patent and Trademark Office of the application which is identified above.

By authority of the
COMMISSIONER OF PATENTS AND TRADEMARKS

Date                    Certifying Officer

LML-EP 000166

08/257390

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No. 07/975,717                    Group Art Unit: 2505

Filed: 11/13/92                          Examiner: Pitts, H.

For:    CHECKWRITING POINT OF SALE SYSTEM

*    *    *    *    *

FILE WRAPPER CONTINUATION APPLICATION
PURSUANT TO 37 C.F.R. §1.62

*    *    *    *    *

Commissioner of Patent and Trademarks
Box AF
Washington, D.C.  20231

Dear Sir:

This is a request for filing a continuation application under
37 C.F.R §1.62 of the above-captioned prior application.

The correspondence addresses of Applicants are as follows:

Robert R. Hills
5170 Avenue B
St. Augustine, Florida 32095

Henry R. Nichols
8456 Holly Leaf Drive
McLean, Virginia 22102

The above identified prior application, in which no payment of
an issue fee, abandonment, or termination of proceedings has
occurred, is hereby expressly abandoned as of the filing date of
this new application.  Please use all the contents of the prior
application file wrapper, including the drawings, as the basic
papers for the new application.  A verified statement of small
entity status was filed in the parent application and status as a
small entity is still proper and desired.

Please enter the enclosed preliminary amendment.

The prior application is assigned of record to Resource
Technology Services, Inc., 8221 Old Courthouse Road, Suite 202,
Vienna, Virginia 22182.  The power of attorney in the prior
application is to Jon L. Roberts, Reg. No. 31,293.  Address all
future communications to:

Jon L. Roberts
Roberts & Associates
1953 Gallows Road

Suite 220
Vienna, Virginia 22182

It is understood that secrecy under 35 U.S.C. § 122 is hereby waived to the extent that if information or access is available to any one of the applications in the file wrapper of a 37 CFR § 1.62 application, be it either this application or a prior application in the same file wrapper, the Patent and Trademark Office may provide similar information or access to all the other applications in the same file wrapper.

Enclosed is a check in the amount of $355.00 for the filing fee. This filing fee is calculated on the basis of the claims existing in the prior application as amended by the preliminary amendment.

Respectfully submitted,

Jon L. Roberts
Registration No. 31,293
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182
(703) 356-7700

June 8, 1994

LML-EP 000168

08/257390

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No. 07/975,717                Group Art Unit: 2505

Filed:  11/13/92                     Examiner: Pitts, H.

For:    CHECKWRITING POINT OF SALE SYSTEM

\* \* \* \* \*

FILE WRAPPER CONTINUATION APPLICATION
PURSUANT TO 37 CFR § 1.62

\* \* \* \* \*

Commissioner of Patents and Trademarks
Box AF
Washington, D.C. 20231

Dear Sir:

Enclosed please find the following:

1. File wrapper continuation application (2 pages);

2. Preliminary amendment (10 pages);

3. Check in the amount of $355.00 for the filing fee; and

4. Certificate of Express mailing.

Respectfully submitted,

Jon L. Roberts
Reg. No. 31,293
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182
(703) 356-7700

June 8, 1994

LML-EP 000169

08/257390

8/C
8-19-94
J.D

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No.                              Group Art Unit:

Filed:  Herewith                        Examiner:

For:    CHECKWRITING POINT OF SALE SYSTEM

* * * * *

PRELIMINARY AMENDMENT

* * * * *

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

Applicants hereby submit the following preliminary amendment to the above captioned patent application.

In the Specification:

Please amend the specification as follows:

Page 3, between lines 2 and 3, insert the following paragraphs:

— U.S. Patent No. 4,270,042 to Case discloses a point of sale system that requires a consumer to prepay a sum of money into a special account that is accessed only by the system. This amount is inscribed on the card, and when a transaction is made using the system, the amount of the transaction is punched out of a designated area on the card. This amount, along with a signature and other information, is supplied on a draft negotiable instrument, which is given to the merchant at the time of the transaction. Thus, the Case system does away with the use of bank checks in effecting the transacion, but requires the use of

9

LML-EP 000170

specialized prepaid draft negotiable instruments that must be surrendered to the merchant.

U.S. Patent No. 4,823,264 to Deming discloses a home banking system that can be used to transfer funds to different payees in satisfaction of debts incurred through previous purchases, use of utilities, etc. The system is consumer driven; that is, it is contemplated for use by the payor on a home personal computer. While the Deming system does away with the use of bank checks, account and other information must be keyed into the system. The Deming system cannot be used to read account and other information directly from an ordinary bank check and has no use for bank checks as instruments other than negotiable paper. Further, the Deming system cannot be used to transfer funds at the time of purchase and is not workable at the point of sale; the system can only be used to pay debts that have been incurred in the past and have accumulated. --.

Page 3, between lines 16 and 17, insert the following paragraph:

-- Further, some of the currently used systems described above require the use of a bank check as a negotiable instrument which must be surrendered to a merchant. Some of the systems do away with the use of a bank check altogether, but require a debit card or a specialized draft instrument to be used only with the particular system. None of these systems completely does away with the need and use for a negotiable draft instrument while using the consumer's bank check for identification and verification only. It

2

is therefore an objective of the present invention to provide such a system. ++

Page 4, line 6, before "The system is intended" insert -- In contrast to known systems, the present invention is a merchant driven system that can be used to process a transaction at the point of sale and at the time of purchase. --.

