**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LML PATENT CORP. ) | |
| ) | |
| Plaintiff, ) | Civil Action No.    04-858-SLR |
| vs. ) | |
| ) | Judge Sue L. Robinson |
| TELECHECK SERVICES, INC. ) | |
| ELECTRONIC CLEARING HOUSE, ) | **PUBLIC VERSION** |
| INC., XPRESSCHEX, INC., AND ) | |
| NOVA INFORMATION SYSTEMS, ) | |
| INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

---

**LML'S MEMORANDUM IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT NO. 1:**
**FOR A RULING THAT TELECHECK INFRINGES CLAIMS**
**1, 2, 4, 5, 6, 9, 10, 11, AND 16 OF THE '988 PATENT**

Originally filed: October 28, 2005
Public version filed: November 4, 2005

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Attorneys for LML Patent Corp.

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ..........................................1

STATEMENT OF UNCONTESTED FACTS .....................................................1

    I.      The Invention Described In The '988 Patent. .......................................1

    II.     TeleCheck's Electronic Check Acceptance Service. ...........................4

    III.    TeleCheck's Non-Infringement Contentions. ......................................8

TELECHECK'S ECA SERVICE INFRINGES ALL ASSERTED CLAIMS. ..............................9

    I.      Legal Standard For Summary Judgment.................................................9

    II.     Defendants Cannot Raise New, Undisclosed Contentions In Response To This Motion.................................................................................10

    III.    Legal Standard For Infringement...........................................................11

    IV.    LML Is Entitled To Summary Judgment Of Infringement Of Claim 1................12

    V.     LML Is Entitled To Summary Judgment of Infringement of Claim 2..................22

    VI.    LML Is Entitled To Summary Judgment of Infringement Of Claim 4................24

    VII.   LML Is Entitled To Summary Judgment of Infringement Of Claim 5................25

    VIII.  LML Is Entitled To Summary Judgment of Infringement Of Claim 6................26

    IX.    LML Is Entitled To Summary Judgment of Infringement Of Claim 9................27

    X.     LML Is Entitled To Summary Judgment of Infringement Of Claim 10...............27

    XI.    LML Is Entitled To Summary Judgment of Infringement Of Claim 11...............28

    XII.   LML Is Entitled To Summary Judgment Of Claim 16. .........................................28

CONCLUSION...................................................................................................37

# TABLE OF AUTHORITIES

## Cases

*3M Innovative Props. Co. v. Avery Dennison Corp.*,
    350 F.3d 1365 (Fed. Cir. 2003)................................................................................ 12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................ 10

*Avia Group Int'l Inc. v. L.A. Gear Cal., Inc.*,
    853 F.2d 1557 (Fed. Cir. 1988).............................................................................. 9

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*,
    731 F.2d 831 (Fed. Cir. 1984)................................................................................ 10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................................ 10

*Continental Can Co. USA, Inc. v. Monsanto Co.*,
    948 F.2d 1264 (Fed. Cir. 1991).............................................................................. 9

*Hancock v. Hobbs*,
    967 F.2d 462 (11th Cir. 1992)................................................................................ 11

*Kalis v. Colgate-Palmolive Co.*,
    231 F.3d 1049 (7th Cir. 2000)................................................................................ 10

*London v. Carson Pirie Scott*,
    946 F.2d 1534 (Fed. Cir. 1991).............................................................................. 9

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)............................................................................ 11, 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)................................................................................................ 10

*Rexnord Corp. v. Laitram Corp.*,
    274 F.3d 1336 (Fed. Cir. 2001).............................................................................. 11

*Rheox, Inc. v. Entact, Inc.*,
    276 F.3d 1319 (Fed. Cir. 2002).............................................................................. 12

*Thibeault v. Square D Co.*,
    960 F.2d 239 (1st Cir. 1992)................................................................................... 11

*Trebor Sportswear Co. Inc. v. The Limited Stores, Inc.*,
    865 F.2d 506 (2d Cir. 1989).................................................................................... 10

