# EXHIBIT 17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LML PATENT CORP.,

            Plaintiff,

   v.

TELECHECK SERVICES, INC.,                C.A. 04-858 (SLR)
ELECTRONIC CLEARING HOUSE, INC.,
XPRESSCHEX, INC. and NOVA
INFORMATION SYSTEMS, INC.,

            Defendants.

## DEFENDANT NOVA INFORMATION SYSTEMS, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Nova Information Systems, Inc. ("Nova") hereby responds and objects to Plaintiff's Second Set of Interrogatories as set forth below:

### GENERAL OBJECTIONS:

Each interrogatory is answered to the best of Nova's knowledge, information and belief as of the date of the response, however, Nova's investigation into the issues of this action in ongoing. Nova reserves the right to supplement or amend without prejudice its responses to these interrogatories pursuant to the Federal Rules of Civil Procedure.

The following General Objections apply to each and every interrogatory contained therein, and are incorporated by reference in each of the specified responses set forth below as though fully set forth therein. The failure to mention one of the following objections in any of the specific responses set forth below shall not be deemed to waive or limit the objection.

586292v1

1

1.      Nova objects to the Interrogatories to the extent they purport to impose any duty or obligation other than those imposed by the Federal Rules of Civil Procedure. Nova will not comply with any such unauthorized or inconsistent instructions.

2.      Nova objects to the Interrogatories to the extent they seek documents or information protected by the attorney-client privilege, work product immunity, common interest privilege, or any other applicable privilege. The disclosure of any privileged information or document by Nova is unintentional, and Nova does not intend to waive any applicable objection or privilege as a result of such production or disclosure.

3.      Nova objects to the Interrogatories to the extent they seek information that Nova is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

4.      Nova objects to the Interrogatories to the extent they purport to require the disclosure of information that is not within Nova's possession, custody or control.

5.      Nova objects to the Interrogatories to the extent they seek information that is publicly available, is as readily available to Plaintiff as it is to Nova, or is already in Plaintiff's possession, custody or control.

6.      Nova objects to the Interrogatories to the extent they are unreasonably cumulative or duplicative, and to the extent that the information sought is more conveniently obtainable from some other source.

7.      Nova objects to the Interrogatories to the extent they purport to impose a requirement on Nova to disclose information about Nova's products or programs other than those at issue in this case as unreasonable, unduly burdensome and not reasonably calculated to lead to discoverable information.

586292v1

2

8.    Nova objects to the Interrogatories to the extent they seek information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.

9.    Nova objects to each and every interrogatory to the extent that it is a premature contention interrogatory because discovery is still in its early stages and Nova is still formulating its contentions regarding the claims and defenses of the parties.

10.    Nova objects to each and every interrogatory to the extent that they use the terms "NOVA's Accused Products," "Accused Product," "product," which, as defined, or as used therein, are vague, ambiguous and overbroad.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 10:

Describe in detail all bases for Nova's contention that it does not infringe claims 14, 16, and 18 of the '988 patent, claim 10 of the '258 patent, and claims 1, 2 and 24 of the '366 patent either literally or under the doctrine of equivalents, and its contention that it has not contributed to the infringement by others and/or has not induced others to infringe such claims, including a claim chart explaining in detail all specific structural or functional differences between each Accused Product and each claim.

(As used herein, the "'988 patent" refers to U.S. Patent No. 5,484,988; the "'528 patent" refer to U.S. Patent No. 6,164,528; the "'366 patent" refers to U.S. Patent No. 6,283,366; and "Nova's Accused Products", "Accused Product", or "product" means Nova's "Electronic Check Service," all variations thereof, and any other product, equipment, component, system, or services manufactured, sold, offered for sale, used, or imported by Nova that reasonably relate to conversion of checks, presented at points of sale, to electronic transactions).

516292v1

3

**RESPONSE TO INTERROGATORY NO. 10:**

Nova objects to this interrogatory on the grounds that it is compound, vague, ambiguous and unduly complex including in its use of multiple subparts contrary to Fed. R. Civ. P. 33(a). Nova also objects to this interrogatory as premature in that it seeks Nova's contentions and analysis before Nova has completed its investigation and discovery relating to non-infringement issues, before Nova has conducted expert discovery on non-infringement, before Plaintiff has offered meaningful claim construction positions, and before the Court has construed the claims of the patent. Nova incorporates by reference its previous responses to plaintiff's amended first set of interrogatories to the extent they are responsive to this interrogatory.

Subject to and without waiving its General and Specific Objections, Nova responds as follows:

| CLAIM 14 OF THE '988 PATENT | |
| --- | --- |
| 14.    The checkwriting point of sale system of claim 1, wherein the point of sale terminal further comprises means for automatically logging a point of sale terminal location and transaction date, time, and sales amount. | Nova does not infringe this claim because Nova does not infringe claim 1 from which this claim depends. Further, the Nova Electronic Check Service does not have a point of sale terminal that further comprises means for automatically logging a point of sale terminal location and transaction date, time, and sales amount. |

| CLAIM 16 OF THE '988 PATENT | |
| --- | --- |
| 16.    The checkwriting point of sale process of claim 8, further comprising:<br>(A)    printing a transaction event sales slip following the sending of an approval message; and | Nova does not infringe this claim because Nova does not infringe claim 8 from which this claim depends. Nova's analysis and investigation of this limitation is ongoing and Nova will supplement this response as appropriate. |

| | |
|---|---|
| **(B)** executing of the sales slip by the consumer as proof of bank account authorization. | Nova does not infringe this claim because Nova does not infringe claim 8 from which this claim depends. Further, the Nova Electronic Check Service does not require a consumer to execute a sales slip as proof of bank account access authorization. |

| **CLAIM 18 OF THE '988 PATENT** | |
|---|---|
| **18.** The checkwriting point of sale process of claim 8, further comprising automatically logging point of sale terminal location information and transaction date, time, and sales amount information into the point of sale terminal. | Nova does not infringe this claim because Nova does not infringe claim 8 from which this claim depends. Further, the Nova Electronic Check Service does not automatically log point of sale terminal location information and transaction date, time, and sales amount information into the point of sale terminal. |

| **CLAIM 1 OF THE '366 PATENT** | |
|---|---|
| **1.** A checkwriting point of sale system comprising: a point of sale terminal adapted to receive payer bank account information from any bank check; | The Nova Electronic Check Service does not have a point of sale terminal adapted to receive payer bank account information from any bank check. |
| a central computer system; | Nova's analysis and investigation of this limitation is ongoing. Nova will supplement this response as appropriate. |
| first communications means integral to said point of sale terminal for electronically communicating with the central computer system; | Nova's analysis and investigation of this limitation is ongoing. Nova will supplement this response as appropriate. |
| memory means integral to said point of sale terminal for temporarily storing the payer bank account information; | Nova's analysis and investigation of this limitation is ongoing. Nova will supplement this response as appropriate. |
| the central computer system having second communication means for receiving information from a plurality of said point of sale terminals; and | Nova's analysis and investigation of this limitation is ongoing. Nova will supplement this response as appropriate. |

| | |
|---|---|
| the central computer system second communication means enabling said central computer system to communicate with external databases for performing a payer bank account status search and further enabling communication with an electronic funds transfer system for transferring funds without using the bank check as a negotiable instrument. | The Nova Electronic Check Service does not have a central computer system second computer system to communicate with external databases for performing a payer bank account status search and further enabling communication with an electronic funds transfer system for transferring funds without using the bank check as a negotiable instrument. |

| CLAIM 2 OF THE '366 PATENT | |
|---|---|
| 2.    The checkwriting point of sale system of claim 1 wherein the point of sale terminal is further adapted to print activity reports of transaction events occurring at the point of sale terminal. | Nova does not infringe this claim because Nova does not infringe claim 1 from which this claim depends. Nova's analysis and investigation of this limitation is ongoing and Nova will supplement this response as appropriate. |

**INTERROGATORY NO. 11:**

Describe in detail all legal and factual bases for Nova's contention that each of claims 14, 16, and 18 of the '988 patent, claim 10 of the '528 patent, and claims 1, 2 and 24 of the '366 patent are invalid and for each piece of alleged prior art, and/or combination of alleged prior art that Nova contends invalidates each such claim, provide a detailed claim chart that identifies each element of the claim that Nova contends is disclosed or taught by the prior art with citations to each instance where such element is allegedly disclosed or taught by the prior art.

