**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

LML PATENT CORP.                          )
                                          )
                    Plaintiff,            )    Civil Action No.        04-858-SLR
        vs.                               )
                                          )    Judge Sue L. Robinson
TELECHECK SERVICES, INC.                  )
ELECTRONIC CLEARING HOUSE,                )    **PUBLIC VERSION**
INC., XPRESSCHEX, INC., AND               )
NOVA INFORMATION SYSTEMS,                 )
INC.                                      )
                                          )
                    Defendants.           )
                                          )

---

**LML'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT NO. 5:**
**FOR A RULING THAT CLAIMS 1, 2, 4, 5, 6, 9, 10, 11, 14, 16 AND 18 OF THE**
**'988 PATENT ARE NOT INVALID UNDER 35 U.S.C. §§ 112 AND 132**

Originally filed:  October 28, 2005

Public version filed:  November 4, 2005

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware  19801
(302) 888-6800
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
(312) 861-2000

Attorneys for LML Patent Corp.

**TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDINGS ..................................................1

SUMMARY OF THE ARGUMENT ....................................................................1

STATEMENT OF RELEVANT FACTS ...............................................................2

ARGUMENT .................................................................................................3

I.    Applicable Legal Standard For Summary Judgment ..........................................3

II.   LML Is Entitled To Summary Judgment That The Asserted Claims Are
      Not Invalid Under 35 U.S.C. § 112 For Lack Of A Written Description ..........................6

      A.    Applicable Legal Standard For The § 112 Written Description
            Requirement ....................................................................................6

      B.    There Is No Genuine Issue Of Material Fact That The Asserted
            Claims Are Not Invalid For Lack Of Written Description Under 35
            U.S.C. § 112. ...................................................................................8

III.  LML Is Entitled To Summary Judgment That The Asserted Claims Are
      Not Invalid Under 35 U.S.C. § 132 For Addition of New Matter .....................................12

      A.    Applicable Legal Standards For The § 132 Prohibition On New
            Matter ..........................................................................................13

      B.    There Is No Genuine Issue Of Material Fact That The
            Amendments To The Specification Did Not Constitute New Matter ...................14

IV.   LML Is Entitled To Summary Judgment That The Asserted Claims Of The
      '988 Patent Are Not Invalid Due To Lack Of Enablement Under 35 U.S.C.
      § 112. ............................................................................................................15

      A.    Applicable Legal Standards For The § 112 Enablement
            Requirement ..................................................................................16

      B.    The Element Reciting "A Second Communications Means
            Enabling Automated Clearing House Communication" Is Enabled ...................17

      C.    The Element Reciting The Step Of "Reading The Magnetic Ink
            Character Recognition Number Information...." Is Enabled .............................18

- i -

D.    The Element of Reading Information From "Any Bank Check" or "Any Consumer Bank Check" Is Enabled ................................................................20

V.    LML Is Entitled To Summary Judgment That The Asserted Claims Of The '988 Patent Are Not Invalid Due To Indefiniteness ........................................24

A.    Applicable Legal Standard For The § 112 Definiteness Requirement ................................................................................................24

B.    Construction Of The Element "Without Using The [Bank] Check As A Negotiable Instrument" Is Set Forth In The Specification Of The '988 Patent. ......................................................................................26

C.    Defendants' Indefiniteness Argument Is Nullified By Their Own Claim Construction Arguments ..............................................................26

D.    The Extrinsic Evidence Relied On By Defendants To Support Their Indefiniteness Defense Is Not Sufficient To Raise A Genuine Issue of Material Fact ................................................................................27

CONCLUSION ................................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*All Dental Prodx, LLC v. Advantage Dental Products, Inc.*,
    309 F.3d 774 (Fed. Cir. 2002)..................................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................................... 4

*Avia Group Int'l Inc. v. L.A. Gear Calif., Inc.*,
    853 F.2d 1557 (Fed. Cir. 1988)................................................................. 3

*Bancorp Services, L.L.C. v. Hartford Life Ins. Co.*,
    359 F.3d 1367 (Fed. Cir. 2004)........................................................ 24, 25

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*,
    731 F.2d 831 (Fed. Cir. 1984)................................................................... 4

*Brook-Hill 1, LLC v. Intuitive Surgical, Inc.*,
    334 F.3d 1294 (Fed. Cir. 2003)............................................................... 14

*Brooktree Corp. v. Advanced Micro Devices, Inc.*
    977 F.2d 1555 (Fed. Cir. 1992)........................................................ 14, 15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................................... 4

*Continental Can Co. USA, Inc. v. Monsanto Co.*,
    948 F.2d 1264 (Fed. Cir. 1991)................................................................. 3

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005)........................................... 24, 25, 26, 27

*DeGeorge v. Bernier*
    768 F.2d 1318 (Fed. Cir. 1985)............................................................... 17

*Eiselstein v. Frank*
    52 F.3d 1035 (Fed. Cir. 1995)................................................................... 7

*Eli Lilly & Co. v. Barr Labs., Inc.*,
    251 F.3d 955 (Fed. Cir. 2001)................................................................... 5

*Enzo Biochem, Inc. v. Gen-Probe Inc.*
    323 F.3d 956 (Fed. Cir. 2002)................................................................... 7

*Exxon Research & Eng'g Co. v. United States*,
    265 F.3d 1371 (Fed. Cir. 2001)........................................................ 25, 26

*Genetech Inc. v. Novo Nordisk A/S*
  108 F.3d 1361 (Fed. Cir. 1997)..................................................................... 17

*Hancock v. Hobbs*,
  967 F.2d 462 (11th Cir. 1992) ...................................................................... 5

*Honeywell Int'l, Inc. v. Int'l Trade Comm'n*
  341 F.3d 1332 (Fed. Cir. 2003)..................................................................... 25

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
  802 F.2d 1367 (Fed. Cir. 1986)..................................................................... 5

*In re Barker*
  559 F.2d 588 FN4 (C.C.P.A. 1997) ............................................................. 7

*In re Rasmussen*,
  650 F.2d 1212 (CCPA 1981) ........................................................................ 13

*In re Wilder*
   736 F.2d 1516 (Fed. Cir. 1984).................................................................... 7

*In re Wright*,
  866 F.2d 422 (Fed. Cir. 1989)....................................................................... 8

*Kalis v. Colgate-Palmolive Co.*,
  231 F.3d 1049 (7th Cir. 2000) ...................................................................... 5

*Koito Mfg. Co. v. Turn-Key Techm LLC*
  381 F.3d 1142 (Fed. Cir. 2004)............................................................. passim

*London v. Carson Pirie Scott*,
  946 F.2d 1534 (Fed. Cir. 1991)..................................................................... 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ....................................................................................... 4

