IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP., <br><br> Plaintiff, <br><br> v. <br><br> TELECHECK SERVICES, INC., ELECTRONIC CLEARING HOUSE, INC., XPRESSCHEX, INC. and NOVA INFORMATION SYSTEMS, INC., <br><br> Defendants. | C.A. 04-858 (SLR) |

## TELECHECK SERVICES, INC.'S OBJECTIONS TO THE SPECIAL DISCOVERY MASTER'S OCTOBER 25, 2005 RULINGS

William J. Marsden (#2247)
Timothy Devlin (#4241)
Stamatios Stamoulis (#4606)
Tara D. Elliott (#4483)
Sean P. Hayes (#4413)
FISH & RICHARDSON P.C
919 N. Market Street, Suite 1100
Wilmington, DE  19899-1114

*Attorneys for Defendant*
*TeleCheck Services, Inc*

Dated:  November 14, 2005

## TABLE OF CONTENTS

**Page**

I.     NATURE AND STAGE OF THE PROCEEDING ..................................................1

II.     SUMMARY OF ARGUMENT ..........................................................................1

III.     STATEMENT OF FACTS ...............................................................................3

         A.     LML's Document Requests and Discovery Demands
                 Resulted in a Large TeleCheck Document Production .............................4

         B.     The Special Discovery Master Improperly Ordered
                 Production of Approximately 260 Privileged Documents
                 Based on TeleCheck's Production of Documents ....................................6

         C.     The Special Discovery Master Improperly Extended the
                 Scope of TeleCheck's Waiver of Privilege.................................................7

         D.     The Special Discovery Master Improperly Order
                 Production of Privileged Documents Unrelated to the
                 Patent in Suit...........................................................................................7

IV.     DISCUSSION ...............................................................................................8

         A.     Legal Standard for Requires *de novo* Review...........................................8

         B.     There Was No Legal Basis for the SDM to Order the
                 Approximately 260Documents Produced on the Basis of
                 TeleCheck's Document Production............................................................8

         C.     The "Concord Documents" Are Not Within the Scope of
                 the Waiver of Privilege as They Do Not Reflect
                 TeleCheck's State of Mind ....................................................................11

         D.     Documents Regarding Patents Not at Issue Are Not
                 within the Scope of Waiver....................................................................12

V.     CONCLUSION ............................................................................................13

# TABLE OF AUTHORITIES

**PAGE**

*Allergan Inc. v. Pharmacia Corp.*,
    C.A. No. 01-141-SLR, 2002 WL. 1268047 (D. Del. May 17, 2002) ..........................12

*American National Bank and Trust Co. of Chicago v. Equitable Life Assur.*
    *Society of United States*,
    406 F.3d 867 (7th Cir. 2005) ...................................................................................8, 9

*Cytyc Corp. v. Autocyte, Inc.*,
    C.A. 99-610-SLR (D. Del., Sept. 13, 2000)...........................................................11, 12

*E.I. DuPont Nemours v. Millenium Chemical Inc.*, ......................................................2, 11
    C.A. 97-237-SLR (D. Del., Apr. 14, 1999)

*Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*,
    32 F.3d 851 (3rd Cir. 1994) ......................................................................................10

*In re Spalding Sports Wordwide, Inc.*,
    203 F.3d 800 (Fed. Cir. 2000)...................................................................................13

*United States v. Mass. Institute of Tech.*,
    129 F.3d 681 (1st Cir. 1997) .......................................................................................8

## STATUTES

Fed. R. Civ. P. 53..........................................................................................................8

Fed. R. Civ. P. 53(g)(2)-(5)...........................................................................................1

Fed. R. Civ. P. 53(g)(4)..................................................................................................8

## I.    NATURE AND STAGE OF THE PROCEEDING

This is a patent infringement litigation initiated by LML Patent Corporation ("LML" or "Plaintiff") against defendants TeleCheck Services, Inc. ("TeleCheck"), Electronic Clearing House, Inc. ("ECHO"), XpressChex, Inc. ("XpressChex") and Nova Information Systems, Inc ("Nova") (collectively, "Defendants").  The patent in suit is U.S. Patent No. 5,484,988 ("the '988 patent").

The Court appointed Special Discovery Master ("SDM") Louis C. Bechtle to resolve issues relating to the parties' privilege logs.  The parties have participated in a number of in-conferences with the SDM regarding privilege log issues, and on October 25, 2005 the SDM issued an Order during an in-person conference requiring the production of certain TeleCheck documents.  TeleCheck submits these objections to that Order pursuant to Fed. R. Civ. P. 53(g)(2)-(5).  TeleCheck respectfully submits that the SDM disregarded applicable case law in making his oral orders during the October 25 hearing.

