# G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 04-858 SLR |
| TELECHECK SERVICES, INC., | ) |
| ELECTRONIC CLEARING HOUSE, INC., | ) |
| XPRESSCHEX, INC., and | ) |
| NOVA INFORMATION SYSTEMS, INC. | ) |
| | ) |
| Defendants. | ) |

### PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS TO TELECHECK SERVICES, INC.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, LML Patent Corp. ("LML") hereby requests that Telecheck Services, Inc. ("TeleCheck") respond to the following document requests within thirty (30) days after service. Documents and things should be produced at the law offices of Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601, or at such other place mutually agreed upon by counsel for the parties.

### REQUESTS

1.   All documents referring or relating to TeleCheck's Answer And Affirmative Defenses to LML's Complaint, including all documents identified in or used or relied upon in the preparation of such Answer And Affirmative Defenses.

2.   All documents referring or relating to the TeleCheck Accused Products. (As used herein, "TeleCheck's Accused Products", "Accused Product", or "product" means any equipment, component, system, or services manufactured, sold, offered for sale, used, or imported by TeleCheck for or associated with the conversion of checks, presented at points of

120977.00601/40145878v1

sale, to electronic transactions, including but not limited to, TeleCheck's "Electronic Check Acceptance Service").

3. All documents referring or relating to TeleCheck's contention in paragraph 19 of its Answer And Affirmative Defenses to LML's Complaint that the TeleCheck Electronic Check Acceptance Service does not convert paper checks presented at the point of sale into electronic transactions.

4. All documents referring or relating to TeleCheck's contention in paragraph 19 of its Answer And Affirmative Defenses to LML's Complaint that the TeleCheck "Electronic Check Acceptance Service" does not process paper checks presented at the point of sale through the Automated Clearing House ("ACH") Network to automatically debit the consumer's bank account and deposit the transaction amount into the merchant's bank account.

5. All documents referring or relating to the Patents-in-Suit. (As used herein, "Patents-in-Suit" means U.S. Patent Nos. 5,484,988, 6,164,528, 6,283,366).

6. All documents referring or relating to TeleCheck's Accused Products.

7. All documents referring or relating to any investigations, tests, or analyses relating to the Accused Products and/or the Patents-in-Suit.

8. All documents referring or relating to TeleCheck's manufacture, use, sale or offer for sale of the Accused Products, including but not limited to, documents sufficient to identify where and when each Accused Product has been manufactured, sold, offered for sale, and/or used.

9. Documents sufficient to identify each customer of TeleCheck that has purchased and/or used an Accused Product.

- 2 -

23. All documents relating or referring to the testing or submission of any of TeleCheck's Accused Products for compliance with, or certification by any standard-setting body.

24. All documents relating or referring to point-of-sale terminals, including all documents regarding design or technical development of point-of-sale terminals.

25. All documents relating or referring to memory within point-of-sale terminals, including all documents regarding design or technical development of memory within point-of-sale terminals.

26. All documents relating or referring to central or host computer systems used for check conversion, including all documents regarding design or technical development of central or host computer systems used for check conversion.

27. All documents relating or referring to communication interfaces and/or protocols used in point-of sale terminals and/or central computer systems of the Accused Products, including all documents regarding design or technical development of communication interfaces and/or protocols used in point-of sale terminals and/or central computer systems.

28. All documents relating or referring to consumer account databases of the Accused Products, including all documents regarding design or technical development of consumer account databases.

29. All documents relating or referring to positive and negative check writer databases of the Accused Products, including all documents regarding design or technical development of positive and negative check writer databases.

30. All documents relating to or referring to interfaces and protocols for automated clearing house communications and transactions of the Accused Products, including all

Dated: October 15, 2004

/s/ Richard K. Herrmann
Richard K. Herrmann #405
Mary B. Matterer #2696
BLANK ROME LLP
1201 North Market Street, Suite 800
Wilmington, Delaware 19801
(302) 425-6400

Russell E. Levine, P.C.
Christian Chadd Taylor
Edward K. Runyan
Soo Choi
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Attorneys for LML Patent Corp.*

- 19 -

# H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-858 SLR |
| ) | |
| TELECHECK SERVICES, INC., ) | |
| ELECTRONIC CLEARING HOUSE, INC., ) | |
| XPRESSCHEX, INC., and ) | |
| NOVA INFORMATION SYSTEMS, INC. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S THIRD SET OF DOCUMENT REQUESTS TO TELECHECK SERVICES, INC. (NOS. 155-260)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, LML Patent Corp. hereby requests that TeleCheck Services, Inc. ("TeleCheck") respond to the following document requests in accordance with the definitions set forth in LML's First and Second Set of Requests for Production of Documents And Things, within thirty (30) days after service. Documents and things should be produced at the law offices of Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601, or at such other place mutually agreed upon by counsel for the parties.

