IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP., <br><br> Plaintiff, <br><br> v. <br><br> TELECHECK SERVICES, INC., ELECTRONIC CLEARING HOUSE, INC., XPRESSCHEX, INC. and NOVA INFORMATION SYSTEMS, INC., <br><br> Defendants. | C.A. 04-858 (SLR) |

**DEFENDANTS' OPPOSITION TO LML'S MOTION FOR SUMMARY JUDGMENT NO. 6: FOR A RULING THAT CLAIMS 1, 2, 4, 5, 6, 9, 10, 11, 14, 16 AND 18 OF THE '988 PATENT ARE NOT INVALID FOR IMPROPER INVENTORSHIP UNDER 35 U.S.C. § 102(f)**

William J. Marsden (#2247)
Timothy Devlin (#4241)
Tara D. Elliott (#4483)
FISH & RICHARDSON P.C
919 N. Market Street, Suite 1100
Wilmington, DE  19899-1114

*Attorneys for*
 *TeleCheck Services, Inc.*

Richard D. Kirk. (#922)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, DE  19801

*Attorneys for*
*Nova Information Systems, Inc.*


Dated:  November 15, 2005

Collins J. Seitz, Jr. (#2237)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19801

*Attorneys for Electronic Clearing House,*
*Inc. and XpressChex, Inc.*

**TABLE OF CONTENTS**

**Page**

I. NATURE AND STAGE OF PROCEEDINGS ................................................... 1

II. SUMMARY OF ARGUMENT ........................................................................... 1

III. STATEMENT OF FACTS .................................................................................. 2

IV. ARGUMENT ....................................................................................................... 4

    A. Summary Judgment Standard ....................................................................... 4

    B. Improper Inventorship Pursuant to 35 U.S.C. § 102(f) ................................. 5

    C. LML's Arguments Regarding Defendants' Discovery
       Response Are Improper and Irrelevant ......................................................... 8

IV. CONCLUSION .................................................................................................. 11

## **TABLE OF AUTHORITIES**

**Page**

### **CASES**

*Canady v. Erbe Elektromedizin GmbH*,
  384 F. Supp. 2d 176 (D.D.C. 2005) ...................................................................................9

*Cleveland v. Porca Co.*,
  38 F.3d 289 (7th Cir. 1994) ................................................................................................9

*Gambro Lundia AB v. Baxter Healthcare Corp.*,
  110 F.3d 1573 (Fed. Cir. 1997) ..........................................................................................5

*Horowitz v. Federal Kemper Life Assurance Co.*,
  57 F.3d 300 (3d Cir. 1995) .................................................................................................5

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ...........................................................................................................5

*Pa. Coal Association v. Babbitt*,
  63 F.3d 231 (3d Cir. 1995) .............................................................................................5, 8

*Pannu v. Iolab Corp.*,
  155 F.3d 1344 (Fed. Cir. 1998) ..........................................................................................6

*Schulze v. Green*,
  136 F.3d 786 (Fed. Cir. 1998) ............................................................................................6

*Trans-World Manufacturing Corp. v. Al Nyman & Sons, Inc.*,
  750 F.2d 1552 (Fed. Cir. 1984) ..........................................................................................6

*Trebor Sportswear Co. v. Limited Stores, Inc.*,
  865 F.2d 607 (2d Cir. 1989) .......................................................................................10, 11

### **STATUTES**

35 U. S. C. § 102(f) ..............................................................................................1, 2, 5, 6, 9

Fed. R. Civ. P. 26(e) ...............................................................................................................10

Fed. R. Civ. P. 56(c) .................................................................................................................4

Fed. R. Civ. P. 56(e) .................................................................................................................9

I.  **NATURE AND STAGE OF PROCEEDINGS**

This is a patent infringement litigation initiated by LML Patent Corporation ("LML" or "Plaintiff") against defendants TeleCheck Services, Inc. ("TeleCheck"), Electronic Clearing House, Inc. ("ECHO"), XpressChex, Inc. ("XpressChex") and Nova Information Systems, Inc. ("Nova") (collectively, "Defendants"). The patent in suit is U.S. Patent No. 5,484,988 ("the '988 patent"). Fact and expert discovery has concluded, and claim construction briefing is complete.

On October 28, 2005, LML filed six summary judgment motions related to numerous issues in this matter. This memorandum is filed in opposition to LML Summary Judgment Motion No. 6, which relates to the affirmative defense raised by each of the Defendants in this matter that the '988 patent is invalid due to improper inventorship pursuant to 35 U.S.C. § 102(f). Trial for this matter is scheduled to occur in April 2006.

