

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-858 SLR |
| ) | |
| TELECHECK SERVICES, INC., ) | |
| ELECTRONIC CLEARING HOUSE, INC., ) | |
| XPRESSCHEX, INC., and ) | |
| NOVA INFORMATION SYSTEMS, INC. ) | |
| ) | |
| Defendants. ) | |

## LML PATENT CORP.'S FIRST SET OF SUPPLEMENTAL RESPONSES AND OBJECTIONS TO TELECHECK SERVICES INC.'S INTERROGATORY NOS. 5, 6, 12, 13 AND 15

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rule 26.1 of the Local Rules of the United States District Court for the District of Delaware, LML Patent Corp. ("LML") submits the following responses and objections to TeleCheck Services, Inc.'s ("TeleCheck") First Set of Interrogatories:

## GENERAL OBJECTIONS

LML incorporates by reference the General Objections set forth in its Objections and Responses to TeleCheck's First Set of Interrogatories, as if fully set forth herein.

## SPECIFIC OBJECTIONS AND RESPONSES

## TELECHECK INTERROGATORY NO. 5:

For each claim identified in response to Interrogatory No. 1, state the alleged date of invention, including the dates of conception and reduction to practice of any invention encompassed by the claim.

## RESPONSE TO TELECHECK INTERROGATORY NO. 5:

LML objects to this interrogatory on the grounds that it is an improper attempt to shift the burden of proof. *In re Vitamins Antitrust Litigation*, 120 F.Supp.2d 45, 57 (D.D.C. 2000) (sustaining a party's objection to an interrogatory because responding would "eliminate the burden-shifting procedure" established on the topic at issue and force the wrong party to carry the burden). It seeks to require LML to address an issue for which TeleCheck bears the burden of proof, namely invalidity, before TeleCheck has fully set forth whether, and if so why, it asserts that the patents-in-suit are invalid based on one or more prior art references. Because the patents-in-suit are presumed to comply with 35 U.S.C. §§ 102 and 103, LML also objects to this interrogatory on the grounds that it seeks irrelevant information. Indeed, the constructive dates of conception and reduction to practice for the patents-in-suit are the filing date of each respective patent. *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998) (holding that the filing of a patent application serves as conception and constructive reduction to practice of the subject matter described in the application). TeleCheck has not set forth any basis requiring LML to pre-date these constructive dates of conception and reduction to practice. *Brown v. Barbacid*, 276 F.3d 1327, 1332 (Fed. Cir. 2002) (actual conception and reduction to practice are issues of priority); *Eaton v. Evans*, 204 F.3d 1094, 1097 (Fed. Cir. 2000) (actual conception and reduction to practice are "constituent issues" of priority).

## FIRST SUPPLEMENTAL RESPONSE TO TELECHECK INTERROGATORY NO. 5:

Subject to and without waiving its General and Specific Objections, LML responds as follows:

2

### U.S. Patent No. 5,484,988

The subject matter described in the asserted claims of the '988 patent was conceived no later than January 9, 1992 and reduced to practice no later than November 13, 1992.  Inventors Robert Hills and Henry Nichols, as well as, Jon Roberts and John Abokhair, may have knowledge of the foregoing.

### U.S. Patent No. 6,164,528

The subject matter described in the asserted claims of the '528 patent was conceived and reduced to practice no later than December 31, 1996.  Inventors Robert Hills and Henry Nichols, as well as, Jon Roberts and John Abokhair, may have knowledge of the foregoing.

### U.S. Patent No. 6,283,366

The subject matter described in the asserted claims of the '366 patent was conceived and reduced to practice no later than December 31, 1996.  Inventors Robert Hills and Henry Nichols, as well as, John Abokhair, may have knowledge of the foregoing.


### TELECHECK INTERROGATORY NO. 6:

Describe all testing and/or analysis which LML has done or has had done on any of TeleCheck's products or services, including but not limited to those accused of infringement in paragraph 19 of the complaint, and identify all persons involved therewith.

### RESPONSE TO TELECHECK INTERROGATORY NO. 6:

LML objects to this interrogatory on the grounds that it calls for information protected from discovery by the attorney-client privilege and/or the attorney work-product doctrine.

Subject to and without waiving its General and Specific Objections, LML states that the non-privileged portion of the answer to this interrogatory may be derived or ascertained from business records in the possession, custody or control of LML, and the burden of deriving or ascertaining the non-privileged portion of the answer to this interrogatory is substantially the

3

same for TeleCheck as it is for LML.  Therefore, pursuant to Rule 33(d) of the Federal Rules of

Civil Procedure, LML will produce documents from which the non-privileged portion of the

answer to this interrogatory may be derived or ascertained.

### FIRST SUPPLEMENTAL RESPONSE TO TELECHECK INTERROGATORY NO. 6:

Subject to and without waiving its General and Specific Objections, LML responds by

referring TeleCheck to documents, including but not limited to LML_EP_001479-001630;

009943-009946; 009991-010044 from which the non-privileged portion of the answer to this

interrogatory may be derived or ascertained.


