**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LML PATENT CORP. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  04-858-SLR |
| vs. | ) | |
| | ) | |
| TELECHECK SERVICES, INC. | ) | |
| ELECTRONIC CLEARING HOUSE, INC., | ) | |
| XPRESSCHEX, INC., AND | ) | |
| NOVA INFORMATION SYSTEMS, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**LML'S RESPONSE TO TELECHECK'S OBJECTIONS TO
THE SPECIAL DISCOVERY MASTER'S OCTOBER 25, 2005 RULINGS**

Dated:  November 17, 2005

Richard K. Herrmann #405
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware  19801
(302) 888-6800
rherrmann@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
(312) 861-2000

*Attorneys for Plaintiff LML Patent Corp.*

## Table of Contents

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF RELEVANT FACTS ...............................................................2

        A.    TeleCheck's Improper Withholding Of Documents On The Basis Of
              Privilege ....................................................................................................2

        B.    Proceedings Before The Special Master ....................................................4

III.    ARGUMENT .........................................................................................................8

        A.    Legal Standards..........................................................................................8

              1.    *Privilege Logs* .............................................................................8
              2.    *Waiver as a result of relying on advice of counsel* .....................9

        B.    The Special Master Correctly Ordered TeleCheck To Produce
              Approximately 260 Documents From Its Privilege Log With The
              Inadequate And Cursory Description "Re Business Operations"........................10

              1.    *The Special Master properly concluded that TeleCheck's cursory
                    descriptions of "re business operations" was inadequate to
                    support its claims of privilege* .................................................10
              2.    *TeleCheck has waived any privilege/immunity associated with
                    these documents* .......................................................................13
              3.    *TeleCheck's bad faith* ..............................................................14

        C.    The Special Master Correctly Ordered TeleCheck To Produce
              Approximately 23 "Concord Documents" As They Undisputedly Relate
              To The Same Subject Matter As TeleCheck's Opinions Of Counsel....................15

        D.    The Special Master Correctly Ordered TeleCheck To Produce Documents
              Identified As PR 2504 and PR 4652. ...................................................16

              1.    *Document PR 2504* ...................................................................16
              2.    *Document PR 4652* ...................................................................17

IV.     CONCLUSION.....................................................................................................18

## Table of Authorities

**Cases**

*Black v. Sheraton*,
   371 F. Supp. 97 (D.D.C. 1974) ........................................................................ 8

*Caruso v. Coleman Co.*,
   1995 WL 384602 (E.D.Pa. June 22, 1995) ...................................................... 12

*CSX Transp. Inc. v. Admiral Ins. Co.*,
   1995 WL 855421 (M.D.Fla. July 20, 1995) .................................................... 12

*Diamond State Ins. Co. v. Rebel Oil Co., Inc.*,
   157 F.R.D. 691 (D. Nev. 1994) ........................................................................ 12

*E.I. DuPont Nemours v. Millenium Chem. Inc.*,
   C.A. No. 97-237-SLR, slip op. (D. Del., Apr. 14, 1999) .................................. 2

*Fort James Corp. v. Solo Cup Co.*,
   412 F.3d 1340 (Fed. Cir. 2005) ........................................................................ 9

*In re Lomas Financial Corp.*,
   1999 WL 33495524 (Bankr.D.Del. 1999) ........................................................ 8

*International Paper Co. v. Fibreboard Corp.*,
   63 F.R.D. 88 (D. Del. 1974) .............................................................................. 8

*Medtronic, Inc. v. Guidant Corp. et al.*,
   C.A. No. 03-848-SLR, Memorandum Order (D. Del., Oct. 25, 2004) .............. 9

*Mosel Vitelic Corp. v. Micron Tech., Inc.*,
   162 F. Supp. 2d 307 (D. Del. 2000) .................................................................. 9

*Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*,
   206 FRD 396 (D. Del. 2002) ............................................................................. 9

*Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*,
   837 F. Supp. 616 (D. Del. 1993) ....................................................................... 9

*Tulip Computers Intern., B.V. v. Dell Computer Corp.*,
   210 F.R.D. 100 (D. Del. 2002) .......................................................................... 8

*U.S. Philips Corp. v. U.S.*,
   177 USPQ 12 (Ct. Cl. 1972) ............................................................................. 8

*Willemijn Houdstermaatschaapij, B.V. v. Apollo Computer Inc.*,
   707 F. Supp. 1429 (D. Del. 1989) ..................................................................... 8

**Rules**

Federal Rule of Civil Procedure 26(b)(5) ........................................................................... 8

Federal Rule of Civil Procedure 53 .................................................................................... 1

## I.     INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 53, LML hereby responds to Defendant TeleCheck Services, Inc.'s (TeleCheck's") Objections To The Special Discovery Master's October 25, 2005 Rulings.  But, despite TeleCheck's arguments, the Special Master -- after numerous letters and briefs, several hearings discussing the issues, and *in camera* review -- properly concluded that TeleCheck's claims of privilege were either not supported or waived.

