# EXHIBIT K

## MORRIS, JAMES, HITCHENS & WILLIAMS LLP

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 571-1750
www.morrisjames.com

Mary B. Matterer
(302) 888-6960
mmatterer@morrisjames.com

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

August 18, 2005

**VIA FACSIMILE WITHOUT EXHIBITS AND
VIA FEDERAL EXPRESS WITH EXHIBITS**

The Honorable Louis C. Bechtle
Conrad, O'Brien, Gellman & Rohn PC
1515 Market Street, 16th Floor
Philadelphia, PA 19102-1916

Re: *LML Patent Corp. v. TeleCheck, et al,*
D. Del., Civil Action No. 04-858 SLR

Your Honor:

Pursuant to this Court's request at the August 4, 2005 hearing, Plaintiff LML Patent Corp. ("LML") submits this letter brief regarding the privilege log issues that remain outstanding. LML moves this Court for an order compelling Defendants TeleCheck Services, Inc. ("TeleCheck") and Electronic Clearing House, Inc and XpressChex, Inc. (collectively "ECHO") to produce:

1. the documents listed in Tab A because the entries either list an unnamed attorney as the author or recipient or fail to identify any attorney;

2. the documents listed in Tab B because the entries identify an attorney but the description of the document and the asserted privilege conflict with the individuals identified as the author or recipient;

3. the documents listed in Tab C because third parties are listed as authors and/or recipients of the documents;

4. the documents listed in Tab D because the descriptions on the privilege logs are cursory, overbroad and/or not sufficient to establish the privilege;

5. the documents listed in Tab E because these documents fall within the waiver resulting from TeleCheck and ECHO's decision to rely on the advice of counsel; and

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

The Honorable Louis C. Bechtle
August 18, 2005
Page 2

      6. the documents listed in Tab F because TeleCheck has waived privilege by already producing these documents to LML

I. **TELECHECK AND ECHO HAVE WAIVED PRIVILEGE AS TO NUMEROUS DOCUMENTS ON THEIR PRIVILEGE LOG BECAUSE OF REPEATED INADEQUATE ENTRIES ON THEIR RESPECTIVE PRIVILEGE LOGS.**

Pursuant to Federal Rule of Civil Procedure 26(b)(5), when a party claims privilege to an otherwise discoverable document, "the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will *enable other parties to assess the applicability of the privilege or protection.*" Fed. R. Civ. P. 26(b)(5) (emphasis added). Thus, the party asserting the privilege has the burden of proving that the claimed privilege exists. *Tulip Computers Intern., B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 104-05 (D. Del. 2002). Indeed, this Court's Order Appointing Special Master specifically conferred the power to assess the adequacy of these logs, "He shall hear, resolve and make rulings on all disputes regarding privilege logs and, when appropriate, enter orders setting forth his rulings." Order Appointing Special Master at p. 2.

In order to enable other parties to assess the applicability of a claimed privilege, a party's privilege log must contain, for each document, 1) a brief description or summary of the contents of the document, 2) the date the document was prepared, 3) the names of the person or persons who prepared the document, 4) the names of the person or persons to whom the document was directed, or for whom the document was prepared, 5) the purpose in preparing the document, 6) the privilege or privileges asserted with respect to the document, and 7) how each element of the privilege is met as to that document. *See In re Lomas Financial Corp.*, 1999 WL 33495524 (Bankr.D.Del. 1999); Fed. R.Civ. P. 26(b)(5), Advisory Committee Notes.

If claiming attorney-client privilege, a party must provide enough information in the privilege log to show "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851, 862 (3d Cir. 1994); *see also In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979).

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

The Honorable Louis C. Bechtle
August 18, 2005
Page 3

It is well understood that the attorney-client privilege protects only those confidential disclosures between an attorney and a client necessary for the seeking and rendering of legal advice and will not protect communications that are divulged to third parties or communications where the attorney is providing business advice or acting as the business agent of a party. *Int'l Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 94 (D. Del. 1974). If claiming privilege based on the work product doctrine, a party must provide enough information on the privilege log to show that the document was prepared by or at the request of an attorney with an eye for litigation and that the document contains the attorney's mental impressions, conclusions, opinions, or legal theories. *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 150 (D. Del. 1977).

Failure to provide the required detail for a document on a privilege log means a party's claim of privilege will be rejected because an "improperly asserted claim of privilege is no claim of privilege at all." *Int'l Paper*, 63 F.R.D. at 94 (citing *Black v. Sheraton*, 371 F. Supp. 97 (D.D.C. 1974); *U.S. Philips Corp. v. U.S.*, 177 USPQ 12, 13 (Ct. Cl. 1972)). The proper remedy for a deficient privilege log entry is production of the underlying document. *See Willemijn Houdstermaatschaapij, B.V. v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1443 (D. Del. 1989) (ordering the production of withheld documents because "plaintiff could easily have ascertained the standard of particularity expected by this Court and could have met that standard" and "allowing it to do so now would encourage dilatory discovery practices").

