# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP. | ) |
| | ) |
| Plaintiff, | ) Civil Action No.: 04-858-SLR |
| vs. | ) |
| | ) |
| TELECHECK SERVICES, INC. | ) |
| ELECTRONIC CLEARING HOUSE, INC., | ) **PUBLIC VERSION** |
| XPRESSCHEX, INC., AND | ) |
| NOVA INFORMATION SYSTEMS, INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## LML'S RESPONSE TO ECHO'S AND XPRESSCHEX'S OBJECTIONS TO SPECIAL DISCOVERY MASTER ORDER NO. 5

Originally filed: November 14, 2005
Public version filed: November 21, 2005

Richard K. Herrmann #405
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Attorneys for Plaintiff LML Patent Corp.*

**Table of Contents**

I. INTRODUCTION ..........................................................................................................1

II. STATEMENT OF RELEVANT FACTS .....................................................................1

    A. ECHO's Improper Withholding Of Documents On The Basis Of Privilege............1

    B. Proceedings Before The Special Master ................................................................3

III. ARGUMENT ..................................................................................................................5

    A. The Special Master Properly Held That ECHO Waived Any Alleged Work Product Associated With Documents 16, 18, And 24 ............................................6

    B. The Special Master Properly Held That ECHO Waived Any Privilege As A Result Of Its Reliance On Advice Of Counsel ...................................................8

        1. *Documents 2-3, 9, 18, 35, And 44 Are Not "Non-Substantive Procedural Device," But Instead Relate To The Very Same Subject Matter As ECHO's Opinions Of Counsel* ..................................................9

        2. *Documents 14-16, 19-21, And 49 Are Related To The Subject Matter Of ECHO's Opinions Of Counsel* ..................................................10

        3. *Documents 24, 27-31, 54, 55 And 56 Relate To Invalidity -- One of The Subject Of ECHO's Opinions of Counsel* ..........................................11

    C. The Special Master Properly Held That ECHO Waived Any Privilege As A Result Of Its Reliance On Advice Of Counsel Related To The '528 Patent...............................................................................................................11

        1. *Documents 2-3, 9, 14-16, 18-21, 24-31, 35, 44, 49, 53-54, 56, 58, And 63 Are Relevant* ...............................................................................12

        2. *Any Privilege That Exists Regarding Documents 2-3, 9, 14-16, 18-21, 24-31, 35, 44, 49, 53-54, 56, 58, And 63 Has Already Been Waived And Cannot Now Be Retracted* .....................................................13

    D. ECHO's "Occurring After The Date Of the Relied-Upon Opinion" Argument Is Incorrect As A Matter Of Law And Fact .........................................14

IV. CONCLUSION.............................................................................................................16

# Table of Authorities

**Cases**

*Akeva L.L.C. v. Mizuno Corp.*,
243 F. Supp. 2d 418 (M.D. N.C. 2003) .................................................................... 14

*Allergan Inc. v. Pharmacia Corp.*,
2002 WL 1268047 (D. Del, May 17, 2002) .......................................................... 5, 14, 15

*Corning Inc. v. SRU Biosystems, LLC*,
223 F.R.D. 189 (D. Del 2004) .............................................................................. 10-11

*Cytyc Corp. v. AutoCyte, Inc.*,
C.A. No. 99-610-SLR (D. Del. Sept. 13, 2000) .................................................... 5, 8, 14

*Fort James Corp. v. Solo Cup Co.*,
412 F.3d 1340 (Fed. Cir. 2005) .............................................................................. 5, 6

*Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, LLC*,
202 F.R.D. 418 (E.D. Pa. 2001) ............................................................................ 13

*Medtronic, Inc. v. Guidant Corp. et al.*,
C.A. No. 03-848-SLR (D. Del. Oct. 25, 2004) ..................................................... 6

*Micron Separations, Inc. v. Pall Corp.*,
159 F.R.D. 361 (D. Mass. 1995) ........................................................................... 14

*Mosel Vitelic Corp. v. Micron Tech., Inc.*,
162 F. Supp. 2d 307 (D. Del. 2000) ...................................................................... 6

*Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*,
206 F.R.D 396 (D. Del. 2002) ............................................................................... 5-6

