IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP. | ) |
| | ) |
| Plaintiff, | ) Civil Action No.: 04-858-SLR |
| vs. | ) |
| | ) |
| TELECHECK SERVICES, INC. | ) |
| ELECTRONIC CLEARING HOUSE, INC., | ) |
| XPRESSCHEX, INC., AND | ) |
| NOVA INFORMATION SYSTEMS, INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**LML'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION NO. 4:
FOR A RULING LIMITING THE TESTIMONY OF ALAN G. GOEDDE**

Dated: November 21, 2005

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
Edward K. Runyan
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Counsel for LML Patent Corp.*

In its Response, Nova recognizes that Dr. Goedde's testimony must be "based on sufficient facts and data." *See* Nova's Opp'n to *Daubert* No. 4 at p. 7 (citing FED. R. EVID. 702). Nova also acknowledges that Dr. Goedde "must have good grounds for his [] belief." *Id.* (citing *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (internal citations and quotations omitted)). Additionally, Federal Rule of Civil Procedure 26(a)(2)(B) requires that the report of a testifying expert provide "all opinions to be expressed and the basis and reasons therefor; [including] the data or other information considered by the witness in forming the opinions." FED. R. CIV. P. 26(a)(2)(B). Yet Nova's Response (like Dr. Goedde's expert report and deposition) fails to point to *any* "facts," "data," or "grounds" to support Dr. Goedde's contentions that Nova had acceptable, non-infringing alternatives available to it during the period of infringement, let alone *sufficient* facts and data or *good* grounds. Nova tries to hide Dr. Goedde's unreliable contentions by claiming that his statements regarding alternatives are "assumptions" and not "opinions." However, this is a semantics game, because whether you call his testimony on acceptable non-infringing alternatives "opinion" or "assumption," Nova has not and cannot show that such contentions are based on anything other than unsupported, unspecific statements by litigation counsel. *Daubert* simply does not allow experts to provide such unreliable and unsupported testimony.

I.  **ARGUMENT IN REPLY**

In its Response, Nova does *nothing* to try to support or add credence to Mr. Goedde's opinions, and instead tries to say that it is okay for an expert to rely on unsupported, conclusory assertions from counsel. Nova says that those opinions will at some point down the road through the testimony of others be "proven" but fails to say how or by whom. In fact, Nova's technical expert offered no opinions as to what

potential alternatives may exist. And, more importantly, the fact that counsel may be able to come up with some options after claim construction is irrelevant. The key (under the law) is that alternatives be available at the time of the hypothetical negotiation—nothing in the record and nothing in Nova's response shows that there are or were any available alternatives at that time, nor are there any today. In short, Nova has not and cannot demonstrate that Mr. Goedde's opinions regarding alleged non-infringing alternatives are not unsupported speculation, and therefore the Court should preclude him from offering such testimony at trial.[1]

Dr. Goedde, Nova's damages expert, analyzed the *Georgia Pacific* factors to determine what he believes is a reasonable royalty in this case. In so doing, he opined—or as Nova says, assumed—that the existence of some alleged non-infringing alternative lowers the rate that the parties would have agreed on during the hypothetical negotiation. Such opinions have no basis in fact or the record but instead are based solely on counsel's argument; such opinions are not reliable nor would they assist the trier of fact.

### A. *Daubert* Requires That An Expert's Opinions Be Based On Something More Than Sheer Speculation.

LML seeks to preclude Dr. Goedde from offering any opinions regarding the alleged existence of non-infringing alternatives because—as testified to *ad nauseam* in his deposition—the sole basis for any such opinions was a blanket statement by counsel

---

[1] In its response, Nova spent nearly half its brief trying to point fingers at some alleged deficiencies in LML's own damages expert's testimony as a reason to excuse the shortcomings in Dr. Goedde's report and deposition testimony. How what LML's expert did has any bearing on whether Nova's expert is offering credible and reliable opinions is a mystery. In fact, nothing in *Daubert* or its progeny says that the Court should look at another party's expert and see what *he* did to determine whether *the expert in question* is providing sound, reasonable opinions. Trying to find fault in LML's expert is nothing more than a red herring—a desperate attempt to avoid the deficiencies in Dr. Goedde's own opinions.

