# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LML PATENT CORP.                              )
                                             )
                  Plaintiff,                 )    Civil Action No.:  04-858-SLR
       vs.                                   )
                                             )
TELECHECK SERVICES, INC.                     )
ELECTRONIC CLEARING HOUSE, INC.,             )    **PUBLIC VERSION**
XPRESSCHEX, INC., AND                        )
NOVA INFORMATION SYSTEMS, INC.               )
                                             )
                  Defendants.                )
                                             )
_____     )

---

## LML'S MEMORANDUM IN OPPOSITION TO
## ECHO'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

Originally filed:  November 15, 2005
Public version filed:  November 22, 2005

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware  19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
Edward K. Runyan
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
(312) 861-2000

*Counsel for LML Patent Corp.*

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................1

II.   STATEMENT OF THE FACTS ............................................................3

    A.    THE INVENTION DESCRIBED IN THE '988 PATENT ...................3

    B.    ECHO'S PRODUCTS AND SERVICES....................................5

        1.    CHEXpedite and XpressConversion................................6

        2.    ECHO's Visa POS Check Service.................................6

III.  LEGAL STANDARDS ........................................................................9

    A.    SUMMARY JUDGMENT ...............................................9

    B.    INFRINGEMENT..................................................11

IV.   ARGUMENT......................................................................11

    A.    THE DECLARATION OF KRIS WINCKLER IN SUPPORT OF
        ECHO'S MOTION SHOULD BE STRICKEN .................................11

        1.    Twenty-Two of the Twenty-Eight Exhibits Relied on By Mr.
            Winckler Were Not Produced in Discovery ..............................11

        2.    Mr. Winckler's Declaration Contains Improper Expert Opinions.............12

        3.    Mr. Winckler's Declaration Should Be Disregarded As It
            Contradicts His Prior Deposition Testimony.............................14

    B.    ECHO'S "ANY BANK CHECK" NON-INFRINGEMENT
        ARGUMENTS FAIL AS A MATTER OF LAW AND FACT ...........................16

        1.    Defendants' Claim Constructions—On Which ECHO's Motion Is
            Exclusively Based—Are Improper .........................................17

        2.    ECHO Offers No Argument Or Evidence Of Non-Infringement
            Under LML's Proper Claim Constructions..................................20

    C.    ECHO'S ACCUSED PRODUCTS SATISFY THE ELEMENTS OF
        CLAIM 1, 8 AND 9 WHICH ACTUALLY RECITE THE PHRASE
        "ANY BANK CHECK" ...................................................23

1.   ECHO's Accused Products are "Adapted to Receive Consumer Bank Account Information From Any Bank Check" as Recited in Claim 1 ..................................................................................24

2.   ECHO's Accused Products Perform the Step "Presenting Any Bank Check Specimen to a Point of Sale Terminal Located at a Merchant or Service Provider" as Recited in Claim 8 ...............................26

3.   ECHO's Point of Sale Terminals Have "Means for Reading Magnetic Ink Character Recognition Numbers on Any Consumer Bank Check" as Recited in Claim 9 ...........................................................27

D.   ECHO'S ACCUSED PRODUCTS SATISFY THE "WITHOUT USING THE [BANK] CHECK AS A NEGOTIABLE INSTRUMENT" ELEMENT IN CLAIMS 1, 8 AND 9 ....................................................33

1.   Defendants' Construction of "Without Using the [Bank] Check as a Negotiable Instrument"—On Which ECHO's Motion Is Exclusively Based —is  Improper ...........................................................33

2.   ECHO Offers No Argument Or Evidence Of Non-Infringement Under LML's Proper Claim Construction Of "Without Using The Check As A Negotiable Instrument" .........................................34

3.   Even Under Defendants' Proposed Construction Of "Without Using The [Bank] Check As A Negotiable Instrument," ECHO's Accused Products Satisfy This Element ....................................37

E.   ECHO'S ACCUSED PRODUCTS READ CHECKS FOR THE "SOLE PURPOSE" OF OBTAINING "CONSUMER BANK ACCOUNT INFORMATION" AS RECITED IN CLAIMS 2, 8 AND 9 ................................38

V.   CONCLUSION .................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abtox, Inc. v. Exitron, Corp.,*
      122 F.3d 1019 (Fed. Cir. 1997)..................................................................... 34

*Anderson v. Liberty Lobby, Inc.,*
      477 U.S. 242 (1986).................................................................................... 10

*Arthrocare Corp. v. Smith & Nephew, Inc.,*
      2003 WL 1856436 (D. Del. 2003)................................................................ 10

*Bickling v. Kent Gen. Hosp., Inc.,*
      872 F. Supp. 1299 (D.Del. 1994)............................................................... 9, 10

*Biotec Biologische Nat. GmbH & Co. KG v. Biocorp, Inc.,*
      249 F.3d 1341 (Fed. Cir. 2001).................................................................. 10

*Celotex Corp. v. Catrett,*
      477 U.S. 317 (1986)..................................................................................... 9

*Chipollini v. Spencer Gifts, Inc.,*
      814 F.2d 893 (3d. Cir. 1991)..................................................................... 9-10

