IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP., | |
| Plaintiff, | |
| v. | C.A. 04-858 (SLR) |
| TELECHECK SERVICES, INC., ELECTRONIC CLEARING HOUSE, INC., XPRESSCHEX, INC. and NOVA INFORMATION SYSTEMS, INC., | **PUBLIC VERSION** |
| Defendants. | |

**TELECHECK'S ANSWERING BRIEF IN OPPOSITION TO LML PATENT CORP.'S MOTION FOR SUMMARY JUDGMENT NO. 1:  FOR A RULING THAT TELECHECK INFRINGES CLAIMS 1, 2, 4-6, 9-11 AND 16 OF THE '988 PATENT**

William J. Marsden (#2247)
Timothy Devlin (#4241)
Tara D. Elliott (#4483)
FISH & RICHARDSON P.C
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114
(302) 652-5070

*Attorneys for TeleCheck Services, Inc.*

Dated:  November 15, 2005
Public Version:  November 22, 2005

## TABLE OF CONTENTS

                                                                    **Page**

I.    NATURE AND STAGE OF PROCEEDINGS ....................................................1

II.   SUMMARY OF ARGUMENT ..........................................................................1

III.  STATEMENT OF FACTS ..................................................................................2

      A.    The '988 Patent ..............................................................................2

      B.    TeleCheck's Accused Electronic Check Acceptance
            Service Works Differently Than the System and Method
            of the '988 Patent .........................................................................5

      C.    The National Automated Clearing House Association ...........................8

      D.    TeleCheck's Disclosure of Its Non-Infringement
            Contentions Was Timely ................................................................10

IV.   ARGUMENT ...................................................................................................10

      A.    LML's Is Not Entitled to Summary Judgment As a
            Matter of Law ...............................................................................10

      B.    Evidence Exists that TeleCheck's ECA Service Does
            Not Satisfy the "Negotiable Instrument" Limitation
            Recited in Every Asserted Claim of the '988 Patent. ..........................11

            1.    Evidence Establishes That the TeleCheck ECA
                  Service Only Uses Checks as Negotiable
                  Instruments ...........................................................................11

            2.    Even Under LML's Construction, Evidence
                  Shows that TeleCheck's ECA Service "Accepts"
                  and "Processes" Paper Checks ..................................................13

            3.    LML's Focus On NACHA Rules Or Guidelines
                  As A Basis Or Explanation For Infringement Is
                  Flawed ...................................................................................15

      C.    TeleCheck Does Not Infringe Process Claim 8 and
            Therefore Cannot Infringe Claim 16 ..................................................18

      D.    Because TeleCheck Does Not Infringe Any Independent
            Claim of the '988 Patent, TeleCheck Does Not Infringe
            Any Dependent Claim ......................................................................19

      E.    TeleCheck Has Made Adequate and Timely Disclosures
            of Its Defenses ...............................................................................20

V.    CONCLUSION .................................................................................................21

### TABLE OF AUTHORITIES

**Page**

*AK Steel Corp. v. Sollac and Ugine*,
344 F.3d 1234 (Fed. Cir. 2003)....................................................................11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................................................................................11

*Canton Bio-Medical, Inc. v. Integrated Liner Techs., Inc.*,
216 F.3d 1367 (Fed. Cir. 2000)....................................................................18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................................................................................11

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Industrial, Inc.*,
145 F.3d 1303 (Fed. Cir. 1988)....................................................................11

*Enzo Biochem, Inc. v. General-Probe Inc.*,
323 F.3d 956 (Fed. Cir. 2002)......................................................................11

*Jeneric/Pentron, Inc. v. Dillon Co., Inc.*,
205 F.3d 1377 (Fed. Cir. 2000)....................................................................20

*Johnston v. IVAC Corp.*,
885 F.2d 1574 (Fed. Cir. 1989)....................................................................10

*KCJ Corp. v. Kinetic Concepts, Inc.*,
223 F.3d 1351 (Fed. Cir. 2000.)...................................................................10

