# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LML PATENT CORP. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 04-858-SLR |
| vs. | ) | |
| | ) | |
| TELECHECK SERVICES, INC. | ) | |
| ELECTRONIC CLEARING HOUSE, INC., | ) | **PUBLIC VERSION** |
| XPRESSCHEX, INC., AND | ) | |
| NOVA INFORMATION SYSTEMS, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

# LML'S MEMORANDUM IN OPPOSITION TO
## NOVA'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

Originally filed: November 15, 2005
Public version filed: November 22, 2005

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
Edward K. Runyan
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Counsel for LML Patent Corp.*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................1

II.   STATEMENT OF THE FACTS .............................................3

    A.    THE INVENTION DESCRIBED IN THE '988 PATENT ....................3

    B.    NOVA'S ELECTRONIC CHECK SERVICE ........................................6

III.  LEGAL STANDARDS ........................................................9

    A.    SUMMARY JUDGMENT ................................................................9

    B.    INFRINGEMENT ............................................................................11

IV.   ARGUMENT ....................................................................11

    A.    NOVA'S ACCUSED PRODUCT SATISFIES THE "WITHOUT USING
        THE [BANK] CHECK AS A NEGOTIABLE INSTRUMENT"
        ELEMENT IN CLAIMS 1, 8 AND 9 ................................................11

        1.    Defendants' Construction of "Without Using the [Bank] Check as
            a Negotiable Instrument"—On Which Nova's Motion Is
            Exclusively Based—is  Improper ........................................12

        2.    Nova Offers No Argument Or Evidence Of Non-Infringement
            Under LML's Proper Claim Construction Of "Without Using The
            [Bank] Check As A Negotiable Instrument" ........................13

        3.    Even Under Defendants' Proposed Construction Of "Without
            Using The [Bank] Check As A Negotiable Instrument," Nova's
            Accused Product Satisfies This Element ................................16

    B.    NOVA'S ACCUSED PRODUCT CAN READ AND RECEIVE
        CONSUMER BANK ACCOUNT INFORMATION FROM "ANY
        BANK CHECK" ..............................................................................17

        1.    Nova's Entire Argument Is Based On Limitations Simply Not
            Present In The Asserted Claims ............................................18

        2.    Nova's Accused Product Is "Adapted to Receive Consumer Bank
            Account Information From Any Bank Check" ........................19

3.    Nova's Accused Product Includes The Step Of "Presenting Any Bank Check Specimen To A Point of Sale Terminal Located At A Merchant Or Service Provider" ........................................................22

4.    The Point of Sale Terminals Used With Nova's Accused Product Have "Means for Reading Magnetic Ink Character Recognition Numbers on Any Consumer Bank Check" ...................................23

5.    Nova's Accused Product Can Read And Receive Consumer Bank Account Information From Foreign Checks ...............................25

C.    NOVA'S ARGUMENT THAT ITS ACCUSED PRODUCT DOES NOT CONDUCT ELECTRONIC CHECKING TRANSACTIONS USING "ANY BANK CHECK" FAILS AS A MATTER OF LAW AND FACT ...........30

1.    Defendants' Claim Constructions—On Which Nova's Motion Is Exclusively Based—Are Improper ...........................................31

2.    Nova Offers No Argument Or Evidence Of Non-Infringement Under LML's Proposed Claim Constructions ...........................33

D.    NOVA'S ACCUSED PRODUCT READS CHECKS FOR THE "SOLE PURPOSE" OF OBTAINING "CONSUMER BANK ACCOUNT INFORMATION" ...............................................................................36

E.    NOVA'S ACCUSED PRODUCT VERIFIES THAT ACCOUNT NUMBERS WERE READ ACCURATELY AT THE POINT OF SALE AS RECITED IN CLAIM 8 ...........................................................................38

V.    CONCLUSION ...........................................................................................40

## TABLE OF AUTHORITIES

**Cases**

*Abtox, Inc. v. Exitron, Corp.,*
    122 F.3d 1019 (Fed. Cir. 1997)..................................................................... 13

*Anderson v. Liberty Lobby, Inc,*
    477 U.S. 242 (1986)................................................................................... 10

*Arthrocare Corp. v. Smith & Nephew, Inc.,*
    2003 WL 1856436 (D. Del. 2003)................................................................. 10

*Bickling v. Kent General Hosp., Inc.,*
    872 F.Supp. 1299 (D.Del. 1994)................................................................... 10

*Biotec Biologische Nat. GmbH & Co. KG v. Biocorp, Inc.,*
    249 F.3d 1341 (Fed. Cir. 2001)................................................................... 10

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986).................................................................................... 9

*Chipollini v. Spencer Gifts, Inc.,*
    814 F.2d 893 (3d. Cir. 1991)...................................................................... 10

*Comark Comm'ns, Inc. v. Harris Corp.*
    156 F.3d 1182 (Fed. Cir. 1998)................................................................... 39

*Cordis Corp. v. Boston Scientific Corp.,*
    2005 WL 1331176 (D. Del. June 3, 2005)................................................. 10-11

*Dayco Prods., Inc. v. Total Containment, Inc.,*
    258 F.3d 1317 (Fed. Cir. 2001)................................................................... 37

