(A) printing a transaction event sales slip following the sending of an approval message; and

(B) executing of the sales slip by the consumer as proof of bank account access authorization.

19. (New)    The checkwriting point of sale process of claim 17, further comprising the steps of:

(A) printing a transaction event sales slip following the sending of an approval message; and

(B) executing of the sales slip by the consumer as proof of bank account access authorization.

20. (New)    The checkwriting point of sale process of claim 9, further comprising the step of automatically logging point of sale terminal location information and transaction date, time, and sales amount information into the point of sale terminal.

21. (New)    The checkwriting point of sale system according to claim 12, wherein the sales slip includes means for execution by the consumer of proof of bank account access authorization.

22. (New)    The checkwriting point of sale system of claim 9, wherein the point of sale terminal further comprises means for automatically logging a point of sale terminal location and transaction date, time, and sales amount.

LML-EP 000178

## REMARKS

This preliminary amendment is being filed as part of the above-captioned file wrapper continuation application, the parent application of which is Serial No. 07/975,717, filed November 13, 1992. No new matter has been added by this amendment. The parent application is abandoned as of the filing date of the present application. It is respectfully requested that this amendment be entered, the claims allowed, and the case passed to issue.

Respectfully submitted,

Jon L. Roberts
Registration No. 31,293
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182
(703) 356-7700

June 8, 1994

10

LML-EP 000179




**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|

08/257,390    06/09/94    HILLS

| | R |
| EXAMINER |
| PITTS,H |

JON L. ROBERTS
ROBERTS & ASSOCIATES
1953 GALLOWS RD.
SUITE 220
VIENNA, VA  22182

B5M1/1028

| ART UNIT | PAPER NUMBER |
|---|---|
| 2514 | 9 |

DATE MAILED:    10/28/94

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined   ☐ Responsive to communication filed on_____   ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _3_ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I  THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II  SUMMARY OF ACTION**

1. ☑ Claims _____ 1 - 4, 6-9, 11 - 2) _____ are pending in the application.
   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _____ 1-4, 6-9, 11-2) _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
   examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received
   ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application apppears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
   accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 2/93)

10

LML-EP 000180

Serial No. 257,390                    -2-

Art Unit    2514


    Claims 1-4, 6-9, 11-21 rejected under 35 U.S.C. § 112,

second paragraph, as being indefinite for failing to particularly

point out and distinctly claim the subject matter which applicant

regards as the invention.

    Which the applicant has discussed ~~case and demand~~ Oemink in the

specification, claim 1, for example, does not claim the argued

novelty.   In addition, there has been no specific comparison of

claim language vis-a-vis the prior art of the I.D.S. and as

applied in combination in the previous final rejection.   One set

of independent/dependent claims should be selected as they appear

to embody separate invention.

    As understood, the claims, are rejected as set forth in the

previous final rejection, with the further notation that to use

the check "solely" for the access would be the most trivial

modification of systems such as Granzow, etc.

    Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Harold
Pitts whose telephone number is (703) 308-0717.

    Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 308-0956.


                                        HAROLD PITTS
                                        PRIMARY EXAMINER
                                        GROUP 2500

Pitts/dw
October 26, 1994

LML-EP 000181

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No. 08/257,390                    Group Art Unit: 2514

Filed:  06/09/94                         Examiner: Pitts, H.

For:   CHECKWRITING POINT OF SALE SYSTEM

\*       \*       \*       \*       \*

**RESPONSE TO OFFICE ACTION OF 10/28/94**

\*       \*       \*       \*       \*

Commissioner of Patents and Trademarks
Box Non-Fee Amendment
Washington, D.C. 20231

Sir:

        Enclosed please find the following:

    1.    Response to Office action dated 10/28/94 (27 pages); and

    2.    Certificate of First Class mailing.

                        Respectfully submitted,

                        Jon L. Roberts
                        Registration No. 31,293
                        Roberts & Associates
                        1953 Gallows Road
                        Suite 220
                        Vienna, Virginia 22182
January    , 1995          Phone: (703) 356-7700

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No. 08/257,390                    Group Art Unit: 2514

Filed:  06/09/94                         Examiner: Pitts, H.

For:    CHECKWRITING POINT OF SALE SYSTEM

*       *       *       *       *

RESPONSE TO OFFICE ACTION OF 10/28/94

*       *       *       *       *

RECEIVED
FEB U 6 1995
GROUP 2500

Commissioner of Patents and Trademarks
Box Non-Fee Amendment
Washington, D.C. 20231

Sir:

Applicant hereby submits the following response to the Office

action of 10/28/94.

In the Claims:

1.   (Twice Amended)    A checkwriting point of sale system

comprising:

a point of sale terminal adapted to receive consumer bank

account information from any bank check;

a central computer system;

first communications means integral to said point of sale

terminal for electronically communicating with the central computer

system;

memory means integral to said point of sale terminal for

temporarily storing the consumer bank account information;

LML-EP 000183

the central computer system having second communication means for receiving information from a plurality of said point of sale terminals;

the central computer system second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using [a] the bank check as a negotiable instrument.

9.    (Twice Amended)    A checkwriting point of sale process comprising [the steps of]:

a)    presenting [a] any bank check specimen to a point of sale terminal located at a merchant or service provider,

b)    reading the magnetic ink character recognition number information on the check for the sole purpose of obtaining _without using the check as a negotiable instrument,_ consumer bank account information,

c)    storing the consumer bank account information obtained from the check and verifying that account numbers were accurately read at the point of sale terminal,

d)    [inputting] providing transaction event information [into] to the point of sale terminal,

e)    transmitting the transaction event information and consumer bank account information to a central computer system,

f)    storing the transaction event information and consumer banking account information, and

2

LML-EP 000184

g) subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations.

1. (Amended) A checkwriting point of sale system comprising:

a point of sale terminal adapted to receive consumer bank account information;

a central computer system;

first communications means integral to said point of sale terminal for electronically communicating with the central computer system; and

memory means integral to said point of sale terminal for temporarily storing the consumer bank account information;

the point of sale terminal comprising reading means for reading magnetic ink character recognition numbers on any consumer bank [checks] check for the sole purpose of eliciting consumer bank account information;

the central computer system having second communication means for receiving information from a plurality of said point of sale terminals;

the central computer system second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using a bank check as a negotiable instrument.

3

15 17. (Amended) The checkwriting point of sale process of claim 8, further comprising [the steps of]:

    a)    verifying the status of the consumer bank account,

    b)    verifying the consumer bank account status of the consumer via a query to a third party database if the consumer bank account is verified as bad, and

    c)    sending an approval message to the point of sale terminal if the consumer's banking account status is approved for the transaction.

16 18. (Amended) The checkwriting point of sale process of claim 8, further comprising [the steps of]:

(A) printing a transaction event sales slip following the sending of an approval message; and

(B) executing of the sales slip by the consumer as proof of bank account access authorization.

17 19. (Amended) The checkwriting point of sale process of claim 15, further comprising [the steps of]:

(A) printing a transaction event sales slip following the sending of an approval message; and

(B) executing of the sales slip by the consumer as proof of bank account access authorization.

18 20. (Amended) The checkwriting point of sale process of claim 8, further comprising [the step of] automatically logging point of sale terminal location information and transaction date, time, and sales amount information into the point of sale terminal.

4

LML-EP 000186

<u>REMARKS</u>

Claims 1-4, 6-9, and 11-22 are pending in the application. Claims 1-4, 6-9, and 11-21 were rejected. It is assumed that claim 22 has been overlooked and was intended to be rejected as well. Claims 1, 9, 11, and 17-20 have been amended. Claims 1, 9, and 11 are the independent claims.

