# MIN EXHIBIT D

Westlaw.

Unif.Commercial Code § 3-104

C
Uniform Laws Annotated Currentness
  Uniform Commercial Code
    Revised Article 3 Negotiable Instruments (Last Revised or Amended in 2002) (Refs & Annos)
      Part 1. General Provisions and Definitions

→ § 3-104. Negotiable Instrument.

(a) Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) is payable on demand or at a definite time; and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

(b) "Instrument" means a negotiable instrument.

(c) An order that meets all of the requirements of subsection (a), except paragraph (1), and otherwise falls within the definition of "check" in subsection (f) is a negotiable instrument and a check.

(d) A promise or order other than a check is not an instrument if, at the time it is issued or first comes into possession of a holder, it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable or is not an instrument governed by this Article.

(e) An instrument is a "note" if it is a promise and is a "draft" if it is an order. If an instrument falls within the definition of both "note" and "draft," a person entitled to enforce the instrument may treat it as either.

(f) "Check" means (i) a draft, other than a documentary draft, payable on demand and drawn on a bank or (ii) a cashier's check or teller's check. An instrument may be a check even though it is described on its face by another term, such as "money order."

(g) "Cashier's check" means a draft with respect to which the drawer and drawee are the same bank or branches of the same bank.

(h) "Teller's check" means a draft drawn by a bank (i) on another bank, or (ii) payable at or through a bank.

(i) "Traveler's check" means an instrument that (i) is payable on demand, (ii) is drawn on or payable at or through a bank, (iii) is designated by the term "traveler's check" or by a substantially similar term, and (iv) requires, as a condition to payment, a countersignature by a person whose specimen signature appears on the instrument.

(j) "Certificate of deposit" means an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money. A certificate of deposit is a note of the bank.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Unif.Commercial Code § 3-104

OFFICIAL COMMENT

2004 Main Volume

1. The definition of "negotiable instrument" defines the scope of Article 3 since Section 3-102 states: "This Article applies to negotiable instruments." The definition in Section 3-104(a) incorporates other definitions in Article 3. An instrument is either a "promise," defined in Section 3-103(a)<<- (9)->><<+(12)+>>, or "order," defined in Section 3-103(a)<<- (6)->><<+(8)+>>. A promise is a written undertaking to pay money signed by the person undertaking to pay. An order is a written instruction to pay money signed by the person giving the instruction. Thus, the term "negotiable instrument" is limited to a signed writing that orders or promises payment of money. "Money" is defined in Section 1-201(24) and is not limited to United States dollars. It also includes a medium of exchange established by a foreign government or monetary units of account established by an intergovernmental organization or by agreement between two or more nations. Five other requirements are stated in Section 3-104(a): First, the promise or order must be "unconditional." The quoted term is explained in Section 3-106. Second, the amount of money must be "a fixed amount * * * with or without interest or other charges described in the promise or order." Section 3-112(b) relates to "interest." Third, the promise or order must be "payable to bearer or to order." The quoted phrase is explained in Section 3-109. An exception to this requirement is stated in subsection (c). Fourth, the promise or order must be payable "on demand or at a definite time." The quoted phrase is explained in Section 3-108. Fifth, the promise or order may not state "any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money" with three exceptions. The quoted phrase is based on the first sentence of N.I.L. Section 5 which is the precursor of "no other promise, order, obligation or power given by the maker or drawer" appearing in former Section 3-104(1)(b). The words "instruction" and "undertaking" are used instead of "order" and "promise" that are used in the N.I.L. formulation because the latter words are defined terms that include only orders or promises to pay money. The three exceptions stated in Section 3-104(a)(3) are based on and are intended to have the same meaning as former Section 3-112(1)(b), (c), (d), and (e), as well as N.I.L. § 5(1), (2), and (3). Subsection (b) states that "instrument" means a "negotiable instrument." This follows former Section 3-102(1)(e) which treated the two terms as synonymous.

