# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP. )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>)<br>TELECHECK SERVICES, INC. )<br>ELECTRONIC CLEARING HOUSE, INC., )<br>XPRESSCHEX, INC., AND )<br>NOVA INFORMATION SYSTEMS, INC. )<br>)<br>Defendants. )<br>_____ ) | Civil Action No.: 04-858-SLR<br><br><br><br>**PUBLIC VERSION** |

## LML'S MEMORANDUM IN OPPOSITION TO TELECHECK'S
## MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

Originally filed: November 15, 2005
Public version filed: November 22, 2005

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
Edward K. Runyan
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Counsel for LML Patent Corp.*

## TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................1

II.    STATEMENT OF THE FACTS ...........................................................3

       A.    The Invention Described In The '988 Patent...............................3

       B.    TeleCheck's Electronic Check Acceptance Service .....................5

III.   LEGAL STANDARDS ..........................................................................9

       A.    Summary Judgment ......................................................................9

       B.    Infringement................................................................................10

IV.    ARGUMENT..........................................................................................11

       A.    TeleCheck's Motion Is Based On Attorney Argument and Hearsay,
             Not Admissible Evidence, And Thus, Should Be Denied ..........11

       B.    TeleCheck's "Any Bank Check" Non-Infringement Arguments
             Fail As A Matter of Law And Fact .............................................12

             1.    *Defendants' Claim Constructions—On Which TeleCheck's
                   Motion Is Exclusively Based—Are Improper.....................13*
             2.    *TeleCheck Offers No Argument Or Evidence Of Non-
                   Infringement Under LML's Proper Claim Constructions .............16*
             3.    *TeleCheck's Accused Product Satisfies the Elements of
                   Claim 1, 8 and 9 Which Actually Recite the Phrase "Any
                   Bank Check"........................................................................20*

       C.    TeleCheck's Accused Product Satisfies The "Without Using the
             [Bank] Check As A Negotiable Instrument" Element In Claims 1,
             8 And 9.........................................................................................26

             1.    *Defendants' Construction of "Without Using the [Bank]
                   Check as a Negotiable Instrument"—On Which
                   TeleCheck's Motion Is Exclusively Based—is Improper..............26*
             2.    *TeleCheck Offers No Argument Or Evidence Of Non-
                   Infringement Under LML's Proper Claim Construction Of
                   "Without Using The Check As A Negotiable Instrument"............28*
             3.    *Even Under Defendants' Proposed Construction Of
                   "Without Using The [Bank] Check As A Negotiable
                   Instrument," TeleCheck's Accused Product Satisfies This
                   Element in Claims 1 and 9........................................................30*

D.   TeleCheck's Accused Product Reads Checks For The "Sole Purpose" Of Obtaining "Consumer Bank Account Information" As Recited In Claims 2, 8 And 9 ........................................................... 31

V.   CONCLUSION ........................................................................................... 33

# TABLE OF AUTHORITIES

**Cases**

*Abtox, Inc. v. Exitron, Corp.,*
    122 F.3d 1019 (Fed. Cir. 1997)..................................................................................... 27

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ........................................................................................................ 10

*Arthrocare Corp. v. Smith & Nephew, Inc.,*
    2003 WL 1856436 (D. Del. April 9, 2003)...................................................................... 11

*Bickling v. Kent Gen. Hosp., Inc.,*
    872 F. Supp. 1299 (D.Del. 1994)................................................................................ 9, 10

*Biotec Biologische Nat. GmbH & Co. KG v. Biocorp, Inc.,*
    249 F.3d 1341, 1353 (Fed. Cir. 2001) ............................................................................ 11

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986).......................................................................................................... 9

*Chipollini v. Spencer Gifts, Inc.,*
    814 F.2d 893 (3d. Cir. 1991)............................................................................................ 9

*Cordis Corp. v. Boston Scientific Corp.,*
    2005 WL 1331176 (D. Del. June 3, 2005)...................................................................... 10

*Dayco Prods., Inc. v. Total Containment, Inc.,*
    258 F.3d 1317 (Fed. Cir. 2001)...................................................................................... 32

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,*
    45 F.3d 1550 (Fed. Cir. 1995).......................................................................................... 10

*Hewlett-Packard Co. v. Bausch & Lomb Inc.,*
    909 F.2d 1464 (Fed. Cir. 1990)...................................................................................... 14

