# EXHIBIT  5

# EXHIBIT NOT USED

# EXHIBIT   6

TIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LML PATENT CORP.,

    Plaintiff,

v.

TELECHECK SERVICES, INC.,
ELECTRONIC CLEARING HOUSE, INC.,
XPRESSCHEX, INC. and NOVA
INFORMATION SYSTEMS, INC.,

    Defendants.

C.A. 04-858 (SLR)

## TELECHECK'S FOURTH SUPPLEMENTAL RESPONSE TO LML'S AMENDED FIRST SET OF INTERROGATORIES (Nos. 6-8)

### RESERVATION OF RIGHTS

Pursuant to Rules 26 and 33, TeleCheck Services, Inc. ("TeleCheck") hereby provides a Fourth Supplemental Response to LML Patent Corp.'s ("LML") Amended First Set of Interrogatories, Nos. 1-9 ("Interrogatories"). TeleCheck provides these supplemental responses without waiving any present or future objection, for example such as any objection as to the relevance or admissibility of any information provided by TeleCheck. TeleCheck's investigation regarding this litigation is ongoing, as is TeleCheck's development of any contentions. These responses are provided subject to TeleCheck's future investigation, supplementation, or modification. TeleCheck's agreement to investigate the subject matter of any interrogatory or to provide responsive information does not constitute an admission that relevant, non-privileged information responsive to that interrogatory exists. All responses are subject to each of the General Objections and specific Objections set forth in TeleCheck's original Response to LML's Amended First Set of Interrogatories.

## INTERROGATORY NO. 6:

Identify each and every TeleCheck point-of-sale electronic check conversion system and associated equipment and services that TeleCheck has made, imported, used, sold, and/or offered to sell subsequent to January 1996, including the name of each such product, system, equipment and/or service, and the dates/time period TeleCheck manufactured, sold, offered for sale, used, and/or imported each such product, system, equipment and/or service.

## RESPONSE TO INTERROGATORY NO. 6:

TeleCheck objects to this interrogatory as vague, overly broad, unduly

burdensome and not reasonably calculated to lead to the discovery of admissible

evidence. TeleCheck further objects to the date January 1996, which predates any period

for which LML is entitled to seek damages. Subject to these objections, TeleCheck

identifies the Eclipse® and Accelera terminals and the Electronic Check Acceptance®

(ECA®) Service as products that appear to be accused by LML in this case. TeleCheck

denies that these terminals and service infringe any claim of the Patents-in-Suit.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:

TeleCheck repeats all of its objections above as if fully set forth herein.

TeleCheck's Accelera terminal has been offered for sale as early as May 1997 through

the present. TeleCheck's ECA Service has been offered for sale as early as October 1997

through the present. TeleCheck's Eclipse terminal has been offered for sale as early as

August 1999 through the present.

## INTERROGATORY NO. 7:

Describe in detail how each TeleCheck Accused Product converts paper checks presented at the point of sale into electronic transactions, including but not limited to, describing with specificity each step of converting paper checks into electronic transactions from the initial tender of a paper check at the point of sale to the deposit of funds into the merchant's bank account.

## RESPONSE TO INTERROGATORY NO. 7:

TeleCheck objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. TeleCheck reiterates its objection to LML's definition of "TeleCheck's Accused Products," "Accused Product," or "product" as vague, overly broad and unduly burdensome, as defined by LML in Interrogatory No. 1. Subject to these objections and pursuant to Fed. R. Civ. P. 33(d), TeleCheck refers LML to the documents that will be produced by TeleCheck.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:

TeleCheck repeats all of its objections above as if fully set forth herein. The bates ranges for documents responsive to LML Interrogatory No. 7 is attached as Exhibit A hereto.

## INTERROGATORY NO. 8:

Identify the person or persons most knowledgeable about the conception, development, engineering, marketing and promotion, technical support, manufacture, operation, sale and/or offer to sell, and use for each of TeleCheck's Accused Products.

## RESPONSE TO INTERROGATORY NO. 8:

TeleCheck reiterates its objection to LML's definition of "TeleCheck's Accused Products," "Accused Product," or "product" as vague, overly broad and unduly burdensome, as defined by LML in Interrogatory No. 1. Subject to these objections, TeleCheck refers LML to TeleCheck's Initial Disclosures pursuant to Fed. R. Civ. P. 26(a), served on October 19, 2004.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:

TeleCheck repeats all of its objections above as if fully set forth herein. TeleCheck believes that the following individuals have knowledge regarding the topics requested in LML Interrogatory No. 8:

- Conception, Development, Engineering, and Operation:    Kerry Sellen
- Conception, Development, Engineering, and Operation:    Jay Iler
- Marketing, Promotion, and Sales or Offers to Sell:    Sandy Mollett
- Technical Support and Manufacture:    David Smith

Dated:  April 15, 2005                FISH & RICHARDSON P.C.

By: _____
        William J. Marsden, Jr. (#2247)
        Timothy Devlin (#4241)
        Tara D. Elliott (#4483)
        919 N. Market Street, Suite 1100
        P.O. Box 1114
        Wilmington, DE  19899-1114
        (302) 652-5070

*Attorneys for Defendant*
*TeleCheck Services, Inc.*

4

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of April, 2005, a true and correct copy of

TELECHECK'S FOURTH SUPPLEMENTAL RESPONSE TO LML'S AMENDED

FIRST SET OF INTERROGATORIES (Nos. 6-8) was caused to be served on the

attorneys of record at the following addresses as indicated:

