# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LML PATENT CORP.     )
            )
     Plaintiff,   )  Civil Action No.: 04-858-SLR
  vs.         )
            )
TELECHECK SERVICES, INC.  )
ELECTRONIC CLEARING HOUSE, INC., )
XPRESSCHEX, INC., AND   )
NOVA INFORMATION SYSTEMS, INC. )
            )
     Defendants.  )
            )

## LML'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT NO. 4: FOR A RULING THAT CLAIMS 1, 2, 4-6, 9-11, 14, 16 AND 18 OF THE '988 PATENT ARE NOT ANTICIPATED

Dated: November 23, 2005

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
Edward K. Runyan
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Counsel for LML Patent Corp.*

## TABLE OF CONTENTS

I.   ARGUMENT IN REPLY ...................................................................................1

    A.   Defendants' Reliance On Attorney Argument And Inadmissible Hearsay Is Insufficient To Raise A Genuine Issue of Material Fact.............................................................................1

    B.   The '682 Patent Does Not Anticipate the Asserted Claims of the '988 Patent .....................................................................3

        1.   *The '682 patent does not disclose a "central computer system" as required by claims 1, 2, 4-6, 9-11, 14, 16 and 18* ...........................................4

        2.   *The '682 patent does not disclose a "second communication means enabling said central computer system to communicate with external databases" as required by claims 1, 2, 4-6, 9-11 and 14*............................................................5

        3.   *The '682 patent does not disclose a "first communication means integral to a point of sale terminal" as required by claims 1, 2, 4-6, 9-11, and 14*...........................................................................7

        4.   *The '682 patent does not disclose a "resident third party database wherein consumer banking account status information is stored" as required by claims 5 and 11*...................................................................7

        5.   *The '682 patent does not disclose a "system subscriber database comprising information regarding merchants and service providers that are authorized to use the checkwriting point of sale system" as required by claim 6*..............................9

    C.   The '607 Patent Does Not Anticipate the Asserted Claims of the '988 Patent ...................................................................10

        1.   *Defendants' untimely contentions should be stricken*....................11

        2.   *The '607 patent does not disclose a "second communication means enabling said central computer system to communicate with external databases" as required by claims 1, 2, 4, 9-10 and 14*............................................................................12

3.     *The '607 patent does not disclose a "central computer system" as required by claims 1, 2, 4, 9-10, 14 and 18*..................................................................14

D.     The '714 Patent Does Not Anticipate the Asserted Claims of the '988 Patent....................................................................15

1.     *The '714 patent does not disclose a "central computer system" as required by claims 1, 2, 4 and 9-10* ............................................................................16

2.     *The '714 patent does not disclose a "second communication means enabling said central computer system to communicate with external databases" as required by claims 1, 2, 4, and 9-10* ......................17

II.     CONCLUSION..................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*ABB Automation Inc. v. Schlumberger Resource Mgmt. Svcs, Inc.,*
  254 F. Supp. 2d 479 (D. Del. 2002)........................................................ 1

*Adickes v. S.H. Kress & Co.,*
  398 U.S. 144 (1970)........................................................................... 2

*Arthrocare Corp. v. Smith & Nephew, Inc.,*
  2003 WL 1856436 (D. Del. 2003)......................................................... 1

*Biotec Biologische Nat. GmbH & Co. KG v. Biocorp, Inc.,*
  249 F.3d 1341, 1353 (Fed. Cir. 2001) ................................................... 1

*Fowle v. C & C Cola,*
  868 F.2d 59 (3d Cir. 1989)................................................................... 2

*Hewlett-Packard Co. v. Mustek Systems, Inc.,*
  340 F.3d 1314 (Fed. Cir. 2003)............................................................ 14

*Metabolite Labs, Inc. v. Lab. Corp. of Am. Holdings,*
  370 F.3d 1354, 1358 (Fed. Cir. 2004) ................................................... 16

*N.I. Petroleum Ventures Corp. v. Gles, Inc.,*
  333 F. Supp. 2d 251 (D. Del. 2004)...................................................... 3

*Oxford Gene Technology Ltd. v. Mergen Ltd.,*
  345 F.Supp.2d 444 (D. Del. 2004)........................................................ 12

*Thorn EMI North America v. Intel Corp.,*
  936 F. Supp. 1186 (D. Del. 1996)......................................................... 1

