IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP.<br><br>          Plaintiff,<br><br>vs.<br><br>TELECHECK SERVICES, INC.<br>ELECTRONIC CLEARING HOUSE, INC.,<br>XPRESSCHEX, INC., AND<br>NOVA INFORMATION SYSTEMS, INC.<br><br>          Defendants. | )<br>)<br>)  Civil Action No.: 04-858-SLR<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**LML'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
NO. 6: FOR A RULING THAT CLAIMS 1, 2, 4, 5, 6, 9, 10, 11, 14, 16 AND 18
OF THE '988 PATENT ARE NOT INVALID
FOR IMPROPER INVENTORSHIP UNDER 35 U.S.C. § 102(f)**

Dated: November 23, 2005

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
Edward K. Runyan
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Counsel for LML Patent Corp.*

## TABLE OF CONTENTS

I.  ARGUMENT IN REPLY ................................................................................................1

    A.  Defendants' Improper Inventorship Argument Must Fail As A Matter of Law ......................................................................................................1

        1.  Defendants' Argument Fails as a Matter of Law Because They Offer No Evidence Except the Testimony of the Alleged Inventor ..................................................................................2

        2.  Defendants' Argument Fails as a Matter of Law Because They Have Failed to Set Forth the Alleged "Inventive Contribution" Made by Mr. Carlson to the Invention of the '988 Patent ....................................................................................4

    B.  Mr. Carlson's Declaration Must Be Stricken As It Is Directly Contrary To His Deposition Testimony .........................................................6

    C.  Defendants Should Be Limited To The Arguments They Made In Discovery. .........................................................................................................8

II. CONCLUSION ......................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Cooper v. Goldfarb,*
    154 F.3d 1321 (Fed. Cir. 1998) .................................................................. 1

*eSpeed, Inc. v. Brokertec USA L.L.C.,*
    342 F. Supp. 2d 244 (D. Del. 2004) ............................................................ 2

*Ethicon, Inc. v. U.S. Surgical Corp.,*
    135 F.3d 1456 (Fed. Cir. 1998) .................................................................. 4

*Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd.,*
    1996 WL 680243 (N.D.Ill. Nov. 21, 1996) ............................................. 2, 9

*Martin v. Merrell Dow Pharm., Inc.,*
    851 F.2d 703 (3rd Cir. 1988) ..................................................................... 6

*Mash v. Xerox Corp.,*
    2000 WL 1728250 (D. Del. April 11, 2000) .............................................. 6

*MicroStrategy, Inc. v. Business Objects, S.A.,*
    2005 WL 3071447 (Fed. Cir. Nov. 17, 2005) ........................................... 10

*Pannu v. Iolab Corp.,*
    155 F.3d 1344 (Fed. Cir. 1998) .............................................................. 4, 5

*Trovan, Ltd. v. Sokymat,*
    299 F.3d 1292 (Fed. Cir. 2002) ...................................................... 2, 3, 4, 5

**Statutes**

35 U.S.C. § 102(f) ............................................................................... 1, 8, 9, 10

**Rules**

Fed. R. Civ. P. 26(e)(2) ............................................................................... 9

Fed. R. Civ. P. 37(c)(1) ............................................................................... 9

I.  **ARGUMENT IN REPLY**

Defendants have failed to raise a genuine issue of fact to support their improper inventorship defense—a defense that must proven by clear and convincing evidence. Defendants' arguments fail for at least three independent reasons:

- The only "evidence" Defendants rely upon to support their argument is the declaration of Mr. Carlson himself—under well established Federal Circuit precedent, this uncorroborated testimony is not sufficient to support a claim of improper inventorship.

- Defendants have never identified a single element of the invention of the '988 patent that was allegedly conceived of by Mr. Carlson.

- Mr. Carlson's declaration stands in complete contradiction to his deposition testimony and thus, should not even be considered.

Consequently, LML is entitled to judgment as a matter of law and respectfully requests that the Court enter summary judgment that claims 1, 2, 4, 5, 6, 9, 10, 11, 14, 16, and 18 of the '988 patent (the "Asserted Claims") are not invalid under 35 U.S.C. § 102(f).

