**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LML PATENT CORP., | |
|         Plaintiff, | |
|     v. | C.A. 04-858 (SLR) |
| TELECHECK SERVICES, INC., ELECTRONIC CLEARING HOUSE, INC., XPRESSCHEX, INC. and NOVA INFORMATION SYSTEMS, INC., | **REDACTED PUBLIC VERSION** |
|         Defendants. | |

**DEFENDANT NOVA INFORMATION SYSTEMS, INC.'S RESPONSE**
**TO PLAINTIFF LML PATENT CORP.'S MOTION FOR SUMMARY**
**JUDGMENT OF INFRINGEMENT**

November 15, 2005

THE BAYARD FIRM
Richard D. Kirk (Bar No. 922)
222 Delaware Avenue, 9th Floor
P. O. Box 25130
Wilmington, DE 19899
(302) 429-4208
rkirk@bayardfirm.com
Attorneys for NOVA Information Systems, Inc.

OF COUNSEL:
Mark C. Scarsi
Michelle L. Davidson
Vision L. Winter
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
(213) 430-6000

## I.   <u>INTRODUCTION</u>[1]

LML's motion for summary judgment of infringement against Nova Information Systems, Inc. is high on speculation and low on evidence.  In fact, LML's supposed expert, Dr. Tinkel, *has no actual knowledge of how the accused Nova system operates*.  Even if this Court were to completely adopt LML's claim constructions, LML's motion must fail because LML has failed to meet its burden of coming forward with evidence of infringement.

Not only does LML fail to introduce affirmative evidence supporting its motion, LML ignores clear evidence in the record that demonstrates non-infringement.  LML's application of it own claim constructions is no better.  LML applies some of its constructions but then simply ignores others where LML has determined that it can not make a straight-faced infringement argument.  This is particularly true for the "negotiable instrument" and "any bank check" limitations.

LML has ostensibly moved for summary judgment based on its proposed claim constructions and not those advocated by the Defendants.  Accordingly if the Court grants *any* of the Defendants' constructions, LML's motion must fail.[2]  Thus, the Court can immediately deny this motion, if it accepts defendants claim constructions for any of the following limitations:

- "without using the check [or bank check] as a negotiable instrument,"

---

[1] Exhibits cited in this brief are attached to the concurrently filed Declaration of Vision Winter in Support of Defendant Nova Information Systems, Inc.'s Response To Plaintiff LML Patent Corp.'s  Motion For Summary Judgment Of Infringement ("Winter Decl.").  Citations to patent text in this brief are of the form x:y, where "x" represents the column number and "y" the line number.  Citations to deposition transcripts and some letters are in the form x:y where "x" represents the page number and "y" represents the line number.

1

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ......................................................................................1

II.    SUMMARY OF ARGUMENT ....................................................................2

III.   BACKGROUND ........................................................................................4

    A.     The '988 Patent ...............................................................................4

    B.     Nova's Electronic Check Service ....................................................6

IV.    LEGAL STANDARD.................................................................................7

V.     LML IS NOT ENTITLED TO SUMMARY JUDGMENT OF
      INFRINGEMENT AS TO ANY CLAIM OF THE '988
      PATENT ....................................................................................................8

    A.     Nova Does Not Meet The "Negotiable Instrument"
        Limitation Regardless Of Which Construction Lml
        Adopts To Support Its Motion ........................................................9

        1.     Nova Does Not Meet The Limitation That The
            Paper Check Is Used As A Source Of
            Information And Is Not Accepted Or Processed ...........................9

        2.     Nova Does Not Infringe Based On The Plain
            And Ordinary Meaning Of The "Without Using
            The Check As A Negotiable Instrument"
            Limitation...................................................................................10

    B.     The Nova Electronic Check Service Does Not Infringe
        Any Of The Asserted Claims Because Nova Cannot
        Read Or Receive Consumer Bank Account Information
        From "Any Bank Check".................................................................13

        1.     The Nova Electronic Check Service Cannot
            Read Or Receive Consumer Bank Account
            Information From Certain Types Of Checks ...............................13

        2.     Because The Nova System Cannot Read Certain
            Types Of Checks, The Check Information
            Cannot Enter The Nova System...................................................16

