## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP., | |
| Plaintiff, | |
| v. | C.A. 04-858 (SLR) |
| TELECHECK SERVICES, INC., ELECTRONIC CLEARING HOUSE, INC., XPRESSCHEX, INC. and NOVA INFORMATION SYSTEMS, INC., | **REDACTED PUBLIC VERSION** |
| Defendants. | |

## DEFENDANT NOVA INFORMATION SYSTEMS, INC.'S
## REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
## JUDGMENT OF NON-INFRINGEMENT

November 23, 2005

THE BAYARD FIRM
Richard D. Kirk (Bar No. 922)
222 Delaware Avenue, 9th Floor
P. O. Box 25130
Wilmington, DE  19899
(302) 429-4208
rkirk@bayardfirm.com
Attorneys for NOVA Information Systems, Inc.

OF COUNSEL:
Mark C. Scarsi
Michelle L. Davidson
Vision L. Winter
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA   90071-2899
(213) 430-6000

# TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................. 1

II.  LML HAS FAILED TO RAISE ANY GENUINE FACTUAL ISSUE
     WHETHER NOVA LITERALLY INFRINGES ANY ASSERTED
     CLAIMS .......................................................................................... 3

     A.   Nova Does Not Meet the Limitation "Without Using the Check as
          a Negotiable Instrument." ........................................................ 4

          1.   LML's Deliberate Misreading of Defendants' Construction
               Does Not Raise a Genuine Issue of Material Fact ........................ 5

          2.   LML's Hypothetical Infringement Argument Is Factually
               and Legally Flawed. ....................................................... 5

               a.   LML Has Not Shown That The Nova Electronic Check
                    Service Is Technically Capable of Effectuating a Funds
                    Transfer Without a Negotiable Instrument ................... 6

               b.   LML Has Expressly Disclaimed Point of Sale Systems
                    Where the Check Takes on the Status of a Negotiable
                    Instrument ................................................................. 7

               c.   Intel Did Not Promulgate a Broad Rule of Law Regarding
                    Infringement ............................................................... 10

          3.   Nova Does Not Infringe Under LML's Construction of the
               "Negotiable Instrument" Claim Term .......................................... 11

     B.   Nova Cannot Read, Receive, Accept, or Process "Any Bank
          Check" Based on Either Defendants' or LML's Construction of the
          Claim Limitation ....................................................................... 12

     C.   Nova Cannot Electronically Communicate with an Automated
          Clearing House for Transferring Funds Electronically Based upon
          the Consumer Bank Account Information Obtained from Any
          Bank Check Presented at the Point of Sale ................................. 13

     D.   Nova Does Not Read the MICR Line for the Sole Purpose of
          Obtaining the ABA/Transit Routing Number and the Account
          Number ....................................................................................... 14

     E.   ███████████████████████████████████████████
          ███████████  .................................................. 17

III. SUMMARY ........................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Application of Benson*,
   418 F.2d 1251 (C.C.P.A. 1969) .......................................................................... 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .......................................................................................... 3

*Cole v. Kimberly-Clark Corp.*,
   102 F.3d 524 (Fed. Cir. 1996) ............................................................................ 3

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
   424 F.3d 1293 (Fed. Cir. 2005) .......................................................................... 9

*Fantasy Sports*, [need full citation]
   287 F.3d at 1117 ............................................................................................... 9

*High Tech Medical Instrumentation v. New Image Indus.*,
   49 F.3d 1551 (Fed. Cir. 1995) ............................................................................ 9

*Intel Corp v. Int'l Trade Comm'n*,
   946 F.2d 821 (Fed. Cir. 1991) ....................................................................... 9, 10

*Markman v. Westview Instruments, Inc.*,
   53 F.3d 967 (Fed. Cir. 1995); *aff'd*, 517 U.S. 370 (1996) ...................................... 4

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) .......................................................................... 8

*S. Bravo Systems, Inc. v. Containment Technologies Corp.*,
   96 F.3d 1372 (Fed. Cir. 1996) ............................................................................ 3

*Ultra-Tex Surfaces Inc. v. Hill Brothers Chem. Co.*,
   204 F.3d 1360 (Fed. Cir. 2000) .......................................................................... 3

