IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP., | |
| Plaintiff, | |
| v. | C.A. 04-858 (SLR) |
| TELECHECK SERVICES, INC., ELECTRONIC CLEARING HOUSE, INC., XPRESSCHEX, INC. and NOVA INFORMATION SYSTEMS, INC., | **PUBLIC VERSION** |
| Defendants. | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

William J. Marsden (#2247)
Timothy Devlin (#4241)
Tara D. Elliott (#4483)
FISH & RICHARDSON P.C
919 N. Market Street, Suite 1100
Wilmington, DE 19899-1114

*Attorneys for TeleCheck Services, Inc.*

Richard D. Kirk (#922)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

*Attorneys for Nova Information Systems, Inc.*

Collins J. Seitz, Jr. (#2237)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19801

*Attorneys for Electronic Clearing House, Inc. and XpressChex, Inc.*

Dated: November 23, 2005

Public Version: December 1, 2005

## TABLE OF CONTENTS

**Page**

I.     iNTRODUCTION.................................................................................1

II.    Argument ........................................................................................2

     A.    Every Asserted Claim Is Anticipated by Higashiyama............................2

          1.    Higashiyama Discloses a "central computer system" Having a "second communication means" as Recited by the Claims....................................................3

          2.    Higashiyama Discloses a "first communication means integral to a point of sale terminal" .....................................5

          3.    Higashiyama Discloses a "resident third party database" and a "system subscriber database"..............................7

     B.    Defendants Are Entitled To Summary Judgment That The Asserted Claims Are Invalid Under 35 U.S.C. § 112 For Lack Of Enablement...........................................................................7

     C.    Defendants Are Entitled to Summary Judgment that the Asserted Claims Are Invalid Under 35 U.S.C. § 112 for Indefiniteness ........................................................................10

          1.    LML's Construction of the "Negotiable Instrument" Limitations Leads to Indefiniteness........................12

          2.    The Terms "Any Bank Check" and "Any Consumer Bank Check" Are Indefinite Under LML's Proposed Construction....................................14

     D.    The Remainder of LML's Allegations Are Meritless or Irrelevant.........................................................................15

          1.    Defendants Have Presented Evidence of Invalidity..................................................................15

          2.    David Kurrasch's Invalidity Expert Report Supplements Were Proper, and Defendants Have Provided Evidence That The '988 Patent Is Anticipated..............................................................16

III.    CONCLUSION...............................................................................17

i

<u>**TABLE OF AUTHORITIES**</u>

Page(s)

CASES

*Andersen Corp. v. Fiber Composites, LLC,*
   *No. Civ. 00-2548 (JNE/JG),* 2003 WL. 21754817 (D. Minn. July 21, 2003)..............15

*Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.,*
   73 F.3d 1573 (Fed. Cir. 1996).............................................................................11, 14

*Chiron Corp. v. Genentech, Inc.,*
   363 F.3d 1247 (Fed. Cir. 2004)..................................................................................13

*Elan Pharm., Inc. v. Mayo Foundation for Medical Education & Research,*
   346 F.3d 1051 (Fed. Cir. 2003)..................................................................................13

*Exxon Research and Engineering Co. v. United States,*
   265 F.3d 1371 (Fed. Cir. 2001)......................................................................11, 13, 14

*Fisher-Price, Inc. v. Graco Children's Prod., Inc.,*
   No. 05-1258, 2005 WL. 2899289 (Fed. Cir. Nov. 4, 2005) ........................................13

*Invitrogen Corp. v. Biocrest Manufacturing, L.P.,*
   424 F.3d 1374 (Fed. Cir. 2005)......................................................................11, 13, 14

*London v. Carson Pirie Scott & Co.,*
   946 F.2d 1534 (Fed. Cir. 1991)..................................................................................13

*Medtronic, Inc. v. Cardiac Pacemakers, Inc.,*
   721 F.2d 1563 (Fed. Cir. 1983)....................................................................................4

*Novo Industrial, L.P. v. Micro Molds Corp.,*
   350 F.3d 1348 (Fed. Cir. 2003)..................................................................................12

*Omniglow Corp. v. Unique Industrial, Inc.,*
   184 F. Supp. 2d 105 (D. Mass. 2002) ........................................................................15

*Permutit Co. v. Graver Corp.,*
   284 U.S. 52 (1931)....................................................................................................13

