IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP., | |
| Plaintiff, | |
| v. | C.A. 04-858 (SLR) |
| TELECHECK SERVICES, INC., ELECTRONIC CLEARING HOUSE, INC., XPRESSCHEX, INC. and NOVA INFORMATION SYSTEMS, INC., | **PUBLIC VERSION** |
| Defendants. | |

## TELECHECK'S REPLY BRIEF IN SUPPORT OF TELECHECK'S OPENING SUMMARY JUDGMENT BRIEF REGARDING NON-INFRINGEMENT

William J. Marsden (#2247)
Timothy Devlin (#4241)
Tara D. Elliott (#4483)
FISH & RICHARDSON P.C
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE  19899-1114
(302) 652-5070

*Attorneys for TeleCheck Services, Inc.*

Dated:  November 23, 2005

Public Version:  December 1, 2005

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   DISCUSSION ......................................................................................................2

    A.    LML's Discussion of the '988 Patent Ignores the Prior
        Art and Inflates the Purported Contributions of the '988
        Patent Inventors .........................................................................................2

    B.    LML's Answering Brief Misrepresents the Facts and
        Law ............................................................................................................4

    C.    LML's Only Answer to TeleCheck's "Any Bank Check"
        Argument Is to Assail Defendants' Claim Construction
        With Inapplicable Law...............................................................................8

        1.    LML Fails to Demonstrate Any Material Fact
                Regarding the "Any Bank Check" Limitations
                Under Defendants' Proposed Construction ...................................8

        2.    LML's Arguments Regarding Claim
                Construction Incorrectly Read Claim Elements
                in Isolation ....................................................................................9

        3.    LML's Remaining Claim Construction
                 Arguments Are Misplaced ...........................................................11

    D.    LML Raises No Genuine Issue of Material Fact That
        Would Preclude Summary Judgment of Non-
        Infringement Based on the "Negotiable Instrument"
         Limitation.................................................................................................14

        1.    LML Fails to Demonstrate Any Material Fact
                 Regarding the "Negotiable Instrument"
                 Limitations under Defendants' Proposed
                Construction..................................................................................14

        2.    LML's Claim Construction Arguments Are
                 Misplaced.....................................................................................16

    E.    LML Makes No Argument Regarding the "Sole
        Purpose" Limitations Under Defendants' Proposed
        Construction.............................................................................................19

III.  CONCLUSION..................................................................................................19

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Application of Benson,*
   418 F.2d 1251 (C.C.P.A. 1969) ...................................................................12, 18

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ...............................................................................9, 14, 15

*Conroy v. Reebok International, Ltd.,*
   14 F.3d 1570 (Fed. Cir. 1994) ...................................................................9, 15

*Geiger v. Tokheim,*
   191 B.R. 781 (N.D. Iowa 1996) ........................................................................8

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.,*
   909 F.2d 1464 (Fed. Cir. 1990.) ....................................................................17

*Intel Corp. v. ITC,*
   946 F.2d 821 (Fed. Cir. 1991) ......................................................................17

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.,*
   C.A. No. 05-1009, -1487 (Fed. Cir. Nov. 21, 2005) ....................................18

*Key Pharms., Inc. v. Hercon Labs. Corp.,*
   981 F. Supp. 299, 305 (D. Del. 1997) ..........................................................17

*Markman v. Westview Instruments, Inc.,*
   52 F.3d 967 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996).......................9, 14

*North America Container, Inc. v. Plastipak Packaging, Inc.,*
   415 F.3d 1335 (Fed. Cir. 2005)......................................................................10

*Pause Tech., LLC v. TiVo, Inc.,*
   419 F.3d 1326 (Fed. Cir. 2005)................................................................10, 16

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005)......................................................................15

*Standard Oil Co. v. American Cyanamid Co.,*
   774 F.2d 448 (Fed. Cir.  1985).......................................................................15

*ZMI Corp. v. Cardiac Resuscitator Corp.,*
   844 F.2d 1576 (Fed. Circ. 1988)........................................................12, 13, 18

## STATUES

35 U.S.C.  § 287..............................................................................................17

## I.    INTRODUCTION

TeleCheck submits this reply brief in support of its Motion for Summary Judgment of Non-Infringement, filed October 28, 2005.

