# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| LML PATENT CORP. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.:  04-858-SLR |
| vs. | ) | |
| | ) | |
| TELECHECK SERVICES, INC. | ) | |
| ELECTRONIC CLEARING HOUSE, INC., | ) | **PUBLIC VERSION** |
| XPRESSCHEX, INC. and | ) | |
| NOVA INFORMATION SYSTEMS, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## LML'S REPLY IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT NO. 2:
## FOR A RULING THAT DEFENDANT ECHO INFRINGES
## CLAIMS 1, 2, 4, 5, 6, 9, 10, 11 AND 16 OF THE '988 PATENT

Originally filed:  November 23, 2005
Public version filed:  December 1, 2005

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware  19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
Edward K. Runyan
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
(312) 861-2000

*Counsel for LML Patent Corp.*

# TABLE OF CONTENTS

ARGUMENT IN REPLY ................................................................................................1

I.    The Declaration Of Kris Winckler In Support Of ECHO's Motion Should Be Stricken. ...............................................................................2

    1.    Twenty-two of the twenty-eight exhibits relied on by Mr. Winckler were not produced in discovery. ......................................2

    2.    Mr. Winckler's declaration contains improper expert opinions. ...............................................................................3

    3.    Mr. Winckler's declaration should be disregarded as it contradicts his prior deposition testimony. ...............................4

II.    The Declaration Of Stephen Schutze In Support Of ECHO's Motion Should Be Stricken. ...............................................................6

    1.    The declaration of Mr. Schutze should be stricken because he is not qualified to render the opinions it contains. ....................6

    2.    Mr. Schutze's declaration should be stricken because it relies on documents not timely produced. ...................................7

III.    ECHO's ECC Products Satisfy The Limitation Of "Without Using The Check As A Negotiable Instrument." ...............................8

    1.    ECHO's ECC products use the paper check as a source of information and it is not accepted or processed. ...........................8

    2.    ECHO is improperly arguing non-infringement under Defendants' Proposed construction. .......................................11

IV.    ECHO's Accused Products Are "Adapted To Receive Consumer Bank Account Information From Any Bank Check" As Recited In Claim 1 ..............................................................................14

V.    ECHO's Accused Products Perform The Step "Presenting Any Bank Check Specimen To A Point Of Sale Terminal Located At A Merchant Or Service Provider" As Recited In Claim 8 .......................15

VI.    ECHO's Point Of Sale Terminals Have "Means For Reading Magnetic Ink Character Recognition Numbers On Any Consumer Bank Check" As Recited In Claim 9. ......................................16

VII.    ECHO's Argument That The ECC Service Does Not Communicate With The ACH Network To Transfer Funds Based On "Any Bank Check" Is Based On Defendants' Flawed Claim Construction And Fails To Raise Any Triable Issues Of Fact. ....................................17

VIII.    ECHO's Defense That ECHO's ECC Service Reads The MICR Information For More Than Just Identifying Consumer Bank Account Information Fails To Raise Any Triable Issues Of Fact. ....................18

IX.     ECHO's Defense That ECHO's ECC Service Does Not Include
        The Step Of "Verifying That Account Numbers Were Accurately
        Read At The Point Of Sale Terminal" Fails To Raise Any Triable
        Issues Of Fact.................................................................................................................18

CONCLUSION.................................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................ 12

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*,
    731 F.2d 831 (Fed. Cir. 1984) ........................................................... 12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................ 12

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
    909 F.2d 1464 (Fed. Cir. 1990) ......................................................... 13

*Intel Corp. v. ITC*,
    946 F.2d 821 (Fed. Cir. 1991) ..................................................... 13, 17

*Key Pharms. Inc. v. Hercon Labs. Corp.*,
    981 F. Supp. 299 (D. Del. 1997) .................................................. 13, 17

*Martin v. Merrell Dow Pharm., Inc.*,
    851 F.2d 703 (3rd Cir. 1988) ................................................................ 4

*Mash v. Xerox Corp.*,
    2000 WL 1728250 (D. Del. April 11, 2000) ....................................... 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................... 1, 12, 17, 18, 19

*NTP, Inc. v. Research in Motion, Ltd*,
    418 F.3d 1282 (Fed. Cir. 2005) ......................................................... 15

