# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LML PATENT CORP. | ) |
| | ) |
| Plaintiff, | )  Civil Action No.:  04-858-SLR |
| vs. | ) |
| | ) |
| TELECHECK SERVICES, INC. | ) |
| ELECTRONIC CLEARING HOUSE, INC., | )  **PUBLIC VERSION** |
| XPRESSCHEX, INC. and | ) |
| NOVA INFORMATION SYSTEMS, INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

---

### LML'S REPLY IN SUPPORT OF ITS
### MOTION FOR SUMMARY JUDGMENT NO. 5:
### FOR A RULING THAT CLAIMS 1, 2, 4, 5, 6, 9, 10, 11, 14, 16 AND 18
### OF THE '988 PATENT ARE NOT INVALID UNDER 35 U.S.C. §§ 112 AND 132

Originally filed:  November 23, 2005
Public version filed:  December 1, 2005

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware  19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
Edward K. Runyan
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
(312) 861-2000

*Counsel for LML Patent Corp.*

# TABLE OF CONTENTS

I.    ARGUMENT IN REPLY ...................................................................................1

    A.    LML Is Entitled To Summary Judgment That The Asserted Claims
        Are Not Invalid For Lack Of A Written Description................................................1

        1.    Mr. Kurrasch's New, Previously Undisclosed Opinions
            With Respect to Written Description Should Be Stricken..........................2

        2.    Defendants Have Not Raised A Genuine Issue of Material
            Fact to Support Their Lack of Written Description Defense......................4

    B.    LML Is Entitled To Summary Judgment That The Asserted Claims
        Are Not Invalid Under 35 U.S.C. § 132 For Introducing New
        Matter.......................................................................................................7

    C.    LML Is Entitled To Summary Judgment That The Asserted Claims
        Of The '988 Patent Are Not Invalid For Lack Of Enablement..............................8

        1.    Mr. Kurrasch's New, Previously Undisclosed Opinions
            With Respect To Enablement Should Be Stricken ....................................9

        2.    Defendants' Arguments Are Based Exclusively on
            Misreadings of the Asserted Claims and Improper
            Constructions .......................................................................................10

        3.    Defendants' Unsubstantiated Conclusions Do Not Raise a
            Genuine Issue of Fact............................................................................12

    D.    LML Is Entitled To Summary Judgment That The Asserted Claims
         Of The '988 Patent Are Not Invalid As Indefinite .................................................15

        1.    Defendants' Indefiniteness Arguments Fail As A Matter Of
            Law .......................................................................................................15

        2.    The New Opinions of Mr. Kurrasch With Respect to
            Indefiniteness Should Be Stricken ........................................................17

        3.    LML's Proposed Construction of "Without Using the
            [Bank] Check as Negotiable Instrument" Is Not Indefinite....................17

        4.    LML's Proposed Construction of "Any Bank Check" and
            "Any Consumer Bank Check" Is Not Indefinite......................................18

II.    CONCLUSION.......................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Advanced Medical Optics, Inc. v. Alcon, Inc.,*
No. Civ. A. 03-1095-KAJ, 2005 WL 782809 (D. Del. April 7, 2005) .................. 3

*Bancorp Services, L.L.C. v. Hartford Life Ins. Co.,*
359 F.3d 1367 (Fed. Cir. 2004)............................................................................ 16

*Brook-Hill 1, LLC v. Intuitive Surgical, Inc.,*
334 F.3d 1294 (Fed. Cir. 2003)............................................................................ 7

*Brooktree Corp. v. Advanced Micro Devices, Inc.*
977 F.2d 1555 (Fed. Cir. 1992)............................................................................ 8

*Datamize, LLC v. Plumtree Software, Inc.,*
417 F.3d 1342 (Fed. Cir. 2005)...................................................................... 15, 16

*DeGeorge v. Bernier,*
768 F.2d 1318 (Fed. Cir. 1985) ........................................................................... 13

*Fowle v. C&C Cola,*
868 F.2d 59 (3rd Cir. 1988) ................................................................................. 2

*Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd.,*
1996 WL 680243 (N.D.Ill. Nov. 21, 1996) ......................................................... 18

*K-2 Corp. v. Saloman S.A.,*
191 F.3d 1356 (Fed. Cir. 1999)............................................................................ 11

*Koito Mfg. Co. v. Turn-Key Techm LLC,*
381 F.3d 1142 (Fed. Cir. 2004)............................................................................ 13

*N. TeleCom, Inv. V. Datapoint Corp.,*
908 F.2d 931 (Fed. Cir. 1990) ............................................................................. 13

*Pandrol USA, LP v. Airboss Ry. Prods, Inc.*
424 F.3d 1161 (Fed. Cir. 2005)............................................................................ 4

