**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LML PATENT CORP. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 04-858-SLR |
| vs. | ) | |
| | ) | |
| TELECHECK SERVICES, INC. | ) | |
| ELECTRONIC CLEARING HOUSE, INC., | ) | **PUBLIC VERSION** |
| XPRESSCHEX, INC. and | ) | |
| NOVA INFORMATION SYSTEMS, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF LESLEY G. SMITH IN SUPPORT OF**
**LML'S REPLY TO ITS MOTION FOR SUMMARY JUDGMENT NO. 5:**
**FOR A RULING THAT CLAIMS 1, 2, 4, 5, 6, 9, 10, 11, 14, 16 AND 18**
**OF THE '988 PATENT ARE NOT INVALID UNDER 35 U.S.C. §§ 112 AND 132**

Originally filed: November 23, 2005
Public version filed: December 1, 2005

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

Russell E. Levine, P.C.
Jamie H. McDole
Edward K. Runyan
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Counsel for LML Patent Corp.*

## DECLARATION OF LESLEY G. SMITH

I, Lesley G. Smith, declare as follows:

1.  I am an associate of the law firm of Kirkland & Ellis LLP, and counsel for plaintiff LML Patent Corp. ("LML"). I am a member in good standing of the bar of the state of Illinois, and I am admitted to practice *pro hac vice* in the United States District Court for the District of Delaware for this case. The facts set forth below are known to me personally and I could competently testify hereto if called as a witness in this action.

2.  Attached hereto as Exhibit A is a true and copy of selected portions of the deposition of Robert Hills.

3.  Attached hereto as Exhibit B is a true and correct copy of portions of the August 12, 2005 Expert Report of David P. Kurrasch Regarding Invalidity that has been marked "Outside Counsel Eyes Only" by Defendants.

4.  Attached hereto as Exhibit C is a true and correct copy of selected excerpts from the 2005 ACH Rules.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on this 22nd day of November, 2005 in Chicago, Illinois.

Lesley G. Smith

# EXHIBIT   A

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# EXHIBIT   B

# EXHIBIT   REDACTED
# IN   ITS   ENTIRETY

# EXHIBIT   C

# 2 0 0 5

A Complete Guide To Rules &
Regulations Governing the
ACH Network

LML-EP-055336

# 2 0 0 5

# ACH RULES

## A Complete GuideTo Rules &
## Regulations Governing the
## ACH Network

Copyright 2005 by the National Automated Clearing House Association

All Rights Reserved

Printed in the United States of America

13665 Dulles Technology Drive, Suite 300

Herndon, VA 20171

703-561-1100

LML-EP-055337

# SECTION IV
# SPECIAL TOPICS

# CHAPTER XII
# POINT-OF-PURCHASE ENTRIES

## A. INTRODUCTION

The *NACHA Operating Rules* support an application that enables Originators (i.e., merchants, billers, etc.) to initiate a Single-Entry ACH debit entry to a Receiver's account for in-person purchases made at the point-of-purchase. This application, which is based on a written authorization and account information drawn from a source document (check) obtained from the consumer at the point-of-purchase, provides Originators with an alternative to accepting consumers' checks as the method of payment. This chapter addresses issues relating to the origination and receipt of Point-of-Purchase Entries (POP.

A POP entry is a Single-Entry ACH debit used by Originators as an alternative method of payment for goods or services purchased in person. These one-time debit entries are initiated by the Originator to the consumer's account based on a written authorization and account information drawn from a source document (a check) obtained from the consumer at the point-of-purchase. To initiate a POP entry, the consumer must present a check or sharedraft that has not been previously voided or negotiated to the Originator. The Originator uses a check reading device to capture the MICR information from the check (i.e., routing number, account number, and serial number), which will be used by the Originator to generate a debit entry to the consumer's account. The Originator may not key enter the MICR information from the check, nor may the Originator key enter the MICR information after the check reader has captured this data. The Originator then key enters the amount of the transaction, after which an authorization will be provided to the consumer to sign, authorizing the debit to his account. The Originator must provide to the consumer (1) the consumer's source document, which the Originator has voided, (2) a copy of the consumer's authorization, and (3) a receipt containing specific information relating to the purchase.

## B. LEGAL FRAMEWORK

POP entries are subject to the requirements of the *NACHA Operating Rules*, the Electronic Fund Transfer Act, and the Federal Reserve's Regulation E. POP entries are considered to be ACH entries from start to finish, with the consumer's check used by the Originator solely as a source document for the consumer's routing and account number information. Such transactions are not considered

to be truncated checks and do not fall under the requirements of check law or the Uniform Commercial Code for the following reasons:

(1) the check is not accepted by the merchant as a negotiable instrument; and

(2) the check is not negotiated by the merchant or accepted into the check collection system.