Page 8, line 2, delete "as a means of conducting" and insert ++ as negotiable instruments in effecting the ++.

In the Claims:

Please cancel claims 5 and 10.

Please amend the remaining claims as follows:

1.    (Amended) A checkwriting point of sale system comprising:

a point of sale terminal adapted to receive consumer bank account information [and further adapted to accept such information from consumer cards on which the bank account information is stored];

a central computer system;

[a] first communications means integral to said point of sale terminal for electronically communicating with [a] the central computer system;

[a] memory means integral to said point of sale terminal for [allowing the temporary storage of] temporarily storing the consumer bank account information [from the consumer cards];

the central computer system having second communication means [capability adapted to receive] for receiving information from a plurality of said point of sale terminals;

3

LML-EP 000172

the central computer system second communication means [allowing] enabling said central computer system to communicate with external [data bases] databases for performing a consumer bank account status [verification] search and [allowing] further enabling automated clearing house communication [with banking institutions] for [purposes of transfer of] transferring funds without using a bank check as a negotiable instrument.

2. (Amended) [A] The checkwriting point of sale system according to claim 1 wherein said point of sale terminal [is] further [adapted to read MICR] includes means for reading magnetic ink character recognition numbers appearing on a consumer check [and wherein said consumer check is used to identify] for the sole purpose of identifying and reading the consumer bank account information.

3. (Amended) The checkwriting point of sale system according to claim 1 wherein said point of sale terminal further comprises an alphanumeric display means [adapted to receive] for receiving said consumer bank account information from the memory means [of the point of sale terminal such that said point of sale terminal is adapted to display] and for displaying the consumer bank account information.

4. (Amended) The checkwriting point of sale system according to claim 1 further comprising a printer means for [adapted to receive] receiving information from the memory means of the point of sale terminal [to create point of] and for generating a transaction event sale slip[s].

4

5. (Amended) The checkwriting point of sale system according to claim 1 further comprising a resident third party [data base] <u>database</u> wherein consumer banking account status information is stored, <u>the consumer banking account status information being</u> [which is] used for verification of consumer banking account status.

6. (Amended) The checkwriting point of sale system according to claim 1 wherein the central computer system further comprises a system subscriber. [data base] <u>database, the system subscriber</u> <u>database</u> comprising information regarding merchants and service providers <u>that are</u> authorized to use the checkwriting point of sale system.

7. (Amended) The checkwriting point of sale system according to claim 7 wherein the central computer <u>system</u> further comprises a database comprising information regarding consumers [approved to use the checkwriting point of sale system] <u>whose consumer banking</u> <u>account status is not verified as bad.</u>

9. (Amended) A checkwriting point of sale process comprising the steps of:

a) presenting a <u>bank</u> check <u>specimen</u> to a point of sale terminal located at a merchant or service provider,

b) reading the [MICR] <u>magnetic ink character</u> <u>recognition</u> number information on the check <u>for the sole purpose of</u> <u>obtaining consumer bank account information,</u>

5

LML-EP 000174

c)    storing the consumer bank account information obtained from the check and verifying that account numbers were accurately read at the point of sale terminal,

d)    inputting transaction event information into the point of sale terminal,

e)    transmitting the transaction event information and consumer bank account information to a central computer system,

[f)    verifying the authorization status of the consumer,

g)    verifying the banking account status of the consumer via a query to a third party data base if a particular consumer is not authorized to use the system ,

h)    sending an "approved" message to the point of sale terminal, if the consumer's banking account status is approved for the transaction, and]

f)    storing the transaction event information and consumer banking account information, and

[i)g)    subsequently transmitting the transaction event information to a bank for subsequent [ACH] automated clearing house operations.

Please add the following new claims:

11.    (New)    A checkwriting point of sale system comprising:

a point of sale terminal adapted to receive consumer bank account information;

a central computer system;

6

first communications means integral to said point of sale terminal for electronically communicating with the central computer system; and

memory means integral to said point of sale terminal for temporarily storing the consumer bank account information;

the point of sale terminal comprising reading means for reading magnetic ink character recognition numbers on consumer bank checks for the sole purpose of eliciting consumer bank account information;

the central computer system having second communication means for receiving information from a plurality of said point of sale terminals;

the central computer system second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using a bank check as a negotiable instrument.

10 17. 9 (New)    The checkwriting point of sale system according to claim 16 further comprising a printer means for receiving information from the memory means of the point of sale terminal and for generating a transaction event sale slip.

11 18. 9 (New)    The checkwriting point of sale system according to claim 16 further comprising a resident third party database wherein consumer banking account status information is stored, the

7

consumer banking account status information being used for verification of consumer banking account status.

21. 11. (New)     The checkwriting point of sale system according to claim 9, wherein the central computer system further comprises a system subscriber database, the system subscriber database comprising information regarding merchants and service providers that are authorized to use the checkwriting point of sale system.

13. 16. (New)     The checkwriting point of sale system according to claim 4, wherein the sales slip includes means for execution by the consumer for proof of bank account access authorization.

14. 16. (New)     The checkwriting point of sale system of claim 1, wherein the point of sale terminal further comprises means for automatically logging a point of sale terminal location and transaction date, time, and sales amount.