**Statutes**

35 U.S.C. 112(6) ........................................................................................................... 19

**Rules**

Fed. R. Civ. P. 26(e) ............................................................................................... 10, 11

Fed. R. Civ. P. 37(c)(1) ................................................................................................ 10

Fed. R. Civ. P. 56(c) ................................................................................................ 9, 10

## INTRODUCTION

Plaintiff LML Patent Corporation ("LML") asserted various claims of United States Patent Number 5,484,988 (the "'988 patent") against defendant TeleCheck Services, Inc. ("TeleCheck"). There is no genuine issue of material fact that TeleCheck's ECA Product and Services—the accused system/product—satisfy each and every one of the elements of these claims under the proper construction. Moreover, TeleCheck's noninfringement contentions are dependent on Defendants winning all of their proposed claim constructions, which as discussed in LML's claim construction briefing, are improper. Because no genuine issue of material fact exists in this regard, LML now moves for summary judgment of those asserted claims.

## NATURE AND STAGE OF THE PROCEEDINGS

In accordance with the Court's Scheduling Order, LML respectfully submits this Memorandum In Support Of LML's Motion For Summary Judgment No. 1: For A Ruling That TeleCheck Infringes Claims 1, 2, 4, 5, 6, 9, 10, 11 and 16 of the '988 Patent.

## STATEMENT OF UNCONTESTED FACTS

**I.      The Invention Described In The '988 Patent.**

In the early 1990's, two inventors, Robert Hills and Henry Nichols, developed a new way of processing checks at the point of sale, *i.e.* at the merchant's location. Their innovative process greatly simplified traditional check processing and helped merchants facilitate the way that they received payment on checks presented by their costumers and was captured in the '988 Patent. (*See generally* Ex. 1 '988 Patent).[1]      Instead of

---

[1] Exhibits to the Declaration of Aaron Charfoos in Support of LML's Motion for Summary Judgment Number 1: For a Ruling that TeleCheck Infringes Claims 1, 2, 4, 5, 6, 9, 10, 11 and 16 of the '988 Patent ("Ex. ___").

traditional processing where the merchant accepted a check and physically took it to the bank, the invention disclosed in the '988 Patent permitted the merchant to obtain approval for a transaction at the point of sale in the presence of the consumer and then process the check electronically, as shown in Fig. 1 of the '988 Patent:



## FIG. 1

(Ex. 1 at Fig. 1). This process negated the need for physically taking the check to the issuing bank, eliminating the significant cost and expense associated with traditional processing of paper checks. (*See generally,* Ex. 1 at "Abstract" and col. 3, lns. 3-8).

In general, the '988 Patent allowed merchants to accept paper checks whereby the MICR data[2] contained on the check is captured at the retailer's point of sale terminal, using either a commercially available MICR reader, optical character recognition scanner

---

[2] All printed checks for funds in the United States have a Magnetic Ink Character Recognition (MICR) line imprinted on the bottom of each check. This line is printed using an ink with iron-oxide pigments capable of being magnetized. In this way the characters encoded on this line can be read either magnetically or optically. The MICR line typically, contains the following information: (1) Bank Routing Number – A number that uniquely identifies the bank at which the checking account is established (sometimes known as the ABA number); (2) Account number of the consumer's checking account; and (3) Check Serial Number. (*See generally,* Ex. 2 Declaration of Gary Tinkel ("Tinkel Decl.") at ¶ 15 n.2; Ex. 3 at LML-EP-055363; Ex. 4 Deposition of Jane Larimer at 77).

or physically inputting the information to the terminal keypad, in order to capture a consumer's bank account information. (*Id.* at col. 5, lns. 45-49, and col. 6, lns. 62-63).