**RESPONSE TO INTERROGATORY NO. 11:**

Nova objects to this interrogatory on the grounds that it is compound, vague, ambiguous and unduly complex including in its use of multiple subparts contrary to Fed. R. Civ. P. 33(a). Nova also objects to this interrogatory as premature in that it seeks Nova's contentions

586292v1

and analysis before Nova has completed its investigation and discovery relating to invalidity issues, before Nova has conducted expert discovery on invalidity, before Plaintiff has offered meaningful claim construction positions, and before the Court has construed the claims of the patent. Nova incorporates by reference its previous responses to plaintiff's amended first set of interrogatories to the extent they are responsive to this interrogatory.

Subject to and without waiving its General and Specific Objections, Nova responds as follows:

Claims 14, 16, and 18 of the '988 patent are invalid under 35 U.S.C. § 102 as anticipated by U.S. Patent No. 5,175,682 to Higashiyama ("Higashiyama").

| Claim 14 of the '988 patent | Higashiyama |
|---|---|
| 14.    The checkwriting point of sale system of claim 1, wherein the point of sale terminal further comprises means for automatically logging a point of sale terminal location and transaction date, time, and sales amount. | Electronic journaling information is additional information which may either be retained by the merchant or used to provide a more precise indication of the nature of the purchase on the customer's monthly checking account statement. Such additional information may include, for example, the name of the merchant, the merchant's location, a summary of the goods for services provided, for example sorted by department in the department store. (col. 3, line 66 – col. 4, line 7) |

| Claim 16 of the '988 patent | Higashiyama |
|---|---|
| 16.    The checkwriting point of sale process of claim 8, further comprising:<br>(A)    printing a transaction event sales slip following the sending of an approval message; and | "Merchant system 200 includes one or more point of sale systems 210 including, for example, point of sale terminal 201 such as a typical electronic cash register, or the like." (col. 3, lines 13-16, and Figure 2) "a receipt is, if desired, printed and given to the customer indicating that payment has been made by check, and the check is being electronically cleared. This receipt can be either a part of or |

| | separate from another receipt indicating detailed information regarding the transaction just completed" (col. 4, lines 62-68). |
|---|---|
| (B)     executing of the sales slip by the consumer as proof of bank account access authorization. | "In either event, whether the check is returned to the customer or retained by the merchant, a receipt is, if desired, printed and given to the customer indicating that payment has been made by check, and the check is being electronically cleared.  This receipt can be either a part of or separate from another receipt indicating detailed information regarding the transaction just completed."  (col. 4, lines 61-65). |

| Claim 18 of the '988 patent | Higashiyama |
|---|---|
| 18.     The checkwriting point of sale process of claim 8, further comprising automatically logging point of sale terminal location information and transaction date, time, and sales amount information into the point of sale terminal. | Electronic journaling information is additional information which may either be retained by the merchant or used to provide a more precise indication of the nature of the purchase on the customer's monthly checking account statement.  Such additional information may include, for example, the name of the merchant, the merchant's location, a summary of the goods for services provided, for example sorted by department in the department store. (col. 3, line 66 – col. 4, line 7) |

Claims 1 and 2 of the '366 patent are invalid under 35 U.S.C. § 102 as anticipated by U.S.

Patent No. 5,175,682 to Higashiyama ("Higashiyama").

| Claim 1 of the '366 patent | Higashiyama |
|---|---|
| 1.     A checkwriting point of sale system comprising:<br><br>a point of sale terminal adapted to receive payer bank account information from any bank check; | "Merchant system 200 includes one or more point of sale systems 210 including, for example, point of sale terminal 201 such as a typical electronic cash register, or the like" (col. 3, lines 13-16) |
| a central computer system; | backroom processor 204 (col. 3, line 34) |

586292v1

8

| | |
|---|---|
| first communications means integral to said point of sale terminal for electronically communicating with the central computer system; | POS terminal 201 is connected to backroom processor 204, such as those which are known in the prior art for maintaining sales information, performing price lookups, and inventory adjustment during the course of business. (col. 3, lines 29-33) |
| memory means integral to said point of sale terminal for temporarily storing the payer bank account information; | "Magnetic Ink Character Recognition (MICR) reader 202 is used for reading the magnetic account number printed on checks, which data is fed to POS terminal 201. Alternatively, the information pertaining to the check's account number, etc. can be entered in any convenient manner, for example via the keypad on the POS terminal 201, or via a customer identification card issued by the merchant." (col. 3, lines 16-23) "The data record thus created by POS terminal 201 can be added to a data file maintained by POS terminal 201 for batch uploading to backroom processor 204, for example, on a periodic basis or at the end of a shift." (col. 5, lines 1-4). |
| the central computer system having second communication means for receiving information from a plurality of said point of sale terminals; and | Telecommunications unit 205 is connected to backroom processor 204 and, if desired, directly to POS terminal 201 to allow data to be communicated to a check clearing house, for example. (col. 3, lines 33-36) |
| the central computer system second communication means enabling said central computer system to communicate with external databases for performing a payer bank account status search and further enabling communication with an electronic funds transfer system for transferring funds without using the bank check as a negotiable instrument. | Periodically, backroom processor 204 will take the data records it has accumulated and upload them to a clearing house. (col. 5 lines 11-13). <br><br> If desired, the data record is then used to verify check authorization, for example, by being compared to a positive file (which lists all allowable checking account numbers), or more likely against a negative file such as provided by SCAN of Seattle, Washington, Telecheck of Denver, Colorado or Telecredit of Florida, which provide information regarding known troublesome checking accounts. If such authorization is not provided, the transaction can, if desired, be cancelled by the merchant, thereby minimizing losses due to bad checks, as is well known. (col. 4, lines 14-24) |

| Claim 2 of the '366 patent | Higashiyama |
|---|---|
| 2.    The checkwriting point of sale system of claim 1 wherein the point of sale terminal is further adapted to print activity reports of transaction events occurring at the point of sale terminal. | [I]n accordance with the teachings of this invention, a check has essentially become the equivalent of an electronic debit card, but with significant advantages (col. 6, lines 11 and 12)<br><br>the banks are capable of eliminating handling of the physical check and its ultimate return to the consumer.  (col. 7, lines 47-49)<br><br>The validated check is then returned to the customer for safekeeping, thus avoiding the need for the check to be physically transported through the system depicted in FIG. 1 for ultimate return to the customer.  (col. 4, lines 54-57). |

**INTERROGATORY NO. 12:**

Identify any and all joint defense agreements, joint defense fund(s) and persons and entities, whether parties to the above captioned litigation or not, who are members of any joint defense group, beneficiaries of any joint defense fund and/or signatories to any joint defense agreement that relate in any way to the above captioned litigation, United States Patent Numbers 5,484,988, 6,164,528 and/or 6,283,366, and/or their applications before the patent and Trademark Office.