*Moba, B.V. v. Diamond Automation, Inc.*,
  325 F.3d 1306 (Fed. Cir. 2003)..................................................................... 13

*Monon Corp. v. Stoughton Trailers, Inc.*
  239 F.3d 1253 (Fed. Cir. 2001)..................................................................... 5

*Network Appliance, Inc. v. Bluearc Corp.*
  374 F.Supp.2d 825 (N.D. Cal. 2005) ........................................................... 12

*Northern Telecom, Inc. v. Datapoint Corp.*,
  908 F.2d 931 (Fed. Cir. 1990)....................................................................... 16

*Pandrol USA, LP v. Airboss Ry. Prods, Inc.*
    (Fed. Cir. Sept. 19, 2005)....................................................................6, 7, 13

*Phillips v. AWH Corp.*
    415 F.3d 1303 (Fed. Cir. 2005)................................................................27

*Regents of the University of California v. Eli Lilly*
    119 F.3d 1559 (Fed. Cir. 1997)..................................................................7

*Schering Corp. v. Amgen Inc.,*
    222 F.3d 1347 (Fed. Cir. 2000)................................................................14

*Schumer v. Lab. Computer Sys., Inc.,*
    308 F.3d 1304 (Fed. Cir. 2002)..................................................................5

*Thibeault v. Square D Co.,*
    960 F.2d 239 (1st Cir. 1992)......................................................................5

*Trebor Sportswear Co. v. The Limited Stores, Inc.,*
    865 F.2d 506 (2d Cir. 1989)......................................................................5

*University of Rochester v. G.D. Searle & Co., Inc.,*
    358 F.3d 916 (Fed. Cir. 2004)....................................................................5

*Vas-Cath Inc. v. Mahurkar*
    935 F.2d 1555 (Fed. Cir. 1991)..................................................................7

**Statutes**

35 U.S.C. § 112....................................................................................passim

35 U.S.C. § 132....................................................................................passim

35 U.S.C. § 282..................................................................................5, 25

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................4

Fed.R.Civ.P. 37(c)(1)..............................................................................4

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff LML Patent Corp. ("LML") asserts infringement by Telecheck Services, Inc. ("TeleCheck"), Electronic Clearing House, Inc. ("ECHO"), Xpresschex, Inc. ("Xpresschex"), and Nova Information Systems, Inc. ("Nova") (collectively the "Defendants") of claims 1, 2, 4, 5, 6, 9, 10, 11, 14, 16 and 18 (the "Asserted Claims") of United States Patent No. 5,484,988 (the "'988 Patent"). (Ex. 1)[1]. In accordance with the Court's Scheduling Order, LML respectfully submits this Memorandum In Support Of LML's Motion For Summary Judgment No. 5: For A Ruling That Claims 1, 2, 4, 5, 6, 9, 10, 11, 14, 16 And 18 Of The '988 Patent Are Not Invalid Under 35 U.S.C. §§ 112 And 132.

## SUMMARY OF THE ARGUMENT

Defendants have asserted a variety of defenses in this action based on allegations that the Asserted Claims are invalid under 35 U.S.C. §§ 112 and 132. However, Defendants have not and cannot offer any legal or factual basis, let alone the clear and convincing evidence necessary, to support any of these invalidity contentions:

- Section 112 "Written Description" Defense: Defendants have no contentions or other bases that the claim element "without using the [bank] check as a negotiable instrument" lacks a supporting written description in the original specification of the '988 patent as required by 35 U.S.C. § 112. To the contrary, the original specification is filled with statements proving that the Applicants had possession of this aspect of the invention.

- Section 132 "New Matter" Defense: As the original disclosure satisfies the written description requirement with respect to the "without using the [bank]

---

[1] Exhibits are attached as the Declaration of Lesley G. Smith in Support of LML's Motion For Summary Judgment No. 5: For A Ruling That Claims 1, 2, 4, 5, 6, 9, 10, 11, 14, 16 And 18 Of The '988 Patent Are Not Invalid Under 35 U.S.C. §§ 112 And 132, hereinafter "(Ex. __)."

check as a negotiable instrument" claim element, that element was not new matter when added to the claims as part of a Preliminary Amendment. Defendants have no contentions or other bases for invalidity based on the new matter prohibition of 35 U.S.C. § 132.

- <u>Section 112 "Enablement" Defense</u>:    None of the three enablement positions asserted by Defendants have merit. Defendants have offered no evidence for two of these defenses which completely contradict positions taken by Defendants with respect to claim construction third defense is supported solely by the unsubstantiated opinions of Defendants' expert based on a mischaracterization of the plain language of the claims.

- <u>Section 112 "Definiteness" Defense</u>:    Defendants' argument that the claim element "without using the [bank] check as a negotiable instrument" is invalid for indefiniteness is also contradicted by their positions taken with respect to claim construction. Having proposed a construction of this element allegedly supported by the specification, Defendants cannot now argue that the element is indefinite.

Because Defendants have been unable to raise a genuine issue of material fact to support any of these defenses, LML is entitled to judgment as a matter of law and respectfully requests that the Court enter summary judgment that the Asserted Claims of the '988 patent are not invalid under 35 U.S.C. §§ 112 and 132.

## STATEMENT OF RELEVANT FACTS

The application leading to the '988 Patent, 08/257,390, was a continuation of application 07/975,717 filed November 13, 1992. (Ex. 1). The claims as originally filed were initially rejected by the Examiner as anticipated. (Ex. 2, September 22, 1993 Office Action). Applicants responded by distinguishing their invention from the prior art, but the Examiner issued a final rejection. (Ex. 3, March 8, 1994 Office Action). On June 8, 1994, the Applicants filed a Continuation Application along with a Preliminary Amendment amending the claim language to include the phrase "without using the [bank] check as a negotiable instrument." (Ex. 4). Applicants also amended the specification as follows to explain the prior art and the difference between that art and the claimed invention:

- 2 -

- "U.S. Patent No. 4,270,042 to Case discloses a point of sale system that requires a consumer to prepay a sum of money into a special account that is accessed only by the system....This amount, along with a signature and other information, is supplied on a draft negotiable instrument, which is given to the merchant at the time of the transaction. Thus, the Case system does away with the use of bank checks in effecting the transaction." (Ex. 4, June 8, 1994 Preliminary Amendment at LML-EP 000170).

- "Further, some of the currently used systems described above require the use of a bank check as a negotiable instrument which must be surrendered to the merchant....None of these systems completely does away with the need and use for a negotiable draft instrument while using the consumer's bank check for identification and verification only." (*Id.* at LML-EP 000171).