## II.    SUMMARY OF ARGUMENT

TeleCheck objects to the October 25, 2005 oral orders issued by the SDM with respect to the following three categories of documents: (1) approximately 260 documents that LML alleged contained "inadequate descriptions," which the SDM ordered produced based on relevance grounds rather than an analysis of privilege issues; (2) documents referencing a legal opinion obtained by Concord, a third party corporation, which were obtained by TeleCheck's parent First Data Corporation as part of its acquisition of Concord well after the launch of the accused TeleCheck service; and (3) two documents related to patents other than the '988 patent in suit.  These three sets of documents are addressed below.

1.    The SDM improperly ordered production of 260 of 271 documents, which LML asserted had inadequate descriptions on TeleCheck's privilege log, after reviewing only thirty of the documents *in camera*.  Case law establishes that this selective review is

improper.   Moreover, the SDM ordered most of these documents produced based on questions of relevance, even though he stated that the documents were privileged: "it seemed like many of these issues have nothing to do with this case.  And ***even though they're attorney-client privilege***, just say, well, let the Court decide it, and we'll put down stock answer, business operations or whatever you put."  (Ex. A at 53:8-13.)[1]  These remaining "irrelevant" documents became issues only after LML propounded extremely broad document requests and then selected 482 out of 487 boxes of documents for production in a subsequent inspection.

2.     The SDM incorrectly ruled that third party Concord opinions obtained after the decision-making process within TeleCheck fell within the scope of TeleCheck's waiver.  These documents are not properly in the scope of the waiver, because there is no evidence suggesting that TeleCheck ever relied on these documents in any manner. As this Court has ruled:

> a document is properly within the scope of the waiver created when a defendant produces the opinions of counsel only when said document has been communicated to or otherwise considered by management during the period when management has evaluated a patent in its conduct in relation thereto.

*E.I. DuPont Nemours v. Millenium Chemical Inc*., C.A. 97-237-SLR, slip op. at 2 (D. Del., Apr. 14, 1999) (Ex. B).  The Concord documents were not created or obtained during the time period that TeleCheck's management was evaluating the '988 patent and TeleCheck's conduct.  Accordingly, they could not and did not contribute to TeleCheck's state of mind with regard to the alleged infringement.

3.     TeleCheck objects to the SDM's order to produce PR 4652 and PR 2504. These documents involve patents other than those in suit.  Document PR 4652 provides a non-infringement opinion regarding a separate, third party patent.  The SDM ordered this document produced because it would be "harmless."  (Ex. A at 137:22.)  Document PR

---

[1]     Unless otherwise noted, emphasis in this Brief has been added.  Exhibits cited in this Brief are attached to the co-filed Declaration of Sean P. Hayes in Support of TeleCheck's Objections to the Special Discovery Master's October 25, 2004 Order.

2504 provides notes of a TeleCheck employee regarding the ongoing prosecution of an internal TeleCheck patent. These notes do not reflect any reliance by TeleCheck on its opinions of counsel and are not within the scope of TeleCheck's waiver of privilege. These two documents are privileged and outside of the scope of the waiver of privilege. Accordingly, their privilege should be maintained.

By these objections, TeleCheck seeks the following relief:

(1) This Court not adopt the SDM's Order with respect to approximately 260 documents ordered produced due to TeleCheck's manner of document production, and that these documents be referred back to the SDM for *in camera* review. The list of documents in this category is attached as Exhibit C. The list of documents within this category that were reviewed by the SDM are listed in Exhibit D, and will be provided *in camera* for this Court's convenience.

(2) This Court reverses the SDM's Order with respect to the "Concord" documents and documents related to patents not at issue, and instead Order that these documents be maintained as privileged. The list of documents in these categories are attached as Exhibits E and F, respectively.

## III.    STATEMENT OF FACTS

LML filed this lawsuit on July 14, 2004 alleging infringement of the '988 patent by TeleCheck and three other parties. In particular, LML accused TeleCheck's Electronic Check Acceptance Service® ("ECA Service") of infringement. The ECA Service utilizes two "point of sale terminals" called the Eclipse® terminal ("Eclipse") and the Accelera® terminal ("Accelera"). Discovery ensued with the parties propounding interrogatories and document requests, and ultimately exchanging documents.