**REQUESTS**

155. Documents sufficient to show the revenues earned by TeleCheck for each transaction involving electronic check conversion.

156. Documents sufficient to show the revenues earned by TeleCheck for the lease or sale of equipment to merchants for use in transactions involving electronic check conversion.

157. Documents sufficient to show the costs incurred by TeleCheck for each transaction involving electronic check conversion.

169. All documents that refer or relate or suggest the royalty amount that TeleCheck and LML would have agreed to at the time infringement began.

170. All documents that refer or relate to alternatives to electronic check conversion.

171. All documents that refer or relate to the cost difference between electronic check conversion and any alternative means of check clearance.

172. All documents that refute or support TeleCheck's contention that LML is not entitled to damages.

173. All documents that refute or support TeleCheck's contention that LML does not having standing to seek damages.

174. All documents that suggest or indicate a royalty amount that is customary in the check clearance or electronic transaction industry.

175. All documents referring or relating to the Accused Products or compatibility of other products with the Accused Products.

176. All documents referring or relating to TeleCheck's recommendation, manufacture, use, sale or offer for sale of the Accused Products or any products compatible with the Accused Products, including but not limited to, documents sufficient to identify where and when each Accused Product has been manufactured, sold, offered for sale, and/or used.

177. All documents referring or relating to any of TeleCheck's requirements for hardware and/or software compatibility with the Accused Products.

178. All documents constituting, relating to, or referring to the hardware or software for any products compatible with the Accused Products, including but not limited to, hardware or software installation design.

120977.00601/40150136v1

179. All documents constituting, relating to, or referring to any design specifications for any products compatible with the Accused Products, including initial design specifications and revision design specifications, including but not limited to, system design, functional design, flow charts, and programming specifications.

180. All documents constituting, relating to, or referring to testing and/or experimentation of any products for compatibility with the Accused Products.

181. All documents constituting, relating to, or referring to any database of Accused Products, or for use with the Accused Products, or any database accessible to the Accused Products, including software, hardware, flowcharts, central or host computer accessible databases, positive and negative databases, account databases and POS equipment-accessible databases.

182. All documents constituting, relating to, or referring to merchant and/or consumer fraud protection implemented by any of the Accused Products, including technical service manuals, product specifications, drawings, schematics, circuit diagrams, software code, source code, flowcharts, software and hardware documentation, block diagrams and design diagrams.

183. All documents relating or referring to the testing or submission of any supplier's or manufacturer's products, systems or methods for compliance with the Accused Products or certification by TeleCheck.

184. All documents relating or referring to point-of-sale terminals compatible with the Accused Products, including all documents regarding design or technical development of point-of-sale terminals.

Defendants, any Affirmative Defense in the present litigation, and/or the alleged infringement or alleged non-infringement of any Defendant.

Dated: February 2, 2005

                                              Richard K. Herrmann #405
                                              Mary B. Matterer #2696
                                              BLANK ROME LLP
                                              1201 North Market Street, Suite 800
                                              Wilmington, Delaware 19801
                                              (302) 425-6400

                                              Russell E. Levine, P.C.
                                              Jamie H. McDole
                                              Edward K. Runyan
                                              KIRKLAND & ELLIS LLP
                                              200 East Randolph Drive
                                              Chicago, Illinois 60601
                                              (312) 861-2000

                                              *Attorneys for LML Patent Corp.*

I

# Sean Hayes

**To:** Sean Hayes
**Subject:** FW: LML-Telecheck - Document Production & Privilege

From: Jamie McDole [mailto:jmcdole@kirkland.com]
Sent: Monday, February 28, 2005 11:46 AM
To: Stamatios Stamoulis
Cc: Timothy Devlin
Subject: Re: LML-Telecheck - Document Production & Privilege

Stam,

We will not agree to any conditions on TeleCheck's production. This issue has been dealt with several times by the parties and the Court. TeleCheck is obligated by the Federal Rules and Judge Robinson's orders to produce all responsive documents by March 4, 2005. The only conditions we will agree to are those set forth in the protective order.

Moreover, it is impossible for us to make any determination on your proposal without actually seeing the documents your are referring to. This appears to be a classic case of wanting to use privilege as both a sword and shield -- to produce and use documents helpful to your position, but withhold others. We may be willing to agree (if all Defendants are on board) that the production of a document will not have a "snowball" effect as to waiver of privilege (meaning that if a production document waives a subject matter privilege as to other documents, the subject matter in those additonal documents would not lead to further subject matter waivers).