II. **SUMMARY OF ARGUMENT**

LML's motion seeking to overcome Defendants' inventorship defense is based on a misunderstanding of the law. In support of its argument, LML cites the standard for a claim of *derivation* under 35 U.S.C. § 102(f), and asserts that no facts exist to support the conclusion that some third party disclosed the entire invention of the '988 patent in enabling detail to Mr. Hills prior to his application for a patent. LML's argument misses the point that a patent is also invalid under Section 102(f) (as well as other statutory sections) if it does not accurately list all of the persons who *contributed* to the invention.

Defendants have submitted evidence, through interrogatory responses, deposition testimony, document productions and a third party declaration, that clearly and convincingly shows that Mr. Steven R. Carlson made an inventive contribution toward the '988 patent. It is undisputed that Mr. Carlson is a third party who is not named as an inventor on the '988 patent, and was never disclosed to the Patent Office as an inventor.

Based on the evidence in support of this defense developed during the discovery period, LML's motion for summary judgment should be denied.

## III. STATEMENT OF FACTS

In response to LML interrogatories related to the subject matter of this motion, Defendant TeleCheck alleged:

> The claims of the '988 patent are invalid under 35 U.S.C. § 102(f) because the inventors did not invent the subject matter of the '988 patent. Prior to the filing of the application leading to the '988 patent, Mr. Hills contacted Steven R. Carlson and obtained information regarding the subject matter of the '988 patent. This information was incorporated into the '988 patent.

(Ex. 3 to the Declaration of Leslie Smith filed in support of LML's Summary Judgment Motion No. 6 ("Smith Decl.") at 8, D.I. 331.) This interrogatory response followed from testimony on these very issues provided by Mr. Steven R. Carlson at his deposition on July 15, 2005.

In support of its opposition to LML's Summary Judgment Motion No. 6, Defendants submit the declaration of Mr. Carlson, dated November 11, 2005 (hereinafter "Carlson Decl."). Mr. Carlson testified to all the facts set forth in his declaration during his deposition, where he was questioned by LML's counsel Leslie Smith from Kirkland & Ellis. (Carlson Decl. at ¶ 21.) Mr. Carlson has also stated that he is prepared to further testify about the facts contained in his declaration at trial, if asked to do so. (*Id.*)

Mr. Carlson is the inventor of three United States patents that relate to point of sale check processing systems. (Carlson Decl. at ¶ 3.) As an inventor of a point of sale check processing system, Mr. Carlson spent considerable time in the late 1980's and early 1990's marketing his inventions. (Carlson Decl. at ¶ 9.) As part of his efforts to market his invention, Mr. Carlson spoke to numerous representatives of banks, financial institutions and payment processing companies in order to pitch his invention and try to

2

secure the necessary financial backing needed to bring his invention to market. (Carlson Decl. at ¶ 10.)

One of the individuals that contacted Mr. Carlson about his invention during that time period was Mr. Robert Hills, the first-named inventor on the '988 patent. (Carlson Decl. at ¶ 11.) Mr. Hills first called Mr. Carlson on April 21, 1992. (Carlson Decl. at ¶ 12.) He represented to Mr. Carlson that he was a marketing specialist from a firm named WTC in Florida. (*Id.*) During their conversation, Mr. Hills asked Mr. Carlson for detailed information concerning Mr. Carlson's patents. (Carlson Decl. at ¶ 13.) Mr. Hills represented himself as someone who was in a position to help Mr. Carlson secure the financial backing he had been seeking for his invention. (*Id.*)

During their conversation on April 21, 1992, approximately seven months *prior* to the earliest patent application leading to the '988 patent, Mr. Carlson disclosed precise details on how his point of sale check processing system functioned to Mr. Hills. (Carlson Decl. at ¶¶ 14-16.)

The details of Mr. Carlson's point of sale check processing system are contained in the documents attached to his declaration and were discussed during his deposition on July 15, 2005. (Carlson Decl. at ¶ 16.) For the Court's convenience, in his declaration, Mr. Carlson describes one implementation of his check processing system, which he disclosed to Mr. Hills on April 21, 1992. (*Id.*)

A review of Mr. Carlson's summary demonstrates that he disclosed nearly every feature of the '988 patent to Mr. Hills in a conversation that occurred approximately seven moths prior to Mr. Hill's application for a patent on an almost identical system. (Carlson Decl. at ¶ 9; *see also* Smith Decl. at Ex.1, claims 1-18 of '988 patent, D.I. 331).