### TELECHECK INTERROGATORY NO. 12:

Identify each litigation, arbitration, and/or administrative proceeding (excluding
prosecution before the U.S. Patent and Trademark Office relating to the patents-in-suit), which
involved any of the patents-in-suit, any foreign counterpart and/or any related patent.

### RESPONSE TO TELECHECK INTERROGATORY NO. 12:

Subject to and without waiving its General Objections, LML states that the answer to this

interrogatory may be derived or ascertained from business records in the possession, custody or

control of LML, and the burden of deriving or ascertaining the answer to this interrogatory is

substantially the same for TeleCheck as it is for LML.  Therefore, pursuant to Rule 33(d) of the

Federal Rules of Civil Procedure, LML will produce documents from which the answer to this

interrogatory may be derived or ascertained.

### FIRST SUPPLEMENTAL RESPONSE TO TELECHECK INTERROGATORY NO. 12:

Subject to and without waiving its General and Specific Objections, LML responds by

referring TeleCheck to documents, including but not limited to LML_EP_004205-005293;

4

005961-006367; 006749-006982; 007005-007237; 007259-007295; 016459-016691; 016741-016798 from which the answer to this interrogatory may be derived or ascertained.

**TELECHECK INTERROGATORY NO. 13:**

Identify each company (other than Defendants in the instant litigation) which LML has threatened with infringement and/or put on notice of possible infringement of the patents-in-suit, and identify all correspondence between LML and/or its attorneys or agents and each said company and/or its attorneys or agents.

**RESPONSE TO TELECHECK INTERROGATORY NO. 13:**

LML objects to this interrogatory to the extent it calls for information protected from discovery by the attorney-client privilege and/or the attorney work-product doctrine.

Subject to and without waiving its General and Specific Objections, LML states that there are no such companies. LML, however, has sent letters to numerous companies inviting them to enter into license negotiations with LML. Pursuant to Rule 33(d), copies of such letters will be produced as will copies of any response letters and other correspondence between LML and each such company.

**FIRST SUPPLEMENTAL RESPONSE TO TELECHECK INTERROGATORY NO. 13:**

Subject to and without waiving its General and Specific Objections, LML responds by referring TeleCheck to LML's correspondence with companies regarding LML's invitation to enter into license negotiations, including but not limited to LML_EP_009708-009772; 009789-009895; 009950-009964; 010045-010071.

**TELECHECK INTERROGATORY NO. 15:**

Describe all efforts by LML to comply with the marking requirements of 35 U.S.C. § 287, including identifying each of LML's products or services sold in the United States which

5

were or are marked with the number of any of the patents-in-suit, and including the dates on which such products or services were marked.

**RESPONSE TO TELECHECK INTERROGATORY NO. 15:**

LML objects to this interrogatory on the grounds that it is irrelevant and misleading because it implies that LML had an obligation to mark. LML further objects to this interrogatory on the grounds that it assumes facts that are not true, namely that LML makes and sells products or services. LML does not make, sell or offer for sale any products or services.

Subject to and without waiving its General and Specific Objections, LML states that the patents-in-suit involve system or method claims and therefore the patents-in-suit are not subject to 35 U.S.C. § 287's notice provision.

**FIRST SUPPLEMENTAL RESPONSE TO TELECHECK INTERROGATORY NO. 15:**

LML objects to this interrogatory on the grounds that it is irrelevant and misleading because it implies that LML had an obligation to mark. LML further objects to this interrogatory on the grounds that it assumes facts that are not true, namely that LML makes and sells products or services. LML does not make, sell or offer for sale any products or services.

Subject to and without waiving its General and Specific Objections, LML states that the patents-in-suit involve system or method claims and therefore the patents-in-suit are not subject to 35 U.S.C. § 287's notice provision.

Notwithstanding the above, LML states that LML Payment Systems, Inc. does not affix any patent number to its point of sale electronic check conversion system.

6

Dated:  January 31, 2005

Richard K. Herrmann #405
Mary B. Matterer #2696
BLANK ROME LLP
1201 North Market Street, Suite 800
Wilmington, Delaware  19801
(302) 425-6400

Russell E. Levine, P.C.
Jamie H. McDole
Edward K. Runyan
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
(312) 861-2000

Attorneys for LML Patent Corp.

7

**B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LML PATENT CORP.,                    )
                                     )
                     Plaintiff,      )
                                     )
        -vs-                         ) C.A. 04-858 (SLR)
                                     )
TELECHECK SERVICES, INC.,            )
ELECTRONIC CLEARING HOUSE, INC.,     )
XPRESSCHEX, INC., and NOVA           )
INFORMATION SYSTEMS, INC.,           )
                                     )
                     Defendants.     )

TRANSCRIPT OF VIDEOTAPED

DEPOSITION OF STEVEN R. CARLSON

Taken At
Executive Conference Room
Radisson Inn
Bismarck, North Dakota
July 15, 2005

(APPEARANCES AS NOTED HEREIN)

135

1       Q.    It's in the box here on the side.

2       A.    That obviously came from Mr. Hills too, or

3  this conversation.  Maybe it was -- I don't know.