First, the Special Master properly found that TeleCheck's privilege log failed to adequately support its claim of privilege with respect to approximately 260 documents (Ex. C to TeleCheck's Objections) on its privilege log.   Indeed, with respect to these documents, TeleCheck's privilege log only provided the cursory description: "legal advice from an attorney re business operations" or similar description.  Moreover, TeleCheck voluntarily produced ***over 500 hundred documents*** from its privilege log with this ***identical or virtually identical description***, thus waiving any privilege that might be associated with such documents.  The Special Master correctly ordered these documents produced.

Second, the Special Master properly ordered TeleCheck to produce 23 documents (Ex. E to TeleCheck's Objections) constituting opinions of counsel relating to the patent-in-suit. TeleCheck does not dispute that these documents relate to the same subject matter as the opinions of counsel on which TeleCheck relies in this case and which TeleCheck voluntarily produced.  Moreover, TeleCheck relies on a myriad of opinions in this case, ranging in dates from 1997 to 2001 to after LML initiated this litigation in 2004.  Thus, these disputed documents fall squarely in the time frame that TeleCheck was "evaluating the patent and its conduct in

relation thereto."[1]   The Special Master correctly ordered these documents produced.

Third, TeleCheck argues that two documents fall outside their scope of waiver because they allegedly relate to patents not at issue.  But, the Special Master held one document was not entitled to any privilege status at all (and did not base his ruling on waiver).  With respect to the second document, the Special Master examined the document *in camera* and determined that the document fell within TeleCheck's scope of waiver.  Indeed, while TeleCheck contends that these documents do relate to this case, TeleCheck's descriptions on its privilege log make no such distinction -- instead the privilege log merely describes the document's subject matter as "correspondence from attorney containing legal advice re prior art patent" and "correspondence drafted at the direction of an attorney re claim construction."  TeleCheck agreed to live by these descriptions at the May 2, 2005 hearing with the Court when the parties requested that the Court appoint a Special Master.  The Special Master correctly ordered these documents produced.

## II.    STATEMENT OF RELEVANT FACTS

TeleCheck's description of the nature and stage of the proceedings and statement of the facts is wholly inadequate and misleading, and therefore, LML provides a complete description of the relevant facts.

### A.    TeleCheck's Improper Withholding Of Documents On The Basis Of Privilege

On July 14, 2004, LML filed this suit claiming that the four Defendants, including TeleCheck, infringed three LML patents and further claiming that such infringement was willful. (Docket Entry 1).  On October 22, 2004, the Court issued a Scheduling Order pursuant to which

---

[1] *See E.I. DuPont Nemours v. Millenium Chem. Inc.*, slip op. at 2 (1999).  TeleCheck misquotes this case in its brief, significantly changing the tense of the Court's statement to fit their argument.

document production would close by March 4, 2005 and fact discovery would close by July 16, 2005.  (Docket Entry 35).  The Court also set a deadline of April 29, 2005 for Defendants to notify LML whether they intended to rely on the advice of counsel and "produce all documents within the scope of Defendants' waiver of privilege (as set forth by applicable case law) on or about April 29, 2005."  (*Id.*).

On April 6, 2005, TeleCheck produced, for the first time in discovery (and despite the Court's deadlines), a privilege log containing thousands of entries and claims of privilege.  However, TeleCheck's claims of privilege were wholly deficient for several reasons.  First, several hundred of the documents identified on TeleCheck's privilege log contained the cursory description of "re business operation" or similar language -- a description that did not allow LML to evaluate TeleCheck's claim of privilege.  Second, numerous documents identified on TeleCheck's privilege log lacked the identification of any author or recipient, let alone an attorney.  Third, many of the documents identified on TeleCheck's privilege log were provided to third parties and thus, were not entitled to any protection.  On April 26, 2005, LML informed TeleCheck of these deficiencies, but TeleCheck refused to produce the documents requested by LML.  (Ex. A, April 26, 2005 Letter From J. McDole to T. Devlin)

On April 29, 2005, in accordance with the Court's Scheduling Order, TeleCheck informed LML of its decision to rely on advice of counsel, and provided LML with a revised privilege log.  But, TeleCheck failed to produce "all documents within the scope of Defendants' waiver of privilege."  LML again informed TeleCheck of these deficiencies, but TeleCheck in response only produced a small fraction of the requested documents.  (Ex. B, May 19, 2005 Letter from J. McDole to T. Devlin).