Attempting to obtain privilege logs from the Defendants that comply with the standards set forth by the Third Circuit, the District of Delaware, and the Federal Rules has been a lengthy and frustrating process for LML. As explained in previous correspondence with the Court, TeleCheck did not produce a privilege log by the date set in Judge Robinson's Scheduling Order for the completion of document production. LML moved to compel and TeleCheck selected the date it would produce its log. When it did finally produce the privilege log, the log contained numerous deficiencies that made it impossible for LML to evaluate the adequacy of the privilege asserted. For example, TeleCheck's log did not indicate whether the listed author or recipient was an attorney or not. *See, e.g.* Exhibit A (TeleCheck's April 6, 2005, log). Although LML immediately pointed out this deficiency to TeleCheck, TeleCheck did not produce a revised version of its privilege log until May 2, 2005. The new version of the log contained eighty-six additional pages and stated that hundreds of entries from the original version of the log had actually been produced in redacted form rather than withheld. TeleCheck has subsequently produced several more logs. However, even the most recent log, produced on July 28, 2005, continues to be plagued by many of the same problems that faced the original. *See, e.g.* Exhibit B (July 28, 2005, log). Moreover, TeleCheck's privilege log continues to be extremely difficult to work with—the entries have no consistent identifying key (some are identified by Doc. No., some have a PR No. and others have a Bates No.) and several Bates Nos. are used in multiple entries although the underlying documents are clearly not the same (e.g. PR4626-36 and

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

The Honorable Louis C. Bechtle
August 18, 2005
Page 4

PR4642-43 are each used twice on p.43-4 of Part III, and each have been produced under different bates numbers).

ECHO produced the first version of their privilege logs on January 27, 2005. However, this log also made it impossible for LML to determine the adequacy of ECHO's claims of privilege. *See, e.g.* Exhibit C (January 27, 2005, log). Like TeleCheck's log, ECHO's log failed to indicate whether a listed author or recipient was an attorney or not for many entries. At LML's request, ECHO produced revised versions of their logs on February 1, 2005. ECHO supplemented their logs a third time on March 28, 2005, although with only thirty-six entries the logs were still obviously incomplete. ECHO produced yet another revised version of their logs on April 19, 2005. After LML complained about the deficiencies in the logs, ECHO produced a fifth version on May 17, 2005 which contained an additional twenty-two entries. LML responded immediately with additional deficiencies found in this fifth version but ECHO did not reply until June 9, 2005, when they produced a sixth version of their privilege logs. ECHO added additional entries to this sixth version despite the fact that document production was to have been completed by March 4. ECHO's most recent version of the log was produced July 28, 2005. Exhibit D (July 28, 2005, log). Even with all of the revisions to their privilege logs (four revisions coming after the April 5, 2005 deadline set by the Court), the logs of ECHO still contain numerous deficient entries detailed below.

The parties have had numerous meet and confer conferences regarding the privilege logs but LML's concerns have not been fully addressed. More importantly, TeleCheck and ECHO's continued revisions to their logs are now largely beside the point. All of the parties agreed at the May 2, 2005, hearing ". . . that discovery master can take the privilege logs as they substantially exist today . . ." May 2, 2005, Hearing Transcript at p. 5. Thus, TeleCheck and ECHO's logs should be judged by the entries as they existed on May 2, not their continually revised logs as they exist today. This point was reiterated by this Court, after requesting that the parties carefully review their logs, and by saying that, ". . . there will not be just a tidal wave of corrections and logs at this stage of the game." August 4, 2005, Hearing Transcript at p. 36-7.

Defendants' careless, lackadaisical approach to their privilege logs has forced LML to waste resources attempting to get defendants to meet *their* burden of proving privilege as to the documents contained in the privilege logs. Although TeleCheck and ECHO should be judged by the sufficiency of their logs as of May 2, 2005, even the revised logs still contain glaring deficiencies. As a result, TeleCheck and ECHO are improperly asserting privilege for scores of documents, all of which should now be produced.

### 1. Entries Not Involving or Identifying an Attorney

Tab A lists a number of documents where the privilege logs for TeleCheck and ECHO include entries for documents that either list an unnamed attorney as the author or recipient or

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

The Honorable Louis C. Bechtle
August 18, 2005
Page 5

fail to identify any attorney at all as part of the privilege log entry. As both the attorney-client and work product privileges hinge on the involvement of an attorney, such entries make it impossible for defendants to maintain their claims of privilege as to these documents. On TeleCheck's privilege log in particular, not only do many of the entries fail to identify an attorney, but many do not identify any authors or recipients at all. Defendants' conclusory statements as to the alleged privileged nature of the documents underlying these entries is not sufficient. Because Defendants have failed to establish a necessary element of privilege for this group of documents – the involvement of an attorney – they cannot maintain their claims of privilege. Thus, LML requests that defendants be ordered to produce the documents listed at Tab A.