*Sharper Image Corp. v. Honeywell Int'l. Inc.*,
222 F.R.D. 621 (N.D. Cal. 2004) .......................................................................... 14

*Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*,
837 F. Supp. 616 (D. Del. 1993) ........................................................................... 6, 8

*Union Carbide Corp. v. Dow Chem. Co.*,
619 F. Supp. 1036 (D. Del. 1985) ......................................................................... 7, 10

*Verizon Cal. Inc. v. Katz Tech. Licensing Inc.*,
266 F. Supp. 2d 1148 (C.D. Cal. 2003) ................................................................. 14

**Rules**

Federal Rule of Civil Procedure 53 ............................................................................... 1

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 53, LML hereby responds to Defendant Electronic Clearing House, Inc.'s and XpressChex, Inc.'s (collectively "ECHO") Objections To Special Discovery Master Order No. 5. ECHO takes a "kitchen sink" approach to this appeal, arguing that -- for each of the 33 documents ordered produced -- that the Special Master erred for a number of different reasons. But, contrary to ECHO's arguments, the Special Master did not "disregard applicable case law" in making his ruling -- in fact, he specifically adhered to the very case law ECHO requested him to apply. Moreover, the Special Master conducted a detailed fact-intensive inquiry into ECHO's privilege log -- ***including an in camera review of each disputed document on ECHO's privilege log*** -- and made rulings according to those findings and in accordance with the applicable law. The Special Master correctly ordered ECHO to produce documents 2-3, 9, 14-16, 18-21, 24-31, 35, 44, 49, 53-56, 58, 63, 65-67, and 72.[1]

## II. STATEMENT OF RELEVANT FACTS

ECHO's description of the nature and stage of the proceedings and statement of the facts is wholly inadequate and misleading, and therefore, LML provides a complete description of the relevant facts.

### A. ECHO's Improper Withholding Of Documents On The Basis Of Privilege

On July 14, 2004, LML filed this suit claiming that the four Defendants, including ECHO, infringed three LML patents and further claiming that such infringement was willful. (Docket Entry 1). On October 22, 2004, the Court issued a Scheduling Order pursuant to which

---

[1] ECHO does not appeal the Special Discovery Master's order to produce documents 65-67 and 72. With respect to document number 63, the Special Master held that no privilege applied to the document regardless of waiver -- again ECHO does not appeal this finding that document 63 lacks any privilege status. Yet, ECHO has still not produced these documents. As a result, LML respectfully requests an order requiring production of these documents.

document production would close by March 4, 2005 and fact discovery would close by July 16, 2005. (Docket Entry 35). The Court also set a deadline of April 29, 2005 for Defendants to notify LML whether they intended to rely on the advice of counsel and "produce all documents within the scope of Defendants' waiver of privilege (as set forth by applicable case law) on or about April 29, 2005." (*Id.*).

On April 29, 2005, ECHO informed LML of its decision to rely on advice of counsel, but ECHO failed to produce "all documents within the scope of Defendants' waiver of privilege" as required by the Scheduling Order. Instead, ECHO produced only a fraction of those documents which, based on the descriptions on ECHO's privilege log, fell within the scope of its waiver of privilege. Of those documents, ECHO produced two opinions of counsel relating to the validity and infringement of LML's '988 and '528 patents. (*See* Exs. 1 and 2 ).[2] ECHO's first opinion, dated May 5, 2000, related to the validity and infringement of LML's '988 patent. (Ex. 1). In fact, while ECHO claims this opinion only relates to validity, the opinion specifically opines that "Claims 6, 7, and 12 were not analyzed as to validity because they do not appear to have potential relevance *from an infringement point of view*." (*Id.* at 2) (emphasis added). ECHO's second opinion, dated March 7, 2003, related to the validity and infringement of LML's '528 patent. (Ex. 2). Again, while ECHO denies that it relates to infringement, the opinion specifically addressed the issue: "(ECHO) *does not make, use or sell* any products/services which contain the elements that are recited in claims 8 and 13-18." (*Id.* at 2) (emphasis added).

ECHO provided LML with a privilege log identifying numerous documents (49 documents) that, on the face of the descriptions provided, fell within the scope of ECHO's

---

[2] For sake of brevity, LML only attaches the text of such opinions.