that such alternatives may exist. As shown in detail in the memorandum in support of this motion, Dr. Goedde knows nothing about the alternatives—he cannot even identify if they exist now or at the time of the hypothetical negotiation. Notably, Nova does not try to argue that such opinions are based on something more than attorney argument. What Nova does argue is that Dr. Goedde's opinions satisfy *Daubert* because, according to Nova, in such an analysis the issue is not whether the "facts" (in this case the blanket statement provided by counsel that alternatives exist) are true, but whether the expert used proper methodology. *See* Nova's Opp'n to *Daubert* No. 4 at p. 7. In this case, even using Nova's incomplete read of *Daubert*, Dr. Goedde did not use proper methodology. As Nova itself acknowledges in citing to case law, proper methodology requires some investigation, some facts: proper methodology is *not* "subjective belief or unsupported speculation." *See id.* at p. 7 (citing *Schneider*, 320 F.3d at 404 ("[T]he testimony must be reliable; it must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief.") (internal citations and quotations omitted)).

    B.    **Federal Circuit Law Requires That A Damages Analysis Regarding Acceptable, Non-Infringing Alternatives Be Based On Sound Facts.**

Another reason why Dr. Goedde's opinions on alleged non-infringing alternatives should be excluded is because such opinions would not assist the jury. In making its damages determination, the jury can consider the impact of non-infringing alternatives provided that the alternatives are acceptable and available. In this case, Dr. Goedde has no idea if either is true so his opinions on the impact of such mystery alternatives are wholly unreliable.

In *Grain Processing Corp. v. Am. Maize-Prods. Co.*, the Federal Circuit held that an acceptable non-infringing alternative must have the patented advantages and must be available. 185 F.3d 1341 (Fed. Cir. 1999). To try to get around the clear standard set forth by the Federal Circuit, Nova claims that LML is making up the law and that this standard only applies to lost profits analysis because it looks at the "but-for" world. Not true. ***First***, the Federal Circuit has held that a reasonable royalty analysis "assesses the relevant market as it would have developed before and absent the infringing activity." *Integra Lifesciences I, Ltd. v. Merck KGaA,* 331 F.3d 860, 870 (Fed. Cir. 2003) (overruled on other grounds by *Merck KGAA v. Integra Lifesciences I, Ltd.,* 125 S. Ct. 2372 (2005)). Thus, a reasonable royalty analysis requires considering what would have happened absent infringement—a "but-for" analysis, which would necessarily include what alternatives are available. And this analysis "must be based on 'sound economic and *factual* predicates.'" 331 F.3d at 870 (emphasis added) (internal citations omitted). In this case, Mr. Goedde's so-called analysis regarding available alternatives consisted of accepting counsel's opinion, absent any factual underpinnings or support.

***Second***, while the Federal Circuit has not specifically addressed the idea of acceptable, non-infringing alternatives in the context of reasonable royalty, the court's precedent—as well as scholarly analyses—show that the *Grain Processing* holding does apply to a reasonable royalty damages analysis. *See Integra Lifesciences,* 331 F.3d at 869-71 (finding that an analysis of what the market would have been—*ie.,* the "but-for" world—absent infringement is necessary in a reasonable royalty analysis); *Riles v. Shell Exploration & Prod. Co.,* 298 F.3d 1302, 1311 (Fed. Cir. 2002) ("Again, [a reasonable royalty] analysis necessarily involves some approximation of the market as it would have