*Cordis Corp. v. Boston Scientific Corp.,*
      2005 WL 1331176 (D. Del. June 3, 2005).................................................. 10

*Dayco Prods., Inc. v. Total Containment, Inc.,*
      258 F.3d 1317 (Fed. Cir. 2001)................................................................. 39

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,*
      45 F.3d 1550 (Fed. Cir. 1995)................................................................... 10

*Hewlett-Packard Co. v. Bausch & Lomb Inc.,*
      909 F.2d 1464 (Fed. Cir. 1990).................................................................. 18

*Intel Corp. v. ITC,*
      946 F.2d 821 (Fed. Cir. 1991)............................................................... 18, 38

*Joy Tech., Inc. v. Flakt, Inc.,*
      6 F.3d 770 (Fed. Cir. 1993)....................................................................... 19

*Key Pharms. Inc. v. Hercon Labs. Corp.,*
      981 F. Supp. 299 (D. Del. 1997)............................................................ 18, 38

*In re Kollar,*
      286 F.3d 1326 (Fed. Cir. 2002).................................................................. 18

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995); *aff'd,* 517 U.S. 370 (1996) ................................. 11

*Martin v. Merrell Dow Pharm., Inc.,*
    851 F.2d 703 (3rd Cir. 1988) ........................................................................ 14

*Mash v. Xerox Corp.,*
    2000 WL 1728250 (D. Del. April 11, 2000) ..................................................... 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ..................................................................................... 10

*N. Am. Container, Inc. v. Plastipak Packaging Inc.,*
    415 F.3d 1335 (Fed. Cir. 2005) ...................................................................... 17

*NTP v. Research in Motion, Ltd.,*
    418 F.3d 1282 (Fed. Cir. 2005) ...................................................... 18, 22, 26

*Philips Elecs. N. Am. v. Contec Corp.,*
    2004 WL 769371 (D. Del. April 5, 2004) ................................................. 12, 31

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) ............................................... 33, 34, 35

*SanDisk Corp. v. Memorex Prods., Inc.,*
    415 F.3d 1278 (Fed. Cir. 2005) ...................................................................... 19

*U.S. v. Conn.,*
    297 F. 3d 548 (7th Cir. 2002) ........................................................................ 13

**Statutes**

35 U.S.C. 112(6) ................................................................................................ 21

**Rules**

Fed. R. Civ. P. 56(c) .......................................................................................... 9

Fed. R. Evid. 401 .............................................................................................. 35

Fed. R. Evid. 402 .............................................................................................. 35

Fed. R. Evid. 701 ........................................................................................ 12, 14

Fed. R. Evid. 702 .............................................................................................. 30

Fed. R. Evid. 801 .............................................................................................. 35

## I.    INTRODUCTION

ECHO's motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,484,988 (the "'988 patent") should be denied.  ECHO's motion is limited to three arguments, all of which lack merit.  Indeed, ECHO's arguments are based *exclusively* on Defendants' improper claim constructions.  Under LML's proper claim constructions, ECHO offers no argument or evidence of non-infringement.  But, even under Defendants' improper constructions, a genuine issue of material fact still exists for trial.

*First*, ECHO argues that its accused products "do not conduct electronic transactions using any bank check."  ECHO contends that the phrase "any bank check" should be read into the claim elements of "enabling automated clearing house communication for transferring funds" (claims 1 and 9) and "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations" (claim 8).[1]  Notably, *the phrase "any bank check" does not appear anywhere in these claim elements*.  ECHO's argument is simply based on an extreme and strained effort to import the term "any bank check" into these elements.

*Second,* ECHO argues that its accused products do not infringe the claims in which the phrase "any bank check" actually appears.  However, ECHO's argument is based on a fundamental misunderstanding of the claims and flawed testimony from its alleged expert.  The fact remains that ECHO's accused products can read or receive consumer bank account information from any bank check in a variety of ways that neither ECHO nor its expert address whatsoever, such as via manual keyboard entry.

---

[1] LML does not assert claim 8 of the '988 patent in this case, but does assert claims 16 and 18 which depend from claim 8.

**Third**, ECHO argues that its accused products do not satisfy the phrase "without using the check as a negotiable instrument" found in claims 1, 8, and 9 of the '988 patent. Again, ECHO's argument is wholly dependent on Defendants' improper claim construction. ECHO offers no argument or evidence of non-infringement under LML's proper construction of this phrase—where the check is used as a source of information, and is not accepted or processed. Indeed, ECHO concedes that its accused products comply with NACHA operating rules which require that the bank check be used only as a "source document" for electronic settlement, and is not accepted or processed. But, even under Defendants' improper construction of this phrase, a genuine issue of material fact exists.

**Fourth**, ECHO argues that because its accused products read the check number off a check in addition to the ABA/transit routing number and bank account number, it does not read the check "for the sole purpose" of obtaining "consumer bank account information" as required by claims 2, 8 and 9 of the '988 patent. ECHO's argument is again based exclusively on Defendants' improper construction of "consumer bank account information" which attempts to improperly limit this phrase to "ABA/transit routing number and bank account number only." But, under LML's proper claim construction of this limitation—"information relating to a consumer's bank account including the MICR line"—ECHO concedes that it satisfies this element.