*London v. Carson Pirie Scott & Co.*,
946 F.2d 1534 (Fed. Cir. 1991)....................................................................11

*New Railhead Manufacturing, L.L.C. v. Vermeer Mfg. Co.*,
298 F.3d at 1294 (Fed. Cir. 2002)................................................................11

*Prouty v. Draper Ruggles & Co.,*,
41 U.S. 336 (1842)......................................................................................18

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
247 F.3d 1316 (Fed. Cir. 2001)....................................................................10

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*,
520 U.S. 17 (1997)......................................................................................18

### STATUTES

Fed. R. Civ. P. 26(e) ..................................................................................20

UCC §3-104       ........................................................................................5

## I.    NATURE AND STAGE OF PROCEEDINGS

This is a patent infringement litigation initiated by LML Patent Corporation ("LML") against defendants TeleCheck Services, Inc. ("TeleCheck"), Electronic Clearing House, Inc. ("ECHO"), XpressChex, Inc. ("XpressChex") and Nova Information Systems, Inc. ("Nova") (collectively, "Defendants"). The patent in suit is U.S. Patent No. 5,484,988 ("the '988 patent"). Fact and expert discovery has concluded, and claim construction briefing is complete. The parties have submitted opening briefs in support of motions for summary judgment.

On October 28, 2005, LML filed six summary judgment motions related to numerous issues in this matter. TeleCheck submits this answering brief in response to LML's Motion for Summary Judgment of Infringement.

## II.    SUMMARY OF ARGUMENT

LML's motion for summary judgment is predicated on LML's own claim construction of all terms. The adoption of any proposed constructions proposed by Defendants will moot LML's motion as to all claims reciting that element, either directly or by dependency. Even under LML's improper construction, TeleCheck disputes LML's characterization of "Uncontested Facts," and the existing factual disputes would preclude a finding of infringement by a reasonable factfinder. In fact, the undisputed and unbiased facts support TeleCheck's motion for summary judgment of non-infringement.[1]

LML's motion should be denied at least because a reasonable juror could find that TeleCheck's accused Electronic Check Acceptance Service ("ECA Service") does not satisfy the "negotiable instrument" limitation recited in every asserted claim of the '988 patent. This holds true not only under Defendants' claim construction, but also under

---

[1]    While Defendants have moved for summary judgment of non-infringement, the standard in responding to LML's motion is whether a reasonable juror could find infringement based on the undisputed facts. Although Defendants will apply this reasonable juror standard here, it should be understood that Defendants maintain their contention that summary judgment of non-infringement is appropriate.

1

LML's proposed construction.  LML is wrong when it asserts that TeleCheck's contentions "are predicated on this Court adopting Defendants' proposed claim construction."  (LML Brief at 8).

# REDACTED

construction.  Moreover, TeleCheck documents demonstrate that checks are "accepted" and "processed" in TeleCheck's ECA Service, which precludes infringement under the construction now proposed by LML.

LML's motion for summary judgment as to dependent claim 16, which depends from process claim 8, should be denied for the additional reason that TeleCheck does not perform many of the recited steps, regardless of claim construction.  The majority of these steps are performed by third parties.  Neither LML nor its expert has offered any support for a contention that TeleCheck induces infringement or contributes to infringement by others.  A reasonable juror could determine that no such infringement exists.

TeleCheck has made adequate and timely disclosures of its defenses.  LML preemptively asserts, without support, that "Defendants cannot raise, new, undisclosed contentions" in response to LML's motion.  (D.I. 313)  What LML apparently ignores is that TeleCheck has provided non-infringement contentions under both parties claim constructions.  (Ex.1, Expert Report of David Kurrasch, ¶ 88.)  This response to LML's motion sets forth defenses and rebuttals that have long been disclosed to LML, and on numerous occasions.  LML's bare assertion is therefore without relevance.