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,*
    45 F.3d 1550 (Fed. Cir. 1995)................................................................... 10

*Hewlett-Packard Co. v. Bausch & Lomb Inc.,*
    909 F.2d 1464 (Fed. Cir. 1990)................................................................... 32

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.,*
    381 F.3d 1111 (Fed. Cir. 2004)................................................................... 39

*Intel Corp. v. ITC,*
    946 F.2d 821 (Fed. Cir. 1991)......................................................... 17, 22, 32

*Joy Tech., Inc. v. Flakt, Inc.,*
    6 F.3d 770 (Fed. Cir. 1993)....................................................................... 33

*Key Pharms. Inc. v. Hercon Labs. Corp.*,
    981 F. Supp. 299 (D. Del. 1997)................................................................................ 17, 22, 32

*In re Kollar*,
    286 F.3d 1326 (Fed. Cir. 2002).............................................................................................. 32

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995); *aff'd*, 517 U.S. 370 (1996) ................................................. 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)................................................................................................................ 10

*N. Am. Container, Inc. v. Plastipak Packaging Inc.*,
    415 F.3d 1335 (Fed. Cir. 2005)............................................................................................. 32

*NTP, Inc. v. Research in Motion, Ltd*,
    418 F.3d 1282 (Fed. Cir. 2005)............................................................................... 22, 33, 35

*Philips Elecs. N. Am. v. Contec Corp.*,
    2004 WL 769371 (D. Del. April 5, 2004)........................................................................ 28, 29

*Phillips v. AWH Corp.*,
    415 F.3d. 1303 (Fed. Cir. 2005)........................................................................................ 12, 13

*SanDisk Corp. v. Memorex Prods., Inc.*,
    415 F.3d 1278 (Fed. Cir. 2005)............................................................................................. 33

*Tex. Instruments, Inc. v. U.S. Int'l Trade Comm'n*,
    805 F.2d 1558 (Fed. Cir. 1986)............................................................................................. 39

*Xerox Corp. v. 3Com Corp.*,
    267 F.3d 1361 (Fed. Cir. 2001)............................................................................................. 39

**Statutes**

35 U.S.C. 112(6)........................................................................................................................ 34

**Rules**

Fed. R. Civ. P. 26(a)(2)............................................................................................................ 15

Fed. R. Civ. P. 37(c)(1)............................................................................................................ 29

Fed. R. Civ. P. 56(c) ................................................................................................................. 9

Fed. R. Evid. 401 ...................................................................................................................... 12

Fed. R. Evid. 402 ...................................................................................................................... 12

Fed. R. Evid. 701 ................................................................................................................ 15

Fed. R. Evid. 702 ................................................................................................................ 26

Fed. R. Evid. 801 ................................................................................................................ 12

## I.    INTRODUCTION

Nova's motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,484,988 (the "'988 patent") should be denied.    Nova's motion is limited to five arguments, all of which lack merit.    Indeed, all but one of Nova's arguments are based *exclusively* on Defendants' improper claim constructions and for which <u>Nova offers no</u> <u>argument or evidence of non-infringement under LML's proper constructions</u>.    But, even under Defendants' improper constructions, a genuine issue of material fact still exists.

*First*, Nova argues that its accused product does not satisfy the phrase "without using the check as a negotiable instrument" found in claims 1, 8, and 9 of the '988 patent. However, Nova's argument is wholly dependent on Defendants' improper claim construction of this limitation.    Nova offers no argument or evidence of non-infringement under LML's proper construction of this phrase—where the check is used as a source of information, and is not accepted or processed.    Indeed, Nova concedes that its accused product complies with NACHA operating rules which require that the bank check be used only as a "source document" for electronic settlement, and is not accepted or processed.    But, even under Defendants' improper construction of this phrase, a genuine issue of material fact exists.

*Second,* Nova argues that its accused product "cannot read or receive consumer bank account information from many types of checks."    But, there is no such limitation in the asserted claims of the patent.    Nova attempts to rewrite the claims in a strawman argument and then argue its non-infringement positions.    Regardless, Nova's entire argument in this regard is based solely on testimony from its alleged expert that its accused product would not work with selected foreign checks.    But, notwithstanding that

Nova's expert has no qualifications to render any opinion regarding Nova's product, his opinions are based on a fundamental misunderstanding of the claims. Moreover, Nova's alleged expert only presented checks at a single merchant location using only one of the several point of sale terminal/MICR reader combinations that work with Nova's accused product. The fact remains that Nova's accused product can read or receive consumer bank account information from any bank check in a variety of ways that neither Nova nor its expert address whatsoever, such as via manual keyboard entry.

*Third,* Nova argues that its accused product "does not conduct electronic transactions using any bank check." Nova contends that the phrase "any bank check" should be read into the elements of "enabling automated clearing house communication for transferring funds" (claims 1 and 9) and "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations" (claim 8).[1] Notably, *the phrase "any bank check" does not appear anywhere in these elements.* Nova's argument is simply based on an extreme, strained effort to import the term "any bank check" into these elements in an attempt to avoid infringement.