The Examiner rejected claims 1-4, 6-9, and 11-21 (and presumably claim 22) under 35 U.S.C. § 112 as being indefinite for failing to particularly point out and distinctly claim the subject matter that Applicants regard as the invention. The Examiner stated that Applicants have discussed the Case and Deming patents in the specification but have not claimed the argued novelty. The Examiner further stated that there has been no specific comparison of claim language vis-a-vis the references cited in the previously submitted I.D.S. or the references cited in combination by the Examiner in the previous final rejection. The Examiner also stated that only one set of claims should be selected as the three sets of claims appear to embody separate inventions.

The Examiner concluded by stating that the claims are rejected as set forth in the previous final rejection, with the further notation that to use the check "solely" for access would be the most trivial modification of systems such as Granzow etc.

The specification was previously amended to discuss the patents to Case and Deming in the Background section. Applicants consider these patents to provide good background material for understanding their invention, which is an improvement on previous

5

LML-EP 000187

systems. The Case and Deming patents were merely discussed in this manner; no matters of novelty were argued. The Examiner stated that Applicants have not claimed the novelty of the invention. Applicants assert that the claims, as presented in the preliminary amendment, do in fact recite such novelty, which will be pointed out in the paragraphs that follow.

Applicants respectfully assert that, contrary to the Examiner's contention, specific claim language has been compared to the teachings of the references cited in prior Office actions in order to overcome the Examiner's previous rejections. An examination of responses to prior Office actions will confirm this. Applicants have taken pains to completely review all prior responses to Office actions in this regard. Unfortunately, a comparison of cited references to particular claim language was not provided in the most recent Office action. Nevertheless, in the following paragraphs, each reference, whether cited by Applicants or by the Examiner, will be compared with specific claim language in order to overcome what Applicants presume the Examiner's rejection to be. It will be shown that it is not necessary to compare each element of every claim with each referenced patent because there is at least one element recited in all the independent claims that is not disclosed by any of the referenced patents, and thus any combination of the references could not render the claims obvious.

6

LML-EP 000188

Applicants' Invention

The following are brief summaries of the elements recited in Applicants' independent claims.

Claim 1

Claim 1 recites a checkwriting point-of-sale system comprising a point of sale terminal, a central computer, first and second communication means, and memory. The point of sale terminal accepts bank account information from any bank check. The system transfers funds as part of a transaction without using the bank check as a negotiable instrument.

Claim 9

Claim 9 recites a checkwriting point-of-sale process comprising presenting any bank check to a merchant's terminal, reading MICR information from the check for the sole purpose of obtaining bank account information, storing the information, providing transaction event information to the terminal, transmitting the transaction information to a central computer, storing all the information, and transmitting the transaction information to a bank for clearing house functions.

Claim 11

Claim 11 recites a checkwriting point-of-sale system comprising a point of sale terminal, a central computer, first and second communication means, and memory. The point of sale terminal accepts bank account information by reading the MICR information from any bank check. The system transfers funds as part of a

7

LML-EP 000189

transaction without using the bank check as a negotiable instrument.

Case 4,270,042

Case discloses an electronic funds transfer system. The system includes use of a letter of credit card and a draft instrument unique to the Case system. Case does not disclose the use of any bank check solely to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Case uses a combination of letter of credit card and system-unique negotiable instrument that is negotiated as part of the transaction. Consumer information is provided by the letter of credit card, and the negotiable draft instrument is given to the vendor to pay for the transaction.

Thus, an element recited in all of Applicants' claims is not disclosed by Case. Further, it would not be trivial to modify Case so that an ordinary bank draft is used for informational purposes only. The entire Case system is set up around a unique pre-paid (and therefore pre-authorized) account in which a system-unique draft instrument is given up, that is, negotiated as part of the transaction. To include the missing elements of Applicants' claims would be to change the entire nature of the Case system from a closed, pre-paid system using unique draft negotiable instruments to one which electronically debits a bank account based on information derived from any ordinary check. Including elements of Applicants' claims is unecessary for Case because each transaction is preauthorized through prepayment. Thus, it is neither possible

8

nor proper to combine the system of Case with another system in an effort to result in Applicants' claimed system.

Deming 4,823,264

Deming discloses an electronic funds transfer system used in conjunction with home banking, not a point-of-sale transaction. Deming does not disclose the use of a bank check in a point-of-sale transaction solely to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Deming discloses a home banking method by which all payor and payee information is entered manually into a computer. A bank check is never used, except when a routing and transfer number is not available for the payee, in which case a paper check is issued and mailed for later negotiation by the payee.

Thus, an element recited in all of Applicants' claims is not disclosed by Deming. Further, it would not be trivial to modify Deming so that a bank draft is used for informational purposes only. The Deming system is a home banking system used by a single payor to pay a number of payees. Thus, the payor's information will always be stored on the system; there is no reason to read it from a check. In contrast, Applicants' system will always be used at the payee's place of business, and information must be gathered from a great number of payors. Therefore, the payee's information will always be stored on the system and the payor's information will have to be entered. This is done by reading it from the check. To include the missing elements of Applicants' claims would

9

be to change the very nature of the Deming system from a personal bank at home system to a point-of-sale system. Thus, it is neither possible nor proper to combine the system of Deming with a point-of-sale system in an effort to assemble Applicants' claimed system.

Carlson et al. 5,053,607

Carlson et al. disclose a system adapted for processing checks. The system includes a device that reads MICR information printed on the check. This reading of the MICR data speeds up processing of the check at the point of sale. The check is still used as a negotiated instrument, however, and is turned over to the merchant to complete the transaction. Thus, Carlson et al. do not disclose the use of a bank check in a point-of-sale transaction solely to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, the Carlson et al. system requires negotiation of the check.

Thus, an element recited in all of Applicants' claims is not disclosed by Carlson et al. Further, it would not be trivial to modify Carlson et al. so that a bank draft is used for informational purposes only. The entire Carlson et al. system is set up to process checks in order to speed the debiting and crediting of the negotiated amount at a later date. To include the missing elements of Applicants' claims would be to change the very nature of the Carlson et al. system from a system that prepares checks for negotiation to one which doesn't negotiate checks at all. Thus, it is neither possible nor proper to combine the system

10

LML-EP 000192

of Carlson et al. with another system in an effort to result in Applicants' claimed system.

Carlson et al. 4,678,896

Carlson et al. here disclose a mechanism that includes security features to prevent unauthorized tampering. This device includes a MICR reader, but again only processes instruments that are negotiated as part of the transaction taking place at the point of sale. Thus, Carlson et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Carlson et al. require negotiation of the check.

Thus, an element recited in all of Applicants' claims is not disclosed by Carlson et al. Further, it would not be trivial to modify Carlson et al. so that a bank draft is used for informational purposes only. The entire Carlson et al. system is set up to process checks in order to speed the debiting and crediting of the negotiated amount at a later date and to provide security against tampering with checks accepted to complete the transaction. To include the missing elements of Applicants' claims would be to change the very nature of the Carlson et al. system from a system that prepares checks for negotiation to one which doesn't negotiate checks at all. Further, the protection of negotiated checks after the transaction provided by Carlson et al. is completely unnecessary using Applicants' system as the vendor never takes a check from the purchaser. The check is only

11

LML-EP 000193

temporarily given to the vendor so that information may be read. Thus, it is neither possible nor proper to combine the system of Carlson et al. with another system in an effort to result in Applicants' claimed system.

Murphy et al. 4,672,377

Murphy et al. disclose a check authorization system whereby a supermarket customer is assigned a UPC code which is used to access a database used to check the credit status of the customer at each transaction. If the customer's credit is good, acceptance of the check in payment for the transaction is authorized. The check is then negotiated as it would be in any normal transaction. Thus, Murphy et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Murphy et al. provide a credit check before a check is negotiated.