2. Unless subsection (c) applies, the effect of subsection (a)(1) and Section 3-102(a) is to exclude from Article 3 any promise or order that is not payable to bearer or to order. There is no provision in revised Article 3 that is comparable to former Section 3-805. The comment to former Section 3-805 states that the typical example of a writing covered by that section is a check reading "Pay John Doe." Such a check was governed by former Article 3 but there could not be a holder in due course of the check. Under Section 3-104(c) such a check is governed by revised Article 3 and there can be a holder in due course of the check. But subsection (c) applies only to checks. The comment to former Section 3-805 does not state any example other than the check to illustrate that section. Subsection (c) is based on the belief that it is good policy to treat checks, which are payment instruments, as negotiable instruments whether or not they contain the words "to the order of". These words are almost always pre-printed on the check form. Occasionally the drawer of a check may strike out these words before issuing the check. In the past some credit unions used check forms that did not contain the quoted words. Such check forms may still be in use but they are no longer common. Absence of the quoted words can easily be overlooked and should not affect the rights of holders who may pay money or give credit for a check without being aware that it is not in the conventional form.

Total exclusion from Article 3 of other promises or orders that are not payable to bearer or to order serves a useful purpose. It provides a simple device to clearly exclude a writing that does not fit the pattern of typical negotiable instruments and which is not intended to be a negotiable instrument. If a writing could be an instrument despite the absence of "to order" or "to bearer" language and a dispute arises with respect to the writing, it might be argued that the writing is a negotiable instrument because the other requirements of subsection (a) are somehow met. Even if the argument is eventually found to be without merit it can be used as a litigation ploy. Words making a promise or order payable to bearer or to order are the most distinguishing feature of a negotiable instrument and such words are frequently referred to as "words of negotiability." Article 3 is not meant to apply to contracts for the sale of goods or services or the sale or lease of real property or similar writings that may contain a promise to pay money. The use of words of negotiability in such contracts would be an aberration. Absence of the words precludes any argument that such contracts might be negotiable instruments.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Unif.Commercial Code § 3-104

An order or promise that is excluded from Article 3 because of the requirements of Section 3-104(a) may nevertheless be similar to a negotiable instrument in many respects. Although such a writing cannot be made a negotiable instrument within Article 3 by contract or conduct of its parties, nothing in Section 3- 104 or in Section 3-102 is intended to mean that in a particular case involving such a writing a court could not arrive at a result similar to the result that would follow if the writing were a negotiable instrument. For example, a court might find that the obligor with respect to a promise that does not fall within Section 3-104(a) is precluded from asserting a defense against a bona fide purchaser. The preclusion could be based on estoppel or ordinary principles of contract. It does not depend upon the law of negotiable instruments. An example is stated in the paragraph following Case #2 in Comment 4 to Section 3- 302.

Moreover, consistent with the principle stated in Section 1-102(2)(b), the immediate parties to an order or promise that is not an instrument may provide by agreement that one or more of the provisions of Article 3 determine their rights and obligations under the writing. Upholding the parties' choice is not inconsistent with Article 3. Such an agreement may bind a transferee of the writing if the transferee has notice of it or the agreement arises from usage of trade and the agreement does not violate other law or public policy. An example of such an agreement is a provision that a transferee of the writing has the rights of a holder in due course stated in Article 3 if the transferee took rights under the writing in good faith, for value, and without notice of a claim or defense.

Even without an agreement of the parties to an order or promise that is not an instrument, it may be appropriate, consistent with the principles stated in Section 1-102(2), for a court to apply one or more provisions of Article 3 to the writing by analogy, taking into account the expectations of the parties and the differences between the writing and an instrument governed by Article 3. Whether such application is appropriate depends upon the facts of each case.

3. Subsection (d) allows exclusion from Article 3 of a writing that would otherwise be an instrument under subsection (a) by a statement to the effect that the writing is not negotiable or is not governed by Article 3. For example, a promissory note can be stamped with the legend NOT NEGOTIABLE. The effect under subsection (d) is not only to negate the possibility of a holder in due course, but to prevent the writing from being a negotiable instrument for any purpose. Subsection (d) does not, however, apply to a check. If a writing is excluded from Article 3 by subsection (d), a court could, nevertheless, apply Article 3 principles to it by analogy as stated in Comment 2.