*Intel Corp. v. ITC,*
    946 F.2d 821 (Fed. Cir. 1991).......................................................................... 15, 23, 31

*Joy Tech., Inc. v. Flakt, Inc.,*
    6 F.3d 770 (Fed. Cir. 1993)............................................................................................ 15

*Key Pharms. Inc. v. Hercon Labs. Corp.,*
    981 F. Supp. 299 (D. Del. 1997)..................................................................... 15, 23, 31

*In re Kollar*
    286 F.3d 1326 (Fed. Cir. 2002)...................................................................................... 15

*Markman v. Westview Instruments, Inc.,*
        52 F.3d 967 (Fed. Cir. 1995); *aff'd*, 517 U.S. 370 (1996) .............................. 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
        475 U.S. 574 (1986) ........................................................................................... 9

*N. Am. Container, Inc. v. Plastipak Packaging Inc.,*
        415 F.3d 1335 (Fed. Cir. 2005) ........................................................................ 14

*NTP, Inc. v. Research in Motion, Ltd.,*
        418 F.3d 1282 (Fed. Cir. 2005) .......................................................... 15, 19, 23

*Phillips v. AWH Corp.,*
        415 F.3d 1303 (Fed. Cir. 2005) .................................................................. 27, 28

*SanDisk Corp. v. Memorex Prods., Inc.,*
        415 F.3d 1278 (Fed. Cir. 2005) ........................................................................ 15

*Thorn EMI North America v. Intel Corp.,*
        936 F. Supp. 1186 (D. Del. 1996) .................................................................... 11

**Statutes**

35 U.S.C. 112(6) .................................................................................................. 17

**Rules**

Fed. R. Civ. P. 56(c) ............................................................................................. 9

Fed. R. Evid. 401 ................................................................................................. 28

Fed. R. Evid. 402 ................................................................................................. 28

Fed. R. Evid. 801 .......................................................................................... 13, 28

## I.    INTRODUCTION

TeleCheck's motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,484,988 (the "'988 patent") should be denied. TeleCheck's motion is limited to three arguments, all of which lack merit. Indeed, TeleCheck's arguments are based *exclusively* on Defendants' improper claim constructions. <u>Under LML's proper claim constructions, TeleCheck offers no argument or evidence of non-infringement</u>. But even under Defendants' improper constructions, a genuine issue of material fact still exists for trial.

*First*, TeleCheck argues that its accused product "does not conduct electronic transactions using any bank check." TeleCheck contends that the phrase "any bank check" should be read into the claim elements of "enabling automated clearing house communication for transferring funds" (claims 1 and 9) and "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations" (claim 8).[1]  Notably, *the phrase "any bank check" does not appear anywhere in these claim elements*. TeleCheck's argument is simply based on an extreme and strained effort to import the term "any bank check" into these elements in an attempt to avoid infringement. But even more telling is the fact that TeleCheck does not contest that its accused product satisfies the elements of claim 1, 8, and 9 in which the claim term "any bank check" actually appears.

*Second*, TeleCheck argues that its accused product does not satisfy the phrase "without using the check as a negotiable instrument" found in claims 1, 8, and 9 of the

---

[1] LML does not assert claim 8 of the '988 patent in this case, but does assert claims 16 and 18 which depend from claim 8.

-1-

'988 patent. Again, TeleCheck's argument is wholly dependent on Defendants' improper claim construction of this limitation. TeleCheck offers no argument or evidence of non-infringement under LML's proper construction of this phrase —where the check is used as a source of information, and is not accepted or processed. Indeed, TeleCheck concedes that its accused product complies with NACHA operating rules which require that the bank check be used only as a "source document" for electronic settlement, and is not accepted or processed. But, even under Defendants' improper construction of this phrase, a genuine issue of material fact exists with respect to TeleCheck's infringement.

*Third*, TeleCheck argues that because its accused product reads the check number off a check in addition to the ABA/transit routing number and bank account number, it does not read the check "for the sole purpose" of obtaining "consumer bank account information" as required by claims 2, 8 and 9 of the '988 patent. Yet again, TeleCheck's argument is based exclusively on Defendants' improper construction of the element "consumer bank account information" which attempts to improperly limit this phrase to "ABA/transit routing number and bank account number only." But, under LML's proper claim construction of this limitation —"information relating to a consumer's bank account including the MICR line"—TeleCheck concedes that it satisfies this claim element.