**BY HAND DELIVERY**
Richard K. Herrmann, Esq.
Morris, James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19899

**BY EMAIL AND FIRST CLASS MAIL**
Robert Jacobs, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

**BY HAND DELIVERY**
Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

**BY EMAIL AND FIRST CLASS MAIL**
Russell E. Levine, Esq.
Kirkland & Ellis LLP
200 E. Randolph Dr.
Chicago, IL 60601

**BY HAND DELIVERY**
Collins J. Seitz, Jr., Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19801

**BY EMAIL AND FIRST CLASS MAIL**
Mark C. Scarsi, Esq.
O'Melveny & Myers LLP
400 S Hope Street
Los Angeles, CA 90071

Tara D. Elliott

80024026.doc

# EXHIBIT

# A

| | | | | | |
|---|---|---|---|---|---|
| FDC00001 | FDC00018 | FDC00871 | FDC00894 | FDC01831 | FDC01844 |
| FDC00019 | FDC00019 | FDC00895 | FDC00911 | FDC01845 | FDC01850 |
| FDC00020 | FDC00023 | FDC00912 | FDC00926 | FDC01851 | FDC01860 |
| FDC00024 | FDC00026 | FDC00927 | FDC00934 | FDC01861 | FDC01867 |
| FDC00027 | FDC00027 | FDC00935 | FDC00945 | FDC01868 | FDC01868 |
| FDC00028 | FDC00046 | FDC00946 | FDC01041 | FDC01871 | FDC01898 |
| FDC00047 | FDC00056 | FDC01042 | FDC01070 | FDC01899 | FDC01900 |
| FDC00057 | FDC00058 | FDC01071 | FDC01094 | FDC01901 | FDC01902 |
| FDC00059 | FDC00061 | FDC01095 | FDC01097 | FDC01903 | FDC01906 |
| FDC00062 | FDC00062 | FDC01131 | FDC01135 | FDC01907 | FDC01930 |
| FDC00067 | FDC00067 | FDC01136 | FDC01140 | FDC01931 | FDC01964 |
| FDC00068 | FDC00105 | FDC01223 | FDC01223 | FDC01965 | FDC02020 |
| FDC00106 | FDC00133 | FDC01224 | FDC01229 | FDC02021 | FDC02074 |
| FDC00134 | FDC00135 | FDC01230 | FDC01235 | FDC02075 | FDC02128 |
| FDC00136 | FDC00237 | FDC01236 | FDC01240 | FDC02129 | FDC02183 |
| FDC00238 | FDC00241 | FDC01241 | FDC01241 | FDC02184 | FDC02238 |
| FDC00242 | FDC00250 | FDC01242 | FDC01243 | FDC02239 | FDC02294 |
| FDC00251 | FDC00258 | FDC01245 | FDC01250 | FDC02295 | FDC02351 |
| FDC00259 | FDC00266 | FDC01251 | FDC01256 | FDC02352 | FDC02417 |
| FDC00267 | FDC00275 | FDC01257 | FDC01261 | FDC02418 | FDC02427 |
| FDC00276 | FDC00284 | FDC01262 | FDC01266 | FDC02428 | FDC02432 |
| FDC00285 | FDC00294 | FDC01267 | FDC01273 | FDC02439 | FDC02441 |
| FDC00295 | FDC00304 | FDC01283 | FDC01314 | FDC02442 | FDC02445 |
| FDC00305 | FDC00350 | FDC01315 | FDC01414 | FDC02446 | FDC02448 |
| FDC00351 | FDC00356 | FDC01415 | FDC01473 | FDC02449 | FDC02450 |
| FDC00365 | FDC00370 | FDC01474 | FDC01480 | FDC02451 | FDC02453 |
| FDC00371 | FDC00383 | FDC01485 | FDC01491 | FDC02454 | FDC02454 |
| FDC00384 | FDC00389 | FDC01492 | FDC01501 | FDC02455 | FDC02455 |
| FDC00390 | FDC00395 | FDC01502 | FDC01505 | FDC02456 | FDC02514 |
| FDC00396 | FDC00400 | FDC01506 | FDC01559 | FDC02523 | FDC02526 |
| FDC00402 | FDC00403 | FDC01560 | FDC01613 | FDC02598 | FDC02603 |
| FDC00404 | FDC00433 | FDC01614 | FDC01667 | FDC02604 | FDC02609 |
| FDC00434 | FDC00434 | FDC01668 | FDC01670 | FDC02610 | FDC02614 |
| FDC00435 | FDC00435 | FDC01671 | FDC01677 | FDC02615 | FDC02619 |
| FDC00436 | FDC00446 | FDC01702 | FDC01706 | FDC02620 | FDC02621 |
| FDC00447 | FDC00553 | FDC01739 | FDC01741 | FDC02622 | FDC02624 |
| FDC00554 | FDC00557 | FDC01745 | FDC01746 | FDC02625 | FDC02640 |
| FDC00558 | FDC00558 | FDC01747 | FDC01748 | FDC02661 | FDC02672 |
| FDC00559 | FDC00584 | FDC01749 | FDC01751 | FDC02673 | FDC02744 |
| FDC00585 | FDC00608 | FDC01752 | FDC01757 | FDC02745 | FDC02770 |
| FDC00609 | FDC00674 | FDC01758 | FDC01760 | FDC02771 | FDC02807 |
| FDC00675 | FDC00707 | FDC01761 | FDC01779 | FDC02808 | FDC02809 |
| FDC00708 | FDC00721 | FDC01780 | FDC01789 | FDC02810 | FDC02810 |
| FDC00722 | FDC00732 | FDC01790 | FDC01801 | FDC02811 | FDC02882 |
| FDC00733 | FDC00840 | FDC01802 | FDC01809 | FDC02944 | FDC02945 |
| FDC00841 | FDC00870 | FDC01810 | FDC01830 | FDC02969 | FDC02994 |