## I.    ARGUMENT IN REPLY

LML respectfully submits this reply in support of its Motion for Summary Judgment No. 4: For a Ruling That Claims 1, 2, 4-6, 9-11, 14, 16 and 18 of the '988 Patent Are Not Anticipated. Defendants' response to LML's motion is most noteworthy for what it is missing -- namely evidence. Indeed, Defendants' arguments are largely based on attorney argument and conclusory statement, not evidence. Moreover, Defendants fail to raise a genuine issue of material fact that the asserted claims are not anticipated -- numerous elements of the asserted claims are simply not disclosed in the '682, 607 and 714 patents. Thus, LML's motion for summary judgment of no anticipation should be granted.

### A.    Defendants' Reliance On Attorney Argument And Inadmissible Hearsay Is Insufficient To Raise A Genuine Issue of Material Fact

"Summary judgment is appropriate when the *evidence admissible at trial* fails to demonstrate a genuine issue of material fact." *Thorn EMI North America v. Intel Corp.*, 936 F. Supp. 1186, 1199 (D. Del. 1996) (emphasis added). "For purposes of summary judgment, evidence is deposition testimony, declarations, admissions, answers to interrogatories, etc." *Arthrocare Corp. v. Smith & Nephew, Inc.,* 2003 WL 1856436 at *5 (D. Del. 2003) (Robinson, C.J.). To raise a genuine issue of material fact, Defendants must establish "an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in *an affidavit* by a knowledgeable affiant. Mere denials or conclusory statements are insufficient." *ABB Automation Inc. v. Schlumberger Resource Mgmt. Svcs, Inc.*, 254 F.Supp.2d 479, 482 (D. Del. 2002) (emphasis added); *Biotec Biologische Nat. GmbH & Co. KG v. Biocorp, Inc.,* 249 F.3d

1341, 1353 (Fed. Cir. 2001) ("[i]t is well established that conclusory statements of counsel or a witness that a patent is invalid do not raise a genuine issue of fact.")

Here, Defendants' arguments are largely based on attorney argument and conjecture as opposed to evidence. Indeed, Defendants do not even provide an affidavit or declaration from any expert to support their positions. Instead, Defendants only attach three documents purporting to be expert reports (and supplemental expert reports) of their alleged expert David P. Kurrasch to their response.[1] But, it is well settled that where the substance of an expert report is not sworn to by an alleged expert, "the purported expert's report is not competent to be considered on a motion for summary judgment." *Fowle v. C & C Cola*, 868 F.2d 59, 67 (3d. Cir. 1989) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17 (1970)). Accordingly, the unsworn purported expert reports (Exs. N, O, and P to Def. Opp.) and the attorney conclusions regarding what the "anticipated testimony" of Defendants' "expert" will show should be disregarded by this Court.[2] *Id.* (holding that the case would be decided "without reference to the unsworn expert's report.").

Without Mr. Kurrasch's alleged reports,[3] Defendants have little "evidence" outside attorney argument and conjecture to support their contentions. For instance,

---

[1] Defendants attach these reports as Exs. N, O, and P to their response. LML also objects to Exs. E and F of Defendants' Response as inadmissible hearsay.

[2] Defendants also refer to "anticipated testimony" of Mr. Kurrasch throughout their response, but again, this "anticipated testimony" is not evidence, nor should it be considered.

[3] Regardless, Mr. Kurrasch's report still provides inadequate support for Defendants' arguments of anticipation. As explained below, the opinions in Mr. Kurrasch's report are based on conjecture and illogical leaps that simply have no justification.

Defendants attach three "invalidity claim charts" to their brief, which are riddled with attorney argument and no actual "evidence." (Exs. C, K, & L to Def. Opp.). Defendants do not identify the source of these documents or their authors (in fact, Defendants provide no authentication for these charts at all) and nothing on the face of the documents identifies any author or authenticity. Accordingly, these "claim charts" are nothing but hearsay or, at best, attorney argument. *See, e.g., N.I. Petroleum Ventures Corp. v. Gles, Inc.*, 333 F.Supp.2d 251, 262 (D. Del. 2004) (Robinson, C.J.) (Document based "at least in part upon statements by individuals who did not testify, have not submitted sworn affidavits or have not been deposed [is] hearsay and is not admissible").[4] Accordingly, these alleged "claim charts" should be stricken.