   A.  **Defendants' Improper Inventorship Argument Must Fail As A Matter of Law**

Defendants have failed to raise a genuine issue of material fact with respect to their improper inventorship defense. To prove a claim of improper inventorship under § 102(f)—regardless of the basis for that claim[1]—Defendants must support their claim

---

[1] LML disagrees that Defendants are not making a derivation claim. In their interrogatory response setting forth this defense, Defendants stated, *"the claims of the '988 patent are invalid under 35 U.S.C. 102(f) because the inventors did not invent the subject matter of the '988 patent"* and then stated that Mr. Hills had obtained information regarding the subject matter of the patent from Mr. Carlson. (Exhibit 3 to the Declaration of Lesley G. Smith in Support of LML's Motion for Summary Judgment No. 6 (hereinafter "Open. Br. Ex. __") at 8). Alleging that the named inventors did not invent the claims of the patent, but obtained the subject matter from a third party is an allegation of derivation. *See, e.g., Cooper v. Goldfarb*, 154 F.3d 1321, 1332 (Fed. Cir. 1998) ("Derivation involves the claim that the adverse party did not
(Continued...)

with more than merely the alleged co-inventor's testimony, and must further show by clear and convincing evidence that Mr. Carlson conceived of the invention of the '988 patent. Defendants have failed to do so, and thus, their improper inventorship defense fails as a matter of law.

### 1. Defendants' Argument Fails as a Matter of Law Because They Offer No Evidence Except the Testimony of the Alleged Inventor

The sole evidence Defendants proffer to support their defense of improper inventorship is the paid testimony of Mr. Carlson—the person Defendants claim is an alleged co-inventor of the patent-in-suit. However, Defendants' argument fails as a matter of law as this uncorroborated testimony alone is not sufficient to meet their clear and convincing burden of proof.

It is well-settled that to prove a defense of improper inventorship, Defendants must support their contention with more than just the testimony of an alleged co-inventor. *Trovan, Ltd. v. Sokymat*, 299 F.3d 1292, 1302 (Fed. Cir. 2002) ("To meet their clear and convincing burden of proof, alleged co-inventors must prove their contribution to the conception with more than their own testimony."); *eSpeed, Inc. v. Brokertec USA L.L.C.*, 342 F. Supp. 2d 244, 254 (D. Del. 2004) ("Nor can the proposed inventor's own

---

'invent' the subject matter...because that party derived the invention from another.") Although Defendants now apparently concede that Mr. Hills and Mr. Nichols are properly named as inventors and that Mr. Carlson only made "an inventive contribution" to the invention, this directly contradicts the allegation made in Defendants' interrogatory response. Realizing that they could not prove a derivation claim, Defendants are now trying to change their argument, which should not be permitted. *See, e.g., Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd.*, No. 95 C 0673, 1996 WL 680243, *8-10 (N.D.Ill. Nov. 21, 1996) (excluding evidence regarding a § 112 defense because defendants never supplemented their interrogatory responses to disclose the defense). Nevertheless, Defendants' new argument is no better than the original one, as explained herein.

testimony be relied on, as the 'temptation for even honest witnesses to reconstruct, in a manner favorable to their own position, what their state of mind may have been years earlier, is simply too great.'"). Defendants must corroborate the alleged co-inventor's testimony with additional evidence, or their defense fails as a matter of law. *Trovan*, 299 F.3d at 1302-03.

Here, Defendants' only alleged "evidence" of improper inventorship is the uncorroborated declaration of Mr. Carlson—nothing else. Defendants offer no third party testimony and no documents that would corroborate Mr. Carlson's testimony. Although Mr. Carlson attaches "notes" to his declaration from his alleged calls with Mr. Hills (Carlson Decl. Exs. 5 and 6), these notes contain ***nothing*** to corroborate the substance of Mr. Carlson's alleged conversation with Mr. Hills and most certainly do not support any notion that Mr. Carlson was the inventor or co-inventor of the patent-in-suit. Defendants have provided no other documents to support their claim.[2] As such, Defendants' argument fails as a matter of law. On this basis alone, LML is entitled to summary judgment.