    C.     The Nova Electronic Check Service Does Not Require
        Verification That Consumer Bank Account Information
        Is Accurately Read At The Point Of Sale Terminal .................18

    D.     The Nova Electronic Check Service Does Not Read The
        MICR Line For The Sole Purpose Of Identifying And
        Reading The Consumer Bank Account Information .................19

VI.    SUMMARY................................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

Cases

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ......................................................................................... 7

*Bell Atlantic Network Servs., Inc. v. Covad Communications*
    *Group, Inc.,*
    262 F.3d 1258 (Fed. Cir. 2001) ...................................................................... 19

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,*
    45 F.3d 1303 (Fed. Cir. 1998) ......................................................................... 7

*General Electric v. Nintendo Company,*
    179 F.3d 1350 (Fed. Cir. 1999 .......................................................................... 7

*Nutrinova Nutrition Specialties & Food Ingredients GmbH v. U.S. Int'l*
    *Trade Comm'n,*
    224 F.3d 1356 (Fed. Cir. 2000) ........................................................................ 7

*Rockwell Int'l Corp. v. U.S.,*
    147 F.3d 1358 (Fed. Cir. 1998) ........................................................................ 8

*Toro Co. v. White Consol. Indus., Inc.,*
    199 F.3d 1295 (Fed. Cir. 1999) ...................................................................... 18

*Transclean Corporation v. Bridgewood Services, Inc.,*
    290 F.3d 1364 (Fed. Cir. 2002) ........................................................................ 8

*Ultra-Tex Surfaces Inc. v. Hill Brothers Chemical Co.,*
    204 F.3d 1360 (Fed. Cir. 2000) ........................................................................ 7

*Wang Labs., Inc. v. America Online, Inc.,*
    197 F.3d 1377 (Fed. Cir. 1999) ...................................................................... 18

*Zodiac Pool Care, Inc. v. Hoffinger Industries, Inc.,*
    206 F.3d 1408 (Fed. Cir. 2000) ........................................................................ 8

## **Rules**

Fed. R. Civ. P. 56(c) ............................................................................................. 7

LA2:783838.1

- "subsequently transmitting transaction event information to a bank for subsequent automated clearing house operations"

- "enabling automated clearing house communications for transferring funds"

- "verifying that account numbers were accurately read at the point of sale terminal"[3] or

- "adapted to receive consumer bank account information from any bank check."[4]

Because LML cannot demonstrate that there are undisputed facts that support its infringement claims, the Court should deny LML's motion for summary judgment.

## II.    SUMMARY OF ARGUMENT

Nova offers a variety of services to merchants to handle different forms of payments from customers. Since 2003, one of these services has been Nova's Electronic

---

[3] This limitation only applies to claims 16 and 18.

[4] LML relies on its constructions of these terms in its Motion for Summary Judgment:
  reliance on LML's construction of "any bank check" (Ex. C at 7, n.4. LML's Motion for Summary Judgment);
  reliance on LML's construction of "without using the check as a negotiable instrument" (*Id*. at 12 and 14) (stating "[u]nder LML's construction of . . . "without using the bank check as a negotiable instrument" Nova's ECS literally satisfies this element" and "[u]nder this proper construction, the element is literally present in Nova's products and services");
  reliance on LML's construction of "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations" (*Id*. at 27) (stating [u]nder this construction, this element is literally present in Nova's ECS");
  reliance on LML's construction of "enabling automated clearing house communications for transferring funds" (*Id*. at 12-14) ("stating that [u]nder LML's construction of . . . Nova's ECS literally satisfies this element");
  reliance on LML's construction of "adapted to receive consumer bank account information from any bank check" (*Id*. at 7);
  reliance on LML's construction of "verifying that account numbers were accurately read at the point of sale" (*Id*. at 25) (stating that "[b]ased on the normal and customary meaning of these terms [LML's proposed construction], this claim element is present in Nova's ECS").

Check Service ("ECS"), one of the accused products in this action.[5]  Nova's ECS system allows a merchant to take a completed and signed check from the customer and process it using a Magnetic Ink Character Recognition ("MICR") reader that reads the ABA transit/routing number, account number and check number directly from the check.