*ZMI Corp. v. Cardiac Resuscitator Corp.*,
   844 F.2d 1576 (Fed. Cir. 1988) ........................................................................ 11

*Zygo Corp. v. Wyko Corp.*,
   79 F.3d 1563 (Fed. Cir. 1996) ............................................................................ 9

## Rules

Fed. R. Evid. 701 ................................................................................................. 11

Fed. R. Evid. 801 ................................................................................................. 17

LA2:783731.1

## I.    **INTRODUCTION**

As the patentee facing summary judgment of non-infringement, LML has the burden of presenting a prima facie case of infringement for at least one claim. LML has completely failed to meet this burden. Instead, LML devotes most of its 40 page brief to a re-argument of its claim construction positions. Accordingly, if the Court adopts Defendants' correct claim construction positions, Nova's non-infringement summary judgment motion stands largely unopposed. In fact, if the Court adopts Defendants' construction for:

- "sole purpose of [obtaining] consumer bank account information" – Nova's request for summary judgment of non-infringement as to claims 2, 9, 10, 11, 16 and 18 is unopposed;

- "subsequently transmitting transaction event information to a bank for subsequent automated clearing house operations" – Nova's request for summary judgment of non-infringement as to claims 18 and 18 is unopposed;

- "enabling automated clearing house communications for transferring funds" – Nova's request for summary judgment of non-infringement as to claims 1, 2, 4, 5, 6, 9, 10 and 11 is unopposed; or

- "verifying that account numbers were accurately read at the point of sale terminal" – Nova's request for summary judgment of non-infringement as to claims 16 and 18 is unopposed.

In what has become a moving target, LML offers two new arguments in support of its assertion that Nova's system meets the "without using the check [or bank check] as a negotiable instrument." LML first argues that under Defendants' proposed construction, the limitation only applies to the exact point in time when the system transfers funds. In making this argument, LML deliberately misconstrues Defendants' construction.

1

Defendants' have properly construed the phrase "without using the check [or bank check] as a negotiable instrument" to mean that "the check, at no time, takes on the status of a negotiable instrument." Defendant's construction simply cannot be reasonably read to apply only to the exact time of the funds transfer or the automated clearing house communications.

For its second new argument, LML claims that as long as an accused system is hypothetically capable of conducting transactions where the check, at no time, takes on the status of a negotiable instrument, that system meets the "negotiable instrument" limitation. This argument fails for at least two reasons. First LML has failed to introduce any evidence that Nova's system is hypothetically capable of conducting transactions where the check, at no time, takes on the status of a negotiable instrument. Second, LML bases this new argument on a clear misapplication of the law. The "negotiable instrument" limitation – present in each of the patent claims – is a mandatory limitation. As such, LML cannot creatively read it out of the claims.

Finally, LML repeats its previous argument regarding "any bank check" and then spends a considerable portion of its opposition attempting to denigrate Nova's evidence that the Nova system cannot process "any check." Once again, however, LML has the wrong focus. On summary judgment, its was incumbent on LML to come forward with evidence that Nova's system could process "any check." LML failed to do so.

Because LML has failed to come forward with evidence demonstrating infringement of any of the claims in suit, the Court should grant Nova's motion for summary judgment of non-infringement.

II.    **LML HAS FAILED TO RAISE ANY GENUINE FACTUAL ISSUE
WHETHER NOVA LITERALLY INFRINGES[1] ANY ASSERTED CLAIMS**

The Court should enter summary judgment "against a party who has failed to
introduce evidence sufficient to establish the existence of an essential element of that
party's case, on which the party will bear the burden of proof at trial. *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322 (1986). "[T]he patentee bears the burden of proving
infringement." *Ultra-Tex Surfaces Inc. v. Hill Brothers Chem. Co.*, 204 F.3d 1360, 1364
(Fed. Cir. 2000). As the patentee alleging infringement, LML can only avoid summary
judgment of non-infringement by submitting competent evidence that the Nova's
Electronic Check Service satisfies every limitation of a patent claim. In contrast, Nova
only has to show that LML has failed to demonstrate that the Electronic Check Service
meets *any* limitation of the patent-in-suit. *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524,
532 (Fed. Cir. 1996) (To find literal infringement, each limitation of the claim must be
present in the accused device. Any deviation from the claim precludes such a finding).