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.,*
   225 F.3d 1349 (Fed. Cir. 2000)....................................................................................2

*Standard Oil Co. v. American Cyanamid Co.,*
   774 F.2d 448 (Fed. Cir. 1985)..........................................................................13, 14

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

*Tracinda Corp. v. DaimlerChrysler AG,*
  362 F. Supp. 2d 487 (D. Del. 2005)..........................................................................16

*Union Pac. Resources Co. v. Chesapeake Energy Corp.,*
  236 F.3d 684 (Fed. Cir. 2001)...................................................................................12

**STATUTES**

35 U.S.C. § 112.........................................................................................................7, 10

Fed. R. Civ. P. 26(a)(2)(B) ...........................................................................................16

Fed. R. Civ. P. 26(e)(1)..................................................................................................16

Fed. R. Evid. 801(d)(2)(B)..............................................................................................16

Fed. R. Evid. 803 ...........................................................................................................15

I.     **INTRODUCTION**

Defendants submit this reply brief in support of their Motion for Summary Judgment of Invalidity, filed October 28, 2005.

In its Answering Brief, LML seeks to avoid anticipation by pointing to non-existent distinctions between the prior art and the '988 patent claims. LML cannot dispute that the prior art Higashiyama patent teaches the very concepts that LML seeks to find infringing here: reading a check to obtain bank account information, using that information to conduct an electronic check transaction, and handing the check back to the consumer so there is no need for the merchant to retain the check or carry it to a bank. There is also no dispute that Higashiyama is prior art to the '988 patent.

Instead, LML seeks to rely on a limited number of purported "distinctions" that ignore plain teachings of the Higashiyama reference and overlook alternative embodiments described by the reference. Read as a whole, Higashiyama discloses each and every element of the purported inventions of these claims. Given the evidence showing the presence of the asserted claim elements within Higashiyama, Defendants' motion should be granted.

The evidence also shows that the asserted claims of the '988 patent are not enabled. LML's arguments are based on the premise that the "any bank check" limitation has no relationship to the transfer of funds recited by the claims, but this reading is contradicted by the '988 patent itself. The claims recite that "funds" are transferred, and these funds must be associated with the "any bank check" limitation recited earlier in the claims. The '988 patent does not describe how one of ordinary skill in the art would conduct transactions using "any bank check" or "any consumer bank check," such as foreign checks, even under LML's construction of those terms.

LML's indefiniteness arguments miss the point of Defendants' motion. Case law establishes that a broad, ambiguous claim construction can render a claim indefinite, even

where a more narrow construction provides the clarity the law requires.  LML fails to cite this case law.  LML also cites no factual support showing that terms "accepted" and "processed" are defined in the patent or had recognizable meanings to one of ordinary skill in the art at the time the '988 patent was filed.  Likewise, LML provides no factual support showing that the words "regular" check and "normal" bank have any grounding in the '988 patent.  Instead LML would have the Court insert these inherently ambiguous words in the claim despite the indefiniteness problems they create.  Thus, even if LML's construction is adopted, the claims should be found invalid.

II.     ARGUMENT

A.     Every Asserted Claim Is Anticipated by Higashiyama

LML's memorandum in response to Defendants' invalidity summary judgment motion incorrectly asserts that Higashiyama does not disclose all of the features of the '988 patent.  Anticipation based on Higashiyama more readily meets the burden required for finding invalidity, because Higashiyama was never considered by the Examiner during prosecution of the '988 patent.  *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355-56 (Fed. Cir. 2000).

Detailed descriptions of Higashiyama and its application to the '988 patent claims are found in Defendants' brief in support of their motion for summary judgment of invalidity, (D.I. 353 at pp. 9-14), and in Defendants' brief in opposition to LML's motion for summary judgment of non-anticipation, (D.I. 431 at pp. 4-9, 13-20), including claim charts attached to each.  The sections below further address the specific arguments in LML's Answering Brief.  This evidence establishes that the asserted claims are anticipated, and no reasonable factual dispute exists to overcome summary judgment of invalidity.

2

**1.  Higashiyama Discloses a "central computer system" Having a "second communication means" as Recited by the Claims**

Claims 1, 8, and 9 of the '988 patent and their dependent claims recite a "central computer system." (Ex. A at 11:39 and 12:46.)[1] There is no reasonable factual dispute that Higashiyama discloses this element.