Rather than setting forth facts that would address TeleCheck's summary judgment motion, LML spends most of its brief re-arguing the same issues of claim construction already addressed by the parties' *Markman* briefing. For example, in response to TeleCheck's non-infringement argument regarding the "any bank check" and "any consumer bank check" limitations, LML spends roughly ten pages re-arguing its proposed claim constructions and analyzing infringement under its proposed construction. Likewise, LML devotes five pages to construction of the limitation "without using the check as a negotiable instrument" and corresponding limitations, and infringement analysis under LML's proposed claim construction.

As this Court is well aware, claim construction is *an issue of law*, and LML's arguments cannot establish any material issue of *fact* to overcome summary judgment. LML's Answering Brief does not demonstrate any material factual dispute that TeleCheck's ECA Service cannot transfer funds using information from "any bank check," as would be required under Defendants' proposed claim construction. Likewise, LML does not establish any material factual dispute that "the check, at no time, takes on the status of a negotiable instrument," as would be required under Defendants' claim construction. If either of these proper claim constructions are adopted, TeleCheck's motion should be granted.

Even in arguing claim construction, LML mistakenly reads the elements of claims in isolation, rather than in the context of each claim as a whole. For example, with respect to the "any bank check" limitations, LML ignores the fact that the claims recite both receiving information from "any bank check," and then transferring "funds" using that information. In seeking to sidestep these facts, LML erroneously applies unrelated case law as purported support for its arguments. While TeleCheck avoids a wholesale re-

argument of Defendants' proper claim construction, LML's specific misstatements of fact and law regarding claim construction are addressed below.

In response to TeleCheck's argument regarding the limitation "without using the check as a negotiable instrument" and similar limitations, LML misapplies case law relating to system claims versus method claims. Even the "system" claims of the '988 patent must be construed to include functional limitations. The phrase "without using the check as a negotiable instrument" is recited in two system claims, for example, and must be given meaning even though the limitation has no specific structural requirements. This "negotiable instrument" limitation was added during prosecution and relied on as a purported distinction over the prior art. LML's current attempt to ignore this and other functional limitations should be ignored.

The remainder of LML's arguments rely on misstatements of the evidence and further misapplication of the law. While TeleCheck declines to address every misstatement in LML's Answering Brief, to maintain an accurate record this Reply points out some of LML's selective interpretations of facts and its misapplication of law. For example, LML adds the word "only" to the language of NACHA Rule 3.8.1, without indicating that the addition is LML's argument and not a part of the rule itself. Other examples of LML's misrepresentations are discussed below. When examined in light of the actual facts and the law, LML's Answering Brief fails to provide any basis for overcoming summary judgment.

## II.    DISCUSSION

### A.    LML's Discussion of the '988 Patent Ignores the Prior Art and Inflates the Purported Contributions of the '988 Patent Inventors

LML's "Statement of Facts" starts out describing the alleged invention in the '988 patent. Every feature that LML attributes to the purported ingenuity of the named inventors, however, existed in the prior art. What LML does not expound on are the limitations that were added during prosecution to obtain allowance of the claims. The

'988 patent was allowed only after LML added the word "any" to the limitations "any

bank check" and "any consumer bank check," and after LML added the limitation

"without using the check as a negotiable instrument" and its corresponding limitations[1] to

every independent claim. A more comprehensive review of the prosecution history of the

'988 patent may be found in TeleCheck's Opening Brief. (D.I. 345, pp. 6-9.)

Regarding the '988 patent itself, LML states in its Answering Brief that the

invention disclosed in the '988 patent permits a merchant to obtain approval for a

transaction at the point of sale and then process the transaction electronically, instead of

traditional processing where the merchant accepted a check and physically took it to the

bank. (D.I. 427 at p. 3.) These features, however, were previously disclosed in the prior

art, for example, U.S. patents to Higashiyama and Carlson. (*See* Exs. Y and Z.)[2]

Specifically, LML states that the '988 patent allows a merchant to capture MICR

data contained on the check at the point of sale terminal. (D.I. 427 at p. 4.) The amount

and transaction data can be entered before the terminal sends the data to an electronic

check processing provider. (*Id.*) These features were previously disclosed in

Higashiyama and Carlson. (*See* Exs. Y and Z.)

LML further states that the '988 patent contemplates a verification/risk analysis.