*Philips Elecs. N. Am. v. Contec Corp.*,
    No. Civ.A. 02-123-KAJ, 2004 WL 769371 (D. Del. April 5, 2004) ................ 3, 8

*U.S. v. Conn.*,
    297 F.3d 548 (7th Cir. 2002) ............................................................... 3

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................. 12

Fed. R. Evid. 701(c) ................................................................................... 3

**Statutes**

12 C.F.R. Part 205................................................................................................. 10

12 C.F.R. Part 205 Regulation E Official Staff Interpretation Section 205.3(b).............. 10

Uniform Commercial Code § 4A-102 ............................................................... 10

15 U.S.C. 1693...................................................................................................... 10

## ARGUMENT IN REPLY

In its Motion for Summary Judgment No. 2, LML demonstrated that there was no issue of material fact that ECHO's XpressConversion, CHEXPedite Electronic Payment Solutions and ECHO's Visa POS Check Service (collectively "ECHO's ECC products") infringe claims 1, 2, 4, 5, 6, 9, 10, 11 and 16 of the '988 Patent.[1] ECHO's Opposition to LML's Opening Brief fails to raise any genuine issue of material fact because:

- ECHO's motion heavily relies upon the declarations of Kris Winckler and Stephen Schutze, which should both be stricken;

- ECHO repeatedly applies Defendants' proposed constructions, or revises LML's constructions, for many claim elements, and thus fails to bring forward any specific facts showing that there is a triable issue of fact that ECHO does not infringe under LML's constructions; and

- Because ECHO fails to apply LML's construction for most claim elements, it only raises two defenses to LML's Opening Brief, namely "without using the check as a negotiable instrument" and "adapted to receive . . .", however, both of ECHO's defenses are meritless.[2]

Because ECHO failed to demonstrate that there is a triable issue of fact, this Court should grant LML's Motion for Summary Judgment No. 2 and find that ECHO infringes claims 1, 2, 4, 5, 6, 9, 10, 11 and 16 of the '988 Patent.

---

[1] Citations to LML's Memorandum in Support of Its Motion for Summary Judgment No. 2: That ECHO Infringes Claims 1, 2, 4, 5, 6, 9, 10, 11 and 16 will be to "LML's Opening Brief"; exhibits attached to the Declaration of Aaron Charfoos in Support of LML's Motion for Summary Judgment No. 2 will be to "Ex. ___"; ECHO's Answering Brief in Opposition will be to "ECHO Opp."; Citations to the Declaration of Kris Winckler in Support of ECHO and XpressCHEX's Opposition to Motion for Summary Judgment No. 2 will be to "Winckler Ex. ___"; and exhibits attached to LML's Reply in Support of Its Motion for Summary Judgment No. 2: That ECHO Infringes Claims 1, 2, 4, 5, 6, 9, 10, 11 and 16 will be to "Reply Ex. ___".

[2] Because ECHO has failed to even argue that there are any issues of material fact with the remaining elements, ECHO concedes that these elements are literally present. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

I.    **The Declaration Of Kris Winckler In Support Of ECHO's Motion Should Be Stricken.**

ECHO attaches a declaration by Kris Winckler, ECHO's corporate representative with respect to the accused products, in support of ECHO's Opposition to LML's Opening Brief. However, the Court should again not consider his declaration because: (1) it relies almost completely on documents not produced in discovery; (2) it contains improper lay opinions under Rule 701; and (3) it contradicts Mr. Winckler's prior deposition testimony.

    1.    Twenty-two of the twenty-eight exhibits relied on by Mr. Winckler were not produced in discovery.

Exhibits 4-18 and 20-26 attached to Mr. Winckler's declaration, although responsive to LML's document requests, were never produced in discovery—as evidenced by their lack of Bates numbers. (McDole Declaration at ¶¶ 2-6). Document production ended *over six months ago* and fact discovery ended *over three months ago*. (*Id.* at ¶ 2). In total, there are twenty-two documents in Mr. Winckler's declaration that were not produced, consisting of technical specifications, product manuals, and software code[3] related to the accused products. There is simply no excuse for ECHO not producing