*Praxair, Inc. v. ATMI, Inc.,*
2005 WL 2994539 (D.Del. Nov. 8, 2005) ........................................................... 15

*Schumer v. Lab. Computer Sys., Inc.,*
308 F.3d 1304 (Fed. Cir. 2002)............................................................................ 10

*Solaia Tech. L.L.C. v. ArvinMeritor, Inc.,*
361 F. Supp. 2d 797 (N.D. Ill. 2005) ........................................................ 3, 10, 19

*United States v. Telectronics, Inc.*,
857 F.2d 778 (Fed. Cir. 1988)............................................................................... 15


**Statutes**

35 U.S.C. § 112 .................................................................................. 1, 2, 4, 21

35 U.S.C. § 132 ...................................................................................... 1, 7, 21

35 U.S.C. § 282 ............................................................................................. 11

**Rules**

Fed. R. Civ. P. 26(a) ...................................................................................... 4

Fed. R. Civ. P. 26(a)(2)(B) ............................................................................ 4

Fed. R. Civ. P. 26(e)(2) ................................................................................ 20

Fed. R. Civ. P. 37(c)(1) ........................................................................... 4, 20

Fed. R. Civ. P. 56(e) ...................................................................................... 2

Fed. R. Evid. 401 ..................................................................................... 6, 17

Fed. R. Evid. 402 ..................................................................................... 6, 17

Fed. R. Evid. 801 ..................................................................................... 6, 17

## I.    ARGUMENT IN REPLY

LML respectfully submits this reply in support of its Motion for Summary Judgment No. 5:  For a Ruling That Claims 1, 2, 4-6, 9-11, 14, 16 and 18 Of The '988 Patent Are Not Invalid Under 35 U.S.C. §§ 112 and 132.  Having insufficient evidence to support their invalidity contentions under §§ 112 and/or 132, Defendants instead rely on unsubstantiated conclusions and previously undisclosed expert opinions in an attempt to avoid summary judgment.   These new, conclusory opinions are inadmissible and insufficient to create a genuine issue of material fact for trial.   Moreover, Defendants' arguments are directly contrary to established Federal Circuit precedent, and consequently fail as a matter law.  Thus, LML is entitled to judgment as a matter of law that the '988 patent is not invalid under 35 U.S.C. §§ 112 and 132.

### A.    LML Is Entitled To Summary Judgment That The Asserted Claims Are Not Invalid For Lack Of A Written Description

No genuine issue of material fact exists that the '988 patent satisfies the written description requirement of 35 U.S.C. § 112.  While Defendants attempt to manufacture a genuine issue with conclusory and previously undisclosed expert opinions, this new evidence is inadmissible and insufficient to avoid summary judgment.   Indeed, Defendants ignore the evidence presented by LML establishing that the element "without using the [bank] check as a negotiable instrument" was fully supported by the original disclosure.  Instead, Defendants' arguments focus on their improper construction, and not on LML's proper construction of "without using the check as a negotiable instrument." As such, under the proper construction, no genuine issue of material fact exists.

     *1.    Mr. Kurrasch's New, Previously Undisclosed Opinions With*
           *Respect to Written Description Should Be Stricken*

Recognizing that they did not have sufficient evidence with respect to their written description defense, Defendants attempt to manufacture new evidence by offering previously undisclosed opinions of their expert, David P. Kurrasch. Mr. Kurrasch did not provide these opinions in his expert reports, and thus, these opinions should be stricken.

In response to LML's interrogatory asking for a detailed explanation of all legal and factual bases for any claims of invalidity, Defendants set forth their lack of written description defense under § 112 with only the following explanation:

> Claims 1, 8 and 9, and the asserted claims of the '988 patent which depend from claims 1, 8 and 9 are further invalid under 35 U.S.C. § 112, first paragraph, because the original disclosure failed to provide sufficient written description for claim language subsequently added in a June 1994 Office Action response.

(Open Br. Ex. 5 at 12-13)[1]. Defendants never supplemented this interrogatory response to provide any further details with respect to this defense.

**REDACTED**

---

[1] Exhibits to the Declaration of Lesley Smith in Support of LML's Motion for Summary Judgment No. 5, hereinafter ("Open Br. Ex. __").

[2] LML objects to Defendants' reliance throughout its opposition brief on excerpts from the expert report of David P. Kurrasch. (Def. Opp. Br. Ex. 1). Exhibit 1 should be stricken not only because it is inadmissible hearsay under Rule 801, but also because it violates the clear dictates of Federal Rule of Civil Procedure 56(e) which requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also Fowle v. C&C Cola*, 868 F.2d 59, 67 (3rd Cir. 1988) (holding that an expert report would not be considered on a motion for summary judgment because "[t]he substance of this report was not sworn to by the alleged expert").