## C. OBLIGATIONS OF ORIGINATORS

### 1. AGREEMENTS WITH ODFIs

Originators choosing to utilize the ACH Network for POP transactions should consider modifications to their agreements with their ODFIs to address the origination of these entries. These modifications should address the extent to which the Originator and ODFI will share liability for point-of-purchase transactions and should define any specific processing obligations relating to such transactions.

### 2. AUTHORIZATION REQUIREMENT

Originators of POP entries must obtain the consumer's written authorization prior to initiating a debit entry under this application. Although the *NACHA Operating Rules* do not prescribe specific authorization language for the point-of-purchase application, the authorization must conform to the requirements of the *NACHA Operating Rules*, which require that the authorization (1) be in writing, signed or similarly authenticated by the Receiver, (2) be readily identifiable as an ACH debit authorization, and (3) clearly and conspicuously state its terms. It is strongly recommended that authorization language for point-of-purchase entries specifically state that the check will not be processed. This will assist consumers in understanding the nature of the transaction. Originators must provide a copy of the authorization to the consumer as required by the *NACHA Operating Rules*.

Unlike authorization requirements for most consumer debit entries, Originators of point-of-purchase entries need not include on the authorization the method by which the consumer must revoke the authorization, as these entries can not be returned using Return Reason Code R07 (Authorization Revoked). Consumers retain their rights to stop payment on the ACH entry (R08) or to have it returned as unauthorized/improper (R10) when appropriate.

### 3. SOURCE DOCUMENTS

*Acceptable Source Documents*

Originators may only accept a check or sharedraft as a source document for a point-of-purchase debit entry if the check or sharedraft:

* has not been previously negotiated;

LML-EP-055765

- has not been previously voided;
- contains a pro-printed serial number; and
- is drawn on a consumer account.

*Unacceptable Source Documents*

Checks that may not be used as source documents for point-of-purchase entries include:

- corporate checks;
- third-party checks;
- credit card checks;
- obligations of a financial institution (e.g., cashier's checks, money orders, traveler's checks, official checks, etc.);
- checks drawn on the Treasury of the United States, a Federal Reserve Bank, or a Federal Home Loan Bank;
- checks drawn on a state or local government; or
- checks payable in a medium other than United States currency.

## 4. RECEIPT REQUIREMENTS

Originators must, at the point-of-purchase, provide Receivers with a receipt that contains the following minimum amount of information:

- Originator name (merchant);
- company (merchant)/third-party service provider telephone number;
- date of transaction;
- transaction amount;
- source document check serial number;
- merchant number (or other unique number that identifies the location of the transaction);
- Terminal City; and
- Terminal State.

Note: The Federal Reserve Board's Official Staff Commentary on Regulation E requires the inclusion of terminal location information on the receipt provided to the consumer at the point of purchase. When a POS terminal is used to capture data electronically to initiate EFT, the Regulation E Official Staff Commentary considers this POS terminal to be an electronic terminal, even if no access device is used, such as when a check is used to capture information to initiate a one-time EFT. As a result, when a check is used as a source document at the point of purchase and run through a terminal to read the MICR information, as is the case with POP entries, it is necessary to ensure compliance with Regulation E's requirements for electronic terminals, which mandate the inclusion of the terminal location on the receipt for POP entries.

It is also recommended, but not required, that the Originator provide the following information on the receipt provided to the Receiver:

- merchant address;
- merchant identification number;
- Receiver's financial institution routing number;
- Receiver's truncated account number;
- Receiver's truncated identification number; and
- transaction reference number.

Originators must be aware that the Receiver's complete account number and complete identification number are not permitted to be placed on the receipt. At the Originator's discretion, the receipt and the authorization required for point-of-purchase entries may be provided to the consumer on the same document or on different documents.

## 5. FORMATTING REQUIREMENTS

### Individual Name

Originators should be aware that, with the POP SEC Code, the inclusion of information in the Individual Name Field is optional. If the Originator chooses to utilize this field, it must include either (1) the Receiver's (consumer's) name, or (2) a reference number, identification number, or code that the merchant uses to identify a particular transaction or customer. (Note: When a reference number, identification number, or code is used to identify the transaction or customer, it should be uniquely related to the individual or transaction. A generic description is not an acceptable means to identify the Receiver or transaction.)