17. (New)     The checkwriting point of sale process of claim 5, further comprising the steps of:

    a)     verifying the status of the consumer bank account,

    b)     verifying the consumer bank account status of the consumer via a query to a third party database if the consumer bank account is verified as bad, and

    c)     sending an approval message to the point of sale terminal if the consumer's banking account status is approved for the transaction.

18. (New)     The checkwriting point of sale process of claim 9, further comprising the steps of:

8

(A) printing a transaction event sales slip following the sending of an approval message; and

(B) executing of the sales slip by the consumer as proof of bank account access authorization.

19. (New)   The checkwriting point of sale process of claim 17, further comprising the steps of:

(A) printing a transaction event sales slip following the sending of an approval message; and

(B) executing of the sales slip by the consumer as proof of bank account access authorization.

20. (New)   The checkwriting point of sale process of claim 9, further comprising the step of automatically logging point of sale terminal location information and transaction date, time, and sales amount information into the point of sale terminal.

21. (New)   The checkwriting point of sale system according to claim 18, wherein the sales slip includes means for execution by the consumer of proof of bank account access authorization.

22. (New)   The checkwriting point of sale system of claim 9, wherein the point of sale terminal further comprises means for automatically logging a point of sale terminal location and transaction date, time, and sales amount.

9

LML-EP 000178

## REMARKS

This preliminary amendment is being filed as part of the above-captioned file wrapper continuation application, the parent application of which is Serial No. 07/975,717, filed November 13, 1992. No new matter has been added by this amendment. The parent application is abandoned as of the filing date of the present application. It is respectfully requested that this amendment be entered, the claims allowed, and the case passed to issue.

Respectfully submitted,

Jon L. Roberts
Registration No. 31,293
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182
(703) 356-7700

June 8, 1994

10

LML-EP 000179

 

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/257,390 | 06/09/94 | HILLS | R | BSM1/1028 |

| EXAMINER |
|---|
| PITTS, H |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2514 | 9 |

JON L. ROBERTS
ROBERTS & ASSOCIATES
1953 GALLOWS RD.
SUITE 220
VIENNA, VA 22182

DATE MAILED:
10/28/94

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined   ☐ Responsive to communication filed on _____   ☐ This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☑ Claims   1 - 4,  6 - 9,  11 - 21   are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims   1 - 4,  6 - 9,  11 - 21   are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 2/93)

10

LML-EP 000180

Serial No. 257,390                    -2-

Art Unit    2514

    Claims 1-4, 6-9, 11-21 rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

    Which the applicant has discussed *ase* and ~~demand~~ *Demine* in the specification, claim 1, for example, does not claim the argued novelty.  In addition, there has been no specific comparison of claim language vis-a-vis the prior art of the I.D.S. and as applied in combination in the previous final rejection.  One set of independent/dependent claims should be selected as they appear to embody separate inventions.

    As understood, the claims, are rejected as set forth in the previous final rejection, with the further notation that to use the check "solely" for the access would be the most trivial modification of systems such as Granzow, etc.

    Any inquiry concerning this communication or earlier communications from the examiner should be directed to Harold Pitts whose telephone number is (703) 308-0717.

    Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 308-0956.

HAROLD PITTS
PRIMARY EXAMINER
GROUP 2500

Pitts/dw
October 26, 1994

LML-EP 000181

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No. 08/257,390                          Group Art Unit: 2514

Filed:  06/09/94                               Examiner: Pitts, H.

For:   CHECKWRITING POINT OF SALE SYSTEM

\*      \*      \*      \*      \*

RESPONSE TO OFFICE ACTION OF 10/28/94

\*      \*      \*      \*      \*

RECEIVED
FEB 06 1995
GROUP 2500

Commissioner of Patents and Trademarks
Box Non-Fee Amendment
Washington, D.C. 20231

Sir:

Enclosed please find the following:

1.   Response to Office action dated 10/28/94 (27 pages); and

2.   Certificate of First Class mailing.

Respectfully submitted,

Jon L. Roberts
Registration No. 31,293
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182
Phone: (703) 356-7700

January 2, 1995

LML-EP 000182

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No. 08/257,390                    Group Art Unit: 2514

Filed:   06/09/94                        Examiner: Pitts, H.

For:   CHECKWRITING POINT OF SALE SYSTEM

* * * * *

RESPONSE TO OFFICE ACTION OF 10/28/94

* * * * *

RECEIVED

FEB 0 6 1995

GROUP 2500

Commissioner of Patents and Trademarks
Box Non-Fee Amendment
Washington, D.C. 20231

Sir:

Applicant hereby submits the following response to the Office action of 10/28/94.

In the Claims:

1.   (Twice Amended)    A checkwriting point of sale system comprising:

a point of sale terminal adapted to receive consumer bank account information from any bank check;

a central computer system;

first communications means integral to said point of sale terminal for electronically communicating with the central computer system;

memory means integral to said point of sale terminal for temporarily storing the consumer bank account information;

the central computer system having second communication means for receiving information from a plurality of said point of sale terminals;

the central computer system second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using [a] the bank check as a negotiable instrument.