The amount of the transaction is then entered into the terminal keypad.   (*Id.* at col. 8, lns. 11-13).   Information relating to the merchant's location, date and time of transaction along with other information.   (*Id.* at col. 5, lns. 18-21).   The terminal then sends data to an electronic check processing provider by modem or other such communication methods that transfer packets of information electronically.   (*Id.* at col. 5, ln. 62 through col. 6, ln. 8; and col. 6, lns. 20-38).   The electronic check processing provider may run verification/risk analysis for the account and the bank routing number (i.e. the bank that the consumers account is located at).   (*Id.* at col. 6, lns. 9-19).

The point of sale terminal prints out a customer authorization receipt which authorizes the retailer to initiate an ACH or EFT transaction from the customer's checking account.   (*Id.* at col. 8, lns. 18-23).   The customer signs the authorization form and the retailer often voids the paper check. (*Id*).   The consumer bank account and transaction information is formatted by the electronic check processing provider so that it can be read and processed by the Automated Clearing House ("ACH")[3] or other Electronic Funds Transfer ("EFT") networks.   (*Id.* at col. 8, lns. 30-42).   The ACH or other EFT networks, in turn, transmits the payment information to the consumer's bank,

---

[3]

**REDACTED**

where their account is debited and the retailer's bank, sometimes called the Originating Depository Financial Institution (ODFI), is credited via an electronic funds transfer.

The '988 Patent contains three independent claims, 1, 8, and 9. Claims 1 and 9 are system claims, and claim 8 is a method claim. The patent also contains a number of dependent claims, 2-7 and 10-20. LML is moving for summary judgment of infringement on claims 1, 2, 4, 5, 6, 9, 10, 11, and 16.

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

### III.    TeleCheck's Non-Infringement Contentions.

TeleCheck has asserted a handful of non-infringement contentions in its responses to LML's contention interrogatories and through their expert, David P. Kurrasch.  The only four elements that TeleCheck has identified are missing in the ECA service are the "any bank check" limitation, the "enabling automated clearing house communication for transferring funds/subsequently transmitting transaction event information to a bank for automated clearing house operations"[4] limitation, the "without using the bank check as a negotiable instrument" limitation and the "for the sole purpose of obtaining consumer bank account information" limitation.  (Ex. 16 at Numbers 1 and 12).  The limitations do not appear in every claim, and TeleCheck has not provided any additional non-infringement contentions for many of the dependent claims.

However, these contentions are predicated on this Court adopting Defendants' proposed claim constructions.  For example, despite the fact that TeleCheck must follow the NACHA Operating Rules prohibiting the use of checks as negotiable instruments,

---

[4] Although these are two separate claim elements, Defendants have provided the exact same construction for both and, thus, the same noninfringement contention.

TeleCheck contends that under its construction of the "without using the bank check as a negotiable instrument" TeleCheck does not infringe because its merchants do use the check as a negotiable instrument. However, under LML's construction, a paper check is not "used as" a negotiable instrument if it is solely used as a source document and not accepted or processed and, therefore, TeleCheck's ECA products and services would literally satisfy this element. As explained below, applying the proper claim constructions to the asserted claims, no genuine issue of material fact exists as to the presence of all of the claim elements in TeleCheck's ECA service. Thus, summary judgment is appropriate as a matter of law.

**TELECHECK'S ECA SERVICE INFRINGES ALL ASSERTED CLAIMS.**

**I.       Legal Standard For Summary Judgment.**

Summary judgment is available in patent cases as in other areas of litigation, and the summary judgment standard for a patent claim is the same as the standard for other claims. *Avia Group Int'l Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560-61 (Fed. Cir. 1988); *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed. Cir. 1991). Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *London v. Carson Pirie Scott*, 946 F.2d 1534, 1537 (Fed. Cir. 1991).

Once the moving party has demonstrated the absence of a genuine issue of material fact, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . ." the nonmoving party must "come forward 'with specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-movant cannot simply make conclusory denials concerning the evidence. *See Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984) ("[T]he court may not simply accept a party's statement that a fact is challenged"). Unless there is sufficient evidence to enable a jury to find for the nonmoving party on the issue for which summary judgment is sought, there is no issue for trial, and summary judgment should be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Thus, to create a genuine issue of material fact, the opposing party must "go beyond the pleadings" and set forth specific facts to support their contention. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## II.    Defendants Cannot Raise New, Undisclosed Contentions In Response To This Motion.