**RESPONSE TO INTERROGATORY NO. 12:**

Nova objects to this Interrogatory to the extent they seek documents or information protected by the attorney-client privilege, work product immunity, common interest privilege, or any other applicable privilege.  Nova further objects to this interrogatory on the grounds that it is compound, vague, ambiguous and unduly complex including in its use of multiple subparts contrary to Fed. R. Civ. P. 33(a).  Nova further objects to this interrogatory on the grounds that it calls for information that is neither relevant to the claim or defense of any

586292v1

10

party nor reasonably calculated to lead to the discovery of admissible evidence, and is overbroad, unduly burdensome, harassing and oppressive.

Subject to and without waiving its General and Specific Objections, Nova responds as follows:

**Common Interest and Information Sharing Agreement 1**

Agreement by and between Telecheck Services, Inc., Nova Information Systems, Inc., Electronic Clearing House, Inc., and XpressChex, Inc.

**Common Interest and Information Sharing Agreement 2**

Agreement by and between Visa U.S.A. Inc., Nova Information Systems, Inc., Electronic Clearing House, Inc., and XpressChex, Inc.

**INTERROGATORY NO. 13:**

For every year from 1996 to present, state the amount of revenues and profits received by Nova that are attributable to the electronic check conversion aspect of any point-of-sale transaction processed by Nova.

**RESPONSE TO INTERROGATORY NO. 13:**

Nova objects to this interrogatory on the grounds that it calls for information that is neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence, and is overbroad, unduly burdensome, harassing and oppressive. Nova further objects to this interrogatory on the grounds that it is compound, vague, ambiguous and unduly complex including in its use of multiple subparts contrary to Fed. R. Civ. P. 33(a). Nova further objects to this interrogatory to the extent that it is duplicative of previous interrogatories.

Subject to and without waiving its General and Specific Objections, Nova responds as follows:

The non-objectionable portion of the answer to this interrogatory may be derived or ascertained from business records in the possession, custody or control of Nova, and the burden of deriving or ascertaining the non-objectionable portion of the answer to this interrogatory is substantially the same for LML as it is for Nova. Therefore, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Nova will produce documents from which the non-objectionable portion or this interrogatory may be derived or ascertained:

- NOVA-26603 to NOVA-26605

- NOVA-02528

Pursuant to the Federal Rules of Civil Procedure, Nova will supplement this response as discovery continues and otherwise as circumstances warrant.

## INTERROGATORY NO. 14:

Identify any rates that Nova contends are customary royalty amounts in the checking industry, as well as all bases for such rates.

## RESPONSE TO INTERROGATORY NO. 14:

Nova objects to this interrogatory as premature in that it calls for expert opinions and contentions in advance of the court scheduled dates for expert opinions as specified in the Scheduling Order entered on October 22, 2004. Nova further objects to this interrogatory to the extent that it is a premature contention interrogatory because discovery is still in its early stages and Nova is still formulating its contentions regarding the claims and defenses of the parties. Nova further objects to this interrogatory on the grounds that it calls for information that is

586292v1

12

neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence, and is overbroad, unduly burdensome, harassing and oppressive. Nova further objects to this interrogatory on the grounds that it is compound, vague, ambiguous and unduly complex.

Pursuant to the Federal Rules of Civil Procedure, Nova will supplement this response as discovery continues and otherwise as circumstances warrant.

**INTERROGATORY NO. 15:**

Identify each patented article that Nova contends is sold or leased (or licensed to sell or lease) by LML or any LML licensee.

**RESPONSE TO INTERROGATORY NO. 15:**

Nova objects to this interrogatory to the extent that it is a premature contention interrogatory because discovery is still in its early stages and Nova is still formulating its contentions regarding the claims and defenses of the parties. Nova further objects to this interrogatory on the grounds that it calls for information that is neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence, and is overbroad, unduly burdensome, harassing and oppressive. Nova further objects to this interrogatory on the grounds that it is compound, vague, ambiguous and unduly complex.

Pursuant to the Federal Rules of Civil Procedure, Nova will supplement this response as discovery continues and otherwise as circumstances warrant.

**INTERROGATORY NO. 16:**

Describe in detail each and every difference between all point of sale equipment used for the Accused Products and all point of sale equipment used for its other check processes including, but not limited to, any check authorization, verification, and guarantee process.

586292v1

13

## RESPONSE TO INTERROGATORY NO. 16:

Nova objects to this interrogatory on the grounds that it calls for information that is neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence, and is overbroad, unduly burdensome, harassing and oppressive. Nova further objects to this interrogatory on the grounds that it is compound, vague, ambiguous and unduly complex including in its use of multiple subparts contrary to Fed. R. Civ. P. 33(a).

Subject to and without waiving its General and Specific Objections, Nova responds as follows:

The non-objectionable portion of the answer to this interrogatory may be derived or ascertained from business records in the possession, custody or control of Nova, and the burden of deriving or ascertaining the non-objectionable portion of the answer to this interrogatory is substantially the same for LML as it is for Nova. Therefore, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Nova will produce documents from which the non-objectionable portion or this interrogatory may be derived or ascertained:

- NOVA-02134 to NOVA-02269

- NOVA-02918 to NOVA-03016

- NOVA-03025 TO NOVA-03060

- NOVA-03293 TO NOVA-03299

Pursuant to the Federal Rules of Civil Procedure, Nova will supplement this response as discovery continues and otherwise as circumstances warrant.

## INTERROGATORY NO. 17:

State who owns, leases, operates, and maintains every database and computer used with the Accused Products for verifying, authorizing, guaranteeing, converting or otherwise processing checks, and the location of each such database.

## RESPONSE TO INTERROGATORY NO. 17:

Nova objects to the Interrogatories to the extent they purport to require the disclosure of information that is not within Nova's possession, custody or control. Nova further objects to this interrogatory on the grounds that it calls for information that is neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence, and is overbroad, unduly burdensome, harassing and oppressive. Nova further objects to this interrogatory on the grounds that it is compound, vague, ambiguous and unduly complex including in its use of multiple subparts contrary to Fed. R. Civ. P. 33(a).

Subject to and without waiving its General and Specific Objections, Nova responds as follows:

The non-objectionable portion of the answer to this interrogatory may be derived or ascertained from business records in the possession, custody or control of Nova, and the burden of deriving or ascertaining the non-objectionable portion of the answer to this interrogatory is substantially the same for LML as it is for Nova. Therefore, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Nova will produce documents from which the non-objectionable portion or this interrogatory may be derived or ascertained:

- NOVA-02477 to NOVA-02487

- NOVA-02534 to NOVA-02568

- NOVA-02578 to NOVA-02581

Pursuant to the Federal Rules of Civil Procedure, Nova will supplement this response as discovery continues and otherwise as circumstances warrant.

April 29, 2005

THE BAYARD FIRM

Richard D. Kirk (rk0922)
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE  19899
(302) 42-4208
rkirk@bayardfirm.com
Attorneys for defendant,
NOVA Information Systems, Inc.