Applicants also revised the objective of their invention to remain consistent with their discussion of the prior art. (*Id.* at LML-EP 000172). The '988 patent eventually issued on January 16, 1996. (Ex. 1).[2]

## ARGUMENT

## I.    Applicable Legal Standard For Summary Judgment

Summary judgment is available in patent cases as in other areas of litigation, and the summary judgment standard for a patent claim is the same as the standard for other claims. *Avia Group Int'l Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560-61 (Fed. Cir. 1988); *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed. Cir. 1991). Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be

---

[2] For a general description of the technology described by the '988 patent, *see* LML's Memorandum In Support Of Its Motion For Summary Judgment No. 1: For A Ruling That TeleCheck Infringes Claims 1, 2, 4, 5, 6, 9, 10, 11, and 16 Of The '988 Patent. This description is omitted for brevity and to avoid repetition rather than to circumvent the page limit—this memorandum would be within the page limit even if this background information was included.

granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *London v. Carson Pirie Scott*, 946 F.2d 1534, 1537 (Fed. Cir. 1991).

Once the moving party has demonstrated the absence of a genuine issue of material fact, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . the nonmoving party must "come forward 'with specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-movant cannot simply make conclusory denials concerning the evidence. *See Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984) ("[T]he court may not simply accept a party's statement that a fact is challenged."). Unless there is sufficient evidence to enable a jury to find for the nonmoving party on the issue for which summary judgment is sought, there is no issue for trial, and summary judgment should be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Thus, to create a genuine issue of material fact, the opposing party must "go beyond the pleadings" and set forth specific facts to support their contention. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).[3]

---

[3] A party that, without substantial justification, fails to amend or supplement a prior response to discovery or expert disclosures pursuant to Rule 26(e) before the close of discovery is not permitted to use the information as evidence at trial or on a motion for summary judgment. Fed. R. Civ. P. 37(c)(1); *Kalis v. Colgate-Palmolive Co.*,

(Continued...)

Moreover, in the context of summary judgment, the validity of a patent is still presumed. 35 U.S.C. § 282. *See University of Rochester v. G.D. Searle & Co.,* 358 F.3d 916, 920 (Fed. Cir. 2004); *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed. Cir. 1986). Defendants can overcome this presumption only if they meet the heavy burden of establishing invalidity by clear and convincing evidence. *Eli Lilly & Co. v. Barr Labs., Inc.,* 251 F.3d 955, 962 (Fed. Cir. 2001); *Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d 1253, 1257 (Fed. Cir. 2001). Moreover, when assessing the validity of the claims of a patent, the fact finder must *separately* consider each claim. 35 U.S.C. § 282 ("Each claim of a patent . . . shall be presumed valid independently of the validity of other claims."); *Schumer v. Lab. Computer Sys., Inc.,* 308 F.3d 1304, 1316 (Fed. Cir. 2002).

---

231 F.3d 1049, 1056-57 (7th Cir. 2000) (denying request for additional discovery to oppose motion for summary judgment where two and a half year long discovery period was closed); *Trebor Sportswear Co. v. The Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir. 1989) (denying further discovery when the party opposing summary judgment had a "fully adequate opportunity for discovery"); *see also Hancock v. Hobbs,* 967 F.2d 462, 468 (11th Cir. 1992) (affirming district court decision to exclude expert testimony where plaintiff failed to disclose identity of expert and the substance of his testimony until five months after retaining him and over three months after the close of an extended period of discovery); *Thibeault v. Square D Co.,* 960 F.2d 239, 246-47 (1st Cir. 1992) (precluding expert testimony where expert was not disclosed until after the close of discovery, and plaintiff failed to seasonably supplement its interrogatory responses to identify the expert in a timely manner pursuant to Rule 26(e) of the Federal Rules of Civil Procedure).

**II.    LML Is Entitled To Summary Judgment That The Asserted Claims Are Not Invalid Under 35 U.S.C. § 112 For Lack Of A Written Description**

Defendants first argue that the Asserted Claims of the '988 patent are invalid for failure to comply with the written description requirement of 35 U.S.C. § 112.[4] (Ex. 5 at 12-13, Telecheck's First Supp. Resp. to LML's Amend. Interr. No. 2).

**REDACTED**

However, under the proper claim construction of "without using the [bank] check as a negotiable instrument" no genuine issue of material fact exists that the Asserted Claims are not invalid for lack of written description.  Thus, LML is entitled to summary judgment as a matter of law.  *See Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 2005 WL 2264918 (Fed. Cir. Sept. 19, 2005) (affirming a grant of summary judgment that asserted claims were not invalid for failure to satisfy the written description requirement of § 112 where party asserting the defense failed to raise an issue of material fact).

**A.    Applicable Legal Standard For The § 112 Written Description Requirement**

Section 112 of the Patent Act requires that "[t]he specification shall contain a written description of the invention."  35 U.S.C. § 112.  The written description requirement of § 112 serves two purposes.  First, "the 'essential goal' of the description of the invention requirement is to clearly convey information that an applicant has

---

[4] ECHO, Xpresschex and Nova have all incorporated TeleCheck's interrogatory response setting forth its invalidity contentions into their own responses.

invented the subject matter which is claimed." *In re Barker*, 559 F.2d 588, 592 n.4 (C.C.P.A. 1997). Second, the written description puts the public in possession of what the applicants have described as their invention. *Id.*; *see also Regents of the Univ. of Cal. v. Eli Lilly*, 119 F.3d 1559, 1566 (Fed. Cir. 1997).

The Federal Circuit has interpreted the written description requirement to require that the patent specification "describe the claimed invention so that one skilled in the art can recognize what is claimed." *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 968 (Fed. Cir. 2002). "Compliance with § 112 requires sufficient information in the specification to show that the inventor *possessed the invention at the time of the original disclosure*." *Pandrol*, 2005 WL 2264918 at *3 (citing *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1561 (Fed. Cir. 1991) (emphasis added)). Thus, for claim language added after the filing of the original specification, the *originally filed* specification must "convey to those skilled in the art that applicant had invented the subject matter later claimed." *In re Wilder*, 736 F.2d 1516, 1520 (Fed. Cir. 1984).

However, the written description requirement does not require that the specification "describe the claimed subject matter *in exactly the same terms as used in the claims*." *Koito Mfg. Co. v. Turn-Key Techm LLC*, 381 F.3d 1142, 1154 (citing *Eiselstein v. Frank*, 52 F.3d 1035, 1038 (Fed. Cir. 1995)) (emphasis added)). "[T]he failure of the specification to specifically mention a limitation that later appears in the claims is not a fatal one when one skilled in the art would recognize upon reading the specification that the new language reflects what the specification shows has been invented." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779 (Fed. Cir. 2002) (holding that it was improper to grant summary judgment of invalidity

for failure to satisfy the written description requirement where the limitation at issue was described in the original specification although the exact phrase later added to the claims was not specifically used); *see also In re Wright*, 866 F.2d 422, 425 (Fed. Cir. 1989) (holding that the fact that the words of the claim limitation at issue—"not permanently fixed"—were not in the specification was not important in evaluating the adequacy of the written description because the original specification described the process of the claim limitation containing those words).