LML has alleged that there are deficiencies in the privilege log created by TeleCheck, and Special Discovery Master Louis Bechtle has been working with the parties to resolve these issues. The parties have submitted briefs to the SDM and have

attended hearings with the SDM regarding privilege log issues. The SDM reviewed some of the documents identified by LML at a hearing on October 25, 2005 and ordered that some documents be produced. The SDM's October 25 rulings form the bases for these objections.

**A.      LML's Document Requests and Discovery Demands Resulted in a Large TeleCheck Document Production**

LML propounded 260 document requests, many of which were extraordinarily broad. In particular, LML requested every document relevant to the accused products. LML Request No. 6 demanded:

> ***All documents referring or relating to TeleCheck's Accused Products***.

(Ex. G at 2.)

In its Requests, LML defined "Accused Products" as including "any equipment, component, system, or services manufactured, sold, offered for sale, used, or imported by TeleCheck for or associated with the conversion of checks, presented at points of sale, to electronic transactions, including but not limited to, TeleCheck's 'Electronic Check Acceptance Service.'" (*Id.* at 1-2.) Virtually every document in TeleCheck's possession related to TeleCheck's ECA Service and its associated terminals fell within LML's requests. To confirm this point, LML propounded additional requests including:

- All documents relating to or referring to point-of-sale terminals . . . (Request No. 24);

- All documents referring or relating to TeleCheck's recommendation, manufacture, use, sale or offer for sale of the Accused Products or any products compatible with the Accused Products . . . (Request No. 176);

- All documents constituting, relating to, or referring to the hardware or software for any products compatible with the accused products (Request No. 179).

(Ex.G at 5; Ex. H at 3; *Id.* at 4.)

4

It should come as no surprise that a very large number of documents were responsive to these broad requests.  TeleCheck initially produced approximately 200,000 pages of documents in response.  In addition, TeleCheck had in its possession another 487 boxes of documents that nominally fell within the scope of LML's requests.  These documents have been collected for an unrelated, ongoing patent case, the "*Data Treasury*" case (*Data Treasury Corp. v. First Data Corp. et al.* (C.A. No. 3-02CV2429-P) (N.D. Tex.)), which involved different patents but the same locus of products.  TeleCheck's corporate parent had been ordered by the court in the *Data Treasury* case to make this set of documents available for inspection, and so TeleCheck also offered it for inspection to LML in this litigation.

Before LML's inspection, TeleCheck informed LML that many of the documents contained within this broader set were only marginally relevant, if at all, despite being within the literal scope of LML's document requests.  LML selected all but five of the boxes for production, a total of 482 boxes of documents.  Rather than bring these issues before the Court, TeleCheck endeavored to review the documents for privilege and produce them.  This effort was complicated by LML's refusal to incorporate a standard "privilege waiver" clause within the Protective Order, and LML's refusal to allow TeleCheck to produce many marginally relevant but arguably privileged documents without a threat of waiver.  (Ex. I, email correspondence between McDole, Devlin and Stamoulis dated Feb. 28, 2005.)  Ultimately, the 482 boxes selected for production by LML were produced.

The large number of documents TeleCheck produced – approximately 1.5 million total pages – led to a correspondingly large TeleCheck privilege log having several thousand entries.  Many of these entries had no direct connection to the issues of infringement and invalidity here, but instead related to the day-to-day operation of TeleCheck's ECA Service and related services.  TeleCheck's privilege log contained many separate types of document descriptions delineating documents relevant to the

5

patent issues, and identified the privileged, business-related documents as documents "containing legal advice from an attorney re business operations."

This history of document production is relevant here, because the manner in which TeleCheck produced documents formed the very basis for the SDM's Order regarding the first set of documents at issue. As set forth below, the SDM improperly ordered production on the purported grounds that TeleCheck's production of documents was improper.

> **B.    The Special Discovery Master Improperly Ordered Production of Approximately 260 Privileged Documents Based on TeleCheck's Production of Documents**

In advance of the October 25 conference, LML asserted that those documents having a description "reflecting legal advice regarding business operations" should be produced. During the hearing itself, LML asserted that it had compiled a listing of approximately 271 such documents at issue. The SDM reviewed approximately thirty of the documents from the list of 271, and questioned the relevance of certain documents related to a "VeriFone" dispute. (Ex. A at 43:2-4.) Although TeleCheck counsel explained the potential relevance of such documents, the SDM did not review additional documents or request information regarding other groups of documents within the 271.