We will not accept any conditions on TeleCheck's production. TeleCheck is obligated under the Rules and the Court's orders to produce the documents without conditions. We expect you to comply with such rules and orders.

Jamie McDole
Kirkland & Ellis LLP

|  |  |
|---|---|
| "Stamatios Stamoulis" <stamoulis@fr.com><br>02/24/2005 04:16 PM | To <jmcdole@kirkland.com><br>cc "Stamatios Stamoulis" <stamoulis@fr.com>, "Timothy Devlin" <tdevlin@fr.com><br>Subject LML-Telecheck - Document Production & Privilege |

1

Jamie,

We are in the process of re-reviewing a number of documents for production to LML that we initially designated as being potentially privileged. We believe that a number of these documents can be produced to LML so long as Telecheck's waiver of any privilege associated with those documents is strictly limited to the contents of those specific documents that are produced. Please let us know whether LML would agree to such a limitation on the waiver of Telecheck's privilege.

Thanks, Stam

&lt;font size=2 face="monospace,courier"&gt;
*************************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
*************************************************************
&lt;/font&gt;

# J

Attorney Client Privilege

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


CYTYC CORPORATION,            )
                              )
        Plaintiff,            )
                              )
v.                            )   C.A. No. 99-610-SLR
                              )
AUTOCYTE, INC.,               )
                              )
        Defendant.            )


MEMORANDUM ORDER

1. The question before the court in this discovery dispute is whether defendant, by relying on the opinions of counsel to respond to a claim of willful infringement, has waived not only its attorney-client privilege, but the protection afforded to attorney work product as well. Specifically, plaintiff has requested that the court require defendant to provide discovery as to "all opinions from any attorney concerning infringement or validity of the '571 patent, especially attorneys at Alston & Bird," as well as "all attorney-client communications and all attorney work product on the issues of validity and infringement of the '571 patent." (D.I. 195)

2. The parameters of discovery in the context of this inquiry were established in <u>Thorn EMI North America, Inc. v. Micron Tech., Inc.</u>, 837 F. Supp. 616 (D. Del. 1993). <u>Thorn</u> has

been interpreted by this judicial officer as focusing the scope of discovery on the alleged infringer's state of mind. Thus, discovery is appropriately directed to the exchange of information (including data, mental impressions, conclusions, opinions, or legal theories) between client and counsel, as well as

> facts relating to when [the client] sought the advice, what [the client] knew about [counsel's] independence, skill and competence to provide the opinions, what [the client] knew about the nature and extent of analysis performed by [counsel], and what [the client] knew and had concluded about the credibility, value and reasonableness of the opinions.

Id. at 621. In sum, counsel's work product generally is not relevant to a client's state of mind unless communicated to the client.

3. Plaintiff at bar argues that the instant case should be treated differently based on two facts: (1) the opinions were requested after the commencement of litigation; and (2) the opinions were rendered by attorneys in the same law firm as retained trial counsel.

4. As to the timing of the request, although this is a factor that should be considered in determining the reasonableness of the client's reliance, it does not itself constitute cause to expand the scope of the waiver.

5. The second factor is more troublesome. As the court understands the record, the attorneys who rendered the opinions received essentially all of the underlying data upon

2

which their opinions were based from their colleagues involved in the litigation. Indeed, there was no more than one exchange between opinion counsel and the client prior to the delivery of the opinions themselves.

6. Defendant represents that its obligations under Thorn have been satisfied by permitting plaintiff to depose opinion counsel and defendant's management about the opinions, and by providing to plaintiff all documentation underlying the formal opinions that were communicated to or by the client.

7. The court's primary concern is to ensure that the attorney-client privilege is not used as both a sword and a shield. Because in this case the court cannot differentiate between trial and opinion counsel,[1] the scope of the waiver is broadened to include all privileged communications between the client and trial counsel as to the subject matter of the formal opinion letters. Only by so expanding discovery can the reasonableness of defendant's reliance on the formal opinions be tested.

8. On the other hand, despite the unconventional (and risky) arrangement of having trial and opinion counsel work for the same law firm, the focus of the willfulness inquiry remains the same, that is, the client's state of mind. Therefore,

---

[1] There is no claim that a "Chinese wall" was established between opinion and trial counsel, nor is there any evidence of such a separation.

3

counsel's work product not shared with the client remains irrelevant and not discoverable.[2]

THEREFORE, at Wilmington this 13th day of September, 2000, IT IS ORDERED that plaintiff's request is granted in part and denied in part.

                                                  _____
                                                  United States District Judge

---

[2] Trial strategy likewise is not discoverable, as opposed to the substantive issues of infringement and validity.

4