3

During this litigation, LML has made a conclusory assertion of an invention date in January 1992, but LML has not identified any facts or documents in support of this assertion. (*See* LML's Supplemental Response to Interrogatory No. 5, Stam. Decl. Ex. A.)[1]

As part of his document production in this case, Mr. Carlson produced copies of notes and calendar entries that he created contemporaneously in April, 1992, which document Mr. Carlson's conversations with Mr. Hills. (Carlson Decl. at Ex. 5–6.) Mr. Carlson also gave deposition testimony where he testified that:

- Mr. Hills asked Mr. Carlson detailed questions about the Carlson invention in April 1992 (Stam. Decl. Ex. B at 135:15-135:18);

- Mr. Hills discouraged Mr. Carlson from further developing a check MICR reading system (*id.* at 144:10-145:1); and

- Mr. Carlson described details about the Carlson check processing system to Mr. Hills during those conversations seven months prior to the first patent application ever filed by Mr. Hills (*id.* at 157:18-157:24).

Finally, as part of his document production in this case, Mr. Carlson produced extensive documentation relating to the details of his invention that he disclosed to Mr. Hills during the April 1992 conversations. (Carlson Decl. at Ex. 4.)

## IV.   ARGUMENT

### A.   Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment should be granted only if a court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The

---

[1] Exhibits attached in the "Stam. Decl." refer to the Exhibits attached to the co-filed Declaration of Stamatios Stamoulis, filed in Support of Defendants' Opposition to LML's Summary Judgment Motion No. 6, dated November 15, 2005.

4

moving party bears the burden of proving that no genuine issue of material fact is in dispute. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). Once the movant has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)).

"Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir. 1995) (citations omitted). The Court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995) (citation omitted).

### B.    Improper Inventorship Pursuant to 35 U.S.C. § 102(f)

LML contends that it is entitled to summary judgment because the asserted claims of the '988 patent are not invalid due to improper inventorship under § 102(f). LML cites to *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1577 (Fed. Cir. 1997) for the proposition that "the party seeking to prove patent invalidity for improper inventorship" must prove "(1) prior conception of the patented invention by another; and (2) communication of the complete claimed invention, in enabling detail, to the patentee."

This is an incorrect reading of *Gambro*. Contrary to LML's assertion, *Gambro* sets forth the standard for proving patent invalidity on the narrow basis of **derivation**, which is just one basis for a finding of improper inventorship under Section 102(f).

5

*Gambro* does not set forth a standard for proving all bases of improper inventorship under 35 U.S.C. § 102(f).

One of those additional bases is the failure to identify as inventors *all persons who provided an inventive contribution to the invention*. Section 102(f) provides, in pertinent part that: "A person shall be entitled to a patent unless . . . he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f) (2000). This statutory provision has been interpreted to require that a patent accurately list the correct inventors of a claimed invention. "Since the word 'he' refers to the specific inventive entity named on the patent, *this subsection mandates that a patent accurately list the correct inventors of a claimed invention*." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998) (citations omitted).[2]

Absent the proper inventive "entity" named on a patent, the patent can and should be invalidated. *See id.*; *see also Schulze v. Green,* 136 F.3d 786, 792 (Fed. Cir. 1998) (permitting a third-party to challenge patentability under § 102(f) based on an assertion of misjoinder); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1562 (Fed. Cir. 1984) (stating that a jury's conclusion of invalidity, based on findings that the sole named inventor had in fact co-invented the claimed design and "deceptively intended not to disclose that coinventorship in its application to the Patent Office . . . reflected the bar in 35 U.S.C. § 102(f) against the issue of a patent to an applicant who 'did not himself invent the subject matter sought to be patented'"). Accordingly, "if nonjoinder of an actual inventor is proved by clear and convincing evidence, a patent is rendered invalid" under Section 102(f). *Pannu*, 155 F.3d at 1349 (citations omitted).

---

[2] Unless otherwise indicated, emphasis in this Brief has been added.