4  I can't make that connection.  He might have -- I

5  never knew there was a Columbus Bank & Trust until     12:35:46

6  this conversation.  I don't know what we talked

7  about with that one.

8       Q.    Why did Mr. Hills -- strike that.  Did

9  Mr. Hills ask you to phone -- ask you to phone him

10 back after this conversation?                          12:36:00

11      A.    I don't recall that.  I don't know.

12      Q.    Did he ask you to send him copies of your

13 patents during this conversation?

14      A.    Oh, I don't know.

15      Q.    Did he ask you detailed questions about    12:36:26

16 any of your three patents during this conversation

17 on April 21st?

18      A.    Quite a few.

19            MS. SMITH:  Objection, leading.

20            THE WITNESS:  Quite a few.                  12:36:38

21      Q.    (MS. MACK CONTINUING)  Do you remember any

22 of those specifically?

23      A.    No, but --

24            MS. SMITH:  Objection, calls for

25 speculation.                                           12:36:42

144

```
 1    guys called their device.  I don't know.  Then it
 2    says -- and over there it says:  Is now back
 3    burnered.  I wouldn't have known that by myself,
 4    and so I wrote it down because I thought it might
 5    be useful for us.  And I think maybe -- I think      14:09:14
 6    maybe -- maybe I was trying to be discouraged from
 7    pursuing MICR because -- I don't know.
 8         MS. SMITH:  Objection.  Move to strike as
 9    nonresponsive.
10         Q.  (MS. MACK CONTINUING)  Did you feel like    14:09:34
11    Mr. Hills was trying to discourage you from
12    developing a MICR system?
13         MS. SMITH:  Objection, calls for
14    speculation, lacks foundation.
15         Q.  (MS. MACK CONTINUING)  You can answer.      14:09:42
16         A.  I guess that's where I was going.  It kind
17    of -- that's -- we were in a very defensive mode.
18    You know what I'm saying?  We were protecting
19    ourselves, and yet I was reaching out trying to
20    find something that could help us.  And if I         14:09:56
21    thought something was threatening, I would have
22    written it down.  And if I thought something was
23    prospective, I would have written it down.  I mean,
24    anything that would help our cause one way or
25    another, I would have written it down.  And that's   14:10:08
```

145

1    why these particular notes are here.

2        Q.    Did Mr. Hills tell you that VeriFone is

3    developing a very poor MICR system?

4        A.    Well, obviously he did because it's here,

5    and I had no idea they were doing that.  How would    14:10:26

6    I know?  I'm in North Dakota.  I'm not in the --

7    exactly in the loop.

8        Q.    And what did you mean when you wrote "is

9    now back burnered"?

10        MS. SMITH:  Objection, document speaks for    14:10:38

11    itself, asked and answered.

12        THE WITNESS:  Well, I got from the

13    conversation that they were developing a very poor

14    MICR system and they kind of decided to put it on

15    the back burner, not worry about it, not pursue it    14:10:50

16    too hard for a while, because back burnered means

17    put it off for a while, table it for a while.

18        Q.    (MS. MACK CONTINUING)  Okay.  Aside from

19    what is on this page, do you recall any additional

20    details of your discussion on this day with    14:11:04

21    Mr. Hills?

22        A.    Not really, no.

23        Q.    Okay.  Let's go to Exhibit 28.  Could you

24    read the first four lines on Exhibit 28 aloud?

25        A.    Bob Hills, director of marketing, WTC    14:11:38

157

1          MS. SMITH:  Objection, lacks foundation,

2     calls for speculation.

3          Q.   (MS. MACK CONTINUING)  You can answer.

4          A.   Why was he calling me?

5          Q.   Mm-hmm.  What capacity did he tell you he      14:24:34

6     was calling you in?

7          MS. SMITH:  Objection.

8          THE WITNESS:  Well, the note on the

9     other -- on 27, it says he identified himself as

10    the director of marketing.                              14:24:44

11         Q.   (MS. MACK CONTINUING)  On 28, how did he

12    identify himself?

13         A.   On 28?  Well --

14         MS. SMITH:  Same objections.

15         THE WITNESS:  I suppose I said, Oh, this           14:24:54

16    is Bob Hills, and I said, I just talked to him a

17    few days ago or whatever, and I probably made the

18    same connection, he's a marketing guy.  And being a

19    marketing guy, I would have told him all the cool

20    things about our device because maybe he could use     14:25:06

21    this information to help sell our stuff to maybe

22    these VeriFone people or something.  I didn't know

23    where he was going with it.  I mean, he came at me

24    like a marketing guy.

25         MS. SMITH:  Move to strike witness's               14:25:18