Of those documents, TeleCheck produced at least four opinions of counsel relating to the validity and infringement of LML's patents.[2]  TeleCheck's opinions range in date from 1997 to 2001 to even *after* LML filed the present suit in 2004.  Specifically, TeleCheck received the following opinions:

- a March 3, 1997 opinion letter from Sue Shaper, Esq. to Cynthia Somerville and Ken Algiene regarding validity;

- an October 12, 2001 opinion letter from Ron Laurie, Esq. to Randy Templeton regarding infringement;

- a September 23, 2004 opinion letter from Frederick Kim, Esq. to Steven Geiler regarding validity; and

- a November 30, 2004 opinion letter from Frederick Kim, Esq. to Steven Geiler regarding infringement

TeleCheck also produced some documents from these same time periods relating to the same subject matter as these opinions.  Yet, TeleCheck continued to withhold numerous documents that fell within its scope of waiver as a result of relying on advice of counsel.  TeleCheck also continued to maintain claims of privilege associated with hundreds of documents on its privilege log described only as "legal advice from an attorney re business operations" or similar description.  (Ex. C, TeleCheck July 28, 2005 Privilege Log).

### B.    Proceedings Before The Special Master

On May 2, 2005, the parties appeared before the Court, with one of the agenda items relating to TeleCheck's deficient privilege log.  (Docket Entry 136).  However, just before the hearing, counsel for all parties agreed to recommend and accept a Special Master to decide issues

---

[2] For sake of brevity, LML does not attach such opinions, as it is undisputed that the opinions relate to both validity and infringement.

pertaining to the parties' privilege logs.  (Ex. D, May 2, 2005 Hearing Tr. at 5-7).  In particular,

the parties agreed to the Court's appointment of the Special Master as follows:

> LML has agreed, and I think all of the defendants have agreed, that
> if Your Honor is inclined to put a discovery master in place, that
> that discovery master can take the privilege logs **as they**
> **substantially exist today**, with a minor addition that TeleCheck
> will put on the record and decide whether they're complete,
> whether they're adequate, whether there's waiver, what's the scope
> left of the privilege …

(Ex. D, May 2, 2005 Hearing Tr. at 5).  In response to the parties' agreement and proposal, the

Court appointed Judge Louis C. Bechtle as a Special Master to "address issues relating to the

parties' privilege logs and rule on same."  (Docket Entry 169).

On July 7, 2005, the Special Master conducted an initial conference with the parties to

discuss procedures for addressing issues pertaining to privilege logs.  At that conference, the

Special Master ordered the parties to take a "hard look" at their privilege logs no later than July

28, 2005 to re-evaluate their claims of privilege.  (Ex. E, July 7, 2005 Hearing Tr. at 35-36).

After this "hard look" deadline, TeleCheck produced numerous documents to LML off its

privilege log.  (Ex. F).  In fact, hundreds of these documents produced by TeleCheck contained

the description on their privilege log of "legal advice from an attorney re business operations" or

similar description.  (*Compare* Ex. C with Ex. F).  But TeleCheck still refused to produce

numerous documents from its privilege log that either fell within the scope of TeleCheck's

waiver of privilege or that contained inadequate descriptions.  (Ex. G, August 2, 2005 Letter

from T. Devlin to J. Bechtle).

On August 4, 2005, the Special Master again conducted a hearing to discuss the parties'

privilege logs and set a procedure and briefing schedule by which the issues pertaining to

TeleCheck's privilege log would be addressed.  Thereafter, the Special Master requested that

TeleCheck submit a total of 82 disputed documents for *in camera* review.  (Ex. H at 3).  As a

result of the briefing and *in camera* review of these 82 disputed documents, the Special Master

issued Special Discovery Master Order No. 4 concluding among other things that:

- "The finding based on this review suggests that there are some ***fundamental misunderstandings*** by those making privilege judgments on behalf of defendant as to the basic elements of attorney client privilege and work product protection"

- "the sampling even though small is an indication that the descriptions are ***woefully inadequate*** to tell whether the essential elements of privilege are present . . . ."

- "Again, although a small sample, the extent to which defendant has not satisfied its burden in establishing privilege is ***sufficiently out of balance to be an amount to entitle plaintiff to some relief***."

- "A view of many of the documents submitted at random that did not qualify for the privilege claimed gave the distinct impression to the SDM that if the review of the document was in doubt as to its privilege status, it was placed on the log, rather than being produced."