### 2. Descriptions not Matching Identified Authors/Recipients

Tab B lists entries on the privilege log for TeleCheck where an attorney is identified in the entry but the description of the document and the asserted privilege conflict with the individuals identified as authors or recipients. For example, one of TeleCheck's descriptions is "correspondence containing legal advice from an attorney re business operations" but the letter is sent from Sandy Mollet, who is not an attorney. *See, e.g.*, Exhibits A and B at Doc. No. 120. In another example, the description of the document might be "correspondence seeking legal advice from [name of attorney]" yet the named attorney is not listed as one of the recipients of the document and no explanation is provided for the discrepancy. *See, e.g. Id.* at Doc. No. 183. It is impossible to assess the claimed privilege of these documents since the entries are contradictory and unclear. Thus, LML requests that TeleCheck be ordered to produce all documents listed on Tab B.

### 3. Entries Involving a Third Party

Tab C lists entries on TeleCheck and ECHO's privilege logs where what appear to be third parties are listed as authors and/or recipients of documents where the attorney-client privilege is claimed. However, no explanation is given as to how the alleged privilege of such a document is not waived by its disclosure to a third party. For example, ECHO claims attorney-client privilege and work product immunity for a "memorandum re legal advice re patent(s)-in-suit" that was authored by one of its attorneys but third party Visa U.S.A., Inc is named as the recipient. Exhibits C and D No. 49. Obviously, based on this information, the memorandum does not fall within the attorney-client privilege since the voluntary disclosure to a party outside the attorney-client relationship destroys the confidentiality of the communication.

TeleCheck's privilege log also contains examples of this deficiency. In fact, several entries on TeleCheck's logs contain the description "communication to 3rd party" but offer no explanation for how the claimed attorney-client privilege could possibly apply to such a

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

The Honorable Louis C. Bechtle
August 18, 2005
Page 6

document (Exhibits A and B Doc Nos. 478, 481, and 483). TeleCheck also claims attorney-client privilege for an entry with the description "correspondence from attorney containing revisions re draft letter" (Exhibits A and B Bates No. PR 4559-60). *Id.* The listed author for this document is one of TeleCheck's attorneys but the listed recipient is Patrick Gaines, who is an employee of Plaintiff LML. TeleCheck also claims attorney-client privilege for a "draft pilot program guide re internal business operations" authored by third party the Electronic Check Council (Exhibits A and B Bates No. PR 4533-48). *Id.* Because documents disclosed to third parties cannot be privileged, LML requests that TeleCheck and ECHO be ordered to produce the documents listed on Tab C.

### 4. Entries with Inadequate Descriptions

Tab D lists documents whose descriptions on the privilege logs are cursory, overbroad, and not sufficient to establish that each element of the claimed privilege is met. Descriptions such as "email communication re NACHA contact info" (Exhibits C and D Nos. 25-29), "letter re engagement as an independent contractor" (Exhibits C and D Nos. 62 and 69), "correspondence containing legal advice from an attorney re business operations" (*See, e.g.,* Exhibits A and B Doc. No. 1), "correspondence containing legal advice from an attorney" (*See, e.g.* Exhibits A and B Doc. No. 111) and "correspondence from attorney containing information re another attorney" (*See, e.g.* Exhibits A and B PR1723) are too sparse and nonspecific to even remotely suggest that any privilege or protection is applicable. Additionally, overbroad descriptions such as these make it impossible to determine whether these documents are within the scope of any waiver by the defendants, including for example, the waiver by all defendants based on their reliance on the advice of counsel as a defense to willful infringement.

Vague, overbroad descriptions such as "email communication re NACHA contact info", even if given for documents that were authored or received by an attorney, do not make it clear that confidential, legal advice was sought or rendered, as opposed to general, business advice which would not qualify for protection under the attorney-client privilege. Literally hundreds of entries on TeleCheck's privilege log give no more information about the document other than that it contains legal advice regarding "business operations." Given the breadth of the scope of the subject matter "business operations" and the number of documents given this generic label, and the fact that TeleCheck's most recent log clearly indicates that many documents carrying this description have already been produced by TeleCheck it is impossible for LML to assess the alleged privilege for those documents. LML requests that Defendants be ordered to produce the documents listed on Tab D.