2

waiver of privilege.[3] (*See, e.g.*, Ex. 3, ECHO's May 17, 2005 Privilege Log). LML immediately requested ECHO produce the documents within the scope of its waiver, and further identify numerous documents with inadequate descriptions. (Ex. 4, May 18, 2005 Letter from L. Smith to M. Mizrahi). ECHO eventually produced fourteen (14) of the requested documents, but continued to improperly withhold many other documents that fell within the scope of ECHO's waiver, or that contained inadequate descriptions on ECHO's privilege log. (Ex. 5, June 1, 2005 Letter from D. Min to J. McDole).

### B.    Proceedings Before The Special Master

On May 2, 2005, the parties appeared before the Court, with one of the agenda items relating to ECHO's deficient privilege log. (Docket Entry 136). However, just before the hearing, counsel for all parties agreed to recommend and accept a Special Master to decide issues pertaining to the parties' privilege logs. (Ex. 6, May 2, 2005 Hearing Transcript at 5-7). In response to the parties' agreement and proposal, the Court appointed Judge Louis C. Bechtle as a Special Master to "address issue relating to the parties' privilege logs and rule on same." (Docket Entry 169).

On July 7, 2005, the Special Master conducted an initial conference with the parties to discuss procedures for addressing issues pertaining to privilege logs. At that conference, the Special Master ordered the parties to take a "hard look" at their privilege logs no later than July 28, 2005 to re-evaluate their claims of privilege. (Ex. 7, July 7, 2005 Hearing Transcript at 35-36). After this "hard look" deadline, ECHO still refused to produce numerous documents from

---

[3] Throughout discovery, ECHO's claims of privilege were a moving target as ECHO provided LML with numerous revisions of its privilege log including logs dated January 27, 2005, February 1, 2005, March 28, 2005, April 15, 2005, April 29, 2005, May 17, 2005, June 9, 2005, and July 28, 2005.

its privilege log that either fell within the scope of ECHO's waiver of privilege or contained inadequate descriptions.[4] (Ex. 8, August 2, 2005 Letter from D. Min to J. Bechtle). Instead, ECHO produced a revised privilege log on July 28, 2005. (Ex. 9, ECHO's July 28, 2005 Privilege Log).

On August 4, 2005, the Special Master again conducted a hearing to discuss the parties' privilege logs and set a procedure and briefing schedule by which the issues pertaining to ECHO's privilege log would be addressed. As a result of that briefing, the Special Master issued Special Discovery Master Order No. 3 (Ex. 10), concluding among other things that:

- "it appears that *at least two thirds* of the entries on ECHO's logs submitted for review do not, by their terms, satisfy the standards that apply to presentation of grounds for privilege based on the necessary elements that are required to be included in the log description."

- "the entries of 3, 9, 35 and 44 by their very description *defy any notion* that the document does not fall within the coverage of wavier of the attorney client privilege."

- "The high volume of rejections of privilege based on the character of the log entries, without the SDM having examined documents *in camera*, causes the SDM to suspect that there is either a *fundamental misunderstanding of the element of privilege and work-product protection* in regard to many of these documents, or the policy is when in doubt put it on the privilege log, when, because of the burden of proof regarding a privilege log, the policy should be the opposite."

(Ex. 10 at 6-8) (emphasis added). The Special Master also provided rulings on each of the disputed documents on ECHO's privilege log. (*Id.* at Ex. B). Despite these findings and rulings, the Special Master provided ECHO one last opportunity to re-evaluate its claims of privilege and produce documents to LML. (*Id.* at 8). The Special Master instructed ECHO to "take a second hard look at each and every document that it contends is entitled to privilege" and produce any

---

[4] ECHO only produced two additional documents after it took a "hard look" at its claims of privilege and the parties met and conferred regarding ECHO's privilege log.

4

documents removed from the privilege log to LML. (*Id.*). The Special Master also ordered another hearing to review any remaining documents *in camera* for a final determination with respect to ECHO's claims of privilege. (*Id.* at 8-9).