hypothetically developed absent infringement. This analysis, in turn, requires sound economic and factual predicates."); Joan L. Eads, *Does Grain Processing Apply in a Reasonable Royalty Damage Analysis?*, 10 No. 26 ANDREWS INTELL. PROP. LITIG. REP. 13 (2004) (opining that, after an investigation and review of precedent, the Federal Circuit would and should apply the standard set forth in *Grain Processing* to a reasonable royalty analysis). In fact, in *Riles*, the Federal Circuit (citing to *Grain Processing*) found that the availability of non-infringing alternatives would necessarily impact the hypothetical negotiation and should be considered. *Riles*, 298 F.3d at 1312. More importantly, the Federal Circuit has said, prior to *Grain Processing*, that the ability to sell a non-infringing alternative may impact a reasonable royalty analysis. *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571-72 (Fed. Cir. 1996) ("[T]he fact that Wyko COULD have continued marketing the SIRIS is a factor relevant to the determination of a proper royalty during hypothetical negotiations.") (emphasis in original). And this is exactly what Nova's expert tried to do—assess the impact of alleged non-infringing alternatives on the hypothetical negotiation. The issue is not whether he should have done this, the issue is that Dr. Goedde's analysis was not predicated on sound facts, as required by the Federal Circuit.

C.   **Dr. Goedde's Assumptions Regarding Alleged Non-Infringing Alternatives Are Not Proper.**

In assessing damages, Dr. Goedde is trying to purportedly determine what the outcome of a hypothetical negotiation between Nova and LML would have been. In so doing, he looks at the impact of alleged non-infringing alternatives on the outcome of this hypothetical negotiation. Specifically, Dr. Goedde opines that the existence of these phantom non-infringing alternatives would lower the agreed-upon rate. Nova tries to

argue that the existence of allegedly non-infringing alternatives was just an assumption that Dr. Goedde made, and he can rely on assumptions given to him by counsel. As support for this position, Nova cites to *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591. Nova's reliance on that case is misplaced. The accountant in *Tuf* was not considered an expert and was not subject to the *Daubert* standard. As the *Tuf* court noted, "[h]e was doing accounting." *Id.* Moreover, while Dr. Goedde may be permitted to make assumptions, those assumptions must be based on something—facts, data, investigation, research, etc.—not just a reiteration of what counsel said.

In this case, Dr. Goedde is offering expert opinion—he is not simply doing accounting—and he is subject to *Daubert* reliability requirements. And under the standards set by *Daubert* and Rule 702, assumptions must be based on fact, not unsupported speculation. *See* FED. R. EVID. 702 advisory committee notes ("The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted."); *see also Schneider*, 320 F.3d at 404 (holding that Rule 702 requires that "the expert must have good grounds for his or her belief" and cannot base his testimony on "subjective belief and unsupported speculation"). Dr. Goedde's assumptions have no grounds or basis in fact but rather are based solely on counsel's speculation that depending on how the claims are construed by this Court, some form of alternative will manifest itself. What that alternative will be is something that no one, apparently not even counsel for Nova, knows: "[I]t is impossible for either side to identify what are acceptable, non-infringing alternatives." Nova's

6

Opp'n to *Daubert* No. 4 at p. 12.[2]  Notably, Dr. Goedde did not even ask the one Nova employee he interviewed about possible alternatives.

Nova argues that LML does not challenge many of the conclusions or opinions in Dr. Goedde's report. This is true—many of the conclusions reached by Dr. Goedde are built on a house of cards and can easily be dismantled on cross examination, but, regardless of how tenuous, these conclusions at least purport to be based on the record. This is simply not the case with respect to his opinions on alleged non-infringing alternatives. Nothing, absolutely nothing, supports Dr. Goedde's assumption that some sort of alternative was available and acceptable at the time of the hypothetical negotiation.

Finally, in its response brief, Nova goes into a great deal of detail concerning testimony about paper as an alternative to electronic check conversion. *See* Nova's Opp'n to *Daubert* No. 4 at 12-14. Nova claims that this creates a factual dispute regarding the existence of non-infringing alternatives. However, as indicated in its opening brief, LML is not seeking to preclude Dr. Goedde from opining on paper as an alternative—such an argument will easily be dismantled on cross examination. Nor is LML seeking to preclude Dr. Goedde from opining on the *Georgia Pacific* factors in general. The relief that LML seeks is to limit Dr. Goedde from confusing the jury with testimony about the impact of some (at this point) non-existent alternative on the