At the very least, a genuine issue of material fact exists as to each of ECHO's non-infringement arguments thus precluding summary judgment. In fact, the evidence actually shows that ***ECHO's accused products infringe*** the '988 patent.[2]

## II.    STATEMENT OF THE FACTS

### A.    The Invention Described In The '988 Patent

In the early 1990's, two inventors, Robert Hills and Henry Nichols, developed a new way of processing checks at the point of sale, *i.e.* at the merchant's location. Their innovative process greatly simplified traditional check processing and helped merchants facilitate the way that they received payment on checks presented by their customer. (*See generally*, Ex. 1 '988 patent)[3]. Instead of traditional processing where the merchant accepted a check and physically took it to the bank, the invention disclosed in the '988 patent permitted the merchant to obtain approval for a transaction at the point of sale in the presence of the consumer and then process the check electronically, as shown in Fig. 1 of the '988 patent:



## FIG. 1

---

[2] LML's Memorandum in Support of Its Motion for Summary Judgment No. 2 details ECHO's infringement of claims 1, 2, 4, 5, 6, 9, 10, 11 and 16 of the '988 patent.

[3] Exhibits to the Declaration of Lesley Smith in Support of LML's Memorandum in Opposition to ECHO's Motion for Summary Judgment of Non-Infringement, hereinafter ("Ex. ___").

(Ex. 1 at Fig. 1). This process negated the need for physically taking the check to the issuing bank, eliminating the significant cost and expense associated with traditional processing of paper checks. (*See generally,* Ex. 1 at "Abstract" and 3:3-8).

In general, the '988 patent allowed merchants to use a paper check presented by a consumer whereby the MICR data[4] contained on the check is captured at the retailer's point of sale terminal, using either a commercially available MICR reader, optical character recognition scanner or keypad to physically input the information into the terminal. (*Id.* at 5:45-49, 6:62-63). The amount of the transaction is then entered into the terminal keypad. (*Id.* at 8:11-13). Information relating to the merchant's location, date and time of transaction may be automatically captured by the terminal as well. (*Id.* at 5:18-21). The terminal then sends data to an electronic check processing provider by modem or other such communication methods that transfer packets of information electronically. (*Id.* at 5:62-6:8, 6:20-38).

The electronic check processing provider may run verification/risk analysis for the account and the bank routing number (i.e. the bank that the consumers account is located at). (*Id.* at 6:9-19). If the transaction is approved, the point of sale terminal prints out a customer authorization receipt which authorizes the retailer to initiate an

---

[4] All printed checks for funds in the United States have a Magnetic Ink Character Recognition (MICR) line imprinted on the bottom of each check. This line is printed using an ink with iron-oxide pigments capable of being magnetized. (Ex. 2, Tinkel Decl. ¶ 15 n.3). In this way the characters encoded on this line can be read either magnetically or optically. (*Id.*) The MICR line typically, contains the following information: (1) Bank Routing Number – A number that uniquely identifies the bank at which the checking account is established (sometimes known as the ABA number); (2) Account number of the consumer's checking account; and (3) Check Serial Number. (*See generally,* Ex. 2 Declaration of Gary Tinkel ("Tinkel Decl.") at ¶ 15 n.3; REDACTED

-4-

ACH or EFT transaction from the customer's checking account.  (*Id.* at 8:18-23).  The customer signs the authorization form and the retailer often voids the paper check. (*Id*). The consumer bank account and transaction information is formatted by the electronic check processing provider so that it can be read and processed by the Automated Clearing House ("ACH") or other Electronic Funds Transfer ("EFT") networks.  (*Id.* at 8:30-42). The ACH or other EFT networks, in turn, transmits the payment information to the consumer's bank, where his or her account is debited and the retailer's bank, sometimes called the Originating Depository Financial Institution (ODFI), is credited via an electronic funds transfer.

The '988 patent contains three independent claims, 1, 8, and 9.  Claims 1 and 9 are system claims, and claim 8 is a method claim.  The patent also contains a number of dependent claims, 2-7 and 10-20.  LML is asserting infringement by ECHO's accused products of claims 1, 2, 4, 5, 6, 9, 10, 11, 14, 16, and 18 (the "Asserted Claims").

**B.**    **ECHO's Products and Services**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

## III.    LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The party moving for summary judgment bears the initial burden to demonstrate the absence of genuine issues of material fact, regardless of which party has the burden of persuasion at trial." *Bickling v. Kent Gen. Hosp., Inc.,* 872 F. Supp. 1299, 1304 (D.Del. 1994) (*citing Chipollini v. Spencer Gifts, Inc.,* 814 F.2d

893, 896 (3d. Cir. 1991) (en banc)). When assessing the factual record, this Court must view all evidence in the light most favorable to LML, the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "For purposes of summary judgment, evidence is deposition testimony, declarations, admissions, answers to interrogatories, etc. Defendant's motions are often deficient for providing only attorney argument." *Arthrocare Corp. v. Smith & Nephew, Inc.*, 2003 WL 1856436, at *5 (D. Del. 2003) (J. Robinson); *see also Biotec Biologische Nat. GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001).