## III.    STATEMENT OF FACTS

### A.    The '988 Patent

The '988 patent generally describes a system and method for converting paper checks to electronic transactions at the point of sale, using the check "as the basic source

of identification of the individual and of the individual's bank and whereby the bank account is debited." (Ex. 2 at 1:13-15.)[2] The patent was not allowed until *after* each independent claim was narrowed to recite conducting transactions without using the check as a negotiable instrument. Specifically, the three independent claims recite the following "negotiable instrument" limitations:

- "without using the bank check as a negotiable instrument" (claim 1);

- "without using the check as a negotiable instrument" (claim 8);

- "without using a bank check as a negotiable instrument" (claim 9);

The parties have treated these claim limitations as having the same meaning. LML construes these phrases to mean "where the paper check is used as a source of information, and is not accepted or processed." As set forth below, even under LML's overly broad construction, a reasonable juror could find that the accused TeleCheck service does not meet the "negotiable instrument" limitations.

Claim 8 of the '988 patent is a method claim. Claim 8 recites:

A checkwriting point of sale *process* comprising:

a) presenting any bank check specimen to a point of sale terminal located at a merchant or service provider,
b) reading the magnetic ink character recognition number information on the check for the sole purpose of obtaining consumer bank account information, without using the check as a negotiable instrument,
c) storing the consumer bank account information obtained from the check and verifying that account numbers were accurately read at the point of sale terminal,
d) providing transaction event information to the point of sale terminal,
e) transmitting the transaction event information and consumer bank account information to a central computer system,

---

[2] Exhibits cited in this brief are attached to the co-filed Declaration of Timothy Devlin in Support of TeleCheck's Response to LML's Motion for Summary Judgment of Infringement. Citations to patent text in this brief are of the form x:y, where "x" represents the column number and "y" the line number.

f) storing the transaction event information and consumer banking
account information, and
g) subsequently transmitting the transaction event information to a
bank for subsequent automated clearing house operations.

(Ex. 2 at 12:21-42.)[3]

Many of the recited steps of claim 8 occur outside TeleCheck's involvement in the transaction, and LML has *no contention* that TeleCheck performs such steps. For example, neither LML nor its expert contend that TeleCheck "present[s] any bank check specimen to a point of sale terminal located at a merchant or service provider," as required by claim 8. (Ex. 2 at 12:22-23.) Instead LML cites evidence stating that the "*consumer*" presents a check. (LML Brief at 29.) Likewise, there is no contention that TeleCheck "provide[s] transaction event information at the point of sale terminal." (Ex. 2 at 12:32-33.) Instead LML expressly states that the "*merchants*" input the transaction amount. (LML Brief at 32.)

Electronic check processing systems such as those described and claimed by the '988 patent were well-known in the prior art. Systems and methods enabling the electronic processing of paper checks presented at the point of sale have been discussed in the payments industry, disclosed in prior art patents, and implemented by payment processing corporations since the early 1980s. Two such patents are U.S. Patent No. 5,053,607 to Carlson ("the '607 patent"), and U.S. Patent No. 5,175,682 to Higashiyama *et al.* ("the '682 patent").

Both the '607 patent and '682 patent describe electronic check processing systems having many or all of the features of the '988 patent. The described systems each included a terminal and a MICR reader for automatically reading consumer bank account information from checks presented at the point of sale, communication with databases for check verification, automated electronic debiting of the consumer's account based on the

---

[3] Unless otherwise indicated, emphasis in this brief has been added.

4

information obtained from the check, and handing the check back to the consumer at the point of sale. (*See* Defendants' Opening Brief on claim construction, D.I. 288, pp. 5-7.)

**B.      TeleCheck's Accused Electronic Check Acceptance Service Works Differently Than the System and Method of the '988 Patent[4]**

In this case, LML has accused TeleCheck's Electronic Check Acceptance Service ("ECA Service") of infringing certain claims of the '988 patent. The TeleCheck ECA Service utilizes equipment available in the prior art, namely a point of sale terminal and printer, a modem that provides electronic communications, and a computer system that performs back-end processing. (*See, e.g.,* Ex. 3 at FDC 1081294.)