*Fourth,* Nova argues that because its accused product reads the check number off a check in addition to the ABA/transit routing number and bank account number, it does not read the check "for the sole purpose" of obtaining "consumer bank account information" as required by claims 2, 8 and 9 of the '988 patent. Yet again, Nova's argument is based exclusively on Defendants' improper construction of the element "consumer bank account information" which attempts to limit this phrase to "ABA/transit

---

[1] LML does not assert claim 8 of the '988 patent in this case, but does assert claims 16 and 18 which depend from claim 8.

routing number and bank account number only." But, under LML's proper claim construction of this limitation—"information relating to a consumer's bank account including the MICR line"—Nova concedes that it satisfies this claim element.

*Fifth,* Nova argues that its accused product does not "verify that account numbers were accurately read at the point of sale" as recited in claim 8 because there is no *visual* verification that the account numbers were read accurately. Once again, Nova is making a non-infringement argument based solely on a word—visual—that does not even appear in the claim element. If that extraneous limitation is not read into the element, Nova has no non-infringement argument with respect to this element.

A genuine issue of material fact exists as to each of Nova's non-infringement arguments thus precluding summary judgment. In fact, the evidence actually shows that *Nova's accused product infringes* the asserted claims of the '988 patent.[2]

## II.    STATEMENT OF THE FACTS

### A.    The Invention Described In The '988 Patent

In the early 1990's, two inventors, Robert Hills and Henry Nichols, developed a new way of processing checks at the point of sale, *i.e.* at the merchant's location. Their innovative process greatly simplified traditional check processing and helped merchants facilitate the way that they received payment on checks presented by their customers. (*See generally*, Ex. 1, '988 patent)[3]. Instead of traditional processing where the merchant accepted a check and physically took it to the bank, the invention disclosed in the '988

---

[2] LML's Memorandum in Support of Its Motion for Summary Judgment No. 3 details Nova's infringement of claims 1, 2, 4, 5, 6, 9, 10, 11 and 16 of the '988 patent.

[3] Exhibits to the Declaration of Lesley Smith in Support of LML's Memorandum in Opposition to Nova's Motion for Summary Judgment of Non-Infringement, hereinafter ("Ex. ___").

patent permitted the merchant to obtain approval for a transaction at the point of sale in the presence of the consumer and then process the transaction electronically, as shown in Fig. 1 of the '988 patent:



**FIG. 1**

(Ex. 1 at Fig. 1). This process negated the need for physically taking the check to the issuing bank, eliminating the significant cost and expense associated with traditional processing of paper checks. (*See generally*, Ex. 1 at "Abstract" and 3:3-8).

In general, the '988 patent allowed merchants to use a paper check presented by a consumer whereby the MICR data[4] contained on the check is captured at the retailer's point of sale terminal, using either a commercially available MICR reader, optical character recognition scanner or keypad to physically input the information into the terminal. (*Id.* at 5:45-49, 6:62-63). The amount of the transaction is then entered into the terminal keypad. (*Id.* at 8:11-13). Information relating to the merchant's location, date

---

[4] All printed checks for funds in the United States have a Magnetic Ink Character Recognition (MICR) line imprinted on the bottom of each check. This line is printed using an ink with iron-oxide pigments capable of being magnetized. (Ex. 2, Tinkel Decl. ¶ 15, n.3). In this way the characters encoded on this line can be read either magnetically or optically. (*Id.*) The MICR line typically, contains the following information: (1) Bank Routing Number – A number that uniquely identifies the bank at which the checking account is established (sometimes known as the ABA number); (2) Account number of the consumer's checking account; and (3) Check Serial Number. (*See generally*, Ex. 2 Declaration of Gary Tinkel ("Tinkel Decl.") at ¶ 15 n.3; REDACTED

and time of transaction may be automatically captured by the terminal as well. (*Id.* at 5:18-21). The terminal then sends data to an electronic check processing provider by modem or other such communication methods that transfer packets of information electronically. (*Id.* at 5:62-6:8, 6:20-38).

The electronic check processing provider may run verification/risk analysis for the account and the bank routing number (*i.e.* the bank that the consumer's account is located at). (*Id.* at 6:9-19). If the transaction is approved, the point of sale terminal prints out a customer authorization receipt which authorizes the retailer to initiate an ACH or EFT transaction from the customer's checking account. (*Id.* at 8:18-23). The customer signs the authorization form and the retailer often voids the paper check. (*Id*). The consumer bank account and transaction information is formatted by the electronic check processing provider so that it can be read and processed by the Automated Clearing House ("ACH") or other Electronic Funds Transfer ("EFT") networks. (*Id.* at 8:30-42). The ACH or other EFT networks, in turn, transmits the payment information to the consumer's bank, where his or her account is debited and the retailer's bank, sometimes called the Originating Depository Financial Institution (ODFI), is credited via an electronic funds transfer.

The '988 patent contains three independent claims, 1, 8, and 9. Claims 1 and 9 are system claims, and claim 8 is a method claim. The patent also contains a number of dependent claims, 2-7 and 10-20. LML is asserting infringement by Nova's accused product of claims 1, 2, 4, 5, 6, 9, 10, 11, 14, 16, and 18 (the "Asserted Claims").