Thus, an element recited in all of Applicants' claims is not disclosed by Murphy et al. Further, it would not be trivial to modify Murphy et al. so that a bank draft is used for informational purposes only. The entire Murphy et al. system is set up to authorize the acceptance of a check as a negotiable instrument in payment for goods. To include the missing elements of Applicants' claims would be to change the very nature of the Murphy et al. system from a system that authorizes the acceptance of negotiable instruments to one which does not accept negotiable instruments at all. To process checks in the manner provided by Applicants'

12

LML-EP 000194

invention would go beyond modification of the Murphy et al.
invention; it would do away with the entire purpose behind the
Murphy et al. invention. Thus, it is neither possible nor proper
to combine the system of Murphy et al. with another system in an
effort to result in Applicants' claimed system.

Lindemann et al. 4,933,536

Lindemann et al. disclose a check processing device whereby
some form of customer identification, such as a photograph, is
reproduced on a bank check that is presented for tender. This
identification feature is used as a deterrent to the passing of
bad checks. After the identification has been added to the check,
the check is processed as it would in any normal transaction,
including acceptance of the check as a negotiable instrument in
payment for goods and services. Thus, Lindemann et al. do not
disclose the use of a bank check in a point-of-sale transaction in
order to derive consumer information and not for use as a
negotiable instrument, as recited in independent claims 1, 9, and
11. Rather, Lindemann et al. provide an identification feature
before the check is negotiated.

Thus, an element recited in all of Applicants' claims is not
disclosed by Lindemann et al. Further, it would not be trivial to
modify Lindemann et al. so that a bank draft is used for
informational purposes only. The entire Lindemann et al. system is
set up to add an identification feature to a check in order to
deter passing bad checks as negotiable instruments. To include the
missing elements of Applicants' claims would be to change the very

13

LML-EP 000195

nature of the Lindemann et al. system from one which provides security against the acceptance in payment of bad checks to one that doesn't accept checks for payment at all.  To process checks in the manner provided by Applicants' invention would go beyond modification of the Lindemann et al. invention; it would do away with the entire purpose behind the Lindemann et al. invention.  Thus, it is neither possible nor proper to combine the system of Lindemann et al. with another system in an effort to result in Applicants' claimed system.

Lord, Jr. 4,810,866

Lord discloses a check validation and check writing system whereby coded information is read from a consumer's bank check in order to determine if the associated bank account has sufficient funds to cover a transaction taking place.  If sufficient funds are present, a blank check is printed using the device, which imprints the date, transaction total, etc. and presents the check to the customer for signature.  Once the check is executed, it is given to the merchant as payment and is negotiated as would be any normal check in such a transaction.  Thus, Lord does not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer account information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11.  Rather, Lord requires the negotiation of a system-unique check as payment for a transaction.

Thus, an element recited in all of Applicants' claims is not disclosed by Lord.  Further, it would not be trivial to modify Lord

14

so that a bank draft is used for informational purposes only. The entire Lord system is set up to print transaction information on a check so that it can be used as a negotiable instrument. To include the missing elements of Applicants' claims would be to change the very nature of the Lord system from one which produces a negotiable instrument to one which does not use a negotiable instrument. To process checks in the manner provided by Lord is contrary to the entire purpose behind Applicants' invention. Printing of transaction information on checks using Applicants' system is unnecessary because the checks are never surrendered to the vendor. Thus, it is neither possible nor proper to combine the system of Lord with another system in an effort to result in Applicants' claimed system.

## Fukatsu 4,743,743

Fukatsu discloses a transaction apparatus. This apparatus is not part of a point-of-sale system, but rather is an automatic teller machine system. The machine accepts checks along with a "bill" which indicates whether money is to be deposited, withdrawn, etc. As a check is entered into the machine, the MICR code is read, simplifying post-processing, which takes place manually at a later time. Thus, Fukatsu does not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Fukatsu discloses a system for processing negotiable instruments prior to later manual reconciliation of the checking account.

15

LML-EP 000197

Thus, an element recited in all of Applicants' claims is not disclosed by Fukatsu. Further, it would not be trivial to modify Fukatsu so that a bank draft is used for informational purposes only. The entire Fukatsu system is set up to accept and process checks for deposit to a bank. To include the missing elements of Applicants' claims would be to change the very nature of the Fukatsu system to one which does not process negotiated checks at all. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Fukatsu, which is not contemplated for use in a merchant setting and would not work in such a setting. Thus, it is neither possible nor proper to combine the system of Fukatsu with another system in an effort to result in Applicants' claimed system.

Cain 4,523,330

Cain discloses a banking system used to process checks. This system scans checks deposited with the bank in order to read MICR data printed on the checks, and also to read handwritten data using character recognition software. Once character recognition is accomplished, the data is converted to MICR data and printed on the check. Thus, Cain does not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Cain discloses a system for processing previously negotiated checks.

16

Thus, an element recited in all of Applicants' claims is not disclosed by Cain. Further, it would not be trivial to modify Cain so that a bank draft is used for informational purposes only. The entire Cain system is set up to accept and process checks that have been deposited to a bank. To include the missing elements of Applicants' claims would be to change the very nature of the Cain system to one which does not accept negotiated checks at all. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Cain. Thus, it is neither possible nor proper to combine the system of Cain with another system in an effort to result in Applicants' claimed system.

## Nunley et al. 4,404,649

Nunley et al. disclose a document processing system. This system scans checks deposited with a bank in order to read MICR data printed on the checks, and to tag the check with a source item control number. Thus, Nunley et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Nunley et al. provide processing of previously negotiated checks.

Thus, an element recited in all of Applicants' claims is not disclosed by Nunley et al. Further, it would not be trivial to modify Nunley et al. so that a bank draft is used for informational purposes only. The entire Nunley et al. system is set up to accept and process checks that have been deposited to a bank. To include

17

LML-EP 000199

the missing elements of Applicants' claims would be to change the very nature of the Nunley et al. system to one which does not accept negotiated checks at all. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Nunley et al, which is not contemplated for use in a merchant setting and would not work in such a setting. In fact, Nunley et al. specifically rule out the possible use of the system at the point-of-sale. Thus, it is neither possible nor proper to combine the system of Nunley et al. with another system in an effort to result in Applicants' claimed system.

Granzow et al. 4,580,040

Graznow et al. disclose a teller-assisted, customer-operated automatic teller machine check cashing system. According to this system, the automatic teller machine is linked to a teller station equiped with a MICR data reader. When a customer presents a check to be cashed, the MICR data is read, the customer's or the third party payor's checking account balance is check for sufficiency of funds, and cash is dispensed if the account balance is sufficient. Thus, Graznow et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Graznow et al. disclose a bank system for verifying checks to be negotiated.

Thus, an element recited in all of Applicants' claims is not disclosed by Graznow et al. Further, it would not be trivial to

18

LML-EP 000200

modify Graznow et al. so that a bank draft is used for informational purposes only. The entire Graznow et al. system is set up to cash checks that have been presented to a bank. To include the missing elements of Applicants' claims would be to change the very nature of the Graznow et al. system from one that has the sole function of accepting checks for negotiation to one which is used as part of a point-of-sale transaction and does not accept the check for negotiation. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Graznow et al. Thus, it is neither possible nor proper to combine the system of Graznow et al. with another point-of-sale system in an effort to assemble Applicants' claimed system.

<u>Granzow et al. 4,617,457</u>

Here, Graznow et al. disclose the same invention as that discussed above, with the addition of an image for presenting an image of the check to be cashed to the teller present at the teller station. Again, Graznow et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Graznow et al. disclose a bank system for verifying checks to be negotiated.

Thus, an element recited in all of Applicants' claims is not disclosed by Graznow et al. Further, it would not be trivial to modify Graznow et al. so that a bank draft is used for informational purposes only. The entire Graznow et al. system is

19

set up to cash checks that have been presented to a bank. To include the missing elements of Applicants' claims would be to change the very nature of the Graznow et al. system from one that has the sole function of accepting checks for negotiation to one which is used as part of a point-of-sale transaction and does not accept the check for negotiation. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Graznow et al. Thus, it is neither possible nor proper to combine the system of Graznow et al. with another system in an effort to result in Applicants' claimed system.