4. Instruments are divided into two general categories: drafts and notes. A draft is an instrument that is an order. A note is an instrument that is a promise. Section 3-104(e). The term "bill of exchange" is not used in Article 3. It is generally understood to be a synonym for the term "draft." Subsections (f) through (j) define particular instruments that fall within the categories of draft and note. The term "draft," defined in subsection (e), includes a "check" which is defined in subsection (f). "Check" includes a share draft drawn on a credit union payable through a bank because the definition of bank (Section <<-4-104->> <<+4-105+>>) includes credit unions. However, a draft drawn on an insurance company payable through a bank is not a check because it is not drawn on a bank. "Money orders" are sold both by banks and non-banks. They vary in form and their form determines how they are treated in Article 3. The most common form of money order sold by banks is that of an ordinary check drawn by the purchaser except that the amount is machine impressed. That kind of money order is a check under Article 3 and is subject to a stop order by the purchaser-drawer as in the case of ordinary checks. The seller bank is the drawee and has no obligation to a holder to pay the money order. If a money order falls within the definition of a teller's check, the rules applicable to teller's checks apply. Postal money orders are subject to federal law. "Teller's check" is separately defined in subsection (h). A teller's check is always drawn by a bank and is usually drawn on another bank. In some cases a teller's check is drawn on a nonbank but is made payable at or through a bank. Article 3 treats both types of teller's check identically, and both are included in the definition of "check." A cashier's check, defined in subsection (g), is also included in the definition of "check." Traveler's checks are issued both by banks and non-banks and may be in the form of a note or draft. Subsection (i) states the essential characteristics of a traveler's check. The requirement that the instrument be "drawn on or payable at or through a bank" may be satisfied without words on the instrument that identify a bank as drawee or paying agent so long as the instrument bears an appropriate routing number that identifies a bank as paying agent. <<+*Previous incorrect cross reference corrected by Permanent Editorial Board action November 1992.*+>>

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Unif.Commercial Code § 3-104

The definitions in Regulation CC § 229.2 of the terms "check," "cashier's check," "teller's check," and "traveler's check" are different from the definitions of those terms in Article 3.

Certificates of deposit are treated in former Article 3 as a separate type of instrument. In revised Article 3, Section 3-104(j) treats them as notes.

<<+5. There are some differences between the requirements of Article 3 and the requirements included in Article 3 of the Convention on International Bills of Exchange and International Promissory Notes. Most obviously, the Convention does not include the limitation on extraneous undertakings set forth in Section 3-104(a)(3), and does not permit documents payable to bearer that would be permissible under Section 3-104(a)(1) and Section 3-109. See Convention Article 3. In most respects, however, the requirements of Section 3-104 and Article 3 of the Convention are quite similar.+>> *Amendments approved by the Permanent Editorial Board for Uniform Commercial Code November 2, 2002.*

ACTION IN ADOPTING JURISDICTIONS

2005 Electronic Pocket Part Update

**Variations from Official Text:**

**MAINE**

In subsec. (f), adds a subdivision [designated (c) in the Maine act], which provides:

"(c) A demand draft."

Adds a subsection [designated (11) in the Maine act], which provides:

"(11) 'Demand draft' means a writing not signed by a customer that is created by a 3rd party under the purported authority of the customer for the purpose of charging the customer's account with a bank. A demand draft must contain the customer's account number and may contain any or all of the following:

"(a) The customer's printed or typewritten name;

"(b) A notation that the customer authorized the draft; and

"(c) The statement 'No Signature Required' or words to that effect.

" 'Demand draft' does not include a check purportedly drawn by and bearing the signature of a fiduciary, as defined in section 3-1307, subsection 1, paragraph (a)."

**VERMONT**

In subsec. (f), the first sentence provides: " 'Check' means (i) a draft, other than a documentary draft, payable on demand and drawn on a bank; (ii) a cashier's check or teller's check; or (iii) a demand draft."

Adds a subsection [designated (k) in the Vermont act], which provides:

"(k) 'Demand draft' means a writing not signed by a customer that is created by a third party under the purported authority of the customer for the purpose of charging the customer's account with a bank. A demand draft shall contain the customer's account number and may contain any or all of the following: (i) the customer's printed or typewritten name; (ii) a notation that the customer authorized the draft; and (iii) the statement 'No Signature Required' or words to that effect. A demand draft shall not include a check purportedly drawn by and bearing the signature of a fiduciary, as defined in subdivision (a)(1) of section 3-307 of this title."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.