Thus, at the very least, a genuine issue of material fact exists as to each of TeleCheck's non-infringement arguments, precluding summary judgment. In fact, the evidence actually shows that *TeleCheck's accused product infringes* the '988 patent.[2]

---

[2] LML's Memorandum in Support of Its Motion for Summary Judgment No. 1 details TeleCheck's infringement of claims 1, 2, 4, 5, 6, 9, 10, 11 and 16 of the '988 patent.

-2-

## II.    STATEMENT OF THE FACTS

### A.    The Invention Described In The '988 Patent

In the early 1990's, two inventors, Robert Hills and Henry Nichols, developed a new way of processing checks at the point of sale, *i.e.* at the merchant's location. Their innovative process greatly simplified traditional check processing and helped merchants facilitate the way that they received payment on checks presented by their customers. (*See generally*, Ex. 1, '988 patent)[3]. Instead of traditional processing where the merchant accepted a check and physically took it to the bank, the invention disclosed in the '988 patent permitted the merchant to obtain approval for a transaction at the point of sale in the presence of the consumer and then process the transaction electronically, as shown in Fig. 1 of the '988 patent:



**FIG. 1**

(Ex. 1 at Fig. 1).  This process negated the need for physically taking the check to the issuing bank, eliminating the significant cost and expense associated with traditional processing of paper checks.  (*See generally,* Ex. 1 at "Abstract" and 3:3-8).

---

[3] Exhibits to the Declaration of Lesley Smith in Support of LML's Memorandum in Opposition to TeleCheck's Motion for Summary Judgment of Non-Infringement, hereinafter ("Ex. ___").

In general, the '988 patent allowed merchants to use a paper check presented by a consumer whereby the MICR data[4] contained on the check is captured at the retailer's point of sale terminal, using either a commercially available MICR reader, optical character recognition scanner or keypad to physically input the information into the terminal. (*Id.* at 5:45-49, 6:62-63). The amount of the transaction is then entered into the terminal keypad. (*Id.* at 8:11-13). Information relating to the merchant's location, date and time of transaction may be automatically captured by the terminal as well. (*Id.* at 5:18-21). The terminal then sends data to an electronic check processing provider by modem or other such communication methods that transfer packets of information electronically. (*Id.* at 5:62-6:8, 6:20-38).

The electronic check processing provider may run verification/risk analysis for the account and the bank routing number (*i.e.* the bank that the consumer's account is located at). (*Id.* at 6:9-19). If the transaction is approved, the point of sale terminal prints out a customer authorization receipt which authorizes the retailer to initiate an ACH or EFT transaction from the customer's checking account. (*Id.* at 8:18-23). The customer signs the authorization form and the retailer often voids the paper check. (*Id.*) The consumer bank account and transaction information is formatted by the electronic

---

[4] All printed checks for funds in the United States have a Magnetic Ink Character Recognition (MICR) line imprinted on the bottom of each check. This line is printed using an ink with iron-oxide pigments capable of being magnetized. (Ex. 2, Tinkel Decl. ¶ 15, n.3). In this way the characters encoded on this line can be read either magnetically or optically. (*Id.*) The MICR line typically contains the following information: (1) Bank Routing Number – A number that uniquely identifies the bank at which the checking account is established (sometimes known as the ABA number); (2) Account number of the consumer's checking account; and (3) Check Serial Number. (*See generally,* Ex. 2 Declaration of Gary Tinkel ("Tinkel Decl.") at ¶ 15 n.3; REDACTED

-4-

check processing provider so that it can be read and processed by the Automated Clearing House ("ACH") or other Electronic Funds Transfer ("EFT") networks. (*Id.* at 8:30-42). The ACH or other EFT networks, in turn, transmits the payment information to the consumer's bank, where his or her account is debited and the retailer's bank, sometimes called the Originating Depository Financial Institution (ODFI), is credited via an electronic funds transfer.

The '988 patent contains three independent claims, 1, 8, and 9. Claims 1 and 9 are system claims, and claim 8 is a method claim. The patent also contains a number of dependent claims, 2-7 and 10-20. LML is asserting infringement by TeleCheck's accused product of claims 1, 2, 4, 5, 6, 9, 10, 11, 14, 16, and 18 (the "Asserted Claims").