| Start Range | End Range | Start Range | End Range | Start Range | End Range |
|---|---|---|---|---|---|
| FDC02995 | FDC02997 | FDC04159 | FDC04159 | FDC04706 | FDC04710 |
| FDC02998 | FDC02999 | FDC04160 | FDC04173 | FDC04712 | FDC04726 |
| FDC03001 | FDC03002 | FDC04174 | FDC04187 | FDC04799 | FDC04800 |
| FDC03010 | FDC03010 | FDC04188 | FDC04201 | FDC04836 | FDC04840 |
| FDC03040 | FDC03045 | FDC04202 | FDC04215 | FDC04841 | FDC04846 |
| FDC03047 | FDC03048 | FDC04216 | FDC04220 | FDC04847 | FDC04850 |
| FDC03049 | FDC03049 | FDC04250 | FDC04264 | FDC04913 | FDC04915 |
| FDC03050 | FDC03050 | FDC04272 | FDC04273 | FDC04932 | FDC04956 |
| FDC03051 | FDC03051 | FDC04274 | FDC04274 | FDC04957 | FDC04969 |
| FDC03052 | FDC03052 | FDC04275 | FDC04275 | FDC05055 | FDC05055 |
| FDC03053 | FDC03053 | FDC04276 | FDC04276 | FDC05056 | FDC05056 |
| FDC03061 | FDC03061 | FDC04277 | FDC04277 | FDC05057 | FDC05057 |
| FDC03080 | FDC03080 | FDC04278 | FDC04282 | FDC05065 | FDC05066 |
| FDC03081 | FDC03081 | FDC04283 | FDC04288 | FDC05081 | FDC05085 |
| FDC03101 | FDC03103 | FDC04289 | FDC04294 | FDC05101 | FDC05101 |
| FDC03127 | FDC03127 | FDC04296 | FDC04307 | FDC05117 | FDC05117 |
| FDC03128 | FDC03130 | FDC04308 | FDC04360 | FDC05122 | FDC05124 |
| FDC03131 | FDC03131 | FDC04364 | FDC04376 | FDC05125 | FDC05127 |
| FDC03132 | FDC03132 | FDC04377 | FDC04401 | FDC05128 | FDC05146 |
| FDC03133 | FDC03133 | FDC04404 | FDC04405 | FDC05147 | FDC05147 |
| FDC03134 | FDC03134 | FDC04407 | FDC04408 | FDC05185 | FDC05186 |
| FDC03135 | FDC03135 | FDC04410 | FDC04412 | FDC06037 | FDC06069 |
| FDC03136 | FDC03136 | FDC04414 | FDC04415 | FDC06070 | FDC06084 |
| FDC03138 | FDC03140 | FDC04416 | FDC04416 | FDC06085 | FDC06101 |
| FDC03141 | FDC03141 | FDC04417 | FDC04418 | FDC06102 | FDC06113 |
| FDC03144 | FDC03152 | FDC04449 | FDC04449 | FDC06172 | FDC06172 |
| FDC03156 | FDC03156 | FDC04450 | FDC04450 | FDC06173 | FDC06173 |
| FDC03161 | FDC03166 | FDC04451 | FDC04452 | FDC06178 | FDC06181 |
| FDC03170 | FDC03175 | FDC04453 | FDC04453 | FDC06299 | FDC06299 |
| FDC03176 | FDC03177 | FDC04455 | FDC04455 | FDC06301 | FDC06301 |
| FDC03199 | FDC03206 | FDC04478 | FDC04492 | FDC06302 | FDC06302 |
| FDC03277 | FDC03294 | FDC04504 | FDC04519 | FDC06304 | FDC06305 |
| FDC03343 | FDC03343 | FDC04546 | FDC04546 | FDC06306 | FDC06306 |
| FDC03410 | FDC03410 | FDC04547 | FDC04547 | FDC06334 | FDC06334 |
| FDC03411 | FDC03418 | FDC04576 | FDC04576 | FDC06335 | FDC06335 |
| FDC03419 | FDC03430 | FDC04582 | FDC04588 | FDC06336 | FDC06342 |
| FDC03431 | FDC03450 | FDC04593 | FDC04593 | FDC06343 | FDC06348 |
| FDC03618 | FDC03621 | FDC04600 | FDC04600 | FDC06349 | FDC06352 |
| FDC03622 | FDC03625 | FDC04601 | FDC04603 | FDC06371 | FDC06375 |
| FDC03627 | FDC03628 | FDC04619 | FDC04645 | FDC06428 | FDC06726 |
| FDC03805 | FDC04070 | FDC04653 | FDC04653 | FDC06727 | FDC06728 |
| FDC04072 | FDC04077 | FDC04654 | FDC04671 | FDC06729 | FDC06730 |
| FDC04078 | FDC04084 | FDC04672 | FDC04687 | FDC06729 | FDC06730 |
| FDC04085 | FDC04089 | FDC04688 | FDC04693 | FDC06731 | FDC06736 |
| FDC04091 | FDC04110 | FDC04698 | FDC04703 | FDC06737 | FDC06750 |
| FDC04111 | FDC04158 | FDC04704 | FDC04704 | FDC06751 | FDC06789 |

2

| Start Range | End Range | Start Range | End Range | Start Range | End Range |
|---|---|---|---|---|---|
| FDC06790 | FDC06808 | FDC08523 | FDC08523 | FDC12206 | FDC12242 |
| FDC06809 | FDC06815 | FDC08524 | FDC08524 | FDC12243 | FDC12248 |
| FDC06816 | FDC06859 | FDC08532 | FDC08533 | FDC12249 | FDC12249 |
| FDC06860 | FDC06874 | FDC08539 | FDC08541 | FDC12264 | FDC12274 |
| FDC06875 | FDC06942 | FDC08604 | FDC08604 | FDC12304 | FDC12304 |
| FDC06943 | FDC07015 | FDC08620 | FDC08621 | FDC12308 | FDC12312 |
| FDC07016 | FDC07032 | FDC08640 | FDC08641 | FDC12355 | FDC12355 |
| FDC07033 | FDC07033 | FDC08642 | FDC08644 | FDC12356 | FDC12356 |
| FDC07128 | FDC07141 | FDC08645 | FDC08645 | FDC12357 | FDC12357 |
| FDC07142 | FDC07158 | FDC08964 | FDC08964 | FDC12375 | FDC12383 |
| FDC07176 | FDC07181 | FDC08983 | FDC08984 | FDC12384 | FDC12449 |
| FDC07182 | FDC07187 | FDC08985 | FDC08986 | FDC12525 | FDC12526 |
| FDC07192 | FDC07201 | FDC08987 | FDC08989 | FDC12527 | FDC12527 |
| FDC07202 | FDC07215 | FDC08990 | FDC08990 | FDC12528 | FDC12528 |
| FDC07216 | FDC07228 | FDC08991 | FDC08991 | FDC12529 | FDC12532 |
| FDC07231 | FDC07239 | FDC08994 | FDC08999 | FDC12533 | FDC12566 |
| FDC07240 | FDC07243 | FDC09160 | FDC09167 | FDC12567 | FDC12567 |
| FDC07244 | FDC07246 | FDC09168 | FDC09175 | FDC12568 | FDC12568 |
| FDC07244 | FDC07250 | FDC09232 | FDC09234 | FDC12569 | FDC12569 |
| FDC07251 | FDC07252 | FDC09478 | FDC09478 | FDC12570 | FDC12570 |
| FDC07361 | FDC07361 | FDC09479 | FDC09485 | FDC12572 | FDC12572 |
| FDC07488 | FDC07488 | FDC09486 | FDC09498 | FDC12574 | FDC12575 |
| FDC07570 | FDC07570 | FDC09747 | FDC09750 | FDC12576 | FDC12577 |
| FDC07571 | FDC07571 | FDC10030 | FDC10033 | FDC12578 | FDC12579 |
| FDC07636 | FDC07637 | FDC11555 | FDC11609 | FDC12580 | FDC12581 |
| FDC07643 | FDC07645 | FDC11610 | FDC11610 | FDC12582 | FDC12583 |
| FDC07684 | FDC07684 | FDC11624 | FDC11697 | FDC12584 | FDC12586 |
| FDC07685 | FDC07686 | FDC11698 | FDC11698 | FDC12602 | FDC12891 |
| FDC07688 | FDC07688 | FDC11699 | FDC11704 | FDC12892 | FDC12906 |
| FDC07689 | FDC07689 | FDC11705 | FDC11706 | FDC12907 | FDC12913 |
| FDC07690 | FDC07691 | FDC11707 | FDC11754 | FDC12925 | FDC12928 |
| FDC07712 | FDC07712 | FDC11757 | FDC11760 | FDC12944 | FDC12944 |
| FDC07723 | FDC07724 | FDC11761 | FDC11763 | FDC12945 | FDC12945 |
| FDC07725 | FDC07726 | FDC11784 | FDC11843 | FDC12946 | FDC12946 |
| FDC07840 | FDC07843 | FDC11844 | FDC11844 | FDC12947 | FDC12947 |
| FDC08044 | FDC08047 | FDC11845 | FDC11912 | FDC12977 | FDC13010 |
| FDC08265 | FDC08280 | FDC11964 | FDC11964 | FDC13030 | FDC13030 |
| FDC08281 | FDC08286 | FDC11970 | FDC12062 | FDC13036 | FDC13037 |
| FDC08287 | FDC08291 | FDC12063 | FDC12064 | FDC13460 | FDC13460 |
| FDC08510 | FDC08511 | FDC12065 | FDC12067 | FDC13461 | FDC13461 |
| FDC08512 | FDC08517 | FDC12068 | FDC12069 | FDC13462 | FDC13462 |
| FDC08518 | FDC08518 | FDC12070 | FDC12071 | FDC13463 | FDC13463 |
| FDC08519 | FDC08519 | FDC12072 | FDC12072 | FDC13464 | FDC13464 |
| FDC08520 | FDC08520 | FDC12073 | FDC12075 | FDC13465 | FDC13465 |
| FDC08521 | FDC08521 | FDC12111 | FDC12197 | FDC13466 | FDC13467 |
| FDC08522 | FDC08522 | FDC12198 | FDC12205 | FDC13468 | FDC13468 |