## B.     The '682 Patent Does Not Anticipate the Asserted Claims of the '988 Patent

Defendants failed to raise any genuine issue of material fact that the '682 patent *does not* teach at least (1) "a central computer system" as required by claims 1, 2, 4-6, 9-11, 14, 16 and 18;  (2) a "first communication means integral to a point of sale terminal" as required by claims 1, 2, 4-6, 9-11, and 14; (3) "a second communication means enabling said central computer system to communicate with external databases" as required by claims 1, 2, 4-6, 9-11 and 14; (4) "a resident third party database" as required by claims 5 and 11; or (5) "a system subscriber database" as required by claim 6.  As a result, LML is entitled to summary judgment of no anticipation by the '682 patent.

---

[4] Here, the "claim charts" have even less evidentiary value, as they are *entirely* based on unsworn statements, and in fact there is no way to determine their author or source.

1.    *The '682 patent does not disclose a "central computer system" as required by claims 1, 2, 4-6, 9-11, 14, 16 and 18*

Defendants attempt to argue in their response that the '682 patent discloses a central computer system as claimed by the '988 patent. But, Defendants' straw man argument in this regard is based on the incorrect notion that LML's argument is somehow based on the central computer system being able to "serve multiple merchants." While it is true that the central computer system of the '988 patent must be able to communicate with multiple merchants,[5] the basis for LML's argument is that the '682 patent does not disclose a "central computer system" at all.

The '682 patent only discloses a "backroom processor," not any type of central computer *system*. Defendants offer no argument in response to this fact. Moreover, Defendants do not contest that the backroom processor of the '682 patent is *only a front-end computer*, not a central computer system. (Ex. 7 to LML's Opening Br. at 92-93). Indeed, the backroom processor of the '682 patent is not "central" nor is it a "system" by any stretch of the imagination -- it is only a backroom processor. Defendants simply provide no evidence, and in fact, no argument in this regard. They simply gloss over this key issue with little more than a quick mention. This is insufficient to raise a genuine issue of material fact.

---

[5] Indeed, claim 6 of the '988 patent describes an additional feature of the central computer system -- requiring a "system subscriber database comprising information regarding **merchants** and **service providers** that are authorized to use the checkwriting point of sale system." (Ex. 2 to LML's Opening Br.). This dependent claim further describes and narrows the "central computer system" limitation of claim 1. As such, the "central computer system" must be capable of servicing multiple merchants.

-4-

2.    *The '682 patent does not disclose a "second communication means enabling said central computer system to communicate with external databases" as required by claims 1, 2, 4-6, 9-11 and 14*

As with the element "central computer system," Defendants' argument that the '682 patent expressly discloses a "second communication means enabling said central computer to communicate with external databases" lacks any supporting evidence. Indeed, the clear disclosure of the '682 patent is that "POS terminal 201," not the backroom processor, performs all communications for authorizing transactions (even assuming *arguendo* that the '682 patent's "backroom processor" is a central computer system). (Ex. 3 to LML's Opp. Br. at ¶ 67).

Contrary to Defendants' unsupported argument, the '682 patent makes *no mention* of its "backroom processor" communicating with external databases or performing bank account status searches. Instead, the backroom processor merely receives "data file[s] maintained by POS terminal 201," either "on a periodic basis or at the end of a shift." (Ex. 9 to LML's Opening Br. at 5:2-4; Ex. 3 to LML's Opp. Br. at ¶ 66). The backroom processor uses these data files to upload information to a clearing house or a bank, not for communication with external databases or for account verification. (Ex. 9 to LML's Opening Br. at 5:26-27; Ex. 3 to LML's Opp. Br. at ¶ 66). Defendants present *no* evidence linking their *argument* that telecommunications unit 205 enables backroom processor 204 to communicate with external databases to the *fact* that Higashiyama's backroom processor uploads data records periodically to a clearing house.