---

[2] While Mr. Carlson attaches a presentation regarding his invention to his declaration (Carlson Decl. Ex. 4), he never claims to have provided this presentation to Mr. Hills, nor claims to have discussed such presentation with Mr. Hills. Thus, it provides no support for Defendants' contention. Furthermore, although Defendants reference the "extensive documentation" produced by Mr. Carlson (Def. Br. at 4), Defendants offer no such documents in support of their motion. Indeed, the only documents that are even remotely related to Mr. Carlson's alleged communication with Mr. Hills are Exhibits 5 and 6 which, as explained above, do not support Defendants' arguments and are insufficient to corroborate Mr. Carlson's testimony.

### 2. Defendants' Argument Fails as a Matter of Law Because They Have Failed to Set Forth the Alleged "Inventive Contribution" Made by Mr. Carlson to the Invention of the '988 Patent

In addition to Mr. Carlson's testimony not being sufficient to support Defendants' claims of improper inventorship, Defendants have also failed to identify a single element of a single claim of the '988 patent that was allegedly conceived of by Mr. Carlson. This failure is also fatal to Defendants' argument.

The starting point for any improper inventorship allegation is proving by clear and convincing evidence that the alleged inventor conceived of some aspect of the patented invention. *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998). However, explaining well-known concepts and/or the current state of the art to the named inventor is not enough to prove conception. *Id.*; *see also Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). Moreover, nonjoinder is evaluated on a ***claim-by-claim basis*** so Defendants must also set forth which claims of the '988 patent are impacted by their improper inventorship allegation. *See, e.g., Trovan*, 299 F.3d at 1302 (citing *Ethicon*, 135 F.3d at 1460).

Despite this bedrock law, Defendants have ***never identified a single element of a single claim of the '988 patent that was allegedly conceived of by Mr. Carlson.*** For that reason alone, Defendants' argument must fail. Although Defendants generally refer to "the inventive contribution" of Mr. Carlson throughout their brief, they never specify what that inventive contribution is or what claims of the '988 patent include this "contribution." Defendants do list functionality of a system that Mr. Carlson allegedly disclosed to Mr. Hills, but they never correlate it to the claims of the '988 patent or even specify that Mr. Carlson conceived of this functionality. (Def. Br. at 7-8).

Even if Defendants had identified the alleged contribution of Mr. Carlson, their argument would still fail as a matter of law because they only show that Mr. Carlson explained known concepts to Mr. Hills, which is not enough by law to prove conception. *Pannu*, 155 F.3d at 1351. Indeed, Defendants only allege that Mr. Carlson invented the subject matter in his own patents—three patents which had already issued at the time of his alleged conversations with Mr. Hills. (Def. Br. at 3 ("Mr. Carlson disclosed precise details on how his [patented] point of sale check processing system functioned to Mr. Hills."); Reply Ex. A at 155:9-17[3] ("I wouldn't have talked about much of anything else [to Hills] except here's our patents and we need some money."); Carlson Decl. at ¶ 14 ("As part of this conversation, I explained the details of my patents and my invention to Mr. Hills." ). Thus, even if he did communicate the details of his patents to Mr. Hills, he was only communicating the known state of the art. In order to be a co-inventor of the '988 patent, Defendants would have to show that Mr. Carlson conceived of some aspect of the invention of ***the '988 patent*** which is distinct from the inventions of Mr. Carlson's own patents.[4]

Defendants are attempting to make the exact argument that the Federal Circuit expressly rejected in *Trovan v. Sokymat*, 299 F.3d 1292 (Fed. Cir. 2002). In *Trovan*, the alleged co-inventor was the sole inventor of another patent and argued that he should be

---

[3] Exhibits are attached as the Declaration of Lesley G. Smith in Support of LML's Reply to Its Motion For Summary Judgment No. 6: For A Ruling That Claims 1, 2, 4, 5, 6, 9, 10, 11, 14, 16, And 18 Of The '988 Patent Are Not Invalid For Improper Inventorship Under § 102(f), hereinafter "(Reply Ex. __)."