In attempting to make out a case for infringement, LML adopted an improperly broad reading of the patent – so broad that it would read on the prior art which LML disclaimed during the application process.  However, even under LML's improperly broad claim construction, the fact remains that Nova's system is fundamentally different:

- Nova's system requires that merchants accept and process checks in order to transfer funds.  Under LML's proposed construction, however, every claim of the patent requires a process whereby merchants use the check as a source document which is not *accepted or processed*.  Based on this limitation alone, summary judgment of infringement is inappropriate.

- Nova's system cannot read or accept consumer bank account information from *any* regular check.  For example, the Nova system cannot handle payroll checks or government checks.  Under LML's proposed construction, however, each claim of the patent requires a system that can accept any regular check.  Based on this limitation alone, summary judgment of infringement is inappropriate.

- Under LML's constructions, Claims 2, 8, 9, 10, 11, and 16 require that the check processing system read information off the check for the *only purpose* of reading (or obtaining or eliciting) the routing and account number.  Nova , however, reads the information off the check for additional purposes, such as obtaining the check number.  Based on this unmet limitation, summary judgment of infringement is inappropriate as to

Claims 2, 8, 9, 10, 11, and 16.

- Under LML's constructions, Claims 8 and 16 require the steps of verifying that account numbers were accurately read at the point of sale. Nova does not perform a verification step. Based on these unmet limitations, summary judgment of infringement is inappropriate as to Claim 16.

The Nova Electronic Check Service does not operate in the way claimed in the patent. Based on these fundamental differences and LML's failure to show infringement, the Court should deny LML's motion for summary judgment of infringement.

## III.    **BACKGROUND**

### A.    **The '988 Patent**

The '988 patent generally describes a system and method for converting paper checks to electronic transactions at the point of sale, using the check "as the basic source of identification of the individual and of the individual's bank and whereby the bank account is debited." (Ex. A at 1:13-15, '988 Patent). The United States Patent and Trademark Office (PTO) did not allow the '988 patent claims until *after* LML narrowed the claims to a system which processed transactions "without using the check as a negotiable instrument" (or corresponding language), and further had the capability to transfer funds using account information from "any bank check" or "any consumer bank check." Accordingly, the '988 patent claims require very specific features not present in Nova's Electronic Check Service.

The '988 patent includes three independent claims, numbered 1, 8 and 9. Claim 1 is representative:

1.    A checkwriting point of sale system comprising:

a point of sale terminal adapted to receive consumer bank account information from *any bank check*;

a central computer system;

4

> first communications means integral to said point of sale terminal for electronically communicating with the central computer system;
>
> memory means integral to said point of sale terminal for temporarily storing the consumer bank account information;
>
> the central computer system having second communication means for receiving information from a plurality of said point of sale terminals;
>
> the central computer system second communication means enabling said central computer system to communicate with external databases for performing a consumer bank account status search and further **enabling automated clearing house communication for transferring funds without using the bank check as a negotiable instrument**.

(*Id.* at 11:36-56).[6]   An "automated clearing house" ("ACH") referred to in claim 1 is a network of entities, typically financial institutions, that work together to electronically transfer funds between bank or checking accounts.

Claims 8 and 9 recite limitations similar to those highlighted in claim 1. Claim 8 is a process claim, and recites "presenting any bank check specimen" to a point of sale terminal, reading magnetic ink numbers "without using the check as a negotiable instrument," and transmitting transaction information for "subsequent automated clearing house operations." (*Id.* at 12:21-42). Claim 9 is a system claim, and recites means for reading magnetic ink numbers on "any consumer bank check," and means for "enabling automated clearinghouse communication for transferring funds without using a bank check as a negotiable instrument." (*Id.* at 12:43-67).

### B.    Nova's Electronic Check Service

The Nova Electronic Check Service[7] is a process that converts certain types of checks[8] to electronic transactions, processing check payments in a way similar to the process used for credit card payments.

_____

[6] Unless otherwise indicated, emphasis in this brief has been added.