LML's opposition papers fail to set forth facts that could support a finding of
infringement based on Defendants' construction of the claim terms. Indeed, LML has
failed to submit any evidence controverting the majority of Nova's non-infringement
positions. In its opening papers, and in this reply, Nova shows that, under Defendants'
construction, it does not meet five separate claim limitations – most of which are present
in every single asserted claim. For three of these limitations, LML does not even
question the fact that under the Defendants' construction of the claim terms, Nova is
entitled to summary judgment of non-infringement.

Patent infringement is a two step analysis. The first step is determining the
meaning and scope of the asserted claims. *Markman v. Westview Instruments, Inc.*, 53

---

[1] In its response papers, LML does not even allege that Nova infringes under the doctrine
of equivalents. Because Nova fully addressed the issue of infringement under the
doctrine of equivalents in its opening papers and LML does not contest Nova's
finding of no infringement, it will not be addressed here again.

3

F.3d 967, 976 (Fed. Cir. 1995); *aff'd*, 517 U.S. 370 (1996). The next step in the infringement analysis is to determine whether the accused products and processes fall within the scope of those properly construed claims. *Id*.

Nova argues the majority of its non-infringement positions based on the Defendants' claim construction. LML claims summary judgment is inappropriate but bases its arguments almost entirely on LML's construction. LML has simply not challenged the majority of Nova's non-infringement arguments. Accordingly, the Court should grant summary judgment in Nova's favor if the Court adopts any of Defendants claim constructions for the following limitations, under which LML did not argue infringement.

| Limitation | Claims |
|---|---|
| "sole purpose of [obtaining] consumer bank account information" | 2, 9, 10, 11, 16 and 18 |
| "subsequently transmitting transaction event information to a bank for subsequent automated clearing house operations" | 16 and 18 |
| "enabling automated clearing house communications for transferring funds" | 1, 2, 4, 5, 6, 9, 10, 11 and 14 |
| "verifying that account numbers were accurately read at the point of sale terminal" | 16 and 18 |

## A.  Nova Does Not Meet the Limitation "Without Using the Check as a Negotiable Instrument."

Defendants have properly construed the limitation "without using the check as a negotiable instrument" as "the check, at no time, takes on the status of a negotiable instrument." Defendants' based this construction on a detailed analysis of the patent, the prosecution history, and on the intrinsic and extrinsic materials. In its moving papers, Nova demonstrated that its system does not meet this limitation as properly construed. In response, LML advanced two new arguments. First LML argues infringement based on a

4

deliberate misreading of Defendants' construction. Next, LML essentially argues that the limitation in question is mere theoretical. Neither of these arguments has merit.

### 1.    LML's Deliberate Misreading of Defendants' Construction Does Not Raise a Genuine Issue of Material Fact.

LML argues that because the Nova system stamps checks as "Void Electronically converted" during a transaction, the check is not a negotiable instrument. Essentially, LML argues that since the check is no longer negotiable after voiding, the check cannot take on the "status of a negotiable instrument." The fact that Nova voids the check, however, does not support the conclusion that "the check, *at no time*, takes on the status of the negotiable instrument." LML tries to support it's position by arguing that the construed term is modified by "enabling automated clearing house communications." Even assuming *arguendo* that the part of the clause should be read as "enabling automated clearing house communications where the check, at no time, takes on the status of a negotiable instrument," LML still has not raised a genuine issue of material fact. The completed and signed check, the negotiable instrument, *enables the communication* in the Nova system. Because the ultimate funds transfer may occur after the voiding of the check simply does not support LML's argument that the check, at no time, takes on the status of a negotiable instrument in Nova's Electronic Check Service.