LML does not dispute that Higashiyama discloses a computer, labeled "backroom processor 204," that communicates with the point of sale terminal. Instead LML only disputes that this computer (1) serves multiple merchants, and (2) includes a recited "second communications means" to communicate with an external database for verifying transactions. (*See* D.I. 322 at pp. 21-28; *see also* D.I. 422 at pp. 12-14, 19-23.)

The first "issue" is a red herring based on an improper reading of the '988 patent. No limitation recited in the claims requires that the system and method function for multiple merchants. LML fails to point to any such limitation, because it simply does not exist.

**REDACTED**

Moreover, Higashiyama itself describes a system with terminals in separate merchant locations, connected to a centralized processing system. (Ex. C at 7:25:33.) Nothing in the '988 patent claims requires anything more than what is undisputedly disclosed in Higashiyama.

With respect to the second issue, LML's arguments regarding the "second communication means" ignore the entirety of Higashiyama. Contrary to LML's arguments, evidence establishes that the Higashiyama backroom processor includes a second communication means (the "first" communication means is associated with the

---

[1] For convenience, the Exhibits supporting this Reply Brief are labeled consecutively with Exhibits from Defendants' Opening Brief. Accordingly, unless otherwise specified, Exhibits A through O cited in this brief are attached to the previously-filed Declaration of Timothy Devlin in Support of Defendants' Motion for Summary Judgment of Invalidity. Exhibits P through V are attached to the co-filed Declaration of Timothy Devlin in Support of Defendants' Reply Brief for Summary Judgment of Invalidity. Citations to patent text in this brief are of the form x:y, where "x" represents the column number and "y" the line number.

3

point of sale terminal).  Importantly, there is no dispute that the backroom processor

includes *some* communication means.  LML concedes that the backroom processor can at

least communicate to upload "data records" to a bank or clearinghouse.  (D.I. 322 at p.

22; D.I. 422 at pp. 12, 13, 21.)  Also, there is no dispute that Higashiyama discloses

communicating with an external databases such as the SCAN database for verifying

transactions.  (D.I. 322 at p. 24.)

The crux of LML's argument is that, despite this undisputed teaching, no one of

ordinary skill in the art could understand from the disclosure of Higashiyama that the

backroom processor could communicate with an external database.  LML attempts to

focus attention on one embodiment in which the transaction is complete before

information is provided to the backroom processor.  (D.I. 422 at p. 21.)  According to

LML, this prohibits a reading of Higashiyama in which the backroom processor

communicates with a third party database.

LML's argument is legally incorrect.  In any invalidity analysis, the prior art

reference *must be viewed as a whole*.  *See, e.g., Medtronic, Inc. v. Cardiac Pacemakers,*

*Inc.*, 721 F.2d 1563, 1579 (Fed. Cir. 1983).  There is no support for LML's narrow

reading of Higashiyama that ignores one of the embodiments expressly described in the

patent.  In fact, Higashiyama discloses a second embodiment, in which the data record

generated by the point of sale terminal is sent to the backroom processor *immediately*.

(Ex. C at 5:5-6.)

REDACTED

When immediately sending the data record to the backroom processor, any

communication with the third party database to perform the described verification must

take place through the backroom processor, not the point of sale terminal.  Otherwise, the

data record would not be "immediately" sent to the backroom processor, as described by

---

[2] Unless otherwise indicated, emphasis in this Brief has been added.

4

the specification. Accordingly, the backroom processor includes a communication means (the "second" communication means) that enables communication with a third party database for performing verification. While LML attacks this evidence as "attorney argument," this conclusion flows directly from the disclosure of Higashiyama itself.

REDACTED

Contrary to LML's assertions, Higashiyama itself establishes that one of ordinary skill in the art would understand that the second communication means could communicate with the external database. Defendants' motion for summary judgment of anticipation should be granted on this issue.