If the transaction is approved, the customer can sign an authorization receipt to allow the

retailer to initiate an electronic transaction from the customer's checking account. (D.I.

427 at p. 4.) LML states that according to the '988 patent, the retailer often voids the

---

[1]   Claim 1 recites the limitation "without using the bank check as a negotiable instrument." Claim 8 recites "without using the check as a negotiable instrument." Claim 9 recites "without using a check as a negotiable instrument." These claim limitations are collectively referred to as the "negotiable instrument" limitations. They have been construed by each party to have consistent meanings. (D.I. 281.)

[2]   For convenience, the Exhibits supporting this Reply Brief are labeled consecutively with Exhibits from Defendants' Opening Brief. Accordingly, unless otherwise specified, Exhibits A through X cited in this brief are attached to the previously-filed Declaration of Timothy Devlin in Support of TeleCheck's Motion for Summary Judgment of Non-Infringement. Exhibits Y through EE are attached to the co-filed Declaration of Timothy Devlin in Support of TeleCheck's Reply Brief for Summary Judgment of Non-Infringement.

3

paper check. According to LML, the '988 patent discloses that the consumer bank account and transaction information is formatted by the electronic processing provider so that it can be read and processed by an electronic network. (*Id.* at 5.) These features were also previously disclosed by NACHA, Higashiyama, and/or Carlson. (*See* Exs. Y and Z.)

 LML avoids discussion of the alleged points of novelty on which Applicants relied to obtain allowance of the '988 patent, each of which was added by narrowing amendment. The claims, specification, prosecution history and prior art, as well as the features of the accused products, make two limitations relevant on summary judgment: the "any bank check" limitations and "negotiable instrument" limitations. Applicants added both sets of limitations during prosecution to overcome the prior art. (Ex. B at LML-EP 000170-176; LML-EP 000183-85.) LML now seeks to recapture this scope during litigation to sweep in TeleCheck's ECA Service.

### B.   LML's Answering Brief Misrepresents the Facts and Law

 In its Answering Brief, as well as other summary judgment briefing, LML consistently provides a distorted view of the facts and law. In the interest of efficiency, TeleCheck does not address all of these issues with LML's Brief. An accurate presentation of the facts, however, requires that TeleCheck address certain major issues below:

 1.   LML first states that the NACHA Operating Rules "require that the bank check be used *only* as a 'source document' for electronic settlement, and is not accepted or processed." (D.I. 427 at pp. 2 and 7.)[3] As is clear from the text quoted in LML's Answering Brief, however, the word "only" does not appear in the Rules (*id.* at 7), nor has TeleCheck limited its system to the minimal requirements set forth in the NACHA Rules.

---

[3] Unless otherwise indicated, emphasis in this Brief has been added.

On the contrary, TeleCheck complies with the NACHA rules but also performs *additional steps* not required by the rules. (*See* D.I. 345 at pp. 9-13, 16-18, 22-25, 27-28.)

REDACTED

2.    LML also asserts "TeleCheck conceded in its motion that it follows the NACHA rules *and guidelines* with respect to the accused product." (D.I. 427 at p. 7.) On the contrary, TeleCheck's brief recites that "TeleCheck's POP entries comply with the NACHA Operating Rules, which limit the categories of checks that may be converted under the POP class." (D.I. 345 at p. 12.) Nothing in this statement refers to the NACHA guidelines.

REDACTED

REDACTED

LML desires an admission that TeleCheck follows NACHA guidelines because NACHA *opines* in its guidelines that a check used in POP transactions is not a negotiable instrument under certain circumstances. The Operating Rules, which TeleCheck follows, do not contain any such language. NACHA's legal opinion, as expressed in its non-controlling guidelines, has no bearing on the infringement analysis at issue in this case. This is particularly true in light of the meaning attaching to the "negotiable instrument" limitations in prosecution.

3.     Similarly, LML alleges that "when TeleCheck sends transactions to the ACH network, the checks are not being, and cannot be, used as negotiable instruments, *by law*." (D.I. 427 at p. 9.) LML makes this statement after reciting NACHA guidelines and the deposition testimony of NACHA employees. Notably, LML fails to cite *any actual law* that would make its statement true. Again, LML's argument is only applicable under its own claim construction, which does not reflect the particular meaning of the phrase "without using the check as a negotiable instrument" in the context of the '988 patent and its prosecution history.