---

[3] Although LML requested copies of all of the software code related to ECHO's accused products, ECHO refused to produce such code in hard copy. (McDole Decl. ¶ 7). LML was only permitted to *view* portions of the source code in a remote location and only after LML had already deposed Mr. Winckler. (*Id.* at ¶¶ 8-10). Now, apparently in a change of heart, ECHO has decided to use hard copies of this code as its primary support for its non-infringement arguments. (*See* Winckler Exs. 14-18 and 20-26). ECHO should not be able to delay its production of source code until after key depositions (such as Mr. Winkler's) in this case, refuse to provide LML with hard copies of such code, and then attempt to rely on hard copies of such code as its primary source of support for its non-infringement arguments. As such, this source code (Winckler's Exs. 14-18 and 20-26) should be stricken. Moreover, the software and source code relating to ECHO's point of sale terminals and related peripherals on which Mr. Winkler now relies in his declaration (Exs. 8, 9, 11, and 13 to his

them during document production, or discovery for that matter, especially given the importance it now places on these documents. These documents should be stricken. *Philips Elecs. N. Am. v. Contec Corp.*, No. Civ.A. 02-123-KAJ, 2004 WL 769371, at *1 (D. Del. April 5, 2004) (granting motion to exclude untimely produced documents).

2.    Mr. Winckler's declaration contains improper expert opinions.

Although a lay witness may offer factual testimony based on his personal knowledge, Rule 701 prohibits a lay witness from offering opinions or inferences which are based on scientific, technical, or other specialized knowledge that would be within the scope of expert testimony. Fed. R. Evid. 701(c); *see e.g.*, *U.S. v. Conn.*, 297 F.3d 548, 554 (7th Cir. 2002) (holding that lay opinion testimony is inadmissible if it "provide[s] specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events.").

Although Mr. Winckler was never disclosed as an expert by ECHO and has never prepared an expert report, his declaration is replete with expert opinions.

<br>

## REDACTED

---

declaration) were not included in the source code ECHO provided for LML's inspection—as such this code and Mr. Winkler's testimony regarding such code should be stricken as well. (McDole Declaration at ¶ 10).

[4] Recognizing that this was a topic for expert testimony, TeleCheck, one of ECHO's co-defendants, retained an expert, Mr. Dewayne Perry, to offer opinions on the meaning of their source code.

**REDACTED**

3.    Mr. Winckler's declaration should be disregarded as it contradicts his prior deposition testimony.

Mr. Winckler's declaration also directly contradicts his prior deposition testimony. Where an affidavit submitted in support of a summary judgment motion contradicts prior testimony with no satisfactory explanation, that affidavit should be disregarded for purposes of determining whether there was a material dispute of fact. *Martin v. Merrell Dow Pharm., Inc.*, 851 F.2d 703, 706 (3rd Cir. 1988); *Mash v. Xerox Corp.*, 2000 WL 1728250, at *6 (D. Del. April 11, 2000) (holding that an affidavit

---

[5] In fact, after LML submitted its expert report on ECHO's infringement, ECHO sought to allow Mr. Winckler access to confidential information in such report, referring to Mr. Winckler as an "in-house expert on infringement issues." (Reply Exs. B and C).

submitted in support of a summary judgment motion would be disregarded "to the extent it is inconsistent with [the affiant's prior] deposition testimony").

**REDACTED**

**REDACTED**

**II.    The Declaration Of Stephen Schutze In Support Of ECHO's Motion Should Be Stricken.**

1.    The declaration of Mr. Schutze should be stricken because he is not qualified to render the opinions it contains.[6]

**REDACTED**

---

[6] LML's *Daubert* Motion No. 2, pending simultaneously herewith, explains in detail why the opinions of ECHO's Expert, Stephen A. Schutze, do not pass muster under Rule 702 or *Daubert* and should, therefore, be excluded.

**REDACTED**

2.    Mr. Schutze's declaration should be stricken because it relies on documents not timely produced.

In addition to being unqualified, Mr. Schutze's declaration relies on documents that were not timely produced to LML during discovery.  Specifically, Mr. Schutze's declaration and "test" rely solely on documents (*i.e.* foreign checks) that were not produced to LML until after expert reports were submitted.  This fact, in and of itself, mandates that Mr. Schutze's declaration, and alleged "testing," be stricken.