- 2 -

**REDACTED**

Now, in the middle of summary judgment briefing, Mr. Kurrasch provides over two pages of new opinions in his declaration submitted in support of Defendants' opposition brief. (Def. Opp. Br. Ex. 8 at ¶¶ 14-18). His declaration includes opinions on why the negotiable instrument limitation was allegedly added to the claims (¶ 14), what the original application allegedly disclosed (¶ 15-16, and 18), and the alleged statutory, legal and regulatory regimes applicable at the time the original application was filed (¶ 17). As shown above, these opinions were not disclosed in Mr. Kurrasch's expert report. As such, Mr. Kurrasch's new opinions in paragraphs 14-18 of his declaration violate Fed. R. Civ. P. 26(a)(2)(B),[3] and thus should be stricken.

---

[3] Rule 26(a)(2)(B) requires an expert to include a "complete statement of all opinions to be expressed and the basis and reasons therefore." An expert who, without substantial justification, fails to include all of his opinions in his report in compliance with Fed. R. Civ. P. 26(a) "is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1); *see, e.g., Solaia Tech. L.L.C. v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 806-07 (N.D. Ill. 2005) (excluding an expert declaration filed in support of a summary judgment response for including ***new opinions*** without "substantial justification."); *Advanced Medical Optics, Inc. v. Alcon, Inc.*, No. Civ. A. 03-1095-KAJ, 2005 WL 782809, *5 (D. Del. April 7, 2005) (excluding expert testimony on opinions not disclosed in expert's report).

2.   *Defendants Have Not Raised A Genuine Issue of Material Fact to Support Their Lack of Written Description Defense*

In its Opening Brief, LML presented eleven excerpts from the original disclosure of the '988 patent that established that the Applicants had "possession" of the concept reflected in the limitation "without using the [bank] check as a negotiable instrument" at the time of the original disclosure, and thus, that it contained an adequate written description. *See Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 424 F.3d 1161, 1165 (Fed. Cir. Sept. 19, 2005) ("Compliance with § 112 requires sufficient information in the specification to show that the inventor possessed the invention at the time of the original disclosure."). In response, Defendants did not address a single one of these excerpts individually, instead making a general, unsubstantiated statement that these portions of the original disclosure "relate to other features recited in the claims" such as "scanning the check and using that information to transfer funds." (Def. Opp. at 15-16). Yet, Defendants offer no explanation as to how statements from the specification such as "the invention *eliminates the need for paper checks*" and "a check is used as the *basic source of identification of the individual and of the individual's bank*" (just two of the eleven excerpts from the original disclosure cited by LML) have anything to do with scanning a check or transferring funds as opposed to showing that a check in the invention is used only as a source document and not accepted or processed.[4] Not surprisingly, Defendants

---

[4] Contrary to their claims otherwise, Defendants contradict their written description defense by relying on citations from the original disclosure to support their construction of "without using the [bank] check as a negotiable instrument." LML agrees that parties may argue in the alternative in certain situations. But, citing to the *original disclosure* as intrinsic evidence to support the construction of the negotiable instrument limitation and then arguing that there is no support for that limitation in

do not provide an ounce of support for their argument, expert or otherwise.[5]

Instead of directly addressing the specific portions of the specification referenced by LML, Defendants attempt to avoid this support and instead focus on how various references, including the UCC, Regulation E and state laws, define "negotiable instrument."[6]  However, these definitions of "negotiable instrument" have no relevance as to whether or not the original disclosure provided an adequate disclosure for the limitation "without *using* the [bank] check as a negotiable instrument."   Indeed, Defendants' argument ignores the plain language of the claims by focusing on the *status* of the check instead of on the *use* of the check.  This violates the basic tenets of claim construction which mandate that the first step in claim construction is to look at the claim language itself -- here the claims focus on whether a check is "used" as a negotiable instrument -- the status of the check is irrelevant.[7]

---

the *original disclosure* is not arguing in the alternative--the two arguments are mutually exclusive.

[5] Defendants reliance on *Innova* to support its argument is misplaced as it deals with claim construction, not determining whether a particular element has an adequate written description.  It is simply not applicable here.

[6] Neither Defendants nor their expert attach (or even cite to) the specific portions of the regulations and laws on which they rely so LML is unable to verify whether Defendants have accurately characterized them or whether Defendants produced copies of them during discovery.

[7] Defendants also argue that the original disclosure is actually consistent with the use of checks as negotiable instruments.  (Def. Opp. at 15).  But, Defendants offer no support for this statement other than the unsubstantiated opinions of their expert, Mr. Kurrasch.   However, Mr. Kurrasch simply makes this conclusion without any reasoning or support.  Moreover, Defendants do not explain how the portions of the specification cited by LML -- such as "[f]unding settlement...would be effectuated by means of EFT via ACH...*as opposed to physically processing and transferring checks among banks*" -- could possibly be consistent with the use of checks as negotiable instruments.  As explained above, Defendants' entire argument focuses, not on the use of the check as required by the claims, but on the status of the check.  This violates basic claim construction principles.