### Check Serial Number

The rules governing POP entries require that the Originator ensure that the check serial number from the Receiver's source document is placed within the Check Serial Number Field of the POP entry. Originators should understand that the *NACHA Operating Rules* permit Originators to place only the check serial number within the Check Serial Number Field of the POP Entry Detail Record. The word "check," abbreviations such as "ck" or "chk," or other merchant codes must not be included within the field. Because the Check Serial Number Field is defined as an alphanumeric one, the *NACHA Operating Rules* require information within this field to be left justified and space filled. The serial number of the check must begin in the leftmost position of the Check Serial Number field, and any unused spaces within the field must be left blank.

| INCORRECT | 0001234 |
| | 000000000001234 |
| | CK# 001234 |
| | CK1234 |
| | 1234 6532986002 |
| | CK1234 48832817 |

LML-EP-055766

CORRECT          1234

Originators should be aware that the *NACHA Operating Rules* require RDFIs to print the check serial number on the consumer's bank statement.

#### Terminal City/Terminal State

To ensure compliance with both the *NACHA Operating Rules* and Regulation E, which require the inclusion of terminal location information on the consumer's monthly bank account statement for POP entries, Originators must ensure that they have included a four-character name or abbreviation of the city in which the electronic terminal is located within the Terminal City Field, and a two-character abbreviation for the state in which the electronic terminal is located within the Terminal State Field of the POP Entry Detail Record. This information is used to identify the location of the electronic terminal used to originate the POP entry.

#### 6. RETURN OF POINT-OF-PURCHASE ENTRIES

Originators should be aware that POP entries, like other ACH transactions, may be returned for a variety of reasons. Originators should be aware, however, that RDFIs can not return POP entries based on a consumer's claim that his authorization had been revoked (R07) since these are one-time transactions where the Originator will generally process the transactions immediately after the purchase is complete. As appropriate, however, the consumer may (1) request his RDFI to stop the payment of a POP entry (Return Reason Code R08), (2) request his RDFI to return an unauthorized/improper POP entry (Return Reason Code R10), or (3) go directly to the Originator (merchant) to request a refund of the transaction.

Originators should also be aware that, because the POP entry application does not require the Originator to capture the consumer's name for inclusion on the point-of-purchase entry, the RDFI must rely on the ODFI's warranty regarding the validity of the consumer's account number for posting purposes. The RDFI, therefore, may not return a point-of-purchase entry using Return Reason Codes R03 or R17 solely because the consumer's name is not included in the Individual Name Field of the entry. The RDFI may, however, use these Return Reason Codes if otherwise appropriate.

Originators must be prepared to handle returned point-of-purchase entries and must establish procedures that enable them to identify and contact the Receiver relating to any unpaid debit entry. Because the Originator does not retain the consumer's voided check as a source document, and because the consumer's name and address are not included as part of the MICR-capture process, Originators will need to develop alternative methods for retaining information necessary to identify the consumer for whom

a point-of-purchase debit has been returned. The *NACHA Operating Rules* limit the number of times an entry returned due to insufficient or uncollected funds may be reinitiated to no more than two times following the return of the original entry. Originators should establish procedures to ensure that returned POP entries are not reinitiated in excess of the limits prescribed by the *NACHA Operating Rules*.

#### D. RESPONSIBILITIES OF ODFIs

#### 1. WARRANTIES AND LIABILITIES

In addition to all other general ODFI warranties contained within the *NACHA Operating Rules*, each ODFI that chooses to transmit POP entries on behalf of its Originator also warrants to each RDFI, ACH Operator, and ACH Association that:

- the source document provided to the Originator for use in obtaining the Receiver's routing number, account number, and check serial number for the initiation of the POP entry

  - is returned voided to the Receiver after use by the Originator, and

  - has not been provided by the Receiver for use in any prior POP entry.

ODFIs should consider modifications to their agreements with their Originators to address the origination of POP entries on behalf of their Originators. These modifications should address the extent to which the Originator and ODFI would share liability for POP transactions and should define any specific processing obligations relating to such transactions.

#### 2. FORMATTING REQUIREMENTS

ODFIs must ensure that, prior to transmission to the ACH Operator, POP entries comply with all technical specifications and formatting requirements in accordance with the *NACHA Operating Rules*. ODFIs must ensure that:

- the check serial number from the Receiver's source document is placed within the Check Serial Number Field of the POP entry.