9. (Twice Amended)    A checkwriting point of sale process comprising [the steps of]:

a)    presenting [a] any bank check specimen to a point of sale terminal located at a merchant or service provider,

b)    reading the magnetic ink character recognition number information on the check for the sole purpose of obtaining WITHOUT USING THE CHECK AS A NEGOTIABLE INSTRUMENT, consumer bank account information,

c)    storing the consumer bank account information obtained from the check and verifying that account numbers were accurately read at the point of sale terminal,

d)    [inputting] providing transaction event information [into] to the point of sale terminal,

e).   transmitting the transaction event information and consumer bank account information to a central computer system,

f)    storing the transaction event information and consumer banking account information, and

2

g)    subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations.

11.    (Amended) A checkwriting point of sale system comprising:

a point of sale terminal adapted to receive consumer bank account information;

a central computer system;

first communications means integral to said point of sale terminal for electronically communicating with the central computer system; and

memory means integral to said point of sale terminal for temporarily storing the consumer bank account information;

the point of sale terminal comprising reading means for reading magnetic ink character recognition numbers on any consumer bank [checks] check for the sole purpose of eliciting consumer bank account information;

the central computer system having second communication means for receiving information from a plurality of said point of sale terminals;

the central computer system second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using a bank check as a negotiable instrument.

3

17. (Amended) The checkwriting point of sale process of claim 8, further comprising [the steps of]:

    a)   verifying the status of the consumer bank account,

    b)   verifying the consumer bank account status of the consumer via a query to a third party database if the consumer bank account is verified as bad, and

    c)   sending an approval message to the point of sale terminal if the consumer's banking account status is approved for the transaction.

16. (Amended) The checkwriting point of sale process of claim 8, further comprising [the steps of]:

    (A)  printing a transaction event sales slip following the sending of an approval message; and

    (B)  executing of the sales slip by the consumer as proof of bank account access authorization.

17. (Amended) The checkwriting point of sale process of claim 15, further comprising [the steps of]:

    (A)  printing a transaction event sales slip following the sending of an approval message; and

    (B)  executing of the sales slip by the consumer as proof of bank account access authorization.

18. (Amended) The checkwriting point of sale process of claim 8, further comprising [the step of] automatically logging point of sale terminal location information and transaction date, time, and sales amount information into the point of sale terminal.

4

LML-EP 000186

## REMARKS

Claims 1-4, 6-9, and 11-22 are pending in the application. Claims 1-4, 6-9, and 11-21 were rejected. It is assumed that claim 22 has been overlooked and was intended to be rejected as well. Claims 1, 9, 11, and 17-20 have been amended. Claims 1, 9, and 11 are the independent claims.

The Examiner rejected claims 1-4, 6-9, and 11-21 (and presumably claim 22) under 35 U.S.C. § 112 as being indefinite for failing to particularly point out and distinctly claim the subject matter that Applicants regard as the invention. The Examiner stated that Applicants have discussed the Case and Deming patents in the specification but have not claimed the argued novelty. The Examiner further stated that there has been no specific comparison of claim language vis-a-vis the references cited in the previously submitted I.D.S. or the references cited in combination by the Examiner in the previous final rejection. The Examiner also stated that only one set of claims should be selected as the three sets of claims appear to embody separate inventions.

The Examiner concluded by stating that the claims are rejected as set forth in the previous final rejection, with the further notation that to use the check "solely" for access would be the most trivial modification of systems such as Granzow etc.

The specification was previously amended to discuss the patents to Case and Deming in the Background section. Applicants consider these patents to provide good background material for understanding their invention, which is an improvement on previous

5

systems. The Case and Deming patents were merely discussed in this manner; no matters of novelty were argued. The Examiner stated that Applicants have not claimed the novelty of the invention. Applicants assert that the claims, as presented in the preliminary amendment, do in fact recite such novelty, which will be pointed out in the paragraphs that follow.

Applicants respectfully assert that, contrary to the Examiner's contention, specific claim language has been compared to the teachings of the references cited in prior Office actions in order to overcome the Examiner's previous rejections. An examination of responses to prior Office actions will confirm this. Applicants have taken pains to completely review all prior responses to Office actions in this regard. Unfortunately, a comparison of cited references to particular claim language was not provided in the most recent Office action. Nevertheless, in the following paragraphs, each reference, whether cited by Applicants or by the Examiner, will be compared with specific claim language in order to overcome what Applicants presume the Examiner's rejection to be. It will be shown that it is not necessary to compare each element of every claim with each referenced patent because there is at least one element recited in all the independent claims that is not disclosed by any of the referenced patents, and thus any combination of the references could not render the claims obvious.

6

LML-EP 000188

Applicants' Invention

The following are brief summaries of the elements recited in Applicants' independent claims.

Claim 1

Claim 1 recites a checkwriting point-of-sale system comprising a point of sale terminal, a central computer, first and second communication means, and memory. The point of sale terminal accepts bank account information from any bank check. The system transfers funds as part of a transaction without using the bank check as a negotiable instrument.

Claim 9

Claim 9 recites a checkwriting point-of-sale process comprising presenting any bank check to a merchant's terminal, reading MICR information from the check for the sole purpose of obtaining bank account information, storing the information, providing transaction event information to the terminal, transmitting the transaction information to a central computer, storing all the information, and transmitting the transaction information to a bank for clearing house functions.