A party that, without substantial justification, fails to amend or supplement a prior response to discovery or expert disclosures pursuant to Rule 26(e) before the close of discovery is not permitted to use the information as evidence at trial or on a motion for summary judgment. Fed. R. Civ. P. 37(c)(1); *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1056-57 (7th Cir. 2000) (denying request for additional discovery to oppose motion for summary judgment where two and a half year long discovery period was closed); *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (denying further discovery when the party opposing summary judgment had a "fully

-10-

adequate opportunity for discovery"); *see also Hancock v. Hobbs*, 967 F.2d 462, 468 (11th Cir. 1992) (affirming district court decision to exclude expert testimony where plaintiff failed to disclose identity of expert and the substance of his testimony until five months after retaining him and over three months after the close of an extended period of discovery); *Thibeault v. Square D Co.*, 960 F.2d 239, 246-47 (1st Cir. 1992) (precluding expert testimony where expert was not disclosed until after the close of discovery, and plaintiff failed to seasonably supplement its interrogatory responses to identify the expert in a timely manner pursuant to Rule 26(e) of the Federal Rules of Civil Procedure).

## III.    Legal Standard For Infringement.

This Court must engage in a two step analysis to determine if TeleCheck's products infringe. "The first step is determining the meaning and scope of the patent claim asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*) *aff'd*, 517 U.S. 370 (1996); *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1341 (Fed. Cir. 2001).[5]    With respect to claim construction, for most of the claim elements, the parties have not provided a claim construction or TeleCheck infringes under either parties' claim construction. However, where the choice of claim construction does affect the analysis, as will be discussed in detail below, LML's construction is applied.

To establish infringement, LML must show that TeleCheck's ECA product and service performed each claimed step of claims 1, 2, 4, 5, 6, 9, 10, 11, and 16 of the '988 patent. *See 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1370

---

[5] In proving infringement, LML has applied LML's proposed claim constructions.

-11-

(Fed. Cir. 2003). TeleCheck infringes the '988 Patent if its product or service satisfies all of the elements of a single asserted claim either literally or under the doctrine of equivalents. *Markman* 517 U.S. at 374. TeleCheck's ECA product and service literally reads on each and every element of all of the asserted claims.

The depositions of TeleCheck's officers, employees, and technical expert in this case, as well as TeleCheck's own documents and responses to LML's interrogatories, establish that TeleCheck's ECA Service performs ***each and every*** step of claims 1, 2, 4, 5, 6, 9, 10, 11, and 16 of the '988 patent. Where, as is the case here, the features of an accused device or process are not disputed, a district court may appropriately decide infringement as a matter of law. *See Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1324 (Fed. Cir. 2002) ("[w]here the parties do not dispute any relevant facts regarding the accused product . . . but disagree over possible claim interpretations, the question of literal infringement . . . is amenable to summary judgment."). Since no genuine issues of material fact exists relating to TeleCheck's ECA product, LML is entitled to summary judgment that TeleCheck infringes claims 1, 2, 4, 5, 6, 9, 10, 11, and 16 of the '988 patent.

**IV.    LML Is Entitled To Summary Judgment Of Infringement Of Claim 1.**

Claim 1 of the '988 patent reads:

A checkwriting point of sale system comprising:

> a point of sale terminal adapted to receive consumer bank account information from any bank check;

> a central computer system;

> first communications means integral to said point of sale terminal for electronically communicating with the central computer system;

memory means integral to said point of sale terminal for temporarily storing the consumer bank account information;

the central computer system having second communication means for receiving information from a plurality of said point of sale terminals;

the central computer system second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using the bank check as a negotiable instrument.

(Ex. 1 '988 Patent claim 1).

TeleCheck's ECA service literally contains each and every element of claim 1 of the '988 patent and therefore infringes this claim.