OF COUNSEL:

Mark C. Scarsi
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071
(213) 430-6000

586292v1

16

# EXHIBIT  18
# REDACTED  IN  ITS
# ENTIRETY

# EXHIBIT 19
# REDACTED IN ITS ENTIRETY

# EXHIBIT 20

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP., <br><br> Plaintiff, <br><br> v. <br><br> TELECHECK SERVICES, INC., ELECTRONIC CLEARING HOUSE, INC., XPRESSCHEX, INC. and NOVA INFORMATION SYSTEMS, INC., <br><br> Defendants. | C.A. 04-858 (SLR) |

## JOINT PROPOSED CLAIM CONSTRUCTION STATEMENT

Pursuant to the Court's Rule 16 Scheduling Order in this matter, the Parties hereby submit the following claim charts to present their respective, proposed constructions of disputed claim terms and their proposed constructions of agreed claim terms in the patent-in-suit, namely, U.S. Patent No. 5,484,988 ("the '988 patent").

# Proposed Constructions of Disputed Claim Terms

| Claim Term | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **any bank check** (claims 1, 8) | Any regular check used to draw funds from a normal bank or credit union checking account | any type of check drawn on a financial institution |
| **any consumer bank check** (claim 9) | Any regular check used to draw funds from a normal bank or credit union consumer checking account | same meaning as the phrase "any bank check" set forth above, with the added limitation that the check be "drawn against a consumer bank account" |
| **any** (claims 1, 8, 9) | LML believes that this term should not be separately construed from the entire element in which it appears in the claims, namely the "any bank check" or "any consumer bank check" language construed below. In any event, this plain English term needs no construction. | one or some indiscriminately of whatever kind |
| **consumer bank account information** (claims 1, 2, 3, 8, 9) | Information relating to a consumer's bank account including the MICR line (magnetic ink character recognition line) | only the ABA/transit routing number and bank account number |
| **without using the bank check as a negotiable instrument** (claim 1) | Where the paper check is used as a source of information, and is not accepted or processed | the bank check, at no time, takes on the status of a negotiable instrument |
| **without using the check as a negotiable instrument** (claim 8) | Where the paper check is used as a source of information, and is not accepted or processed | the check, at no time, takes on the status of a negotiable instrument |

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| without using a bank check as a negotiable instrument (claim 9) | Where the paper check is used as a source of information, and is not accepted or processed | the check, at no time, takes on the status of a negotiable instrument |
| subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations (claim 8) | Subsequently transmitting the information relating to the transaction to a bank for subsequent automated clearing house operations | electronically communicating with an automated clearing house for transferring funds electronically based upon the consumer bank account information obtained from any bank check presented at the point-of-sale |
| enabling automated clearing house communication for transferring funds (claims 1, 9) | Enabling communication with an automated clearing house for electronically transferring funds | electronically communicating with an automated clearing house for transferring funds electronically based upon the consumer bank account information obtained from any bank check presented at the point-of-sale |
| for the sole purpose (claims 2, 8 and 9) | For the only purpose | Defendants contend that this term needs no construction. |
| adapted to receive consumer bank account information from any bank check (claim 1) | adapted to receive consumer bank account information from any bank check | adapted to read consumer bank account information directly from any bank check |

| Claim Limitation | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **means for reading magnetic ink character recognition numbers appearing on a consumer check** (claim 2) | This limitation should be construed pursuant to 35 U.S.C. Section 112(6).<br><br>The recited function is "reading magnetic ink character recognition numbers appearing on a consumer check."<br><br>The structures in the '988 patent that perform that function is any mechanism such as a MICR check reader, optical character recognition ("OCR") equipment, a keyboard for manual entry, or equivalent. | This limitation should be construed pursuant to 35 U.S.C. Section 112(6).<br><br>The recited function is "reading magnetic ink character recognition numbers appearing on a consumer check."<br><br>The structures described in the '988 patent that perform that function are a MICR reader and optical character recognition equipment. |
| **reading means for reading magnetic ink character recognition numbers on any consumer bank check** (claim 9) | This limitation should be construed pursuant to 35 U.S.C. Section 112(6).<br><br>The recited function is "reading magnetic ink character recognition numbers appearing on a consumer check."<br><br>The structures in the '988 patent that perform that function is any mechanism such as a MICR check reader, optical character recognition ("OCR") equipment, a keyboard for manual entry, or equivalent. | This limitation should be construed pursuant to 35 U.S.C. Section 112(6).<br><br>The recited function is "reading magnetic ink character recognition numbers on any consumer bank check."<br><br>The structures described in the '988 patent that perform that function are a MICR reader and optical character recognition equipment. |
| **verifying that account numbers were accurately read at the point of sale** (claim 8) | Verifying that the account numbers from the check were read accurately at the point of sale terminal | visually confirming that account numbers were accurately read by reference to the source document |

3

## Proposed Constructions of Agreed Claim Terms

| Claim Term | Parties' Agreed Proposed Construction |
|---|---|
| consumer (claim 9) | person, business or corporation |
| second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using the bank check as a negotiable instrument (claim 1); | This function is written in means-plus-function format pursuant to 35 U.S.C. 112(6).<br><br>The recited function of this limitation is enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using the [a] bank check as a negotiable instrument. |
| second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using a bank check as a negotiable instrument (claim 9) | The structures disclosed in the patent for performing the recited function of this limitation are a modem, network interface, enhanced radio transmission interface, satellite communication interface or equivalent.[1] |
| automated clearing house (claims 1, 8, 9) | an automated clearing house including, but not limited to, the national U.S. clearing houses sometimes referred to as the "ACH" |

4

[1] While the parties agree to the recited function of this claim element pursuant to 35 U.S.C. 112(6), the parties dispute the meaning of limitations within that function, as set forth in the Parties' Proposed Construction of Disputed Claim Terms and the parties' briefs.

DATED: October 7, 2005


_/s/ Mary B. Matterer_
Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS
& WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com


*Counsel for Plaintiff*
*LML Patent Corp.*

_/s/ Timothy Devlin_
William J. Marsden, Jr. (I.D. No. 2247)
Timothy Devlin (I.D. No. 4241)
Sean Hayes (I.D. No. 4413)
FISH & RICHARDSON P.C.
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
302.652.5070
marsden@fr.com
hayes@fr.com


*Counsel for Defendant*
*TeleCheck Services, Inc.*


_/s/ Francis DiGiovanni_
Francis DiGiovanni (I.D. No. 3189)
CONNOLLY BOVE LODGE & HUTZ
LLP
The Nemours Building
1007 N. Orange Street
Wilmington, Delaware 19801
302.658.9141
fdigiovanni@cblh.com


*Counsel for Defendants*
*Electronic Clearing House, Inc.*
*and Xpresschex, Inc.*


_/s/ Richard D. Kirk (rk0922)_
Richard D. Kirk (I.D. No. 922)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
302.429.4208
rkirk@bayardfirm.com


*Counsel for Defendant*
*NOVA Information Systems, Inc.*

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2005, I electronically filed a JOINT PROPOSED
CLAIM CONSTRUCTION STATEMENT with the Clerk of Court using CM/ECF which
will send notification of such filing(s) to the following:

> Richard K. Herrmann
> Mary B. Matterer, Esq.
> Morris James Hitchens & Williams
> 222 Delaware Avenue, 10th Floor
> Wilmington, DE  19801-4226