Thus, to prove that the claim language "without using the [bank] as a negotiable instrument" does not meet the written description requirement of 35 U.S.C. § 112, Defendants must do more than just show that the claim language itself does not appear in the specification. Defendants must prove, by clear and convincing evidence, that Applicants were not "in possession" of the invention reflected in that language. Even a cursory review of the original specification proves that Defendants cannot meet this burden.

**B.      There Is No Genuine Issue Of Material Fact That The Asserted Claims Are Not Invalid For Lack Of Written Description Under 35 U.S.C. § 112.**

Defendants do not offer any evidence, outside of the unsubstantiated, conclusory opinion of their alleged expert David Kurrasch, to support their allegation that the Asserted Claims lack an adequate written description in the original disclosure.[5]  Indeed,

---

[5] Not only have Defendants offered no evidence to support their written description defense, they actually ***contradict their position*** that the original specification does not include a written description of the limitation "without using the [bank] check as a negotiable instrument" in their Opening Claim Construction Brief.  In their brief, Defendants cite a quotation that was part of the ***original specification*** and then proceed to argue that it supports their proposed construction of the "without using the [bank] check
(Continued...)

under the proper claim construction of "without using the [bank] check as a negotiable instrument"—namely, "where the paper check is used as a source of information, and is not accepted or processed"—the original specification of the '988 patent more than satisfies the written description requirement of 35 U.S.C. § 112. (Ex. 7, Tinkel Decl. at ¶¶ 12-16).

Although Applicants did not use the specific words of the limitation "without using the [bank] check as a negotiable instrument," in the original disclosure, this limitation summarizes one of most significant aspects of the invention of the '988 patent as originally disclosed. (Ex. 7, Tinkel Decl. at ¶ 5). Indeed, the entire thrust of the patent is alleviating the merchant's need to accept and process the paper check because instead of being used as a negotiable instrument, the paper check is used only as a source of consumer bank account information for a subsequent electronic funds transfer. (*Id.*).

There is more than ample evidence in the original disclosure of the '988 patent that the Applicants had "possession" of the concept reflected in the "without using the [bank] check as a negotiable instrument" limitation. For example, the specification of the original disclosure was riddled with statements that the check was used only as a source document and not accepted or processed:

---

as a negotiable instrument" limitation. (Def. Open. Claim Const. Br. at 22-23 (citing to the '988 patent, col. 7:46-48)). This obviously flies in the face of Mr. Kurrasch's statement

**REDACTED**

Thus, even under Defendants' construction, the term "without using the [bank] check as a negotiable instrument" is fully supported by the original disclosure of the '988 patent.

- "The invention *eliminates the need for paper checks* with all bank reconciliation being accomplished electronically." (Ex. 8 at LML-EP 000081, "Abstract" at 14-15 (emphasis added)).

- "whereby *a check is used as the basic source of identification of the individual and of the individual's bank* and whereby the bank account is debited." (*Id.* at LML-EP 000082, lns. 6-7 (emphasis added)).

- "Each sale or 'Transaction Event' *would be an electronic and 'paperless' event thereby eliminating the reliance on accepting and processing commercial bank drafts* (personal or corporate checks) and the physical handling of those bank drafts thus replacing commercial bank drafts at the point-of-sale." (*Id.* at LML-EP 000084, ln. 27 - LML-EP 000085, ln. 5).

- "It is the objective of the present invention to automate the point-of-sale environment for processing consumer purchases of goods and services *which, other than for the system of the present invention, would necessitate the more traditional acceptance and processing of commercial bank drafts* (personal and/or corporate checks)." (*Id.* at LML-EP 000086, lns. 4-9 (emphasis added)).

- "*It is a further objective of the present invention to eliminate the need for 'paper' checks as an accepted means of consumer payment.* In the place of personal and business checks, consumers would be provided free and unrestricted access to funds secured in bank accounts of various types by means of preauthorized electronic events. System subscribers electronically communicate with the data center of the present invention for individual Transaction Event authorizations which, upon reconciliation of a day's activity, result in an EFT by means of the Automated Clearing House accommodating an 'Off-Line' debiting of preauthorized consumer Transaction Events from authorized accounts." (*Id.* at LML-EP 000086, lns. 14-25 (emphasis added)).

- Check Replacement: an electronic slip is created at the point of sale that authorizes electronic accessing of funds through the ACH "in lieu of the more traditional method of issuing personal and business checks. *Funding settlement to the system subscriber would be effectuated by means of Electronic Funds Transfer via ACH or the Federal Reserve System as opposed to physically processing and transferring checks among banks.*" (*Id.* at LML-EP 000087, lns. 15-26 (emphasis added)).

- "The method of the present invention begins with the *electronic recording of consumer information* at a system subscriber's location using a point-of-sale terminal." (*Id.* at LML-EP 000089, lns. 6-8 (emphasis added)).

- The POS terminal has "magnetic stripe reading capabilities,...a MICR check reader, optical character recognition equipment, or other device." (*Id.* at LML-EP 000090, lns. 6-23).

- "The system subscriber then enters the appropriate MICR number either manually or by passing the check through a check reader which determines the MICR number 112." (*Id.* at LML-EP 000095, lns. 4-16).

- "*The total of daily, approved Transaction Events are 'checkless' sales whereby the service subscriber merchant has submitted requests for electronic ACH settlement for all preauthorized consumer purchases. No commercial bank note ("Paper Check") is accepted or processed by the service subscriber.* In each Transaction Event, a Consumer, at the point-of-sale, has executed an electronic access ("Off-Line Debit") authority "Sales Slip" which is automatically printed upon a terminal's receipt of an "Approved" notice. All terminal programming and all prompt strings for MICR Check Reader interfacing are stored in the POS terminal and the computer center of the present invention controls interactions between the plurality of terminals and the central system." (*Id.* at LML-EP 000100, lns. 2-14 (emphasis added)).

- Summary "A flexible purchase transaction system is described which precisely fits within existing ACH procedures for checking account events for processing of pre-authorized electronic debits as a replacement for commercial bank drafts (paper checks). *The main advantage to the proposed invention is the fact that a truly paperless transaction may occur.*" (*Id.* at LML-EP 000103, lns. 7-12 (emphasis added)).