Instead, the Special Master began questioning TeleCheck's counsel regarding the manner of production, and TeleCheck's counsel explained that roughly 500 boxes had been made available for inspection as described above. (Ex. A at 25:1-14.) During the discussion, counsel for LML characterized TeleCheck's efforts as a "snow job," despite the breadth of LML's requests and the many documents LML selected from the set of 487 boxes, all of which were responsive to those broad requests. The Magistrate took exception to TeleCheck's basis of production, and cut off further explanation by counsel. (Ex. A at 29:5-6; 34:16-21.) The SDM then ordered that all documents, except the subset relating to VeriFone, be produced. (Ex. A at 50:19-23.) The VeriFone documents for

which privilege was upheld included the same privilege log descriptions as those produced.

> **C.    The Special Discovery Master Improperly Extended the Scope of TeleCheck's Waiver of Privilege**

The SDM also reviewed twenty three documents during the October 25 hearing referred to as the "Concord" documents.  Concord is not a party to this lawsuit, and was only acquired by TeleCheck's parent corporation, First Data Corporation ("FDC") in 2003.  The Concord documents relate to opinions of counsel obtained independently by Concord around the year 2000, before FDC acquired Concord.  There is no dispute that the Concord documents were privileged.  There is also no dispute that TeleCheck's accused ECA Service was launched in 1998, long before the Concord acquisition, and so the Concord documents were never relied upon by TeleCheck's management in deciding how to design and implement the ECA Service.

Nevertheless, the SDM ordered that these twenty three documents be produced, ruling that any privilege that attached to these documents was waived by *TeleCheck's* reliance on advice of counsel.  (Ex. A at 166:11-16.)

> **D.    The Special Discovery Master Improperly Order Production of Privileged Documents Unrelated to the Patent in Suit**

The SDM reviewed two additional documents related to patents not in suit here. As explained during the October 25 conference, one of the documents relates to a non-infringement opinion on an unrelated patent not in suit (and never in suit).  There is no dispute that this document is privileged.  As explained during the October 25 conference, the document does not relate to any opinion of counsel TeleCheck obtained or relied on regarding the *patent in suit*, nor did the SDM order production on that basis.  Instead, the SDM ordered this document produced on the grounds that such production would be "harmless."  (Ex. A at 137:22-23.)  This is not a proper standard for analysis of privilege issues, and the SDM's Order should not be adopted

The second document relates to the drafting and prosecution of an unrelated TeleCheck patent application.  (Ex. A at 67:1-69:11.)  The SDM did not provide any basis for his ruling on this document.  Instead, he simply ruled, "Not Privileged.  Turn it over."  (Ex. A at 69:11-12.)  As explained at the October 25 conference, and as set forth below, this ruling is contradicted by Federal Circuit case law.

## IV.    DISCUSSION

### A.    Legal Standard for Requires *de novo* Review

Fed. R. Civ. P. 53 governs objections to a discovery master's orders.  Rule 53 provides that a party may object to a special discovery master's orders within 20 days of the order, and states that in reviewing the objections, "[t]he Court must decide de novo all objections to conclusions of law made or recommended by a master."  Fed. R. Civ. P. 53(g)(4).

Issues regarding assertions of privilege are issues of law.  *See, e.g., United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 683 (1st Cir. 1997) (stating that "an appeal respecting a privilege claim . . .  pos[es] an abstract issue of law.")  Accordingly, the Court must review the SDM's October 25 Order *de novo*.

### B.    There Was No Legal Basis for the SDM to Order the Approximately 260Documents Produced on the Basis of TeleCheck's Document Production

At the October 25, LML alleged that 271 documents listed on TeleCheck's privilege log had inadequate descriptions, and the Special Master improperly ordered the bulk of these documents produced after a partial *in camera* review.  This partial review and subsequent Order are improper.  Moreover, the SDM's basis for ordering production – TeleCheck's method of document production – is also improper.

The case law is clear that it is improper for a Court to review a small sample of the documents at issue, and to determine based on that sample that privilege has been waived for a broader set of documents.  *See Am. Nat'l Bank and Trust Co. of Chicago v. Equitable Life Assur. Society of United States*, 406 F.3d 867 (7th Cir. 2005).  In *American*

*National*, the defendant was compelled to disclose all documents as to which it had asserted attorney-client privilege, as a purported penalty for including some non-privileged documents on its privilege log. *Id.* at 872-73. The appellate court reversed, stating that this method was "clearly not fair." *Id.* at 878.