Here, Mr. Carlson has provided the Court with the type of clear and convincing evidence on which a jury is entitled to rely. His deposition testimony and documents produced in this case outline the extensive information he disclosed to Mr. Hills seven months prior to the initial application filing that led to the '988 patent. Mr. Carlson's declaration summarizes this evidence for the Court. Specifically, Mr. Carlson states that he disclosed to Mr. Hills a system that functions as follows:

a. A consumer presents a check to a cashier for payment of goods or services;

b. The cashier scans the check through a terminal that is capable of reading the MICR line off of the check;

c. The MICR contains the serial number of that check. The entire serial number of the check is read off the MICR line, including account number, routing and transit numbers, and the check number;

d. The terminal located at the retailer has means of connecting to a central computer network and contains information identifying that specific retailer to the central computer network;

e. The cashier enters the amount of the transaction on the terminal keypad;

f. The customer confirms the amount of the transaction on the terminal keypad by means of an "OK" button;

g. The terminal dials up into a centralized computer network system and transmits the check serial number, the retailer identifying information, and the amount of the transaction to the central computer network;

h. The central computer network performs a real time inquiry into the consumer's bank account to verify the presence of funds necessary to complete the transaction;

i. If sufficient funds are present in the consumer's bank account, the central computer system then initiates the transfer of funds from the consumer's bank account to the retailer's bank account;

j. Once the funds have been transferred, the central computer system sends a signal to the terminal indicating that the transaction was completed successfully;

      k.        The cashier then cancels the consumer's blank check by stamping it void and printing the amount of the transaction on the check;

      l.        The cashier then returns the consumer's voided check to the consumer. The check is not retained by the retailer, deposited or ever physically enters the banking system.

(Carlson Decl. at ¶ 16.) This single embodiment discloses almost every element claimed in the '988 patent. It is evidence that must be viewed in a light "most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231 at 236.

Based on the extensive disclosures made by Mr. Carlson to Mr. Hills, and the timing of Mr. Hills's patent application in relation to those disclosures, it is reasonable for a jury to find by clear and convincing evidence that Mr. Carlson provided an inventive contribution to the '988 patent.

      **C.**      **LML's Arguments Regarding Defendants' Discovery Response Are Improper and Irrelevant**

LML urges the Court to adopt an unprecedented standard in its review of evidence relevant to this summary judgment motion, yet cites to no law in support of its position. Specifically, LML argues that a "party that, without substantial justification, fails to amend or supplement a prior response to discovery or expert disclosures pursuant to Rule 26(e) before the close of discovery is not permitted to use the information as evidence at trial or on a motion for summary judgment." (LML's Memorandum in Support of Summary Judgment No. 6 at 4, D.I. 330). LML further cites to Rule 37(c)(1) in support of this proposition of law.

In its brief, LML never identifies what "information" it has in mind for this assertion, perhaps preferring to hide the ball until its Reply. What is clear is that LML's opening brief does not even acknowledge the existence of Mr. Carlson's deposition testimony or the numerous documents he produced, much less provide any basis for precluding that evidence.

8

Contrary to LML's suggestion, evidence supporting a defense under § 102(f) is properly before the Court.  Defendant TeleCheck provided LML with a detailed interrogatory response on the facts at issue in this motion.  Specifically, TeleCheck stated to LML that:

> The claims of the '988 patent are invalid under 35 U.S.C. § 102(f) because the inventors did not invent the subject matter of the '988 patent.  Prior to the filing of the application leading to the '988 patent, Mr. Hills contacted Steven R. Carlson and obtained information regarding the subject matter of the '988 patent.  This information was incorporated into the '988 patent.

(Smith Decl. Ex. 3 at 8, D.I. 331.)

Mr. Carlson's own testimony and documents were provided during discovery, and his declaration submitted in support of this motion is also properly before the Court.  Mr. Carlson asserts no new facts in his declaration that have not already been disclosed to LML, either in TeleCheck's interrogatory responses or through Mr. Carlson's deposition testimony and document production.  (Carlson Decl. at ¶ 21.)  Further, Mr. Carlson has made himself available as a trial witness, allowing LML yet another opportunity to cross examine him, to the extent LML feels the need to do so.  (*Id.*)

Under these circumstances, the Court may properly consider the affidavit of Mr. Carlson in deciding this motion.  *See Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994) (citing Fed. R. Civ. P. 56(e), for the proposition that when affidavits are used to support or oppose a summary judgment motion, they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); *Canady v. Erbe Elektromedizin GmbH*, 384 F. Supp. 2d 176, 182  (D.D.C. 2005) (refusing to strike a declaration containing new evidence submitted in opposition to a summary judgment motion and finding that the court was "unconvinced by the plaintiffs' argument of undue 'surprise' to support the motion to strike.").