(Ex. H, Special Master Order No. 4 at 5, 7, 8, 9) (emphasis added). Despite these findings, the

Special Master provided TeleCheck one last opportunity to re-evaluate its claims of privilege and

produce documents to LML. (*Id.* at 10). The Special Master instructed TeleCheck to "take a

second hard look at each and every document that it contends is entitled to privilege" and

produce any documents removed from the privilege log to LML. (*Id.*).

In response to the Special Master's order, on October 7, 2005,[3] TeleCheck produced to

LML hundreds more documents off its privilege log, a large majority of which again had the

description on TeleCheck's privilege log of "legal advice from an attorney re business

operations" or similar description. (Ex. I; *see also* Ex. C). With respect to hundreds of other

documents, however, TeleCheck continued to maintain its privilege claims.

---

[3] This late date is significant as it is well after the close of discovery and just weeks before summary judgment briefing was due.

At the October 25 hearing, the Special Master ordered TeleCheck to produce 309 disputed documents from its July 28, 2005 privilege log, and concluded that only 6 disputed documents were properly withheld by TeleCheck. (Ex. J, October 25, 2005 Hearing Transcript). In ordering these documents produced, the Special Master recognized that TeleCheck's entire approach to document production and its privilege log was not reasonable:

> Now, I mean, I just -- what's happened here is I think TeleCheck has avoided the first step in this process. The first step is to see whether or not this document is responsive to a discovery request. Either it is or it isn't. If it is, then the next step is, even though it's discoverable, is it subject to some privilege, some reason why it should not be discovered? But I think as a matter of apparently administrative, economic or some other convenience, you've simply said, Well let's give LML -- we'll say Here's everything. . . *.So all you've done is pass over, quite frankly, Mr. Devlin, to Judge Robinson this decision making that your firm should make. . . This is merely unreasonable. I mean, I'm quite disturbed about this*, because I've already put -- I thought I put almost like Privilege 101 in the special discovery order number three, some examples about what to do.

(Ex. J, October 25, 2005 Hearing Transcript at 31-32) (emphasis added). Moreover, the Special Master concluded that the description of "legal advice from an attorney re business operations" or similar description on TeleCheck's privilege log was inadequate and did not support TeleCheck's claims of privilege, thus ordering such documents produced.

In total, TeleCheck claimed privilege with respect to approximately 2,342 documents on its July 28, 2005 privilege log. But, by the end of the October 25, 2005 hearing with the Special Master, TeleCheck had either produced or been ordered to produce approximately 1300 documents -- or 56% of its entire privilege log. In addition, over 500 of the documents voluntarily produced by TeleCheck contained "legal advice from an attorney re business operations" or similar description.

# III.    ARGUMENT

## A.    Legal Standards

### 1.    Privilege Logs

Pursuant to Federal Rule of Civil Procedure 26(b)(5), when a party claims privilege to an otherwise discoverable document, "the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will *enable other parties to assess the applicability of the privilege or protection*." Fed. R. Civ. P. 26(b)(5) (emphasis added). Thus, the party asserting the privilege has the burden of proving that the claimed privilege exists. *Tulip Computers Intern., B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 104-05 (D. Del. 2002). Moreover, a proper claim of privilege and/or immunity "requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality." *International Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 94 (D. Del. 1974); *see also In re Lomas Financial Corp.*, 1999 WL 33495524 (Bankr.D.Del. 1999).

Failure to provide the required detail for a document on a privilege log means a party's claim of privilege will be rejected because an "improperly asserted claim of privilege is no claim of privilege at all." *Int'l Paper*, 63 F.R.D. at 94 (citing *Black v. Sheraton*, 371 F. Supp. 97 (D.D.C. 1974); *U.S. Philips Corp. v. U.S.*, 177 USPQ 12, 13 (Ct. Cl. 1972)). The proper remedy for a deficient privilege log entry is production of the underlying document. *See Willemijn Houdstermaatschaapij, B.V. v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1443 (D. Del. 1989) (ordering the production of withheld documents because "plaintiff could easily have ascertained the standard of particularity expected by this Court and could have met that standard" and "allowing it to do so now would encourage dilatory discovery practices").