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

The Honorable Louis C. Bechtle
August 18, 2005
Page 7

## II. TELECHECK AND ECHO ARE IMPROPERLY WITHHOLDING DOCUMENTS THAT SHOULD BE PRODUCED BECAUSE THEY ARE WITHIN THE SCOPE OF THE WAIVER REGARDING THE DEFENDANTS' RELIANCE ON COUNSEL.

By waiving privilege and relying on the opinions of counsel as a defense to a claim of willful infringement, TeleCheck and ECHO have also waived privilege as to any documents in their possession that relate either directly or indirectly to the subject matter of those opinions. This district has consistently held that the scope of the waiver includes the waiver of the attorney-client privilege for all communications between the attorney and the client relating to the opinion. *Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 396, 397 (D. Del. 2002); *Mosel Vitelic Corp. v. Micron Tech., Inc.*, 162 F. Supp. 2d 307, 311-13 (D. Del. 2000); *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*, 837 F. Supp. 616, 620-21 (D. Del. 1993). The waiver also extends to any document relating to the opinion in the possession of the accused infringer. *Thorn EMI*, 837 F. Supp. at 621. The waiver should also extend to any document relating to the opinion of counsel regardless of who is in possession of the document. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994); *Mosel Vitelic Corp.*, 162 F. Supp. 2d at 311-13. Indeed, this Court has gone so far as to deem the privilege waived where—as here—defendants attempt to use the attorney-client privilege as both a sword and a shield. *Medtronic, Inc. v. Guidant Corp. et al.*, Civ. No. 03-848-SLR, Memorandum Order October 25, 2004 (Docket Entry 115) (attached at Exhibit H).

TeleCheck and ECHO in this case have waived privilege and have chosen to rely on the advice of counsel. By placing that advice in issue, they have "opened to examination facts relating to that advice." *Rhone-Poulenc Rorer Inc.*, 32 F.3d at 863. On their respective privilege logs, the defendants have listed many documents relating to the relied upon opinions as attorney-client privileged. All of these documents are clearly discoverable and any privilege was waived when the defendants voluntarily chose to rely upon the advice of counsel. Any advice communicated from the attorney to the client and any document reflecting this advice is directly probative of the defendants' intent to infringe. *See Thorn EMI*, 837 F. Supp. at 620-21.

TeleCheck and ECHO's privilege logs also include documents claiming attorney work product privilege for documents relating to the relied upon opinions. While there is no consensus whether reliance on advice of counsel is an automatic waiver of the attorney work product privilege, *compare Chimie v. PPG Indus., Inc.*, 218 F.R.D. 416, 420 ((D. Del. 2003) (no waiver); *with Mosel Vitelic Corp.*, 162 F. Supp. 2d at 312-13 (wavier), the privilege was waived with respect to the documents at issue here. All of the documents listed on the privilege log are in the possession of the defendants. LML is not requesting production of documents that are solely in the possession of the advising attorney. LML is requiring the defendants to produce documents in their possession, as evidenced by their inclusion on the privilege log, that relate to

the advice of counsel. While these documents are traditionally protected by the work product doctrine, the defendants waived that privilege when they voluntarily choose to rely on the advice of counsel. Their possession of the attorney's work product influenced their decision to rely upon counsel. Even under a narrow view of the scope of the waiver, these documents are clearly probative of the defendants' intent to infringe. *See Thorn EMI*, 837 F. Supp. at 620-21.

Tab E lists the documents whose descriptions clearly place the documents within the scope of the waiver. In addition to these documents, LML requests that Defendants be ordered to produce all documents in their possession that are related to the opinions of counsel and were not readily identifiable from the privilege log description.

### III. TELECHECK HAS WAIVED PRIVILEGE AS TO ITS "INADVERTENTLY" PRODUCED PRIVILEGED DOCUMENTS.

In addition to the problems detailed above with TeleCheck's privilege logs, TeleCheck has allegedly inadvertently produced approximately one hundred forty privileged documents. Once this disclosure was identified by LML, not TeleCheck, TeleCheck has been slow to remedy the problem, further bolstering the fact that TeleCheck has waived the privilege with respect to those documents.

The issue of inadvertent production of potentially privileged documents was addressed early on in document discovery. In fact, TeleCheck originally withheld its document production in an attempt to force LML to relinquish its right to seek a waiver of any allegedly inadvertently produced documents.

During a January 6, 2005, conference with this Court, LML agreed to:

> ...compromise to some extent and give the defendants until the end of the document production period in the scheduling order, which is March 4, 2005, to claim inadvertence with no questions asked, no factors considered, and no argument by us that there was a waiver based on the inadvertent production.

Exhibit E (January 6, 2005, Hearing Transcript) at p. 5. But LML made it clear that after March 4, 2005, LML would be able to argue that a waiver occurred by any allegedly inadvertently produced documents. *Id.* Indeed, this compromise was memorialized in ¶ 20 of the Protective Order.