ECHO still refused to remove any documents from its privilege log. (Ex. 11). Thus, on October 12, 2005, the Special Master conducted a hearing to make a final determination with respect to the disputed documents from ECHO's privilege log. *At the hearing, the Special Master reviewed each and every disputed document in camera.* In doing so, the Special Master expressly considered and applied this Court's decisions in *Cytyc Corp. v. AutoCyte, Inc.*, CA No. 99-610-SLR (D. Del. Sept. 13, 2000) and *Allergan Inc. v. Pharmacia Corp.*, 2002 WL 1268047 (D. Del, May 17, 2002) (J. Robinson) -- the very cases ECHO now says the Special Master disregarded. (*See, e.g.*, Ex. 12, October 12, 2005 Hearing Transcript at 34-38). But, the Special Master, based on his *in camera* inspection of the disputed documents, concluded that the information contained in such documents fell outside the holdings of *Cytyc* or *Allergan*, and instead fell within the scope of ECHO's waiver. (*Id.*). Thus, the Special Master ordered such documents produced. (*Id.*). In all, the Special Master ordered ECHO to produce thirty-three (33) of the 43 disputed documents from its July 28, 2005 privilege log, and summarized those rulings in Special Discovery Master Order No. 5. (Ex. 13).

### III.  ARGUMENT

It is well-settled that when a party relies on the advice of counsel to defend against allegations of willful infringement, it waives privilege to all other documents relating either directly or indirectly to the same subject matter as those opinions. *See Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). This Court has consistently held that the scope of the waiver includes the waiver of the attorney-client privilege for all communications between the attorney and the client relating to the opinion. *Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*,

5

206 F.R.D. 396, 397 (D. Del. 2002); *Mosel Vitelic Corp. v. Micron Tech., Inc.*, 162 F. Supp. 2d 307, 311-13 (D. Del. 2000); *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*, 837 F. Supp. 616, 620-21 (D. Del. 1993). Indeed, "the waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Fort James*, 412 F.3d at 1349. The waiver also extends to any documents relating to the opinion in the possession of the accused infringer. *Thorn EMI*, 837 F. Supp. at 621.

"There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James*, 412 F.3d at 1349-50. Moreover, this Court has deemed privilege waived where—as here—defendants attempt to use the attorney-client privilege as both a sword and shield. *Medtronic, Inc. v. Guidant Corp. et al.*, C.A. No. 03-848-SLR (D. Del. Oct. 25, 2004).

ECHO's motion makes several statements of law, all of which were considered by the Special Master in his *in camera* review of the documents on ECHO's privilege log. The Special Master applied this law, and accordingly found that each document either was entitled to no privilege or immunity, or that if any privilege/immunity was associated with the documents, ECHO waived such protection.

### A. The Special Master Properly Held That ECHO Waived Any Alleged Work Product Associated With Documents 16, 18, And 24

The Special Master, after reviewing ECHO's disputed documents *in camera*, found that the document contained the same subject matter as that of ECHO's opinions of counsel. (*See* Ex. 12, October 12, 2005 Hearing Transcript at 86, 101, 108). Thus, the Special Master concluded that ECHO waived any privilege or immunity associated with these documents. In doing so, the

Special Master specifically acknowledged and understood ECHO's arguments with respect to work product.[5] (*See id.* at 98, 107). Yet, based on his *in camera* review of these documents, he properly ruled that ECHO waived any privilege or immunity associated with these documents based on its reliance on advice of counsel. As such, the Special Master's conclusions were proper and the documents in question should be produced.

Moreover, documents 16, 18 and 24 are not pure attorney work product as ECHO claims. Indeed, ECHO's privilege log claims that these documents are being withheld on the basis of both attorney-client privilege and work product immunity. (Ex. 9). This attorney-client claim of privilege is at odds with ECHO's argument now. Regardless, there is no hard and fast rule that all attorney work product is protected when a party waives privilege in relying on advice of counsel so long as it is not shared with the client. *See Union Carbide Corp. v. Dow Chem. Co.*, 619 F. Supp. 1036, 1051 (D. Del. 1985) (finding documents that were factual as opposed to legal in nature would be waived if they were within the subject matter of the opinion of counsel). The Special Master clearly understood this law in his *in camera* review of these documents and concluded that ECHO waived privilege and/or immunity with respect to such documents. Here, ECHO is attempting to claim work product immunity with respect to documents that were authored *more than 2 years* before LML even filed this action: document 16 (authored 4/11/02); document 18 (authored 4/17/02); and document 24 (authored 6/13/01). (Ex. 9, ECHO July 28, 2005 Privilege Log). This is hardly work done in anticipation of litigation as required by the work product doctrine.