---

[2] Nova's argument that such evidence will allegedly be presented at trial is both inappropriate and troubling. The only way that the record could ever support Dr. Goedde's speculative assumption is if Nova were to present new, previously undisclosed theories. Discovery in this case closed, technical experts have provided their opinions, and nothing in the record provides any evidence of any acceptable, non-infringing alternatives.

hypothetical negotiation. Such opinions are baseless and inherently unreliable. Accordingly, the Court should preclude Dr. Goedde from opining on the impact of allegedly non-infringing alternatives.[3]

---

[3] Defendants also claim that LML did not meet and confer with Defendants prior to filing its *Daubert* motion. But LML filed its motion in accordance with the express provisions of this Court's Scheduling Order, which mandated that any *Daubert* motions "be made by motion not later than the deadline for dispositive motions" (i.e. October 28, 2005). (Docket Entry 35 at ¶ 2(c)(3)); *see also Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986) ("[S]cheduling orders are at the heart of case management."). As such, LML's local counsel did not advise LML of any need to file a Rule 7.1.1 certificate with its *Daubert* motions, nor has LML's local counsel ever been informed of a deficiency for not attaching a Rule 7.1.1 certificate to a *Daubert* motion.. (*See* Ex. A, Declaration of R. Herrmann, Esq.). Indeed, *Daubert* motions are akin to dispositive motions as the granting of such a motion generally prohibits a party from meeting its burden of proof. *See, e.g., Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 436-37 (D. Del. 2004) (striking an expert's invalidity opinions and ultimately granting summary judgment of no anticipation). In *Oxford Gene Technology*, **the parties did not file any Rule 7.1.1 statements with their Daubert motions**. Therefore, LML's *Daubert* motion should be decided on its merits. *See Amico v. New Castle County*, 654 F. Supp. 982, 994 (D. Del. 1987) (finding that the "spirit of rules is to settle controversies upon their merits rather than to dismiss them on technical grounds") (citation omitted).

8

## II. CONCLUSION

For all of the reasons stated above, LML respectfully requests that the Court grant its *Daubert* motion and limit the testimony of Nova's damages expert Alan G. Goedde regarding the existence of alleged non-infringing alternatives.

Dated: November 21, 2005

/s/ Mary Matterer
Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com
shadley@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Attorneys for LML Patent Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of November, 2005, I electronically filed the foregoing document, **LML'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION NO. 4: FOR A RULING LIMITING THE TESTIMONY OF ALAN G. GOEDDE**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Collins J. Seitz, Jr., Esq.
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19801

William J. Marsden, Jr., Esq.
Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 21st day of November, 2005, the foregoing document was served via email and via federal express on the following non-registered participants:

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Mark C. Scarsi, Esq.
Vision L. Winter, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

/s/ Mary Matterer
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS
& WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com

*Counsel for Plaintiff LML PATENT CORP.*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LML PATENT CORP. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-858-SLR |
| vs. | ) | |
| | ) | |
| TELECHECK SERVICES, INC. | ) | |
| ELECTRONIC CLEARING HOUSE, INC., | ) | |
| XPRESSCHEX, INC., AND | ) | |
| NOVA INFORMATION SYSTEMS, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DECLARATION OF RICHARD K. HERRMANN, ESQ.

I, Richard K. Herrmann, Esq., declare as follows:

1. I serve as one of the Delaware counsel of record for the plaintiff LML in this action.

2. I have reviewed the Defendants' memoranda in opposition to LML's *Daubert* Motions filed pursuant to paragraph 2(c)(3) of the Case Scheduling Order on October 28, 2005.

3. In those briefs, Defendants criticize LML for filing *Daubert* Motions without engaging in the meet and confer process and without filing a Delaware Local Rule 7.1.1 certificate.

4. Since the filing of *Daubert* motions is specifically permitted in case scheduling orders, and because the deadline for filing such motions is the same as that for dispositive motions, I do not advise lead counsel of the need to file a Rule 7.1.1 certificate with the filing of a *Daubert* motion, and, accordingly, I did not do so in this case. I have never been informed of a deficiency for not attaching a Rule 7.1.1 certificate to a *Daubert* motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on this 21st day of November 2005 in Wilmington, Delaware.

Richard K. Herrmann, Esq.