To defeat a motion for summary judgment, LML is not required to present evidence conclusively resolving all material factual issues in its favor; "rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury. . .to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (internal citation omitted); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1561 (Fed. Cir. 1995). Moreover, the evidence submitted by LML "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. In fact, where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied "even if the nonmoving party does not present opposing evidentiary materials." *Bickling*, 872 F. Supp. at 1305; *Cordis Corp. v. Boston Scientific Corp.*, No. Civ. 03-027-SLR, 2005 WL 1331176, at *2 (D. Del. June 3, 2005) (J. Robinson) (denying summary judgment of non-infringement because of the existence of material issues of fact).

-10-

**B.    Infringement**

Patent infringement is a two-step analysis.  The first step is determining the meaning and scope of the asserted patent claims.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995); *aff'd*, 517 U.S. 370 (1996).  The next step in the infringement analysis is to determine whether the accused products and processes fall within the scope of those properly construed claims.  *Id.* at 976.  Here, ECHO's motion is based almost exclusively on Defendants' improper claim constructions.  However, even under Defendants' claim constructions, a genuine issue of material fact still exists for trial, thus precluding summary judgment.

**IV.    ARGUMENT**

**A.    The Declaration Of Kris Winckler In Support Of ECHO's Motion Should Be Stricken**

Kris Winckler, ECHO's corporate representative with respect to the accused products, submitted a declaration in support of ECHO's summary judgment motion.  However, the Court should not consider his declaration because (1) it relies almost completely on documents not produced in discovery; (2) it contains improper lay opinions under Rule 701; and (3) it contradicts Mr. Winckler's prior deposition testimony.

**1.    Twenty-Two of the Twenty-Eight Exhibits Relied on By Mr. Winckler Were Not Produced in Discovery**

Exhibits 4-18 and 20-26 attached to Mr. Winckler's declaration, although responsive to LML's document requests, were never produced in discovery—as evidenced by their lack of Bates numbers.  (McDole Declaration at ¶¶ 2-6).  Document

production ended *over six months ago*[5] and fact discovery ended *over three months ago*. (*Id.* at ¶ 2). In total, there are twenty-two documents in Mr. Winckler's declaration that were not produced, consisting of technical specifications, product manuals, and software code[6] related to the accused products. There is simply no excuse for ECHO not producing them during document production, or discovery for that matter, especially given the importance it now places on these documents. These documents should be stricken. *Philips Elecs. N. Am. v. Contec Corp.*, No. Civ.A. 02-123-KAJ, 2004 WL 769371, at *1 (D. Del. April 5, 2004) (granting motion to exclude untimely produced documents).

## 2. Mr. Winckler's Declaration Contains Improper Expert Opinions

Although a lay witness may offer factual testimony based on his personal knowledge, Rule 701 prohibits a lay witness from offering opinions or inferences which

---

[5] Pursuant to the Court's Scheduling Order, document production in this case ended March 4, 2005. (McDole Decl. at ¶ 2). The Court extended this deadline until April 5, 2005 at Defendants' request, but stated "if document production isn't completed by April 5th, we'll start talking about sanctions." (McDole Decl. at ¶ 2, Dkt# 89, March 22, 2005 Hearing Transcript at 8).

[6] Although LML requested copies of all of the software code related to ECHO's accused products, ECHO refused to produce such code in hard copy. (McDole Decl. ¶ 7). LML was only permitted to *view* portions of the source code in a remote location and only after LML had already deposed Mr. Winckler. (*Id.* at ¶¶ 8-10). Now, apparently in a change of heart, ECHO has decided to use hard copies of this code as its primary support for its non-infringement arguments. (*See* Exhibits 14-18 and 20-26 to Winkler Declaration). ECHO should not be able to delay its production of source code until after key depositions (such as Mr. Winkler) in this case, refuse to provide LML with hard copies of such code, and then attempt to rely on hard copies of such code as its primary source of support for its non-infringement arguments. As such, this source code (Exhibits 14-18 and 20-26 to the Winkler Declaration) should be stricken. Moreover, the software and source code relating to ECHO's point of sale terminals and related peripherals on which Mr. Winkler now relies in his declaration (Exhibits 8, 9, 11, and 13 to his declaration) was not included in the source code ECHO provided for LML's inspection—as such this code and Mr. Winkler's testimony regarding such code (Exhibits 8, 9, 11, 13 to Winkler Declaration) should be stricken as well. (*Id.* at ¶ 10).

are based on scientific, technical, or other specialized knowledge that would be within the scope of expert testimony. Fed. R. Evid. 701(c); *see e.g., U.S. v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (holding that lay opinion testimony is inadmissible if it "provides specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events.").

Although Mr. Winckler was never disclosed as an expert by ECHO and has never prepared an expert report, his declaration is replete with expert opinions. Mr. Winckler repeatedly (1) offers his opinions and inferences on the meaning of technical documents and specifications that he did not author and in many cases, were authored by external vendors

**REDACTED**

(Winckler Decl. ¶ 32)); (2) offers opinions and inferences on the meaning of software code that he did not author[7]

**REDACTED**

(Winckler Decl. ¶ 63)); and (3) opines on whether ECHO's accused products infringe the claims of the '988 patent

**REDACTED**

(Winckler Decl. ¶30)).