**REDACTED**

Indeed, LML's expert Mr. Tinkel personally observed the need to fill out and sign the check while performing a transaction using the ECA Service at a local merchant. Although Mr. Tinkel apparently presented a blank check to the merchant, he was required to fill out and sign the check:

> Q.    Can you generally describe for me what happened during that transaction?
>
> A.    I presented the check to the merchant.
>        First I asked the merchant if they took checks.
>        Presented the check to the merchant. He asked me

---

[4]    This description of TeleCheck's ECA Service appears in TeleCheck's motion for summary judgment of non-infringement, and is copied here for convenience.

> to fill it out completely with the name of the
> merchant, today's date. dollar amount and sign it. . . .

(Ex. 11 at 176:2-8.)

Based on this experience and other information he reviewed, Mr. Tinkel rendered

an opinion that in the TeleCheck ECA Service, "the payer fills out the check for the

transaction." (Ex. 12 at p. 290.) Mr. Tinkel provided support for this statement in his

report, citing to the deposition testimony of numerous TeleCheck witnesses, and stating

that TeleCheck's contract with its merchants "requires a payer completing the check for a

transaction with a merchant." (*Id.*) During deposition, Mr. Tinkel likewise provided his

own testimony regarding this requirement:

> Q. Is it your understanding that TeleCheck
> requires the check to be filled out and signed at
> the point of sale?
>
> A. It is my understanding that ***TeleCheck's***
> ***agreement with their merchants requires the***
> ***merchant to have the check filled out.***

(Ex. 11 at 177:18-23.)

After the completed and signed check is presented to the merchant for payment,

the check is scanned through a MICR reader to obtain the ABA transit and routing

number, the bank account number, and the check serial number. (Ex. 11 at 16:2-18:17;

Ex. 11 at 16:6-18:19; Ex. 11 at 83:9-18.) If the MICR information cannot be read, the

information may be keyed in, but not for use with the ECA Service. (Ex. 11 at 47:20-

48:14; Ex. 11 at 191:19-193:10; Ex. 11 at 192:4-193:17.) When MICR information is

keyed in, the check is ***not*** eligible for processing through the ECA Service, but instead

only for verification by TeleCheck's check guarantee or verification services. (Ex. 11 at

47:20-48:14; Ex. 11 at 191:19-193:10.) During this scanning or keying process, the

check maintains its status as a negotiable instrument.

6

REDACTED

**REDACTED**

### C.     The National Automated Clearing House Association

The national ACH is administered by the National Automated Clearinghouse Association ("NACHA"), which has developed rules governing "Point of Purchase" ("POP") transactions.  The ACH Network is a nationwide electronic funds transfer system that provides for the clearance of electronic payments between participating financial institutions.

NACHA develops Operating Rules and business practices for the Automated Clearing House (ACH) Network and for electronic payments.  It describes its primary functions as the following:

1. Rule-making for the ACH Network and other payments systems;

2. Facilitating the development of new payment applications;

3. Identification and implementation of risk management initiatives;

4. Providing and supporting educational programs;

5. Instituting and monitoring quality controls in the payments system;

6. Improving member communications/relations;

7. Responding to regulatory and government relations issues; and

8. Marketing electronic payment services.

NACHA is not a regulatory body or other governmental entity. Instead NACHA is akin to a standards-setting organization, which coordinates the adoption of an accepted protocol to foster compatibility and participation. In particular, NACHA is not an interpreter of law that dictates whether U.C.C. provisions attach to a transaction, but rather an industry organization setting forth rules to be followed for participation in an industry network.

The NACHA Rules are relevant in this case for determining the actual procedures that take place during an ACH transaction. As set forth in TeleCheck's motion for summary judgment, many of these procedures preclude infringement

## REDACTED

At the same time, NACHA's guidelines are not controlling with respect to whether a check is used as a "negotiable instrument," much less whether a check is used as a "negotiable instrument" in the context of the '988 patent. In this case, TeleCheck performs additional steps that, even under LML's construction, support a finding that the TeleCheck ECA Service does not meet the "negotiable instrument" limitations.