**B.**     **Nova's Electronic Check Service**

**REDACTED**

REDACTED

**REDACTED**

**REDACTED**

III.   **LEGAL STANDARDS**

A.    **Summary Judgment**

Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The party moving for summary judgment bears the initial burden to demonstrate the absence of genuine issues of material fact, regardless

of which party has the burden of persuasion at trial." *Bickling v. Kent Gen. Hosp., Inc.,*

872 F. Supp. 1299, 1304 (D.Del. 1994) (*citing Chipollini v. Spencer Gifts, Inc.,* 814 F.2d

893, 896 (3d. Cir. 1991) (en banc)).  When assessing the factual record, this Court must

view all evidence in the light most favorable to LML, the non-moving party.  *See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  "For

purposes of summary judgment, evidence is deposition testimony, declarations,

admissions, answers to interrogatories, etc. Defendant's motions are often deficient for

providing only attorney argument." *Arthrocare Corp. v. Smith & Nephew, Inc.,* 2003 WL

1856436, at *5 (D. Del. 2003) (J. Robinson); *see also Biotec Biologische Nat. GmbH &

Co. KG v. Biocorp, Inc.,* 249 F.3d 1341, 1353 (Fed. Cir. 2001).

To defeat a motion for summary judgment, LML is not required to present

evidence conclusively resolving all material factual issues in its favor; "rather, all that is

required is that sufficient evidence supporting the claimed factual dispute be shown to

require a jury. . .to resolve the parties' differing versions of the truth at trial." *Anderson

v. Liberty Lobby, Inc.,* 477 U.S. at 242, 249 (1986) (internal citation omitted); *Glaverbel

Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1561 (Fed. Cir. 1995).

Moreover, the evidence submitted by LML "is to be believed, and all justifiable

inferences are to be drawn in [its] favor." *Anderson,* 477 U.S. at 255.  In fact, where the

evidentiary matter in support of the motion does not establish the absence of a genuine

issue, summary judgment must be denied "even if the nonmoving party does not present

opposing evidentiary materials." *Bickling,* 872 F. Supp. at 1305; *Cordis Corp. v. Boston

Scientific Corp.,* No. Civ. 03-027-SLR, 2005 WL 1331176, at *2 (D. Del. June 3, 2005)

(J. Robinson) (denying summary judgment of non-infringement because of the existence of material issues of fact).

**B.    Infringement**

Patent infringement is a two-step analysis. The first step is determining the meaning and scope of the asserted patent claims. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995); *aff'd*, 517 U.S. 370 (1996). The next step in the infringement analysis is to determine whether the accused products and processes fall within the scope of those properly construed claims. *Id.* at 976. Here, Nova's motion is based almost exclusively on Defendants' improper claim constructions. However, even under Defendants' claim constructions, a genuine issue of material fact still exists for trial, thus precluding summary judgment.

**IV.    ARGUMENT**

**A.    Nova's Accused Product Satisfies The "Without Using the [Bank] Check As A Negotiable Instrument" Element In Claims 1, 8 And 9**

Nova argues that its accused product does not satisfy the element "without using the [bank] check as a negotiable instrument" in claims 1, 8 and 9. But, Nova's argument is based exclusively on the adoption of Defendants' improper proposed construction of this phrase. Not only is Defendants' construction improper, Nova's accused product infringes this element in claims 1 and 9 even under Defendants' construction. At the very least, a genuine issue of material fact exists precluding summary judgment.

1.    **Defendants' Construction of "Without Using the [Bank] Check as a Negotiable Instrument"—On Which Nova's Motion Is Exclusively Based—is Improper[5]**

Nova's argument with respect to the element "without using the check as a negotiable instrument" is based exclusively on Defendants' incorrect construction of this element. Nova proffers no argument or evidence of non-infringement under any other claim construction—including LML's proper claim construction. As such, Nova's motion should be denied on this basis as a matter of law.

Defendants readily admit that their construction of "without using the [bank] check as a negotiable instrument"—"the bank check, at no time, takes on the status of a negotiable instrument"—comes, not from the intrinsic evidence, but directly from the *extrinsic evidence*.[6] In doing so, Defendants ignore the fundamental teachings of *Phillips* that the intrinsic evidence of record is the "primary tool" in claim construction, while "extrinsic evidence...[is] *less reliable* than the patent and its prosecution history in determining how to read claim terms." *Phillips v. AWH Corp.*, 415 F.3d. 1303, 1318 (Fed. Cir. 2005) (emphasis added). Indeed, Defendants' construction is at odds with the intrinsic evidence. As a preliminary matter, on its face, the claim language is focused on the fact that the check is not *used as* a negotiable instrument. (Ex. 1, claims 1, 8 and 9). Once again, Defendants' construction is divorced from the language of the claims and

---

[5] LML's claim construction briefing, pending simultaneously herewith, explains in detail why LML's proposed constructions are correct, and why Defendants' proposed constructions are incorrect.

[6]      **REDACTED**

-12-

instead seeks to define whether the check takes on the *status* of a negotiable instrument. *Abtox, Inc. v. Exitron, Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997) ("[T]he language of the claim frames and ultimately resolves all issues of claim interpretation.").

Moreover, Defendants' construction runs directly contrary to the explicit teachings of the '988 patent—as the '988 patent specifically contemplates using a completely filled out check in its preferred embodiment. (Ex. 1 at 7:47-49). Even Nova acknowledges that the '988 patent is not limited to blank, unsigned checks, stating "the claimed system and method" of the '988 patent begins when a customer provides "the merchant with any bank check, *preferably* a 'specimen' or 'blank' check." (Nova Br. at 6 (citing '988 patent at 7:48)). Indeed, the claim language focuses on how the check is "used," not the status the check is taking on. Thus, Defendants' construction is improper.