Simjian 3,824,544

    Simjian discloses a merchandizing arrangement utilizing a coded sales ticket. The customer obtains the coded sales ticket by selecting an item for purchase and paying for the item. The coded ticket is then brought to a merchandise dispensing area and is exchanged for the purchased item. Thus, Simjian does not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Simjian discloses a merchandise vending security system, the point-of-sale aspect of which is conventional.

    Thus, an element recited in all of Applicants' claims is not disclosed by Simjian. Further, it would not be trivial to modify Simjian so that a bank draft is used for informational purposes only. The entire Simjian system is set up to provide security

20

against shoplifting by controlling access to merchandise. The invention is not even directed to the payment part of the transaction. To include the missing elements of Applicants' claims would be to change the very nature of the Simjian system by adding a new inventive element to the system. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Simjian. Thus, it is neither possible nor proper to combine the system of Simjian with another system in an effort to result in Applicants' claimed system.

Schuller 3,845,470

Schuller discloses a check-controlled vending system. This system uses pre-paid tickets, or "checks", as a payment means for a vending machine. These tickets are coded to provide security features. Thus, Schuller does not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Schuller discloses a payment system for vending machines which uses specialized tickets as negotiable instruments.

Thus, an element recited in all of Applicants' claims is not disclosed by Schuller. Further, it would not be trivial to modify Schuller so that a bank draft is used for informational purposes only. The entire Schuller system is set up to provide security against shoplifting by controlling access to merchandise using pre-paid tickets. The invention is not even directed to the payment

21

LML-EP 000203

part of the transaction. To include the missing elements of Applicants' claims would be to change the very nature of the Schuller system by adding a new inventive element to the system. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Schuller. Thus, it is neither possible nor proper to combine the system of Schuller with another system in an effort to result in Applicants' claimed system.

Ohmae et al. 4,673,802

Ohmae et al. disclose a system for using a bank debit card to pay for merchandise at a point of sale. Unlike normal debit card transactions, the Ohmae et al. system allows for a grace period between the time the sale is made and the time the cash is debited from the customer's account. Thus, Ohmae et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Ohmae et al. disclose a system for delaying the posting of a debit to a user's account.

Thus, an element recited in all of Applicants' claims is not disclosed by Ohmae et al. Further, it would not be trivial to modify Ohmae et al. so that a bank draft is used for informational purposes only. The entire Ohmae et al. system is set around the use of a debit card. To include the missing elements of Applicants' claims would be to change the very nature of the Ohmae et al. system to one which electronically debits a bank account

22

LML-EP 000204

based only on information derived from a bank check to complete a point-of-sale transaction. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Ohmae et al. Thus, it is neither possible nor proper to combine the system of Ohmae et al. with another system in an effort to result in Applicants' claimed system.

Tateisi et al. 4,678,895

Tateisi et al. disclose a normal system for using a bank debit card to pay for merchandise at a point of sale. The system includes a terminal device, connected to a cash register, for performing the account debit function while the cash register rings up the sale. Thus, Tateisi et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Tateisi et al. disclose a system for performing a debit function separate from a tallying function in order to speed transactions.

Thus, an element recited in all of Applicants' claims is not disclosed by Tateisi et al. Further, it would not be trivial to modify Tateisi et al. so that a bank draft is used for informational purposes only. The entire Tateisi et al. system is set around the use of a debit card. To include the missing elements of Applicants' claims would be to change the very nature of the Tateisi et al. system to one which electronically debits a bank account based only on information derived from a bank check to

23

LML-EP 000205

complete a point-of-sale transaction. To process checks in the manner provided by Applicants' invention is not necessary, beneficial, or consistent with the service provided by Tateisi et al. Thus, it is neither possible nor proper to combine the system of Tateisi et al. with another system in an effort to result in Applicants' claimed system.

Sakuma et al. 4,934,772

Sakuma et al. disclose a light beam scanning lens and light beam scanning device. Sakuma et al. disclose a scanning system that has potential utility in scanning information from a check, but such use is not disclosed. Thus, Sakuma et al. do not disclose the use of a bank check in a point-of-sale transaction in order to derive consumer information and not for use as a negotiable instrument, as recited in independent claims 1, 9, and 11. Rather, Sakuma et al. disclose a light beam scanning device.

Thus, an element recited in all of Applicants' claims is not disclosed by Sakuma et al. Further, it would not be trivial to modify Sakuma et al. so that a bank draft is used for informational purposes only. Sakuma et al. merely disclose the optical scanning elements of an undisclosed system. To include the missing elements of Applicants' claims would be to completely redefine the Sakuma et al. invention and is beyond the scope of the Sakuma et al. invention. Thus, it is neither possible nor proper to combine the device of Sakuma et al. with a point-of-sale system in an effort to assemble Applicants' claimed system.

24

LML-EP 000206

## Summary

None of the referenced patents discloses at least one element recited in all of Applicants' claims. That is, none of the references discloses a point-of-sale system that uses any bank check solely for the purposes of gathering customer information and not as a negotiable instrument used to pay for goods received in a transaction. Because none of these references discloses this element, no combination of these references can disclose Applicants' claimed system, because such a combination would also be missing this element. Further, the addition of this missing element to any of the references is not trivial or obvious, and in fact is not compatible with the stated purpose of the references. None of the references teaches or suggests the utility of adding features of Applicants' claimed invention to the cited reference inventions. Thus, Applicants' claimed invention cannot be rendered obvious by any combination of these references, nor is the combination of these references proper.

It is important to note that Applicants have focussed on only one particular element of the claimed invention in response to the Examiner's rejection. Applicants in no way acknowledge the disclosure of any of the other claimed elements in any of the references, nor do Applicants concede that the chosen element is the only novel and non-obvious aspect of the claimed invention. For organizational ease and clarity in response to the Examiner's broad rejection of the claims, in which no particular reference was applied to any particular claim or element, Applicants chose to

25

rely on one novel element in order to overcome the rejection. As shown in the above discussion, one element that is missing from all cited references is enough to show that the claimed invention is novel and non-obvious.

Regarding the Examiner's contention that three separate inventions are present, and that only one set of claims should be selected for continued prosecution, Applicants respectfully traverse. There are in fact three sets of claims. The first set includes independent claim 1 and dependent claims 2-4, 6-8, 15, and 16. The second set includes independent claim 9 and dependent claims 17-20. The third set includes independent claim 11 and dependent claims 12-14, 21, and 22. The first set and the third set recite the system of the present invention as an apparatus. Although the claims differ in scope and in the particular terms used, they do not recite patentably distinct inventions. See MPEP 806.03. The second set of claims recites the system of the present invention as a process. Claiming an invention in terms of two different statutory classes of invention does not in itself render the two sets of claims patentably distinct. These differences among these claims do not satisfy the criteria for a proper restriction under MPEP 803. Applicants will respond to a formal restriction requirement from the Examiner, but respectfully decline to voluntarily cancel two sets of properly submitted claims in response to the Examiner's comments.

It is respectfully urged that all rejections have been overcome. It is therefore respectfully requested that this

26

amendment be entered, the claims allowed, and the case passed to issue. Because Applicants have compared all cited references with the recited elements of Applicants' claims, it would be appreciated if the Examiner would reject with more particularity in the future, should more rejections be forthcoming. That is, it would be helpful if the Examiner would compare cited references to the rejected claims and point out which aspects of Applicants' traversal he finds lacking. Please see MPEP 707.07 (d)-(f).