**B.    TeleCheck's Electronic Check Acceptance Service**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

## III.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The party moving for summary judgment bears the initial burden to demonstrate the absence of genuine issues of material fact, regardless of which party has the burden of persuasion at trial." *Bickling v. Kent Gen. Hosp., Inc.,* 872 F. Supp. 1299, 1304 (D.Del. 1994) (*citing Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d. Cir. 1991) (en banc)). When assessing the factual record, this Court must view all evidence in the light most favorable to LML, the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To defeat a motion for summary judgment, LML is not required to present evidence conclusively resolving all material factual issues in its favor; "rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to

-9-

require a jury. . .to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (internal citation omitted); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1561 (Fed. Cir. 1995). Moreover, the evidence submitted by LML "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. In fact, where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied "even if the nonmoving party does not present opposing evidentiary materials." *Bickling*, 872 F. Supp. at 1305; *Cordis Corp. v. Boston Scientific Corp.*, No. Civ. 03-027-SLR, 2005 WL 1331176, at *2 (D. Del. June 3, 2005) (J. Robinson) (denying summary judgment of non-infringement because of the existence of material issues of fact).

**B.     Infringement**

Patent infringement is a two-step analysis. The first step is determining the meaning and scope of the asserted patent claims. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995); *aff'd*, 517 U.S. 370 (1996). The next step in the infringement analysis is to determine whether the accused products and processes fall within the scope of those properly construed claims. *Id.* at 976. Here, TeleCheck's motion is based exclusively on Defendants' improper claim constructions—it presents no argument or evidence of non-infringement under LML's proper claim constructions. However, even under Defendants' claim constructions, a genuine issue of material fact still exists for trial, thus precluding summary judgment.

## IV.    ARGUMENT

TeleCheck argues, in its brief, that its accused product does not infringe any Asserted Claim of the '988 patent because (1) it allegedly cannot process "any bank check;" (2) it allegedly does "not use the check as a negotiable instrument;" and (3) it does not read the bank check "for the sole purpose" of obtaining "consumer bank account information." But, TeleCheck's contentions are based primarily on attorney argument as opposed to actual "evidence." Moreover, as explained in detail below, TeleCheck's arguments do not coincide with the law or the factual record. At the very least, a genuine issue of material fact exists with respect to each of these issues, thus precluding summary judgment.

### A.    TeleCheck's Motion Is Based On Attorney Argument and Hearsay, Not Admissible Evidence, And Thus, Should Be Denied

Summary judgment is only appropriate "when the *evidence admissible at trial* fails to demonstrate a genuine issue of material fact," and the moving party is entitled to summary judgment as a matter of law. *Thorn EMI North America v. Intel Corp.*, 936 F. Supp. 1186, 1199 (D. Del. 1996) (emphasis added). "For purposes of summary judgment, evidence is deposition testimony, declarations, admissions, answers to interrogatories, etc." *Arthrocare Corp. v. Smith & Nephew, Inc.*, No. Civ. A. 01-504-SLR, 2003 WL 1856436, at *5 (D. Del. April 9, 2003) (J. Robinson). However, as is the case here, "motions are often deficient for providing only attorney argument." *Id.* Indeed, "[i]t is well established that conclusory statements of counsel...do not raise a genuine issue of fact." *Biotec Biologische Nat. GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001). *Attorney argument is not evidence. See Arthrocare*, 2003 WL 1856436, at *5.

-11-

In its motion, TeleCheck has not met its burden of presenting evidence admissible at trial.  In fact, TeleCheck has not even attached or provided *any* declarations or affidavits of any expert or employee to support its motion.  Thus, its brief is replete with arguments supported only by conclusory statements of counsel or inadmissible hearsay[5].  For instance, TeleCheck makes numerous statements throughout its brief without any basis for doing so, such as:

**REDACTED**

TeleCheck's motion is simply *not* supported by admissible evidence, and thus, must be denied on this basis alone.

**B.     TeleCheck's "Any Bank Check" Non-Infringement Arguments Fail As A Matter of Law And Fact**

**REDACTED**

---

[5] In its motion, TeleCheck cites to the deposition testimony of its own expert Dewayne Perry (Ex. W) as well as its own employees—Jay Iler (Ex. M), Steve Geiler (Ex. N), and Kerry Sellen (Ex. O).  Exhibits M, N, O, and W are not admissible evidence and LML objects to such exhibits, as they are hearsay under Federal Rule 801.  On this basis, they should be stricken.