| Start Range | End Range | Start Range | End Range | Start Range | End Range |
|---|---|---|---|---|---|
| FDC13470 | FDC13470 | FDC35670 | FDC35730 | FDC39612 | FDC39655 |
| FDC13471 | FDC13471 | FDC35731 | FDC35793 | FDC39656 | FDC39919 |
| FDC13472 | FDC13472 | FDC35800 | FDC35800 | FDC39920 | FDC39933 |
| FDC13473 | FDC13473 | FDC35801 | FDC35807 | FDC39934 | FDC39953 |
| FDC13474 | FDC13474 | FDC35810 | FDC35810 | FDC39954 | FDC40009 |
| FDC13508 | FDC13509 | FDC35811 | FDC35845 | FDC40010 | FDC40044 |
| FDC13510 | FDC13511 | FDC35846 | FDC35909 | FDC40045 | FDC40072 |
| FDC13580 | FDC13580 | FDC35910 | FDC35944 | FDC40073 | FDC40135 |
| FDC13581 | FDC13581 | FDC35945 | FDC35976 | FDC40136 | FDC40203 |
| FDC13582 | FDC13582 | FDC35977 | FDC36022 | FDC40204 | FDC40266 |
| FDC13583 | FDC13583 | FDC36023 | FDC36066 | FDC40267 | FDC40313 |
| FDC13584 | FDC13585 | FDC36067 | FDC36067 | FDC40323 | FDC40339 |
| FDC13586 | FDC13586 | FDC36346 | FDC36346 | FDC40347 | FDC40415 |
| FDC13587 | FDC13587 | FDC36347 | FDC36347 | FDC40416 | FDC40467 |
| FDC13603 | FDC13603 | FDC36398 | FDC36400 | FDC40468 | FDC40517 |
| FDC13608 | FDC13633 | FDC36401 | FDC36402 | FDC40518 | FDC40563 |
| FDC13644 | FDC13785 | FDC36403 | FDC36403 | FDC40564 | FDC40607 |
| FDC13810 | FDC13832 | FDC36440 | FDC36459 | FDC40608 | FDC40625 |
| FDC13920 | FDC13920 | FDC36460 | FDC36479 | FDC40626 | FDC40629 |
| FDC13921 | FDC13921 | FDC36480 | FDC36497 | FDC40630 | FDC40630 |
| FDC13922 | FDC13923 | FDC36498 | FDC36520 | FDC40631 | FDC40631 |
| FDC13924 | FDC13925 | FDC36521 | FDC36543 | FDC40639 | FDC40640 |
| FDC13926 | FDC13927 | FDC36544 | FDC36562 | FDC40641 | FDC40642 |
| FDC13928 | FDC13928 | FDC36563 | FDC36583 | FDC40643 | FDC40647 |
| FDC13929 | FDC13929 | FDC36584 | FDC36602 | FDC40648 | FDC40653 |
| FDC13930 | FDC13934 | FDC36603 | FDC36621 | FDC40654 | FDC40660 |
| FDC13958 | FDC13963 | FDC36622 | FDC36640 | FDC40661 | FDC40665 |
| FDC14133 | FDC14136 | FDC36641 | FDC36660 | FDC40666 | FDC40671 |
| FDC14375 | FDC14375 | FDC36692 | FDC36721 | FDC40672 | FDC40687 |
| FDC14376 | FDC14389 | FDC36722 | FDC36758 | FDC40688 | FDC40700 |
| FDC14391 | FDC14413 | FDC36759 | FDC37114 | FDC40701 | FDC40704 |
| FDC14414 | FDC14433 | FDC37115 | FDC37478 | FDC40705 | FDC40709 |
| FDC14435 | FDC14450 | FDC37481 | FDC37844 | FDC40710 | FDC40714 |
| FDC14451 | FDC14789 | FDC37847 | FDC38210 | FDC40715 | FDC40720 |
| FDC14790 | FDC14965 | FDC38211 | FDC38574 | FDC40721 | FDC40726 |
| FDC14971 | FDC14995 | FDC38211 | FDC38574 | FDC40727 | FDC40733 |
| FDC15596 | FDC15611 | FDC38575 | FDC38930 | FDC40734 | FDC40738 |
| FDC34431 | FDC34572 | FDC38931 | FDC39286 | FDC40739 | FDC40744 |
| FDC34573 | FDC34733 | FDC39312 | FDC39313 | FDC40745 | FDC40776 |
| FDC35463 | FDC35482 | FDC39327 | FDC39363 | FDC40777 | FDC40792 |
| FDC35516 | FDC35561 | FDC39364 | FDC39382 | FDC40793 | FDC40797 |
| FDC35562 | FDC35607 | FDC39392 | FDC39403 | FDC40798 | FDC40801 |
| FDC35608 | FDC35611 | FDC39404 | FDC39405 | FDC40802 | FDC40805 |
| FDC35612 | FDC35626 | FDC39406 | FDC39458 | FDC40806 | FDC40809 |
| FDC35627 | FDC35627 | FDC39459 | FDC39506 | FDC40810 | FDC40814 |
| FDC35628 | FDC35669 | FDC39512 | FDC39611 | FDC40815 | FDC40819 |