Indeed, the '682 patent discloses that check authorizations occur *before* transactions are completed at the terminal 201. (Ex. 9 to LML's Opening Br. at 4: 22-25; Ex. 3 to LML's Opp. Br. at ¶ 70). According to the '682 patent, if "authorization is not

provided, the transaction can, if desired, be cancelled *by the merchant*," thus indicating that any authorization (and thus communication with an external database) is taking place at the point of sale terminal -- not the backroom processor. (Ex. 9 to LML's Opening Br. at 4:22-25; Ex. 3 to LML's Opp. Br. at ¶ 70). This necessarily follows because the backroom processor is not even used in the system until *after* POS terminal 201 creates a data record and performs an optional authorization. (Ex. 9 to LML's Opening Br. at 5:4; Ex. 3 to LML's Opp. Br. at ¶ 70). Only then does the POS terminal 201 send a data file that includes multiple data records to the backroom processor. (*Id.*). This is usually done "on a periodic basis or at the end of a shift." (*Id.*)

Moreover, the '682 patent's entire discussion of any communication with an external database relates to the description of the process where the "customer tenders payment" by check and the merchant presents the check to the point of sale terminal to seek authorization for that check. And as described above, the check authorization takes place long before the "backroom processor" comes into play. (Ex. 9 to LML's Opening Br. at 3:45-4:68). In fact, throughout this entire discussion, not once does the term "backroom processor" appear. (*Id.*) The system in the '682 patent simply is not configured to have the "backroom processor" communicate with "external databases for performing a consumer bank account status search." Defendants simply manufacture this unsupported, conclusory argument in an attempt to avoid summary judgment.

Defendants' attorney-based argument has no support, no justification, and no basis in the factual record. As such, Defendants have failed to raise a genuine issue of material fact.

3.  *The '682 patent does not disclose a "first communication means integral to a point of sale terminal" as required by claims 1, 2, 4-6, 9-11, and 14*

Defendants also attempt to argue that the '682 patent expressly discloses a "first communication means *integral* to the point of sale terminal." (Def. Opp. at 17). But, Defendants' contention is once again based exclusively on attorney argument -- not evidence. Moreover, Defendants hinge their entire argument that the first communication means of the '682 patent is "integral to the point of sale terminal" because the telecommunications unit may be connected to the point of sale terminal 201. (Def. Opp. at 18). Defendants simply ignore the word "integral" in the claims and contend, without justification, that the '682 patent's use of the word "connected" somehow proves the existence of this element. But "connected" does not mean "integral," nor do Defendants offer any evidence to show any such nexus. This is certainly not an express disclosure in the '682 patent of a "first communication means integral to a point of sale terminal." Defendants' unsupported and unjustified argument is far from clear and convincing evidence, and is insufficient to raise a genuine issue of material fact.

4.  *The '682 patent does not disclose a "resident third party database wherein consumer banking account status information is stored" as required by claims 5 and 11*

Defendants also claim that the '682 patent discloses a "resident third party database wherein consumer banking account status information is stored" as required by claims 5 and 11. Defendants again attempt to rewrite the claims to suit their arguments -- this time eliminating the word "resident." Defendants offer no evidence to show that any "third party database" is resident on the central computer. Indeed, Defendants' argument

is dependent on a single paragraph in the '682 patent which does not support their argument:

> [T]he data record is then used to verify check authorization, for example, by being compared to a positive file (which lists all allowable checking account numbers), or more likely against a negative file such as provided by SCAN of Seattle, Washington, TeleCheck of Denver, Colorado or Telecredit of Florida . . .

(Ex. 9 to LML's Opening Br. at 4:14-24). The evidence shows that these databases are <u>not</u> "resident," as the '682 patent describes the location of these databases in either Seattle, Denver, or Florida. (Ex. 9 to LML's Opening Br. at 4:18-19). Moreover, Defendants cite (as their own alleged evidence) to the testimony of inventor Robert Hills who testified that this very passage described "authorization dial-up of some kind." (Def. Br. at 19; citing Ex. D to Def. Opp. at 438:12-439:14). Certainly if these databases required "authorization dial-up" they must "dial-up" somewhere outside the system, and thus not be "resident" on the central computer system.[6]

There is simply no disclosure of a resident third party database anywhere in the '682 patent. Accordingly, Defendants have failed to raise a genuine issue of material fact.

---

[6] While Defendants argue that "nothing in Higashiyama limits the location of where such a database is maintained" (Def. Opp. at 19), the converse is also true -- nothing in Higashiyama discloses that the database is resident on the central computer system. Defendants' argument in this regard proves LML's point.