[4] Indeed, two of Mr. Carlson's three patents (all three of which are related) were before the Examiner during prosecution of the '988 patent. Yet, the Examiner allowed the claims of the '988 patent to issue over the Carlson patents.

an inventor on the patent-at-issue because the subject matter of the two patents had "overlapping subject matter." *Id.* at 1303. The Federal Circuit rejected this argument, holding that even if the two patents did contain overlapping subject matter, "that alone [was] insufficient to prove by clear and convincing evidence" that the alleged co-inventor had invented part of the patent-at-issue. *Id.* As in *Trovan*, Defendants' contention here is that Mr. Carlson's patents and the '988 patent allegedly have "overlapping subject matter." As explained in *Trovan,* such an argument is insufficient as a matter of law.

### B. Mr. Carlson's Declaration Must Be Stricken As It Is Directly Contrary To His Deposition Testimony

The last paragraph of Mr. Carlson's declaration in support of Defendants' opposition brief states that he "testified to all of the above stated facts during my deposition on July 15, 2005." (Carlson Decl. at ¶ 21). However, the transcript from Mr. Carlson's deposition tells a very different story, directly contradicting Mr. Carlson's declaration in numerous places. Where an affidavit submitted in support of a summary judgment motion contradicts prior testimony with no satisfactory explanation, that affidavit should be disregarded for purposes of determining whether there was a material dispute of fact. *Martin v. Merrell Dow Pharm., Inc.*, 851 F.2d 703, 706 (3rd Cir. 1988); *Mash v. Xerox Corp.*, No. 98-506 GMS, 2000 WL 1728250, at *6 (D. Del. April 11, 2000) (holding that an affidavit submitted in support of a summary judgment motion would be disregarded "to the extent it is inconsistent with [affiant's prior] deposition testimony"). Courts have recognized that "the objectives of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit." *Martin*, 851 F.2d at 706 (citing to six other federal appellate courts as support for this principle).

Mr. Carlson's declaration changes his testimony as to the specifics of what he told Mr. Hills during their alleged conversations. In his declaration, Mr. Carlson sets forth "a summary of the steps performed in one implementation of my check processing system, which I disclosed to Mr. Hills on April 21, 1992." (Carlson Decl. at ¶ 16). He then lists twelve steps allegedly describing his system. (*Id.*) However, at deposition, Mr. Carlson could not recall whether he disclosed *any of these steps* to Mr. Hills, let alone all twelve. (Reply Ex. A at 118:24-158:10). In fact, Mr. Carlson remembered very few of the specifics of what he disclosed to Mr. Hills regarding his patents during their alleged April 21 call:

> Q: Did he ask you to send him copies of your patents during this conversation?
>
> A: Oh, I don't know.
>
> Q: Did he ask you detailed questions about any of your three patents during this conversation on April 21st?
>
> A: Quite a few.
>
> …
>
> Q: Do you remember any of those specifically?
>
> …
>
> A: No. It's so long ago.

(*Id.* at 135:12-136:1).

In fact, at deposition, Mr. Carlson said he remembered no additional details of his alleged discussions with Mr. Hills other than what appears on Exhibits 5 and 6 to his declaration—his alleged notes from those conversations. (*Id.* at 145:18-22). Exhibit 5 and 6, however, contain only notes about what Hills allegedly told Carlson and contain *nothing* at all to support the details that have now surfaced in Mr. Carlson's declaration.

- 7 -

(Carlson Decl. Exs. 5 and 6). His notes contain no mention of any details about his system at all or any discussions he might have had with Mr. Hills about it.

Mr. Carlson's deposition testimony also contradicts the testimony in his declaration that he "received a follow-up call from Mr. Hills on April 27, 1992." (Carlson Decl. at ¶18). In fact, at deposition, Mr. Carlson clearly testified both that he ***did not remember*** Mr. Hills calling him on April 27 and that he ***had no record*** of any such call. (Reply Ex. A at 146:8-21;156:1-6). Although the date "4-27-92" appeared in some of Mr. Carlson's notes (Carlson Decl. Ex. 6), Mr. Carlson testified at deposition that such date might have referred to when Mr. Hills had told him he would call Mr. Nichols and not to when he received an additional call from Mr. Hills. (Reply Ex. A at 146:9-21). Mr. Carlson's declaration on this point is obviously contradictory and, therefore, must not be considered.