[7] ███████████████████████████████████████████████████████

For eligible checks, Nova requires the consumer to completely fill out and sign the check before presenting it to the merchant, just as the consumer would if the check were not going to be electronically processed. (*See* Declaration Of Amy Gutierrez in Support Of Defendant Nova Information Systems, Inc.'s Response To Plaintiff LML Patent Corp.'s Motion For Summary Judgment of Infringement ("Gutierrez Decl.") at ¶ 5).





[REDACTED]

## IV.  <u>LEGAL STANDARD</u>

A court can only grant summary judgment when there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law.  (*See*, Fed. R. Civ. P. 56(c)).  Thus, "[i]n determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent."  *General Electric v. Nintendo Company*, 179 F.3d 1350, 1353 (Fed. Cir. 1999) (quoting *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1307 (Fed. Cir. 1998)).  Established law requires that "[t]he evidence of the nonmovant [Nova] is to be believed, and all justifiable inferences are to be drawn in [Nova's] favor."  *Transclean Corporation v. Bridgewood Services, Inc.,* 290 F.3d 1364, 1369 (Fed. Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

As the patentee, the burden of proving infringement rests squarely on LML.  "[A] court must 'view the evidence presented through the prism of the substantive evidentiary burden that would inhere at trial.'"  *Rockwell Int'l Corp. v. U.S.*, 147 F.3d 1358, 1362 (Fed. Cir. 1998) (quoting *Anderson*, 477 U.S. 242 (additional internal quotations and citations omitted)).  "[I]t is axiomatic that the patentee bears the burden of proving infringement."  *Ultra-Tex Surfaces Inc. v. Hill Brothers Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000); *see Nutrinova Nutrition Specialties & Food Ingredients GmbH v. U.S. Int'l Trade Comm'n*, 224 F.3d 1356, 1359 (Fed. Cir. 2000) ("As a general proposition, the law places the burden of proving infringement on the patentee who alleges it.").

7

Indeed, in order prove literal infringement,[11] LML must prove that the Nova Electronic Check Service product satisfies *each and every limitation* of the asserted patent claims. *See Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.*, 206 F.3d 1408, 1415 (Fed. Cir. 2000) ("Absent any limitation of a patent claim, an accused device cannot be held to literally infringe the claim."). If *any* limitation of a claim is absent from the Nova Electronic Check Service, then the Nova Electronic Check Service cannot be held to literally infringe that claim. *See id.*

## V.    LML IS NOT ENTITLED TO SUMMARY JUDGMENT OF INFRINGEMENT AS TO ANY CLAIM OF THE '988 PATENT

Although Nova has a range of non-infringement defenses, this opposition focuses on five clear claim limitations that are absent from the Nova Electronic Check Service. Since LML has only alleged infringement under its proposed claim constructions, Nova refers, herein, to those constructions and not the constructions advocated by the Defendants.[12]  The five claim limitations are:

1.  Nova does not meet the limitation of "without using the bank check as a negotiable instrument."[13]

2.  The Nova ECS system does not read the MICR information for the "sole purpose" of obtaining consumer bank account information.[14]

3.  Nova does not verify that consumer bank account information was accurately read at the point of sale terminals.[15]

---

[11] LML has only alleged literal infringement in their motion for summary judgment. (*See* Ex. C, LML's Motion for Summary Judgment).
[12] Not only does Nova not infringe the '988 patent under LML's construction of the disputed claim terms, but Nova is entitled to summary judgment of non-infringement if this Court adopts Defendants' construction of certain claim terms. (*See* Ex. D, Nova's Motion for Summary Judgment of Non-Infringement).  In fact, Nova is entitled to summary judgment of non-infringement even under many of LML's proposed constructions. *See id.*
[13] LML has construed the limitation "without using the [bank] check as a negotiable instrument" to mean "where the paper check is used as a source of information, and is not accepted or processed." (Ex. B, Joint Proposed Claim Construction Statement).
[14] LML has relied on the ordinary meaning of "for the sole purpose." (*Id.*)

8

4. The Nova ECS system cannot accept, or even read, information from "any" bank check.[16]

5. The Nova ECS system does not enable automated clearing house communications for transferring funds or transmit transaction event information to a bank for automated clearing house operations based on the consumer bank account information obtained from any bank check presented at the point-of-sale.[17]

**A.** **Nova Does Not Meet The "Negotiable Instrument" Limitation Regardless of Which Construction LML Adopts To Support Its Motion.**

**1.** **Nova Does Not Meet The Limitation That The Paper Check Is Used As A Source Of Information And Is Not Accepted Or Processed.**

LML expressly relies on the construction of "without using the check as a negotiable instrument" as "where the paper check is accepted as a source of information and is *not accepted* or *processed*."[18] Under LML's construction, this limitation has two elements: the paper check (1) is used as a source of information and (2) is not accepted or processed.