### 2.    LML's Hypothetical Infringement Argument Is Factually and Legally Flawed.

LML's second new argument is no better than its first. LML argues that because the Nova system could hypothetically process checks that are non-negotiable (i.e., checks that the consumer does not complete and sign), the Nova system infringes the "negotiable instrument" limitation. LML's argument is both factually and legally flawed. LML has presented no evidence that Nova's system can hypothetically process non-negotiable

5

checks.  Furthermore, the case law is clear that mandatory claim limitations, such as the one at issue here, are simply not optional.

           a.      **LML Has Not Shown That The Nova Electronic Check Service Is Technically Capable of Effectuating a Funds Transfer Without a Negotiable Instrument.**

       LML argues that the Nova Electronic Check Service is technically capable of effectuating a funds transfer with a check that is not a negotiable instrument.  LML, however, has no factual support for its argument.  Mr. Tinkel, LML's expert, has no firsthand experience with the Nova System, never having run a transaction on the accused product or even reviewed the source code provided to him.  Mr. Tinkel is not qualified to opine on the theoretical capabilities of the Nova system.  (Ex. A at 33:7-34:4, 34:13-36:1, 304:1-8, Tinkel Dep.)[2]  Even if Mr. Tinkel were qualified to opine on the theoretical capability of the Nova system, the paragraph LML cites from Mr. Tinkel's declaration simply does relate to any supposed ability to accept checks that are not negotiable instruments.[3]

       LML also relies on the testimony of Mr. Waldron, a Director of Change Management to support its theoretical argument.  Again, however, this testimony simply does not support LML's proposition.  ███████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[2] Exhibits cited in this brief are attached to the concurrently filed Declaration of Vision Winter in Support of Defendant Nova Information Systems, Inc.'s Reply In Support of Nova's Motion For Summary Judgment Of Non-Infringement ("Winter Decl.").

[3] ██████████████████████████████████████████████

██████████████████████████████████████████████████

[4] ██████████████████████████████████████████████

██████████████████████████████████████████████████



**b.** **LML Has Expressly Disclaimed Point of Sale Systems Where the Check Takes on the Status of a Negotiable Instrument.**





patent."[6]  LML added this limitation during prosecution, and used it to distinguish the invention over cited prior art.  In fact, the patentee distinguished 17 separate references on the grounds that "none of the references discloses a point of sale system that uses any bank check solely for the purpose of gathering customer information and *not as a negotiable instrument* . . . ."  (Ex. B at LML-EP 000207).[7]

As but one example, the patentee distinguished U.S. Patent 5,053,607 to Carlson et al. (Ex. C, '607 Patent) during the prosecution of the patent-in-suit on the basis that the '607 patent uses the check as a negotiable instrument.  (Ex. B at LML-EP 000192).  In the check processing method described by the '607 patent, the customer fills out and signs a check and presents it to the merchant, who inserts the check into the point-of-sale terminal.  (Ex. C at 22:57-66).  The merchant enters the amount of the transaction at the terminal keypad (*id*. at 23:4:13), and the terminal connects to the appropriate financial institution to complete the transaction electronically (*id*. at 23:60-24:44).  Upon completion of the electronic funds transfer, the '607 point-of-sale terminal prints information on the back of the check, including "the fact that the check is 'truncated' or cancelled at the point of sale."  (*Id.* at 10:13-53).  The check is cancelled and returned to the customer at the point of sale.  (*Id*. at 25:4-10).  Just as the doctrine of disclaimer would prevent LML from arguing that the method recited in the '607 Patent is technically capable of processing non-negotiable instruments and therefore infringing, LML is estopped from arguing that Nova infringes because it is technically capable of processing non-negotiable checks.  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) ("where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender").

---

[7] Unless otherwise noted, all emphasis in this brief has been added.

LML cites to *Intel Corp v. Int'l Trade Comm'n,* 946 F.2d 821 (Fed. Cir. 1991) for support that it is only the capabilities of the accused system that are important for analyzing infringement. LML's reliance is misplaced. In *Intel* the patent claimed a EPROM memory chip with page mode addressing capability. The Administrative Law Judge construed the claim as "[the EPROM] *can* implement page mode addressing when directed to do so by the programmable selection means." *Id.* at 831. Accordingly, the claim covered devices that had the capability to implement page mode addressing. *Intel* properly focused on what the claim required; if the claim only required that a device have the *capacity* to perform a function, one who makes a device with that capacity may infringe even though the maker's customers do not use the capacity. On the other hand, if the claim *requires* a structure or function, one who makes a device without that structure or function is not a direct infringer. *See High Tech Medical Instrumentation v. New Image Indus.*, 49 F.3d 1551, 1555-56 (Fed. Cir. 1995). *Intel* is not applicable in our case because it dealt with permissive claim language instead of a specific mandatory limitation. *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996) ("[b]y its literal terms, the claim involved in *Intel* only required 'capability' (i.e., 'programmable selection means')"); *High Tech*, 49 F.3d at 1555-56 (distinguishing *Intel* based on the permissive language of the claim at issue); *See Fantasy Sports*, 287 F.3d at 1117-18 (stressing the "programmable" language of the claim at issue in *Intel*).