### 2. Higashiyama Discloses a "first communication means integral to a point of sale terminal"

Higashiyama also discloses a "first communications means integral to said point of sale terminal for electronically communicating with the central computer system." (Ex. C at 11:40-43; 12:47-49.) Indeed, Higashiyama expressly discloses this element: "POS terminal 201 is connected to backroom processor 204 . . . ." (*Id*. at 3:29-33.) Figure 2 of Higashiyama shows this direct connection between the point of sale terminal 201 and the backroom processor 204, establishing that the terminal 201 must have some communication means to facilitate the connection:



In its Answering Brief, LML ignores these facts and instead attempts to focus attention on other elements disclosed by Higashiyama. LML asserts that the "telecommunications" unit is not "integral" to the point of sale terminal. (D.I. 422 at pp. 16-18.) This again ignores embodiments expressly described in the prior art reference. Higashiyama specifically teaches that the point of sale terminal is connected to the backroom processor. (Ex. C at 3:29-33.) In the same paragraph, Higashiyama discloses that the telecommunications unit *may be* connected to POS terminal 201, "if desired." (*Id.* at 3:33-34.) In the alternative embodiment, the terminal itself must have means to facilitate the direct connection to backroom processor. Indeed, this is the very arrangement shown in Figure 2 above.

LML has cited no evidence that contradicts the disclosure of this embodiment in Higashiyama. Summary judgment on this issue should be granted.

6

### 3. Higashiyama Discloses a "resident third party database" and a "system subscriber database"

Claims 5 and 11 of the '988 patent further require a "resident third party database," (Ex. A at 12:6; 13:6.) and claim 6 requires a "system subscriber database." (*Id.* at 12:13.) Both of these elements are disclosed in Higashiyama. LML does not dispute that Higashiyama discloses a third party database. Instead, LML suggests one of skill would not understand from Higashiyama that the database could reside on the central computer. (D.I. 422 at pp. 21-22.)

Higashiyama describes verifying check authorization by using databases such as the SCAN database or databases offered by TeleCheck or Telecredit. (Ex. C at 4:14-24.) Nothing in Higashiyama limits the location of where such a database is maintained. Mr. Kurrasch's anticipated testimony further supports that the database could be located resident on a central computer. (Ex. R at pp. 47, 57, Ex. 7; Ex. V at Part 3.) The '988 patent itself confirms this understanding of one of ordinary skill in the art: "As presently configured the central computer 329 already has a third party database known as the SCAN (trademark) database 333 resident on the central computer." (Ex. A at 7:35-39.)

As for the "system subscriber database," there is no legitimate dispute that in order for Higashiyama's dial-up authorization to function properly, a database of eligible merchants must be maintained.

### REDACTED

In short, no reasonable jury could find that the '988 patent is not anticipated by Higashiyama. Defendants' motion should be granted.

### B. Defendants Are Entitled To Summary Judgment That The Asserted Claims Are Invalid Under 35 U.S.C. § 112 For Lack Of Enablement

None of the asserted claims are enabled under 35 U.S.C. § 112 because the written description of the '988 patent fails to sufficiently describe the manner and process of receiving information and transferring funds using "any bank check" or "any consumer

7

bank check." A detailed analysis of how the '988 patent is not enabled is found in Defendants' brief in support of their motion for summary judgment of invalidity, (D.I. 353 at pp. 15-16), and in Defendants' brief in opposition to LML's motion for summary judgment of validity. (D.I. 438 at pp. 20-26.) Specific LML arguments are addressed below.

LML spends most of its argument attacking Defendants' proposed claim construction rather than citing evidence. As explained in Defendants' claim construction papers, the asserted claims must be construed to require the capability to receive information and transfer funds using *any* type of check, including business checks and foreign checks. (D.I. 288 at pp. 18-20; D.I. 297 at pp. 9-11.) This language flows directly from the claims themselves. Claim 1, for example, recites transferring "funds" using information from "the bank check." (Ex. A at 11:36-56.) These funds must be associated with the "any bank check" limitation recited earlier in the claim. (*Id.*) The claim language itself requires the ability to transfer funds using information from any bank check at the point of sale.

Defendants' construction is also consistent with the patent specification, which states that the very "Field" of the patent relates to "the integration and processing of purchases whereby a check is used as the basic source of identification of the individual and of the individual's bank and *whereby the bank account is debited*." (*Id.* at 1:11-15.) Thus the patent requires transferring funds from "any bank check" or "any consumer bank check," including foreign checks. This is true even under LML's proposed construction of the phrases "any bank check" and "any consumer bank check," which encompass "regular" foreign checks drawn on "normal" foreign bank accounts. (*See* D.I. 281; D.I. 286 at pp. 8, 18-21; D.I. 422 at pp. 30 n.19, 39.)