4.     LML misstates TeleCheck's arguments regarding the "negotiable instrument" limitations, asserting that somehow TeleCheck has conceded that "it allegedly does 'not use the check as a negotiable instrument.'" (D.I. 427 at p. 11.) Contrary to LML's unsupported reference to TeleCheck's Brief, TeleCheck has consistently maintained and established through evidence that TeleCheck's ECA Service *does* use the check as a negotiable instrument. (*See* D.I. 345 at pp. 10-12, 22-27.)

REDACTED

REDACTED

5.     LML wrongly contends that Defendants "readily admit" that their construction of the negotiable instrument limitations "comes, not from the intrinsic evidence, but directly from the extrinsic evidence." (D.I. 427 at pp. 26)  On the contrary, Defendant's Opening Claim Construction Brief states the exact opposite:

> In short, each claim construction proposed by Defendants is consistent with the understanding of one of ordinary skill in the art at the time of the invention, *based on the intrinsic record of the '988 patent.*  In contrast, LML ignores the intrinsic record, and proposes overly-broad definitions crafted to support its litigation positions.

(D.I. 288 at p. 3.)

Even where Defendants point to the opinion of LML's counsel, Defendants make clear that the opinion is itself based on the intrinsic record:

> LML's proposed claim construction is even contradicted by its own neutral, pre-litigation patent counsel, *who reviewed the intrinsic record*, determined that the claims required a narrow construction to maintain validity, and adopted one of the very constructions proposed here by Defendants.

(*Id.* at 3.)  Indeed, in Defendants' Answering Claim Construction Brief, Defendants again explain that the source of their proposed claim construction is the intrinsic record of the patent, and that LML's due diligence opinion confirms this construction.  (D.I. 297 at p. 19.)

Notably, LML never cites to any particular brief or page where Defendants "readily admit" that the source of their claim construction comes from the extrinsic

7

record. TeleCheck has never made such a statement, and LML's assertion of this purported "admission" is flatly wrong.[4]

### C. LML's Only Answer to TeleCheck's "Any Bank Check" Argument Is to Assail Defendants' Claim Construction With Inapplicable Law

In its Answering Brief, LML does not actually set forth factual disputes that would preclude summary judgment in favor of TeleCheck's motion for non-infringement. Instead, LML once again takes issue with Defendants' claim construction of the "any bank check" limitation, asserting that Defendants' proposed construction is based on an "extreme and strained" effort to "import" the any bank check limitations into other claim elements. (D.I. 427 at p. 13.) In doing so, however, LML misconstrues Defendants' proposed construction, and appears to misunderstand fundamental principles of claim construction.

#### 1. LML Fails to Demonstrate Any Material Fact Regarding the "Any Bank Check" Limitations Under Defendants' Proposed Construction

In its Answering Brief, LML fails to assert any *facts* that would preclude summary judgment of non-infringement for the reasons set forth in TeleCheck's motion. LML never offers any fact showing that the TeleCheck ECA system can transfer funds using information from "any bank check" or "any consumer bank check." Moreover, LML never offers any fact showing that the TeleCheck ECA system can *transfer funds* even using any "regular" check, as LML has construed the "any bank check" limitation. Accordingly, LML fails to address the very bases of summary judgment set forth in TeleCheck's opening brief.

---

[4] LML's motion includes two footnoted arguments seeking to preclude reliance on evidence. (D.I. 427 n. 5 and n. 14.) LML's has cited no case law in support of its arguments. In fact, the law contradicts LML's argument that this court cannot view the evidence of record on summary judgment. *See Geiger v. Tokheim*, 191 B.R. 781 (N.D. Iowa 1996) (moving parties must identify portions of the record that support summary judgment; movants are "not required by Rule 56 to support their motion with affidavits or other similar materials negating the opponent's claim").

Instead LML argues only that Defendants' claim construction is incorrect, and that there is no connection between the "any bank check" limitations and the transfer of funds recited by the claims. LML then applies its view of the facts to LML's own claim construction. As this Court is aware, claim construction is an issue of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

LML's Answering Brief fails to point to any material issue of fact, and thus tacitly concedes that summary judgment is appropriate if Defendants' claim construction is adopted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575 (Fed. Cir. 1994) ("The moving party . . . may discharge its burden by showing the district court that there is an absence of evidence to support the nonmoving party's case.").