ECHO failed to produce the foreign checks it gave to Mr. Schutze to run his alleged "tests" until September 23, 2005—well after the close of document production in the case and after all expert reports had been submitted.[7]    (Reply Ex. E, Letter from Patricia Szabo to Aaron Charfoos; McDole Decl. at ¶ 11).  Now, ECHO attempts to rely heavily on these late-produced documents and alleged "test" in its non-infringement arguments.  Indeed, paragraphs 8-14 of the declaration describe Mr. Schutze's experience running these late-produced foreign checks through one of ECHO's point of sale terminal/MICR reader combinations.  These are not checks that Mr. Schutze obtained on his own in rendering his opinions, but *documents given to him by Defendants' counsel* —already filled in.  (Reply Ex. D, Schutze Dep. at 212:23-213:10; 211:7-14).  There is simply no excuse for Defendants' failure to produce these documents during discovery.  Defendants should not be permitted to benefit from their violation of discovery rules, and as such, paragraphs 8-14 of Mr. Schutze's declaration, along with any alleged "test" conducted with these checks should be stricken.  *Philips*, 2004 WL 769371, at * 1 (granting motion to exclude untimely produced documents from evidence where the documents came forward after the close of discovery).

### III.    ECHO's ECC Products Satisfy The Limitation Of "Without Using The Check As A Negotiable Instrument."

1.    ECHO's ECC products use the paper check as a source of information and it is not accepted or processed.

As discussed in LML's Opening Brief, ECHO's ECC products satisfy the "without using the check as a negotiable instrument" claim element because "the paper

---

[7] Because of Defendants' delay in producing the checks, LML was denied the opportunity to perform tests of its own on such checks.

check is used as a source of information, and is not accepted or processed."[8]  (LML's

Opening Brief at 15-17).




**REDACTED**




        Moreover, electronic funds transfers, such as those effectuated by ECHO's ECC

products cannot use the check as a negotiable instrument.   These transactions are

governed by the Electronic Funds Transfer Act of 1978 and Federal Regulation E, not the

---

[8] LML is puzzled by ECHO's argument that LML has proposed a "newly formulated
    construction premised upon a version of the NACHA rules issued numerous years
    after the '988 patent's prior filing date."  (ECHO's Opposition at 18).   LML has
    presented this Court with a single final claim construction, which LML has fully
    supported in its claim construction briefing.   Moreover, this is the only construction
    relied upon by LML during this summary judgment briefing.   The NACHA rules are
    only presented because when ECHO follows those rules, as it must, these standards
    require that ECHO satisfies the "without using the check as a negotiable instrument"
    limitation.

[9]     **REDACTED**

U.C.C. as ECHO claims. 15 U.S.C. 1693 *et seq.* and 12 C.F.R. Part 205, respectively. In these ACH transactions, a check may be used to effectuate an electronic funds transfer through the ACH network only if it is merely a source of information relating to the consumer's bank account—*i.e.* not used as a negotiable instrument. For example, the Official Staff Interpretation of Federal Regulation E, Section 205.3(b), states that although funds transfers initiated by checks are generally excluded from ACH transactions, electronic fund transfers under Regulation E do include:

> A transfer via ACH where the consumer has ***provided a check to enable the merchant or other payee to capture the routing, account, and serial numbers to initiate the transfer, whether the check is blank, partially completed, or fully completed and signed***; whether mailed to a merchant or other payee or lockbox and later converted to an EFT; or whether the check is retained by the consumer, merchant, or other payee or the payee's financial institution.

12 C.F.R. Part 205 Regulation E Official Staff Interpretation Section 205.3(b) (emphasis added).[10] However, Federal Regulation E specifically ***excludes*** checks. 12 C.F.R. 205.3(c) ("Exclusion from coverage. . . Checks. Any transfer of funds originated by check, draft or similar paper instrument . . .") (emphasis in original). As LML discussed in its Opening Brief, this is entirely consistent with the NACHA Rules and Regulations. (LML's Opening Brief at 4-6; Ex. 4 Larimer Dep. at 42-54, 63-4, and 68).

Conversely, funds transfers that are initiated by using a check as a negotiable instrument are governed by check law and the U.C.C. (*See, e.g.,* 12 C.F.R. Part 205.3(c)(1) and U.C.C. Article 4A). In fact, the Uniform Commercial Code Article 4A "Funds Transfers" specifically details how funds transfers effectuated by checks proceed.