**REDACTED**

Because no genuine issue of material fact exists that the asserted claims are not

invalid for lack of written description, LML is entitled to summary judgment.

_____

[8] Defendants attached third party Mr. Hill's journal as Exhibit 18 to their opposition. This document is not admissible evidence, and LML objects to the exhibit, as it is hearsay under Federal Rule 801. Moreover, LML objects to this exhibit as under Federal Rules 401 and 402.

**REDACTED**

On these bases, Exhibit 18 should be stricken.

[9]

**REDACTED**

**B.     LML Is Entitled To Summary Judgment That The Asserted Claims Are Not Invalid Under 35 U.S.C. § 132 For Introducing New Matter**

As explained above with respect to Defendants' written description defense, LML presented numerous excerpts from the original disclosure establishing that the limitation "without using the [bank] check as a negotiable instrument" was fully supported by the original disclosure and thus, was not new matter when it was added to the claims by amendment. Defendants' arguments with respect to their new matter defense are largely a restatement of their written description arguments. Therefore, Defendants' new matter defense fails for the same reasons described in the section above.[10]

The only new argument raised by Defendants with respect to their new matter defense is that the addition of the negotiable instrument limitation must have been new matter since it was added to overcome prior art. (Def. Opp. at 19). However, the fact that Applicants added the negotiable instrument limitation *to the claims* in no way supports the conclusion that they were adding new matter. Defendants again make this conclusion without justification. In this case, the Applicants were simply trying to *clarify* a feature of their invention described in the original disclosure that made their invention distinct from the prior art—this is not adding new matter. *See Brook-Hill 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1303-1304 (Fed. Cir. 2003) (holding that an amendment clarifying a limitation supported by the original disclosure was not a new

---

[10] For the same reasons outlined above, Defendants should not be able to rely on the new opinions in paragraphs 14-18 of Mr. Kurrasch's declaration to support their new matter defense.        **REDACTED**

                                                                                                          Mr.
Kurrasch must be limited to this opinion and Defendants cannot rely on his new opinions in paragraphs 14-18 of his declaration to support their new matter argument.

matter violation).   Indeed, Applicants' arguments to the PTO regarding patentability remained static throughout prosecution.[11]

Thus, no genuine issue of material fact exists with respect to Defendants' new matter defense, entitling LML to summary judgment as a matter of law.

### C.    LML Is Entitled To Summary Judgment That The Asserted Claims Of The '988 Patent Are Not Invalid For Lack Of Enablement

Despite the fact that the disclosure of the '988 patent was more than adequate to enable one of ordinary skill at the time of the invention to practice the full scope of the claimed invention, Defendants argue that the "any bank check" limitations of the asserted claims are not enabled.[12]  But, notwithstanding the fact that Defendants' entire argument is based on new, previously undisclosed (and thus, inadmissible) expert opinions, Defendants' arguments fail for at least two independent reasons:   (1) they are based solely on Defendants' mischaracterization and improper construction of  claims 1, 8 and 9 and (2) they consist only of sweeping generalities and conclusions that are not supported by any actual evidence.

---

[11] Defendants also argue against the "especially weighty presumption" of validity that applies in cases where the PTO did not reject the claims after an amendment based on the addition of new matter.  *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574-75 (Fed. Cir. 1992).  Defendants' cite to *AK Steel* is irrelevant as it relates to enablement—not new matter.   The Federal Circuit has not overturned *Brooktree* which specifically addresses a new matter rejection and holds that where an Examiner does not object to new matter, there is an "especially weighty presumption of correctness." *Brooktree*, 977 F.2d at 1574-75.

[12] Defendants concede that they are no longer pursuing enablement defenses with respect to the elements "enabling automated clearing house communications for transferring funds" and "reading the magnetic ink character recognition number on the check for the sole purpose of obtaining consumer bank account information." (Def. Opp. at 23, n.7).  Thus, LML is entitled to summary judgment with respect to these defenses.

   *1.    Mr. Kurrasch's New, Previously Undisclosed Opinions With
          Respect To Enablement Should Be Stricken*

As an initial matter, Defendants attempt to support their enablement argument

with new, previously undisclosed opinions of their expert, Mr. Kurrasch. Defendants

offer these new opinions by way of Mr. Kurrasch's declaration (Def. Opp. Br. Ex. 8 at

¶¶ 20-22) even though Mr. Kurrasch did not provide these opinions in his expert report.

As such, these new, previously undisclosed opinions should be stricken.