  ODFIs should understand that the *NACHA Operating Rules* permit Originators to place only the check serial number within the Check Serial Number Field of the POP Entry Detail Record. The word "check," abbreviations such as "ck." or "chk." or other merchant codes must not be included within the field. Because the Check Serial Number Field is defined as an alphanumeric one, the *NACHA Operating Rules* require information within this field to be left justified and space filled. The serial number of the

LML-EP-055767

check must begin in the leftmost position of the Check Serial Number field, and any unused spaces within the field must be left blank.

| | |
|---|---|
| INCORRECT | 0001234 |
| | 000000000001234 |
| | CK# 001234 |
| | CK1234 |
| | 1234 6532986002 |
| | CK1234 48832817 |
| CORRECT | 1234 |

ODFIs should be aware that the *NACHA Operating Rules* require RDFIs to print the check serial number on the consumer's bank statement.



- they are aware that use of the Individual Name Field by the Originator is optional. When used, it must contain either (1) the Receiver's name, or (2) a reference number, identification number, or code that the merchant uses to identify a particular transaction or customer. (Note: When a reference number, identification number, or code is used to identify the transaction or customer, it should be uniquely related to the individual or transaction. A generic description is not an acceptable means to identify the Receiver or transaction.)

### 3. RETURN OF POINT-OF-PURCHASE ENTRIES

ODFIs should be aware that POP entries, like other ACH transactions, may be returned for a variety of reasons in accordance with the return time frames prescribed by the *NACHA Operating Rules*. ODFIs should be aware, however, that RDFIs can not return POP entries based on a consumer's claim that his authorization had been revoked (R07) since these are single entry transactions where the Originator will generally process the transactions immediately after the purchase is complete. As appropriate, however, the consumer may (1) request his RDFI to stop the payment of a POP entry (Return Reason Code R08), (2) request his RDFI to return an unauthorized/improper POP entry (Return Reason Code R10, R37), or (3) go directly to the Originator (merchant) to request a refund of the transaction.

ODFIs should also be aware that, because the Point of Purchase application does not require the Originator to capture the consumer's name for inclusion on the POP entry, the RDFI must rely on the ODFI's warranty regarding the validity of the consumer's account number for posting purposes. The RDFI, therefore, may not return a point-of-purchase entry using Return Reason Codes R03 or R17 solely because the consumer's name is not included in the Individual Name Field of the entry. The RDFI may, however, use these Return Reason Codes if otherwise appropriate.

ODFIs should ensure that their Originators are prepared to handle returned POP entries and have established procedures that enable them to identify and contact the Receiver relating to any unpaid debit entry. Because the Originator does not retain the consumer's voided check as a source document, and because the consumer's name and address are not included as part of the MICR-capture process, ODFIs should ensure that their Originators understand the need to develop alternative methods for retaining information necessary to identify the consumer for whom a point-of-purchase debit entry has been returned. ODFIs must ensure that their Originators have established policies and practices to ensure that POP entries that are returned because of insufficient or uncollected funds are not reinitiated more than two times following the return of the original entry.

### 4. STOP PAYMENTS ON POINT-OF-PURCHASE ENTRIES

ODFIs should be aware that, in general, the *NACHA Operating Rules* regarding ACH stop payments require consumers to place a stop payment order on a debit at least three banking days prior to the scheduled date of the entry. Because the merchant will generally process POP transactions quickly, consumers are unlikely to be able to meet the three-day advance notice requirement for placing a stop payment order on such entries. To ensure that a consumer has the ability to place a stop payment order on a POP entry, the *NACHA Operating Rules* require a consumer to provide a stop payment order to his financial institution in such a time and manner that allows the RDFI a reasonable opportunity to act on the stop payment order prior to acting on the debit entry.

### X. RESPONSIBILITIES OF RDFIs

### 1. RETURN OF POINT-OF-PURCHASE ENTRIES

POP entries may be returned for a variety of reasons in accordance with the requirements of the *NACHA Operating Rules*. With the exception of entries for which the consumer claims there was no authorization, the source document used for the POP entry is improper, and the source document to which the POP entry relates has also been presented for payment, the RDFI must transmit POP entry returns by its ACH Operator's deposit deadline for the return entry to be made available to the ODFI no later than the opening of business on the second banking day following the settlement date of the original entry. For an entry that the consumer claims is unauthorized/improper (R10) or (R37), the RDFI must transmit the return by its ACH Operator's deposit deadline for the return to be made available to the ODFI no later than the opening of business on the banking day following the sixtieth calendar day following the settlement date of the original entry. For the return of unauthorized entries, the RDFI must obtain a written statement under penalty of perjury from the consumer stating that the entry was not authorized. (Note: For

LML-EP-055768

additional information on written statements under penalty of perjury, refer to the RDFIs chapter within Section II of these Guidelines.)