Claim 11

Claim 11 recites a checkwriting point-of-sale system comprising a point of sale terminal, a central computer, first and second communication means, and memory. The point of sale terminal accepts bank account information by reading the MICR information from any bank check. The system transfers funds as part of a

7

LML-EP 000189

transaction without using the bank check as a negotiable instrument..

### Case 4,270,042

Case discloses an electronic funds transfer system. The system includes use of a letter of credit card and a draft instrument unique to the Case system. Case does not disclose the use of any bank check solely to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Case uses a combination of letter of credit card and system-unique negotiable instrument that is negotiated as part of the transaction. Consumer information is provided by the letter of credit card, and the negotiable draft instrument is given to the vendor to pay for the transaction.

Thus, an element recited in all of Applicants' claims is not disclosed by Case. Further, it would not be trivial to modify Case so that an ordinary bank draft is used for informational purposes only. The entire Case system is set up around a unique pre-paid (and therefore pre-authorized) account in which a system-unique draft instrument is given up, that is, negotiated as part of the transaction. To include the missing elements of Applicants' claims would be to change the entire nature of the Case system from a closed, pre-paid system using unique draft negotiable instruments to one which electronically debits a bank account based on information derived from any ordinary check. Including elements of Applicants' claims is unecessary for Case because each transaction is preauthorized through prepayment. Thus, it is neither possible

8

LML-EP 000190

nor proper to combine the system of Case with another system in an effort to result in Applicants' claimed system.

Deming 4,823,264

Deming discloses an electronic funds transfer system used in conjunction with home banking, not a point-of-sale transaction. Deming does not disclose the use of a bank check in a point-of-sale transaction solely to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Deming discloses a home banking method by which all payor and payee information is entered manually into a computer. A bank check is never used, except when a routing and transfer number is not available for the payee, in which case a paper check is issued and mailed for later negotiation by the payee.

Thus, an element recited in all of Applicants' claims is not disclosed by Deming. Further, it would not be trivial to modify Deming so that a bank draft is used for informational purposes only. The Deming system is a home banking system used by a single payor to pay a number of payees. Thus, the payor's information will always be stored on the system; there is no reason to read it from a check. In contrast, Applicants' system will always be used at the payee's place of business, and information must be gathered from a great number of payors. Therefore, the payee's information will always be stored on the system and the payor's information will have to be entered. This is done by reading it from the check. To include the missing elements of Applicants' claims would

9

LML-EP 000191

be to change the very nature of the Deming system from a personal bank at home system to a point-of-sale system. Thus, it is neither possible nor proper to combine the system of Deming with a point-of-sale system in an effort to assemble Applicants' claimed system. Carlson et al. 5,053,607

Carlson et al. disclose a system adapted for processing checks. The system includes a device that reads MICR information printed on the check. This reading of the MICR data speeds up processing of the check at the point of sale. The check is still used as a negotiated instrument, however, and is turned over to the merchant to complete the transaction. Thus, Carlson et al. do not disclose the use of a bank check in a point-of-sale transaction solely to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, the Carlson et al. system requires negotiation of the check.

Thus, an element recited in all of Applicants' claims is not disclosed by Carlson et al. Further, it would not be trivial to modify Carlson et al. so that a bank draft is used for informational purposes only. The entire Carlson et al. system is set up to process checks in order to speed the debiting and crediting of the negotiated amount at a later date. To include the missing elements of Applicants' claims would be to change the very nature of the Carlson et al. system from a system that prepares checks for negotiation to one which doesn't negotiate checks at all. Thus, it is neither possible nor proper to combine the system

10

LML-EP 000192

of Carlson et al. with another system in an effort to result in Applicants' claimed system.

Carlson et al. 4,678,896

Carlson et al. here disclose a mechanism that includes security features to prevent unauthorized tampering. This device includes a MICR reader, but again only processes instruments that are negotiated as part of the transaction taking place at the point of sale. Thus, Carlson et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Carlson et al. require negotiation of the check.

Thus, an element recited in all of Applicants' claims is not disclosed by Carlson et al. Further, it would not be trivial to modify Carlson et al. so that a bank draft is used for informational purposes only. The entire Carlson et al. system is set up to process checks in order to speed the debiting and crediting of the negotiated amount at a later date and to provide security against tampering with checks accepted to complete the transaction. To include the missing elements of Applicants' claims would be to change the very nature of the Carlson et al. system from a system that prepares checks for negotiation to one which doesn't negotiate checks at all. Further, the protection of negotiated checks after the transaction provided by Carlson et al. is completely unnecessary using Applicants' system as the vendor never takes a check from the purchaser. The check is only

11

temporarily given to the vendor so that information may be read.
Thus, it is neither possible nor proper to combine the system of
Carlson et al. with another system in an effort to result in
Applicants' claimed system.

Murphy et al. 4.672.377

Murphy et al. disclose a check authorization system whereby a
supermarket customer is assigned a UPC code which is used to access
a database used to check the credit status of the customer at each
transaction. If the customer's credit is good, acceptance of the
check in payment for the transaction is authorized. The check is
then negotiated as it would be in any normal transaction. Thus,
Murphy et al. do not disclose the use of a bank check in a point-
of-sale transaction in order to derive consumer information and not
for use as a negotiable instrument, as recited in independent
claims 1, 9, and 11. Rather, Murphy et al. provide a credit check
before a check is negotiated.