    1.    A checkwriting point of sale system comprising:

**REDACTED**

---

6 LML has construed "adapted to receive consumer bank account information from any bank check" as simply the claim language itself. (Ex. 17). Defendants' construction

(Continued...)

**REDACTED**

---

is "adapted to read consumer bank account information directly from any bank check." *Id.*

LML has construed "consumer bank account information" to mean "information relating to a consumer's bank account including the MICR line (magnetic ink character recognition line)." *Id.* Defendants' construction is "only the ABA/transit routing number and bank account number." *Id.*

LML has construed "any bank check" as "any regular check used to draw funds from a normal bank or credit union checking account." *Id.* Defendants' construction is "any type of check drawn on a financial institution." *Id.*

**REDACTED**

_____

7

**REDACTED**

-15-

**REDACTED**

**REDACTED**

**REDACTED**

_____

8 The parties do not dispute the construction of the "second communication means" element. This function is written in means-plus-function format pursuant to 35 U.S.C. 112(6). (Ex. 17). The recited function of this limitation is enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using the [a] bank check as a negotiable instrument. *Id.* The structures disclosed in the patent for performing the recited function of this limitation are a modem, network interface, enhanced radio transmission interface, satellite communication interface or equivalent. *Id.*

-18-

**REDACTED**

**REDACTED**

---

[9] TeleCheck's construction for the entire element is "electronically communicating with an automated clearing house for transferring funds electronically based upon the consumer bank account information obtained from any bank check presented at the point-of-sale." (Ex. 17).

[10] TeleCheck's construction for this element is "the bank check, at no time, takes on the status of a negotiable instrument." (Ex. 17).

**REDACTED**

**REDACTED**

V.     **LML Is Entitled To Summary Judgment of Infringement of Claim 2.**

Claim 2 of the '988 patent reads:

The checkwriting point of sale system according to claim 1 wherein said point of sale terminal further includes means for reading magnetic ink character recognition numbers appearing on a consumer check for the sole

---

11

**REDACTED**

-22-

purpose of identifying and reading the consumer bank account information.

(Ex. 1 '988 Patent claim 2).

**REDACTED**

---

[12] TeleCheck's construction limits this structure to a MICR reader and optical character recognition equipment. (Ex. 17). TeleCheck's construction of "consumer bank account information" is described above.

**REDACTED**

**VI.     LML Is Entitled To Summary Judgment of Infringement Of Claim 4.**

Claim 4 of the '988 patent reads:

The checkwriting point of sale system according to claim 1 wherein said point of sale terminal further comprising of a printer means for receiving information from the memory means point of sale terminal and for generation a transaction event sales slip.

(Ex. 1 '988 Patent claim 4).  Claim 4 depends from claim 1.

**REDACTED**

**VII.    LML Is Entitled To Summary Judgment of Infringement Of Claim 5.**

Claim 5 of the '988 patent reads:

The checkwriting point of sale system according to claim 1 further comprising a resident third party database wherein consumer banking account status information is stored, the consumer banking account status

-25-

information being used for verification of consumer banking account status.

(Ex. 1 '988 Patent claim 5).

**REDACTED**

## VIII.   LML Is Entitled To Summary Judgment of Infringement Of Claim 6.

Claim 6 of the '988 patent reads:

The checkwriting point of sale system according to claim 1 wherein the central computer system further comprises a system subscriber database, the system subscriber database comprising information regarding merchants and service providers that are authorized to use the checkwriting point of sale system

(Ex. 1 '988 Patent claim 6).

**REDACTED**

**IX.     LML Is Entitled To Summary Judgment of Infringement Of Claim 9.**

Claim 9 includes all of the elements of claims 1 and 2.[13]  Because there is no genuine issue of material fact that TeleCheck's products literally contain all of the elements of claims 1 and 2, TeleCheck also literally infringes claim 9.