> Richard D. Kirk, Esq.
> The Bayard Firm
> 222 Delaware Avenue, 9th Floor
> Wilmington, DE  19899

> Collins J. Seitz, Jr., Esq.
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> Wilmington, DE  19801

I hereby certify that on October 7, 2005, I have sent by Electronic mail, the

document(s) to the following non-registered participants:

Robert Jacobs, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA  90045

Russell E. Levine, Esq.
Kirkland & Ellis LLP
200 E. Randolph Dr.
Chicago, IL 60601

> Mark C. Scarsi, Esq.
> O'Melveny & Myers LLP
> 400 S Hope Street
> Los Angeles, CA 90071

> _____/s/ Timothy Devlin_____
> Timothy Devlin

6

# EXHIBIT 21
# REDACTED IN ITS ENTIRETY

# EXHIBIT 22
# REDACTED IN ITS ENTIRETY

# EXHIBIT 23
# REDACTED IN ITS ENTIRETY

# EXHIBIT 24

Source: News & Business > Company & Financial > Financial Filings > U.S. Financial Filings > **EDGARPlus(R) Database** [i]
Terms: co(nova corp ga) and address(ga)  (Edit Search)

✦Select for FOCUS™ or Delivery

⌐

*EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: April 2, 2001*

Copyright 2001 Disclosure Incorporated
EDGARPlus(R)

COMPANY: **NOVA CORP GA**
TICKER: NIS
EXCHANGE: NYS

FORM-TYPE: 10-K
Exhibit 10. Material Contracts

FILING-DATE: April 2, 2001

✦ Full text  Company info  Other  Return

Special Printing Instructions for this Document.

* * * * * * * * * * * * * * **COMPANY INFORMATION** * * * * * * * * * * * * * * * *
**GA**

* * * * * * * * * * * * * * * **TEXT OF FILING** * * * * * * * * * * * * * * * * *

Exhibit 10.457

December 21, 2000

NOVA Corporation
NOVA Information Systems, Inc.
One Concourse Parkway, Suite 300
Atlanta, GA 30328
Attn: Stephen M. Scheppmann

Re: **$50,000,000 Revolving Credit Facility**
-------------------------------------

Ladies and Gentlemen:

BANK OF AMERICA, N.A., as Administrative Agent (the "Administrative Agent") and
the lenders from time to time party hereto (the "Lenders") are pleased to make
-------
available to NOVA Corporation, a Georgia corporation ("NOVA") and NOVA
----
Information Systems, Inc., a Georgia corporation ("NIS"; each of NOVA and NIS,
---
individually, a "Borrower" and collectively, the "Borrowers"), a revolving
--------  --------
credit facility on the terms and subject to the conditions set forth below.
Terms not defined herein have the meanings assigned to them in Exhibit A hereto.

**NOVA-03768**

---------

1. The Facility.

(a) The Commitment. Subject to the terms and conditions set forth herein, the Lenders agree to make available to the Borrowers until the Maturity Date a revolving credit facility providing for loans ("Loans") in an aggregate principal amount not exceeding at any time $50,000,000 (the "Commitment") in an amount equal to each Lender's Commitment Percentage as set forth on Schedule 1.1(a). Within the foregoing limit, the Borrowers may borrow, repay and reborrow Loans until the Maturity Date.

(b) Borrowings, Conversions, Continuations. Each of the Borrowers may request that Loans be (i) made as or converted to Base Rate Loans by irrevocable notice to be received by the Administrative Agent not later than 2 p.m. (Charlotte time) on the Business Day of the borrowing or conversion, or (ii) made or continued as, or converted to, Eurodollar Rate Loans by irrevocable notice to be received by the Administrative Agent not later than 2 p.m. (Charlotte time) three Business Days prior to the Business Day of the borrowing, continuation or conversion. In each case, the Administrative Agent shall promptly give notice of each borrowing request to each Lender by telecopier. If the Borrowers fail to give a notice of conversion or continuation prior to the end of any Interest Period in respect of any Eurodollar Rate Loan, the Borrowers shall be deemed to have requested that such Loan be converted to a Base Rate Loan on the last day of the applicable Interest Period. Notices pursuant to this Paragraph 1(b) may be given by telephone if promptly confirmed in writing.

Each Eurodollar Rate Loan shall be in a principal amount of $1,000,000 or a whole multiple of $500,000 in excess thereof. Each Base Rate Loan shall be in a minimum principal amount of $500,000 or a whole multiple of $100,000 in excess thereof. There shall not be more than 5 different Interest Periods in effect at any time.

(c) Funding Mechanics. Each Lender shall, before 3:30 p.m. (Charlotte time) on the date of such borrowing, make available to the Administrative Agent at its address referred to in Schedule 1.1(a), in immediately available funds, such Lender's ratable portion of such borrowings. Promptly after the Administrative Agent's receipt of such fund and upon fulfillment of the applicable conditions set forth in Paragraph 2, the Administrative Agent will make such funds available to the Borrowers by depositing the same in an account of

the Borrowers maintained with the Administrative Agent and designated by the Borrowers in the relevant notice of borrowing.

**NOVA-03769**

Unless the Administrative Agent shall have received notice from a
Lender prior to the date of any borrowing that such Lender will not
make such funds available, the Administrative Agent may assume that
such Lender has made such portion available to the Administrative
Agent on the date of such borrowing in accordance with the terms
hereof and the Administrative Agent may, in reliance upon such
assumption make available to the Borrowers on such date a
corresponding amount.  If and to the extent that such Lender shall not
have made its ratable portion available to the Administrative Agent,
such Lender and the Borrowers severally agree to repay to the
Administrative Agent forthwith on demand (provided, that such demand
shall be first made to such Lender prior to such demand being made to
the Borrowers) such corresponding amount together with interest
thereon, for each day from the date such amount is made available to
the Borrowers until the date such amount is repaid to the
Administrative Agent at (i) in the case of the Borrowers, the interest
rate otherwise applicable to Loans and (ii) in the case of a Lender
the Federal Funds Rate.  If such Lender shall repay to the
Administrative Agent such corresponding amount, such amount so repaid
shall constitute such Lender's portion of the Loan so requested (and
such Loan shall be deemed to have been made by such Lender on the date
when such amount is repaid to the Administrative Agent).  The failure
of any Lender to make its portion of a Loan shall not relieve any
other Lender of its obligation hereunder to make its portion of a
Loan, but no Lender shall be responsible for the failure of any other
Lender to make its portion of any Loan.  Nothing in the Paragraph 1(c)
--------------
shall be deemed to relieve any Lender from its obligation to fulfill
its Commitment hereunder or to prejudice any rights the Borrowers may
have against such Lender as a result of such Lender's failure to
fulfill such Commitment hereunder.

(d)  Interest.  At the option of the Borrowers, Loans shall bear interest
at a rate per annum equal to (A) from the date hereof through the
first Calculation Date under the Incorporated Agreement to occur with
respect to the Borrowers' fiscal quarter ending December 31, 2000, (i)
the Eurodollar Rate plus 1.25% or (ii) the Base Rate and (B) on and
----
after the first Calculation Date under the Incorporated Agreement to
occur with respect to the Borrowers' fiscal quarter ending December
31, 2000, (i) the Applicable Percentage for Eurodollar Loans as then
determined under the Incorporated Agreement plus 0.25% or (ii) the
----
Applicable Percentage for Base Rate Loans as then determined under the
Incorporated Agreement plus 0.25%.  Interest on Base Rate Loans shall
----
be calculated on the basis of a year of 365 or 366 days and actual
days elapsed.  All other interest hereunder shall be calculated on the
basis of a year of 360 days and actual days elapsed.