The fact that the exact words "without using the [bank] check as a negotiable instrument" were not used in the original specification is of no consequence. *See, e.g., Koito*, 381 F.3d at 1154 ("Terms need not be used *in haec verba*."). As shown above, the original specification clearly showed that the Applicants had possession of the invention reflected in the language "without using the [bank] check as a negotiable instrument," and thus satisfied their written description obligation under 35 U.S.C. § 112. This was obviously understood by the Examiner who did not reject the addition of the limitation for lacking a written description under § 112. (Ex. 9, October 26, 1994 Office Action).

Thus, Defendants have utterly failed to raise any issue that the limitation "without using the [bank] check as a negotiable instrument" is invalid under § 112 for lack of written description, particularly in the face of all of the evidence cited above from the original specification. The only evidence offered by Defendants is the opinion of Mr.

- 11 -

Kurrasch which, even if it was reliable, is far from sufficient to overcome Defendants'
clear and convincing burden of proof. *See Koito*, 381 F.3d at 1155 (holding that a
conclusory opinion from an expert is not sufficient to meet defendants' clear and
convincing burden of proof with respect to invalidity). Indeed, Mr. Kurrasch offers no
support for his opinion[6], and thus it should not even be considered. *See, e.g., Network
Appliance, Inc. v. Bluearc Corp.*, 374 F. Supp. 2d 825, 838-839 (N.D. Cal. 2005)
(granting patentee's motion for summary judgment under § 112, where accused infringer
failed to offer adequate support for its theory that the specification of a patent-in-suit
lacked an adequate written description for certain claims).

**III.    LML Is Entitled To Summary Judgment That The Asserted Claims Are Not
Invalid Under 35 U.S.C. § 132 For Addition of New Matter**

In addition to arguing that the language "without using the [bank] check as a
negotiable instrument" lacks a written description in the original disclosure, Defendants
argue that the Asserted Claims are invalid for violating the prohibition on "new matter"
under 35 U.S.C. § 132. (Ex. 5 at 13, Telecheck's First Supp. Resp. to LML's Amend.
Interr. No. 2; Ex. 6, Kurrasch Supp. Exp. Rep. at ¶ 372). Specifically, Defendants argue
that the description added to the *specification* by the June 8, 1994 amendment is "new
matter" and that because all the Asserted Claims of the '988 patent allegedly require this
disclosure as support for the "without using the [bank] check as a negotiable instrument,"
the claims are invalid under § 132. (*Id.*)

Defendants argument does not make sense. Defendants do not argue that the
amendments made to the *claims* as part of the June 8, 1994 Preliminary Amendment

---

[6] Ex. 7, Kurrasch Supp. Exp. Rep. at ¶ 371.

introduced "new matter" but only the amendments to the *specification*.[7] (*Id.*). Thus, it is

unclear how Defendants make the leap that the claims themselves are invalid under

§ 132. Because 35 U.S.C. § 112 requires that all claims be supported by a written

description in the *original* specification, it is irrelevant to the validity of the *claims*

whether or not amendments to the *specification* constitute "new matter." Nonetheless,

even if it were relevant, the amendments to the specification made as part of the June 8,

1994 Preliminary Amendment were made to more distinctly point out the invention—not

to add new matter. (Ex. 7, Tinkel Decl. at ¶ 17).

### A.    Applicable Legal Standards For The § 132 Prohibition On New Matter

Section 132 of the Patent Act states that "[n]o amendment shall introduce new

matter into the disclosure of the invention." 35 U.S.C. § 132. In determining whether an

amendment constitutes "new matter," "the fundamental inquiry is whether the material

added by amendment was inherently contained in the original specification." *Schering*

---

[7] If Defendants had argued that the addition of the "without using the [bank] check as a negotiable instrument" element to the claims constituted the addition of "new matter," the analysis would be identical to the analysis of whether that claim element meets the written description requirement of § 112. Thus, the previous section, proving that the "without using the [bank] check as a negotiable instrument" element was fully supported by the original specification, also proves that the amendment adding this element to the claims did not introduce new matter. *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 2005 WL 2264918, *2 (Fed. Cir. Sept. 19, 2005) (holding that the written description requirement of § 112 prevents the "addition of new matter to *claims*"); *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319-20 (Fed. Cir. 2003) ("Although the statute [35 U.S.C. § 132] proscribes addition of new matter to a specification or claims under § 132, the United States Court of Customs and Patent Appeals decided to police the addition of new matter to claims separately using § 112") (citing *In re Rasmussen*, 650 F.2d 1212, 1214 (CCPA 1981)). In evaluating whether claims are invalid for introducing new matter by amendment, the use of § 132 and § 112 is synonymous. (*Id.*)

*Corp. v. Amgen Inc.*, 222 F.3d 1347, 1352 (Fed. Cir. 2000). Making this determination is closely related to evaluating the written description requirement of § 112. *Id.* "[T]o avoid the new matter prohibition, an applicant must show that his original application supports the amended matter." *Id.* However, an applicant may *clarify* something disclosed in his original application without the clarification being treated as new matter. *See Brook-Hill 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1303-1304 (Fed. Cir. 2003) (holding that an amendment clarifying a limitation supported by the original disclosure was not a new matter violation).

In cases where the PTO has allowed amendments during prosecution without objection thereto as new matter, the presumption of validity "is entitled to an *especially weighty presumption of correctness.*" *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574-75 (Fed. Cir. 1992) (emphasis added). Here, the Examiner never issued any rejections based on the addition of new matter under § 132. (*See* Ex. 9, October 26, 1994 Office Action). Thus, in this case, Defendants have an "especially weighty" burden of proving that the amendments made to the specification as part of the June 8, 1994 Preliminary Amendment were not inherently contained in the original specification. Defendants cannot meet this high burden.

**B.    There Is No Genuine Issue Of Material Fact That The Amendments To The Specification Did Not Constitute New Matter**

As explained above with respect to Defendants' § 112 written description defense, the Applicants' original disclosure was riddled with references to using the check as a source document and not accepting or processing the check. Indeed, the Applicants had possession of their invention, including the limitation "without using the [bank] check as a negotiable instrument," since the filing of the original disclosure. Defendants' claims

of invalidity in this regard are once again limited to the bald, conclusory opinion of their expert. As explained above, with respect to Defendants' § 112 written description defense, these opinions should not be considered and even if they were, such conclusory opinions are certainly not clear and convincing evidence of invalidity under 35 U.S.C. § 132, particularly where the Examiner allowed the amendment at issue during prosecution without objection thereto as new matter. *Brooktree Corp.* 977 F.2d at 1574-75. Accordingly, LML is entitled to summary judgment that the Asserted Claims of the '988 patent are not invalid under 35 U.S.C. § 132 as a matter of law.