Here the SDM reviewed only the first thirty three documents of this group of 271 and declared, "All 271 documents will be produced." (Ex. A at 37:16.) After further consideration, the SDM withdrew his order as to a limited subset of VeriFone documents, leaving 260 to be produced. The SDM expressly stated that he would not review all the documents: "Unless the Court directs me, I won't go through the other 235 that are left and come up essentially with the same answer." (Ex. A at 53:17-19.) This partial review is improper under *American National*.

*American National* is particularly applicable here. The present case, like *American National*, involves "the applicability of the privilege in the difficult area of material involving in-house counsels." *Id.* at 874. The *American National* court also noted that "having a good-faith difference of opinion is not sanctionable conduct." *Id.* at 878. Here there has been no finding of bad faith behalf of TeleCheck. On the contrary, the SDM expressly noted the "professional way" the issues were presented and the "spirit of sincerity" in the parties arguments:

> And I want the record to note that I think counsel here are -- I think they're doing the very best they can for their clients, I think in a highly professional way. I think there are differences here, of course, but ***I've received all the arguments, I think, with the spirit of sincerity, which I think they're made.*** And as they say, you've got to call balls and strikes; right? And I'm doing the best I can.

(Ex. A at 176:3-13.)

Clearly, the SDM did not perceive willfulness, bad faith, or fault on the part of TeleCheck. For these reasons, the SDM's Order of waiver of privilege should not be adopted.

The basis for the SDM's production – the purported relevance of privileged documents – is also improper.  "Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged."  *Rhone-Poulenc Rorer, Inc. v. Home Indem. C*o., 32 F.3d 851, 864 (3rd Cir. 1994).  Rather than determining whether privilege had in fact been waived with respect to these documents, the SDM instead evaluated the relevancy of the documents at issue and the basis for their production.  The SDM stated, for example, "There is no privilege, because you – Telecheck has waived the right to assert any privilege of any kind of these documents, ***if they've been produced on the basis you've just mentioned***."  (Ex. A at 37:17-20).

The SDM did not rule that TeleCheck had actually waived its claims of privilege with respect to these documents.  Instead, the SDM ruled that because of the way in which TeleCheck produced documents and because not all of the documents were relevant, privilege was waived.  This analysis is improper.  *Rhone-Poulenc Rorer Inc.*, 32 F.3d at 864.  TeleCheck respectfully submits that, contrary to the SDM's ruling, TeleCheck acted prudently in making these documents available for LML's inspection.  Indeed, LML's broad document requests not only encompassed these documents, but LML inspected the 487 boxes of documents and elected to have virtually all of them produced.

While LML may seek to point to TeleCheck's privilege log descriptions, that was not the reason for the SDM's Order.  On the contrary, the SDM maintained that some of these very documents were privileged because their relevance had been explained:

> And so all I'm saying is the extent to which the ones I see touch upon
> VeriFone, Mr. Devlin's given me some explanation as to why his belief is
> that that could fit into the -- maybe if there are damages, the damage
> portion of this case; right?

(Ex. A at 56:8-13.)

The basis for the SDM's Order regarding these 260 documents is improper. TeleCheck respectfully requests that the Court remand these issues to the SDM for further *in camera* review and consideration.

### C.     The "Concord Documents" Are Not Within the Scope of the Waiver of Privilege as They Do Not Reflect TeleCheck's State of Mind

The scope of waiver associated with reliance on an opinion of counsel relates to "the alleged infringers state of mind."  *Cytyc Corp. v. Autocyte, Inc.*, C.A. 99-610-SLR, Mem. Order at 2-3 (D. Del., Sept. 13, 2000) (Ex. J).  In particular, this Court has made it clear that there is a temporal scope to opinions of counsel:

> a document is properly within the scope of the waiver created when a defendant produces the opinions of counsel *only when said document has been communicated to or otherwise considered by management during the period when management has evaluated a patent in its conduct in relation thereto.*

*E.I. DuPont Nemours v. Millenium Chem. Inc.*, slip op. at 2.

The SDM reviewed twenty three documents which were categorized during the October 25 hearing as "Concord documents."  The Concord documents were obtained by TeleCheck's parent corporation, First Data Corporation, as part of FDC acquisition of Concord in 2003, and there is no dispute that this date is long after TeleCheck's launch of the accused ECA Service in 1998.