9

Indeed, nothing in LML's motion supports its requested relief. LML mischaracterizes Rules 26 and 37 in asserting that "[a] party that, without substantial justification, fails to amend or supplement a prior response to discovery or expert disclosures pursuant to Rule 26(e) **before the close of discovery** is not permitted to use the information as evidence at trial or on a motion for summary judgment." Neither Federal Rule includes this language. Rule 26 actually *requires* supplementation of discovery, Fed. R. Civ. P. 26(e), while Rule 37 prohibits use of information if a party fails to supplement as required by Rule 26(e).

LML's cited case law likewise fails to support its assertion, nor is any such case law even relevant here given Defendants' and Mr. Carlson's timely disclosure of information. (Smith Decl. Ex. 3 at 8 .) For example, LML cites to *Kalis v.Colgate-Palmolive* as "denying request for additional discovery to oppose motion for summary judgment." Additionally, LML cites *Trebor Sportswear Co. v. Limited Stores, Inc*., 865 F.2d 607 (2d Cir. 1989) as "denying further discovery when the party opposing summary judgment had a 'fully adequate opportunity for discovery.'" (LML Memorandum in Support of Summary Judgment Motion No. 6 at 4, D.I. 330) Neither of these cases are relevant here. TeleCheck has not and does not seek further discovery to oppose LML's summary judgment motion. TeleCheck's discovery responses, Mr. Carlson's documents, testimony and Declaration, and Defendants' expert disclosures each set forth facts from which a reasonable jury could find invalidity under § 102(f).

LML's other cited cases are also irrelevant. According to LML, these cases relate to situations in which a party "failed to disclose identity of expert and the substance of his testimony until five months after retaining him and over three months after the close of an extended period of discovery" and where an expert was "not disclosed until after the close of discovery, and plaintiff failed to seasonably supplement its interrogatory responses to identify the expert in a timely manner pursuant to Rule 26(e) of the Federal

10

Rules of Civil Procedure." (*Id.* at 4–5, D.I. 330). As set forth above, none of these factors are present here.

## V. CONCLUSION

For the foregoing reasons, LML's Summary Judgment Motion No. 6: For a Ruling That Claims 1, 2, 4, 5, 6, 9, 10, 11, 14, 16 and 18 of the '988 Patent Are Not Invalid For Improper Inventorship Under 35 U.S.C. § 102(f) should be denied.

Dated: November 15, 2005

FISH & RICHARDSON P.C.

By:   /s/ *Stamatios Stamoulis*
    William J. Marsden, Jr. (#2247)
    Timothy Devlin (#4241)
    Stamatios Stamoulis (#4606)
    Tara D. Elliott (#4483)
    919 N. Market Street, Suite 1100
    Wilmington, DE 19801
    302-652-5070

*Attorneys for Defendant*
*TeleCheck Services, Inc.*

THE BAYARD FIRM

By:  /s/ *Richard D. Kirk*
    Richard D. Kirk (#922)
    222 Delaware Avenue, Suite 900
    Wilmington, DE 19801
    302-429-4208

*Attorneys for Defendant*
*NOVA Information Systems, Inc.*

CONNOLLY BOVE LODGE & HUTZ LLP

By:   /s/ *Collins J. Seitz, Jr.*
    Collins J. Seitz, Jr. (#2237)
    The Nemours Building
    1007 N. Orange Street
    Wilmington, DE 19801
    302-658-9141

*Attorneys for Defendants Electronic*
*Clearing House, Inc. and XpressChex, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2005, I electronically filed and hand delivered DEFENDANTS' OPPOSITION TO LML'S MOTION FOR SUMMARY JUDGMENT NO. 6. This electronically filed document was filed with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

**ECF NOTICE & HAND DELIVERY**
Richard K. Herrmann, Esq.
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19899

**ECF NOTICE & HAND DELIVERY**
Collins J. Seitz, Jr., Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19801

**ECF NOTICE & HAND DELIVERY**
Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

I also certify that on November 15, 2005, the above-document was e-mailed and sent by First Class mail to the following non-registered participants:

**EMAIL & 1ST CLASS MAIL**
Robert Jacobs, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045
rjacobs@bjtlaw.com

**EMAIL & 1ST CLASS MAIL**
Russell E. Levine, Esq.
Kirkland & Ellis LLP
200 E. Randolph Dr.
Chicago, IL 60601
rlevine@kirkland.com

**EMAIL & 1ST CLASS MAIL**
Mark C. Scarsi, Esq.
O'Melveny & Myers LLP
400 S Hope Street
Los Angeles, CA 90071
mscarsi@omm.com

                                              _/s/ Stamatios Stamoulis_
                                              Stamatios Stamoulis