2.    *Waiver as a result of relying on advice of counsel*

It is well-settled that when a party relies on the advice of counsel to defend against allegations of willful infringement, it waives privilege to all other documents relating either directly or indirectly to the same subject matter as those opinions. *See Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). This Court has consistently held that the scope of the waiver includes the waiver of the attorney-client privilege for all communications between the attorney and the client relating to the opinion. *Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*, 206 FRD 396, 397 (D. Del. 2002); *Mosel Vitelic Corp. v. Micron Tech., Inc.*, 162 F. Supp. 2d 307, 311-13 (D. Del. 2000); *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*, 837 F. Supp. 616, 620-21 (D. Del. 1993). Indeed, "the waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Fort James*, 412 F.3d at 1349. The waiver also extends to any documents relating to the opinion in the possession of the accused infringer. *Thorn EMI*, 837 F. Supp. at 621.

"There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James*, 412 F.3d at 1349-50. Moreover, this Court has deemed privilege waived where—as here—defendants attempt to use the attorney-client privilege as both a sword and shield. *Medtronic, Inc. v. Guidant Corp. et al.*, Civ. No. 03-848-SLR, Memorandum Order October 25, 2004.

In considering and applying the above law, and examining numerous document *in camera*, the Special Master properly concluded that TeleCheck's cursory description of "re business operations" on its privilege log was inadequate and thus did not support TeleCheck's

claims of privilege.   The Special Master also concluded, after an *in camera* review, that

numerous documents on TeleCheck's privilege log fell within its scope of wavier.  Accordingly,

the Special Master found that each document either was entitled to no privilege or immunity, or

that if any privilege/immunity was associated with the documents, TeleCheck waived such

protection.

> **B.    The Special Master Correctly Ordered TeleCheck To Produce Approximately 260 Documents From Its Privilege Log With The Inadequate And Cursory Description "Re Business Operations"**

TeleCheck first argues that the Special Master erred in ordering TeleCheck to produce

approximately 260 documents off its privilege log which contained the cursory description "legal

advice from an attorney re business operations" or similar description.  TeleCheck attempts to

blame this order on the Special Master somehow being vindictive and sanctioning TeleCheck for

its bad faith in this litigation.  While true that TeleCheck has acted in bad faith as explained in

further detail below, this was not the basis for the Special Master's ruling.  Indeed, the Special

Master concluded that the descriptions on TeleCheck's privilege log were inadequate and thus,

failed to support TeleCheck's claims of privilege with respect to these 260 documents.

Moreover, TeleCheck had already voluntarily produced over 500 documents off its privilege log

with this very same or similar description ("re business operations") and thus, any privilege that

may have been associated with such documents was waived.

> *1.    The Special Master properly concluded that TeleCheck's cursory descriptions of "re business operations" was inadequate to support its claims of privilege*

Despite TeleCheck's claims to the contrary, the Special Master based his order for

TeleCheck to produce approximately 260 documents on TeleCheck's failure to support its claims

of privilege, not a vindictive sanction for its bad faith in document production.  In its August 18,

2005 letter motion to compel, LML specifically identified these 260 documents as having

inadequate descriptions and thus, did not support TeleCheck's claims of privilege. (Ex. K). In response to LML's motion to compel, the Special Master issued Special Discovery Master Order No. 4. (Ex. H). With respect to LML's arguments about TeleCheck's inadequate descriptions (i.e. descriptions describing the subject matter of the withheld documents as "re business operations"), the Special Master concluded that:

> the descriptions are **woefully inadequate** to tell whether the essential elements of privilege are present in the description to allow the plaintiff to make a decision whether to accept the assertion of privilege and to demand production.

(Ex. H at 7) (emphasis added). Moreover, the Special Master, after reviewing some of such documents *in camera* concluded that a more detailed description for such documents "was **easily available** without compromising sensitive information." (*Id.* at 10). Despite this finding, the Special Master gave TeleCheck one last opportunity to "take a final, hard look at each and every document" on its privilege. (*Id.*)

Again, at the October 25, 2005 hearing, the Special Master recognized the issue in relation to these documents, noting:

> SPECIAL MASTER:  Okay.  But your complaint is that re business operations doesn't give you any guidance in what to do, as I understand.
>
> MR. MCDOLE:      That's correct.

(Ex. J at 21:13-17). In assessing the parties' arguments with respect to TeleCheck's inadequate descriptions, the Special Master again reiterated that the central issue was whether TeleCheck's descriptions supported its claims of privilege:

> SPECIAL MASTER:  Okay.  All I'm saying, if this -- see, the problem is the other party in the case, LML, sees communication re business operations.  They don't know whether they should be trying to get that or knowing more about it or not . . .**You've got to give a fair guidance on a log**.  Nothing says that every line on the log has to be an 18th of an inch in width.

(Ex. J at 48-49).  The Special Master also concluded, after reviewing several of such documents *in camera*, that adequate descriptions were available with respect to such documents, but that TeleCheck opted instead for the cursory and inadequate description "re business operations."  As such, the Special Master concluded that TeleCheck did not support its claims of privilege, and ordered such documents produced.