Moreover, despite TeleCheck's concern that a handful of documents might be inadvertently produced because "a tape flag fell off or some paralegal was transferring documents from here to there...," LML assured this Court that "if this happens once or twice,

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

The Honorable Louis C. Bechtle
August 18, 2005
Page 9

that's one thing. But if it starts to happen dozens and dozens of times, it's altogether different." *Id.* at p. 7 and 11, respectively. In fact, at the time of the hearing, TeleCheck implied that this would be a non-issue because, as TeleCheck stated, the "bulk of the documents we have were already reviewed for privilege by counsel in another case . . ." *Id.* at p. 8. Even though TeleCheck represented that the documents had already been reviewed for privilege, TeleCheck's production was delayed well into the month of April, a month after document production was supposed to be complete. One of TeleCheck's primary justifications to this Court for the delay in the production was TeleCheck's need to conduct a "second, independent privilege review" of the documents in the production.

Therefore, LML was surprised that, long after the close of document production in this case, TeleCheck has claimed over and over that it inadvertently produced what totals approximately 140 allegedly privileged documents. During LML's review of TeleCheck's production, it quickly became clear that it contained dozens and dozens of potentially privileged documents. Beginning on April 21, 2005, and continuing through May 18, 2005, LML sent a total of 19 letters to TeleCheck identifying documents that appeared to be privileged. LML had no difficulty identifying these documents as potentially privileged because many were written by outside counsel on the law firm's letterhead, titled or contained the subject of "LML Patent Litigation . . ." and/or were clearly marked as "Privileged."[1] Even a cursory review of TeleCheck's production would have revealed these potentially privileged documents. In fact, it was so easy to identify these documents as potentially privileged that it seriously calls into question whether TeleCheck really did a "second independent privilege review" or whether the delay in production was strategic and intentional.[2]

Since notifying TeleCheck of the potentially privileged documents, TeleCheck has been slow to respond to LML's request for information, replacement production CDs and TeleCheck still has not listed many of these documents on its privilege log. For example, although LML immediately notified TeleCheck that potentially privileged documents had been produced once

---

[1] Once it became clear that TeleCheck's inadvertent production was not simply limited to a few documents, LML decided to segregate the paper copies of the documents and place them in a secure location that would be inaccessible to review by LML or its attorneys rather than destroy the documents outright until this Court has had a chance to rule on the privileged nature of the documents.

[2] At the request of TeleCheck, LML no longer has access to these documents so it is unable to provide any specific information regarding the documents themselves. However, based on LML's initial review it appeared that at least some of the documents that TeleCheck claims were inadvertently produced, had been produced in a separate litigation.


MORRIS, JAMES, HITCHENS & WILLIAMS LLP

The Honorable Louis C. Bechtle
August 18, 2005
Page 10

they were discovered, TeleCheck delayed five days before responding to LML's initial letters. *See, e.g.* Exhibit F April 21, 2005, letter from LML's Aaron Charfoos and April 26, 2005, reply from TeleCheck's Sean Hayes. TeleCheck took even longer to respond to some of LML's later discoveries. *See, e.g.* May 27, 2005, letter from TeleCheck's Sean Hayes responding to letters from LML dated May 12 and 18. Similarly, it took TeleCheck nearly a month from the time LML first notified it that these documents had been produced before it provided any replacement production CDs. *Id.* at May 19, 2005, letter from TeleCheck's Sean Hayes.

TeleCheck's counsel's grossly negligent failure to initially withhold the documents listed in Tab F and slow and/or non-response to protect the privilege after LML notified it that these documents were produced has waived whatever privilege may have originally attached to these documents.

### A. TeleCheck has waived any attorney work product privilege it may have had to the produced documents.

A party may waive the attorney work product that attaches to a document by disclosing that document to a third party. *In re Grand Jury*, 138 F.3d 978, 981 (3rd Cir. 1998) (finding that an inadvertent production nevertheless waived privilege). *See also Novartis Pharm. Corp. v. Abbott Laboratories*, 203 F.R.D. 159, 165 (D. Del. 2001) (citing *In re Grand Jury*); *In re Hechinger Investment Company of Delaware*, 303 B.R. 18, 24-25 (D. Del. 2003). An intentional disclosure would automatically waive the privilege.