---

[5] In fact, the Special Master concluded that some of the documents on ECHO's privilege log (documents 17, 32, 33, 36) were indeed pure work product despite the documents containing the same subject matter as ECHO's opinions of counsel. (Ex. 12, October 12 hearing transcript at 88-95, 120-22, 127-29). In those instances, the Special Master concluded that the document contained attorney work product, held that ECHO did not waive immunity, and allowed it to continue withholding such documents. (*Id.*).

7

Moreover, while LML has not seen these documents (as the Special Master reviewed them *in camera* and LML could not view them), ECHO's privilege log is instructive in showing that these documents are not work product. While the documents are identified by ECHO as being between attorneys, in reality these documents originated with the client. During this time, Mr. Mizrahi (ECHO's now trial counsel) was acting as a middleman between ECHO (the client) and ECHO's opinion counsel. (*See* Ex. 12, October 12, 2005 Hearing Transcript at 83-86). In fact, document 16 (described as "email communication forwarding log item #15) originated with ECHO's CEO, Joel Barry. (*See* Ex. 9 at document 15). Moreover, document 18 is a document outlining discussions and advice regarding the patents-in-suit that the attorneys were to give ECHO's CEO Mr. Barry. (*Id.* at document 18). Finally, with respect to document 24, the Special Master, again, understood the law, but after reviewing the document *in camera* found "Well, I think it's a waiver in its content, contents of the message. It makes it plain that it's waived." (Ex. 12 at 108). Thus, in applying the holdings of *Cytyc* and *Thorn*, the Special Master ordered these documents produced.

### B. The Special Master Properly Held That ECHO Waived Any Privilege As A Result Of Its Reliance On Advice Of Counsel

ECHO next argues that several documents on its privilege log fall outside the scope of its waiver and, thus, should not be produced. Again, the Special Master carefully reviewed the documents *in camera*, examined the corresponding law, and properly determined that such documents fell within the subject matter of ECHO's opinions of counsel. Consequently, the Special Master held that ECHO waived privilege and/or immunity with respect to these documents.

8

> 1. *Documents 2-3, 9, 18, 35, And 44 Are Not "Non-Substantive Procedural Device," But Instead Relate To The Very Same Subject Matter As ECHO's Opinions Of Counsel*

ECHO argues that the Special Master erred in ordering documents 2-3, 9, 18, 35, and 44 produced because these documents are allegedly "non-substantive procedural advice." However, after reviewing the documents *in camera*, the Special Master specifically concluded that the documents did not contain solely procedural advice and thus, ordered the documents produced.[6] (*See* Ex. 12, October 12, 2005 Hearing Transcript at 35-38). For instance,

- Document 2: the Special Master concluded, "as I read this entirely, while there is some reference to procedure here, there's other things as well." (*Id.* at 37).

- Document 3: the Special Master had the same analysis as document 2, stating "I think read as a whole, I think it's waived."[7] (*Id* at 47-48).

- Document 9: the Special Master concluded in his Order No. 3 that this document "by their very description *defy any notion* that the document does not fall within the coverage of waiver of the attorney client privilege." (Ex. 10 at 7). Moreover, the Special Master considered this very argument that ECHO is now making and rejected it after examining the document *in camera*.[8] (Ex. 12 at 51-55).

- Document 18 (discussed above): the Special Master reviewed the document *in camera* finding that it "has to do with the topic of the LML patent, and options and things like that." (*Id.* at 101-02).

- Document 35: the Special Master concluded this document had the same subject matter as document 9 (ECHO conceded this fact) and after reading the document *in camera* ordered it produced. (*Id.* at 123-25).

- Document 44: ECHO conceded that this document is a duplicate of document 9.

---

[6] Again, all of these documents were authored many years prior to any potential litigation.

[7] In fact, documents 2 and 3 have virtually identical descriptions to documents already produced by ECHO -- documents it admitted fell within its scope of waiver. (*See* Ex. 9, ECHO July 28, 2005 Privilege Log at documents 7, 8, 10).