Mr. Winckler's opinions and inferences are not based on personal knowledge, but instead on scientific and technical knowledge. Mr. Winckler did not personally develop any of the MICR readers, point of sale terminals, or software code on which he opines. In fact, Mr. Winckler testified at deposition that he lacked the personal knowledge

---

[7] Recognizing that this was a topic for expert testimony, TeleCheck, one of ECHO's co-defendants, retained an expert, Mr. Dewayne Perry, to offer opinions on the meaning of their source code.

regarding the very subject matters on which he now offers opinions (*i.e.* software and technical specifications). (Ex. 13, Winckler Dep. at 41:1-9, 160:21-161:3, 29:10-17). Mr. Winckler simply cannot do a complete about-face and offer these late expert opinions now.[8]

###    3.    Mr. Winckler's Declaration Should Be Disregarded As It Contradicts His Prior Deposition Testimony

Mr. Winckler's declaration also directly contradicts his prior deposition testimony. Where an affidavit submitted in support of a summary judgment motion contradicts prior testimony with no satisfactory explanation, that affidavit should be disregarded for purposes of determining whether there was a material dispute of fact. *Martin v. Merrell Dow Pharm., Inc.*, 851 F.2d 703, 706 (3rd Cir. 1988); *Mash v. Xerox Corp.*, 2000 WL 1728250, at *6 (D. Del. April 11, 2000) (holding that an affidavit submitted in support of a summary judgment motion would be disregarded "to the extent it is inconsistent with affiant's prior deposition testimony").

**REDACTED**

---

[8] In fact, after LML submitted its expert report on ECHO's infringement, ECHO sought to allow Mr. Winckler access to confidential information in such report, referring to Mr. Winckler as an "in-house expert on infringement issues." (Exs. 17 and 18).

**REDACTED**

**REDACTED**

Again, Mr. Winckler cannot change his testimony now in an attempt to support ECHO's alleged non-infringement argument claiming that ECHO allegedly requires checks to be filled out and signed.

These contradictory portions of Mr. Winckler's Declaration (¶¶ 40-56 and 82-89) should not be considered.

**B.    ECHO's "Any Bank Check" Non-Infringement Arguments Fail As A Matter of Law And Fact**

ECHO first argues that its accused products do not conduct transactions using "any bank check" and therefore allegedly do not satisfy the claim elements of "enabling automated clearing house communication for transferring funds" (claims 1 and 9) and "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations" (claim 8).  (ECHO Br. at 24).  ECHO makes this argument even though the phrase "any bank check" does not appear in these claim elements.  Indeed, ECHO's argument is based exclusively on Defendants' incorrect claim construction which attempts to improperly rewrite the elements to include the phrase "any bank check."  Consequently, ECHO's motion on this basis should be denied.  Under the proper constructions, ECHO's accused products satisfy these disputed elements of claims 1, 8 and 9.  (Ex. 2, Tinkel Decl. ¶¶ 46, 48-49, 86-87, 110, 113).  Even under Defendants' improper constructions, a genuine issue of material fact still exists with respect to ECHO's infringement of claim 8.

1. **Defendants' Claim Constructions—On Which ECHO's Motion Is Exclusively Based—Are Improper[9]**

ECHO's "any bank check" argument is based exclusively on Defendants' improper construction of the following elements of claims 1, 8, and 9:

| Asserted Claim | Claim Language On Which ECHO Bases Its "Any Bank Check" Argument |
|---|---|
| Claim 1 | "enabling automated clearing house communication for transferring funds" |
| Claim 8 | "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations" |
| Claim 9 | "enabling automated clearing house communication for transferring funds" |

Notably, *the phrase "any bank check" does not appear anywhere in these claim elements*. Despite the clear absence of this language in these elements, in their proposed construction, Defendants attempt to rewrite the language of these elements to include the additional limitation "based upon the consumer bank account information obtained from *any bank check* presented at the point of sale." (Ex. 19, Joint Claim Chart) (emphasis added). As such, Defendants' construction is incorrect as a matter of law. *See N. Am. Container, Inc. v. Plastipak Packaging Inc.*, 415 F.3d 1335, 1348 (Fed. Cir. 2005) ("As we have stated previously, unless required by the specification, limitations that do not otherwise appear in the claims should not be imported into the claims.").

Moreover, Defendants attempt to construe the elements "enabling automated clearing house communication for transferring funds" from claims 1 and 9 and "subsequently transmitting the transaction event information to a bank for subsequent

---

[9] LML's claim construction briefing, pending simultaneously herewith, explains in detail why LML's proposed constructions are correct, and why Defendants' proposed constructions are incorrect.