9

**D.    TeleCheck's Disclosure of Its Non-Infringement Contentions Was Timely**

TeleCheck's defenses to infringement were disclosed in its first supplemental responses to LML interrogatories, served January 28, 2005. TeleCheck served both the Expert Reports of David P. Kurrasch and Dr. Dewayne E. Perry regarding non-infringement on September 20, 2005, per stipulation and later agreement by the parties. (D.I. 243; see also Ex. 17 at FDC 1391791-92) Expert discovery, per the Scheduling Order, concluded September 30, 2005, but the parties, including LML, agreed to schedule and conduct expert depositions through October 5, 2005. TeleCheck served its supplemental responses, incorporating its experts' opinions on October 5, 2005 (another supplement was provided recently to correct inadvertent errors).

This is consistent with LML's supplementation of its contentions. LML served its Fourth Supplemental Response to TeleCheck Interrogatory No. 2 on September 21, 2005, well after the close of fact discovery and after LML provided its expert reports.

## IV.    ARGUMENT

### A.    LML Is Not Entitled to Summary Judgment As a Matter of Law

In a patent infringement analysis, the court first determines the meaning of the asserted claims, and second, compares the properly construed claims to the allegedly infringing device. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001); *see also KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1355 (Fed. Cir. 2000.). Literal infringement is found only where each limitation of a claim is present exactly in the accused product. *Any missing element precludes a finding of literal infringement. See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d at 1323; *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577-78 (Fed. Cir. 1989). LML has not moved for summary judgment under the doctrine of equivalents. As such, this response does not address why the doctrine of equivalents is not available to LML.

10

LML's motion for summary judgment is predicated on LML's own claim construction of all terms. If the Court adopts any claim construction proposed by Defendants, LML's motion should be denied. Even under LML's improper construction, TeleCheck disputes LML's characterization of "Uncontested Facts" and such factual disputes would preclude a finding of infringement by a reasonable factfinder. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On a motion for summary judgment, all reasonable factual inferences must be drawn and all doubts resolved in favor of the non-moving party. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294; *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 962 (Fed. Cir. 2002).

Summary judgment is to be granted only when "no 'reasonable jury could return a verdict for the nonmoving party.'" *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1988) (quoting *Anderson*, 477 U.S. at 248)); *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991). The evidence presented by the non-moving party on summary judgment "is to be believed." *See AK Steel Corp. v. Sollac and Ugine*, 344 F.3d 1234, 1238 (Fed. Cir. 2003). Indeed, the undisputed and unbiased facts not only prohibit summary judgment for LML, but support TeleCheck's motion for summary judgment of non-infringement.

**B.    Evidence Exists that TeleCheck's ECA Service Does Not Satisfy the "Negotiable Instrument" Limitation Recited in Every Asserted Claim of the '988 Patent.**

    **1.    Evidence Establishes That the TeleCheck ECA Service Only Uses Checks as Negotiable Instruments**

Every independent claim of the '988 patent includes the limitation "without using the check as a negotiable instrument" or a corresponding limitation. Substantial evidence exists that—in TeleCheck's ECA Service—the check is used as a negotiable instrument, even under the overly broad claim construction proposed by LML. As set forth in TeleCheck's motion for summary judgment of non-infringement, evidence establishes the

absence of this limitation as a matter of law.  At a minimum, a reasonable jury could find no infringement based on these facts.