### 2. Nova Offers No Argument Or Evidence Of Non-Infringement Under LML's Proper Claim Construction Of "Without Using The [Bank] Check As A Negotiable Instrument"

Nova presents no argument or evidence under LML's proper construction of "without using the [bank] check as a negotiable instrument." Consequently, Nova's motion should be denied as a matter of law.

As explained fully in LML's claim construction briefing, the proper construction of "without using the check as a negotiable instrument" is "where the paper check is used as a source of information, and is not accepted or processed." Unlike Defendants' construction, LML's construction follows *Phillips* and is derived directly from the intrinsic evidence. Indeed, the '988 specification repeatedly discloses using the check as a source of information and not accepting or processing the check. (*See, e.g.*, Ex. 1, '988 patent at 1:10-15, 9:64-10:2). Even Nova recognizes this fact, stating that the "bank

check is used only for purposes of obtaining consumer bank account information from the check . . .thereby eliminating reliance on accepting and processing commercial bank drafts." (Nova Br. at 6). Under LML's proper construction, Nova's accused product satisfies the element "without using the [bank] check as a negotiable instrument." (Ex. 2, Tinkel Decl. ¶¶ 45-46, 67-68, 102-03). Nova does not contest this fact in its motion.

**REDACTED**

---

[7] The entry code on a specific electronic transaction identifies the origin of the transaction. For instance, the only transaction at issue in this case—point of purchase transactions—have the entry code POP.

-14-

REDACTED

---

[8]    REDACTED

[9]    REDACTED

REDACTED

3.     **Even Under Defendants' Proposed Construction Of "Without Using The [Bank] Check As A Negotiable Instrument," Nova's Accused Product Satisfies This Element**

REDACTED

---

10 Claim 9 contains the similar language of "enabling automated clearing house communication for transferring funds without using a bank check as a negotiable instrument." (Ex. 1).

**REDACTED**

### B.    Nova's Accused Product Can Read And Receive Consumer Bank Account Information From "Any Bank Check"

Nova next argues that its accused product is not adapted to receive consumer bank account information from any bank check and cannot read consumer bank account information from any bank check as recited in claims 1, 8, and 9. Claim 1 recites "a point of sale terminal adapted to receive consumer bank account information from any bank check;" claim 8 recites "presenting any bank check specimen to a point of sale terminal located at a merchant or service provider;" and claim 9 recites "the point of sale terminal comprising reading means for reading magnetic ink character recognition numbers on any consumer bank check." Although the parties have proposed different

---

[11]    **REDACTED**

constructions of "any bank check,"[12]  these elements are present in Nova's accused product under either party's construction.

### 1.    Nova's Entire Argument Is Based On Limitations Simply Not Present In The Asserted Claims

Nova argues that its accused product does not infringe any Asserted Claim of the '988 patent because "Nova cannot read or receive consumer bank account information from many types of checks." (Nova Br. at 17). But, the asserted claims of the '988 patent have no such limitation—and thus, Nova's entire argument is flawed.[13]

First, claim 1 of the '988 patent requires that "a point of sale terminal *adapted to receive* consumer bank account information from any bank check." This element only requires that Nova's point of sale terminals be "adapted to receive" information; it does not require that Nova's accused product be able to process all types of checks as Nova contends. If the terminals are "adapted" to receive the required information—which they are—Nova satisfies this element.

Second, claim 8 (from which asserted claims 16 and 18 depend) of the '988 patent is a method claim—not a system claim—and only requires "presenting any bank check specimen to a point of sale terminal located at the merchant or service provider." Thus, with a method claim (and as explained in further detail below) if "any" single bank check is presented to the point of sale terminal, Nova satisfies this element. There is no requirement to read or receive anything in this step. Indeed, since claim 8 is a method

---

[12] LML construes the term as "any regular check used to draw funds from a normal bank or credit union checking account" and Defendants construe it as "any type of check drawn on a financial institution." (Ex. 22, Joint Claim Chart).

[13] Telling is Nova's intentional failure to quote the claim language of these elements of the Asserted Claims—instead Nova only provides the Court with self-serving paraphrases of the elements which are misleading.

claim, a single transaction performing all the claim steps of the claim infringes. For instance, if a personal check (which Nova concedes its accused product can process) is presented to the point of sale terminal located at a merchant or service provider, the claim step that recites "any bank check" is satisfied for that particular transaction. Indeed, every transaction processed by Nova (*i.e.*, the transactions for which LML seeks damages) must begin with the check being presented to the point of sale terminal and thus satisfies this element of claim 8.