Respectfully submitted,

Jon L. Roberts
Registration No. 31,293
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182
Phone: (703) 356-7700

January 30, 1995

27



## CERTIFICATE OF FIRST CLASS MAILING

Date of Mailing: _____ January 30, 1995 _____

I hereby certify that the Response to Office Action dated 10/28/94 (27 pages) directed to the application of Robert H. Hills and Henry R. Nichols for a CHECKWRITING POINT OF SALE SYSTEM, Serial No. 08/257,390, filed 06/09/94, is being deposited with the United States Postal Service as first class mail under 37 C.F.R. § 1.8 on the date indicated above and is addressed to Commissioner of Patents and Trademarks, Box Non-Fee Amendment, Washington, D.C. 20231.

Jon L. Roberts, Esq.
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182

LML-EP 000210




**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/257,390 | 06/09/94 | PITTS | R | |

B5M170413

JON L. ROBERTS
ROBERTS & ASSOCIATES
1953 GALLOWS RD.
SUITE 220
VIENNA, VA 22182

| EXAMINER |
|---|
| PITTS,H |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2514 | 11 |

DATE MAILED: 04/13/95

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined  ☒ Responsive to communication filed on _1/31/95_  ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _____ month(s), _30_ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I  THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.  2. ☐ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.  4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.  6. ☐ _____

**Part II  SUMMARY OF ACTION**

1. ☒ Claims _1-4, 6-9, 11-21_ are pending in the application.

    Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☐ Claims _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☒ Claims _1-4, 6-9, 11-21_ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
    are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
    examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 2/93)

17

LML-EP 000211

Serial No. 08/257,390                    -2-

Art Unit   2514

The applicant has submitted claims to separate inventions:

I.  Claim 1 and dependent thereon directed to a check operated point of sale.

II.  Claims 9, 11 and dependent thereon directed to "sole" MICR reading and account verification.

Election is required.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Harold Pitts whose telephone number is (703) 308-0717.

Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 308-0956.

Pitts/mj
April 11, 1995

HAROLD PITTS
PRIMARY EXAMINER
GROUP 2500

LML-EP 000212

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No. 08/257,390                    Group Art Unit 2514

Filed: 06/09/94                          Examiner: Pitts, H.

For:    CHECKWRITING POINT OF SALE SYSTEM

                    *      *      *      *      *

           RESPONSE TO OFFICE ACTION OF 04/13/95

                    *      *      *      *      *

                                         *RECEIVED*
                                          MAY 2 4 1995
Commissioner of Patents and Trademarks
Washington, D.C. 20231                    GROUP 2500

Sir:

       Enclosed please find the following:

       1.  Response to the Office action of 04/13/95 (4 pages); and

       2.  Certificate of first class mailing.


                              Respectfully submitted,


                              Jon L. Roberts
                              Registration No. 31,293
                              Roberts & Associates
                              1953 Gallows Road
                              Suite 220
May 8, 1995                   Vienna, Virginia 22182
                              (703) 356-7700


LML-EP 000213

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of Robert H. Hills and Henry R. Nichols

Serial No. 08/257,390

Filed:   06/09/94

Group Art Unit: 2514

Examiner: Pitts, H.

For:   CHECKWRITING POINT OF SALE SYSTEM

\*     \*     \*     \*     \*

RESPONSE TO OFFICE ACTION OF 04/13/95

\*     \*     \*     \*     \*

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

Applicant hereby submits the following response to the Office action of 04/13/95.

<u>REMARKS</u>

Claims 1-4, 6-9, and 11-22 are pending in the application. Claims 1-4, 6-9, and 11-21 are subject to election requirement. It is assumed that claim 22 has been overlooked and was intended to be subject to election requirement as well. Claims 1, 9, and 11 are the independent claims.

The Examiner asserted that Applicant has submitted claims to separate inventions. The Examiner stated that the first invention is recited in claim 1 and claims dependent thereon, characterized by the Examiner as a check operated point of sale. The Examiner further stated that the second invention is recited in claims 9 and 11 and claims dependent thereon, characterized by the Examiner as "sole" MICR reading and account verification. The Examiner requires election.

Applicant respectfully traverses the election requirement.

Claim 1 recites a checkwriting point of sale (POS) system which includes a point of sale terminal that can receive bank account information from any bank check. The system also includes a central computer, a communications subsystem at the POS terminal for communicating with the central computer, memory at the point of sale terminal for storing the bank account information, and a communication subsystem at the central computer for communicating with a number of POS terminals. The central computer communicates with external databases for performing consumer bank account status searches and for transferring funds through an automated clearinghouse without using a bank check as a negotiable instrument.

Claim 11 recites a checkwriting POS system which includes a POS terminal that can receive bank account information. The system also includes a central computer, a communications subsystem at the POS terminal for communicating with the central computer, memory at the point of sale terminal for storing the bank account information, and a communication subsystem at the central computer for communicating with a number of POS terminals. The central computer communicates with external databases for performing consumer bank account status searches and for transferring funds through an automated clearinghouse without using a bank check as a negotiable instrument. The POS terminal also includes a MICR reader for reading MICR information from bank checks for the sole purpose of eliciting bank account information.

2

LML-EP 000215

Thus, claim 11 differs from claim 1 only in that claim 11 recites an MICR reader for eliciting consumer bank account information where claim 1 recites that the point of sale terminal is adapted to receive consumer bank account information from a check. Claims 1 and 11 recite the same invention, although claim 11 is more narrow in that it more particularly specifies an element recited more broadly in claim 1. It is respectfully asserted that claim 1 and claim 11 are not drawn to separate inventions.

Likewise, claim 9 is a process claim that is consistent in scope with claim 11. This was acknowledged by the Examiner, who grouped claims 9 and 11 together in the election requirement as a single invention. Thus, because claims 1 and 11 recite the same invention, albeit in varying scope, claims 1, 9, and 11 are all drawn to the same invention.

Because claims 1, 9, and 11 are all drawn to the same invention, it is respectfully asserted that an election requirement is not warranted. Applicant requests reconsideration and withdrawal of the requirement. In accordance with 37 CFR 1.143, Applicant indicates, as a provisional election, the invention recited in claim 1 and claims dependent thereon, indicated by the Examiner as invention I.

With regard to evaluating the claims in light of references previously cited by the Examiner, Applicant requests the opportunity to present a demonstration of a working model embodying the invention. The Examiner is encouraged to contact Applicant's

3

LML-EP 000216

undersigned attorney to arrange a mutually convenient date and time.

Respectfully submitted,

Jon L. Roberts
Registration No. 31,293
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182
(703) 356-7700

May 8, 1995

4

LML-EP 000217

CERTIFICATE OF FIRST CLASS MAILING

Date of Mailing: _____ May 8, 1995 _____

I hereby certify that the Response to Office Action dated 04/13/95 (4 pages) directed to the application of Robert H. Hills and Henry R. Nichols  for a CHECKWRITING POINT OF SALE SYSTEM, Serial No. 08/257,390, filed 06/09/94, is being deposited with the United States Postal Service as first class mail under 37 C.F.R. § 1.8 on the date indicated above and is addressed to Commissioner of Patents and Trademarks, Washington, D.C. 20231.

Jon L. Roberts, Esq.
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182

LML-EP 000218

 

**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/257,390 | 06/09/94 | HILLS | R | |

JON L. ROBERTS
ROBERTS & ASSOCIATES
1953 GALLOWS RD.
SUITE 220
VIENNA, VA  22182

B5M1/0807

| EXAMINER |
|---|
| PITTS,H |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2514 | |

DATE MAILED: 08/07/95

## NOTICE OF ALLOWABILITY

**PART I.**

1. ☐ This communication is responsive to _____

2. ☑ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.

3. ☑ The allowed claims are _1-4, 6-9, 11-22_

4. ☐ The drawings filed on _____ are acceptable.

5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [...] been received, [...] not been received. [  ] been filed in parent application Serial No. _____ filed on _____

6. ☐ Note the attached Examiner's Amendment.

7. ☐ Note the attached Examiner Interview Summary Record, PTOL-413.

8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.

9. ☐ Note the attached NOTICE OF REFERENCES CITED, PTO-892.