**REDACTED**

### 1.    Defendants' Claim Constructions—On Which TeleCheck's Motion Is Exclusively Based—Are Improper[7]

TeleCheck's argument that its accused product does not "conduct electronic checking transactions using any bank check'" is based on an extreme and strained effort to import the term "any bank check" into claim elements that have no such limitation. TeleCheck's "any bank check" argument is based exclusively on Defendants' improper construction of the following elements of claims 1, 8, and 9:

| Asserted Claim | Claim Language On Which TeleCheck Bases Its "Any Bank Check" Argument |
|---|---|
| Claim 1 | "enabling automated clearing house communication for transferring funds" |
| Claim 8 | "subsequently transmitting the transaction event information to a bank for subsequent automated |

---

6    **REDACTED**

[7] LML's claim construction briefing, pending simultaneously herewith, explains in detail why LML's proposed constructions are correct, and why Defendants' proposed constructions are incorrect.

| | clearing house operations" |
|---|---|
| Claim 9 | "enabling automated clearing house communication for transferring funds" |

Notably, ***the phrase "any bank check" does not appear anywhere in these claim***

***elements***. Despite the clear absence of this language in these elements, in their proposed

construction, Defendants attempt to rewrite the language of these elements to include the

additional limitation "based upon the consumer bank account information obtained from

***any bank check*** presented at the point of sale." (Ex. 16, Joint Claim Chart) (emphasis

added). As such, Defendants' construction is incorrect as a matter of law. *See N. Am.*

*Container, Inc. v. Plastipak Packaging Inc.*, 415 F.3d 1335, 1348 (Fed. Cir. 2005) ("As

we have stated previously, unless required by the specification, limitations that do not

otherwise appear in the claims should not be imported into the claims.").

Moreover, Defendants attempt to construe the elements "enabling automated

clearing house communication for transferring funds" from claims 1 and 9 and

"subsequently transmitting the transaction event information to a bank for subsequent

automated clearinghouse operations" from claim 8 exactly the same. (Ex. 16, Joint Claim

Chart). But, these elements recite ***completely different language*** in addition to the fact

that one element appears in system claims (claims 1 and 9) while the other is part of a

method claim (claim 8). Independent claims 1 and 9 are system claims where the

elements of the claim describe particular capabilities of the claimed systems. Because a

system claim covers what a system ***is*** and not what a system ***does,*** a system claim is

infringed by a system that contains all of the recited capabilities of the claimed system,

regardless of whether those capabilities are actually used. *Hewlett-Packard Co. v.*

*Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("[A]pparatus claims cover

-14-

what a device *is*, not what a device *does*."); *Intel Corp. v. ITC*, 946 F.2d 821, 832 (Fed. Cir. 1991) (holding that a device claim was infringed if it was capable of operating in the claimed mode and that actual operation in the claimed mode was not required); *see also Key Pharms. Inc. v. Hercon Labs. Corp.*, 981 F. Supp. 299, 310 (D. Del. 1997) (finding that all that was required for infringement was that the system have the claimed capability, regardless of whether or not it was used).

Unlike system claims, method claims (such as claim 8) do not cover a tangible item but instead "consists of a series of acts or steps." *In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002). The difference between the system and method claims of the '988 patent is an important distinction which Defendants completely ignore. *Id.* (finding error where the court failed to recognize the "distinction between a claim to a product, device, or apparatus, all of which are tangible items, and a claim to a process which consists of acts or steps"); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1316 (Fed. Cir. 2005) (noting the infringement analysis is different for "different types of claims"). Indeed, a method claim is directly infringed only by "practicing the patented method," regardless of what capabilities the system performing the process might have. *Joy Tech., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993). Thus, Defendants' construction is incorrect as a matter of law.

Finally, Defendants' construction improperly reads a preferred embodiment out of the claims. *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) ("A claim construction that excludes a preferred embodiment, moreover, 'is rarely, if ever, correct.'") (internal citations omitted). The '988 patent is clear that one of its benefits is providing the ability for the merchant or service provider to approve electronic

funds transfers for only a subset of the bank checks read or received at the point of sale terminal. (Ex. 1 3:25-27, 8:16-18 and 8:31-36). TeleCheck even acknowledges this by noting that a transaction is only electronically processed for payment *if the verification is approved.*[8] (TeleCheck. Br. at 5-6). Defendants' construction, by reading in an extraneous limitation, would require "electronic communication with an automated clearing house for transferring funds electronically" for *all bank checks* read or received at the point of sale terminal—even those checks that the merchant and/or service provider have determined would not be eligible for electronic settlement based on the information read or received from the check. This construction reads the above preferred embodiment of the '988 patent out of the claims. Defendants' construction, therefore, cannot be correct.