4

| Start Range | End Range | Start Range | End Range | Start Range | End Range |
|---|---|---|---|---|---|
| FDC40820 | FDC40820 | | | | |
| FDC40821 | FDC40834 | | | | |
| FDC40835 | FDC40862 | | | | |
| FDC40863 | FDC40876 | | | | |
| FDC40877 | FDC40880 | | | | |
| FDC40881 | FDC40884 | | | | |
| FDC40885 | FDC40895 | | | | |
| FDC40896 | FDC40897 | | | | |
| FDC40898 | FDC40919 | | | | |
| FDC40920 | FDC40925 | | | | |
| FDC40926 | FDC40950 | | | | |
| FDC40951 | FDC40963 | | | | |
| FDC40964 | FDC40974 | | | | |

# EXHIBIT  7

# EXHIBIT   REDACTED
# IN   ITS   ENTIRETY

# EXHIBIT   8

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# EXHIBIT 9

# EXHIBIT REDACTED IN ITS ENTIRETY

# EXHIBIT   10

# EXHIBIT REDACTED IN ITS ENTIRETY

# EXHIBIT   11

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# EXHIBIT   12

# ACH Volume Grows 20.7 Percent in 2nd Quarter 2004

The Automated Clearing House Network grew by almost 21 percent in the 2nd Quarter of 2004 compared to a year ago, according to NACHA statistics. More than 2.23 billion transactions were conducted during the quarter, worth more than $5.46 trillion. These figures represent growth rates of 20.7% and 5.4%, respectively, over the same quarter of 2003. There were 1.13 billion debits and 1.096 billion credits in the 2nd Quarter, for a total of 2.231 billion. The statistics include commercial inter-bank and government transactions, but not "On-Us" transactions.

## 2nd Quarter 2004 ACH Network Transactions (does not include on-us volumes)

|  | 2nd Q 2004 | 1st Q 2004 | % change | 2nd Q 2003 | % change |
|---|---|---|---|---|---|
| ARC | 208,819,904 | 142,357,596 | 46.69% | 23,432,889 | 791.14% |
| CCD Debits | 103,889,488 | 98,910,606 | 5.03% | 93,485,706 | 11.13% |
| CCD Credits | 230,458,089 | 215,977,867 | 6.70% | 210,208,963 | 9.63% |
| CCD + | 32,322,896 | 30,607,225 | 5.61% | 27,616,984 | 17.04% |
| CIE | 21,447,813 | 20,093,159 | 6.74% | 19,010,866 | 12.82% |
| CTX | 7,223,244 | 6,781,466 | 6.51% | 5,991,474 | 20.56% |
| CTX Addenda | 112,559,061 | 103,907,410 | 8.33% | 91,875,681 | 22.51% |
| POP | 41,738,747 | 39,426,614 | 5.86% | 36,206,195 | 15.28% |
| PPD Debits | 538,922,933 | 527,616,908 | 2.14% | 494,411,995 | 9.00% |
| PPD Credits | 832,963,311 | 853,278,853 | -2.38% | 786,413,379 | 5.92% |
| RCK | 5,780,292 | 5,858,296 | -1.33% | 5,419,962 | 6.65% |
| TEL | 45,698,467 | 43,968,298 | 3.94% | 26,454,489 | 72.74% |
| WEB | 170,482,346 | 163,770,786 | 4.10% | 122,757,465 | 38.88% |
| Total Network | 2,230,789,362 | 2,140,838,360 | 4.20% | 1,847,946,805 | 20.72% |

Source: NACHA - The Electronic Payments Association
© 2004 NACHA - The Electronic Payments Association





ACH Dollar Volume





ACH Transaction Volume – 2nd Quarter 2004

236,321,524
(10.6%)



■ Commercial
■ Government

# Commercial ACH Volume – 2nd Quarter 2004



873,268,349
(43.8%)

1,121,199,489
(56.2%)



■ Debits
■ Credits

# ACH Volume Grows 21.3 Percent in 4th Quarter 2004

The Automated Clearing House Network grew by over 21 percent in the 4th Quarter of 2004 compared to a year ago, according to NACHA statistics. More than 2.44 billion transactions were conducted during the quarter, worth more than $5.65 trillion. These figures represent growth rates of 21.3% and 8.9%, respectively, over the same quarter of 2003. There were 1.32 billion debits and 1.012 billion credits in the 4th Quarter, for a total of 2.442 billion. The statistics include commercial inter-bank and government transactions, but not "On-Us" transactions,

| 4th Quarter 2004 ACH Network Transactions (does not include on-us volumes) | | | | | |
|---|---|---|---|---|---|
| | 4th Q 2004 | 3rd Q 2004 | % change | 4th Q 2003 | % change |
| ARC | 324,275,474 | 266,232,549 | 21.80% | 73,891,651 | 338.85% |
| CCD Debits | 109,231,766 | 106,497,062 | 2.57% | 98,376,069 | 11.03% |
| CCD Credits | 241,264,825 | 235,613,046 | 2.40% | 216,955,575 | 11.20% |
| CCD + | 35,942,609 | 33,203,844 | 8.25% | 29,254,741 | 22.86% |
| CIE | 23,037,116 | 22,340,765 | 3.12% | 19,238,353 | 19.75% |
| CTX | 7,840,902 | 7,557,926 | 3.74% | 6,496,779 | 20.69% |
| CTX Addenda | 126,561,913 | 117,648,946 | 7.58% | 100,674,278 | 25.71% |
| POP | 41,301,083 | 39,831,083 | 3.69% | 41,517,512 | -0.52% |
| PPD Debits | 563,556,673 | 556,880,624 | 1.24% | 515,190,527 | 9.39% |
| PPD Credits | 848,362,262 | 822,257,537 | 3.17% | 822,578,407 | 3.13% |
| RCK | 5,961,742 | 6,261,765 | -4.79% | 6,006,194 | -0.74% |
| TEL | 51,358,340 | 46,672,559 | 10.04% | 40,847,333 | 25.73% |
| WEB | 202,391,820 | 178,327,149 | 13.49% | 148,430,607 | 36.35% |
| Total Network | 2,442,293,286 | 2,311,381,453 | 5.66% | 2,012,809,947 | 21.34% |