5.    *The '682 patent does not disclose a "system subscriber database comprising information regarding merchants and service providers that are authorized to use the checkwriting point of sale system" as required by claim 6*

Claim 6 of the '988 patent requires a "system subscriber database comprising information regarding merchants and service providers that are authorized to use the checkwriting point of sale system." Defendants' argument in this regard is virtually identical to that for "resident third party database." Indeed, Defendants' use the same passage of the '682 patent to support both arguments even though the elements describe two distinct types of databases. Defendants' argument is not supported by the facts.

First, there is no disclosure in the '682 patent of *any* database "comprising information regarding merchants and service providers that are authorized to use the checkwriting point of sale system." Indeed, the '682 patent is a single merchant system - - not a multiple merchant system that would require a "system subscriber database." In a single user system (such as the '682 patent), a system subscriber database (a database of subscribers to the system) would not make sense since there is only one user. Defendants offer no support or evidence to the contrary.

Second, the databases disclosed by the '682 patent are positive and negative files which, by their nature, are files that contain *consumer* information, (i.e., bad check writer information) and *not* merchant or service provider data as required by the system subscriber database element of claim 6. (Opening Br. Ex. 3, ¶ 77). Indeed, the '682 patent specifically states that such negative files "provide information regarding known troublesome checking accounts," in other words, *consumer* information. (Ex. 9 to LML's Opening Br. at 4:21-22). Defendants present no contrary evidence.

Finally, Defendants' only attempt to support their argument is by misrepresenting the testimony of one of the inventors of the '988 patent. Defendants argue that Mr. Hills somehow admitted to the presence of this element in the '682 patent because he testified that the positive and negative databases disclosed in the '682 patent described "authorization dial-up." (Def. Opp. at 19). Defendants, based solely on this testimony, argue that in order for the '682 patent's "dial-up authorization to function properly, a database of eligible merchants must be maintained." (Def. Opp. at 20). Defendants do not explain how they come up with this illogical conclusion, nor does Mr. Hills make such a conclusion. Defendants are simply pulling this conclusion out of thin air.[7]

Thus, Defendants have failed to raise a genuine issue of material fact with respect to this element, entitling LML to summary judgment of no anticipation of claim 6 by the '682 patent.

### C.    The '607 Patent Does Not Anticipate the Asserted Claims of the '988 Patent

Although Defendants never claimed that the '607 patent anticipated any asserted claim during discovery, they now argue, in conclusory fashion, that the '607 patent discloses every element of the '988 patent. Even if considered (and not stricken), Defendants' argument is based on conjecture and attorney argument, not evidence. Defendants failed to raise any genuine issue of material fact that the '607 patent *does not* teach at least (1) "second communication means enabling said central computer to

---

[7] In fact, Mr. Hills continued his testimony, and in response to the very next question explained that the '682 patent described a single user system. (Ex. D to Def. Opp. at 439-40). As explained above, it is nonsensical to have a system subscriber database in a single user system.

-10-

communicate with external databases" as required by claims 1, 2, 4-6, 9-11 and 14; and (2) a "central computer system" as required by claims 1, 2, 4-6, 9-11, 14, 16 and 18. Indeed, this very reference was considered by the Examiner during prosecution, and yet the Examiner allowed the claims of the '988 patent to issue. As a result, LML is entitled to summary judgment of no anticipation by the '607 patent.

             1.     *Defendants' untimely contentions should be stricken*

Defendants claim that the '607 patent discloses a "central computer system" and a "second communication means enabling said central computer to communicate with external databases" as required by claims 1, 2, 4, 9-10, 14, and 18 of the '988 patent. Yet, Defendants failed to present any anticipation argument with respect to the '607 patent during discovery, and Defendants' expert, Mr. Kurrasch, failed to provide any anticipation analysis with respect to the '607 patent. As such, Defendants' new, untimely arguments should be stricken.