Mr. Carlson's declaration contradicts his deposition testimony over and over again, and thus, should be stricken. These contradictory positions taken by Mr. Carlson should not be considered for purposes of summary judgment.

### C. Defendants Should Be Limited To The Arguments They Made In Discovery.

Defendants also attempt to support their arguments in opposition to LML's motion with new, undisclosed contentions. Defendants' belated contentions should not be permitted.

In response to LML's interrogatory asking for a detailed explanation of all legal and factual bases for any claims of invalidity, Defendants provided four sentences with respect to their improper inventorship claim:

> The claims of the '988 patent are invalid under 35 U.S.C. § 102(f) because the inventors did not invent the subject matter of the '988

>patent. Prior to the filing of the application leading to the '988 patent, Mr. Hills contacted Mr. Steven R. Carlson and obtained information regarding the subject matter of the '988 patent. This information was incorporated into the '988 patent. ***Mr. Carlson's deposition was recently conducted, and TeleCheck reserves the right to supplement this response based on information recently discovered and to be discovered.***

(Open. Br. Ex. 3 at 8). Although Defendants cited the first three sentences in their brief, they conveniently left out the fourth sentence where they reserved their right to supplement their response on this issue based on information "recently discovered and to be discovered." However, Defendants never supplemented the response. Defendants never clarified that their 102(f) allegation had changed from derivation to nonjoinder and never incorporated into their response the deposition testimony of Mr. Carlson or any of the documents he produced, including Exhibits 5 and 6 to his declaration. Furthermore, although Defendants' expert provided opinions with respect to the inventorship of LML's '528 and '366 patents, he provided no such opinions with respect to the '988 patent—indicating that Defendants were not going to pursue this defense.[5] (Open. Br. Ex. 4 at ¶¶ 376-385). Not until their opposition to LML's motion did Defendants' disclose any of these new contentions/facts.

Having ignored their own reservation of right to supplement their interrogatory response, Defendants cannot now expect to rely on new arguments or information not previously raised. Fed. R. Civ. P. 26(e)(2) and 37(c)(1); *Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd.*, No. 95 C 0673, 1996 WL 680243, *8-10 (N.D.Ill.

---

[5] As such, LML's counsel asked Defendants' counsel whether they intended to maintain this defense to avoid filing unnecessary motions and paper with the Court. (Reply Ex. B). Defendants' counsel ignored LML's request.

Nov. 21, 1996) (excluding evidence regarding a § 112 defense because defendants never supplemented their interrogatory responses to disclose the defense); *MicroStrategy, Inc. v. Business Objects, S.A.*, No. 04-1572, 2005 WL 3071447, * 9 (Fed. Cir. Nov. 17, 2005) (affirming the district court's decision to exclude evidence of a damages theory not disclosed in response to an interrogatory asking for identification of all damages theories). Defendants should be limited to their cursory and deficient interrogatory response.

**II.  CONCLUSION**

For the foregoing reasons, LML respectfully requests that this Court grant LML summary judgment that none of the Asserted Claims of the '988 patent are invalid under 35 U.S.C. § 102(f).

Dated: November 23, 2005

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Attorneys for LML Patent Corp.

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of November, 2005, I electronically filed the foregoing document, **LML'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT NO. 6: FOR A RULING THAT CLAIMS 1, 2, 4, 5, 6, 9, 10, 11, 14, 16 AND 18 OF THE '988 PATENT ARE NOT INVALID FOR IMPROPER INVENTORSHIP UNDER 35 U.S.C. § 102(f)**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Collins J. Seitz, Jr., Esq.
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19801

William J. Marsden, Jr., Esq.
Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 23rd day of November, 2005, the foregoing document was served via email and federal express on the following non-registered participants:

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Mark C. Scarsi, Esq.
Vision L. Winter, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

/s/ Mary Matterer
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS
& WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com

*Counsel for Plaintiff LML PATENT CORP.*