███████████████████████████████████████████████

███████████████████████████████████████████    ████████

---

[15] LML construes the limitation "verifying that account numbers were accurately read at the point of sale terminal" as "verifying that account numbers from the check were accurately read at the point of sale terminal." (*Id.*)

[16] LML has construed this "any bank check" limitation to mean "any regular check used to draw funds from a normal bank or credit union checking account." (Ex B, Joint Proposed Claim Construction Statement).

[17] LML has construed the "enabling automated clearing house communication for transferring funds" to mean "enabling communication with an automated clearing house for electronically transferring funds" and "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations" as "subsequently transmitting the information relating to the transaction to a bank for subsequent automated clearing house operations." (*Id.*)

[18] LML states "[u]nder this proper construction, the element is literally present in Nova's products and services." (Ex. C at 14, LML's Summary Judgment Motion).



### 2.   Nova does not infringe based on the plain and ordinary meaning of the "without using the check as a negotiable instrument" limitation.

Although LML has clearly proposed construing the phrase "without using the check as a negotiable instrument" as "where the paper check is accepted as a source of information and is not accepted or processed," LML's motion appears to run from this construction. Apparently, LML now seeks to prevail on summary judgment on a new, heretofore undisclosed, construction of "without using the check as a negotiable instrument."[20]  Not only is it inappropriate to argue a separate construction at this point



after all parties have fully briefed the issues,[21] but LML, has once again, proposed a faulty construction.

LML's appears to base its new construction on the current NACHA definition of the phrase "negotiable instrument." LML, however, fails to consider the fact that claim terms are to be construed as of the date the claims were written.[22] LML's new construction violates this basic rule of claim construction by construing a claim limitation added in 1994 by using NACHA standards promulgated in 2005. Even with LML's improper "plain and ordinary" construction, however, Nova can easily demonstrate non-infringement.



_____

[22] The date appropriate for the construction of the claim term depends on whether the patent is granted an invention date of 1992 (filing date) or 1994 (when this specific limitation was added by amendment).





**B.**  **The Nova Electronic Check Service Does Not Infringe Any Of The Asserted Claims Because Nova Cannot Read Or Receive Consumer Bank Account Information From "Any Bank Check."**

    **1.**  **The Nova Electronic Check Service Cannot Read Or Receive Consumer Bank Account Information From Certain Types Of Checks.**

LML proposed the construction of "any regular check used to draw funds from a normal bank or credit union account" for the claim term "any bank check."  (Ex. B, Joint Proposed Claim Construction Statement).

The Nova Electronic Check Service cannot read or receive consumer bank account information from certain types of checks such as foreign checks.[25]

_____

[25] There are a number of "ineligible" checks which are relevant for the following argument.  However, for purposes of this argument, Nova will focus on an entire category of checks that cannot be read, meaning that the system cannot satisfy the



Not all checks are formatted the same way.  (Schutze Decl.¶ 17).  For example, there are different types of fonts used in the MICR lines on checks.  (*Id.*)  Two of the most popular fonts used throughout the world are the E13B MICR font (Fig. 1), which is used on checks from U.S. banks, and the CMC-7 MICR font (Fig. 2), which is used by many foreign banks.  (*Id.*)[27]  There are clear differences between the fonts even to an untrained eye.  (*Id.*)



Fig. 1

E13B MICR Font

Fig. 2

CMC-7 MICR Font



[27] For example, certain foreign countries including France and Israel use CMC-7 MICR font to print characters for magnetic recognition on checks.  (*See* Schutze Decl. ¶ 12, 13).



In order to prove that Nova can accept or read consumer bank account information from any bank check, LML relies on the testimony of Gerri Calabrese, Senior Director in Business Development.