Our case is more similar to the decision in *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc. Cross Medical Products* dealt with a claim that required an anchor seat be in contact with bone. The court there distinguished *Intel* in finding that "[t]he claim at issue in *Intel* called for a "programmable selection means "and thus required only that an accused device be capable of operating in the enumerated mode." 424 F.3d 1293, 1311-1312 (Fed. Cir. 2005) (citing *Intel*, 946 F.2d at 832). The court continued "[h]ere, the claim does not require that the interface be merely "capable" of contacting bone; the claim has a structural limitation that the anchor seat be in contact with bone."

9

*Id.* Similarly, in the present case, the claims of the patent-in-suit do not require the mere "capability" of conducting transactions "without using the check [or bank check] as a negotiable instrument;" the claims *require* that the system conducts transactions "without using the check [or bank check] as a negotiable instrument." The patentees added this specific limitation during prosecution and used it explicitly to argue patentability over multiple prior art references.

c.    ***Intel* Did Not Promulgate a Broad Rule of Law Regarding Infringement.**

LML cites to *Intel* for the proposition that "a device claim was infringed if it was capable of operating in the claimed mode and that actual operation in the claimed mode was not required." *Intel*, however, does not promulgate a broad rule of law regarding infringement analysis; rather, its ruling was tied to specific facts. The text of the opinion reads:

> ***Because the language of claim 1*** refers to "programmable selection means" and states "whereby ***when said alternate addressing mode is selected***" (emphases added), the accused device, to be infringing, need only be capable of operating in the page mode.

The expression of the negotiable instrument limitation in the claims of the '988 patent are inapposite. The '988 patent does *not* state "when the check is not used as a negotiable instrument;" the claims recite "***without using*** the check as a negotiable instrument." This limitation narrows infringing systems to those which do not use the check as a negotiable instrument. Claims 1 and 9 of the '988 patent do not simply recite a device or apparatus that is only structural in form. These claims recite systems that within them embed procedure or process. *See Application of Benson*, 418 F.2d 1251, 1254 (C.C.P.A. 1969) ("Sometimes, as here, a material is as well defined by its intended use as by its dimensions or other physical characteristics, and in this case we know of no reason why the limitation in terms of use should not be placed in the claims and given

10

meaning in their interpretation"). This procedure or intended use should not be read out of the claims as having no meaning or limitation, especially when the patentee overcame prior art by adding the limitation. *See ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1581 (Fed. Circ. 1988) (interpreting device claim to have a functional limitation, where such interpretation was further supported by rejection of independent claims during prosecution).

### 3. Nova Does Not Infringe Under LML's Construction of the "Negotiable Instrument" Claim Term.

Nova did not move for summary judgment of non-infringement under LML's improper construction of the "negotiable instrument" limitation. However, Nova has articulated its non-infringement argument under LML's construction in Nova's Response To LML's Motion for Summary Judgment Regarding Infringement. Nova showed that even under LML's improper construction which requires that "the check is used as a source of information, and is not accepted or processed," the Nova ECS system does not meet this limitation. In the Nova system,



Even under LML's

_____

[8] LML made an evidentiary objection in its response brief to Ms. Gutierrez' declaration based on Rule 701 of the Federal Rules of Evidence. LML has not specified what part or parts of the declaration is objectionable, and tellingly, LML has not filed anything with the Court to strike any portion of her testimony.

[9] █████████████████████████████████████████

improper construction Nova has demonstrated that the Electronic Check Service does not infringe this element (and hence any claim because this element is present in every claim).