The '988 patent, however, contains no description in the specification, drawings or claims explaining how one of ordinary skill in the art would conduct transactions using "any bank check" or "any consumer bank check" (collectively referred to as the "any

8

bank check" limitations). For example, many foreign or business checks cannot be read by the types of check readers described in the '988 patent, and the patent itself contains no guidance as to how checks printed with different font conventions and other variations would be readable in the claimed system, describing only that the system uses a "MICR reader." (Ex. A at 5:36-61; 9:9-16; 10:6-52.) Similarly, there is no disclosure regarding how to transfer funds using foreign checks. Issues related to foreign currency translations and foreign regulatory issues (a necessary consideration in the check processing field) are not addressed in the specification of the '988 patent.

This holds true even under LML's construction of "any bank check," which seeks to limit the phrase to "regular" checks drawn on "normal" bank accounts. (D.I. 281.) The '988 patent fails to explain how funds could be transferred using even a "regular" foreign check from a "normal" foreign account. The patent includes no guidance and no working examples regarding these issues whatsoever.

At the time the '988 application was filed, one of ordinary skill in the art would have had to devote substantial time and energy towards evaluating foreign regulatory requirements, identifying those modifications that would be required to process the printing on foreign checks, and modifying the system to perform any required foreign currency translation. (Ex. R at ¶ 373, Ex. S at ¶ 324.) The challenges faced by one of ordinary skill in the art in developing such a system would have been significant, especially since the Internet had not yet come into widespread use by that time. (D.I. 325 at p. 23 n.11.)

REDACTED

9

Nothing in the specification or claims of the '988 patent teaches one of ordinary skill in the art, without undue experimentation, to address issues relating to foreign currency translation, or any of the myriad foreign regulatory and technical requirements governing the processing of checks presented for payment. (Ex. R at ¶ 373; Ex. S at ¶ 324.)  The anticipated testimony of Defendants' expert, Mr. Kurrasch, will provide further support that one of ordinary skill in the art would not be able to practice the claims after reading the '988 patent. (*See* Ex. R at ¶ 373; Ex. S at pp. 73-74.)

LML has no countervailing evidence on this issue.  Instead of presenting evidence, LML continues to argue against Defendants' proposed claim construction. LML asserts that, "to be enabled, claim 8 (and claims depending therefore) only requires an enabling disclosing for presenting 'any' bank check to the point of sale terminal – not all types of checks . . . ." (D.I. 422 at p. 30 n.18.)  This argument makes no sense because the claim requires the capability to use "*any* bank check," not "*a* bank check."  The term "any" cannot mean "a," particularly where the word "a" was changed to "any" during prosecution to overcome rejections based on the prior art. (Ex. T at LML-EP 000184.) Furthermore, LML's argument cites no evidence explaining how one of ordinary skill in the art would be able to practice the invention using foreign checks during the relevant time period.

No reasonable jury could find that the asserted claims of the '988 patent are enabled, and Defendants' summary judgment motion should be granted.

**C.     Defendants Are Entitled to Summary Judgment that the Asserted Claims Are Invalid Under 35 U.S.C. § 112 for Indefiniteness**

For two separate reasons, if LML's construction is adopted one of ordinary skill would not be able to determine the metes and bounds of the invention purportedly described in the asserted claims.  First, under LML's proposed construction of the "negotiable instrument" limitations, one of ordinary skill in the art would have no clear understanding of the limits of the terms "accepted" and "processed."  Second, under

10

LML's proposed construction of the "any bank check" limitations, the claims are indefinite because one of ordinary skill in the art would not understand what constitutes a "regular" check or a "normal" account.  A detailed analysis of these issues is found in Defendants' brief in support of their motion for summary judgment of invalidity, (D.I. 353 at pp. 16-20), and in Defendants' brief in opposition to LML's motion for summary judgment of validity.  (D.I. 438 at pp. 26-31.)  LML's particular arguments are addressed below.

In its Answering Brief, LML mischaracterizes the law, and then seeks to apply its view of the facts to this incorrect law.  In particular, LML argues that simply because the limitations at issue have *some* reasonable construction, there is no indefiniteness issue.

LML's analysis incorrect.  Federal Circuit case law establishes that a broad and ambiguous construction of a claim – like LML's proposed constructions here – can lead to indefiniteness, and in such cases a narrow construction is required:

> *Were we to allow AAI successfully to assert the broader of the two senses of "between" against Prince, we would undermine the fair notice function of the requirement that the patentee distinctly claim the subject matter disclosed in the patent* from which he can exclude others temporarily.  Where there is an equal choice between a broader and a narrower meaning of a claim, and there is an enabling disclosure that indicates that the applicant is at least entitled to a claim having the narrower meaning, we consider the notice function of the claim to be best served by adopting the narrower meaning.