### 2. LML's Arguments Regarding Claim Construction Incorrectly Read Claim Elements in Isolation

Although Defendants' proposed claim construction is well-supported in Defendants' *Markman* briefing, TeleCheck must address LML's specific mischaracterizations of fact and law here. LML's brief attempts to divorce discussion of the "any bank check" limitations from other limitations of the claims that refer to the transfer of funds, namely the following limitations:

9

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations (claim 8) | subsequently transmitting the information relating to the transaction to a bank for subsequent automated clearing house operations | electronically communicating with an automated clearing house for transferring funds electronically based upon the consumer bank account information obtained from *any bank check* presented at the point-of-sale |
| enabling automated clearing house communication for transferring funds (claims 1, 9) | enabling communication with an automated clearing house for electronically transferring funds | electronically communicating with an automated clearing house for transferring funds electronically based upon the consumer bank account information obtained from *any bank check* presented at the point-of-sale |

LML's argument is that these limitations somehow have no connection to the "any bank check" and "any consumer bank check" limitations recited earlier in the claims, simply because, in LML's words, the "the phrase 'any bank check' does not appear anywhere in these claim elements." (D.I. 427 at 14.)

As support for this argument, LML cites *North Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1348 (Fed. Cir. 2005), for the proposition that "limitations that do not otherwise appear in the claims should not be imported into the claims." *Plastipak*, however, has no application here, nor does it support LML's argument. As LML quotes in its Brief, the Federal Circuit in *Plastipak* was concerned with the importation of "*limitations that do not otherwise appear in the claims.*" The limitations "any bank check" and "any consumer bank check" *are* recited in the claims.

LML attempts to read each of these elements in isolation, outside the context of the entire claim. This approach is incorrect; each claim limitation must be read in context of the claim as a whole. *See Pause Tech., LLC v. TiVo, Inc.*, 419 F.3d 1326, 1331 (Fed. Cir. 2005) ("Proper claim construction . . . demands interpretation of the entire claim in

10

context, not a single element in isolation.") (*citing Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1374 (Fed. Cir.1999); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("the context in which a term is used in the asserted claim can be highly instructive"); *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088-90 (Fed. Cir. 2003) ("the context of the surrounding words of the claim also must be considered").

LML's confusion of the law highlights why its claim construction is wrong and its arguments are irrelevant. The "any bank check" limitations are tied directly to the transfer of funds; information is obtained from "any bank check" and "any consumer bank check," and that information is used to conduct an electronic transfer. Even LML's own expert concedes this connection between claim elements:

> Q.   What funds would be transferred in that phrase, "enabling automated clearing house communication for transferring funds?" What funds are we talking about being transferred there?
>
> A:   In this particular case, we're talking about the money that would be in the account of *the check that was presented to the merchant*.

(Ex. DD at 160:18-24.)

As the claims recite, it is "any bank check" or "any consumer bank check" that gets presented to the merchant. Accordingly, the "any bank check" limitations must be related to the transfer of funds, as set forth in Defendants' proposed claim construction. (D.I. 281.)

### 3.   LML's Remaining Claim Construction Arguments Are Misplaced

Similarly, LML improperly seeks to rely on distinctions between system claims and method claims. LML states that "the difference between the system and method claims of the '988 patent is an important distinction which Defendants completely ignore." (D.I. 427 at p. 15.) Contrary to LML's argument, the distinctions between method claims and system claims are not lost on TeleCheck. Indeed, the fact that claim 8 is a method claim is yet another reason why TeleCheck does not infringe, as set forth in

11

TeleCheck's response to LML's Summary Judgment Motion for Infringement.  (D.I. 440 at 18-19.)

Moreover, unlike in LML's cited cases, the claims here contain functional limitations that cannot be read out of the claims.  The '988 patent claims do not simply recite a device or apparatus that is only structural in form, but also recite embedded procedures and processes.  In such cases, these functional limitations must be met to find infringement.  *See Application of Benson*, 418 F.2d 1251, 1255 (C.C.P.A. 1969) ("Sometimes, as here, a material is as well defined by its intended use as by its dimensions or other physical characteristics, and in this case we know of no reason why the limitation in terms of use should not be placed in the claims and given meaning in their interpretation.").