---

[10] Indeed, this is entirely consistent with the claim language "without using the check as a negotiable instrument" which is agnostic as to whether the check *is* a negotiable instrument but focuses on how it is used. (Ex. 1 at claim 1).

*See generally*, Uniform Commercial Code § 4A-102. This section specifically excludes any transaction governed, in whole or in part, by the Electronic Funds Transfer Act of 1978. (Uniform Commercial Code § 4A-108 ("This Article does not apply to a funds transfer any part of which is governed by the Electronic Funds Transfer Act of 1978 . . .")). Thus, a check used as a negotiable instrument—not just a source of information—falls under the U.C.C. and is never eligible for an electronic funds transfer under the Electronic Funds Transfer Act of 1978. This is consistent with the NACHA Guidelines that clearly state that the check must be used as a source document in order to avoid the check ever being used as a negotiable instrument. (Ex. 3 at LML-EP-055765). Because ECHO's ECC products effectuate a funds transfer under the Electronic Funds Transfer Act and Federal Regulation E, there is no genuine issue of material fact that this element is literally present in ECHO's ECC products.

      2.      ECHO is improperly arguing non-infringement under Defendants' Proposed construction.

LML's Opening Brief applied only LML's claim construction of "without using the check as a negotiable instrument" in determining whether this element is literally present in ECHO's ECC product. However, ECHO also argues that this element is missing under Defendants' proposed construction, an issue not raised by LML's Opening Brief. Because LML only moved for summary judgment of this element under LML's proposed construction, ECHO's response does not raise any issue of triable fact on this point.

Once the moving party has demonstrated the absence of a genuine issue of material fact, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . ." the nonmoving party must "come

-11-

forward 'with specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-movant cannot simply make conclusory denials concerning the evidence. *See Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984) ("[T]he court may not simply accept a party's statement that a fact is challenged"). Unless there is sufficient evidence to enable a jury to find for the nonmoving party on the issue for which summary judgment is sought, there is no issue for trial, and summary judgment should be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Thus, to create a genuine issue of material fact, the opposing party must "go beyond the pleadings" and set forth specific facts to support their contention. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).


**REDACTED**

---

[11] Claim 9 contains the similar language of "enabling automated clearing house communication for transferring funds without using a bank check as a negotiable instrument." (Ex. 1).

**REDACTED**

IV.    **ECHO's Accused Products Are "Adapted To Receive Consumer Bank Account Information From Any Bank Check" As Recited In Claim 1**

**REDACTED**

---

[12] As explained in LML's claim construction briefing, the applicants during prosecution of the '988 Patent expressly stated that their invention related to any "regular check" drawn on a "normal" checking account.  ECHO's effort to include foreign checks with non-magnetic and foreign fonts is simply not something the applicants intended their invention to cover.  Indeed, the '988 patent specifically eliminates such foreign checks, stating "The system is designed to act with the *national* authorization and electronic settlement network know as the ACH system.  (Ex. 1 to Opening Br. at 3:19-21 (emphasis added)).

**REDACTED**

**V.    ECHO's Accused Products Perform The Step "Presenting Any Bank Check Specimen To A Point Of Sale Terminal Located At A Merchant Or Service Provider" As Recited In Claim 8.**

Claim 8 recites a process which includes the step of "presenting any bank check specimen to a point of sale terminal located at a merchant or service provider." ECHO attempts to shovel this element in with its "any bank check" arguments for system claims 1 and 9. (ECHO's Opp. at 28-29). However, claim 8 is a method claim, and must be interpreted as such. *NTP, Inc. v. Research in Motion, Ltd*, 418 F.3d 1282, 1316 (Fed. Cir. 2005) (noting the infringement analysis is different for "different types of claims"). As a method claim, the term "any bank check" broadens the claims as this element is satisfied if "any" check is presented to ECHO's point of sale terminal. A single transaction

---

13

**REDACTED**

performing all the claimed steps infringes claim 8.  Furthermore, there is no requirement

to read or receive anything in this claim step.