**REDACTED**

Nonetheless, Mr. Kurrasch's declaration in support of Defendants' opposition

brief includes over a page of new opinions as to why the asserted claims are not enabled.

(Def. Opp. Br. Ex. 8 at ¶¶ 20-22). These new opinions include (1) opinions on the

various MICR line fonts used by foreign banks, (2) opinions on the trading markets of

lesser developed nations and countries with highly regulated currency controls,

(3) opinions on the MICR standards set forth by the American Bankers Association, and

(4) opinions on the impact of regulations of the Canadian Payments Association. (*Id.*) None of these opinions were included in the opinion Mr. Kurrasch provided in his report. As such, paragraphs 20-22 of Mr. Kurrasch's declaration should be stricken and he should be limited to the conclusory opinion set forth in his report. *See  Solaia*, 361 F. Supp. 2d at 806-07 (excluding an expert declaration filed in support of a summary judgment response for including *new opinions* without "substantial justification").

> 2.    *Defendants' Arguments Are Based Exclusively on Misreadings of the Asserted Claims and Improper Constructions*

Although Defendants argue that claims 1, 8 and 9 are not enabled, they have still not examined each claim individually as required by law. 35 U.S.C. § 282 ("Each claim of a patent . . . shall be presumed valid independently of the validity of other claims."); *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1316 (Fed. Cir. 2002). Instead, they continue to couch all claims of the '988 patent into a single argument that the "any bank check" limitations are not enabled to "receiv[e] information and transfer[] funds using 'any bank check' or 'any consumer bank check.'" (Def. Opp. at 20). Yet, Defendants' argument makes no sense since *no claim of the '988 patent contains any such element.* In fact, although Defendants argue only that the "any bank check" limitations are not enabled, none of the elements that contain the phrase "any bank check" require either "transferring funds" or "conducting transactions." Claim 1 recites "a point of sale terminal adapted to receive consumer bank account information from any bank check;" Claim 8 recites "presenting any bank check specimen to a point of sale terminal located

at a merchant or service provider;"[13] and claim 9 recites "the point of sale terminal comprising reading means for reading magnetic ink character recognition numbers on any consumer bank check." Each element uses different language and requires different things, but none of them require "transferring funds" or "conducting transactions."

Defendants further mischaracterize the language of the claims by arguing that claims 1 and 8 "require obtaining information *'from'* a consumer bank check."[14] (Def. Opp. at 25 (emphasis added)). However, neither claim requires any such thing. Claim 1 is a system claim, not a method claim, and requires only that the system comprise a point of sale terminal *adapted* to receive information from any bank check. Claim 1 does not require that the point of sale terminal actually receive anything. While claim 8 is a method claim, it recites a step of "reading the magnetic ink character recognition number information *on* the check." Claim 8 does not recite the phrase "consumer bank check" at all and recites reading information *"on* the check" and not *"from* the check." Defendants cannot rewrite the claims to suit their defenses. *See, e.g., K-2 Corp. v. Saloman S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead we give effect to the terms chosen by the patentee.").

---

[13] In fact, claim 8 is a method claim and thus, describes a process by which "any" bank check is presented to a point of sale terminal. Thus, to be enabled, claim 8 (and claims depending therefrom) only requires an enabling disclosure for presenting "any" bank check to the terminal -- not all types of checks as Defendants contend.

[14] Aside from mischaracterizing the language of the claims, Defendants' argument is nonsensical. They state that "even under the claim construction proposed by LML, the lack of enablement defense" invalidates at least claims 1 and 8. (Def. Opp. at 25). However, as part of this argument, Defendants then proceed to state that "[b]oth claims should be construed, *as set forth in Defendants' claim construction brief*, to require 'reading information' from 'any bank check'" (*Id.*) Obviously this argument is not really based on LML's proposed claim constructions.

Defendants cannot meet their clear and convincing burden with respect to their enablement defense when their arguments are not even based on the elements recited in the claims. For this reason alone, LML is entitled to summary judgment.

> 3.    *Defendants' Unsubstantiated Conclusions Do Not Raise a Genuine Issue of Fact*

Irrespective of Defendants' mischaracterization of claims 1, 8 and 9, Defendants' argument that the '988 patent lacks the disclosure necessary to teach one of ordinary skill in the art how to use foreign checks[15] in the claimed system also must fail. Defendants argue two points with respect to foreign checks: (1) that the '988 patent does not disclose how to read the MICR line off of foreign checks and (2) that the '988 patent does not disclose how to conduct transactions using foreign checks. Even if the claims actually recited what Defendants allege that they do, neither of these arguments has merit.