RDFIs must be aware that, under certain circumstances, specific Return Reason Codes may not be used with POP entries:

- **Return Reason Code R03** (*No Account/Unable to Locate Account*) **and Return Reason Code R17** (*File Record Edit Criteria*)

  RDFIs must be aware that, for transactions initiated at the point-of-purchase, it is difficult for the Originator to capture the Receiver's name in an automated fashion. For this reason, the Originator is not required to include the individual's name in the POP entry, and the RDFI must rely on the ODFI's warranty regarding the validity of the consumer's account number for posting purposes.

  The RDFI can not return POP entries solely because they lack an Individual Name. In general, typical Return Reason Codes used to return entries for which there is no Individual Name (e.g., R03, R17) may not be used by the RDFI to return POP entries under these circumstances. These Return Reason Codes may, however, be used with POP entries for other valid reasons.

- **Return Reason Code R07** (*Authorization Revoked by Customer*)

  If appropriate, the consumer may (1) request his RDFI to stop the payment of a POP entry (Return Reason Code R08); (2) request his RDFI to return an unauthorized/improper point-of-purchase entry using Return Reason Code R10 or R37 (Reminder: the RDFI must obtain a written statement under penalty of perjury when using these Return Reason Codes); or (3) go directly to the Originator (merchant or biller) to request a refund for the transaction.

  RDFIs must be aware that they are prohibited from returning POP entries using Return Reason Code R07 (Authorization Revoked by Customer) based on a consumer's claim that his authorization had been revoked since these are single entry payments where the Originator will generally process the transactions immediately after the purchase is complete.

**2. STOP PAYMENTS ON POINT-OF-PURCHASE ENTRIES**

In general, the *NACHA Operating Rules* regarding ACH stop payments require consumers to place a stop payment order on a debit at least three banking days prior to the scheduled date of the entry. Because the merchant will generally process POP transactions quickly, consumers are unlikely to be able to meet the three-day advance

notice requirement for placing a stop payment order on such entries. To ensure that a consumer has the ability to place a stop payment order on a POP entry, the *NACHA Operating Rules* require a consumer to provide a stop payment order to his financial institution in such a time and manner that allows the RDFI a reasonable opportunity to act on the stop payment order prior to acting on the debit entry.

**3. STATEMENT REQUIREMENTS**

RDFIs are required to provide the Check Serial Number of the consumer's source document on the consumer's monthly bank account statement for all POP entries. The RDFI must also provide on the statement the Terminal City and the Terminal State in which the POP entry was originated. RDFIs need to ensure that this information is provided on the consumer's statement.

Note: The Federal Reserve Board's Official Staff Commentary on Regulation E requires the inclusion of terminal location information on the consumer's monthly bank account statement. When a POS terminal is used to capture data electronically to initiate an EFT, the Regulation E Official Staff Commentary considers the POS terminal to be an electronic terminal, even if no access device is used, such as when a check is used to capture information to initiate a one-time EFT. As a result, when a check is used as a source document at the point of purchase and run through a terminal to read the MICR information, as is the case with POP entries, it is necessary to ensure compliance with Regulation E's requirements for electronic terminals, which mandate the inclusion of the terminal location on the monthly bank statement.

# SECTION IV
# SPECIAL TOPICS

# CHAPTER XIII
# ACCOUNTS RECEIVABLE ENTRIES

## A. INTRODUCTION

Accounts Receivable Entries (ARC) are Single-Entry debits used by Originators for the conversion of a consumer check received via the U.S. mail or at a dropbox location for the payment of goods or services. This application enhances the efficiency of the ACH Network by expanding the scope of consumer electronic check activity.

LML-EP-055769

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December, 2005, I electronically filed the foregoing document, **PUBLIC VERSION OF DECLARATION OF LESLEY G. SMITH IN SUPPORT OF LML'S REPLY TO ITS MOTION FOR SUMMARY JUDGMENT NO. 5: FOR A RULING THAT CLAIMS 1, 2, 4, 5, 6, 9, 10, 11, 14, 16 AND 18 OF THE '988 PATENT ARE NOT INVALID UNDER 35 U.S.C. §§ 112 AND 132**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Collins J. Seitz, Jr., Esq.
Francis DiGiovanni, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19801

William J. Marsden, Jr., Esq.
Timothy Devlin, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 1st day of December, 2005, the foregoing document was served via email on the following non-registered participants:

Robert Jacobs, Esq.
Mark B. Mizrahi, Esq.
Belasco Jacobs & Townsley, LLP
Howard Hughes Center
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Mark C. Scarsi, Esq.
Vision L. Winter, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

_____ */s/ Mary B. Matterer* _____
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS
& WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com

*Counsel for Plaintiff LML PATENT CORP.*