Thus, an element recited in all of Applicants' claims is not
disclosed by Murphy et al. Further, it would not be trivial to
modify Murphy et al. so that a bank draft is used for informational
purposes only. The entire Murphy et al. system is set up to
authorize the acceptance of a check as a negotiable instrument in
payment for goods. To include the missing elements of Applicants'
claims would be to change the very nature of the Murphy et al.
system from a system that authorizes the acceptance of negotiable
instruments to one which does not accept negotiable instruments at
all. To process checks in the manner provided by Applicants'

12

LML-EP 000194

invention would go beyond modification of the Murphy et al. invention; it would do away with the entire purpose behind the Murphy et al. invention. Thus, it is neither possible nor proper to combine the system of Murphy et al. with another system in an effort to result in Applicants' claimed system.

Lindemann et al. 4,933,536

Lindemann et al. disclose a check processing device whereby some form of customer identification, such as a photograph, is reproduced on a bank check that is presented for tender. This identification feature is used as a deterrence to the passing of bad checks. After the identification has been added to the check, the check is processed as it would in any normal transaction, including acceptance of the check as a negotiable instrument in payment for goods and services. Thus, Lindemann et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Lindemann et al. provide an identification feature before the check is negotiated.

Thus, an element recited in all of Applicants' claims is not disclosed by Lindemann et al. Further, it would not be trivial to modify Lindemann et al. so that a bank draft is used for informational purposes only. The entire Lindemann et al. system is set up to add an identification feature to a check in order to deter passing bad checks as negotiable instruments. To include the missing elements of Applicants' claims would be to change the very

13

LML-EP 000195

nature of the Lindemann et al. system from one which provides
security against the acceptance in payment of bad checks to one
that doesn't accept checks for payment at all. To process checks
in the manner provided by Applicants' invention would go beyond
modification of the Lindemann et al. invention; it would do away
with the entire purpose behind the Lindemann et al. invention.
Thus, it is neither possible nor proper to combine the system of
Lindemann et al. with another system in an effort to result in
Applicants' claimed system.

Lord, Jr. 4,810,866

Lord discloses a check validation and check writing system
whereby coded information is read from a consumer's bank check in
order to determine if the associated bank account has sufficient
funds to cover a transaction taking place. If sufficient funds are
present, a blank check is printed using the device, which imprints
the date, transaction total, etc. and presents the check to the
customer for signature. Once the check is executed, it is given to
the merchant as payment and is negotiated as would be any normal
check in such a transaction. Thus, Lord does not disclose the use
of a bank check in a point-of-sale transaction in order to derive
consumer account information and not for use as a negotiable
instrument, as recited in independent claims 1, 9, and 11. Rather,
Lord requires the negotiation of a system-unique check as payment
for a transaction.

Thus, an element recited in all of Applicants' claims is not
disclosed by Lord. Further, it would not be trivial to modify Lord

14

LML-EP 000196

so that a bank draft is used for informational purposes only. The entire Lord system is set up to print transaction information on a check so that it can be used as a negotiable instrument. To include the missing elements of Applicants' claims would be to change the very nature of the Lord system from one which produces a negotiable instrument to one which does not use a negotiable instrument. To process checks in the manner provided by Lord is contrary to the entire purpose behind Applicants' invention. Printing of transaction information on checks using Applicants' system is unnecessary because the checks are never surrendered to the vendor. Thus, it is neither possible nor proper to combine the system of Lord with another system in an effort to result in Applicants' claimed system.

## Fukatsu 4,743,743

Fukatsu discloses a transaction apparatus. This apparatus is not part of a point-of-sale system, but rather is an automatic teller machine system. The machine accepts checks along with a "bill" which indicates whether money is to be deposited, withdrawn, etc. As a check is entered into the machine, the MICR code is read, simplifying post-processing, which takes place manually at a later time. Thus, Fukatsu does not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Fukatsu discloses a system for processing negotiable instruments prior to later manual reconciliation of the checking account.

15

LML-EP 000197

Thus, an element recited in all of Applicants' claims is not disclosed by Fukatsu. Further, it would not be trivial to modify Fukatsu so that a bank draft is used for informational purposes only. The entire Fukatsu system is set up to accept and process checks for deposit to a bank. To include the missing elements of Applicants' claims would be to change the very nature of the Fukatsu system to one which does not process negotiated checks at all. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Fukatsu, which is not contemplated for use in a merchant setting and would not work in such a setting. Thus, it is neither possible nor proper to combine the system of Fukatsu with another system in an effort to result in Applicants' claimed system.

Cain 4.523.330

Cain discloses a banking system used to process checks. This system scans checks deposited with the bank in order to read MICR data printed on the checks, and also to read handwritten data using character recognition software. Once character recognition is accomplished, the data is converted to MICR data and printed on the check. Thus, Cain does not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Cain discloses a system for processing previously negotiated checks.

16

LML-EP 000198

Thus, an element recited in all of Applicants' claims is not disclosed by Cain. Further, it would not be trivial to modify Cain so that a bank draft is used for informational purposes only. The entire Cain system is set up to accept and process checks that have been deposited to a bank. To include the missing elements of Applicants' claims would be to change the very nature of the Cain system to one which does not accept negotiated checks at all. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Cain. Thus, it is neither possible nor proper to combine the system of Cain with another system in an effort to result in Applicants' claimed system.