**X.     LML Is Entitled To Summary Judgment of Infringement Of Claim 10.**

Claim 10 is dependent upon claim 9.  Claim 10 also includes all of the elements found in claim 4, which are present in TeleCheck's products as discussed above. Because there is no genuine issue of material fact that all of the elements of claims 9 and 10 are met, TeleCheck literally infringes claim 10.

---

[13] There are some minor changes in the text, but these do not affect the infringement analysis.

**XI.     LML Is Entitled To Summary Judgment of Infringement Of Claim 11.**

Claim 11 is dependent upon claim 9.  Claim 11 also includes all of the elements found in claim 5, which are present in TeleCheck's products as discussed above. Because there is no genuine issue of material fact that all of the elements of claims 9 and 11 are met, TeleCheck literally infringes claim 11.

**XII.    LML Is Entitled To Summary Judgment Of Claim 16.**

Claim 16 is dependent upon independent claim 8.  As will be discussed below, there is no genuine issue of material fact that TeleCheck's products include all of the limitations found in claims 8 and 16, respectively.

1.      The elements of independent claim 8 are satisfied.

Independent claim 8 of the '988 patent reads:

A checkwriting point of sale process comprising:

Presenting any bank check specimen to a point of sale terminal located at a merchant or service provider;

Reading the magnetic ink character recognition number information on the check for the sole purpose of obtaining consumer bank account information, without using the check as a negotiable instrument;

Storing the consumer bank account information obtained from the check and verifying that the account numbers were accurately read at the point of sale terminal;

Providing transaction event information at the point of sale terminal;

Transmitting the transaction event information and consumer bank account information to a central computer;

Storing the transaction event information and consumer banking account information and;

Subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations.

-28-

(Ex. 1 '988 Patent claim 8).

        a)     A checkwriting point of sale process comprising:

**REDACTED**

**REDACTED**

**REDACTED**

---

[14] TeleCheck's construction is "visually confirming that account numbers were accurately read by reference to the source document."  (Ex. 17 ).

REDACTED

REDACTED

**REDACTED**

---

15 TeleCheck's proposed construction of this term is "electronically communicating with an automated clearing house for transferring funds electronically based upon the consumer bank account information obtained from any bank check presented at the point-of-sale." (Ex. 17).

**REDACTED**

b)      The elements of claim 16 are satisfied.

Dependent claim 16 of the '988 patent reads:

The checkwriting point of sale process of claim 8 further comprising:

(A)    printing a transaction event sales slip following the sending of an approval message; and

(B)    Executing of the sales slip by the consumer as proof of the bank account access authorization

(Ex. 1 '988 Patent claim 16).  All of the elements of claim 16 are also literally satisfied by TeleCheck's ECA products and services.

i)      printing a transaction event sales slip following the sending of an approval message; and

**REDACTED**

-35-

**REDACTED**

In conclusion, there is no genuine issue of material fact that all of the elements of claims 8 and 16 of the '988 patent are literally present in TeleCheck's ECA products and services, and, therefore, infringe claim 16 of the '988 patent.

## CONCLUSION

For the foregoing reasons, this Court should grant LML's motion and find that TeleCheck literally infringes claims 1, 2, 4, 5, 6, 9, 10, 11, and 16 of the '988 Patent.

DATED: October 28, 2005

_Mary B. Matterer_

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware  19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
(312) 861-2000
Attorneys for LML Patent Corp.

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of November, 2005, I electronically filed the foregoing document, **PUBLIC VERSION OF LML'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT NO. 1: FOR A RULING THAT TELECHECK INFRINGES CLAIMS 1, 2, 4, 5, 6, 9, 10, 11, AND 16 OF THE '988 PATENT**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Collins J. Seitz, Jr., Esq.
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19801

William J. Marsden, Jr., Esq.
Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 4th day of November, 2005, the foregoing document was served via email on the following non-registered participants:

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Mark C. Scarsi, Esq.
Vision L. Winter, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

_____ /s/ Mary B. Matterer _____
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com

Attorneys for Plaintiff LML PATENT CORP.

-38-