The Borrowers promise to pay interest (i) for each Eurodollar Rate
Loan, (A) on the last day of the applicable Interest Period, and (B)
on the date of any conversion of such Loan to a Base Rate Loan; (ii)
for Base Rate Loans, on the last Business Day of each calendar month;
and (iii) for all Loans, on the Maturity Date.  If the time for any
payment is extended by operation of law or otherwise, interest shall

NOVA-03770

continue to accrue for such extended period.

After the date any principal amount of any Loan is due and payable (whether on the Maturity Date, upon acceleration or otherwise), or after any other monetary obligation hereunder shall have become due

and payable, the Borrower shall pay, but only to the extent permitted by law, interest (after as well as before judgment) on such amounts at a rate per annum equal to the Base Rate plus 2%. Such interest shall be payable on demand.

2

In no case shall interest hereunder exceed the amount that a Lender may charge or collect under applicable law.

(e)  Evidence of Loans.  The Loans and all payments and obligations hereunder shall be evidenced by each Lender's loan accounts and records and the Notes, substantially in the form of Exhibit B.  Each
---------
Lender's loan accounts and records shall be conclusive absent manifest error of the amount of the Loans and payments thereon. Any failure to record any Loan or payment thereon or any error in doing so shall not limit or otherwise affect the obligation of the Borrowers to pay any amount owing with respect to the Loans.

(e)  Unused Fee.  The Borrowers promise to pay to the Administrative Agent, for the account of each Lender, a commitment fee of (i) from the date hereof through the first Calculation Date under the Incorporated Agreement to occur with respect to the Borrowers' fiscal quarter ending December 31, 2000, 0.30% per annum on the actual daily unused portion of the Commitment and (ii) on and after the first Calculation Date under the Incorporated Agreement to occur with respect to the Borrowers' fiscal quarter ending December 31, 2000 plus 0.05%, payable
----
in arrears on the last Business Day of each calendar quarter and on the Maturity Date, and calculated on the basis of a year of 360 days and actual days elapsed.

(f)  Repayment.  The Borrowers promise to pay all Loans then outstanding on the Maturity Date.  The obligations of the Borrowers, as Borrowers, are several and not joint obligations of each of the Borrowers.

(g)  Prepayments.  The Borrowers may prepay Loans in accordance with and subject to the provisions of Section 3.3(a) the Incorporated Agreement.

(h)  Commitment Reductions.  The Borrowers may, upon five Business Days' notice, reduce or cancel the undrawn portion of the Commitment, provided, that the amount of such reduction is not less than
--------
$5,000,000 or a whole multiple of $1,000,000 in excess thereof.

2.  Conditions Precedent to Loans.

NOVA-03771

(a)  Conditions Precedent to Initial Loan.  As a condition precedent to the
initial Loan hereunder, the Administrative Agent must receive the
following from the Borrowers in form satisfactory to the
Administrative Agent:

(i)   three original duplicates of this Agreement duly executed and
delivered on behalf of the Borrowers, the Guarantors, the
Lenders and the Administrative Agent;

(ii)  appropriate authorizing resolutions for the Borrowers and the
Guarantors;

(iii) such other documents and certificates (including a legal
opinion) as the Administrative Agent may reasonably request;

(iv)  payment of the agreed-upon upfront fees and reasonable legal
fees and expenses of counsel to the Administrative Agent; and

(v)   the Notes duly executed and delivered by each of the Borrowers.

3

(b)  Conditions to Each Borrowing, Continuation and Conversion.  As a
condition precedent to each borrowing (including the initial
borrowing), conversion and continuation of any Loan:

(i)   The Borrowers must furnish the Administrative Agent with, as
appropriate, a notice of borrowing, conversion or continuation;

(ii)  each  representation and warranty set forth in Paragraph 3 below
shall be true and correct in all material respects as if made on
the date of such borrowing, continuation or conversion; and

(iii) no Default or Event of Default shall have occurred and be
continuing on the date of such borrowing, continuation or
conversion.

Each notice of borrowing and notice of conversion or continuation
shall be deemed a representation and warranty by the Borrowers that
the conditions referred to in clauses (ii) and (iii) above have been
met.

3.   Representations and Warranties.  The Borrowers and the Guarantors hereby
agree that the representations and warranties contained in Section 6 of the
Incorporated Agreement and any and all Additional Incorporated Agreement
Representations (collectively, the "Incorporated Representations") are
hereby incorporated by reference and shall be as binding on the Borrowers
and the Guarantors as if fully set forth herein.

4.   Covenants.  So long as principal of and interest on any Loan or any other
amount payable hereunder or under any other Loan Document remains unpaid or
unsatisfied and the Commitment has not been terminated, the Borrowers and
the Guarantors hereby agree that the covenants and agreements applicable to

NOVA-03772

them contained in Section 7 (Affirmative Covenants) and Section 8 (Negative Covenants) of the Incorporated Agreement, including for purposes of this Paragraph 4 each Additional Incorporated Agreement Covenant (collectively,
-----------

the "Incorporated Covenants), are hereby incorporated by reference and
----------------------

shall be as binding on the Borrowers and the Guarantors as if fully set forth herein.

Any financial statements, certificates or other documents received by the Administrative Agent under the Incorporated Agreement shall be deemed delivered hereunder.

5.   Events of Default.  The following are "Events of Default:"
                        -----------------

(a)  Any Borrower fails to pay any principal of any Loan as and on the date when due; or

(b)  Any Borrower fails to pay any interest on any Loan, or any commitment fee due hereunder, or any portion thereof, within three days after the date when due; or any Borrower fails to pay any other fee or amount payable to the Administrative Agent to any Lender under any Loan Document, or any portion thereof, within five days after the date due; or

(c)  Any Borrower fails to comply with any covenant or agreement incorporated herein by reference pursuant to Paragraph 4 above,
                                         -----------

subject to any applicable grace period and/or notice requirement set forth in Section 9 of the Incorporated Agreement (it being understood

and agreed that any such notice requirement shall be met by the Administrative Agent's or any Lender's giving the applicable notice to such Borrower hereunder); or

4

(d)  Any representation or warranty in any Loan Document or in any certificate, agreement, instrument or other document made or delivered by any Borrower pursuant to or in connection with any Loan Document proves to have been incorrect when made or deemed made; or

(e)  Any "Event of Default" specified in Section 9 of the Incorporated Agreement, including for purposes of this Paragraph 5(e) each
                     --------------

Additional Incorporated Agreement Event of Default (collectively, the "Incorporated Events of Default") occurs and is continuing, without
------------------------------

giving effect to any waiver or amendment thereof pursuant to the Incorporated Agreement, it being agreed that each such "Event of Default" shall survive any termination, cancellation, discharge or replacement of the Incorporated Agreement.