IV.    **LML Is Entitled To Summary Judgment That The Asserted Claims Of The '988 Patent Are Not Invalid Due To Lack Of Enablement Under 35 U.S.C. § 112.**

Defendants next argue, among their myriad of defenses, that the Asserted Claims of the '988 patent are invalid for failure to comply with the enablement requirement of § 112. Specifically, in their responses to LML's contention interrogatories, Defendants argue that (1) claims 1-6, 9-11 and 13 are invalid for not providing an enabling disclosure for a second communications means "enabling automated clearing house communications for transferring funds without using the bank check as a negotiable instrument;" and (2) claim 8 is invalid for not providing an enabling disclosure for a checkwriting point of sale process comprising the step of "reading the magnetic ink character recognition information on the check for the sole purpose of obtaining consumer bank account information, without using the check as a negotiable instrument." (Ex. 5 at 13, Telecheck's First Supp. Resp. to LML's Amend. Interr. No. 2). Despite

making such arguments in discovery, Defendants' expert did not provide any opinion on either of the two defenses.[8]  (Ex. 6, Kurrasch Supp. Exp. Rep. at ¶ 373).

However, while Mr. Kurrasch did not opine on Defendants' first two enablement defenses, he offered a third enablement opinion that all Asserted Claims of the '988 patent

**REDACTED**

(*Id.*).  Regardless of how many lack of enablement defenses Defendants now assert, each is meritless and has no basis in law. Thus, no genuine issue of material fact exists regarding enablement of the Asserted Claims, and LML is entitled to summary judgment as a matter of law.

**A.      Applicable Legal Standards For The § 112 Enablement Requirement**

In addition to requiring that the specification contain a written description of the invention, the first paragraph of 35 U.S.C. § 112 also requires that the description "enable any person skilled in the art...to make and use [the invention]."  35 U.S.C. § 112. "Invalidity for lack of enablement is a conclusion of law and must be supported by facts proved by clear and convincing evidence, for the grant of the patent by the PTO carries with it the presumption of validity compliance with § 112."  *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 941 (Fed. Cir. 1990).

The Federal Circuit has interpreted the enablement provision of § 112 to require that the specification "teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'"  *Koito* 381 F.3d at 1155 (citing

---

[8] It is unclear whether Defendants maintain these defenses. Since Defendants' expert failed to address these issues, it would appear not.  Nevertheless, LML addresses these meritless defenses as well.

*Genetech Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997).  "An inventor

need not, however, explain every detail…patent specifications would turn into product

specifications….That some experimentation is necessary does not preclude enablement."

*DeGeorge v. Bernier*, 768 F.2d 1318, 1323 (Fed. Cir. 1985) (internal citations omitted).

For example, the Federal Circuit "has repeatedly explained that a patent applicant does

not need to include in the specification that which is already known to and available to

one of ordinary skill in the art" such as things that are "standard in the industry." *Koito*,

381 F.3d at 1156.    Additionally, only the **claimed** invention must be enabled by the

specification and not all related, ***unclaimed*** devices or systems with which the claimed

invention might interface.  *DeGeorge*, 768 F.2d at 1324.

      Thus, to prove lack of enablement, Defendants must prove, through clear and

convincing evidence, that the specification lacks a specific detail that would be required

for one of ordinary skill in the art to practice the claimed invention and that the detail

would not be something already known to one of ordinary skill or something that could

be discovered without undue experimentation.   *See Koito*, 381 F.3d at 1155-56.

Defendants have not, and cannot, meet this burden.

### B.    The Element Reciting "A Second Communications Means Enabling Automated Clearing House Communication" Is Enabled

      Claims 1 and 9 of the '988 patent recite a second communication means that

enables "automated clearing house communication for transferring funds without using

the bank check as a negotiable instrument." (Ex. 1 at cols. 11-12).  Although Defendants

contended during discovery that there is allegedly no enabling disclosure for such a

"second communication means," Defendants have not put forth ***any evidence***—let alone

clear and convincing evidence—required to support this conclusion.  In fact, Defendants

agreed with LML during claim construction as to the proper function and corresponding structure of this means-plus-function element. (Ex. 10, Joint Claim Construction Statement). In their Opening Clam Construction Brief, Defendants stated that the "***parties agree*** that [sic] on the generally recited function of those claim elements and the ***structure disclosed for purportedly performing those functions***."[9] (Def. Open. Claim Const. Br. at 37 (emphasis added)). Certainly if Defendants agree that the specification of the '988 patent discloses a function and corresponding structure of a "second communication means," this element is fully enabled.

Defendants have not raised any issue of material fact that the second communication means recited in claims 1 and 9 is not enabled. Thus, LML is entitled to summary judgment as a matter of law with respect to this defense.

**C.      The Element Reciting The Step Of "Reading The Magnetic Ink Character Recognition Number Information...." Is Enabled**

Claim 8 of the '988 patent recites a checkwriting point of sale process comprising the step of "reading the magnetic ink character recognition number information on the check for the sole purpose of obtaining the consumer bank account information, without using the check as a negotiable instrument." (Ex. 1 at col. 12). Defendants contended during discovery that there was no enabling disclosure for this element. (Ex 5 at 13,

---

[9] The parties agree that the function of this claim element is "enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using the [a] bank check as a negotiable instrument" and the corresponding structure disclosed by the '988 patent is "a modem, network interface, enhanced radio transmission interface, satellite communication interface or equivalent." (Ex. 10, Joint Claim Construction Statement).

TeleCheck's First Supp. Resp. to LML's Amend. Interr. No. 2). However, once again, Defendants offer no evidence to support this contention—not even expert testimony. In fact, Defendants' contention actually contradicts the positions they took in their Opening Claim Construction Brief.

Defendants argued during claim construction that the specification discloses to one of ordinary skill a MICR reader and optical character recognition equipment as the "means for reading magnetic ink character recognition numbers" as disclosed in claims 2 and 9. (Def. Open. Claim Const. Br. at 35-36). Defendants cannot reconcile this position with their argument that the specification does not provide an enabling disclosure for the "reading MICR number information" limitation recited in claim 8. Indeed, the specification of the '988 patent does enable one of ordinary skill in the art to "read magnetic ink character recognition numbers." The '988 patent specifically discloses mechanisms such as a MICR check reader, optical character recognition ("OCR") equipment, a keyboard for manual entry, or equivalent for reading MICR numbers appearing on a check:

- Such a fully automated system generally comprises a dual-port terminal with magnetic stripe reading capabilities interfaced with a logging printer capable of providing individual Transaction Event Slips for consumer execution, and a *MICR check reader, optical character recognition ("OCR") equipment, or other device.* (Ex. 1, '988 Patent at col. 5, lns. 44-49 (emphasis added)).