Before Concord was acquired by TeleCheck's parent corporation FDC, Concord obtained opinions of counsel regarding the '988 patent.  These opinions were obtained in the 1999-2000 timeframe, roughly three years before Concord was acquired by FDC.  These opinions were never relied upon by TeleCheck management in evaluating the '988 patent and TeleCheck's conduct.  Accordingly, privilege has not been waived with respect to Concord documents because of TeleCheck's assertion of advice of counsel.  *E.I. DuPont  v. Millenium Chemical*, slip op. at 2.

**D.    Documents Regarding Patents Not at Issue Are Not within the Scope of Waiver**

TeleCheck objects to the SDM's order to produce documents PR 4652 and PR 2504.  These documents are both privileged, and neither falls within any proper scope of waiver.

This Court has held that "the scope of a party's voluntary waiver  . . . is defined by *the subject matter discussed in the opinion letters*."  *Allergan Inc. v. Pharmacia Corp.*, C.A. No. 01-141-SLR, 2002 WL 1268047, *2 (D. Del. May 17, 2002).  The Court reasoned that "[i]n order to determine whether the alleged infringer 'reasonably and in good faith relied on' the advice rendered by opinion counsel, it is appropriate to test the knowledge of the alleged willful infringer *concerning the subject matter of the opinion*."  *Id.* (quoting *Thorn Emi N. Am., Inc. v. Micron Tech., Inc.*, 837 F. Supp. 616, 621 (D. Del. 1993)).  *See also Cytyc v. Autocyte*, slip op. at 3 (waiver applies only "to the subject matter of the formal opinion letters.")

The first of these two documents, PR 4652, is a legal opinion regarding non-infringement of an unrelated patent, *not* an opinion related to a patent in suit.  During the October 25 conference, TeleCheck's counsel explained that this document does not relate to any opinion of counsel obtained regarding the '988 patent.  (Ex. A at 130:7-138:24.)  The SDM ruled only that the document has to do with the "overall legal topic" of this patent infringement case, and that it does no one any "harm" to produce the document:

> Well, in the most generic sense, [PR 4652]  has to do with the overall legal topic that the case has to do with, that we're concerned with here.  I don't think it does any harm onto anybody letting them see this.  But it falls in that category.  Well, there it is.  Let somebody else find out why it should apply.  I think it's discoverable.

(Ex. A at 137:13-21.)

The SDM ruling goes too far.  It extends beyond the limit of the scope of waiver established by precedent of this Court, and relies on an improper standard for production.  For this reason, the SDM's ruling should be reversed and privilege maintained.

The second of these two documents, PR 2504, are notes in an e-mail of Chris Schmid, system analyst at TeleCheck, regarding a draft patent application.  This document has no bearing on the issues in this case.  Rather, this document contains information regarding emerging TeleCheck technology for which a patent may be sought. Case law expressly provides that documents regarding the prosecution of a patent application are privileged.  *In re Spalding Sports Wordwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000).  Accordingly, the document should be upheld as privileged, and the SDM's Order should be reversed.

## V.    CONCLUSION

For at least the foregoing reasons, TeleCheck respectfully requests this Court to reverse the aforementioned October 25, 2005 rulings of the Special Discovery Master.

Dated:  November 14, 2005            FISH & RICHARDSON P.C.


By:    */s/ Sean P. Hayes*
     William J. Marsden, Jr. (#2247)
     Timothy Devlin (#4241)
     Stamatios Stamoulis (#4606)
     Tara D. Elliott (#4483)
     Sean P. Hayes (#4413)
     919 N. Market Street, Suite 1100
     P.O. Box 1114
     Wilmington, DE  19801
Attorneys for Defendant
TeleCheck Services, Inc.

13

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2005, I electronically filed the

TELECHECK SERVICES, INC.'S OBJECTIONS TO THE SPECIAL DISCOVERY

MASTER'S OCTOBER 25, 2005 RULINGS with the Clerk of Court using CM/ECF

which will send notification of such filing(s) to the following:

**BY HAND DELIVERY**
Richard K. Herrmann, Esq.
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19899

**BY HAND DELIVERY**
Collins J. Seitz, Jr., Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19801

**BY HAND DELIVERY**
Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE  19801

I hereby certify that on November 14, 2005, I have mailed by Electronic mail and

First Class mail, the document(s) to the following non-registered participants:

Robert Jacobs, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA  90045

Russell E. Levine, Esq.
Kirkland & Ellis LLP
200 E. Randolph Dr.
Chicago, IL 60601

Mark C. Scarsi, Esq.
O'Melveny & Myers LLP
400 S Hope Street
Los Angeles, CA 90071

_/s/ Sean P. Hayes_
Sean P. Hayes

80028246.doc