In its objections, TeleCheck does not even attempt to justify the adequacy of the descriptions on its privilege log.  Instead, TeleCheck argues that the Special Master was allegedly obligated to review each of these documents *in camera* before ordering them produced. This is simply not true.  It is well settled that:

> *In camera* review is generally disfavored. It is not to be used as a substitute for a party's obligation to justify its withholding of documents. ***In camera review should not replace the effective adversarial testing of the claimed privileges and protections.***

*Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 700 (D. Nev. 1994) (emphasis added); *Caruso v. Coleman Co.*, 1995 WL 384602 (CA No. 93-CV-6733) *1 (E.D.Pa. June 22, 1995) ("performing an *in camera* review would permit Coleman to shirk its duty of justifying the withholding of the documents"); *CSX Transp. Inc. v. Admiral Ins. Co.*, 1995 WL 855421 (No. 93-132-CIV-J-10), *5 (M.D.Fla. July 20, 1995) (applying *Diamond*).  TeleCheck simply cannot "shirk its duty" of supporting its claims of privilege by requiring the Special Master or this Court to review hundreds of documents *in camera* -- that is not the law or this Court's obligation.  In fact, the Special Master recognized this fact:

> So all you've done is pass over, quite frankly, Mr. Devlin, to Judge Robinson this decision making that your firm should make. . .you've simply pushed that ***onto a log*** that pushes it onto Judge Robinson's desk.  ***This is merely unreasonable.***

(Ex. J at 31-32).

The Special Master correctly held that TeleCheck failed to support its claims of privilege with respect to these approximately 260 documents. TeleCheck's description of "re business operations" is simply inadequate to support its claims. Thus, the Special Master properly ordered such documents produced on this basis alone.

2.      *TeleCheck has waived any privilege/immunity associated with these documents*

In addition to the fact that TeleCheck's description of "re business operations" is inadequate and does not support its claims of privilege, TeleCheck has also waived any privilege/immunity that may have attached to such documents. In this case, ***TeleCheck has voluntarily produced over 500 documents with this very same or similar description on their privilege log***. (*See* Exs. C, F, I). In other words, TeleCheck produced over 500 documents with the description "re business operations" or similar description, yet continues to withhold approximately 260 documents from its privilege log with this same "re business operations" description. Thus, TeleCheck has waived any privilege/immunity that may have attached to such documents.

Again, TeleCheck does not address this issue in its objections. Indeed, TeleCheck's only response could be that the descriptions it provided on its log are not detailed enough (i.e. inadequate) to identify the subject matter of such documents, and that the documents actually have different subject matters. But, this argument simply proves the point that TeleCheck's descriptions are inadequate and that it failed to support its claims of privilege. LML should be able to determine from TeleCheck's privilege log whether a document is waived by examining its description -- that is what a privilege log is for. The Special Master correctly ordered TeleCheck to produce these documents.

3.    *TeleCheck's bad faith*

While not directly relevant to the issue at hand, TeleCheck attempts to characterize its behavior in this case as something other than bad faith. But, TeleCheck's actions have finally caught up with it, as the Special Master recognized TeleCheck's behavior for what it was -- unreasonable.

Consistently throughout this case, TeleCheck has attempted to make this litigation as costly as it could for LML -- a small company with limited resources. TeleCheck delayed document production in this case,[4] delayed depositions, and has disregarded the vast majority of deadlines in this case. With respect to document production, the Special Master recognized that TeleCheck attempted to shift its burden and cost of reviewing documents to LML:

- "But I think as a matter of apparently administrative, economic or some other convenience, you've simply said, Well, let's give LML -- we'll say, "Here's everything . . . So all you've done is pass over, quite frankly, Mr. Devlin, to Judge Robinson this decision making that your firm should make. . . . ***This is merely unreasonable. I mean, I'm quite disturbed about this*** . . ." (Ex. J at 31-32) (emphasis added).

- "But when you tell me that it was just easier to give over everything, that's not how discovery is done. You can't respond and say, Look, you can have it all. Now, if you had 15 boxes, give it all to us. We'll go through it. But 500 boxes. Well, sorry, 495 boxes, that's not how it's done. ***Not a judge in the land is going to put up with that***." (Ex. J at 32-33) (emphasis added).

- "It's just not -- it's just a shortcut to -- all it does is pass over to other persons the responsibilities that your client has. You pass over to someone else the decision whether or not this is even responsive to a discovery request. . . .***That isn't how it works. I'm very disappointed in that approach***." (Ex. J at 36-37) (emphasis added).