However, even an inadvertent or intentional disclosure will waive the privilege. *Id.* "In determining whether a party has waived the privilege . . . courts consider, among other factors, the steps taken by a party to remedy the disclosure and any delay in doing so." *In re Grand Jury*, 138 F.3d at 981. In other words, ". . . the party asserting the work product doctrine must pursue all reasonable means to restore the confidentiality of the materials and to prevent further disclosures within a reasonable period to continue to receive the protection of the privilege." *Id.*

In *In re Grand Jury*, the Third Circuit found that the disclosing party had waived the privilege because, despite repeated requests for the return of the documents, the disclosing party had not sought "judicial vindication" of the privilege and return of the documents. *Id.* At 981-2. Similarly, in *In re Heichinger* this Court found that the privilege had been waived when the disclosing party did not timely request return of the documents, and then failed to follow up on that request. *In re Hechinger*, 303 B.R. at 24-25.

As an initial matter, it is not clear that TeleCheck's production was inadvertent in the first place. TeleCheck's counsel claims to have conducted at least two reviews of TeleCheck's production for privilege and did not withhold these documents despite their readily apparent privileged nature. Many are letters from outside counsel to TeleCheck on counsel's letterhead.

<div style="text-align: right">MORRIS, JAMES, HITCHENS & WILLIAMS LLP</div>

The Honorable Louis C. Bechtle
August 18, 2005
Page 11

Others are specifically titled or regarding "LML Patent Litigation . . ." Still others are labeled "Privileged." Moreover, a number of these documents appear to have been produced in a litigation involving a substantially similar set of documents as TeleCheck produced in this litigation. Thus, TeleCheck may have initially *intended* to produce these documents, only changing its mind after believing that LML wanted to use the documents.

Regardless of whether the production was intentional, TeleCheck has since waived the privilege because it failed to "pursue all reasonable means to restore" the confidentiality of the documents as required by the *In re Grand Jury* court. *In re Grand Jury*, 138 F.3d at 981-2. Moreover, TeleCheck has been slow to respond to LML's identification of potentially privileged documents, took nearly one month to produce a partial set of replacement production CDs and has most importantly failed to list many of these documents on its privilege log.

Moreover, even though TeleCheck has made an attempt to identify inadvertently produced documents other than those identified by LML, that effort has been far from thorough. For example, in a May 18, 2005 letter from LML to TeleCheck, LML identified at least three occasions where TeleCheck identified a document as privileged but LML's review indicated that numerous documents immediately adjoining those documents in the production were also privileged. Exhibit G (". . . FDC 112729-795 (TeleCheck only identified portions of this document, FDC 112740-9 and FDC 112778-87); FDC 112796-845 (TeleCheck only identified portions of this document 112836-45)").

Therefore, based on TeleCheck's own actions both in producing these documents, as well as its failure to adequately restore the privilege, TeleCheck has waived the attorney work product privilege on all documents listed in Tab F which were allegedly "inadvertently" produced.

### B. TeleCheck has waived any attorney-client privilege it may have had.

TeleCheck's counsel has also waived any potential attorney client privilege on the documents that were "inadvertently" produced. An inadvertent production by a client's counsel of attorney-client privileged documents may lead to a waiver of the privileged attached to those documents. *Berg Electronic, Inc. v. Molex, Inc.*, 875 F. Supp. 261, 263 (D. Del. 1995) *citing Federal Deposit Insurance Corp. v. Marine Midland Realty Credit Corp.*, 138 F.R.D. 479, 482 (E.D. Va. 1991). This is true even though the attorney-client privilege is held by the client. *Id.* "These cases look to the factual basis for the claim the disclosure was inadvertent to determine . . . . whether the disclosure was unintentional but was so negligent or reckless that the court should deem it intentional." *Berg*, 875 F. Supp. at 263. *See also Federal Deposit*, 183 F.R.D. at 482 ("Thus, many courts in this circuit and elsewhere have concluded that inadvertent disclosure may constitute a waiver of the privilege where the circumstances of the disclosure reflect gross

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

The Honorable Louis C. Bechtle
August 18, 2005
Page 12

negligence or a failure to take reasonable precautions to avoid the disclosure.") (citations omitted).

TeleCheck's counsel conducted at least two reviews for privileged documents in TeleCheck's production. Indeed, the second privilege review allegedly delayed production of many of TeleCheck's documents well past the Court ordered document production deadline. However, approximately 140 documents that appear to be privileged on their face were produced to LML—indeed, some appear to have also been produced in a separate litigation. Moreover, it was LML that first notified TeleCheck of the production of these documents. It does not appear that TeleCheck began conducting its third search for privileged documents until after LML first notified them of the problems with the production. Even after TeleCheck completed this third review, LML continued to find more documents that appear to be privileged. TeleCheck's counsel has not moved expeditiously or efficiently in attempting to restore the privilege. These actions amount to gross negligence in the protection of TeleCheck's attorney-client privilege. Therefore, this Court should find that the privilege has been waived to the documents in Tab F.