[8] Again, this document also has an identical description as to documents 10 and 11 which ECHO voluntarily produced as waived as a result of its reliance on advice of counsel. (*See* Ex. 9).

As shown above, the Special Master carefully reviewed each of these documents *in camera* and decided that they were not "non-substantive procedural advice" as ECHO claims, but instead fell within ECHO's waiver.

### 2. Documents 14-16, 19-21, And 49 Are Related To The Subject Matter Of ECHO's Opinions Of Counsel

ECHO attempts to argue that documents 14-16, 19-21, and 49[9] are related to infringement -- not invalidity -- and therefore fall outside the scope of its waiver (which ECHO claims is limited to invalidity). This is simply wrong as a matter of fact. As explained above, ECHO's first opinion specifically opines that "Claims 6, 7, and 12 were not analyzed as to validity because they do not appear to have potential relevance *from an infringement point of view*." (Ex. 1 at 2) (emphasis added). ECHO's second opinion, dated March 7, 2003, related to the validity and infringement of LML's '528 patent. (Ex. 2). Again, while ECHO denies that it relates to infringement, the opinion specifically addressed the issue: "(ECHO) *does not make, use or sell* any products/services which contain the elements that are recited in claims 8 and 13-18." (*Id.* at 2) (emphasis added). Thus, contrary to ECHO's arguments otherwise, its opinions deal directly with both the issues of infringement and validity. The Special Master recognized this fact and therefore determined that the opinions did in fact relate to infringement. As a result, after examining the documents *in camera*, he concluded that ECHO had waived privilege with respect to these documents.[10]  (Ex. 12, October 12 Hearing Tr. at 102-06).

---

[9] ECHO claims that documents 14-16 and 49 relate to infringement. However, the descriptions provided on ECHO's privilege log make no such distinction. (Ex. 9).

[10] ECHO argues in a footnote that its VISA opinion is immune from waiver because of the common interest privilege associated with it. First, after reviewing the documents *in camera*, the Special Master properly determined that there was no common interest with respect to the documents which originated with VISA. (*See* Ex. 12, October 12, 2005 Hearing Transcript at 141-142). Indeed, in order for the common interest doctrine to apply the interest at issue must be legal *not* commercial. *See Union Carbide*, 619 F. Supp. at 1047; *Corning* (Continued...)

10

### 3. Documents 24, 27-31, 54, 55 And 56 Relate To Invalidity -- One of The Subjects Of ECHO's Opinions of Counsel

Despite admitting that its opinions relate to invalidity, ECHO argues that documents 24, 27-31, 54, 55, and 56 relate to "potential prior art and non-validity issues which were not the basis of the invalidity opinion and did not contribute to the ultimate conclusions stated therein." ECHO is apparently trying to not only exclude infringement from its opinions of counsel, but it is attempting to parse out potential prior art that the opinions allegedly did not address. This is directly contrary to the very cases ECHO cites in its objections. Indeed, ECHO states "The 'subject matter' of the formal opinion letters is properly characterized by the substantive topics covered therein, *such as infringement and validity*." (ECHO Br. at 6) (emphasis added). ECHO provides absolutely no support for the proposition that this subject matter should be narrowed even further to only include specific arguments made in its opinions. In fact, every case cited by ECHO states the proper waiver is validity, not some arbitrary subset of validity.[11] (ECHO Br. at 6-7). The Special Master recognized this bedrock law and thus, held that ECHO waived privilege with respect to these documents.

### C. The Special Master Properly Held That ECHO Waived Any Privilege As A Result Of Its Reliance On Advice Of Counsel Related To The '528 Patent

ECHO's next argument relates to documents that it claims relate only to the '528 patent which has been dismissed from this case and therefore do not fall within the scope of its waiver.

---

*Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190 (D. Del 2004). In addition, the interest at issue must be more than just similar, it must be *identical*. *See id*. ECHO failed to establish that these requirements were satisfied, and thus, the Special Master ordered the documents waived. (*See* Ex. 12, October 12, 2005 Hearing Transcript at 141-142). Regardless, even if a common interest privilege did exist, ECHO waived any privilege associated with this document when it decided to rely on advice of counsel -- it is the same subject matter as its opinion. Indeed, the common interest privilege only extends the attorney-client privilege to protect a privilege that is shared with a third-party -- it does not insulate a privilege that is voluntarily waived.