-17-

automated clearinghouse operations" from claim 8 exactly the same. But, these elements recite ***completely different language*** in addition to the fact that one element appears in system claims (claims 1 and 9) while the other is part of a method claim (claim 8). Independent claims 1 and 9 are system claims where the elements describe particular capabilities of the claimed systems. Because a system claim covers what a system ***is*** and not what a system ***does,*** a system claim is infringed if it contains all of the recited capabilities of the claimed system, regardless of whether those capabilities are actually used. *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("[A]pparatus claims cover what a device *is*, not what a device *does*."); *Intel Corp. v. ITC*, 946 F.2d 821, 832 (Fed. Cir. 1991) (holding that a device claim was infringed if it was capable of operating in the claimed mode and that actual operation in the claimed mode was not required); *see also Key Pharms. Inc. v. Hercon Labs. Corp.*, 981 F. Supp. 299, 310 (D. Del. 1997) (finding that all that was required for infringement was that the system have the claimed capability, regardless of whether or not it was used).

Unlike system claims, method claims (such as claim 8) do not cover a tangible item but instead "consists of a series of acts or steps." *In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002). The difference between the system and method claims of the '988 patent is an important distinction which Defendants completely ignore. *Id.* (finding error where the court failed to recognize the "distinction between a claim to a product, device, or apparatus, all of which are tangible items, and a claim to a process which consists of acts or steps"); *NTP, Inc. v. Research in Motion, Ltd*, 418 F.3d 1282, 1316 (Fed. Cir. 2005) (noting the infringement analysis is different for "different types of claims"). Indeed, a method claim is directly infringed only by "practicing the patented method,"

regardless of what capabilities the system performing the process might have. *Joy Tech., Inc. v. Flakt, Inc.*, 6. F.3d 770, 775 (Fed. Cir. 1993). Thus, Defendants' construction is incorrect as a matter of law.

Finally, Defendants' construction improperly reads a preferred embodiment out of the claims. *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) ("A claim construction that excludes a preferred embodiment, moreover, 'is rarely, if ever, correct.'") (internal citations omitted). The '988 patent is clear that one of its benefits is providing the ability for the merchant or service provider to approve electronic funds transfers for only a subset of the bank checks read or received at the point of sale terminal. (Ex. 1 at 3:25-27, 8:16-18 and 31-36). ECHO even acknowledges this by noting that a transaction is only electronically processed for payment *if the verification is approved.*[10] (ECHO Br. at 8-9). Defendants' construction, by reading in an extraneous limitation, would require "electronic communication with an automated clearing house for transferring funds electronically" for *all bank checks* read or received at the point of sale terminal—even those checks that the merchant and/or service provider has declined. This construction reads the above preferred embodiment out of the claims. Defendants' construction, therefore, cannot be correct.

---

[10]    **REDACTED**

**2.    ECHO Offers No Argument Or Evidence Of Non-Infringement Under LML's Proper Claim Constructions**

ECHO presents no argument or evidence under LML's proper construction of "second communication means…enabling automated clearing house communication for transferring funds" and "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations." Consequently, ECHO's motion should be denied as a matter of law.

a.    LML's proper claim constructions

In its claim construction briefing, LML proposed the following proper constructions of these disputed elements:

| Claim Language | LML's Proper Construction |
|---|---|
| "second communication means…enabling automated clearing house communication for transferring funds" (claims 1 and 9) | "second communication means…enabling communication with an automated clearing house for electronically transferring funds." |
| "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations" (claim 8) | "subsequently transmitting the information relating to the transaction to a bank for subsequent automated clearing house operations." |

LML's constructions are based on the intrinsic evidence, and unlike Defendants' construction, covers the preferred embodiment recited in the '988 patent whereby a transaction can either be accepted *or* rejected.

b.    ECHO's Accused Products Satisfy the Element "Second Communication Means…Enabling Automated Clearing House Communication For Transferring Funds" as Recited in Claims 1 and 9

**REDACTED**

**REDACTED**

---

[11] The parties do not dispute the construction of the "second communication means" element. This function is written in means-plus-function format pursuant to 35 U.S.C. 112(6). (Ex. 19, Joint Claim Chart). The recited function of this limitation is enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using the [a] bank check as a negotiable instrument. (*Id.*) The structures disclosed in the patent for performing the recited function of this limitation are a modem, network interface, enhanced radio transmission interface, satellite communication interface or equivalent. (*Id.*)

**REDACTED**

c.    ECHO's Accused Products Perform the Step "Subsequently Transmitting the Transaction Event Information to a Bank For Subsequent Automated Clearinghouse Operations" as Recited in claim 8

**REDACTED**

**REDACTED**

**C.    ECHO's Accused Products Satisfy The Elements Of Claims 1, 8 and 9 Which Actually Recite The Phrase "Any Bank Check"**

ECHO also argues that its accused products do not meet the limitations of claims 1, 8 and 9 that actually contain the "any bank check" limitation. Claim 1 recites the element "a point of sale terminal adapted to receive consumer bank account information

---

[12] Because claim 8 is a method claim, even under Defendants' incorrect claim construction of this element, ECHO's accused products satisfy this claim element. Indeed, for the same reasons stated above, any time a check is processed through ECHO's accused products and subsequently sent through the ACH, ECHO performs this step.

from any bank check," "claim 8 recites the element "presenting any bank check specimen to a point of sale terminal located at a merchant or service provider," and claim 9 recites the element "the point of sale terminal comprising reading means for reading magnetic ink character recognition numbers on any consumer bank check." Although the parties have proposed different constructions of "any bank check,"[13] the "any bank check" elements are present in ECHO's accused products under either party's construction.