**REDACTED**

This documentary evidence alone indicates that in the TeleCheck ECA Service, the only processing that takes place uses negotiable instruments.  TeleCheck's use of negotiable instruments is consistent with the prior art Carlson patent, in which the check is scanned and handed back to the consumer.  (Ex. 29 at 7:30-34; 25:4-7.)  Despite these facts, Applicants asserted that in Carlson fails to describe a system in which the check is ¨not for use as a negotiable instrument.  (Ex. 30 at LML-EP 000192.)  TeleCheck's expert Mr. Kurrasch has also rendered an opinion that this requirement in the TeleCheck Service Agreement precludes infringement of the negotiable instrument limitation under *either parties' claim construction*.  (Ex. 1 at 25.)  Mr. Kurrasch will provide testimony in

12

support of this contention at trial.  Based on all of this evidence, a reasonable juror could find no infringement.

Moreover, as described below, TeleCheck performs additional steps from which a reasonable juror could find that the "negotiable instrument" limitations are not met.

### 2.    Even Under LML's Construction, Evidence Shows that TeleCheck's ECA Service "Accepts" and "Processes" Paper Checks

LML construes the phrase "without using the check as a negotiable instrument" to mean "where the paper check is used as a source of information, and is not accepted or processed."  In TeleCheck's ECA Service, the paper check is both "accepted" and "processed."

**REDACTED**

Before developing its ECA Service, TeleCheck and its customer merchants had been accepting and processing paper checks at the point of sale for years.  (Ex. 21 at

**REDACTED**

TeleCheck provided this service through use of its Accelera terminals, which is also used with the TeleCheck ECA Service.  (Ex. 23 at 06450.)  Evidence thus demonstrates that in the TeleCheck ECA Service, paper checks are "accepted" and "processed."  A reasonable jury could rely on this evidence in finding no infringement.  After processing and accepting the paper check, the paper check can be

13

converted to an electronic item and returned to the consumer at the point-of-sale. Even when a paper check is processed and accepted, the check may be treated in various ways.

**REDACTED**

**REDACTED**

14

This additional evidence further supports a finding by a reasonable juror that no infringement exists even under LML's construction. In short, the NACHA rules cause the check to be used as a source document, but in the TeleCheck ECA Service that same check meets the definition of a negotiable instrument, and is used as a negotiable instrument as well.

This is also consistent with the prosecution history of the '988 patent, in which Applicants sought to distinguish the prior art Carlson '607 patent based on the limitation "without using the check as a negotiable instrument." In the '607 patent, the check is scanned as a source document, the information is used to conduct an electronic transaction, and the check is handed back to the user. The only distinction between this and the "negotiable instrument" limitations of the '988 patent is that in Carlson, the source document *is* a negotiable instrument. These undisputed facts demonstrate that the *existence* of a negotiable instrument within the TeleCheck ECA Service establishes its *use* as a negotiable instrument. This undisputed intrinsic evidence further supports a finding of no infringement under any construction.

These features also impact the real world interaction between the consumer and merchant. Filling out and signing the check slows down the transaction—contrary to a stated objective of one of the '988 patent inventors considered vitally important. (*See* Ex. 31 at 196:21-198:10.) Moreover, having the check filled out and signed is what allows the merchant to "keep as paper," i.e., process the check via the traditional route of physically transporting the paper check to the bank on a nightly basis, in situations where electronic conversion is for some reason unavailable, not permitted, or not desired by the consumer.

### 3. LML's Focus On NACHA Rules Or Guidelines As A Basis Or Explanation For Infringement Is Flawed

LML erroneously relies on NACHA's interpretation of law to buttress its case for infringement. LML seeks to rely on a NACHA guideline, not a rule, in which NACHA

states without reference to legal authority that "[POP] transactions are not considered to be truncated checks and do not fall under the requirements of check law or the Uniform Commercial Code . . . ." (LML Brief at 7.)  LML also cites to the deposition testimony of NACHA representatives Jane Larimer and Elliot McEntee, who reiterate NACHA's *opinion* on which *law* applies to its promoted products and services. (*Id.* At 7-8.)

LML's reliance on NACHA's guidelines is flawed for three reasons. First, NACHA is not a regulatory or judicial body that has the authority to interpret which law governs a particular transaction, and so its guidelines are not controlling. NACHA is akin to a standards setting organization. It does not have the authority to usurp the UCC or pronounce such well-established law inapplicable.