Third, claim 9 of the '988 patent only requires "reading means for reading *magnetic ink character recognition numbers* on any consumer bank check." Magnetic Ink Character Recognition Numbers (MICR) are the numbers generally printed on the bottom of a check using an ink with iron-oxide pigments capable of being magnetized. In this way the characters encoded on this line can be read either magnetically or optically. (*See generally,* Ex. 2, Tinkel Decl. ¶ 15 n.3). Thus, the issue with this element in claim 9 is only whether Nova's accused product has a reading means for reading numbers on a consumer bank check written in this magnetic ink, not every number regardless of what type of ink is on the check. Moreover, claim 9 only requires that the reading means read these magnetic numbers on "consumer bank checks"—not every single type of check. Nova's accused product certainly has a reading means—by its own admission—that reads this magnetic ink for any consumer bank check, and thus, satisfies this element.

> 2. **Nova's Accused Product Is "Adapted to Receive Consumer Bank Account Information From Any Bank Check"**

# REDACTED

REDACTED

---

[14] LML has construed "adapted to receive consumer bank account information from any bank check" as simply the claim language itself. (Ex. 22, Joint Claim Chart). Defendants' construction is "adapted to read consumer bank account information directly from any bank check." (*Id.*)

LML has construed "consumer bank account information" to mean "information relating to a consumer's bank account including the MICR line (magnetic ink character recognition line)." (*Id.*) Defendants' construction is "only the ABA/transit routing number and bank account number." (*Id.*)

**REDACTED**

---

15    **REDACTED**

(Continued...)

-21-

**REDACTED**

3.      Nova's Accused Product Includes The Step Of "Presenting Any Bank Check Specimen To A Point of Sale Terminal Located At A Merchant Or Service Provider"

**REDACTED**

---

**REDACTED**

REDACTED

4.      The Point of Sale Terminals Used With Nova's Accused
        Product Have "Means for Reading Magnetic Ink Character
        Recognition Numbers on Any Consumer Bank Check"

REDACTED

REDACTED

5.      **Nova's Accused Product Can Read And Receive Consumer Bank Account Information From Foreign Checks**

**REDACTED**

---

[16] As explained in LML's claim construction briefing, the applicants during prosecution of the '988 patent expressly stated that their invention related to any "regular check" drawn on a "normal" checking account. Nova's effort to include foreign checks with non-magnetic and foreign fonts is simply not something the applicants intended their invention to cover.

a.  Nova's Argument is Irrelevant to Claims 1 and 8 and All
    Claims that Depend From Them

As explained in detail above, Nova attempts to rewrite the claims and uses these

strawman claims to makes its non-infringement arguments.  But claims 1 and 8 have no

requirement whatsoever that anything be read or received.  Claim 1 only requires a point

of sale terminal "adapted to receive" and claim 8 is a process claim that has nothing close

to the limitation which Nova suggests.  As such, Nova's arguments with respect to these

claims fails for this reason alone.

b.  Mr. Schutze's Declaration Should Be Stricken As He Is
    Not Qualified To Render the Opinions It Contains[17]

**REDACTED**

---

[17] LML's *Daubert* Motion No. 2, pending simultaneously herewith, explains in detail
why the opinions of Mr. Schutze do not pass muster under Rule 702 or *Daubert* and
should, therefore, should be excluded.

-26-

**REDACTED**

c.     Mr. Schutze's Declaration Should Be Stricken Because It
Relies on Documents Not Timely Produced.

**REDACTED**

---

18      **REDACTED**

-27-

**REDACTED**

.

    d.      <u>Even if Mr. Schutze's Opinions Are Considered, a Genuine
            Issue of Fact Exists</u>

**REDACTED**

---

[19] Exhibit O to Nova's motion, a document giving an overview of the RDM EC6000i, is
                                                                    (Continued...)

**REDACTED**

---

not evidence that Nova can rely on or that can be considered because it had never been produced to LML (as evidenced by its lack of Bates numbers), despite being responsive to LML's document requests, in violation of Rule 26(e)(2). (McDole Decl. at ¶¶ 3-5). Document production in this case ended March 4, 2005. (*Id.* at ¶ 2). The Court extended this deadline until April 5, 2005 at Defendants request, but stated "if document production isn't completed by April 5th, we'll start talking about sanctions." (*Id.*; Dkt# 89, March 22, 2005 Hearing Transcript at 8). As such, Nova should not be permitted to use this information at a trial, a hearing, or in support of its motion. Fed. R. Civ. Pro. 37(c)(1); *see Philips Elecs. N. Am. v. Contec Corp.*, No. Civ.A. 02-123-KAJ, 2004 WL 769371, at *1 (D. Del. April 5, 2004) (granting motion to exclude untimely produced documents).

[20]

**REDACTED**

**REDACTED**

**C.**    **Nova's Argument That Its Accused Product Does Not Conduct Electronic Checking Transactions Using "Any Bank Check" Fails As A Matter of Law And Fact**

Nova next argues that its accused product does not conduct transactions using

"any bank check" and therefore allegedly does not satisfy the claim elements of

-30-

"enabling automated clearing house communication for transferring funds" (claims 1 and 9) and "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations" (claim 8). (Nova Br. at 20). Nova makes this argument even though the phrase "any bank check" does not appear in these claim elements. Indeed, Nova's argument is based exclusively on Defendants' incorrect claim construction which attempts to improperly rewrite the elements to include the phrase "any bank check." Consequently, Nova's motion should be denied on this basis alone. Indeed, under the proper constructions, Nova's accused product satisfies these disputed elements of claims 1, 8 and 9. But, even under Defendants' improper constructions, a genuine issue of material fact still exists.