10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

**PART II.**

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

2. ☑ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.

   a. ☑ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. _5_. CORRECTION IS REQUIRED.

   b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED.

   c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.

   d. ☐ Formal drawings are now REQUIRED.

---

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

Attachments:
– Examiner's Amendment
– Examiner Interview Summary Record, PTOL-413
– Reasons for Allowance
– Notice of References Cited, PTO-892
– Information Disclosure Citation, PTO-1449

– Notice of Informal Application, PTO-152
– Notice re Patent Drawings, PTO-948
– Listing of Bonded Draftsmen
– Other

HAROLD PITTS
PRIMARY EXAMINER
GROUP 2500

PTOL-37 (REV. 4-89)

USCOMM-DC 69-3789

LML-EP 000219



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

JOHN L. ROBERTS
ROBERTS & ASSOCIATES
1950 GALLOWS RD.
SUITE 220
VIENNA, VA 22182

☐ New Attached communication from the Examiner
☐ This notice is issued in view of applicant's communication filed

**NOTICE OF ALLOWANCE
AND ISSUE FEE DUE**

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 08/257,130 | 06/09/94 | 020 | PITTS, H | 2514 | 03/07/95 |

| First Named Applicant | HILLS | | ROBERT G. | | |

TITLE OF INVENTION

CHECKWRITING POINT OF SALE SYSTEM

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 2 | 395-379.000 | N97 | UTILITY | YES | $605.00 | 11/07/95 |

**THE APPLICATION IDENTIFIES ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED.**

**THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS
APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.**

**HOW TO RESPOND TO THIS NOTICE:**

I. Review the SMALL ENTITY Status shown above.
If the SMALL ENTITY is shown as YES, verify your
current SMALL ENTITY status:

   A. If the status is changed, pay twice the amount of the
     FEE DUE shown above and notify the patent and
     Trademark Office of the change in status, or
   B. If the Status is the same, pay the FEE DUE shown
     above.

If the SMALL ENTITY is shown as NO:
A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with,
   pay of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE.
   Even if the ISSUE FEE has already been paid by charge to deposit account, Part B should be completed and returned.
   If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number.
   Please direct all communication prior to issuance to Box ISSUE FEE unless advised to contrary.

**IMPORTANT REMINDER:** Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
                 maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance
                 fees when due.

PTOL-85 (REV. 12-93) (0651-0033)        4. PATENT AND TRADEMARK OFFICE COPY

LML-EP 000220

PART B—ISSUE FEE TRANSMITTAL

605-242
75-561 E

*~S: This form should be used for transmitting the ISSUE FEE. Blocks 2 through 6 should be completed where appropriate.
...ence including the Issue Fee Receipt, the Patent, advance orders and notification of maintenance fees will be mailed to addresse
...K 1 unless you direct otherwise, by: (a) specifying a new correspondence address in Block 3 below; or (b) providing the PTO with a separate
...SS" for maintenance fee notifications with the payment of Issue Fee or thereafter.  See reverse for Certificate of Mailing.

| 1. CORRESPONDENCE ADDRESS | | | 2. INVENTOR(S) ADDRESS CHANGE (Complete only if there is a change) | |
|---|---|---|---|---|
| | | | INVENTOR'S NAME | |
| | | | Street Address | |
| JON L. ROBERTS | B5M1/0807 | | City, State and ZIP Code | |
| ROBERTS & ASSOCIATES | | | CO-INVENTOR'S NAME | |
| 1953 GALLOWS RD. | | | | |
| SUITE 220 | | | Street Address | |
| VIENNA, VA  22182 | | | City, State and ZIP Code | |
| | | | ☐ Check if additional changes are on reverse side | |

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| First Named Applicant  08/257,390 | 06/09/94 | 020 | PITTS, H | 2514 | 08/07/9 |
| TITLE OF INVENTION  HILLS, | | | ROBERT R. | | |
| CHECKWRITING POINT OF SALE SYSTEM | | | | | |

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| 2 | | 235-379.000 | N97 | UTILITY | YES | $605.00 | 11/07/9 |

| 3. Correspondence address change (Complete only if there is a change) | 4. For printing on the patent front page, list the name of not more than 3 registered patent attorneys or agents OR, alternatively, the name of a firm having as a member a registered attorney or agent. If no name is listed, no name will be printed. | 1 Thomas M. Champagne  2 Jon L. Roberts  3 Roberts & Associates |
|---|---|---|

DO NOT USE THIS SPACE

| 0B0 VM 10/18/95 08257390 | 1 242 | 605.00 CK |
|---|---|---|
| 0B0 VM 10/18/95 08257390 | 1 561 | 75.00 CK |

5. ASSIGNMENT DATA TO BE PRINTED ON THE PATENT (print or type)

(1) NAME OF ASSIGNEE:   Resource Technology Services, Inc.

(2) ADDRESS: (CITY & STATE OR COUNTRY)   Vienna, VA

A: ☐ This application is NOT assigned.
☒ Assignment previously submitted to the Patent and Trademark Office.
☐ Assignment is being submitted under separate cover. Assignments should be directed to Box ASSIGNMENTS.
PLEASE NOTE: When an assignee is identified in Block 6, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

| 6a. The following fees are enclosed: | |
|---|---|
| ☒ Issue Fee    ☒ Advance Order - # of Copies | 25 |
| 6b. The following fees should be charged to: | |
| DEPOSIT ACCOUNT NUMBER | |
| (ENCLOSE PART C) | |
| ☐ Issue Fee    ☐ Advance Order - # of Copies | |
| ☐ Any Deficiencies in Enclosed Fees | |

The COMMISSIONER OF PATENTS AND TRADEMARKS is requested to apply the Issue Fee to the application identified above.

(Authorized Signature)  _____ (Date) 9/27/9

NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

1. TRANSMIT THIS FORM WITH FEE-CERTIFICATE OF MAILING ON REVERSE

PTOL-85B (REV.12-93)(0651-0033)

LML-EP 000221

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of Robert H. Hills and Henry R. Nichols

Serial No.: 08/257,390          Group Art Unit: 2514

Filed: 06/09/94               Examiner: Pitts, H.

Notice of Allowance: 08/07/95     Batch No.: N97

For: CHECKWRITING POINT OF SALE SYSTEM

\*   \*   \*   \*   \*
TRANSMITTAL OF ISSUE FEE AND FORMAL DRAWINGS
\*   \*   \*   \*   \*

Commissioner of Patents and Trademarks
Box Issue Fee
Washington, D.C.  20231

Dear Sir:

    Enclosed please find the following:

    1.   Issue fee transmittal;

    2.   Two checks totaling $680.00 ($605.00 to cover the issue
         fee and $75.00 for 25 copies);

    3.   Transmittal of Formal Drawings;

    4.   Formal drawings(9 figures, 8 sheets); and

    5.   Certificate of Express mailing.

                         Respectfully submitted,

                         Thomas M. Champagne
                         Reg. No. 36,478
                         Roberts & Associates
                         1953 Gallows Road
                         Suite 220
                         Vienna, VA  22182

September 27, 1995

15

LML-EP 000222

## CERTIFICATE OF EXPRESS MAILING

Date of Mailing: _____ September 27, 1995 _____

Express Mail Number: _____ EM016206064US _____

    I hereby certify that the Issue Fee Transmittal, along with the Transmittal of Formal Drawings, Formal Drawings (9 figures, 8 sheets) and two checks totaling $680.00 to cover the issue fee and 25 additional copies directed to the application of Robert H. Hills and Henry R. Nichols, Serial No. 08/257,390 for a CHECKWRITING POINT OF SALE SYSTEM are being deposited with the United States Postal Service for Express mail service under 37 C.F.R. § 1.10 on the date indicated above and are addressed to the Commissioner of Patents and Trademarks, Box Issue Fee, Washington, D.C. 20231.