> ### 2. TeleCheck Offers No Argument Or Evidence Of Non-Infringement Under LML's Proper Claim Constructions

TeleCheck presents no argument or evidence under LML's proper construction of "second communication means...enabling automated clearing house communication for transferring funds" and "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations." Consequently, TeleCheck's motion should be denied as a matter of law.

---

[8]    **REDACTED**

-16-

a.    LML's proper claim constructions

In its claim construction briefing, LML proposed the following proper

constructions of these disputed elements:

| Claim Language | LML's Proper Construction |
|---|---|
| "second communication means…enabling automated clearing house communication for transferring funds" (claims 1 and 9) | "second communication means…enabling communication with an automated clearing house for electronically transferring funds." |
| "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations" (claim 8) | "subsequently transmitting the information relating to the transaction to a bank for subsequent automated clearing house operations." |

LML's constructions are based on the intrinsic evidence, and unlike Defendants'

construction, covers the preferred embodiment recited in the '988 patent whereby a

transaction can either be accepted *or* rejected.

b.    TeleCheck's Accused Product Satisfies the Element "Second Communication Means…Enabling Automated Clearing House Communication For Transferring Funds" in Claims 1 and 9


**REDACTED**

---

[9] The parties do not dispute the construction of the "second communication means" element. This function is written in means-plus-function format pursuant to 35 U.S.C. 112(6). (Ex. 16, Joint Claim Chart). The recited function of this limitation is enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using the [a] bank check as a negotiable instrument. (*Id.*) The structures disclosed in the patent for performing the recited function of this limitation are a modem, network interface, enhanced radio transmission interface, satellite communication interface or equivalent. (*Id.*)

**REDACTED**

c.    TeleCheck's Accused Product Performs the Step "Subsequently Transmitting the Transaction Event Information to a Bank For Subsequent Automated Clearinghouse Operations" in Claim 8

**REDACTED**

-18-

**REDACTED**

**REDACTED**

3.  **TeleCheck's Accused Product Satisfies the Elements of Claim 1, 8 and 9 Which Actually Recite the Phrase "Any Bank Check"**

Although TeleCheck does not present in its motion any non-infringement argument or evidence with respect to the elements of claims 1, 8 and 9 that actually contain the phrase "any bank check," TeleCheck satisfies these claim elements as well. (Ex. 2, Tinkel Decl. ¶¶ 31-35, 74-75, 114-118). Claim 1 recites the element "a point of sale terminal adapted to receive consumer bank account information from any bank check," claim 8 recites the element "presenting any bank check specimen to a point of sale terminal located at a merchant or service provider," and claim 9 recites the element "the point of sale terminal comprising reading means for reading magnetic ink character recognition numbers on any consumer bank check." Under either party's construction of these elements, TeleCheck's accused products satisfy these "any bank check" elements. At the very least, a genuine issue of material fact exists precluding summary judgment.

---

[10]Because claim 8 is a method claim, even under Defendants' incorrect claim construction of this element, TeleCheck satisfies this claim element. Indeed, for the same reasons stated above, any time a check is processed through TeleCheck's accused product and subsequently sent through the ACH, TeleCheck performs this step.

a. The Point of Sale Terminals Used With TeleCheck's Accused Product Are "Adapted to Receive Consumer Bank Account Information From Any Bank Check" as Recited in Claim 1

**REDACTED**

---

[11] LML has construed "adapted to receive consumer bank account information from any bank check" as simply the claim language itself. (Ex. 16, Joint Claim Chart). Defendants' construction is "adapted to read consumer bank account information directly from any bank check." (*Id.*)

LML has construed "consumer bank account information" to mean "information relating to a consumer's bank account including the MICR line (magnetic ink character recognition line)." (*Id.*) Defendants' construction is "only the ABA/transit routing number and bank account number." (*Id.*)

LML has construed "any bank check" as "any regular check used to draw funds from a normal bank or credit union checking account." (*Id.*) Defendants' construction is "any type of check drawn on a financial institution." (*Id.*)

**REDACTED**

---

[12] As explained in LML's claim construction briefing, the applicants during prosecution of the '988 patent expressly stated that their invention related to any "regular check" drawn on a "normal" checking account. TeleCheck's effort to include foreign checks or other types of checks with non-magnetic or non-standard fonts is simply not something the applicants intended their invention to cover.