Source: NACHA - The Electronic Payments Association
© 2004 NACHA - The Electronic Payments Association



ACH Transaction Volume





ACH Transaction Volume – 4th Quarter 2004

230,960,994
(9.5%)







Commercial ACH Volume – 4th Quarter 2004

1,304,821,680
(59.0%)

906,510,612
(41.0%)

■ Debits
■ Credits

# EXHIBIT   13

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# EXHIBIT   14

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# EXHIBIT  15

7/11/2005 McEntee, Elliott

1          IN THE DISTRICT COURT

2          FOR THE DISTRICT OF DELAWARE

3     - - - - - - - - - - - - - - x

4     LML PATENT CORP.,                    :

5                    Plaintiff,            :

6            vs.                           :    Civil Action

7     TELECHECK SERVICES, INC.,            :    No. 04-858-SLR

8     ELECTRONIC CLEARING HOUSE, INC. :

9     XPRESSCHEX, INC., and                :

10    NOVA INFORMATION SYSTEMS, INC.    :

11                    Defendants.          :    PAGES 1 - 275

12    - - - - - - - - - - - - - - x

13

14    Videotaped deposition of ELLIOTT McENTEE, held at

15    the offices of Pillsbury, Winthrop, Shaw, Pittman,

16    1650 Tysons Boulevard, McLean, Virginia,

17    commencing at 10:20 a.m., Monday, July 11, 2005,

18    before Elizabeth Mingione, Notary Public.

19

20

21

22

23

24

25

1

1      that the ACH Network supports is probably the most

2      successful model from a volume standpoint.

3              Another model is where the company,

4      which I'll call the payor, the party that's

5      actually writing the check, can designate that

6      their check is eligible for conversion.  In the

7      NACHA model, it's the payee.  It's the party that

8      the check is written to that makes a decision to

9      convert that check to an ACH transaction.

10             So those are two models on who makes

11     the decision to convert the check.  There's

12     another one that's -- is being developed as a

13     result of legislation passed by Congress called

14     Check 21 Act that allows a bank to receive a paper

15     check and create an image of the paper check,

16     transmit that image to another party who could

17     then take that image, convert it back to a piece

18     of paper or substitute check and present that to

19     the paying bank for payment.

20             So those are the basic three different

21     models.  And then within those models, there's

22     lots of variations.

23     Q.    So these are three different models of

24     electronic check conversion?

25     A.    Yes, where someplace in the process the

1    paper check or what we refer to is a source

2    document.  In the ACH Network, or in our rules,

3    quite a few of the applications do not call a

4    check a check.  Because when you call something a

5    check, you could bring into play the Uniform

6    Commercial Code.  We call it a source of

7    information, not a check.

8         Q.    So what the customer gives to the

9    merchant isn't a check in the -- in the fact that

10   it's not a negotiated -- it's a negotiable

11   instrument?

12        A.    That's correct.

13              MR. MARSDEN:  Objection to the form.

14   Vague.

15        A.    Yeah.  That's -- that's correct.  It's

16   not -- I'm sorry.  I didn't hear the other

17   gentleman.

18              MR. MARSDEN:  I'm sorry.  If I do

19   object, or anybody objects, for that matter, if

20   you can wait to answer after the objection.

21              THE WITNESS:  Okay.  I'm sorry.

22              MR. MARSDEN:  No, I --

23              THE WITNESS:  I didn't hear what you

24   said.  I just heard you say something, I didn't

25   know what the words were.

1          MR. MARSDEN:  I'm sorry.  It came

2     quickly.  But my objection was to the form of the

3     question and that the question was vague.

4          MR. DUNN:  And if you understand the

5     question, you can go ahead and answer.

6          THE WITNESS:  Okay.

7          BY MS. FREY:

8     Q.    So just to make it clear on the record,

9     I was asking so the check that's presented in the

10    ACH model is not considered a negotiable

11    instrument?

12    A.    I don't use the word "presented"

13    because use presentment on the side of it being

14    presented to the bank that's paying the

15    transaction, whether it's a check or an ACH

16    transaction.  It would be the piece of paper that

17    the consumer gives to the retailer at the point of

18    sale, or mails in to the -- to the biller in

19    paying a bill.

20          We view that as a document that

21    provides information to the retailer or the biller

22    to create an ACH transaction.

23    Q.    Okay.  So the piece of paper given to

24    the clerk at the point of sale is not considered a

25    negotiable instrument?

**7/11/2005 McEntee, Elliott**

1    MR. MARSDEN:  Same objection.

2    A.    That's correct.

3    Q.    So besides electronic check conversion,

4    what are alternatives, if you understand the

5    question?

6    A.    Alternatives to?

7    Q.    Alternatives to electronic.  So if you

8    are not going to electronically convert the check,

9    are there any other alternatives?

10   A.    Okay.  If the consumer writes a check

11   and --

12   Q.    Right.

13   A.    -- gives it to the retail and how is it

14   collected in the traditional way?

15   Q.    Yeah.

16   A.    Yeah.  The consumer would write a

17   check.  And we'll talk about a retailer, because

18   there's lots of different versions of how checks

19   are processed, but the retailer would typically

20   deposit the check with their financial

21   institution.

22         The paper check could take several

23   different paths.  It could be sent directly from

24   the bank in which it was deposited in, directly to

25   the bank in which the check was drawn on.

1    represent the physical item for collection?

2         A.    Because you wouldn't want the

3    transaction processed twice both in electronic

4    form and in paper form.  So when a bank is

5    originating the ACH transaction, they are

6    warranting to us that they are not attempting to

7    collect that same item through the paper-based

8    system.

9         Q.    So the physical check can't be used

10   once it's been converted?

11        A.    The physical check, now you are talking

12   about the represented check or the point-of-sale?