First, in their brief, Defendants refer to the "anticipated testimony" of their expert, Mr. Kurrasch, regarding anticipation by the '607 patent. But, ***Mr. Kurrasch provided no analysis in his expert report or otherwise with respect to anticipation by the '607 patent.*** Indeed, while Mr. Kurrasch provided claim charts with respect to other references at issue, he did not provide any such claim chart for the '607 patent. Instead, he simply made the conclusory statement that the '607 patent anticipates claims 1-4, 8-10, 14 and 18 of the '988 patent.[8] (Ex. N to Def. Opp. at ¶254). Mr. Kurrasch provides

---

[8] Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert to file a report setting forth "all opinions to be expressed ***and the basis and reasons therefore.***" Mr. Kurrasch certainly did not provide any "basis or reasons therefore" with respect to any alleged anticipation by the '607 patent.

no comparison of the '607 patent to the asserted claims. Thus, not only do Defendants fail to offer any declaration or affidavit from Mr. Kurrasch, but Mr. Kurrasch's expert report (which is inadmissible hearsay in any event) does not even provide an analysis with respect to this reference.

Moreover, Defendants did not make any anticipation argument with respect to the '607 patent during discovery. In response to LML's contention interrogatory requesting Defendants to state all bases for claiming the patents-in-suit were invalid, Defendants *provided no analysis, and made no claim*, that the '607 patent anticipated *any* claims of the '988 patent.

Defendants' arguments regarding anticipation by the '607 patent are new and untimely. Defendants did not disclose them during discovery, and Defendants' expert failed to provide any anticipation analysis regarding this reference whatsoever. Defendants should not now be able to inject new, previously undisclosed contentions into this case -- thus, they should be stricken. *Oxford Gene Technology Ltd. v. Mergen Ltd.*, 345 F.Supp.2d 444, 462 (D. Del. 2004) (refusing to consider new contentions supported only by conclusory statement in expert declaration where the contentions were not contained in any prior pleadings).

2.    *The '607 patent does not disclose a "second communication means enabling said central computer system to communicate with external databases" as required by claims 1, 2, 4, 9-10 and 14*

Defendants have failed to raise a genuine issue of material fact that the '607 patent does not disclose "second communication means enabling said central computer to communicate with external databases" as required by claims 1, 2, 4, 9-11 and 14. Indeed, the '607 patent expressly states that the "verification of the existence of the payor's

account" is performed by the payor's bank CPU and not a central computer: "(a) the payor's bank CPU means encrypts/decrypts the data package as necessary, (b) there is verification of the existence of the payor's account." (Opening Br. Ex. 6, 24:10-13; Ex. 3 to LML's Opp. Br. (Tinkel Declaration) at ¶ 45). The '607 patent does not disclose *any* computer system having a second communication means for communicating with an external database for performing a consumer bank account status search. (Ex. 3 to LML's Opp. Br. at ¶ 46).

Despite this explicit statement in the '607 patent, Defendants again play loose with their evidence to make unsupported and unjustified conclusions. For instance, Defendants cite a portion of the '607 patent that states that the point of sale terminal or a remote CPU can include "means to access an external communication system to identify a payor of a negotiable instrument . . . and to perform an electronic funds transfer only with a proper PIN number." (Def. Opp. at 22). Yet Defendants fail to offer any evidence showing how identifying a payor of a negotiable instrument discloses or even suggests a "second communication means enabling a central computer system to communicate with external databases." Defendants also attempt to claim that the alleged "central computer system" in the '607 patent can perform "all CPU functions" of the point of sale terminal. (Def. Opp. at 22). But then, Defendants provide functions of the point of sale terminal, *not the CPU. (Id.)*

Beyond this, Defendants only offer the bald conclusion that "the central computer system performs a computer bank account status search via an external database when processing checks for electronic funds transfers." (Defendants' Opp. at 22). Defendants offer no other evidence with respect to this element, and as such, have failed to raise a

-13-

genuine issue of material fact. Thus, LML is entitled to summary judgment of no anticipation by the '607 patent.

>    3.    *The '607 patent does not disclose a "central computer system" as required by claims 1, 2, 4, 9-10, 14 and 18*

Defendants also attempt to argue -- for the first time -- that the '607 patent does not disclose a "central computer system." But, even Defendants' own citations do not support their argument.

First, Defendants rest their entire argument on a passage in the '607 patent which "employs a central CPU." (Def. Opp. at 21). This passage does not describe a "central computer system," but at best, only a central CPU.[9] Just as with the '682 patent, Defendants attempt to read the word "system" out of the asserted claims.[10] This Defendants cannot do. The '607 patent simply does not disclose a "central computer system," but only a single computer.