LML also relies on the deposition of Amy Goodson, wherein Ms. Goodson testified that the Nova system can read the MICR information off of "a check" – an embodiment that was specifically disclaimed during the prosecution of the patent-in-suit. (*See* Defendants' Opening and Reply Brief Regarding Construction Of Disputed Claim Terms For The Patent-In-Suit). LML ignores the key word "any" in the limitation to make it appear that Nova satisfies this element. By showing that Nova can process "a" check, LML believes that they have proven that this element is satisfied. "Any" is the key to this limitation and LML again sidesteps the real issue – and Nova's indisputable non-infringement position.



###### 2. Because The Nova System Cannot Read Certain Types Of Checks, Check Information For Unread Checks Cannot Enter The Nova System.



Aside from demonstrating the obvious facts that many Nova terminals have keypads, LML does not, and cannot, offer any evidence to show that Nova can accept consumer account information though the keypads. (*Id.*) LML's purported inference that because the Nova terminals have keypads, merchants use those keypads to input consumer bank account information is simply wrong.



17

**C.    The Nova Electronic Check Service Does Not Require Verification That Consumer Bank Account Information Is Accurately Read At The Point Of Sale Terminal.**

LML relies on the ordinary meaning of "verifying that the account numbers were accurately read at the point of sale terminal." (Ex. B, Joint Proposed Claim Construction Statement). LML adopts the position that if the check is misread at the point of sale and the terminal prompts for a second read, that the terminal has verified that the MICR information was accurately read. Dictionary definitions of "verify" require determination of the truth or accuracy by, for example, comparison.[33] Re-reading based on an error message could not be considered "verification" that account numbers were accurately read. Consider an example to illustrate the point. If a merchant inserts a check the wrong way, the imager will give an error message and the merchant will correct the error and enter the check the right way. Obviously, no verification that account numbers were read has taken place. The MICR number was read once (when the check was correctly inserted) and there was no comparison, confirmation, substantiation, or other verification step.

When the preferred embodiment of a claim limitation is the *only* embodiment, the claims may be limited to that embodiment. *Toro Co.* v. *White Consol. Indus., Inc.,* 199 F.3d 1295, 1301-02 (Fed. Cir. 1999); *Wang Labs., Inc. v. America Online, Inc.,* 197 F.3d 1377, 1382-83 (Fed. Cir. 1999). The Federal Circuit has held that "when a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a

---

[33] Verify: To determine or test the truth or accuracy of, as by comparison, investigation, or reference. American Heritage Dictionary (2nd Coll. Ed. 1991); same definition, Webster's II New College Dictionary (1995); To establish the truth, accuracy, reality of, Merriman Webster's Collegiate Dictionary (10th Ed. 1998).

single meaning, he has defined that term 'by implication.'" *Bell Atlantic Network Servs., Inc. v. Covad Communications Group, Inc.,* 262 F.3d 1258, 1271 (Fed. Cir. 2001).

The Federal Circuit's decision in *Toro* is particularly instructive. *Toro* examined whether a claim should be construed as requiring that a ring be permanently attached to a vacuum cover, given that such a design was the only one described in the specification. The court began its analysis by observing that the specification and drawings depicted the ring as permanently attached to the cover, and that no other possible structure was illustrated. *Toro,* 199 F.3d at 1301. In particular, the court noted that "[n]owhere in the specification, including its twenty-one drawings, is the cover shown without the restriction ring attached to it." *Id.* The court concluded that a cover with a permanently attached ring was "not simply the preferred embodiment, it is the only embodiment." *Id.* Similarly, in the instant case, no other possible method of verification is contemplated in the patent-in-suit. Verification by comparison to the original check is not just the preferred embodiment, it is the only embodiment. (*See* Ex. A, '988 Patent).

Based on this unmet limitation alone, LML is not entitled to summary judgment of infringement as to claim 16.

### D.    The Nova Electronic Check Service Does Not Read The MICR Line For The Sole Purpose Of Identifying And Reading The Consumer Bank Account Information.