**B.**     <u>Nova Cannot Read, Receive, Accept, or Process "Any Bank Check"</u> <u>Based on Either Defendants' or LML's Construction of the Claim</u> <u>Limitation.</u>



LML does not offer any argument that the Nova Electronic Check Service can read, receive, accept or process foreign checks ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ as required by the claims. Instead, LML spends a good portion of its brief arguing, unpersuasively, that Nova has not proved that the Electronic Check Service cannot read, receive, accept or process foreign checks. LML is clearly on the wrong track. Not only has Nova proven that Nova cannot read, receive, accept, or

---

[10] There are a number of "ineligible" checks which are relevant for the following argument. However, for purposes of this argument, Nova will focus on an entire category of checks that cannot be read, meaning that the system cannot satisfy the "reading or adapted to receive consumer bank account information from any check" limitation.

[11] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

process any check, but is LML's burden to prove that Nova can read, receive, accept, or process "any bank check" (which includes foreign checks).

LML's argument Nova did not timely produce the foreign checks Mr. Schutze used in his analysis is absurd. LML can clearly see from the face of the checks that all except one of the checks were written less than 30 days prior to the date of production,[12] and, importantly, before the deposition of Mr. Schutze.[13] LML's other argument are similarly unavailing including the false assertion that Nova can accept consumer bank account information through the keyboard terminal. LML has never presented any evidence to support these assertions other than the statement of its expert, Mr. Tinkel.



Nova based its non-infringement summary judgment argument on Defendants construction of the claim terms "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations," (claim 8) and enabling automated clearing house communication for transferring funds" (claims 1, 9).

---

[12] One check was written to Mark Mizrahi, counsel for ECHO, on December 1, 2004. However, there is no indication that this check was ever in the possession, custody, or control of Nova. In fact, in LML's own opposition papers, LML notes that the check was given to Mr. Schutze by Defendants counsel.
[13] As with LML's other evidentiary objections, it is telling that LML has made no effort to strike that portion of Nova's expert report despite having it, and the checks, for over two months.
[14]

LML devotes its entire argument to arguing its claim construction position and then arguing infringement under its construction. The result is that LML has not opposed Nova's motion for summary judgment if the Court grants Defendants' proposed claim construction.

      LML argues that:

> [i]ndeed, Nova's argument is based exclusively on Defendants incorrect claim construction which attempts to improperly rewrite the elements to include the phrase 'any bank check.' Consequently, Nova's motion should be denied on that basis alone.

(LML's Response Brief at 31). LML goes on to argue that "Nova presents no argument or evidence under LML's proposed construction . . . [c]onsequently, Nova's motion should be denied as a matter of law." By LML's tortured logic, since *all* of LML's summary judgment arguments regarding infringement are based on LML's improper claim constructions – the Court should deny LML's infringement motion *on that basis alone*.

      Notwithstanding LML's fundamental misunderstanding of the law, Nova has shown that the Nova Electronic Check Service cannot electronically communicate with an automated clearing house for transferring funds electronically based upon the consumer bank account information obtained from any bank check presented at the point of sale. Notably, other than the single unsupported statement that "even under Defendants' improper constructions, a genuine issue of material fact still exists" LML offers no absolutely no argument or analysis under Defendants' construction. If the Court adopts the correct claim construction position with respect to these two limitations, the Court should enter summary judgment of non-infringement as a matter of law.

**D.    Nova Does Not Read the MICR Line for the Sole Purpose of Obtaining the ABA/Transit Routing Number and the Account Number**

Nova based its non-infringement summary judgment argument on Defendants construction of the claim term "consumer bank account information." LML devotes its entire argument to arguing its claim construction position and then arguing infringement under its construction. The result is that LML has not opposed Nova's motion for summary judgment on this ground if the Court grants Defendants' proposed claim construction. If the Court accepts Defendants' claim construction argument as detailed in Defendants claim construction brief, the Court should enter summary judgment of non-infringement as to claims 2, 9, 10, 11, 16 and 18 – LML does not contest this fact.

As detailed in Defendants' claim construction brief,[15] claims 2, 9, 10, 11, 16 and 18 all require that a system read the MICR information off the check for the sole purpose of reading the consumer bank account information.[16] Consumer bank account information is the information related to the consumer's bank account, specifically the ABA/transit routing number and the bank account number.