*Athletic Alternatives*, 73 F.3d at 1581.  This is precisely the basis of Defendants' motion, and precisely the issue ignored by LML throughout its Answering Brief.

Other cases hold similarly.  *See, e.g., Exxon Research and Eng.'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001) (adopting a narrow construction because the claim term was not indefinite only under the "more reasonable interpretation"); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1383 (Fed. Cir. 2005) (no indefiniteness "*because* this court construed the phrase 'improved competence' such that one skilled in the art would understand the bounds of the claim").  In these cases, the

11

issue of indefiniteness turns on which claim construction is adopted. The same principle applies here.

The only evidence required is the patent itself, along with LML's proposed construction. The patent does not provide any definition of the terms "accepted" or "processed," nor does it provide any meaning to a "regular" check or "normal" account. LML's proposed constructions would render the claims indefinite as set forth below.

### 1.   LML's Construction of the "Negotiable Instrument" Limitations Leads to Indefiniteness

LML suggests that the "negotiable instrument" limitations should be construed to mean "where the paper check is used as a source of information, and is not ***accepted*** or ***processed***." (D.I. 281.) The terms "accepted" and "processed" are themselves each subject to multiple and competing interpretations, none of which would be agreed upon as controlling by persons of ordinary skill in the field of the invention at the time the original 1992 application was filed. (Ex. R at ¶ 374; Ex. S at ¶ 325.)

The '988 patent itself contains no express definitions of the terms "accept" or "process" that would allow one of ordinary skill in the art to discern what they might mean (Ex. R at ¶ 374; Ex. S at ¶ 325), and the terms "accepted" and "processed" were never defined in the specification or claims of the '988 patent. These ambiguities, left unresolved by the specification and claims, render the "negotiable instrument" claim element hopelessly ambiguous and indefinite under LML's construction. *See, e.g.*, *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1358 (Fed. Cir. 2003) (court should not have to "guess as to what was intended" by claim limitations); *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001) (claim language indefinite where susceptible to different reasonable meanings).

In its Answering Brief, LML asserts "[t]he specification and prosecution history of the '988 patent explain in detail that this element means that the check is being used as a source document, and is not accepted or processed," but ***nowhere*** does LML provide a

citation to any column or line number of the patent or to any page of the prosecution history in support of this assertion. (D.I. 422 at p. 35.) LML further does not cite to any reference from the relevant time period. Instead, LML relies on NACHA rules and regulations from 2005, more than a decade after the filing date of the patent. (*Id.* at pp. 36-37.) This evidence is irrelevant under established law. *See Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1254 (Fed. Cir. 2004); *Elan Pharm., Inc. v. Mayo Found. for Med. Educ. & Research*, 346 F.3d 1051, 1056-57 (Fed. Cir. 2003).

Furthermore, LML improperly cites *Fisher-Price, Inc. v. Graco Children's Prod., Inc.*, No. 05-1258, 2005 WL 2899289 (Fed. Cir. Nov. 4, 2005), a case which is not citable as precedent and which is readily distinguishable from the facts of this case. (D.I. 422 at p. 35, n.24.) In *Fisher-Price*, the allegedly ambiguous limitation could be "construed without great difficulty" and two potential constructions existed: (1) the construction from the *Markman* hearing, and (2) the construction Fisher-Price argued. *Fisher-Price*, 2005 WL 2899289 at *3. In contrast to the facts of *Fisher-Price*, the "negotiable instrument" limitations have only a single reasonable construction. LML's ambiguous construction would render the claims indefinite. *Invitrogen*, 424 F.3d at 1383; *Exxon Research and Eng.'g*, 265 F.3d at 1375.

If the terms "accepted" and "processed" are to be included as limitations to the asserted claims, they must be clear from the text of the '988 patent itself. *See, e.g.*, *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 453 (Fed. Cir. 1985). "[C]laims must be 'particular' and 'distinct,' as required by 35 U.S.C. § 112, so that the public has fair notice of what the patentee and the Patent and Trademark Office have agreed constitute the metes and bounds of the claimed invention." *London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1538 (Fed. Cir. 1991); *see also Permutit Co. v. Graver Corp.*, 284 U.S. 52, 60 (1931).