This principle is particularly applicable when the patentee added the limitation to overcome a prior art rejection.  *See ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1581 (Fed. Circ. 1988) (interpreting device claim to have a functional limitation, where such interpretation was further supported by rejection of independent claims during prosecution).  That is exactly the case here.  The "any bank check" and "any consumer bank check" limitations were added to the claims during prosecution to secure allowance of the claims.  (Ex. B at LML-EP 000183-85.)  LML has no basis for reading them out of the claims now.

LML further argues that Defendants' construction reads a preferred embodiment of the '988 patent out of the claims.  On the contrary, LML simply misreads Defendants' claim construction.  LML states that Defendants' construction would require transferring funds electronically "for *all* bank checks read or received at the point of sale terminal-even those checks that the merchant and/or service provider have determined would not be eligible for electronic settlement based on the information read or received from the check."  (D.I. 427 at p. 16.)

12

LML's argument is incorrect. First, Defendants' construction does not "read[] in an extraneous limitation" since the limitations are present in the claims themselves. Indeed, the "any bank check" and "any consumer bank check" limitations were added during the prosecution to obtain allowance of the claims, and cannot be interpreted as "extraneous." (Ex. B at LML-EP 000183-85.)

Second, Defendants' construction would not require the transferring of funds electronically for **all** bank checks read or received at the point of sale terminal. As shown in the parties' Joint Proposed Claim Construction Chart (D.I. 281), Defendants' proposed construction of "any" is not "all." Rather, Defendants' proposed construction of "any" is "one or some indiscriminately of whatever kind." Similarly, Defendants' construction of "any bank check" is "any type of check drawn on a financial institution." (*Id.*) Therefore, Defendant's construction merely requires that an infringing system be able to transfer funds from **any type of check**, not that it actually transfers funds from every single check, even those that might have failed an authorization check. Defendants' claim construction is proper, and TeleCheck does not permit, nor does NACHA allow, any type of check to be used in POP transactions. (D.I. 345 at 16-18.)

LML's other arguments are likewise misplaced. For example, LML asserts in a footnote that Applicants did not intend to cover foreign checks. The claims of the '988 patent, however recite no such restriction. Indeed, LML's expert testified that foreign checks were types of checks. (Ex. DD, Tinkel Depo. at 101:7-102:2.) The first-named inventor Mr. Hills testified that the invention was intended to include transactions based on foreign checks. (Ex. EE, Hills Depo. at 156:17-157:19.) Similarly, LML refers to the presence of a keypad on terminals used with the TeleCheck ECA Service, but LML never disputes the fact (nor can it) that when information is keyed in, the NACHA rules prohibit electronic funds transfer.

In short, LML does not present any disputed facts that would preclude summary judgment of non-infringement based on the "any bank check" limitation. Instead, LML

13

expends ten pages of its Brief arguing why TeleCheck infringes under its claim construction, which is non-responsive to TeleCheck's pending motion for summary judgment. LML's arguments are irrelevant, and TeleCheck's motion should be granted.

### D. LML Raises No Genuine Issue of Material Fact That Would Preclude Summary Judgment of Non-Infringement Based on the "Negotiable Instrument" Limitation

TeleCheck's Opening Brief, as well as its Answering Brief in response to LML's motion for summary judgment of infringement, set forth in detail the reasons why TeleCheck does not infringe the '988 patent. Specifically, the briefing of record sets forth how and why TeleCheck does not meet the "negotiable instrument" limitations. (D.I. 345; D.I. 440.) The sections above also highlight some of the relevant misrepresentations of evidence in LML's Answering Brief. TeleCheck will not repeat those arguments and facts further here, but addresses LML's specific arguments regarding the "negotiable instrument" limitations.

### 1. LML Fails to Demonstrate Any Material Fact Regarding the "Negotiable Instrument" Limitations under Defendants' Proposed Construction

There is no genuine issue of disputed fact that LML has raised that would preclude a ruling in favor of TeleCheck's motion. Instead, LML once again attacks Defendants' claim construction, a legal issue that cannot create a factual dispute. *See Celotex*, 477 U.S. at 322; *Markman*, 52 F.3d at 977.