**REDACTED**

VI.    **ECHO's Point Of Sale Terminals Have "Means For Reading Magnetic Ink Character Recognition Numbers On Any Consumer Bank Check" As Recited In Claim 9.**

Surprisingly ECHO begins its defense that ECHO does not meet this limitation

under LML's construction *by rewriting LML's construction*.  (ECHO's Opposition at 30

("Even under LML's proposed construction, *once clarified* appropriately to exclude

'manual entry' as a reading means, this element is simply absent from the accused

-16-

services.") (emphasis added)).[14]  Because ECHO fails to raise any triable issue of fact regarding infringement under LML's construction, LML is entitled to summary judgment on this issue.  *Matsushita*, 475 U.S. at 586-87.


**REDACTED**


*Intel*, 946 F.2d at 832 (holding that a device claim was infringed if it was capable of operating in the claimed mode and that actual operation in the claimed mode was not required); *Key Pharms.*, 981 F. Supp. at 310 (finding that all that was required for infringement was that the system have the claimed capability, regardless of whether or not it was used).  Therefore, LML is entitled to summary judgment on this element.

**VII.    ECHO's Argument That The ECC Service Does Not Communicate With The ACH Network To Transfer Funds Based On "Any Bank Check" Is Based On Defendants' Flawed Claim Construction And Fails To Raise Any Triable Issues Of Fact.**

ECHO argues that it does not infringe because it does not communicate with the ACH Network to transfer funds based on "any bank check."  (ECHO's Opposition at 31-

---

[14] ECHO also argues that it does not infringe under its own claim construction.  (ECHO's Opposition at 31).  However, LML did not assert in its Summary Judgment motion that ECHO infringed under Defendants' proposed construction.

34). However, this argument is based on Defendants' flawed construction of "enabling automated clearing house communication for transferring funds" or "subsequently transmitting the transaction event information to a bank for subsequent automated clearing house operations." (*Id.*). LML did not assert in its Summary Judgment motion that ECHO infringed under Defendants' proposed construction of these terms. Because ECHO fails to raise any triable issue of fact regarding infringement under LML's construction, LML is entitled to summary judgment on this element. *Matsushita*, 475 U.S. at 586-87.

**VIII. ECHO's Defense That ECHO's ECC Service Reads The MICR Information For More Than Just Identifying Consumer Bank Account Information Fails To Raise Any Triable Issues Of Fact.**

In defending against LML's Opening Brief on the "sole purpose" limitation of claims 2, 8, 9, 10, 11 and 16, ECHO first argues that LML's proposed claim construction is wrong and then concludes that it does not infringe under Defendants' proposed construction. (ECHO Opposition at 34-37). However, LML did not assert in its Opening Brief motion that ECHO infringed under Defendants' proposed construction of these terms. Because ECHO fails to raise any triable issue of fact regarding infringement under LML's construction, LML is entitled to summary judgment on this element. *Matsushita*, 475 U.S. at 586-87.

**IX. ECHO's Defense That ECHO's ECC Service Does Not Include The Step Of "Verifying That Account Numbers Were Accurately Read At The Point Of Sale Terminal" Fails To Raise Any Triable Issues Of Fact.**

**REDACTED**

**REDACTED**

ECHO also concludes that it does not infringe under Defendants' proposed claim construction. However, LML did not assert in its Summary Judgment motion that ECHO infringed under the newly revised LML construction or Defendants' proposed construction of these terms. Because ECHO fails to raise any triable issue of fact regarding infringement under LML's construction, LML is entitled to summary judgment on this issue. *Matsushita*, 475 U.S. at 586-87.

## CONCLUSION

For the foregoing reasons, this Court should grant LML's motion and find that

ECHO literally infringes claims 1, 2, 4, 5, 6, 9, 10, 11, and 16 of the '988 Patent.


Dated:  November 23, 2005

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
Aaron D. Charfoos
Edward K. Runyan
Lesley G. Smith
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Counsel for Plaintiff LML Patent Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December, 2005, I electronically filed the foregoing document, **PUBLIC VERSION OF LML'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT NO. 2: FOR A RULING THAT DEFENDANT ECHO INFRINGES CLAIMS 1, 2, 4, 5, 6, 9, 10, 11 AND 16 OF THE '988 PATENT**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Collins J. Seitz, Jr., Esq.
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19801

William J. Marsden, Jr., Esq.
Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 1st day of December, 2005, the foregoing document was served via email on the following non-registered participants:

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Mark C. Scarsi, Esq.
Vision L. Winter, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

_____/s/ Mary B. Matterer_____
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS
& WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com

*Counsel for Plaintiff LML PATENT CORP.*