***First***, Defendants offer no evidence that the '988 patent is not enabled to read the MICR line off of foreign checks. Defendants' argument in this regard is based on their sweeping conclusion that MICR standards are not available in "other nations around the world," once again offering only the unsubstantiated opinion of their expert as evidence to support this allegation. (Def. Opp. at 24). However, Defendants present no evidence to show how the fact that a foreign font is used on a check leads to the conclusion that one of ordinary skill could not use the invention of the '988 patent without undue

---

[15] As explained in LML's claim construction briefing, the Applicants, during prosecution of the '988 patent, expressly stated that their invention related to any "regular check" drawn on a "normal" checking account. Defendants' effort to include foreign checks with non-magnetic and foreign fonts is simply not something the applicants intended their invention to cover. Indeed, the '988 patent specifically eliminates such foreign checks, stating "The system is designed to act with the ***national*** authorization and electronic settlement network know as the ACH system. (Ex. 1 to Opening Br. at 3:19-21) (emphasis added).

experimentation, that one of ordinary skill would not already have the necessary knowledge, or that one of ordinary skill would even need foreign MICR standards to use the invention.  Defendants' only proffer of evidence are the opinions of Mr. Kurrasch (neither Defendants nor Mr. Kurrasch cite to a single, corroborating document) which simply set forth his general conclusions without providing any specifics or support for his statements.[16]  These unsubstantiated generalities are not enough to meet Defendants' clear and convincing burden with respect to enablement.  *Koito Mfg. Co. v. Turn-Key Techm LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004) ("General and conclusory testimony...does not suffice as substantial evidence of invalidity.").

**Second**, Defendants offer more such generalities to support their argument that the '988 patent does not enable one of ordinary skill to "conduct transactions" using foreign checks.  As support for this argument, Defendants argue that "processing transactions that require currencies for which there are not active trading markets, such as the currencies of many lesser developed nations or countries with highly regulated

---

[16] Mr. Kurrasch's opinions in this regard, if considered, rely exclusively on Defendants' improper attempt to read the "any bank check" limitation into the other elements of the claim.  Indeed, Mr. Kurrasch's opinions relate to the "transfer of funds" a phrase which (1) does not appear in the asserted claims, and (2) certainly does not appear in the elements containing the language "any bank check."  *See N. TeleCom, Inv. V. Datapoint Corp.*, 908 F.2d 931, 941 (Fed. Cir. 1990) (a patent need only enable the "claim invention."); *DeGeorge v. Bernier*, 768 F.2d 1318, 1324 (Fed. Cir. 1985) (holding that only the **_claimed_** invention must be enabled by the specification, and not all related, **_unclaimed_** device or systems with which the claimed invention might interface).  The '988 patent need not enable unclaimed subject matter.  Moreover, even assuming these '988 patent required "conducting transactions" or transferring funds," Defendants' arguments that the '988 patent does not enable one of ordinary skill in the art to interface with foreign banking systems (such as with countries with "active trading markets" or "highly regulated currency controls") is irrelevant.  The law does not require that the '988 patent enable the system to operate in a foreign country -- it is a US patent, and thus, its geographic scope is limited to the US.  *See id.*; *see also* 35 U.S.C. § 271.  Thus, Defendants' argument fails as a matter of law.

currency controls, would require undue experimentation." (Def. Opp. at 24). Neither Defendants nor their expert present any evidence (neither cite to a single corroborating document) to substantiate this sweeping conclusion. No evidence is presented to explain why an "active trading market" or "highly regulated currency controls" would require undue experimentation or what countries even have such markets or controls. Moreover, neither provides any explanation as to how they jump to the conclusion that these would lead one of ordinary skill in the art to be unable to practice the claimed invention without undue experimentation. Defendants and Mr. Kurrasch provide no specifics in this regard, but instead improperly rely on their unsubstantiated conclusions.[17]

   **Third**, Defendants argue that because "no working system within the scope of the claim was developed until 1998,"[18] that somehow suggests that undue experimentation would be required. Once again, Defendants are drawing illogical conclusions. Regardless of when the first system was "working," Defendants have not, and cannot, show, that any delay in developing any system was due to experimentation as opposed to other factors. But even assuming Defendants' statement were true, it would still fall far short of the clear and convincing evidence required to prove lack of enablement. Indeed,

---

[17] Defendants also argue that some countries (other than the US) prohibit electronic check conversion. Defendants again rely on the unsubstantiated (and previously undisclosed) opinion of Mr. Kurrasch. Not only does this underscore that one of ordinary skill would not read the asserted claims to include foreign checks, but Defendants do not explain whether these "prohibited" transactions originate in such countries or whether it also includes transactions originating in the U.S. Moreover, Defendants' argument again attempts to read "conducting transactions" or "transferring funds" using any bank check into the claims. No such limitation exists.