### Nunley et al. 4,404,649

Nunley et al. disclose a document processing system. This system scans checks deposited with a bank in order to read MICR data printed on the checks, and to tag the check with a source item control number. Thus, Nunley et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Nunley et al. provide processing of previously negotiated checks.

Thus, an element recited in all of Applicants' claims is not disclosed by Nunley et al. Further, it would not be trivial to modify Nunley et al. so that a bank draft is used for informational purposes only. The entire Nunley et al. system is set up to accept and process checks that have been deposited to a bank. To include

17

the missing elements of Applicants' claims would be to change the very nature of the Nunley et al. system to one which does not accept negotiated checks at all. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Nunley et al, which is not contemplated for use in a merchant setting and would not work in such a setting. In fact, Nunley et al. specifically rule out the possible use of the system at the point-of-sale. Thus, it is neither possible nor proper to combine the system of Nunley et al. with another system in an effort to result in Applicants' claimed system.

<u>Granzow et al. 4,580,040</u>

Graznow et al. disclose a teller-assisted, customer-operated automatic teller machine check cashing system. According to this system, the automatic teller machine is linked to a teller station equiped with a MICR data reader. When a customer presents a check to be cashed, the MICR data is read, the customer's or the third party payor's checking account balance is check for sufficiency of funds, and cash is dispensed if the account balance is sufficient. Thus, Graznow et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Graznow et al. disclose a bank system for verifying checks to be negotiated.

Thus, an element recited in all of Applicants' claims is not disclosed by Graznow et al. Further, it would not be trivial to

18

LML-EP 000200

modify Graznow et al. so that a bank draft is used for informational purposes only. The entire Graznow et al. system is set up to cash checks that have been presented to a bank. To include the missing elements of Applicants' claims would be to change the very nature of the Graznow et al. system from one that has the sole function of accepting checks for negotiation to one which is used as part of a point-of-sale transaction and does not accept the check for negotiation. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Graznow et al. Thus, it is neither possible nor proper to combine the system of Graznow et al. with another point-of-sale system in an effort to assemble Applicants' claimed system.

<u>Granzow et al. 4,617,457</u>

Here, Graznow et al. disclose the same invention as that discussed above, with the addition of an image for presenting an image of the check to be cashed to the teller present at the teller station. Again, Graznow et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Graznow et al. disclose a bank system for verifying checks to be negotiated.

Thus, an element recited in all of Applicants' claims is not disclosed by Graznow et al. Further, it would not be trivial to modify Graznow et al. so that a bank draft is used for informational purposes only. The entire Graznow et al. system is

19

LML-EP 000201

set up to cash checks that have been presented to a bank. To include the missing elements of Applicants' claims would be to change the very nature of the Graznow et al. system from one that has the sole function of accepting checks for negotiation to one which is used as part of a point-of-sale transaction and does not accept the check for negotiation. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Graznow et al. Thus, it is neither possible nor proper to combine the system of Graznow et al. with another system in an effort to result in Applicants' claimed system.

## Simjian 3,824,544

Simjian discloses a merchandizing arrangement utilizing a coded sales ticket. The customer obtains the coded sales ticket by selecting an item for purchase and paying for the item. The coded ticket is then brought to a merchandise dispensing area and is exchanged for the purchased item. Thus, Simjian does not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Simjian discloses a merchandise vending security system, the point-of-sale aspect of which is conventional.

Thus, an element recited in all of Applicants' claims is not disclosed by Simjian. Further, it would not be trivial to modify Simjian so that a bank draft is used for informational purposes only. The entire Simjian system is set up to provide security

20

LML-EP 000202

against shoplifting by controlling access to merchandise. The invention is not even directed to the payment part of the transaction. To include the missing elements of Applicants' claims would be to change the very nature of the Simjian system by adding a new inventive element to the system. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Simjian. Thus, it is neither possible nor proper to combine the system of Simjian with another system in an effort to result in Applicants' claimed system.

Schuller 3,845,470

Schuller discloses a check-controlled vending system. This system uses pre-paid tickets, or "checks", as a payment means for a vending machine. These tickets are coded to provide security features. Thus, Schuller does not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Schuller discloses a payment system for vending machines which uses specialized tickets as negotiable instruments.

Thus, an element recited in all of Applicants' claims is not disclosed by Schuller. Further, it would not be trivial to modify Schuller so that a bank draft is used for informational purposes only. The entire Schuller system is set up to provide security against shoplifting by controlling access to merchandise using pre-paid tickets. The invention is not even directed to the payment

21

part of the transaction. To include the missing elements of Applicants' claims would be to change the very nature of the Schuller system by adding a new inventive element to the system. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Schuller. Thus, it is neither possible nor proper to combine the system of Schuller with another system in an effort to result in Applicants' claimed system.

Ohmae et al. 4,673,802

Ohmae et al. disclose a system for using a bank debit card to pay for merchandise at a point of sale. Unlike normal debit card transactions, the Ohmae et al. system allows for a grace period between the time the sale is made and the time the cash is debited from the customer's account. Thus, Ohmae et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Ohmae et al. disclose a system for delaying the posting of a debit to a user's account.