Upon the occurrence of an Event of Default, the Required Lenders may

NOVA-03773

declare the Commitment to be terminated, whereupon the Commitment shall be terminated, and/or declare all sums outstanding hereunder and under the other Loan Documents, including all interest thereon, to be immediately due and payable, whereupon the same shall become and be immediately due and payable, without notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character, all of which are hereby expressly waived; provided,

--------

however, that upon the occurrence of any event specified in Sections 9.1(e)

-------

or 9.1(i) of the Incorporated Agreement, the Commitment shall automatically terminate, and all sums outstanding hereunder and under each other Loan Document, including all interest thereon, shall become and be immediately due and payable, without notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character, all of which are hereby expressly waived.

6. Guaranty. The Guarantors hereby agree that the Guaranty contained in Section 4 of the Incorporated Agreement (the "Incorporated Guaranty") is

--------------------

incorporated by reference and shall be as binding on the Guarantors as if set forth fully herein; provided, however, as incorporated herein "Credit

-------- -------

Party Obligations" means (i) as to either NOVA or NIS, without duplication, (a) all obligations of the other Borrower to a Lender, whenever arising, under this Agreement, (including, but not limited to, any interest accruing after the occurrence of a Bankruptcy Event with respect to any Credit Party, regardless of whether such interest is an allowed claim under the Bankruptcy Code), and (b) all liabilities and obligations, whenever arising, owing from the other Borrower to a Lender, or any Affiliate of a Lender, arising under any Hedging Agreement relating to the Loans hereunder and (ii) as to each other Guarantor, without duplication, (a) all obligations of any of the Borrowers to a Lender, whenever arising, under this Agreement (including, but not limited to, any interest accruing after the occurrence of a Bankruptcy Event with respect to any Credit Party, regardless of whether such interest is an allowed claim under the Bankruptcy Code), and (b) all liabilities and obligations, whenever arising, owing from any of the Borrowers to a Lender, or any Affiliate of a Lender, arising under any Hedging Agreement relating to the Loans hereunder.

7. Other Provisions Relating to the Loans; Miscellaneous. The parties hereto

------------------------------------------------------

hereby agree that the provisions set forth in Sections 3.6, 3.7, 3.8, 3.9, 3.10, 3.11, 3.12, 3.13, 3.14, 3.15, 10 and 11 of the Incorporated Agreement (the "Additional Incorporated Provisions") are incorporated by reference

----------------------------------

(with such adjustments or modifications as necessary to maintain the substance of the provisions contained therein) and shall be binding on the parties hereto as if set forth fully herein. The incorporation by reference to the Incorporated Agreement of the Incorporated Representations, the Incorporated Covenants, the Incorporated Events of Default, the Incorporated Guaranty, the Additional Incorporated Provisions and the Incorporated Definitions shall survive the termination of the

NOVA-03774

Incorporated Agreement.  The Incorporated Representations, the Incorporated Covenants, the Incorporated Events of Default, the Incorporated Guaranty, the Additional Incorporated Provisions and the Incorporated Definitions (including all exhibits,

5

schedules and defined terms referred to therein) are hereby (or, in the case of each Additional Incorporated Agreement Representations, the Additional Incorporated Agreement Covenants and the Additional Incorporated Events of Default, shall, upon its effectiveness, be) incorporated herein by reference as if set forth in full herein with appropriate substitutions, including the following: (a) all references to "this Credit Agreement" shall be deemed to be references to this Agreement; (b) all references to "the Administrative Agent" shall be deemed to references to the Administrative Agent, (c) all references to a "Lender" or the "Lenders" shall be deemed to be references to a Lender or the Lenders, as applicable, (d) all references to the "Required Lenders" shall be deemed to references to the Required Lenders; (e) all references to "Default" and "Event of Default" shall be deemed to be references to a Default and an Event of Default, respectively; (f) all references to "Revolving Loans" shall be deemed to be references to the Loans; and (g) all references as to "Credit Document" or "Credit Documents" or any similar reference shall be deemed refer to this Agreement as well as the other Loan Documents.

Please indicate your acceptance of the Commitment on the foregoing terms and conditions by returning an executed copy of this Agreement to the undersigned not later than December ___, 2000.

ADMINISTRATIVE AGENT
AND LENDERS:              BANK OF AMERICA, N.A.,
                         individually in its capacity as a Lender
                         and in its capacity as Administrative Agent


               By: /s/ Michael J. McKenney
                   ------------------------
               Name:  Michael J. McKenney
                   ----------------------
               Title: Managing Director
                   ----------------------


               SUNTRUST BANK, ATLANTA,
               as a Lender

               By: /s/ Brian K. Peters
                   ------------------------
               Name:  Brian K. Peters
                   ----------------------
               Title:  Managing Director
                   ----------------------

**NOVA-03775**

6

Accepted and Agreed to as of the date first written above:

BORROWERS
AND GUARANTORS:            NOVA CORPORATION

By: /s/ Steve Scheppmann
    -------------------------
Name:  Steve Scheppmann
    -------------------------
Title:  Executive Vice President and CFO
    --------------------------------


NOVA INFORMATION SYSTEMS, INC.

By: /s/ Marion Paul Stevenson
    -------------------------
Name:  Marion Paul Stevenson
    --------------------
Title:  Senior Vice President and CFO
    --------------------------------


GUARANTORS:

LADCO FINANCIAL GROUP,
a California corporation

By: /s/ John Fasano
    -------------------------
Name:  John Fasano
    -------------------------
Title:  Vice President
    --------------------


NOVA ASSET MANAGEMENT CO.,
a Delaware corporation

By: /s/ John Fasano
    -------------------------
Name:  John Fasano
    -------------------------
Title:  President
    --------------------


NOVA GEORGIA SERVICES, L.P.,
a Delaware limited partnership

By: /s/ Marion Paul Stevenson
    -------------------------
Name:  Marion Paul Stevenson
    -------------------------
Title:  Senior Vice President and CFO

**NOVA-03776**

------------------------------

NOVA GA. COMMAND, INC.,
a Delaware corporation

By: /s/ John Fasano
------------------------
Name: John Fasano
------------------------
Title: President

------------------------

7

NOVA INFORMATION SERVICES COMPANY,
a Georgia corporation

By: /s/ John Fasano
------------------------
Name: John Fasano
------------------------
Title: President
------------------------

NOVA LICENSING CO.,
a Delaware corporation

By: /s/ John Fasano
------------------------
Name: John Fasano
------------------------
Title: President
------------------------

NOVA TN. COMMAND, INC.,
a Tennessee corporation

By: /s/ John Fasano
------------------------
Name: John Fasano
------------------------
Title: President
------------------------

PMT SERVICES, INC.,
a Tennessee corporation

By: /S/ Marion Paul Stevenson
------------------------
Name: Marion Paul Stevenson
------------------------
Title: Senior Vice President and CFO

**NOVA-03777**

------------------------------

8

EXHIBIT A

DEFINITIONS

The parties hereto hereby agree that all capitalized terms not otherwise defined
herein shall have the respective meanings assigned to such terms in the
Incorporated Agreement, as in effect as of the date hereof (the "Incorporated
------------
Definitions") and such Incorporated Definitions are hereby incorporated by

reference and shall be as binding on the parties as if set forth fully herein.

Additional Incorporated     A covenant or agreement that is added to Section 7 (Affirmative
Covenants)
Agreement Covenant:         Section 8 (Negative Covenants) of the Incorporated Agreement
after the date
                hereof, as such covenant or agreement is in effect on the date so added,
                without giving effect to any subsequent amendment or other modification
                thereof.

Additional Incorporated     An "Event of Default" that is added to Section 9 of the
Incorporated
Agreement Event of          Agreement after the date hereof, as such "Event of Default" is in
effect on
Default:                    the date so added, without giving effect to any subsequent
amendment or
                other modification thereof.