- The subscriber begins the process by first pressing the appropriate key on a terminal to access the host computer 108. Thereafter the point of sale terminal prompts the system subscriber to enter the appropriate MICR number 110. *The system subscriber then enters the appropriate MICR number either manually or by passing the check through a check reader which determines the MICR number 112.* (*Id.* at col. 7, lns. 55-62 (emphasis added)).

- Having depressed the assigned Split Dial key and thereafter being prompted, *the system subscriber manually enters account numbers from*

*a personal or business check or, where fully automated, enters a specimen check through a MICR Check Reader device interfaced with the terminal* . . Check Replacement Service--Inquiries initiated as Check Replacement requests function in nearly an identical manner as that of Check Authorization. (*Id.* at col. 9, ln. 9-14 and lns. 50-52 (emphasis added)).

- It is important to note that account information may be entered manually as well at the point of sale with the other financial advantages of the present invention still in effect. (*Id.* at col. 10, lns. 41-44).

- Referring to FIG. 2 the point-of-sale terminal is described. The point-of-sale terminal comprises several different entry means. *A key board 310 can be used to input consumer information manually.* Alternatively a card reader 312 can be used whereby the magnetic stripe on the card is read by the point-of-sale terminal and finally *a check reader 314 is also included to read the MICR number on checks as a substitute for either a specific card or key board input.* (*Id.* at col. 6, lns. 60-67 (emphasis added)).

Defendants cannot support their contention that this element is not enabled. As such, no genuine issue of material fact exists, and LML is entitled to summary judgment as a matter of law with respect to this defense.

D.      **The Element of Reading Information From "Any Bank Check" or "Any Consumer Bank Check" Is Enabled**

Defendants also contend that there is no enabling disclosure for the claim limitations of "reading information from 'any bank check' or 'any consumer bank check.'" (Ex. 6, Kurrasch Supp. Exp. Rep. at ¶ 373). For the reasons set forth below, this defense only impacts claims 2 and 9 and claims 10 and 11 which depend from claim 9. Defendants never set forth this lack of enablement defense in response to LML's contention interrogatories, but only through their expert. In addition to being incorrect and unreliable, Mr. Kurrasch's analysis is full of assumptions and misstatements and contradicts the well-established case law with respect to the enablement requirement of

§ 112 explained above. The element of reading information from any "bank check" or "any consumer bank check" is fully enabled. (Ex. 7, Tinkel Decl. at ¶¶18-22).

       1.     Mr. Kurrasch's Opinion Ignores the Plain Language of the Claims

Although Mr. Kurrasch states

**REDACTED**

it is unclear how he reaches that conclusion. (*Id.*) Claim 1 of the '988 patent recites the limitation of ***receiving*** consumer bank account information from any check, but says nothing about ***reading*** information. (Ex. 1 at col. 11).     **REDACTED**

As noted in LML's Response Brief Regarding Claim Construction, ***receiving and receiving*** are different terms with different meanings and it is inappropriate to treat them interchangeably. (Ex. 7, Tinkel Decl. at ¶ 20; LML's Resp. Claim Constr. Br. at 35-36). Accordingly, Mr. Kurrasch's opinion on the limitations of ***reading*** information should not be considered applicable to claim 1 which does not actually recite that limitation.[10] (Ex. 7, Tinkel Decl. at ¶ 20). Similarly, claim 8 recites the limitation of "reading the magnetic character recognition number information ***on the check***"—not ***from any check***—so Mr. Kurrasch's opinion also would not apply to claim 8. (*Id.*) Thus, the only claims that Mr. Kurrasch's opinion could possibly apply to are claim 2 and claim 9, which contain the limitation opined on by Mr. Kurrasch, as well as claims 10 and 11 which depend from claim 9.

---

[10] Even if receiving and reading are treated interchangeably, Section 2 below shows that Defendants' lack of enablement defense would still fail. (Ex. 7, Tinkel Decl. at ¶ 21).

Mr. Kurrasch also ignores the plain language of the Asserted Claims by contending

**REDACTED**

The term "conducting transactions" appears nowhere in the limitation on which Mr. Kurrasch is opining. Once again, Mr. Kurrasch offers no explanation to justify using terms of his own choosing interchangeably with the terms of the patent. Furthermore, in their claim construction brief, Defendants do not even suggest that "reading information" should be construed to mean "conducting transactions." (Def. Open. Claim Const. Br. at 34-37). Thus, Mr. Kurrasch's enablement opinion is based entirely on a flawed construction of the "reading information" limitation and should, therefore, be disregarded. Defendants have offered no further evidence to support this enablement defense, and thus, have not raised a genuine issue of fact with respect to the lack of enablement of this limitation for any of the Asserted Claims.

2. Even if "Receiving Information" Were Equivalent to "Conducting Transactions," LML Is Still Entitled to Summary Judgment of No Lack of Enablement

Even if claims 2 and 9—reciting the limitation of "receiving information" from "any consumer bank check"—are construed to require an enabling disclosure for "conducting transactions" using any consumer bank check, Defendants have offered no competent evidence to overcome their clear and convincing burden of proof.

As support for his opinion that this limitation is not enabled, Mr. Kurrasch only provides

**REDACTED**

**REDACTED**

[11]  The Federal Circuit has made clear that a party arguing lack of enablement must prove through clear and convincing evidence that the specification lacks a specific detail that would be required for one of ordinary skill in the art to practice the claimed invention and that the detail would not be something already known to one of ordinary skill or something that could be discovered without undue experimentation.  *See Koito*, 381 F.3d at 1155-56.  Conclusory opinions from an expert, without more, are not sufficient to meet the Defendants' burden of proof.  *Id.* at 1155.  Mr. Kurrasch's cursory opinions fall far short of this standard and thus, cannot be used to overcome Defendants' clear and convincing burden.  Thus, the '988 patent has an enabling disclosure for these elements, and LML is entitled to summary judgment as a matter of law with respect to this defense.

---

[11] By their very nature,                **REDACTED**                would be easily accessible to one of ordinary skill in the art.  (Ex. 7, Tinkel Decl. at ¶ 22).  Indeed, a simple internet search would yield *anyone* the information they would need in this regard.