---

[4] If the Court will recall, TeleCheck did not produce the vast majority of its documents in this case until after date for the close of document production. In fact, TeleCheck did not produce a single document in this case until January 5, 2005, and at that time only produce a very small fraction of their entire production -- despite the fact that the Court's Scheduling Order required document productions to be substantially complete by January 21, 2005. Consequently, the Court permitted TeleCheck to extend the date for document production until April 5, 2005, but warned that "if document production isn't complete by April 5th, we'll start talking about sanctions." (Docket Entry 89 at 8).

In fact, prior to these orders, the Special Master ordered TeleCheck to pay LML's costs and attorneys' fees associated with another argument it had made regarding its failure to meet the Court's deadline for producing privilege logs.  (Ex. L, Special Master Order No. 1).

The Special Master's conclusions regarding TeleCheck's behavior were not the basis for his decision as TeleCheck claims, but merely a response to TeleCheck's efforts to explain its behavior and justify its inadequate descriptions.  In fact, by TeleCheck's own admission it did not expressly review the documents in this case for relevance:

> We **didn't expressly make a decision that that information was relevant** to a particular a document request that was promulgated by LML in this case.  We used a very, very broad set of documents that were collected by Sidley & Austin, offered those documents for inspection.  And, in our view, the inspection was very broad.

(Ex. J at 26) (emphasis added).  Indeed, TeleCheck decided to attempt to overwhelm LML by producing 1.5 million documents, but did not want to provide a proper privilege log in doing so.

### C. The Special Master Correctly Ordered TeleCheck To Produce Approximately 23 "Concord Documents" As They Undisputedly Relate To The Same Subject Matter As TeleCheck's Opinions Of Counsel

TeleCheck next argues that the Special Master erred by ordering TeleCheck to produce approximately 23 documents which TeleCheck refers to as the "Concord documents."  *TeleCheck does not dispute that these documents relate to the same subject matter as its opinions of counsel*.  TeleCheck instead argues that its management did not consider these documents in "deciding how to design and implement the ECA Service."  (TeleCheck Br. at 7).  TeleCheck's only basis for making this statement is that it launched its service in 1998, while it allegedly did not obtain the documents until 2003.  TeleCheck provides no other support for its argument.  TeleCheck's argument in this regard is misplaced.

While TeleCheck attempts to persuade the Court that its evaluation of the '988 patent was limited to the 1998 timeframe (TeleCheck Br. at 7), nothing is further from the truth.  TeleCheck

has consistently evaluated the '988 patent from 1997 through the filing of this litigation, obtaining legal advice (although mutually inconsistent and not always favorable to TeleCheck) throughout this time frame.  In fact, TeleCheck has produced and intends to rely on at least four formal opinions of counsel dated in 1997, 2001, and 2004 (after LML initiated this litigation). TeleCheck received advice regarding the '988 patent throughout this entire time period, including the time period in which it received the "Concord documents."  For TeleCheck to now claim that these "Concord documents" are not relevant based on the date TeleCheck received them -- even though it is relying on opinions dated after LML initiated this suit -- is simply not credible.  These 23 disputed documents fall squarely in the time frame that TeleCheck was "evaluating the patent and its conduct in relation thereto."

The Special Master correctly ordered these 23 documents produced.

### D.     The Special Master Correctly Ordered TeleCheck To Produce Documents Identified As PR 2504 and PR 4652.

TeleCheck's final objection to the Special Master's orders relates to two documents identified on TeleCheck's privilege log as PR 2504 and PR 4652.  The Special Master, after examining these two documents *in camera*, determined that document PR 2504 was not entitled to any privilege status and that document PR 4652 contained the same subject matter as TeleCheck's opinions of counsel and thus ordered both documents produced.  (Ex. J at 67-69, 130-38).  TeleCheck argues that these documents fall outside the scope of its waiver, and therefore claim that the Special Master erred in ordering them produced.  But, the Special Master correctly ordered these documents produced.

#### 1.     Document PR 2504

TeleCheck's July 28, 2005 privilege log describes document PR 2504 as "correspondence drafted at the direction of an attorney re claim construction."  (Ex. C).  The Special Master

16

concluded that this document was not entitled to any privilege status -- and did not base his decision on any waiver of privilege as TeleCheck claims.  Indeed, this document is notes of a non-attorney and TeleCheck could not provide the Special Master any legitimate basis for claiming that this document was drafted at the direction of an attorney as TeleCheck claimed on its privilege log.  TeleCheck could only state "based on our understanding" this document related to a patent application.  (Ex. J at 68-69).