## CONCLUSION

For the foregoing reasons, LML requests that this Court issue an order compelling Defendants TeleCheck and ECHO to produce all documents identified in Tabs A-F.

Respectfully,

Mary B. Matterer

cc: All counsel via email

# EXHIBIT L

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF DELAWARE

LML PATENT CORPORATION, :
:
Plaintiff : NO: 04-858
v. :
TELECHECK SERVICES, INC. :
ELECTRONIC CLEARING HOUSE, INC., :
EXPRESSCHEX, INC., and :
NOVA INFORMATION SYSTEMS, INC. :

### SPECIAL MASTER ORDER NO. 1

Presently before the Special Discovery Master (SDM) is a letter motion dated July 14, 2005 requesting the SDM to order defendant TeleCheck Services, Inc. (TeleCheck) to produce 510 documents currently being withheld by TeleCheck on grounds of privilege. It is plaintiff's position that any privilege that may have been associated with these documents has been waived by not being listed on TeleCheck's April 5, 2005 Privilege Log.

The background set forth in the parties' letter briefs tells us that the United States District Judge Sue L. Robinson entered a Scheduling Order on October 22, 2004 providing for the production of all documents no later than March 4, 2005. At a status conference on March 22, 2005, among the issues presented to the court was the claim by the plaintiff of the need for both a privilege log as to withheld documents and the completion of the document production. The first topic pertinent to this motion to come up at the hearing was in respect to the need to complete the production of documents by the defendant. The transcript discloses at Page 6 that counsel for the defendant, when asked, advised the court that two weeks from that date, or April 5, 2005 would be satisfactory. The court stated in regard to that extended deadline "And may I say that if document production is not completed by April 5, we will start talking about sanctions because

this is your date and you told me you could do it and obviously, April 5th is substantially past March 4th. All Right [sic]?."

The Court was obviously emphasizing the notion that the date was important, had been suggested by counsel for TeleCheck, and the Court expected it to be met. Counsel for the plaintiff later moved the court to set a date certain for providing privilege log as to any documents withheld. Counsel stated to the Court at Page 12

> "I'd like to have a date certain by which the Court will compel the defendants to supply privilege logs and at which point, if the logs aren't produced, that the privilege will be considered waived."

After a brief reference from counsel for the defendant as to the difficulty he and plaintiff's counsel have had arriving at an agreement that would identify which documents being transmitted would not be deemed a waiver (for example a transmittal document), counsel for the defendants agreed again that two weeks would be sufficient o get the privilege log out. See Page 13 of the transcript. April 5th came and TeleCheck produced a privilege log to plaintiff but, nearly a month later TeleCheck produced another portion of this privilege log consisting of 85 pages and entitled "Part VI" listing the 510 documents that are the subject of this motion. Plaintiff believes that this additional delay, coupled with a warning that the plaintiff was seeking a waiver and so stated to the Court on March 22, 2005, warrants, when viewed in light of defendant's alleged conduct a waiver of any privilege in respect to the 510 documents listed on Part VI of defendants' belatedly filed privilege log.

Defendant's position is that the Court never ordered a blanket waiver at the March 22, 2005 hearing as a sanction for failure to meet the deadline. Defendant adds that the case law makes it clear that a waiver of privilege in instances like this is an extreme sanction and is reserved for cases of bad faith or flagrant violations of the rules. Finally, defendant suggests that plaintiff cannot point to any prejudice due to defendants' inadvertent omission of documents on

2

the original log and the addition of those documents less than a month after the extended deadline. Defendant seeks to buttress its view that what has happened should not support a sanction of waiver by reminding the reader that it has produced over a million and a half pages of documents in the case and that the sheer volume of documents required an extensive privilege log that in turn resulted in the inadvertent misplacement of documents resulting in their not being added to the original log. Counsel adds that as soon as the documents were discovered, they were added to the privilege log, presumably in the form of Part VI and provided some three weeks after the April 5, 2005 deadline.

Plaintiff's counsel challenges the veracity of the defendants' explanation for this delay in providing the privilege log on the following ground. In defendants' response of July 21, 2005 to plaintiff's motion for the waiver sanction, it stated to the SDM that the reason for the late delivery of Part VI of defendants' privilege log was that the documents left off of the original log had been inadvertently misplaced, and upon discovery some three weeks later, were added as Part VI to the privilege log. In an earlier letter dated May 1, 2005, however, defendants' counsel offered as the reason for the late delivery of Part VI was that it had been completed on time but mistakenly not transmitted with the remainder of the log that was provided before the deadline of April 5, 2005. Defendant's counsel endeavored to reconcile these two versions of the events in question at the status conference before the SDM on August 4, 2005.