[11] As explained above, ECHO's opinions relate to both validity and infringement, and therefore, that is the proper subject matter waiver with respect to ECHO.

11

But, ECHO's argument is actually a relevancy argument, not a waiver argument. As such, this issue is more appropriately addressed as to admissibility of particular documents, not with respect to whether the Special Master properly held that ECHO waived privilege with respect to such documents. Indeed, ECHO has waived privilege with respect to these documents -- ECHO cannot retract this voluntary waiver simply because the '528 patent is no longer at issue in this case. The law does not work in such a manner. Moreover, while ECHO claims these documents relate to the '528 patent, its privilege log makes no such distinction, and as such, ECHO cannot make that argument here.[12] In any event, these documents remain relevant to this litigation as explained below.

        *1.*    *Documents 2-3, 9, 14-16, 18-21, 24-31, 35, 44, 49, 53-54, 56, 58, And 63 Are Relevant*

***First***, documents pertaining to the '528 patent are relevant to the issues in this case. While ECHO summarily dismisses this concept, the fact remains that the non-infringement and invalidity defenses of Defendants overlap extensively, and in many instances are identical.[13] In fact, ECHO's opinions of counsel, as well as present litigation positions, cite to the *very same prior art* for both the '988 and '528 patents. Moreover, while the two patents are not technically continuations of each other (as ECHO explains), they certainly have relation to each other -- they have virtually the same disclosure, the same inventors, and very similar claims. The '988 and '528 patents are related in subject matter. Finally, any argument ECHO has relating to relevance

---

[12] The Court ordered, as a result of the parties' agreement, that the Special Master should determine the adequacy of each parties privilege claims "as they substantially exist today . . . and decide whether they're complete, whether they're adequate, whether there's waiver, what's the scope left of the privilege in light of ECHO and Nova's relying on advice of counsel." (Ex. 6, May 2, 2005 Hearing Tr. at 5-6). ECHO simply cannot provide new descriptions not on its log when it suits it to avoid producing these documents.

[13] Indeed, the fact that these defenses were identical was one of the reasons that led LML to consider dismissing the '528 patent from this case.

is more properly an issue of admissibility at trial than one relating to waiver of privilege. ECHO simply cannot use its improper withholding of these documents for the past six months to now support an argument that the documents should not be produced at all. Such an argument would fly in the face of the Federal Rules and encourage all Defendants to delay productions.

        2.      *Any Privilege That Exists Regarding Documents 2-3, 9, 14-16, 18-21, 24-31, 35, 44, 49, 53-54, 56, 58, And 63 Has Already Been Waived And Cannot Now Be Retracted*

*Second*, ECHO cannot retract the waiver associated with its reliance on advice of counsel relating to the '528 patent. ECHO appears to argue that because the '528 patent has been dismissed from the case, that it no longer has waived privilege in that respect. Yet, once privilege has been waived, there can be no retraction of that waiver. *See Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, LLC*, 202 F.R.D. 418, 421 (E.D. Pa. 2001) (***"when** a party asserts an advice of counsel defense, it waives the attorney-client privilege with respect to all communications to and from counsel concerning the transaction for which counsel's advice was sought"*). The Special Master recognized this concept, stating "once the box has been opened, it's open." (*See* Ex. 12, October 12, 2005 Hearing Tr. at 21).

As ECHO fully admits, it has already produced its opinion of counsel relating to the '528 patent -- thus, it has already waived privilege with respect to the same subject matter as that opinion (i.e. validity and infringement). ECHO cannot retract this waiver. Moreover, ECHO's own case cites support LML's argument -- each of these cases states that privilege is waived where a party *relies* on an opinion. There is no question that (1) ECHO *relied* on its opinion relating to the '528 patent, and (2) produced this opinion to LML, thus waiving privilege. ECHO's case cites certainly do not stand for the proposition that a party may retract a waiver of privilege as ECHO attempts to do here. No such law exists.