      1.      **ECHO's Accused Products are "Adapted to Receive Consumer Bank Account Information From Any Bank Check" as Recited in Claim 1**

<br/>

**REDACTED**

<br/><br/>

---

[13] LML construes the term as "any regular check used to draw funds from a normal bank or credit union checking account" and Defendants construe it as "any type of check drawn on a financial institution." (Ex. 19, Joint Claim Chart).

[14] LML has construed "adapted to receive consumer bank account information from any bank check" as simply the claim language itself. (Ex. 19, Joint Claim Chart). Defendants' construction is "adapted to read consumer bank account information directly from any bank check." (*Id.*)

LML has construed "consumer bank account information" to mean "information relating to a consumer's bank account including the MICR line (magnetic ink character recognition line)." (*Id.*) Defendants' construction is "only the ABA/transit routing number and bank account number." (*Id.*)

-24-

**REDACTED**

---

15

**REDACTED**

(Continued…)

2.   **ECHO's Accused Products Perform the Step "Presenting Any Bank Check Specimen to a Point of Sale Terminal Located at a Merchant or Service Provider" as Recited in Claim 8**

**REDACTED**

---

**REDACTED**

**REDACTED**

3.    **ECHO's Point of Sale Terminals Have "Means for Reading Magnetic Ink Character Recognition Numbers on Any Consumer Bank Check" as Recited in Claim 9**

**REDACTED**

**REDACTED**

a.   <u>Claim 9 Only Requires a Means For Reading Magnetic Ink
Character Recognition Numbers</u>

**REDACTED**

---

[16] As explained in LML's claim construction briefing, the applicants during prosecution
of the '988 patent expressly stated that their invention related to any "regular check"
drawn on a "normal" checking account. ECHO's effort to include foreign checks
with non-magnetic and foreign fonts is simply not something the applicants intended
their invention to cover.

**REDACTED**

      b.      <u>The Declaration of Mr. Schutze Should be Stricken Because He is Not Qualified To Render the Opinions It Contains</u>[17]

**REDACTED**

---

[17] LML's *Daubert* Motion No. 2, pending simultaneously herewith, explains in detail why the opinions of ECHO's Expert, Stephen A. Schutze, do not pass muster under Rule 702 or *Daubert* and should, therefore, be excluded.

**REDACTED**

      c.        <u>Mr. Schutze's Declaration Should Be Stricken Because It</u>
                      <u>Relies on Documents Not Timely Produced</u>

**REDACTED**

18

**REDACTED**

**REDACTED**

      d.    <u>Even if Mr. Schutze's Opinions Are Considered, a Genuine Issue Of Fact Exists</u>

**REDACTED**

---

[19]    **REDACTED**

[20]    **REDACTED**

**REDACTED**

---

21

**REDACTED**

**D.    ECHO's Accused Products Satisfy The "Without Using the [Bank] Check As A Negotiable Instrument" Element In Claims 1, 8 And 9**

ECHO next argues that its accused products do not satisfy the element "without using the [bank] check as a negotiable instrument" recited in claims 1, 8 and 9. However, ECHO's argument is based exclusively on the adoption of Defendants' improper proposed construction of this phrase. Not only is Defendants' claim construction improper, ECHO's accused products still infringe this limitation in claims 1 and 9 even under Defendants' construction. At the very least, a genuine issue of material fact exists precluding summary judgment.

**1.    Defendants' Construction of "Without Using the [Bank] Check as a Negotiable Instrument"—On Which ECHO's Motion Is Exclusively Based —is Improper**

ECHO's argument with respect to the element "without using the check as a negotiable instrument" is based exclusively on Defendants' incorrect construction of this element. ECHO proffers no argument or evidence of non-infringement under any other claim construction—including LML's proper claim construction. As such, ECHO's motion should be denied on this basis as a matter of law.

Defendants readily admit that their construction of "without using the [bank] check as a negotiable instrument"—"the bank check, at no time, takes on the status of a negotiable instrument"—comes, not from the intrinsic evidence, but directly from the *extrinsic evidence*.[22] In doing so, ECHO ignores the fundamental teachings of *Phillips*

---

22

**REDACTED**

-33-

that the intrinsic evidence of record is the "primary tool" in claim construction, while "extrinsic evidence. . .[is] *less reliable* than the patent and its prosecution history in determining how to read claim terms." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (emphasis added). Indeed, Defendants' construction is at odds with the intrinsic evidence. As a preliminary matter, on its face, the claim language is focused on the fact that the check is not *used as* a negotiable instrument. (Ex. 1, claims 1, 8 and 9). Once again, Defendants' construction is divorced from the language of the claims and instead seeks to define whether the check takes on the *status* of a negotiable instrument. *Abtox, Inc. v. Exitron, Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997) ("[T]he language of the claim frames and ultimately resolves all issues of claim interpretation.").