Second, LML has not asserted or otherwise established that the patent in suit literally reads on the NACHA Operating Rules for POP entries. On the contrary, certain limitations of the '988 are expressly prohibited by NACHA Operating Rules. For example, NACHA prohibits the use of certain types of checks, while the '988 patent requires that an accused system be able to conduct transactions using "any bank check" or "any consumer bank check." Likewise, NACHA rules require that the check number be carried through the transaction. (Ex. 3 at FDC 1081289; Ex. 16 at LML-EP 055504.) The '988 patent describes "dropping" the check number even where it is present. (Ex. 2 at 10:30-33.)

Third, nothing in the NACHA rules prohibits additional process steps that further establish use of the check as a negotiable instrument. The NACHA rule cited by LML requires that a check or sharedraft be used as a source document, but the rule does not prohibit use of the check as a negotiable instrument. (Ex. 26 at § 3.8.1.) LML wrongly asserts that a check must be used as a source document "only," but the text of the Rule contains no such limitation:

> For a POP entry, a check or sharedraft provided by the Receiver [consumer] at the point-of-purchase ***must be used by the Originator [merchant] as a source document for the Receiver's***

16

*routing number, account number, and check serial number.* The
source document *must then be voided by the Originator*.

(*Id.*)  LML's mistaken reliance on an allegedly "uncontested" fact renders LML's motion

for summary judgment inappropriate.

REDACTED

17

# REDACTED

For these reasons, even in light of NACHA's opinion as to applicable law (which does not consider TeleCheck's implementation), a reasonable juror could find no infringement under any party's claim construction.

### C. TeleCheck Does Not Infringe Process Claim 8 and Therefore Cannot Infringe Claim 16

Because TeleCheck does not perform every step of the process of claim 8, TeleCheck does not directly infringe claim 8 and those claims that depend from claim 8. The "all elements" rule provides that there can be direct infringement of a patent claim *if, and only if, every element of the patent claim was practiced by the accused infringer*. *Prouty v. Draper Ruggles & Co.,* 41 U.S. 336 (1842); *Warner-Jenkinson Co. v. Hilton Davis Chem Co.* 520 U.S. 17, 29 (1997). *See also Canton Bio-Med., Inc. v. Integrated Liner Techs., Inc.*, 216 F.3d 1367, 1370 (Fed. Cir. 2000) ("[E]ach of the claimed steps of a patented process must be performed in an infringing process.")

# REDACTED

For other steps, LML makes conclusory and passively stated assertions that these elements are met, without ever identifying the actor:

- "[W]hen any particular bank check is presented to a TeleCheck point of sale terminal, this element is literally satisfied."

18

**REDACTED**

The text of claim 16 actually specifies who must perform the required limitation "executing of the sales slip *by the consumer* as proof of bank account access authorization." TeleCheck does not perform this step and even if it did, it could not infringe this claim based on the literal requirement that the slip be executed "by the consumer."

Moreover, since the filing of its complaint, neither LML nor its expert has provided any supporting evidence that TeleCheck induces others to infringe or contributes to infringement.

**REDACTED**

**D.    Because TeleCheck Does Not Infringe Any Independent Claim of the '988 Patent, TeleCheck Does Not Infringe Any Dependent Claim**

Dependent claims 2, 4, 5, 6, 10, 11 and 16 depend from independent claims 1, 8 and 9. LML's statement that TeleCheck "has never contested" the dependent claims is false. TeleCheck has repeatedly contended that it does not satisfy any dependent claim because TeleCheck does not satisfy any of the independent claims of the '988 patent. *See*

19

*Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000) (stating that it is a fundamental principle of patent law that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed).

Because evidence exists to support a finding of no infringement as to each independent claim, that same evidence supports a finding of no infringement for each dependent claim.