     1.     **Defendants' Claim Constructions—On Which Nova's Motion Is Exclusively Based—Are Improper**

Nova's "any bank check" argument is based exclusively on Defendants' improper construction of the following elements of claims 1, 8, and 9:

| Asserted Claim | Claim Language On Which Nova Bases Its "Any Bank Check" Argument |
|---|---|
| Claim 1 | "enabling automated clearing house communication for transferring funds" |
| Claim 8 | "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations" |
| Claim 9 | "enabling automated clearing house communication for transferring funds" |

Notably, ***the phrase "any bank check" does not appear anywhere in these claim elements***. Despite the clear absence of this language in these elements, in their proposed construction, Defendants attempt to rewrite the language of these elements to include the additional limitation "based upon the consumer bank account information obtained from ***any bank check*** presented at the point of sale." (Ex. 22, Joint Claim Chart) (emphasis

added). As such, Defendants' construction is incorrect as a matter of law. *See N. Am. Container, Inc. v. Plastipak Packaging Inc.*, 415 F.3d 1335, 1348 (Fed. Cir. 2005) ("As we have stated previously, unless required by the specification, limitations that do not otherwise appear in the claims should not be imported into the claims.").

Moreover, Defendants attempt to construe the elements "enabling automated clearing house communication for transferring funds" from claims 1 and 9 and "subsequently transmitting the transaction event information to a bank for subsequent automated clearinghouse operations" from claim 8 exactly the same. But, these elements recite ***completely different language*** in addition to the fact that one element appears in system claims (claims 1 and 9) while the other is part of a method claim (claim 8). Independent claims 1 and 9 are system claims where the elements of the claim describe particular capabilities of the claimed systems. Because a system claim covers what a system *is* and not what a system *does,* a system claim is infringed by a system that contains all of the recited capabilities of the claimed system, regardless of whether those capabilities are actually used. *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("[A]pparatus claims cover what a device *is*, not what a device *does*."); *Intel*, 946 F.2d at 832; *see also Key Pharms.*, 981 F. Supp. at 310.

Unlike system claims, method claims (such as claim 8) do not cover a tangible item but instead "consists of a series of acts or steps." *In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002). The difference between the system claims and the method claim of the '988 patent is an important distinction which Defendants completely ignore. *Id.* (finding error where the court failed to recognize the "distinction between a claim to a product, device, or apparatus, all of which are tangible items, and a claim to a process which

-32-

consists of acts or steps"); *NTP*, 418 F.3d at 1316. Indeed, a method claim is directly infringed only by "practicing the patented method," regardless of what capabilities the system performing the process might have. *Joy Tech., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993). Thus, Defendants' construction is incorrect as a matter of law.

Finally, Defendants' construction improperly reads a preferred embodiment out of the claims. *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) ("A claim construction that excludes a preferred embodiment, moreover, 'is rarely, if ever, correct.'") (internal citations omitted). The '988 patent is clear that one of its benefits is providing the ability for the merchant or service provider to approve electronic funds transfers for only a subset of the bank checks read or received at the point of sale terminal. (Ex. 1 at 3:25-27; 8:16-18 and 8:31-36). Nova even acknowledges this by noting that a transaction is only electronically processed for payment *if the verification is approved.* (Nova Br. at 6). Defendants' construction, by reading in an extraneous limitation, would require "electronic communication with an automated clearing house for transferring funds electronically" for *all bank checks* read or received at the point of sale terminal—even those checks that the merchant and/or service provider have determined would not be eligible for electronic settlement based on the information read or received from the check. This construction reads the above preferred embodiment of the '988 patent out of the claims. Defendants' construction, therefore, cannot be correct.

### 2.  Nova Offers No Argument Or Evidence Of Non-Infringement Under LML's Proposed Claim Constructions

Nova presents no argument or evidence under LML's proposed construction of "second communication means...enabling automated clearing house communication for transferring funds" and "subsequently transmitting the transaction event information to a

bank for subsequent automated clearing house operations." Consequently, Nova's

motion should be denied as a matter of law.

        a.      LML's proper claim constructions

In its claim construction briefing, LML's proposed the following proper

constructions of these disputed elements:

| Claim Language | LML's Proper Construction |
|---|---|
| "second communication means…enabling automated clearing house communication for transferring funds" (claims 1 and 9) | "second communication means…enabling communication with an automated clearing house for electronically transferring funds." |
| "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations" (claim 8) | "subsequently transmitting the information relating to the transaction to a bank for subsequent automated clearing house operations." |

LML's constructions are based on the intrinsic evidence, and unlike Defendants'

construction, cover the preferred embodiment recited in the '988 patent whereby a

transaction can either be accepted *or* rejected.

        b.      Nova's Accused Product Satisfies the Element "Second Communication Means…Enabling Automated Clearing House Communication For Transferring Funds"

## REDACTED

---

[21] The parties do not dispute the construction of the "second communication means" element. This function is written in means-plus-function format pursuant to 35 U.S.C. 112(6). (Ex. 22, Joint Claim Chart). The recited function of this limitation is enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using the [a] bank check as a negotiable instrument. (*Id.*) The structures disclosed in the patent for performing the recited function of this limitation are a modem, network interface, enhanced radio

(Continued…)