Thomas M. Champagne, Esq.
Registration No. 36,478
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, Virginia 22182

LML-EP 000223

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of Robert H. Hills and Henry R. Nichols

Serial No.:  08/257,390

Filed:  06/09/94

Notice of Allowance: 08/07/95

For: CHECKWRITING POINT OF SALE SYSTEM

Group Art Unit: 2514

Examiner: Pitts, H.

Batch No.: N97

\*     \*     \*     \*     \*

TRANSMITTAL OF FORMAL DRAWINGS

\*     \*     \*     \*     \*

Official Draftsperson
Box Issue Fee
Washington, D.C.  20231

Dear Sir/Madam:

    Enclosed please find the formal drawings (9 figures, 8 sheets) for filing in the above-referenced patent application.

Respectfully submitted,

Thomas M. Champagne
Reg. No. 36,478
Roberts & Associates
1953 Gallows Road
Suite 220
Vienna, VA  22182

September 27, 1995



5484988



300 — POINT OF SALE TERMINAL

302 — CENTRAL COMPUTER

304 — BANK

306 — ACH

**FIG. 1**



310 — KEYBOARD

312 — CARD READ.

314 — CHECK READ.

316 318 — LOGIC MEANS

320 — MEMORY

322 — COMMUNIC. MEANS

324 — DISPLAY

302 — CENTRAL COMPUTER

**FIG. 2**





**FIG. 3**

LML-EP 000226



**FIG. 4**

LML-EP 000227



FIG. 5

LML-EP 000228

08/257 3.



FIG. 6

LML-EP 000229



**FIG. 7**

LML-EP 000230

Merchant Name
Street Address
City, ST  Zip
Merchant Acct #

TIME 00:00 _M                    DATE 00/00/00
BANK ACCT. NO. 000000000000
TRANSIT NO.  000000000


SALE AMOUNT                      $ 0,000.00


TERMINAL ID 0000000000

I herewith authorize ChequeMARK Systems
to electronically access my designated
checking account for the payment of the
above referenced purchase.


Name (PRINT) _____

Street _____

City _____ ST_____ Zip _____

Tel. Number: (_____) _____ — _____


**I ACKNOWLEDGE THAT RETURN FEES WILL BE
IMPOSED SHOULD MY PAYMENT BE DISHONORED
AND UNDERSTAND THAT IT IS UNLAWFUL TO
AUTHORIZE PAYMENTS FOR WHICH ADEQUATE
MONIES ARE NOT AVAILABLE WITHIN MY
ACCOUNT.**


X_____
Authorizing Signature

# FIG. 8

Merchant Name
Street Address
City, ST  Zip
Merchant Acct #

CUSTOMER BANKING INFORMATION:

BANK ACCT. NO. _____

TRANSIT NO. _____

SALE AMOUNT . . . . . . . . . . . . . . . . . . . . $ _____

I herewith authorize ChequeMARK Systems to electronically access my designated checking account for the payment of the above referenced purchase amount.   I acknowledge that sufficient funds are available for the payment of this sale.

Name (PRINT) _____

Street _____

City _____ ST _____ Zip _____

Tel. Number:  (_____) _____ — _____

I FURTHER ACKNOWLEDGE THAT RETURN FEES WILL BE IMPOSED SHOULD MY PAYMENT BE DISHONORED AND UNDERSTAND THAT IT IS UNLAWFUL TO AUTHORIZE PAYMENTS FOR WHICH ADEQUATE MONIES ARE NOT AVAILABLE WITHIN MY ACCOUNT.

X_____
Authorizing Signature

# FIG. 9

JAN 2 2 1999    **IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Application of Robert R. Hills and Henry R. Nichols

Serial No.:    08/257,390          Filed:      06/09/94

Patent No.:    5,484,988          Issued:    01/16/96

For: **CHECKWRITING POINT OF SALE SYSTEM**

### ASSOCIATE POWER OF ATTORNEY

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Dear Sir:

    I hereby appoint: John K. Abokhair, Registration No. 30,537 whose post office address is Roberts & Brownell, LLC, 8381 Old Courthouse Road, Suite 212, Vienna, Virginia 22182 as my associate attorney in the above-entitled application, to prosecute this application, to make alterations and amendments therein, and to transact all business in the Patent and Trademark Office connected therewith.

    Please continue to address all future communications to Roberts & Brownell, LLC.

Respectfully submitted,

Jon L. Roberts, Esq.
Registration No. 31,293
Roberts & Brownell, LLC
8381 Old Courthouse Road, Suite 212
Vienna, Virginia 22182
(703) 356-7700

January 22, 1999                    Atty. Docket No.2419

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of Robert R. Hills and Henry R. Nichols

Serial No.:    08/257,390         Filed:    06/09/94

Patent No.:    5,484,988          Issued:   01/16/96

For: CHECKWRITING POINT OF SALE SYSTEM

Assistant Commissioner of Patents
  and Trademarks
Box Assignment
Washington, D.C.  20231

Dear Sir:

Enclosed please find the following:

1.    Discharge of Recorded Security Interest;

2.    Restated Certificate of Incorporation.

These documents are filed to remove the security interst
from the official record.  The assignment record should indicate
that the related security interest is released and terminated.

Respectfully submitted,

John K. Abohkair, Esq.
Registration No. 30,537
Roberts & Brownell, LLC
8381 Old Courthouse Road, Suite 212
Vienna, VA 22182-3818
(703) 356-7700

January 22, 1999

Atty. Docket No.2419

LML-EP 000234

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of Robert R. Hills and Henry R. Nichols

Serial No.:    08/257,390        Filed:    06/09/94

Patent No.:    5,484,988         Issued:   01/16/96

For: **CHECKWRITING POINT OF SALE SYSTEM**

Assistant Commissioner of Patents
 and Trademarks
Box Assignment
Washington, D.C.  20231

Dear Sir:

      Enclosed please find the following:

      1.    Discharge of Recorded Security Interest with Recordation
            Sheet;

      2.    Associate Power of Attorney;

      3.    One check in the amount of $40.00; and

      4.    Certificate of Express mailing.

      The Commissioner is hereby authorized to charge any fee
deficiency, or credit any overpayment, to Deposit Account No. 18-
1579. The Commissioner is also authorized to charge Deposit Account
No. 18-1579 for any future fees connected in any way to this
application.  Two copies of this letter are enclosed.

                          Respectfully submitted,

                          John K. Abohkair, Esq.
                          Registration No. 30,537
                          Roberts & Brownell, LLC
                          8381 Old Courthouse Road, Suite 212
                          Vienna, VA 22182-3818
                          (703) 356-7700

January 22, 1999                    Atty. Docket No.2419

LML-EP 000235



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office

**ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS**
Washington, D.C. 20231

## CHANGE OF ADDRESS/POWER OF ATTORNEY

LOCATION   9200    SERIAL NUMBER 08257390     PATENT NUMBER 5484988

THE CORRESPONDENCE ADDRESS HAS BEEN CHANGED TO CUSTOMER #  22208

THE PRACTITIONERS OF RECORD HAVE BEEN CHANGED TO CUSTOMER #  22208

THE FEE ADDRESS HAS BEEN CHANGED TO CUSTOMER #  22208

ON 08/26/99 THE ADDRESS OF RECORD FOR CUSTOMER NUMBER  22208 IS:

```
ROBERTS AND ABOKHAIR
SUITE 1000
11800 SUNRISE VALLEY DRIVE
RESTON VA 20191
```

AND THE PRACTITIONERS OF RECORD FOR CUSTOMER NUMBER  22208 ARE:

30537   31293   37512   42439

PTO INSTRUCTIONS: PLEASE TAKE THE FOLLOWING ACTION WHEN THE
CORRESPONDENCE ADDRESS HAS BEEN CHANGED TO CUSTOMER NUMBER:
RECORD, ON THE NEXT AVAILABLE CONTENTS LINE OF THE FILE JACKET,
'ADDRESS CHANGE TO CUSTOMER NUMBER'.  LINE THROUGH THE OLD
ADDRESS ON THE FILE JACKET LABEL AND ENTER ONLY THE 'CUSTOMER
NUMBER' AS THE NEW ADDRESS.  FILE THIS LETTER IN THE FILE JACKET.
WHEN ABOVE CHANGES ARE ONLY TO FEE ADDRESS AND/OR PRACTITIONERS
OF RECORD, FILE LETTER IN THE FILE JACKET.