**REDACTED**

       b.      <u>TeleCheck's Accused Product Performs the Step "Presenting Any Bank Check Specimen to a Point of Sale Terminal Located at a Merchant or Service Provider" as Recited in Claim 8</u>

**REDACTED**

---
[13]
      **REDACTED**

**REDACTED**

c.      The Point of Sale Terminals Used With TeleCheck's
        Accused Product Have "Means for Reading Magnetic Ink
        Character Recognition Numbers on Any Consumer Bank
        Check" as Recited in Claim 9

**REDACTED**

**REDACTED**

**C.    TeleCheck's Accused Product Satisfies The "Without Using the [Bank] Check As A Negotiable Instrument" Element In Claims 1, 8 And 9**

TeleCheck next contends that its accused product does not satisfy the element "without using the [bank] check as a negotiable instrument" recited in claims 1, 8 and 9. However, once again, TeleCheck's non-infringement argument is completely dependent on the adoption of Defendants' incorrect construction of this phrase.    Not only is Defendants' claim construction improper, TeleCheck's accused product still infringes this limitation in claims 1 and 9 even under Defendants' own construction.  At the very least, a genuine issue of material fact exists precluding summary judgment.

**1.    Defendants' Construction of "Without Using the [Bank] Check as a Negotiable Instrument"—On Which TeleCheck's Motion Is Exclusively Based—is  Improper**

TeleCheck's argument with respect to the element "without using the check as a negotiable instrument" is based exclusively on Defendants' incorrect construction of this element.   TeleCheck proffers no argument or evidence of non-infringement under any other claim construction—including LML's proper claim construction.   As such, TeleCheck's motion should be denied on this basis as a matter of law.

Defendants readily admit that their construction of "without using the [bank] check as a negotiable instrument"—"the bank check, at no time, takes on the status of a negotiable instrument"—comes, not from the intrinsic evidence, but directly from the *extrinsic evidence*.[14]   In doing so, TeleCheck ignores the  fundamental  teachings of

---

[14]    **REDACTED**

(Continued...)

-26-

*Phillips* that the intrinsic evidence of record is the "primary tool" in claim construction, while "extrinsic evidence. . .[is] *less reliable* than the patent and its prosecution history in determining how to read claim terms." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1318 (Fed. Cir. 2005) (emphasis added). Indeed, Defendants' construction is at odds with the intrinsic evidence. As a preliminary matter, on its face, the claim language is focused on the fact that the check is not *used as* a negotiable instrument. (Ex. 1, claims 1, 8 and 9). Once again, Defendants' construction is divorced from the language of the claims and instead seeks to define whether the check takes on the *status* of a negotiable instrument. *Abtox, Inc. v. Exitron, Corp.,* 122 F.3d 1019, 1023 (Fed. Cir. 1997) ("[T]he language of the claim frames and ultimately resolves all issues of claim interpretation.").

Moreover, Defendants' construction runs directly contrary to the explicit teachings of the '988 patent—as the '988 patent specifically contemplates using a completely filled out check in its preferred embodiment. (Ex. 1 at 7:47-49). Even TeleCheck acknowledges that the '988 patent is not limited to blank, unsigned checks, stating "the claimed system and method" of the '988 patent begins when a customer provides "the merchant with any bank check, *preferably* a 'specimen' or 'blank' check." (TeleCheck Br. at 5 (citing '988 patent at 7:48)). Indeed, the claim language focuses on how the check is "used," not the status the check is taking on. Thus, Defendants' construction of "without using the [bank] check as a negotiable instrument" is improper.