13   I'm not too sure as to what rule you are talking

14   about.

15        Q.    Well, just looking what this says, it

16   will not represent the physical item, so --

17        A.    Okay.  Then you are talking about -- in

18   this case you are talking about a check that's

19   been returned unpaid.  And if the attempt is made

20   to collect it through the ACH's network and that

21   collection is successful, then they are warranting

22   that they can't present the paper check.

23             If I remember correctly, it does not

24   state that they could not use the paper check

25   again, if the payment was not successfully

# EXHIBIT   16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LML PATENT CORP.,

Plaintiff,

v.

TELECHECK SERVICES, INC.,
ELECTRONIC CLEARING HOUSE, INC.,
XPRESSCHEX, INC. and NOVA
INFORMATION SYSTEMS, INC.,

Defendants.

C.A. 04-858 (SLR)

## JOINT PROPOSED CLAIM CONSTRUCTION STATEMENT

Pursuant to the Court's Rule 16 Scheduling Order in this matter, the Parties hereby submit the following claim charts to present their respective, proposed constructions of disputed claim terms and their proposed constructions of agreed claim terms in the patent-in-suit, namely, U.S. Patent No. 5,484,988 ("the '988 patent").

## Proposed Constructions of Disputed Claim Terms

| Claim Term / Phrase | LML's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| any bank check (claims 1, 8) | Any regular check used to draw funds from a normal bank or credit union checking account | any type of check drawn on a financial institution |
| any consumer bank check (claim 9) | Any regular check used to draw funds from a normal bank or credit union consumer checking account | same meaning as the phrase "any bank check" set forth above, with the added limitation that the check be "drawn against a consumer bank account" |
| any (claims 1, 8, 9) | LML believes that this term should not be separately construed from the entire element in which it appears in the claims, namely the "any bank check" or "any consumer bank check" language construed below. In any event, this plain English term needs no construction. | one or some indiscriminately of whatever kind |
| consumer bank account information (claims 1, 2, 3, 8, 9) | Information relating to a consumer's bank account including the MICR line (magnetic ink character recognition line) | only the ABA/transit routing number and bank account number |
| without using the bank check as a negotiable instrument (claim 1) | Where the paper check is used as a source of information, and is not accepted or processed | the bank check, at no time, takes on the status of a negotiable instrument |
| without using the check as a negotiable instrument (claim 8) | Where the paper check is used as a source of information, and is not accepted or processed | the check, at no time, takes on the status of a negotiable instrument |

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| without using a bank check as a negotiable instrument (claim 9) | Where the paper check is used as a source of information, and is not accepted or processed | the check, at no time, takes on the status of a negotiable instrument |
| subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations (claim 8) | Subsequently transmitting the information relating to the transaction to a bank for subsequent automated clearing house operations | electronically communicating with an automated clearing house for transferring funds electronically based upon the consumer bank account information obtained from any bank check presented at the point-of-sale |
| enabling automated clearing house communication for transferring funds (claims 1, 9) | Enabling communication with an automated clearing house for electronically transferring funds | electronically communicating with an automated clearing house for transferring funds electronically based upon the consumer bank account information obtained from any bank check presented at the point-of-sale |
| for the sole purpose (claims 2, 8 and 9) | For the only purpose | Defendants contend that this term needs no construction. |
| adapted to receive consumer bank account information from any bank check (claim 1) | adapted to receive consumer bank account information from any bank check | adapted to read consumer bank account information directly from any bank check |

2

| Claim Language | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **means for reading magnetic ink character recognition numbers appearing on a consumer check** (claim 2) | This limitation should be construed pursuant to 35 U.S.C. Section 112(6).<br><br>The recited function is "reading magnetic ink character recognition numbers appearing on a consumer check."<br><br>The structures in the '988 patent that perform that function is any mechanism such as a MICR check reader, optical character recognition ("OCR") equipment, a keyboard for manual entry, or equivalent. | This limitation should be construed pursuant to 35 U.S.C. Section 112(6).<br><br>The recited function is "reading magnetic ink character recognition numbers appearing on a consumer check."<br><br>The structures described in the '988 patent that perform that function are a MICR reader and optical character recognition equipment. |
| **reading means for reading magnetic ink character recognition numbers on any consumer bank check** (claim 9) | This limitation should be construed pursuant to 35 U.S.C. Section 112(6).<br><br>The recited function is "reading magnetic ink character recognition numbers appearing on a consumer check."<br><br>The structures in the '988 patent that perform that function is any mechanism such as a MICR check reader, optical character recognition ("OCR") equipment, a keyboard for manual entry, or equivalent. | This limitation should be construed pursuant to 35 U.S.C. Section 112(6).<br><br>The recited function is "reading magnetic ink character recognition numbers on any consumer bank check."<br><br>The structures described in the '988 patent that perform that function are a MICR reader and optical character recognition equipment. |
| **verifying that account numbers were accurately read at the point of sale** (claim 8) | Verifying that the account numbers from the check were read accurately at the point of sale terminal | visually confirming that account numbers were accurately read by reference to the source document |

3

## Proposed Constructions of Agreed Claim Terms

| CLAIM TERM/PHRASE | PROPOSED CONSTRUCTION[1] |
|---|---|
| consumer (claim 9) | person, business or corporation |
| second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using the bank check as a negotiable instrument (claim 1);<br><br>second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using a bank check as a negotiable instrument (claim 9) | This function is written in means-plus-function format pursuant to 35 U.S.C. 112(6).<br><br>The recited function of this limitation is enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further enabling automated clearing house communication for transferring funds without using the [a] bank check as a negotiable instrument.<br><br>The structures disclosed in the patent for performing the recited function of this limitation are a modem, network interface, enhanced radio transmission interface, satellite communication interface or equivalent. |
| automated clearing house (claims 1, 8, 9) | an automated clearing house including, but not limited to, the national U.S. clearing house sometimes referred to as the "ACH" |

[1] While the parties agree to the recited function of this claim element pursuant to 35 U.S.C. 112(6), the parties dispute the meaning of limitations within that function, as set forth in the Parties' Proposed Construction of Disputed Claim Terms and the parties' briefs.

4

DATED: October 7, 2005

/s/ Mary B. Matterer
Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS
& WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

Counsel for Plaintiff
LML Patent Corp.


/s/ Timothy Devlin
William J. Marsden, Jr. (I.D. No. 2247)
Timothy Devlin (I.D. No. 4241)
Sean Hayes (I.D. No. 4413)
FISH & RICHARDSON P.C.
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
302.652.5070
marsden@fr.com
hayes@fr.com

Counsel for Defendant
TeleCheck Services, Inc.