Moreover, even if this passage disclosed a "central computer system" - which it does not -- Defendants' argument relies on an alternative, but largely undisclosed, embodiment of the '607 patent to support their argument. This embodiment is not enabling and thus cannot anticipate claims 1, 2, 4, 9-10, 14 and 18 of the '988 patent. *Hewlett-Packard Co. v. Mustek Systems, Inc.,* 340 F.3d 1314, 1325 (Fed. Cir. 2003) (In

---

[9] Defendants characterize a CPU (Central Processing Unit) as a "central computer" without any reasoning or discussion. This is simply not true -- a CPU is only a single piece of a computer. A CPU might be, for example, an Intel Pentium chip, but it is certainly not an entire personal computer, much less a central computer system.

[10] Defendants appear to argue that any computer is a central computer system. This is simply not logical or correct. Indeed, the central computer system must be part of the point of sale system, as defined by the claims, not any random computer as Defendants argue.

order to anticipate, a prior art reference must "disclose[] and enable[] the claimed invention."). Defendants simply offer no evidence that this alternative embodiment is enabling.

This alternative embodiment describes a system where a CPU that normally resides on a point of sale device may be *entirely replaced* by a remote CPU that Defendants *allege* is a central computer system as claimed in the '988 patent. In this embodiment, the POS terminal would *not* have a memory (let alone an integral memory), but instead "would require *only* the MICR read head and means to connect it to the LAN." (Opening Br. Ex. 6, 22:9-11) (emphasis added). But, an integral memory in a POS terminal is a required element of the asserted claims.[11] Furthermore, without memory, the "check processing device" of the '607 patent cannot *possibly* "temporarily store[] the consumer bank account information" as also required by claims 1, 2, 4, 9-10, 14 and 18. As such, this alternative embodiment of the '607 patent is not enabling and so cannot anticipate. Defendants have failed to raise a genuine issue of material fact.

**D.    The '714 Patent Does Not Anticipate the Asserted Claims of the '988 Patent**

Finally, Defendants argue, again in conclusory fashion, that the '714 patent discloses every element of the '988 patent. Defendants once more do not provide any evidence to support their arguments, and instead rely on inadmissible attorney argument and hearsay. Moreover, Defendants failed to raise any genuine issue of material fact that the '714 patent ***does not*** teach at least (1) a "central computer system" as required by

---

[11] Defendants simply cannot have it both ways: either the check processing device has no memory or the system has no central computer system. This alternative embodiment simply does not disclose both elements by its express disclosure.

claims 1, 2, 4, 9-10; and (2) a "second communication means enabling said central computer to communicate with external databases" as required by claims 1, 2, 4, 9-10. As a result, LML is entitled to summary judgment of no anticipation by the '714 patent.[12]

            1.      *The '714 patent does not disclose a "central computer system" as required by claims 1, 2, 4 and 9-10*

Defendants' entire contention with respect to this element relies on the statement in the '714 patent that the "point of sale mechanism" includes "means to access a computer system maintained by an issuer of a negotiable instrument, credit card and the like . . ." (Def. Opp. at 23). This statement does not disclose a central computer system,[13] but instead the computer system of a check writer's bank (*i.e.* an issuer of a negotiable instrument, credit card and the like). (Ex. 3 to LML's Opening Br. at ¶ 41). Contrary to Defendants' unsupported argument, the '714 patent discloses that this check writer's bank is contacted to request a funds transfer -- that is the entire purpose of the system described by the '714 patent. (*Id.*) Indeed, the '714 patent discloses and is primarily directed to a "secured point of sale mechanism" that has a CPU that "would connect the system to the customer's own bank and the check could be verified for sufficient funds." (*Id.* at 41-42).

---

[12] As explained in LML's Opening Brief, the '714 patent is related to two patents that the Examiner considered during prosecution, namely the '607 patent and the '896 patent. The references have very similar disclosures and thus are cumulative. *See Metabolite Labs, Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1358 (Fed. Cir. 2004) (holding that an even heavier burden to prove invalidity exists where alleged anticipatory reference is cumulative of another considered during prosecution).

[13] Defendants again appear to argue that any computer is a central computer system. As previously explained, this is simply not logical or correct. Indeed, the central computer system must be part of the point of sale system, as defined by the claims, not any random computer as Defendants argue.