LML has provided the construction of "for the only purpose" for the claim limitation of "for the sole purpose." (Ex. B, Joint Proposed Claim Construction Statement). In the context of claims 2, 8, and 9, the construed limitation is "reading the magnetic ink character recognition numbers on a consumer check for the only purpose of identifying and reading the consumer bank account information" or insubstantial variations thereof ███████████████████████████████

---

[35] Claim 2: "reading magnetic ink character recognition numbers appearing on a consumer check for the sole purpose of identifying and reading the consumer bank account information." Claim 8: "reading the magnetic ink character recognition



Again, LML is simply wrong on the facts. The MICR line contains more that just the consumer bank account information, it also includes the check serial number which is transaction specific information. (Schutze Decl. ¶ 20). A typical U.S. check drawn on a personal checking account is shown below. (*Id.* at ¶ 19).



**Fig. 3. U.S. check drawn on personal checking account (*See* Schutze Decl. ¶ 19 and accompanying Fig. 3).**

A typical MICR line contains several pieces on information. The most relevant of these for this discussion are the ABA/Transit routing number that identifies the financial institution, the consumer account number that identifies a particular consumer bank account at the bank identified by the ABA/Transit routing number, and a check serial number (often referred to as the "check number") that is transaction specific, unique to each transaction. (*Id.* at ¶ 20). The ABA/Routing transit number and the

_____

information on the check for the sol purpose of obtaining consumer bank account information." Claim 9: "reading magnetic ink character recognition numbers on any consumer bank check for the sole purpose of eliciting consumer bank account information."

20

Account Number are all that is required to identify the source depository account. (Schutze Decl ¶ 19, 20, and accompanying Fig. 3).



LML criticizes Defendants' construction of limiting consumer bank account information to ABA/Transit routing number and account number as "arbitrarily" excluding the check serial number. There is noting arbitrary about excluding the check serial number from the '988 patent's use of the term "consumer bank account information." The references in the patent shows that consumer bank account information is limited to bank and account information that *does not* include the check serial number.

The specification and the drawings limit consumer bank account information (or consumer banking information) to the ABA/Routing Transit Number (or Transit Number) and Bank Account Number.

---

[36] LML's construction of "for the sole purpose." (Ex. B, Joint Proposed Claim Construction Statement).



**Fig. 4. Portion of Fig. 9 from the '988 patent showing "Customer Banking Information" limited to bank account number and transit number**

The patent-in-suit contemplates transmitting a "query for data center approval of the entire **ABA/Transit and personal or corporate checking account numbers**." (Ex. A at 10:29–31, '988 Patent). The specification is specific about what information constitutes "consumer bank account information," stating that "ACH settlement criteria mandate exact recall for the bank and checking account numbers to properly complete any debit request." (*Id.* at 10:49-51). Likewise, it is the "bank/checking account information" that is used by the system's central computer to determine whether the customer's account is in good standing. (*Id.* at 9:17-21, 37-42). Finally, the specification even contemplates dropping the check serial number if it is captured. (*Id.* at 10:31-34). Even based on LML's construction of "sole purpose," LML falls far short of showing that Nova reads the check for the "sole purpose" of identifying consumer bank account information. Based on this unmet limitation alone, LML is not entitled to summary judgment of infringement as to claims 2, 8, 9, 10, 11, and 16.

22

## VI.    SUMMARY

For the foregoing reasons, this Court should deny LML's motion that Nova literally infringes claims 1, 2, 4, 5, 6, 9, 10, 11, and 16 of the '988 patent.

November 15, 2005

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE  19899
(302) 429-4208
rkirk@bayardfirm.com
Attorneys for defendant,
NOVA Information Systems, Inc.

OF COUNSEL:
Mark C. Scarsi
Michelle L. Davidson
Vision L. Winter
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071
(213) 430-6000

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on November 28, 2005, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Richard K. Hermann, Esq.
Mary B. Matterer, Esq.
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th floor
P.O. Box 2306
Wilmington, DE 19801

William J. Marsden, Jr., Esq.
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114


Francis DiGiovanni, Esq.
Connolly, Bove, Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE 19899


The undersigned counsel further certifies that, on November 28, 2005, copies of

the foregoing document were sent by hand to the above local counsel and by first class

mail to the following non-registered participants:

Russell E. Levine, Esq.
Edward K. Runyan, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045


/s/ Richard D. Kirk (rk0922)

578216v1