The MICR line contains more that just the consumer bank account information, it also includes the check serial number which is transaction specific information. (Ex. H at ¶ 20, Schutze Decl.) A typical U.S. check drawn on a personal checking account is shown below. (*Id.* at ¶ 19).

---

[15] This non-infringement position is based on Nova's proposed construction of this term. If the Court chooses to adopt LML's proposed construction, Nova has additional non-infringement positions which it intends to present at trial.

[16] Claim 2 recites "reading magnetic ink character recognition numbers appearing on a consumer check for the sole purpose of identifying and reading the consumer bank account information." Claim 8 recites "reading the magnetic ink character recognition number information on the check for the sole purpose of obtaining the consumer bank account information." Claim 9 reads: "reading magnetic ink character recognition numbers on any consumer bank check for the sole purpose of eliciting consumer bank account information."



ABA/Routing
Transit Number

Account
Number

Check
Serial Number

Together, these two numbers identify
the source depository account

**Fig. 1. U.S. check drawn on personal checking account (*See* Ex. H at ¶ 19 and accompanying Fig. 3, Schutze Decl.)**

A typical MICR line contains several pieces on information. The most relevant of these for this discussion are the ABA/Transit routing number that identifies the financial institution, the consumer account number that identifies a particular consumer bank account at the bank identified by the ABA/Transit routing number, and a check serial number (often referred to as the "check number") that is transaction specific, unique to each transaction. (*Id.* at ¶ 20.) The ABA/Routing transit number and the Account Number are all that is required to identify the source depository account. (*Id.* at ¶ 19, 20, and accompanying Fig. 3.)

Additional guidance of what "for the only purpose"[17] means in the context of this patent comes from the attorney who prosecuted the '988 patent. ▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

---

[17] LML's construction of "for the sole purpose."


[18] ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆



Nova based its non-infringement summary judgment argument on Defendants construction of the claim term "verifying that account numbers were accurately read at the point of sale." LML devotes its entire argument to arguing its claim construction position and then arguing infringement under its construction. The result is that LML has not opposed Nova's motion for summary judgment on this ground if the Court grants Defendants' proposed claim construction. Consequently the Court should enter summary judgment of non-infringement as to claims 16 and 18.

## III.    **SUMMARY**

Nova has shown that LML failed to present a genuine issue of material fact and this Court should grant Nova motion for summary judgment of non-infringement as to claims 1, 2, 4, 5, 6, 9, 10, 11, 14, 16 and 18 of the '988 patent.

November 23, 2005                          THE BAYARD FIRM

                                           /s/ Richard D. Kirk (rk0922)
                                           222 Delaware Avenue, 9th Floor
                                           P.O. Box 25130
                                           Wilmington, DE  19899
                                           (302) 429-4208
                                           rkirk@bayardfirm.com
                                           Attorneys for defendant,
                                           NOVA Information Systems, Inc.

OF COUNSEL:
Mark C. Scarsi
Michelle L. Davidson
Vision L. Winter
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071
(213) 430-6000

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on November 28, 2005, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Richard K. Hermann, Esq.  
Mary B. Matterer, Esq.  
Morris James Hitchens & Williams LLP  
222 Delaware Avenue, 10th floor  
P.O. Box 2306  
Wilmington, DE 19801

William J. Marsden, Jr., Esq.  
Fish & Richardson, P.C.  
919 N. Market Street, Suite 1100  
P.O. Box 1114  
Wilmington, DE 19899-1114

Francis DiGiovanni, Esq.  
Connolly, Bove, Lodge & Hutz LLP  
The Nemours Building  
1007 North Orange Street  
Wilmington, DE 19899

The undersigned counsel further certifies that, on November 28, 2005, copies of

the foregoing document were sent by hand to the above local counsel and by first class

mail to the following non-registered participants:

Russell E. Levine, Esq.  
Edward K. Runyan, Esq.  
Kirkland & Ellis  
200 East Randolph Drive  
Chicago, IL 60601

Robert Jacobs, Esq.  
Mark B. Mizrahi, Esq.  
Belasco Jacobs & Townsley, LLP  
Howard Hughes Center  
6100 Center Drive, Suite 630  
Los Angeles, CA 90045

/s/ Richard D. Kirk (rk0922)

578216v1