The specification of the patent-in-suit fails to provide any guidance as to what might be meant by the terms "accepted" and "processed." LML's proposed construction

13

of this disputed claim term is inherently indefinite and ambiguous, and represents exactly the sort of moving target that the definiteness requirement is designed to prevent. *Athletic Alternatives*, 73 F.3d. at 1581. No reasonable jury could find the asserted claims not indefinite under LML's inherently ambiguous claim construction. Defendants' Motion on this issue should be granted.

### 2. The Terms "Any Bank Check" and "Any Consumer Bank Check" Are Indefinite Under LML's Proposed Construction

LML's arguments regarding the "any bank check" limitations suffer from the same deficiencies. LML does not cite any evidence to overcome Defendants' motion. Instead LML relies on a misapplication of the law as its defense. This improper legal argument cannot withstand summary judgment.

LML proposes that the term "any bank check" should be construed to mean "any *regular* check used to draw funds from a *normal* bank or credit union checking account." (D.I. 281.) By importing the inherently subjective and ambiguous terms "regular" and "normal" into its construction of these disputed terms, LML advances a claim construction that again leads to indefiniteness. As with the terms "accepted" and "processed," these terms are susceptible to multiple interpretations by persons of ordinary skill in the art, and thus lack the necessary precision and clearness of statement required by law. *See, e.g., Standard Oil*, 774 F.2d at 453.

In this case, the '988 patent offers no guidance as to definitions of a "regular" check or "normal" checking account. (Ex. A; Ex. T at LML-EP 000080-120.) Adoption of these proposed constructions would violate the important notice function of the claims and render the claim terms "any bank check" and "any consumer bank check" invalid for indefiniteness. *Invitrogen*, 424 F.3d at 1383; *Exxon Research and Eng.'g*, 265 F.3d at 1375; *Athletic Alternatives*, 73 F.3d. at 1581.

Defendants' motion for summary judgment should be granted.

14

**D.    The Remainder of LML's Allegations Are Meritless or Irrelevant**

LML continues to make baseless allegations regarding the evidence presented. Several of LML's arguments have been addressed above, and the remaining allegations are likewise meritless or irrelevant.

**1.    Defendants Have Presented Evidence of Invalidity**

Throughout LML's brief, LML mistakenly asserts that Defendants have not provided evidence in support of their motion for summary judgment. Contrary to LML's belief, Defendants submitted substantial evidence in support of their motion. For example, Defendants referred to, and submitted, the '988 patent and Higashiyama. (*See* D.I. 353 at pp. 9-14.) Defendants cited to Mr. Hills' deposition testimony and excerpts of Mr. Tinkel's expert report, rebuttal report, and deposition testimony. (*See id.* at pp. 18-19.) The remaining exhibits cited in Defendants' brief and attached to the declaration of Timothy Devlin are also evidence.

LML would like this Court to believe that citing to an expert report is not evidence. (*See* D.I. 422 at pp. 9, 14, 18, 19, 22, 23.) This is contrary to case law—courts routinely decide summary judgment motions by examining the evidence to be presented, including the anticipated testimony outlined in expert reports. *See generally Andersen Corp. v. Fiber Composites, LLC*, No. Civ. 00-2548 (JNE/JG), 2003 WL 21754817 at *7 (D. Minn. July 21, 2003); *Omniglow Corp. v. Unique Indus., Inc.*, 184 F. Supp. 2d 105, 116 (D. Mass. 2002). Not only are citations to the expert reports proper, so are citations to the remaining exhibits in support of Defendants' motion for summary judgment.

REDACTED

15

REDACTED

2.  **David Kurrasch's Invalidity Expert Report Supplements Were
    Proper, and Defendants Have Provided Evidence That The
    '988 Patent Is Anticipated**

In its Answering Brief, LML again raises its motions to strike, but *again fails to
cite a single case that would support its attempt to avoid the proper opinions provided
in the supplemental report.* (*See* D.I. 422 at pp. 10-11 n.3, n.4.)