REDACTED

All of this evidence supports summary judgment of non-infringement under the proper claim construction proposed by Defendants, which requires that the check "at no time, takes on the status of a negotiable instrument." (D.I. 281.)  Because LML has provided no contrary evidence that would support a finding of infringement under Defendants' claim construction, TeleCheck's motion should be granted. *Celotex*, 477 U.S. at 322; *Conroy*, 14 F.3d at 1575.

All that LML can offer is evidence that LML believes would be relevant under its proposed claim construction.  For example, LML cites to evidence showing that in TeleCheck's ECA System, merchants return the check to the consumer after the check is voided.  This fact, however, is not in dispute, nor can it be evidence that TeleCheck meets the "negotiable instrument" limitations.  Voiding and handing the check back are expressly disclosed in the Carlson '607 patent: "The retailer can then pass the cancelled check back to the customer . . . ." (Ex. BB at 25:4-6.)  This prior art was precisely what Applicants sought to distinguish by adding the "negotiable instrument" limitations during prosecution. (Ex. B at LML-EP 000172-76; LML-EP 000192-93.)

Similarly, LML seeks to argue that in the TeleCheck system, the check is only a negotiable instrument for part of the time, not during "communication with the automated clearing house." (D.I. 427 at 30.)  This argument again fails to establish any material fact dispute under Defendants' proposed claim construction, which requires that the check "*at no time*, takes on the status of a negotiable instrument." (D.I. 281.)

LML has a patent to assert only because the Applicants gave up considerable claim scope to obtain allowance.  Now, LML seeks to reclaim the disavowed scope to capture TeleCheck's ECA Service.  This litigation tactic is improper and should be rejected. *See Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985) ("[T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance.)

15

LML's arguments are non-responsive to TeleCheck's brief. LML flatly ignores TeleCheck's claim construction, which properly limits the claim to systems in which the check, at no time, takes on the status of a negotiable instrument. (D.I. 281.) Under the proper claim construction, LML has no presented no evidence that the TeleCheck ECA Service meets the "negotiable instrument" limitations. TeleCheck's motion for summary judgment should be granted.

### 2.    LML's Claim Construction Arguments Are Misplaced

As with other limitations, LML devotes much of its brief to persuading this Court on claim construction. LML's arguments do not create any disputed issue of material fact, and ignore basic principles of claim construction.

As with the "any bank check" limitations, LML first attempts to read the individual elements of claims in isolation with respect to the "negotiable instrument limitation." LML states:

> In claim 1, the phrase "without using the check as a negotiable instrument" *only modifies a specific limitation of the claims*: "enabling automated clearing house communication for transferring funds without using the check as a negotiable instrument."17 (Ex. 1 at claim 1.)

(D.I. 427 at 30.)

As with LML's "any bank check" argument, LML seeks to read the limitation in isolation, outside the context of the rest of the claim. This reading is improper and should be rejected. *See Pause Tech.*, 419 F.3d at 1331 ("Proper claim construction . . . demands interpretation of the entire claim in context, not a single element in isolation.") (*citing Hockerson-Halberstadt*, 183 F.3d at 1374; *Phillips*, 415 F.3d at 1314 ("the context in which a term is used in the asserted claim can be highly instructive").

LML also seeks to avoid summary judgment of non-infringement of claims 1 and 9 on the purported grounds that TeleCheck's accused system is "capable" of functioning where the check does not take on the status of a negotiable instrument. (D.I. 427 at p.

16

31.)  In support of this argument, LML relies on inapplicable case law distinguishing device claims from method claims.

LML's cited cases do not set forth broad rules of law, but are instead case-specific holdings depending on the specific patent claims at issue.  For example, LML cites *Key Pharms* for the proposition that "all that was required for infringement was that the system have the claimed capability." (D.I. 427 at 15.)  In that case, however, the claim at issue ***expressly recited*** that a certain material have "***sufficient*** adhesivity, durability and strength" to maintain contact with skin.  *Key Pharms., Inc. v. Hercon Labs. Corp.*, 981 F. Supp. 299, 305 (D. Del. 1997).  The Court expressly relied on this "sufficiency" language in its holding.  *Id.* at 305-06.