[18]

**REDACTED**

-14-

the time and cost of developing an embodiment of an invention are "factors [that] may be taken into account [but] standing alone [do not] show the experimentation to be excessive." *U.S. v. Telectronics, Inc.* 857 F.2d 778, 785 (Fed. Cir. 1988).

Defendants simply cannot meet their clear and convincing burden by throwing out sweeping generalizations and offering no evidence (other than conclusory and previously undisclosed expert opinions). As such, no genuine issue of material fact exists, entitling LML to summary judgment as a matter of law.

### D.  LML Is Entitled To Summary Judgment That The Asserted Claims Of The '988 Patent Are Not Invalid As Indefinite

Defendants have also failed to raise a genuine issue of material fact with respect to their claims of indefiniteness based on the limitations "without using the check (or bank check) as a negotiable instrument" and "any bank check." Defendants' arguments here are more of an attempt to get a "second-bite at the apple" with respect to claim construction as opposed to a legitimate invalidity defense. Indeed, Defendants' analysis with respect to this defense is incorrect and their defense must fail as a matter of law.[19]

### 1.  *Defendants' Indefiniteness Arguments Fail As A Matter Of Law*

As LML explained in its Opening Brief, the law is well settled that only claims "not amenable to construction" or "insolubly ambiguous" are indefinite. *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (internal citations omitted); *see also Praxair*, 2005 WL 2994539 at *2. Therefore, by proposing constructions for the elements "any [consumer] bank check" and "without using the

---

[19] Defendants argue throughout their brief (e.g., Def. Opp. at 26) that a reasonable jury could find these claim terms indefinite. But, indefiniteness is a question of law for the Court to decide -- not a jury. *Praxair, Inc. v. ATMI, Inc.*, No. Civ. 03-1158-SLR, 2005 WL 2994539, *2 (D.Del. Nov. 8, 2005).

[bank] check as a negotiable instrument," Defendants have conceded that those elements are "amenable to construction" and not indefinite.[20]

Tellingly, Defendants never argue that the claim elements themselves are indefinite—only that the words used *in LML's construction*[21] are indefinite. The legal standard for indefiniteness is not whether or not the words of a proposed construction are indefinite, but whether a construction is possible. *See Bancorp Services, L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004) (holding that if the meaning of the *claim* is discernible, it is not invalid on indefiniteness grounds). Therefore, Defendants' indefiniteness argument must fail as matter of law. Under the proper standard, Defendants have conceded that the claim terms "without using the [bank] check as a negotiable instrument" and "any bank check" are not indefinite.

---

[20] Defendants try to argue away their concession by claiming that they are permitted to assert positions in the alternative in claim construction and summary judgment briefs. LML does not dispute that there are times where a party can assert positions in the alternative. However, with respect to their indefiniteness arguments, Defendants are not offering *alternative* positions—they are offering *contradictory* positions. As explained, the law of indefiniteness is clear that if *any* construction is adopted for a claim element, that element is not indefinite. *See Datamize*, 417 F.3d at 1347. Defendants cannot propose their own claim construction while also arguing that a claim element is indefinite—these positions are mutually inconsistent. Indeed, Defendants *concede* in their brief that these claim terms are susceptible to at least one construction. (Def. Opp. at 28). As such, they cannot be indefinite as a matter of law.

[21]

**REDACTED**

> **2.  *LML's Proposed Construction of "Without Using the [Bank] Check as Negotiable Instrument" Is Not Indefinite***

As fully explained in LML's Opening Brief and its claim construction briefing D.I. 286), one of ordinary skill would understand that "without using the [bank] check as a negotiable instrument" means "where the paper check is used as a source of information, and is not accepted or processed" when read in light of the specification.[22] Indeed, the Field of Use in the '988 patent specifically states that the check is *"used as the source"* of consumer bank account information.  (Ex. 1 to Opening Br. at 1:10-15) (emphasis added).  The '988 specification further describes the system as "eliminat[ing] the need for 'paper checks'" and that no paper check is *"accepted or processed* by the service subscriber." (*Id.* at 3:51-53, 9:64-10:2) (emphasis added).  These are just some of the many passages LML cited during claim construction briefing to support its argument.

In their opposition, Defendants argue that the terms "accepted" and "processed" used in LML's proposed construction are indefinite.  As explained above, this strawman argument has nothing at all to do with whether the term "without using the [bank] check as a negotiable instrument" is indefinite.   Nevertheless, Defendants' argument is incorrect.  One of ordinary skill would understand the commonly used terms "accepted" and "processed."  The NACHA Operating Rules even use these terms in the same context as the claims.  (Reply Ex. C at LML-EP-055765) ("[T]he check is *not negotiated* by the merchant or *accepted* into the check collection system.") (emphasis added).  Certainly,

---

[22] LML stands by its claim construction briefing on this issue and refers the Court to such briefing if it is inclined to entertain Defendants' inappropriate effort to reargue claim construction.  Despite Defendants' efforts to characterize LML's construction of this term in a negative light, LML has always maintained a consistent construction of this term -- a construction that is fully supported by the intrinsic evidence of record.

terms used by NACHA, the industry's main standards body, would be understandable to one of skill in the art. Moreover, terms such as "accepted" or "processed" are terms readily understandable to a jury and certainly understandable by one of ordinary skill.