Thus, an element recited in all of Applicants' claims is not disclosed by Ohmae et al. Further, it would not be trivial to modify Ohmae et al. so that a bank draft is used for informational purposes only. The entire Ohmae et al. system is set around the use of a debit card. To include the missing elements of Applicants' claims would be to change the very nature of the Ohmae et al. system to one which electronically debits a bank account

22

LML-EP 000204

based only on information derived from a bank check to complete a point-of-sale transaction. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Ohmae et al. Thus, it is neither possible nor proper to combine the system of Ohmae et al. with another system in an effort to result in Applicants' claimed system.

Tateisi et al. 4,678,895

Tateisi et al. disclose a normal system for using a bank debit card to pay for merchandise at a point of sale. The system includes a terminal device, connected to a cash register, for performing the account debit function while the cash register rings up the sale. Thus, Tateisi et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Tateisi et al. disclose a system for performing a debit function separate from a tallying function in order to speed transactions.

Thus, an element recited in all of Applicants' claims is not disclosed by Tateisi et al. Further, it would not be trivial to modify Tateisi et al. so that a bank draft is used for informational purposes only. The entire Tateisi et al. system is set around the use of a debit card. To include the missing elements of Applicants' claims would be to change the very nature of the Tateisi et al. system to one which electronically debits a bank account based only on information derived from a bank check to

23

LML-EP 000205

complete a point-of-sale transaction.  To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Tateisi et al.  Thus, it is neither possible nor proper to combine the system of Tateisi et al. with another system in an effort to result in Applicants' claimed system.

Sakuma et al. 4,934,772

Sakuma et al. disclose a light beam scanning lens and light beam scanning device.  Sakuma et al. disclose a scanning system that has potential utility in scanning information from a check, but such use is not disclosed.  Thus, Sakuma et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11.  Rather, Sakuma et al. disclose a light beam scanning device.

Thus, an element recited in all of Applicants' claims is not disclosed by Sakuma et al.  Further, it would not be trivial to modify Sakuma et al. so that a bank draft is used for informational purposes only.  Sakuma et al. merely disclose the optical scanning elements of an undisclosed system.  To include the missing elements of Applicants' claims would be to completely redefine the Sakuma et al. invention and is beyond the scope of the Sakuma et al. invention.  Thus, it is neither possible nor proper to combine the device of Sakuma et al. with a point-of-sale system in an effort to assemble Applicants' claimed system.

24

LML-EP 000206

Summary

   None of the referenced patents discloses at least one element
recited in all of Applicants' claims.  That is, none of the
references discloses a point-of-sale system that uses any bank
check solely for the purposes of gathering customer information and
not as a negotiable instrument used to pay for goods received in a
transaction.  Because none of these references discloses this
element, no combination of these references can disclose
Applicants' claimed system, because such a combination would also
be missing this element.  Further, the addition of this missing
element to any of the references is not trivial or obvious, and in
fact is not compatible with the stated purpose of the references.
None of the references teaches or suggests the utility of adding
features of Applicants' claimed invention to the cited reference
inventions.  Thus, Applicants' claimed invention cannot be rendered
obvious by any combination of these references, nor is the
combination of these references proper.

   It is important to note that Applicants have focussed on only
one particular element of the claimed invention in response to the
Examiner's rejection.   Applicants in no way acknowledge the
disclosure of any of the other claimed elements in any of the
references, nor do Applicants concede that the chosen element is
the only novel and non-obvious aspect of the claimed invention.
For organizational ease and clarity in response to the Examiner's
broad rejection of the claims, in which no particular reference was
applied to any particular claim or element, Applicants chose to

25

LML-EP 000207

rely on one novel element in order to overcome the rejection. As shown in the above discussion, one element that is missing from all cited references is enough to show that the claimed invention is novel and non-obvious.

Regarding the Examiner's contention that three separate inventions are present, and that only one set of claims should be selected for continued prosecution, Applicants respectfully traverse. There are in fact three sets of claims. The first set includes independent claim 1 and dependent claims 2-4, 6-8, 15, and 16. The second set includes independent claim 9 and dependent claims 17-20. The third set includes independent claim 11 and dependent claims 12-14, 21, and 22. The first set and the third set recite the system of the present invention as an apparatus. Although the claims differ in scope and in the particular terms used, they do not recite patentably distinct inventions. See MPEP 806.03. The second set of claims recites the system of the present invention as a process. Claiming an invention in terms of two different statutory classes of invention does not in itself render the two sets of claims patentably distinct. These differences among these claims do not satisfy the criteria for a proper restriction under MPEP 803. Applicants will respond to a formal restriction requirement from the Examiner, but respectfully decline to voluntarily cancel two sets of properly submitted claims in response to the Examiner's comments.

It is respectfully urged that all rejections have been overcome. It is therefore respectfully requested that this

26

LML-EP 000208

amendment be entered, the claims allowed, and the case passed to issue. Because Applicants have compared all cited references with the recited elements of Applicants' claims, it would be appreciated if the Examiner would reject with more particularity in the future, should more rejections be forthcoming. That is, it would be helpful if the Examiner would compare cited references to the rejected claims and point out which aspects of Applicants' traversal he finds lacking. Please see MPEP 707.07 (d)-(f).

Respectfully submitted,

Jon L. Roberts
Registration No. 31,293
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182
Phone: (703) 356-7700

January 20 1995

27

LML-EP 000209