Additional Incorporated     A representation or warranty that is added to Section 6 of the
Incorporated
Agreement Representation     Agreement after the date hereof, as such representation of
warranty is in
                effect on the date so added, without giving effect to any subsequent
                amendment or other modification thereof.

Administrative Agent        Bank of America, N.A. (or any successor thereto)
Agreement:                  This letter agreement, as amended, restated, extended,
supplemented or
                otherwise modified in writing from time to time.

Default:                    Any event that, with the giving of any notice, the passage of time, or
both,
                would be an Event of Default.

Event of Default:           Has the meaning set forth in Paragraph 5.
                            -----------
Incorporated Agreement:     The Credit Agreement, dated as of November 16, 1999 among
the Borrowers, the

**NOVA-03778**

guarantors party thereto, the lenders party thereto and Bank of America, N.A., as Administrative Agent for the Lenders.  Unless otherwise specified herein, all references to the Incorporated Agreement shall mean the Incorporated Agreement as in effect on the date hereof, without giving effect to any amendment, supplement or other modification thereto or

thereof

after the date hereof.

Interest Period         "Interest Period" as such term is defined in the Incorporated
Agreement,

except that, as used herein, such term shall only refer to an Interest Period with a duration of one (1) month.

Loan Documents:         This Agreement, and each promissory note, certificate, fee letter,
and other

instrument, document or agreement delivered in connection with this Agreement.

9

Maturity Date:          The earlier of (i) April 30, 2001 or (ii) (a) the effective date of a new
                        364-day credit facility to be entered into by the Borrowers, the

Guarantors,

the                     certain lenders party thereto and Bank of America, N.A., as Agent or (b)

                        effective date of a privately placed tranche of debt in the aggregate
amount

                        of at least $100,000,000, in each case, the proceeds of which shall be
used

                        to refinance all outstanding Loans under this Agreement.

Notes:                  The promissory notes of the Borrowers payable to each Lender in the
amount

                        of such Lender's portion of the Commitment, substantially in the form of
                        Exhibit B.
                        ---------

Required Lenders:       (i)  At any time prior to the termination of the Commitment,
Lenders holding

                        100% of the total Commitment and (ii) at any time after the termination
of

                        the Commitment, Lenders holding 100% of the principal balance of the
                        outstanding Loans.

10

EXHIBIT B

**NOVA-03779**

FORM OF PROMISSORY NOTE

December 21, 2000

FOR VALUE RECEIVED, NOVA Corporation NOVA Information Systems, Inc. , a Georgia corporation (the "Borrower") hereby promises to pay, to the order of _____, its successors and assigns (the "Lender"), at the office of Bank of America, N.A., as Administrative Agent (the "Agent"), as set forth in that certain Letter Loan Agreement dated as of December ___, 2000 among the Borrower, the other Credit Parties party thereto, the Lenders named therein (including the Lender) and the Agent (as it may be amended, modified, extended or restated from time to time, the "Loan Agreement"; all capitalized terms not otherwise defined herein shall have the meanings set forth in the Loan Agreement), but in no event later than the Maturity Date, in Dollars and in immediately available funds, the aggregate unpaid principal amount of all Loans made by the Lender to the Borrower pursuant to the Loan Agreement, and to pay interest from the date hereof on the unpaid principal amount hereof, in like money, at said office, on the dates and at the rates selected in accordance with the Loan Agreement.

Upon the occurrence and during the continuance of an Event of Default, the balance outstanding hereunder shall bear interest as provided in the Loan Agreement. Further, in the event the payment of all sums due hereunder is accelerated under the terms of the Loan Agreement, this Note, and all other indebtedness of the Borrower to the Lender shall become immediately due and payable, without presentment, demand, protest or notice of any kind, all of which are hereby waived by the Borrower.

In the event this Note is not paid when due at any stated or accelerated  maturity, the Borrower agrees to pay, in addition to the principal and interest, all costs of collection, including reasonable attorneys' fees actually incurred.

This Note and the Loans evidenced hereby may be transferred in whole or in part only by registration of such transfer on the Register maintained by or on behalf of the Borrower as provided in the Loan Agreement.

THIS REVOLVING NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

11

IN WITNESS WHEREOF, the Borrower has caused this Note to be duly executed by its duly authorized officer as of the day and year first above written.

BORROWER ,
a Georgia corporation

NOVA-03780

By: /s/ Steve Scheppmann
    ------------------------
Name: Steve Scheppmann
      ----------------------
Title: Executive Vice President and CFO
       ---------------------------------

12

Schedule 1.1(a)
---------------

Lender's Lending Addresses
and Commitment Percentages

                                    Commitment
                                    Percentage
                                    ----------

Bank of America, N.A.                   50%
Credit Services
101 N. Tryon Street
NC1-001-15-03
Charlotte, North Carolina 28255
Telephone:  (704) 386-3781
Telecopier:  (704) 409-0056


SunTrust Bank Atlanta                   50%

13

**DCN:** 01589731

**LOAD-DATE:** April 3, 2001

Source: News & Business > Company & Financial > Financial Filings > U.S. Financial Filings > EDGARPlus(R)
        Database [i]
Terms: co(nova corp ga) and address(ga)  (Edit Search)
View: Full
Date/Time: Wednesday, February 9, 2005 - 2:07 PM EST

NOVA-03781

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

NOVA-03782

# EXHIBIT  25
# REDACTED  IN  ITS
# ENTIRETY

# EXHIBIT 26
# REDACTED IN ITS
# ENTIRETY

# EXHIBIT 27
# REDACTED IN ITS
# ENTIRETY

# EXHIBIT 28
# REDACTED IN ITS
# ENTIRETY

# EXHIBIT 29
# REDACTED IN ITS
# ENTIRETY

# EXHIBIT  30
# REDACTED  IN  ITS
# ENTIRETY

# EXHIBIT 31
# REDACTED IN ITS
# ENTIRETY

# EXHIBIT  32
# REDACTED  IN  ITS
# ENTIRETY

# EXHIBIT 33 REDACTED IN ITS ENTIRETY

# EXHIBIT  34
# REDACTED  IN  ITS
# ENTIRETY

# EXHIBIT   35
# REDACTED   IN   ITS
# ENTIRETY

# EXHIBIT  36
# REDACTED  IN  ITS
# ENTIRETY

# EXHIBIT 37
# REDACTED IN ITS
# ENTIRETY

# EXHIBIT 38
# REDACTED IN ITS
# ENTIRETY

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of November, 2005, I electronically filed the foregoing document, **PUBLIC VERSION OF DECLARATION OF AARON D. CHARFOOS IN SUPPORT OF LML'S MOTION FOR SUMMARY JUDGMENT NO. 3: FOR A RULING THAT NOVA INFORMATION SYSTEMS, INC. INFRINGES CLAIMS 1, 2, 4, 5, 6, 9, 10, 11, AND 16 OF THE '988 PATENT**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Collins J. Seitz, Jr., Esq.
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19801

William J. Marsden, Jr., Esq.
Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 4th day of November, 2005, the foregoing document was served via email on the following non-registered participants:

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Mark C. Scarsi, Esq.
Vision L. Winter, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

_____/s/ Mary B. Matterer_____
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS
& WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com

Attorneys for Plaintiff LML PATENT CORP.

- 32 -