**V.    LML Is Entitled To Summary Judgment That The Asserted Claims Of The '988 Patent Are Not Invalid Due To Indefiniteness**

Next, Defendants contend that the Asserted Claims of the '988 patent are invalid for failure to meet the "definiteness" requirement of 35 U.S.C. § 112. Specifically, Defendants claim that the limitation "without using the check [or bank check] as a negotiable instrument" renders the Asserted Claims indefinite. (Ex. 5 at 19, TeleCheck's First Supp. Resp. to LML's Amend. Interr No. 2)). Once again, the only evidence offered by Defendants to support this allegation is the expert opinion of Mr. Kurrasch. (Ex. 5, Kurrasch Supp. Exp. Rep. at ¶¶ 374-75). However, as discussed in the written description section above, the specification of the '988 patent clearly sets forth what "without using the [bank] check as a negotiable instrument" means—"where the check is used as a source of information, and is not accepted or processed." (*See supra* Section II; Ex. 7, Tinkel Decl. at ¶¶ 23-25). Moreover, Defendants' indefiniteness argument in this regard is nullified by the claim construction Defendants offered with respect to this claim limitation.

**A.    Applicable Legal Standard For The § 112 Definiteness Requirement**

The "definiteness" requirement of § 112 requires that the specification "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention" 35 U.S.C. § 112. However the definiteness requirement does not "compel absolute clarity." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). In ruling on an assertion of claim indefiniteness, "a court must determine whether those skilled in the art would understand what is claimed when the claim is read in light of the specification." *Bancorp Services, L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004). A determination

- 24 -

that a patent claim is invalid for failure to meet the definiteness requirement is a conclusion "that is drawn from [a] court's performance of its duty as the construer of patent claims," and likewise is a question of law. *Id.*

*Only claims "not amenable to construction" or "insolubly ambiguous" are indefinite. Datamize*, 417 F.3d at 1347 (internal citations omitted) (emphasis added). "Thus, the definiteness of claim terms depends on whether those terms can be given any reasonable meaning." *Id.* The law is clear that a claim is not indefinite merely because it poses a difficult question of claim construction. *Bancorp*, 359 F.3d at 1371 (citing *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338-39 (Fed. Cir. 2003). In other words, if the meaning of a claim is discernable, "even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, . . . the claim [is] sufficiently clear to avoid invalidity on indefiniteness grounds." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). Moreover, in the face of an allegation of indefiniteness, "general principles of claim construction apply." *Datamize*, 417 F.3d at 1348. This means that "intrinsic evidence in the form of the patent specification and file history should guide a court." *Id.*

The Federal Circuit has noted that "[b]y finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity, *see* 35 U.S.C. § 282, and 'we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal.'" *Bancorp*, 359 F.3d at 1371 (quoting *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)). Thus, "close questions of indefiniteness in

litigation involving issued patents are properly resolved in favor of the patentee." *Exxon Research*, 265 F.3d at 1380.

**B.    Construction Of The Element "Without Using The [Bank] Check As A Negotiable Instrument" Is Set Forth In The Specification Of The '988 Patent.**

The element "without using the [bank] check as a negotiable instrument" is amenable to construction.   As explained in more detail in LML's Opening Claim Construction Brief, the proper construction of this phrase is "where the check is used a source of information, and is not accepted or processed." (LML's Open. Claim Const. Br. at 24-31).   This construction is clearly set forth in the specification which contains numerous references to how the check is used.   LML's construction is taken directly from these statements in the specification as explained in LML's Opening Claim Construction Brief and herein with respect to Defendants' § 112 written description defense.[12] Because the claim language is amenable to construction, it cannot be deemed indefinite. *Datamize*, 417 F.3d at 1347 (holding that only claims not amenable to construction can be indefinite).

**C.    Defendants' Indefiniteness Argument Is Nullified By Their Own Claim Construction Arguments**

The indefiniteness argument with respect to the "without using the [bank] check as a negotiable instrument" limitation set forth by Defendants and their expert is completely contradicted by the position they take in their Opening Claim Construction Brief.   (Def. Open. Claim Const. Br. at 21-25).   Indeed, Defendants propose a construction of this element and argue that their proposed construction is supported by

---

[12] For sake of brevity, LML does not repeat these arguments or support here.

the intrinsic evidence of the patent—the specification as well as the prosecution history. (*Id.*) While LML does not agree with Defendants' proposed construction and proposed the correct construction as set forth above, the fact that Defendants even propose a construction with alleged support from the specification supports a finding that this limitation is not indefinite.

**D.    The Extrinsic Evidence Relied On By Defendants To Support Their Indefiniteness Defense Is Not Sufficient To Raise A Genuine Issue of Material Fact**

In an effort to support their indefiniteness argument, Defendants allege

**REDACTED**

Notwithstanding the fact that their indefiniteness argument has been nullified by their claim construction argument, this extrinsic evidence, if considered[13], is not sufficient to raise a genuine issue of material fact that "without using the [bank] check as a negotiable instrument" is indefinite.  (Ex. 7, Tinkel Decl. at ¶ 26).  Defendants supply no evidence

**REDACTED**

Without offering any evidence

**REDACTED**                          Defendants simply cannot argue that

**REDACTED**

---

[13]  Because general principles of claim construction apply to an allegation of indefiniteness, extrinsic evidence would only be relevant to an indefiniteness argument if it was first proven that the intrinsic evidence provided no support for an acceptable claim construction.  *See Datamize*, 417 F.3d at 1347 *(citing Phillips v. AWH Corp.,* 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).

[14] Defendants also attempt to support their contention        **REDACTED**

(Continued...)

- 27 -

As such, Defendants cannot proffer the clear and convincing evidence required to support their indefiniteness claims.  Thus, LML is entitled to summary judgment as a matter of law with respect to this defense.

## CONCLUSION

For the foregoing reasons,  LML respectfully requests that this Court grant LML summary judgment that claims 1, 2, 4, 5, 6, 9, 10, 11, 14, 16 and 18 of the '988 Patent are not invalid under either 35 U.S.C. § 112 or § 132. .

DATED this 28th day of October, 2005

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware  19801
(302) 888-6800
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
(312) 861-2000

Attorneys for LML Patent Corp.

---

REDACTED    This is incorrect.  When asked for his understanding of the term, Mr. Hills replied, "[t]he check isn't presented for settlement." (Ex. 11, Deposition of Robert Hills at 126:20-22).

OUTSIDE COUNSEL'S EYES ONLY - SUBJECT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of November, 2005, I electronically filed the foregoing document, **PUBLIC VERSION OF LML'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT NO. 5: FOR A RULING THAT CLAIMS 1, 2, 4, 5, 6, 9, 10, 11, 14, 16 AND 18 OF THE '988 PATENT ARE NOT INVALID UNDER 35 U.S.C. §§ 112 AND 132**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Collins J. Seitz, Jr., Esq.
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19801

William J. Marsden, Jr., Esq.
Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 4th day of November, 2005, the foregoing document was served via email on the following non-registered participants:

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Mark C. Scarsi, Esq.
Vision L. Winter, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

　　　　　/s/ Mary B. Matterer
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS
& WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com

Attorneys for Plaintiff LML PATENT CORP.