After examining the document *in camera*, and assessing its contents, the Special Master concluded that document PR 2504 was not privileged.  While TeleCheck claims that the Special Master provided no basis for this ruling, this is not true.  The Special Master specifically provided his reasoning, in particular because the document "is a communication between non-lawyers, and is not covered by the A/C privilege."[5]  (Ex. J at 69; Ex. H, Special Master Order No. 4).  TeleCheck failed to make any argument as to the legal nature of this document outside conjecture and speculation, nor does TeleCheck make any such argument in its objections.  The Special Master properly ordered document PR 2504 produced.

### 2.    Document PR 4652

TeleCheck's July 28, 2005 privilege log describes document 4652 as "correspondence from attorney containing legal advice re prior art patent."[6]  (Ex. C).  Based on this description

---

[5] Given the large number of documents at issue, the Special Master used short-hand codes in his Orders to explain his rulings.  (Ex. H, Special Master Order No. 4).  With respect to document PR 2504, the Special Master said "that will be D, code D with an N."  (Ex. J at 69).  This explains that privilege is refused because the document "is a communication between non-lawyers, and is not covered by the A/C privilege."  (Ex. H, Special Master Order No. 4).

[6] During the Court's May 2, 2005 hearing, the parties agreed to appoint a Special Master to decide issues relating to each others' privilege logs "as they substantially exist today."  (Ex. D at 5).  As such, TeleCheck cannot now attempt to explain the substance of its documents instead of relying on the descriptions it provided on its privilege log.

and his *in camera* review of the document, the Special Master concluded that this document fell within the scope of TeleCheck's waiver.  (Ex. J at 136-37).  Indeed, while LML has not seen this document (as only the Special Master reviewed it *in camera* -- not LML) it presumably relates to prior art to the patent in suit and further characterizes that prior art.  This is exactly what TeleCheck's validity opinions do (i.e. characterize the prior art), and thus, fall within this same subject matter and TeleCheck's scope of waiver.  TeleCheck simply cannot avoid producing documents that characterize prior art in an inconsistent manner as the opinions of counsel it obtained.  The Special Master examined the contents of this document in camera and recognized this fact.  As such, the Special Master correctly held that TeleCheck waived privilege/immunity with respect to document PR 4652.

## IV.   CONCLUSION

For the foregoing reasons, LML respectfully requests that the Court overrule Defendant TeleCheck's objections and uphold the Special Master's rulings of October 25, 2005.  LML also requests that the Court order TeleCheck to produce the documents at issue within three (3) days of this Court's Order upholding these rulings -- no further cause for delay in such production is warranted.

Dated:  November 17, 2005

       */s/ Richard K. Herrmann*
Richard K. Herrmann #405
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware  19801
(302) 888-6800
rherrmann@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
(312) 861-2000

*Attorneys for Plaintiff LML Patent Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of November, 2005, I electronically filed the foregoing document, **LML'S RESPONSE TO TELECHECK'S OBJECTIONS TO THE SPECIAL DISCOVERY MASTER'S OCTOBER 25, 2005 RULINGS**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Collins J. Seitz, Jr., Esq.  
Francis DiGiovanni, Esq.  
Connolly Bove Lodge & Hutz LLP  
1007 North Orange Street  
Wilmington, DE 19801

William J. Marsden, Jr., Esq.  
Timothy Devlin, Esq.  
Fish & Richardson, P.C.  
919 North Market Street, Suite 1100  
Wilmington, DE 19801

Richard D. Kirk, Esq.  
The Bayard Firm  
222 Delaware Avenue, 9th Floor  
Wilmington, DE 19801

Additionally, I hereby certify that on the 17th day of November, 2005, the foregoing document was served via email and via federal express on the following non-registered participants:

Robert Jacobs, Esq.  
Mark B. Mizrahi, Esq.  
Belasco Jacobs & Townsley, LLP  
Howard Hughes Center  
6100 Center Drive, Suite 630  
Los Angeles, CA 90045

Mark C. Scarsi, Esq.  
Vision L. Winter, Esq.  
O'Melveny & Myers LLP  
400 South Hope Street  
Los Angeles, CA 90071

_____/s/ Richard K. Herrmann_____  
Richard K. Herrmann (#405)  
Mary B. Matterer (#2696)  
MORRIS, JAMES, HITCHENS  
& WILLIAMS LLP  
222 Delaware Avenue, 10th Floor  
Wilmington, Delaware 19801  
(302) 888-6800  
mmatterer@morrisjames.com

*Counsel for Plaintiff LML PATENT CORP.*