Discussion

The sanction that plaintiff seeks here is neither new or novel nor is plaintiff's request that it be imposed inappropriate. Deadlines set by the court particularly in complex cases such as this one, are goals that every effort should be made to comply with. This is not just because it is the right thing to do, but for an extremely heavily burdened court deviations from reasonable

3

established deadlines cause unacceptable havoc with the orderliness and predictability of many, many other cases and matters that the court is expected to address in an orderly and prompt manner. Postponement and adjustment of dates interferes with other dates that are in place for other parties and counsel in other cases on the court's docket. Further, it is both inconvenient and unfair to parties who are expending dedication and resources to comply with a court calendar to experience frustration and delays caused by those who are not.'

The sanction that plaintiff seeks here against the defendants not only can have, but because it lifts a protection of privilege, is likely to have serious consequences upon the defendant in this litigation. It is for this reason that the sanction of waiver is understood to be considered only in cases where there is bad faith or such egregious conduct to warrant a sanction in the extreme. The parties in their briefs have made reference to *In re Painted Aluminum Products Antitrust Litigation*, No. CIV. A. 95-CV-6557, 1996 WL 397472 (E.D. Pa. July 9, 1996). This case supports the notion that the bar of waiver of privilege as a sanction is set quite high. In *Riracca v. Abbott Labs.*, 203 F.R.D. 332 (N.D. Il. 2001) cited by plaintiff, there was a chronicle of ongoing and long lasting conduct that resulted in at least a dozen episodes of stalling and imprecision regarding a number of document productions. When combined with misinformation on repeated occasions on what could only have been calculated refusal to communicate, the facts that warranted the sanction of waiver. That case demonstrates why the consideration of the sanction of waiver is examined on a case by case basis. The SDM does not believe here that the sanction of waiver was declared by the Court to be the predicted outcome of the failure of the defendant to produce its privilege log by April 5, 2005. Review of the transcript shows that when the issue of the completion of document production was being heard by the court at the March 22, 2005 hearing, the date of April 5, 2005 was suggested by

4

defendants' counsel and agreed to by the Court as the date that the Court was willing to accept. It was in regard to that prospect that the Court stated that if document production was not completed by April 5th, she would start talking about sanctions. It was later that counsel for the plaintiff first raised the question of waiver being a sanction. When plaintiff's counsel requested a date certain the Court did not respond to that suggestion of waiver by plaintiff's counsel but asked at Page 11

> The Court:   "And I take it plaintiff has provided its privilege log for all of these documents?"
>
> Mr. Hermann: "We have Your Honor."
>
> The Court:   "Alright"

That response by the Court seems short of what one would expect if the Court was agreeing in advance to the imposition of the severe sanction of waiver of privilege for failure to meet the extended deadline. Even if that response could be construed as such a prediction, it most likely would only have come about if an addition to the failure to produce the log, there was evidence of bad faith or egregious conduct that the authorities appear to require for the imposition of the harsh sanction of the waiver of privilege.

For these reasons, the SDM does not believe that the privilege of sanctions should be recommended to be imposed by the court upon the defendant for the failure to produce the logs on April 5, 2005.[1]

The SDM does believe, however, that the failure of the defendant to obey the Court's order warrants a payment to the plaintiff of the reasonable expenses and fees incurred that can be said to have been caused by the failure to comply with the Court's Order of March 22, 2005.

---

[1] Under Federal Rule of Civil Procedure 53( c), a Master appointed by the Court may by Order impose upon a party any noncontempt sanction provided by Rule 37. Accordingly, an order that declares a waiver of privilege in respect to documents cannot be ordered by a Master, but can only be recommended to the Court.

5

The Court gave the defendant ample opportunity to consider all of the factors associated with the time when the privilege log was to be provided. This was the second opportunity the defendant had to produce the log and the plaintiff was totally justified in seeking a sanction for the second failure to produce the log. This is not an instance of bad faith, recalcitrance or a policy of failure to cooperate. It is simply a question of the failure to comply with a clear, important court order resulting in further delay in respect to which the SDM finds ample warning was given. The delay pushed discovery completion forward allowing less time for resolution of privilege disputes that are emerging at this time. Plaintiff was justified in moving for sanctions in view of the expression by the Court on March 22, 2005, all at unnecessary cost and expense to the plaintiff.

For the foregoing reasons, the following Order is entered:

### ORDER

Defendant is ordered to pay to Plaintiff a sum equal to the reasonable expenses and attorney's fees incurred by plaintiff and its counsel in respect to its letter motion dated July 25, 2005 regarding the failure of the defendant to comply with the Court's Order of March 22, 2005 that required the defendant to complete its document production and to provide a privilege log on or before April 5, 2005 in respect to any document withheld by the defendant on the assertion of privilege.

SO ORDERED:

_____
LOUIS C. BECHTLE
Special Discovery Master