13

D.   **ECHO's "Occurring After The Date Of the Relied-Upon Opinion" Argument Is Incorrect As A Matter Of Law And Fact**

ECHO's final argument relates to the dates that particular documents were authored. Specifically, ECHO argues that documents 2-3, 9, 14-16, 18-21, 24-31, 35, 44, 49, 58 and 63 were all authored after the date of its first opinion and thus allegedly do not fall within its waiver. There are numerous flaws with ECHO's argument, all of which are fatal to its argument.

First, ECHO's argument is completely dependent on its argument attempting to retract its waiver of privilege with respect to the '528 patent. As explained above, ECHO's argument in that regard has no basis in the law or fact. ECHO's argument thus fails for this reason alone.

Second, ECHO's analysis is incorrect as a matter of law. While ECHO attempts to present an out-of-context quote from one of the Court's previous opinions, it ignores the law as set forth in a number of cases that they cite in their own brief. *See Sharper Image Corp. v. Honeywell Int'l. Inc.*, 222 F.R.D. at 621, 643 (N.D. Cal. 2004); *Akeva L.L.C. v. Mizuno Corp.*, 243 F. Supp. 2d at 418, 423 (M.D. N.C. 2003); *Verizon Cal. Inc. v. Katz Tech. Licensing Inc.*, 266 F. Supp. 2d at 1148, 1149 (C.D. Cal. 2003); *Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361, 364 (D. Mass. 1995). Instead, ECHO has twisted the words of this Court into a hard and fast rule to create a timeline for the waiver which makes no fundamental sense. The entire purpose of the waiver is to allow the plaintiff to investigate and verify defendant's defense of good faith. *See Allergan*, 2002 WL 1268047 at *2; *Cytyc*, at 2. Indeed, if ECHO were to have received its opinion, and later was told by other counsel that its opinion was faulty, or provided further insight to the patents, under ECHO's version of the law, this information would not be subject to waiver. This does not make sense. ECHO's state of mind during the time that they are infringing is highly relevant to a willfulness inquiry and there is not reason to limit ECHO's

14

waiver to this limited time frame. Clearly, ECHO was receiving additional advice -- advice that LML should be able to probe to assess ECHO's true state of mind.

Third, the Special Master specifically considered ECHO's version of the law, and after examining the disputed documents *in camera* and applying ECHO's version of the law to such documents, still ordered the documents produced. For instance, ECHO made this very same argument to the Special Master, but after examining the contents of the allegedly privileged document, rejected ECHO's argument stating "But it relates back. There's information that relates back to the era where this activity was taking place. Waived." (Ex. 12, October 12 Hearing Tr. at 38). The Special Master clearly understood the holding of *Allergan*, and applied it to his rulings -- the result was waiver of privilege with respect to documents 2-3, 9, 14-16, 18-21, 24-31, 35, 44, 49, 58 and 63.

## IV. CONCLUSION

For the foregoing reasons, LML respectfully requests that the Court overrule Defendant ECHO's objections and uphold Special Discovery Master Order No. 5 in its entirety. LML also requests that the Court order ECHO to produce the documents at issue within three (3) days of this Court's Order upholding Special Discovery Master Order No. 5 -- no further cause for delay in such production is warranted.

Dated: November 14, 2005

/s/ RKH

Richard K. Herrmann #405
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Attorneys for Plaintiff LML Patent Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of November, 2005, I electronically filed the foregoing document, **PUBLIC VERSION OF LML'S RESPONSE TO ECHO'S AND XPRESSCHEX'S OBJECTIONS TO SPECIAL DISCOVERY MASTER ORDER NO. 5**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Collins J. Seitz, Jr., Esq.
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19801

William J. Marsden, Jr., Esq.
Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 21st day of November, 2005, the foregoing document was served via email on the following non-registered participants:

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Mark C. Scarsi, Esq.
Vision L. Winter, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

                         /s/ Richard K. Herrmann
                        Richard K. Herrmann (#405)
                        Mary B. Matterer (#2696)
                        MORRIS, JAMES, HITCHENS
                        & WILLIAMS LLP
                        222 Delaware Avenue, 10th Floor
                        Wilmington, Delaware 19801
                        (302) 888-6800
                        rherrmann@morrisjames.com

                        *Attorneys for Plaintiff LML PATENT CORP.*