Moreover, Defendants' construction runs directly contrary to the explicit teachings of the '988 patent—as the '988 patent specifically contemplates using a completely filled-out check in its preferred embodiment. (Ex. 1 at 7:47-49). Even ECHO acknowledges that the '988 patent is not limited to blank, unsigned checks, stating "the claimed system and method" of the '988 patent begins when a customer provides "the merchant with any bank check, *preferably* a 'specimen' or 'blank' check." (ECHO Br. at 8 (citing '988 patent at 7:48)). Indeed, the claim language focuses on how the check is "used," not the status the check is taking on. Thus, Defendants' construction of "without using the [bank] check as a negotiable instrument" is improper.

### 2.    ECHO Offers No Argument Or Evidence Of Non-Infringement Under LML's Proper Claim Construction Of "Without Using The Check As A Negotiable Instrument"

ECHO presents no argument or evidence under LML's proper construction of "without using the [bank] check as a negotiable instrument." Consequently, ECHO's

-34-

motion should be denied as a matter of law. As explained fully in LML's claim construction briefing, the proper claim construction of "without using the check as a negotiable instrument" is "where the paper check is used as a source of information, and is not accepted or processed." Unlike Defendants' construction, LML's construction follows the teachings of *Phillips* and is derived directly from the intrinsic evidence. Indeed, the specification of the '988 patent repeatedly discloses using the check as a source of information and not accepting or processing the check. (*see, e.g.*, Ex. 1, '988 patent at 1:10-15, 9:64-10:2). Even ECHO recognizes this fact, stating that the "bank check is used only for purposes of obtaining consumer bank account information from the check . . .thereby eliminating reliance on accepting and processing commercial bank drafts." (ECHO Br. at 8). Under LML's proper construction, ECHO's accused products satisfy this element. (Ex. 2, Tinkel Decl. ¶¶ 50-51, 73-75, 114-115). ECHO does not contest this fact in its motion.

**REDACTED**

---

[23] The entry code on a specific electronic transaction identifies the origin of the transaction. For instance, the only transaction at issue in this case -- point of purchase transactions—have the entry code POP.

**REDACTED**

---

**REDACTED**

3.    **Even Under Defendants' Proposed Construction Of "Without Using The [Bank] Check As A Negotiable Instrument," ECHO's Accused Products Satisfy This Element**

**REDACTED**

---

[25] Claim 9 contains the similar language of "enabling automated clearing house communication for transferring funds without using a bank check as a negotiable instrument." (Ex. 1).

REDACTED

**E.      ECHO's Accused Products Read Checks For The "Sole Purpose"
Of Obtaining "Consumer Bank Account Information" As Recited
In Claims 2, 8 And 9**

ECHO next contends that its accused products do not read the bank check "for the

sole purpose" of obtaining "consumer bank account information" as recited in claims 2, 8

and 9. This argument is again based exclusively on Defendants' improper construction of

"consumer bank account information." Under the proper construction, ECHO again does

not contest infringement. Thus, ECHO's motion should be denied on this basis as a

matter of law.

Defendants attempt to limit "consumer bank account information" to specific

types of information, namely "only ABA/transit routing number and bank account

number." (Ex. 19, Joint Claim Chart). Because ECHO's accused products also read the check serial number off of the check, ECHO contends it is not reading the check for the *sole* purpose of obtaining consumer bank account information. (ECHO Br. at 36-37). But, Defendants' construction of "consumer bank account information" is an improper attempt to narrow a broad claim term without reason.

As explained in detail in LML's claim construction briefing, Defendants' construction of "consumer bank account information" is a classic case of attempting to limit a straightforward claim term where no such limitation is required by the plain language of the claim or has any basis in the intrinsic evidence. *Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1327 (Fed. Cir. 2001) ("adding limitations to claims not required by the claim terms…is impermissible."). In fact, the Court need only look to the first word of Defendants' construction—"only"—to reveal their blatant attempt to unnecessarily limit this term. On the other hand, LML's construction— "information relating to a consumer's bank account including the MICR line"—is based on the ordinary and customary meaning of the element and is supported by the intrinsic evidence, particularly the specification which repeatedly references reading the *entire* MICR line which includes the check serial number and the ABA/transit and bank account information.[26]

## REDACTED

---

**REDACTED**

-39-

**REDACTED**

V.     **CONCLUSION**

LML has presented evidence that, at the very least, demonstrates that there is a genuine issue of material fact for each of the non-infringement arguments made by ECHO. For this reason, the Court should deny ECHO's motion for summary judgment of non-infringement of the Asserted Claims of the '988 patent.

Dated:  November 15, 2005

*Mary Matterer*
Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

27

**REDACTED**

-40-

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of November, 2005, I electronically filed the foregoing document, **PUBLIC VERSION OF LML'S MEMORANDUM IN OPPOSITION TO ECHO'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Collins J. Seitz, Jr., Esq.
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE  19801

William J. Marsden, Jr., Esq.
Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE  19801

Additionally, I hereby certify that on the 22nd day of November, 2005, the foregoing document was served via email on the following non-registered participants:

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA  90045

Mark C. Scarsi, Esq.
Vision L. Winter, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA  90071

_____/s/ Mary B. Matterer_____
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS
& WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com

*Counsel for Plaintiff LML PATENT CORP.*