### E.    TeleCheck Has Made Adequate and Timely Disclosures of Its Defenses

LML asserts, without argument or factual support, that "Defendants cannot raise, new, undisclosed contentions in response to [LML's motion for summary judgment]." This answering brief in response to LML's motion sets forth defenses that were disclosed to LML *as early as January 2005* in response to LML's interrogatories. TeleCheck also timely served the expert reports of David P. Kurrasch and Dr. Dewayne Perry regarding non-infringement on September 20, 2005, which were substantively consistent with TeleCheck's interrogatory responses. TeleCheck's defenses have not changed in any material way from what has been previously disclosed to LML per the scheduling order or agreement by the parties.

Not only is LML's statement regarding "undisclosed contentions" without purpose, it misrepresents the Federal Rules. Neither Rule 37 nor Rule 26 is consistent with LML's assertion. Rule 26 actually *requires* supplementation of discovery, Fed. R. Civ. P. 26(e), while Rule 37 prohibits use of information if a party fails to supplement as required by Rule 26(e).

As with the Federal Rules, LML's cited cases fail to support its assertion, nor are they relevant given TeleCheck's timely disclosure of its contentions. LML cites to *Kalis v. Colgate-Palmolive* as "denying request for additional discovery to oppose motion for summary judgment." (LML Brief at p. 10.) Additionally, LML cites *Trebor Sportswear*

*Co., Inc. v. The Limited Stores, Inc.* as "denying further discovery when the party opposing summary judgment had a 'fully adequate opportunity for discovery.'" (LML Brief at pp. 10-11.) Neither of these cases is relevant here. TeleCheck has not and does not seek further discovery to oppose LML's summary judgment motion. TeleCheck's discovery responses and expert disclosures have adequately set forth its defenses.

LML's other cited cases are also irrelevant. According to LML, these cases relate to situations in which a party "failed to disclose identity of expert and the substance of his testimony until five months after retaining him and over three months after the close of an extended period of discovery" and where an expert was "not disclosed until after the close of discovery, and plaintiff failed to seasonably supplement its interrogatory responses to identify the expert in a timely manner pursuant to Rule 26(e) of the Federal Rules of Civil Procedure." (LML Brief at p. 11.)

In the present case, TeleCheck disclosed the identities of experts David Kurrasch and Dr. Dewayne Perry within days of their engagement. Their reports regarding non-infringement were timely served, and TeleCheck's contention interrogatories were timely updated. Indeed, LML likewise supplemented its contentions following service of its own expert reports – after the close of fact discovery and after LML provided its expert reports. None of the cases LML cites in support of its proposition have facts even remotely similar to the facts of this case.

## V.    CONCLUSION

For all of the reasons set forth above, LML's Motion for Summary Judgment of Infringement should be DENIED.

21

Dated:  November 15, 2005          FISH & RICHARDSON P.C.

By: _____
     William J. Marsden, Jr. (#2247)
     Timothy Devlin (#4241)
     Tara D. Elliott (#4483)
     919 N. Market Street, Suite 1100
     P.O. Box 1114
     Wilmington, DE  19899-1114
     (302) 652-5070

Attorneys for Defendant
TeleCheck Services, Inc.

80028087.doc

22

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2005, I electronically filed the PUBLIC VERSION

OF TELECHECK'S ANSWERING BRIEF IN OPPOSITION TO LML'S MOTION FOR

SUMMARY JUDGMENT NO. 1 OF INFRINGEMENT with the Clerk of the Court using

CM/ECF which will send notification of such filing to the following:

Richard K. Herrmann, Esq.
Morris, James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19899

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

Collins J. Seitz, Jr., Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19801

Additionally, I hereby certify that on the 22nd day of November, the foregoing document
was served via email on the following non-registered participants.

Robert Jacobs, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Mark C. Scarsi, Esq.
O'Melveny & Myers LLP
400 S Hope Street
Los Angeles, CA 90071

Russell E. Levine, Esq.
Kirkland & Ellis LLP
200 E. Randolph Dr.
Chicago, IL 60601

*/s/ Timothy Devlin*
Timothy Devlin (#4241)