**REDACTED**

    c.    <u>Nova's Accused Product Performs the Step "Subsequently Transmitting the Transaction Event Information to a Bank For Subsequent Automated Clearinghouse Operations"</u>

**REDACTED**

---

transmission interface, satellite communication interface or equivalent. (*Id.*)

-35-

REDACTED

**D.    Nova's Accused Product Reads Checks For The "Sole Purpose" Of Obtaining "Consumer Bank Account Information"**

Nova's next non-infringement argument is that its accused product does not read the bank check "for the sole purpose" of obtaining "consumer bank account information" as recited in claims 2, 8 and 9. This argument is again based exclusively on Defendants' improper construction of "consumer bank account information." Under the proper construction, Nova again does not contest infringement. Thus, Nova's motion should be denied on this basis as a matter of law.

---

[22] Because claim 8 is a method claim, even under Defendants' incorrect claim construction of this element, Nova satisfies this claim element. Indeed, for the same reasons stated above, any time a check is processed through Nova's accused system and subsequently sent through the ACH, Nova's ECS performs this step.

Defendants attempt to limit "consumer bank account information" to specific types of information, namely "only ABA/transit routing number and bank account number." (Ex. 22, Joint Claim Chart).

## REDACTED

As explained in detail in LML's claim construction briefing, Defendants' construction of "consumer bank account information" is a classic case of attempting to limit a clear, straightforward claim term where no such limitation is required by the plain language of the claim or has any basis in the intrinsic evidence. *Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1327 (Fed. Cir. 2001) ("adding limitations to claims not required by the claim terms themselves, or unambiguously required by the specification or prosecution history, is impermissible."). In fact, the Court need only look to the first word of Defendants' construction—"only"—to reveal their blatant attempt to unnecessarily limit this term.

On the other hand, LML's construction—"information relating to a consumer's bank account including the MICR line"—is based on the ordinary and customary meaning of the term and is fully supported by the intrinsic evidence, particularly the specification which repeatedly references reading the *entire* MICR line including the check serial number and the ABA/transit and bank account information.

## REDACTED

-37-

**REDACTED**

**E.    Nova's Accused Product Verifies That Account Numbers Were Read Accurately At The Point of Sale As Recited In Claim 8**

Finally, Nova contends that its accused product does not verify that account numbers were accurately read at the point of sale as recited in claim 8. Once again, Nova's argument is based exclusively on Defendants' improper constructions—in this case, the construction of "verifying that account numbers were accurately read at the point of sale." Under the proper construction, Nova again does not contest infringement.

With their construction of "verifying that account numbers were accurately read at the point of sale," Defendants again attempt to rewrite the claim language, improperly importing limitations from the preferred embodiment into the claims. The language of claim 8 does not require that the account numbers be "*visually* confirmed" at the point of sale. Indeed, as LML explained in its claim construction briefing, this step could be performed electronically by a check reader or optical character recognition equipment. Applicants specifically chose not to use the word visually in their claims, and thus, such a

---

[23]    **REDACTED**

-38-

limitation should not be imported into the claim through claim construction. *Xerox Corp. v. 3Com Corp.*, 267 F.3d 1361, 1366-67 (Fed. Cir. 2001) *Comark Comm'ns, Inc. v. Harris Corp,* 156 F.3d 1182 (Fed. Cir. 1998); *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004).

While the preferred embodiment does, in fact, disclose using a display on a point of sale terminal to verify that account numbers were accurately read (*see, e.g.* Ex. 1 at 9:14-16), it is well-established that importing limitations from the preferred embodiment is improper. *See Comark,* 156 F.3d at 1186; *Tex. Instruments, Inc. v. U.S. Int'l Trade Comm'n,* 805 F.2d 1558, 1563 (Fed. Cir. 1986). Defendants' construction clearly defies this basic tenet of claim construction. Moreover, claim 3 of the '988 patent specifically recites including an "alpha-numeric display" on the point of sale terminal. (Ex. 1 at claim 3). Claim 8 does not specifically require a display and only includes the generic requirement of verifying the account numbers. (*Id.* at claim 8). Thus, if the patentees had desired visual confirmation against a display, they would have included such a limitation in the claim.

The phrase "verifying that account numbers were accurately read at the point of sale" is clear on its face and does not need to be construed. In particular, the word *"visually"* should not be imported into the element.

**REDACTED**

**REDACTED**

## V.    CONCLUSION

LML has presented evidence that, at the very least, demonstrates that there is a genuine issue of material fact for each of the non-infringement arguments made by Nova. For this reason, the Court should deny Nova's motion for summary judgment of non-infringement of the Asserted Claims of the '988 patent.

Dated:  November 15, 2005

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Counsel for Plaintiff*
*LML Patent Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of November, 2005, I electronically filed the foregoing document, **PUBLIC VERSION OF LML'S MEMORANDUM IN OPPOSITION TO NOVA'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Collins J. Seitz, Jr., Esq.
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19801

William J. Marsden, Jr., Esq.
Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 22nd day of November, 2005, the foregoing document was served via email on the following non-registered participants:

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Mark C. Scarsi, Esq.
Vision L. Winter, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

/s/ Mary B. Matterer
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS
& WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com

*Counsel for Plaintiff LML PATENT CORP.*