PTO-FMO
TALBOT-1/97

LML-EP 000236



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

## CHANGE OF ADDRESS/POWER OF ATTORNEY

LOCATION    9200    SERIAL NUMBER 08257390    PATENT NUMBER 5484988

THE CORRESPONDENCE ADDRESS HAS BEEN CHANGED TO CUSTOMER # 22208

THE PRACTITIONERS OF RECORD HAVE BEEN CHANGED TO CUSTOMER # 22208

THE FEE ADDRESS HAS BEEN CHANGED TO CUSTOMER # 22208

ON 08/26/99 THE ADDRESS OF RECORD FOR CUSTOMER NUMBER 22208 IS:

             ROBERTS AND ABOKHAIR
             SUITE 1000
             11800 SUNRISE VALLEY DRIVE
             RESTON VA 20191

AND THE PRACTITIONERS OF RECORD FOR CUSTOMER NUMBER 22208 ARE:

30537    31293    37512    42439

PTO INSTRUCTIONS: PLEASE TAKE THE FOLLOWING ACTION WHEN THE
CORRESPONDENCE ADDRESS HAS BEEN CHANGED TO CUSTOMER NUMBER:
RECORD, ON THE NEXT AVAILABLE CONTENTS LINE OF THE FILE JACKET,
'ADDRESS CHANGE TO CUSTOMER NUMBER'. LINE THROUGH THE OLD
ADDRESS ON THE FILE JACKET LABEL AND ENTER ONLY THE 'CUSTOMER
NUMBER' AS THE NEW ADDRESS. FILE THIS LETTER IN THE FILE JACKET.
WHEN ABOVE CHANGES ARE ONLY TO FEE ADDRESS AND/OR PRACTITIONERS
OF RECORD, FILE LETTER IN THE FILE JACKET.

PTO-FMD
TALBOT-1/97

LML-EP 000237



PTO UTILITY GRANT
Paper Number

The Commissioner of Patents
and Trademarks

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

United States Patent

*Grants to the person or persons having title to this patent the right to exclude others from making, using or selling the invention throughout the United States of America for the term of seventeen years from the date of this patent, subject to the payment of maintenance fees as provided by law.*

Bruce Lehman
Commissioner of Patents and Trademarks

Marjorie V. Turner
Attest

PTO-1584

(RIGHT INSIDE)

FP-LDM

LML-EP 000238



**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 1992

Application or Docket Number

### CLAIMS AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE | FEE | OR OTHER THAN SMALL ENTITY RATE | FEE |
|---|---|---|---|---|---|---|
| BASIC FEE | | | | $355.00 | OR | $710.00 |
| TOTAL CLAIMS | 9 minus 20 = | * | x$11= | | OR x$22= | |
| INDEPENDENT CLAIMS | 2 minus 3 = | * | x 37= | | OR x 74= | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | +115= | | OR +230= | |
| * If the difference in column 1 is less than zero, enter "0" in column 2 | | | TOTAL | 355.00 | OR TOTAL | |

### CLAIMS AS AMENDED - PART II

**AMENDMENT A**

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDITIONAL FEE | OR OTHER THAN SMALL ENTITY RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|
| Total | * 19 | Minus ** 20 | = | x$11= | | OR x$22= | |
| Independent | * 3 | Minus *** 3 | = | x 37= | | OR x 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | + 115= | | OR +230= | |
| | | | | TOTAL ADDIT. FEE | | OR TOTAL ADDIT. FEE | |

**AMENDMENT B**

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDITIONAL FEE | OR OTHER THAN SMALL ENTITY RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|
| Total | * 19 | Minus ** 20 | = | x$11= | | OR x$22= | |
| Independent | * 3 | Minus *** 3 | = | x 37= | | OR x 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | + 115= | | OR + 230= | |
| | | | | TOTAL ADDIT. FEE | | OR TOTAL ADDIT. FEE | |

**AMENDMENT C**

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDITIONAL FEE | OR OTHER THAN SMALL ENTITY RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|
| Total | * | Minus ** | = | x$11= | | OR x$22= | |
| Independent | * | Minus *** | = | x 37= | | OR x 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | +115= | | OR +230= | |
| | | | | TOTAL ADDIT. FEE | | OR TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875
(Rev. 10-92)

Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

LML-EP 000239

Form PTO 1130
(REV 2-84)

# PACE DATA ENTRY CODING SHEET

## U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

| 1ST EXAMINER | DATE 7-25-94 |
|---|---|
| 2ND EXAMINER | DATE |

**APPLICATION NUMBER**  08/257390

| TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|
| 1 9 | 1 2 |

| CONT CODE | STATUS CODE |
|---|---|
| 0 2 | 3 |

**PARENT APPLICATION SERIAL NUMBER**  0 7 9 5 7 1 7

**FOREIGN PRIORITY CLAIMED**

**COUNTRY CODE**

| TYPE APPL. | SMALL ENTITY? |
|---|---|
| 2 | 1 |

**FILING DATE**

| MONTH | DAY | YEAR |
|---|---|---|
| 0 6 | 0 9 | 9 4 |

**FILING FEE**  1 3 5 5

**FOREIGN LICENSE**  Y

**SPECIAL HANDLING**  0

| GROUP ART UNIT | CLASS |
|---|---|
| 2 5 0 5 | 2 3 5 |

**SHEETS OF DRAWING**  1 3

## CONTINUITY DATA

**PCT APPLICATION SERIAL NUMBER**

| | | | | |
|---|---|---|---|---|
| P C T / | | | | |
| P C T / | | | | |
| P C T / | | | | |
| P C T / | | | | |

**ATTORNEY DOCKET NUMBER**

**PARENT PATENT NUMBER**

| PARENT FILING DATE | | |
|---|---|---|
| MONTH | DAY | YEAR |
| 1 1 | 1 3 | 9 |

## PCT/FOREIGN APPLICATION DATA

**PCT/FOREIGN APPLICATION SERIAL NUMBER**

| FOREIGN FILING DATE | | |
|---|---|---|
| MONTH | DAY | YEAR |

# PATENT APPLICATION FEE DETERMINATION RECORD

**Effective October 1, 1992**

Application or Docket Number: 995 717

## CLAIMS AS FILED – PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE | FEE | OR | OTHER THAN SMALL ENTITY RATE | FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE | | | | $355.00 | OR | | $710.00 |
| TOTAL CLAIMS | 9 | minus 20 = * | x$11= | | OR | x$22= | |
| INDEPENDENT CLAIMS | 2 | minus 3 = * | x 37= | | OR | x 74= | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | +115= | | OR | +230= | |
| * If the difference in column 1 is less than zero, enter "0" in column 2 | | | TOTAL | 355 | OR | TOTAL | |

## CLAIMS AS AMENDED – PART II

### AMENDMENT A

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDITIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | * | Minus ** | = | x$11= | | OR | x$22= | |
| Independent | * | Minus *** | = | x 37= | | OR | x 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | + 115= | | OR | +230= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT B

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDITIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | 10 | Minus ** | = | x$11= | | OR | x$22= | |
| Independent | 3 | Minus *** | = | x 37= | | OR | x 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | + 115= | | OR | + 230= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT C

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDITIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | * | Minus ** | = | x$11= | | OR | x$22= | |
| Independent | * | Minus *** | = | x 37= | | OR | x 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | +115= | | OR | +230= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875
(Rev. 10-92)

Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

LML-EP 000241



LML-EP 000242