**REDACTED**

-27-

**2.     TeleCheck Offers No Argument Or Evidence Of Non-Infringement Under LML's Proper Claim Construction Of "Without Using The Check As A Negotiable Instrument"**

TeleCheck presents no argument or evidence under LML's proper construction of "second communication means…enabling automated clearing house communication for transferring funds" and "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations." Consequently, TeleCheck's motion should be denied as a matter of law.

a.     <u>LML's proper claim constructions</u>

As explained fully in LML's claim construction briefing, the proper claim construction of "without using the check as a negotiable instrument" is "where the paper check is used as a source of information, and is not accepted or processed." Unlike Defendants' construction, LML's construction follows the teachings of *Phillips* and is derived directly from the intrinsic evidence. Indeed, the specification of the '988 patent repeatedly discloses using the check as a source of information and not accepting or processing the check. (*see, e.g.,* Ex. A, '988 patent at 1:10-15, 9:64-10:2). Even TeleCheck recognizes this fact, stating that the "bank check is use only for purposes of obtaining consumer bank account information from the check . . .thereby eliminating reliance on accepting and processing commercial bank drafts." (TeleCheck Br. at 5). Under LML's proper construction, TeleCheck's accused product satisfies the element "without using the [bank] check as a negotiable instrument." (Ex. 2, Tinkel Decl. ¶¶ 50-51, 82-83, 126-127). TeleCheck does not contest this fact in its motion.

**REDACTED**

**REDACTED**

---

[15] The entry code on a specific electronic transaction identifies the origin of the transaction. For instance, the only transaction at issue in this case -- point of purchase transactions -- have the entry code POP.

[16]

**REDACTED**

REDACTED

3.      Even Under Defendants' Proposed Construction Of "Without Using The [Bank] Check As A Negotiable Instrument," TeleCheck's Accused Product Satisfies This Element in Claims 1 and 9

REDACTED

---

17  Claim 9 contains the similar language of "enabling automated clearing house communication for transferring funds without using a bank check as a negotiable instrument." (Ex. 1).

**REDACTED**

D.     **TeleCheck's Accused Product Reads Checks For The "Sole Purpose" Of Obtaining "Consumer Bank Account Information" As Recited In Claims 2, 8 And 9**

TeleCheck's next contends that its accused product does not read the bank check "for the sole purpose" of obtaining "consumer bank account information" as recited in claims 2, 8 and 9. This argument is again based exclusively on Defendants' improper construction of "consumer bank account information." Under the proper construction,

TeleCheck again does not contest infringement. Thus, TeleCheck's motion should be denied on this basis as a matter of law.

Defendants attempt to limit "consumer bank account information" to specific types of information, namely "only ABA/transit routing number and bank account number." (Ex. 16, Joint Claim Chart). Because TeleCheck's accused product also reads the check serial number off of the check, TeleCheck contends it is not reading the check for the *sole* purpose of obtaining consumer bank account information. (TeleCheck Br. at 27-28). But, Defendants' construction of "consumer bank account information" is an improper attempt to narrow a broad claim term without reason.

As explained in detail in LML's claim construction briefing, Defendants' construction of "consumer bank account information" is a classic case of attempting to limit a clear, straightforward claim term where no such limitation is required by the plain language of the claim or has any basis in the intrinsic evidence. *Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1327 (Fed. Cir. 2001) ("adding limitations to claims not required by the claim terms themselves, or unambiguously required by the specification or prosecution history, is impermissible."). In fact, the Court need only look to the first word of Defendants' construction—"only"—to reveal their blatant attempt to unnecessarily limit this term.

On the other hand, LML's construction—"information relating to a consumer's bank account including the MICR line"—is based on the ordinary and customary meaning of the element and is fully supported by the intrinsic evidence, particularly the specification which repeatedly references reading the *entire* MICR line which includes the check serial number in addition to ABA/transit and bank account information. **REDACTED**

-32-

**REDACTED**

V.     **CONCLUSION**

LML has presented evidence that, at the very least, demonstrates that there is a genuine issue of material fact for each of the non-infringement arguments made by TeleCheck.  For this reason, the Court should deny TeleCheck's motion for summary judgment of non-infringement of the Asserted Claims of the '988 patent.

;

---

18     **REDACTED**

Dated:  November 15, 2005

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Counsel for Plaintiff LML Patent Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of November, 2005, I electronically filed the foregoing document, **PUBLIC VERSION OF LML'S MEMORANDUM IN OPPOSITION TO TELECHECK'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Collins J. Seitz, Jr., Esq.
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19801

William J. Marsden, Jr., Esq.
Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 22nd day of November, 2005, the foregoing document was served via email on the following non-registered participants:

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Mark C. Scarsi, Esq.
Vision L. Winter, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

*/s/ Mary B. Matterer*
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS
& WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com

*Counsel for Plaintiff LML PATENT CORP.*