/s/ Francis DiGiovanni
Francis DiGiovanni (I.D. No. 3189)
CONNOLLY BOVE LODGE & HUTZ
LLP
The Nemours Building
1007 N. Orange Street
Wilmington, Delaware 19801
302.658.9141
fdigiovanni@cblh.com

Counsel for Defendants
Electronic Clearing House, Inc.
and Xpresschex, Inc.


/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (I.D. No. 922)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
302.429.4208
rkirk@bayardfirm.com

Counsel for Defendant
NOVA Information Systems, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 7, 2005, I electronically filed a JOINT PROPOSED
CLAIM CONSTRUCTION STATEMENT with the Clerk of Court using CM/ECF which
will send notification of such filing(s) to the following:

Richard K. Herrmann
Mary B. Matterer, Esq.
Morris James Hitchens & Williams
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801-4226

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19899

Collins J. Seitz, Jr., Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801

I hereby certify that on October 7, 2005, I have sent by Electronic mail, the

document(s) to the following non-registered participants:

Robert Jacobs, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Russell E. Levine, Esq.
Kirkland & Ellis LLP
200 E. Randolph Dr.
Chicago, IL 60601

Mark C. Scarsi, Esq.
O'Melveny & Myers LLP
400 S Hope Street
Los Angeles, CA 90071

/s/ Timothy Devlin
Timothy Devlin

6

# EXHIBIT   17

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# EXHIBIT  18

# Hot off the Press

### N E W S   F R O M   P U B L I C   R E L A T I O N S

*The following press release was issued on December 8, 1999*

## TELECHECK REACHES BILLION DOLLAR MARK WITH ELECTRONIC CHECK ACCEPTANCE SERVICE

HOUSTON, December 8, 1999 – TeleCheck Services, Inc., the world's leading check acceptance company and a subsidiary of Atlanta-based First Data Corp. (NYSE: FDC), today announced that it has settled one billion dollars of electronic transactions since the nationwide introduction of the TeleCheck® Electronic Check Acceptance^SM (ECA®) service last year. TeleCheck has electronically processed over 13 million transactions for their ECA® merchant base, which has grown almost 280 percent in the past year.

The TeleCheck® Electronic Check Acceptance^SM (ECA®) service converts and processes a customer's paper check as an electronic item at the point of purchase in a process that is similar to a credit card transaction. When making a purchase, the consumer presents a completed paper check as usual. Then, TeleCheck converts the paper check into an electronic item through the new Eclipse^TM integrated payment terminal that reads the banking information off the bottom of the check.

The consumer then simply signs a printed receipt authorizing the electronic transaction and the cancelled paper check, along with a copy of the authorization slip, is returned to the consumer. A complete description of the transaction is included in the check writer's bank statement for reconciliation purposes, and consumers retain the same rights as today in disputing any fraudulent items posted to their account. In addition, since the check writer keeps the cancelled physical check, the risk of name, address and other personal information being used fraudulently is substantially reduced.

"Having processed over a billion dollars of electronic transactions in 18 months indicates that ECA® is reaching critical points in market acceptance," said Steve Shaper, chief executive officer of TeleCheck. "Consumers like it because they continue to benefit from the float of their paper check and the merchant benefits from faster processing and reduced paperwork since funds are automatically deposited into their account, reducing time-consuming trips to the bank."

– more –



TeleCheck Reaches Billion Dollar Mark / Page 2

The TeleCheck® ECA® process moves transactions through the Automated Clearing House (ACH) network. The transactions follow interim rules instituted in September 1999 by NACHA – The Electronic Payments Association – for paper checks converted to electronic items at the point of sale. A final NACHA rule, called Point of Purchase or POP, will take effect in September 2000. TeleCheck was actively involved in the development of the rules, serving as co-sponsor during the rules process.

The Eclipse™ terminal is capable of processing checks, credit cards and debit cards and is the first integrated payment terminal to securely, effectively and economically read and image all pre-printed information off the face of a check. Eclipse reads the check MICR line (the bank numbers in magnetic ink along the bottom of the check) both magnetically and optically, virtually eliminating errors in reading the MICR number.

TeleCheck is the world's leading provider of paper and electronic check services, helping more than 210,000 retail, financial institution, grocery and other industry clients to increase their profitability, reduce risk and streamline operations. TeleCheck's check acceptance and electronic commerce solutions help businesses safely and efficiently accept payment at the point of sale, by telephone, over the Internet, and through recurring ACH payments. TeleCheck services are offered through a sales and service network in more than 90 cities in the United States and in Canada, Puerto Rico, Australia and New Zealand. In 1998, TeleCheck authorized more than $112 billion in checks, representing 2.2 billion transactions. For more information about TeleCheck, visit the Internet site at www.telecheck.com.

Atlanta-based First Data Corp. (NYSE: FDC) helps move the world's money. As the leader in electronic commerce and payment services, First Data serves more than two million merchant locations, 1,400 card issuers and millions of consumers, making it easier, faster and more secure for people and businesses to buy goods and services. For more information, please visit the company's web site at www.firstdatacorp.com.

### #

FDC08533

# EXHIBIT   19

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# EXHIBIT   20

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# EXHIBIT   21

# EXHIBIT REDACTED IN ITS ENTIRETY

# EXHIBIT   22

# EXHIBIT   REDACTED
# IN   ITS   ENTIRETY

# EXHIBIT   23

# EXHIBIT   REDACTED
# IN   ITS   ENTIRETY

# EXHIBIT   24

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# EXHIBIT   25

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# EXHIBIT  26

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# EXHIBIT   27

# EXHIBIT NOT USED

# EXHIBIT   28

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# EXHIBIT   29

# EXHIBIT REDACTED
# IN ITS ENTIRETY

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of November, 2005, I electronically filed the foregoing document, **PUBLIC VERSION OF DECLARATION OF LESLEY G. SMITH IN SUPPORT OF LML'S MEMORANDUM IN OPPOSITION TO TELECHECK'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Collins J. Seitz, Jr., Esq.
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19801

William J. Marsden, Jr., Esq.
Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 22nd day of November, 2005, the foregoing document was served via email on the following non-registered participants:

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Mark C. Scarsi, Esq.
Vision L. Winter, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

*/s/ Mary B. Matterer*
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS
& WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com

*Counsel for Plaintiff LML PATENT CORP.*