Defendants also attempt to build a straw man argument, characterizing LML's arguments with respect to a central computer system in a confusing and jumbled manner. LML's argument is simple -- the '714 patent does not disclose a "central computer system." Instead, it merely discloses a "secured point of sale mechanism" (Ex. 3 to LML's Opening Br., Abstract) that communicates with several unrelated computers to, for example, verify if an account has particular funds or not. (*Id.*) A dispersed number of computers owned and operated by separate banks or financial institutions, such as disclosed by the '714 patent, is simply not a central computer system. Defendants offer no contrary evidence in this respect. Thus, LML is entitled to summary judgment of no anticipation by the '714 patent.

    2.    *The '714 patent does not disclose a "second communication means enabling said central computer system to communicate with external databases" as required by claims 1, 2, 4, and 9-10*

Defendants argue that the '714 patent discloses a "second communication means enabling said central computer system to communicate with external databases" as required by claims 1, 2, 4, and 9-10. Defendants argue that "the '714 patent describes an embodiment in which *a point of sale terminal* 'could include . . . means to access an external communication system to identify *a payor* of a negotiable instrument (such as through the use of a personal identification number) and to perform an electronic funds transfer.'" (Def. Opp. at 25) (emphasis added). Recognizing that a point of sale terminal is not a central computer system, ***Defendants state without any basis or support*** that "[i]f the point of sale terminal does not include these features, they would be performed by the central computer system." (Def. Opp. at 25). Defendants do not, and cannot, explain how a "point of sale terminal" with "means to access an external communication system"

-17-

to identify a *person* discloses a ***central computer system*** with a means to communicate
with external databases to verify a consumer's ***account.***

Next, Defendants argue that the '714 patent describes an embodiment where the
"secured point of sale mechanism" "would connect the system to the customer's own
bank" for verification purposes. (Def. Opp. at 25, quoting the '714 patent at 8:24-30).
Again, Defendants do not, and cannot, explain how a *point of sale mechanism*
communicating with the customer's own bank anticipates a "second communication
means enabling said *central computer system* to communicate with external databases" as
required by the claims.

Finally, Defendants argue that "the '714 patent discloses performing electronic
funds transfers by having the point of sale terminal communicate with a central computer
system." (Def. Opp. at 25). Defendants once again miss the mark as their alleged
support explicitly states (by Defendants' own admission) that the point of sale terminal --
not the central computer system -- initiates electronic funds transfer.[14] (Ex. 8 to LML's
Opening Br. at 12:61-13:3). Thus, not only does the '714 patent describe the wrong
device that must have a second communication means, but this alleged means is in no
way communicating with external databases. Indeed, the asserted claims require that the
second communication means enables the ***central computer system***, not a point of sale
terminal, "to communicate with external databases for performing a consumer bank

---

[14] Indeed, the '714 patent states that the "retailer" may depress the EFT switch to initiate
the EFT process. (Ex. 8 to LML's Opening Br. at 12:61-13:3). Thus, this passage, as
Defendants concede, relates to communications from the point of sale terminal, and
not the central computer system as required by the asserted claims.

account status search and further enabling automated clearing house communication for transferring funds."

Defendants have simply provided no legitimate evidence that the '714 patent discloses this element. Thus, LML is entitled to summary judgment of no anticipation by the '714 patent.

## II.    CONCLUSION

For the foregoing reasons, LML respectfully requests that this Court grant LML's motion for summary judgment that the  claims 1, 2, 4-6, 9-11, 14, 16 and 18 of the '988 patent are not anticipated.

Date:  November 23, 2005

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
Edward K. Runyan
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Counsel for Plaintiff LML Patent Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of November, 2005, I electronically filed the foregoing document, **LML'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT NO. 4: FOR A RULING THAT CLAIMS 1, 2, 4-6, 9-11, 14, 16 AND 18 OF THE '988 PATENT ARE NOT ANTICIPATED**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Collins J. Seitz, Jr., Esq.
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19801

William J. Marsden, Jr., Esq.
Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 23rd day of November, 2005, the foregoing document was served via email and federal express on the following non-registered participants:

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Mark C. Scarsi, Esq.
Vision L. Winter, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS
& WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com

*Counsel for Plaintiff LML PATENT CORP.*