This Court signed a stipulated Scheduling Order that permitted the parties to
supplement expert reports as a result of the delayed deposition of the first-named
inventor, Mr. Robert Hills. (D.I. 243.) Mr. Hills was unavailable for a deposition until
the end of August 2005, which was after the close of fact discovery. In accordance with
the Scheduling Order, Mr. Kurrasch supplemented his invalidity report on September 6,
2005, based on testimony from Mr. Hills and documents about which Mr. Hills testified,
including Higashiyama and the 1990 Rules. LML has yet to cite *any case law* that makes
it improper to follow a scheduling order, repeatedly ignoring the standards set forth by
the Third Circuit.

Mr. Kurrasch's Second Supplement only adjusted citations once Mr. Kurrasch
obtained a complete set of 1990 Rules, which had not previously been produced by any
party. These amended citations did not affect the substance of Mr. Kurrasch's opinion in
any manner; no substantive text changed and only citations to the 1990 Rules were added
in the supplementation. This citation to newly found evidence is not only permitted, but
*required* by the Federal Rules. *See* Fed. R. Civ. P. 26(a)(2)(B), 26(e)(1).

Likewise, the applicable factors specified by the Third Circuit weigh against
LML's assertion. *See, e.g., Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487,

16

506 (D. Del. 2005) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d

894, 904-05 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*,

777 F.2d 113 (3d Cir. 1985), *aff'd*, 482 U.S. 656 (1987)).  Additional information

regarding the appropriateness of Mr. Kurrasch's Expert Report is found in Defendants'

replies to LML's motions to strike.  (*See* D.I. 279; D.I. 298.)

      LML seeks to misconstrue the procedural facts of this case, alleging that

"Defendants base their entire motion on this issue on a contention they never disclosed

during discovery—alleged anticipation based on the '682 patent in combination with the

1990 Rules." (D.I. 422 at p. 10.)  This assertion likewise expressly ignores the Court's

Scheduling Order, which allowed supplementation due to delay in taking the deposition

of Mr. Hills.  Promptly after Mr. Kurrasch's supplemental report was filed, TeleCheck

properly supplemented its interrogatory responses to refer to the reports.  (*See* D.I. 285.)

LML can hardly complain about this procedure, since LML also supplemented its

interrogatory responses after its own expert submitted his final report September 20,

2005.  (D.I. 262.)

      Mr. Kurrasch properly supplemented his report and Defendants provided evidence

in accordance with the Scheduling Order.  As a result, LML's assertions are without

merit.

## III.    CONCLUSION

      For the foregoing reasons, Defendants' motion for summary judgment of

invalidity should be granted.

Dated: November 23, 2005        FISH & RICHARDSON P.C.

                  By:  */s/ Timothy Devlin*
                      William J. Marsden, Jr. (#2247)
                      Timothy Devlin (#4241)
                      Tara D. Elliott (#4483)
                      919 N. Market Street, Suite 1100
                      P.O. Box 1114
                      Wilmington, DE  19801
                      302.652.5070

*Attorneys for Defendant TeleCheck Services, Inc.*

CONNOLLY BOVE LODGE & HUTZ LLP

By:/s/ *Collins J. Seitz, Jr.*
      Collins J. Seitz, Jr. (I.D. No. 2237)
      The Nemours Building
      1007 N. Orange Street
      Wilmington, Delaware 19801
      302.658.9141

*Attorneys for Defendants Electronic Clearing
House, Inc. and XpressChex, Inc.*

THE BAYARD FIRM

By: /s/ *Richard D. Kirk*
      Richard D. Kirk (I.D. No. 922)
      222 Delaware Avenue, Suite 900
      Wilmington, DE 19801
      302.429.4208

*Attorneys for Defendant
NOVA Information Systems, Inc.*

18

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2005, I electronically filed the PUBLIC

VERSION OF DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION

FOR SUMMARY JUDGMENT OF INVALIDITY with the Clerk of the Court using

CM/ECF which will send notification of such filing to the following:

Richard K. Herrmann, Esq.
Morris, James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19899

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE  19801

Collins J. Seitz, Jr., Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19801

Additionally, I hereby certify that on the 1st day of December, 2005 the foregoing document was served via email on the following non-registered participants.

Robert Jacobs, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA  90045

Mark C. Scarsi, Esq.
O'Melveny & Myers LLP
400 S Hope Street
Los Angeles, CA 90071

Russell E. Levine, Esq.
Kirkland & Ellis LLP
200 E. Randolph Dr.
Chicago, IL 60601

/s/ Timothy Devlin
Timothy Devlin