Similarly, LML cites to *Intel Corp.  v. ITC,* 946 F.2d 821, 832 (Fed. Cir. 1991) for the proposition that "a device claim was infringed if it was capable of operating in the claimed mode and that actual operation in the claimed mode was not required." (D.I. 427 at p. 15).  The holding of *Intel*, however, was also tied to a specific contingency set forth in the claims.  The text of the opinion reads:

> ***Because the language of claim 1*** refers to "programmable selection means" and states "whereby ***when said alternate addressing mode is selected"*** (emphasis added), the accused device, to be infringing, need only be capable of operating in the page mode.  Contrary to GI/M's argument, actual page mode operation in the accused device is not required.

*Intel* at 832.  In this case, the '988 patent does ***not*** state a contingency of "***when*** the check is not used as a negotiable instrument."  The claims recite that the check cannot be used as a negotiable instrument: "without using the check as a negotiable instrument."

LML's third case relies on the specific facts of an apparatus claim, not a system claim.  *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990.)  LML itself has relied on the distinction between apparatus and system claims in this case, specifically arguing during discovery that the marking provisions of 35 U.S.C.

§ 287 are not applicable to the '988 patent because it includes only "system or method claims," not apparatus claims. (Ex. FF at 20.)

In this case, the claims of the '988 patent cannot be read as strictly device claims, with no functional aspects. The "negotiable instrument" limitations recite functional aspects that restrict potentially infringing systems to those which do not use the check as a negotiable instrument. *See Benson*, 418 F.2d at 1254 ("Sometimes, as here, a material is as well defined by its intended use as by its dimensions or other physical characteristics, and in this case we know of no reason why the limitation in terms of use should not be placed in the claims and given meaning in their interpretation.").

This principle especially holds when the patentee added the limitation to overcome a prior art rejection. *See ZMI*, 844 F.2d at 1581 (interpreting device claim to have a functional limitation, where such interpretation was further supported by rejection of independent claims during prosecution). That is exactly the case here. LML added the "negotiable instrument" limitations during prosecution, and specifically relied on these limitations in arguing over the prior art. (Ex. B at LML-EP 000172-76; LML-EP 000189-209.) LML should not be permitted to ignore these functional limitations in litigation. Indeed, doing so would lead to additional problems with indefiniteness, as one would not know where the bounds of the claim were to begin or end. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, C.A. No. 05-1009, -1487, at 13 (Fed. Cir. Nov. 21, 2005) (Ex. CC).

LML's Answering Brief raises no issue of *fact* that would overcome TeleCheck's motion for summary judgment based on the "negotiable instrument" limitations. As set forth here and in Defendants' *Markman* briefing, LML's arguments on claim construction should be rejected. TeleCheck's motion for summary should be granted.

18

**E.     LML Makes No Argument Regarding the "Sole Purpose" Limitations Under Defendants' Proposed Construction**

In its brief, LML makes no attempt to argue that the "sole purpose" limitations are satisfied under Defendants' proposed construction. Instead LML simply re-argues claim construction, which cannot create a dispute of material fact. Under the proper claim construction, summary judgment based on these limitations should be granted.

## III.     CONCLUSION

For all of the reasons set forth above, TeleCheck's Motion for Summary Judgment of Non-Infringement should be granted.

Dated: November 23, 2005                    FISH & RICHARDSON P.C.

By:  */s/ Timothy Devlin*
          William J. Marsden, Jr. (#2247)
          Timothy Devlin (#4241)
          Tara D. Elliott (#4483)
          919 N. Market Street, Suite 1100
          P.O. Box 1114
          Wilmington, DE  19899-1114
          (302) 652-5070

Attorneys for Defendant
TeleCheck Services, Inc.

80028386.doc

19

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2005, I electronically filed the PUBLIC VERSION OF TELECHECK'S REPLY BRIEF IN SUPPORT OF TELECHECK'S OPENING SUMMARY JUDGMENT BRIEF REGARDING NON-INFRINGEMENT with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Richard K. Herrmann, Esq.
Morris, James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19899

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

Collins J. Seitz, Jr., Esq.
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19801

Additionally, I hereby certify that on the 1st day of December, 2005 the foregoing document was served via email on the following non-registered participants.

Robert Jacobs, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Mark C. Scarsi, Esq.
O'Melveny & Myers LLP
400 S Hope Street
Los Angeles, CA 90071

Russell E. Levine, Esq.
Kirkland & Ellis LLP
200 E. Randolph Dr.
Chicago, IL 60601

*/s/ Timothy Devlin*
Timothy Devlin