   3.   *LML's Proposed Construction of "Any [Consumer] Bank Check"*
        *Is Not Indefinite*

For the first time, Defendants, in response to LML's motion, contend that the '988 patent is indefinite based on the claim terms "any bank check" and "any consumer bank check."[23] But, as fully explained in LML's claim construction briefing, the specification and prosecution history of the '988 patent explain that "any [consumer] bank check" means "any regular check used to draw funds from a normal [consumer] bank or credit union checking account." (D.I. 286). For instance, the '988 patent continuously refers to "consumer checks" and distinguishes over prior art references based on the '988 patent's disclosure of "ordinary bank checks." (Ex. 1 to Opening Br. at 2:23-26, Abstract). The '988 patent even describes specific types of "bank checks" that can be used with the system, namely personal and corporate checks. (*Id.* at 3:6, 3:44, 3:53). Indeed, one of ordinary skill in the art (or any lay person for that matter) would certainly know what "any bank check" means -- it is an everyday term. However, Defendants' indefinite argument does not appear to be centered on the actual claim term "any bank check," but instead on the terms "regular" and "normal" used in LML's proposed construction." As

---

[23] During discovery, Defendants argued only that the element "without using the [bank] check as a negotiable instrument" was indefinite under § 112. Neither Defendants nor their expert ever argued that "any [consumer] bank check" was also indefinite. As such, Defendants' new contention should be disregarded. Fed. R. Civ. P. 26(e)(2) and 37(c)(1); *Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd.*, No. 95 C 0673, 1996 WL 680243, *8-10 (N.D.Ill. Nov. 21, 1996) (excluding evidence regarding a § 112 defense because defendants never supplemented their interrogatory responses to disclose the defense).

explained above, this strawman argument has nothing at all to do with whether the term

"any [consumer] bank check" is indefinite.    The words "regular" and "normal" are

everyday terms that any juror would understand and would certainly be understood by

one of ordinary skill in the art.

>    4.    *The New Opinions of Mr. Kurrasch With Respect to Indefiniteness*
>        *Should Be Stricken*

**REDACTED**

Nonetheless, Mr. Kurrasch's declaration in support of Defendants' opposition

brief includes four paragraphs containing entirely new opinions as to why he believes

LML's proposed claim constructions are indefinite.    (Def. Opp. Br. Ex. 8 at ¶¶ 25-28).

These paragraphs include (1) opinions on LML's proposed construction of "without

using the [bank] check as a negotiable instrument" (¶ 25), (2) opinions as to whether

portions of the specification of the '988 patent are related to the negotiability of a check

(¶ 26), and (3) opinions on LML's proposed construction of "any bank check" (¶¶ 27-

28).    None of these opinions were included in the two paragraphs of opinions Mr.

Kurrasch provided in his expert report.    Because Mr. Kurrasch's new opinions were not

included in the opinions set forth in his expert report, these opinions (¶¶ 25-28 of Mr.

Kurrasch's declaration) should be stricken.    *See Solaia*, 361 F. Supp. 2d at 806-07

(excluding an expert declaration filed in support of a summary judgment response for including *new opinions* without "substantial justification.").

## II.    CONCLUSION

For the foregoing reasons,  LML respectfully requests that this Court grant LML summary judgment that claims 1, 2, 4, 5, 6, 9, 10, 11, 14, 16 and 18 of the '988 Patent are not invalid under either 35 U.S.C. § 112 or § 132.

Dated:  November 23, 2005

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware  19801
(302) 888-6800
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
(312) 861-2000

*Attorneys for LML Patent Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December, 2005, I electronically filed the foregoing document, **PUBLIC VERSION OF LML'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT NO. 5: FOR A RULING THAT CLAIMS 1, 2, 4, 5, 6, 9, 10, 11, 14, 16 AND 18 OF THE '988 PATENT ARE NOT INVALID UNDER 35 U.S.C. §§ 112 AND 132**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Collins J. Seitz, Jr., Esq.
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19801

William J. Marsden, Jr., Esq.
Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 1st day of December, 2005, the foregoing document was served via email on the following non-registered participants:

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Mark C. Scarsi, Esq.
Vision L. Winter, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

_____/s/ Mary B. Matterer_____
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS
& WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com

*Counsel for Plaintiff LML PATENT CORP.*