Exhibit 4

**LML'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

The following legal issues remain to be litigated.  To the extent that any issues of fact set forth in Exhibit 2 of the Joint Pre-Trial Order may be considered issues of law, LML incorporates those portions of Exhibit 2 herein by reference.  To the extent any of the issues of law set forth in this Exhibit 4 may be considered issues of fact, LML incorporates those portions of this Exhibit 4 in Exhibit 2 below.  LML incorporates Exhibit 10 (Brief Statement of Intended Proofs) herein.

**I.     ISSUES ON WHICH LML BEARS THE BURDEN OF PROOF**

**A.     Infringement**

Direct Infringement

35 U.S.C. § 271(a) states:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent.

1.     "A patent infringement analysis involves two steps:  claim construction and application of the construed claim to the accused process or product."  *Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, 311 F.3d 1384, 1387 (Fed. Cir. 2002).   "Determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact."  *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1341 (Fed. Cir. 2001) (citing *Bai v. L&L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998)), *cert. denied*, 535 U.S. 906 (2002)).

2.     The first step of the infringement analysis, claim construction,  is a question of law, with the Court construing the disputed terms of the patent at issue as they would be understood by a person of ordinary skill in the art.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313

(Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).  This Court held a *Markman* hearing on December 19, 2005 to construe claims 1, 2, 4, 5, 6, 9, 10, 11, 14, 16, am of the '988 patent.

  3. Once the claims are properly construed, they must be compared with the accused product(s).  *Nomos Corp. v. BrainLAB, Inc.*, 239 F. Supp. 2d 430, 434-35 (D.Del. 2003).  "Infringement requires proof by a preponderance of the evidence."  *Seal-Flex, Inc. v. Athletic Track & Court Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999).  "To show infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim.  *Id.*  "A patent is infringed if a single claim is infringed."  *Intervet Am., Inc. v. Kee-Vet Lab., Inc.*,  887 F.2d 1050, 1055 (Fed. Cir 1989).  "Infringement, literal or by equivalence, is determined by comparing an accused product not with a preferred embodiment described in the specification, or with a  commercial embodiment of the patentee, but with the properly and previously construed claims in suit."  *SRI Intern. v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985); *see also Zenith Labs, Inc. v. Bristol Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994).  "[C]laims are infringed, not specifications."  *SRI Intern.*, 775 F.2d at 1121.

  4. Literal infringement occurs when each element of at least one asserted claim of the patent at issue is found in the alleged infringer's product.  *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998); *Nomos*, 239 F. Supp. 2d at 434. If "an asserted claim does not literally read on an accused product, infringement may still occur under the doctrine of equivalents."  *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1250-51 (Fed. Cir. 2000).  "The doctrine of equivalents is an equitable doctrine designed to prevent parties from

realizing the benefit of another's patent by designing around the patent's literal language." *BOC Health Care, Inc. v. Nellcor Inc.*, 892 F.Supp. 598, 604 (D. Del. 1995), *aff'd*, 98 F.3d 1357 (Fed. Cir. 1996). "Infringement under the doctrine of equivalents may be found where those limitations of a claim not found exactly in the accused device are met equivalently." *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1568 (Fed. Cir. 1996). "An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Eagle Comtronics, Inc. v. Arrow Comm'n Labs, Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002), *cert. denied*, 123 S.Ct. 995 (2003). The doctrine of equivalents applies if the "substitute element matches the function, way, and result of the claimed element." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).

5.    "There is no intent element to *direct* infringement." *Intel Corp. v. U.S. Int'l Trade Com'n*, 946 F.2d 821, 832 (Fed. Cir. 1991). Neither literal infringement nor infringement by equivalents requires intent. *Warner-Jenkinson*, 520 U.S. at 34 ("Application of the doctrine of equivalents, therefore, is akin to determining literal infringement, and neither requires proof of intent.")

6.    An accused product infringes even if it does not always infringe when it is used. *See Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1089 (Fed. Cir. 1998) ("Even assuming that Nu-Kote's video establishes that its cartridge will not infringe under a particular set of controlled circumstances . . . this has little bearing on whether its cartridge will avoid infringement under other foreseeable operating conditions."); *Impax Labs, Inc. v. Aventis Pharm., Inc.*, 2004 WL 253482, at *3 (D. Del. Feb. 5, 2004); *Interspiro USA Inc. v. Figgie Int'l, Inc.*, 815 F. Supp. 1488, 1512 (D. Del. 1993) ("[I]t is of no moment that in certain modes of operation . . . the E-Z Flo may not operate in a way that would infringe the '145 patent. It

matters only that the accused device operate in an infringing way at some time."), *aff'd*, 18 F.3d 927 (Fed. Cir. 1994).  "An accused product that sometimes, but not always, embodies a claimed method nonetheless infringes."  *Bell Comm'n Research Inc. v. Vitalink Comm'n Corp.*, 55 F.3d 615, 622-23 (Fed. Cir. 1995), *see also Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 20 (Fed. Cir. 1984) ("That the machine was not operated in its optimum mode is inconsequential:  imperfect practice of an invention does not avoid infringement.").

7.    Moreover, in analyzing infringement, the differences between system and method claims must be accounted for.  *In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002) (finding error where the court failed to recognize the "distinction between a claim to a product, device, or apparatus, all of which are tangible items, and a claim to a process which consists of acts or steps"); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1316 (Fed. Cir. 2005) (noting the infringement analysis is different for "different types of claims").

8.    Because system claims cover what a system *is* and not what a system *does*, a system claim is infringed by a system that contains all of the recited capabilities of the claimed system, regardless of whether those capabilities are actually used.  *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("[A]pparatus claims cover what a device *is*, not what a device *does*."); *Intel Corp. v. ITC*, 946 F.2d 821, 832 (Fed. Cir. 1991) (holding that a device claim was infringed if it was capable of operating in the claimed mode and that actual operation in the claimed mode was not required); *see also Key Pharms. Inc. v. Hercon Labs. Corp.*, 981 F. Supp. 299, 310 (D. Del. 1997) (finding that all that was required for infringement was that the system have the claimed capability, regardless of whether or not it was used).

9.    On the other hand, method claims do not cover a tangible item but instead "consists of a series of acts or steps."  *In re Kollar*, 286 F.3d at 1332.  Thus, a method claim is infringed

only by "practicing the patented method," regardless of what capabilities the system performing

the process might have. *Joy Tech., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993).

Moreover, "infringement of a patented process or method cannot be avoided by having another

perform one step of the process or method." *Shields v. Halliburton Co.*, 493 F.Supp. 1376, 1389

(W.D. La. 1980); *Idacon, Inc. v. Central Forest Prod., Inc.*, 3 U.S.P.Q. 2d 1079, 1092 (E.D.

Okla. 1986) (same); *see also Marley Mouldings Ltd. v. Mikron Indus., Inc.*, 2003 WL 1989640,

*2 (N.D.Ill., April 30, 2003); *Cordis Corp. v. Medtronic Ave, Inc*., 194 F.Supp.2d 323, 349 (D.

Del. 2002) (J. Robinson), *remanded on other grounds* 339 F. 3d 1352 (Fed. Cir. 2003); *Faroudja

Lab., Inc. v. Dwin Electronics, Inc*., 1999 WL 111788 *5 (N.D. Cal. Feb. 24, 1999); *Avery

Dennison Corp. v. UCB Films*, 1997 WL 567799 *2 (N. D. Ill. Sept. 4, 1997); *E.I. Dupont De

Nemours & Co. v. Monsanto Co.*, 903 F.Supp. 680, 734 (D. Del. 1995). Indeed, direct

infringement exists even where various steps in a claim are performed by distinct persons or

entities, as long as they have "some connection" to each other. *Cordis*, 194 F.Supp.2d at 349

(finding direct infringement of a method patent relating to stents where physicians performed

many of the claim steps, and manufacturer performed remaining step where "some connection"

existed between the two).

### Inducement of Infringement

1.    35 U.S.C. §  271(b) states "Whoever actively induces infringement of a patent shall

be liable as an infringer."  Section 271(b) "is a broad statement and [an] enactment of the

principle that one who actively induces infringement of a patent is likewise liable for

infringement." *Rohm & Haas Co. v. Mobil Oil Corp.*, 718 F. Supp. 274, 331 (D. Del. 1989),

*aff'd*, 895 F.2d 1421 (Fed. Cir. 1990) (quoting *Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478,

481 (Fed. Cir. 1985)).

2.    "Inducement is the active and knowing aiding and abetting of another's direct infringement." *Penederm Inc. v. Alzo, Inc*. 1996 WL 724766, *3 (N.D.Cal., Dec. 6, 1996) "In order to prevail in an action for inducement, a plaintiff must show that the defendant actually knew of the patent and intended to cause the acts which constituted the infringement." *Hughes Aircraft Co. v. National Semiconductor Corp*. 857 F.Supp. 691, 699 (N.D.Cal.,1994). Liability can be established by proving that the party accused of inducement "knew or should have known that its actions would induce actual infringement." *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001). Moreover, "[t]he requisite intent to induce may be inferred from all of the circumstances, such as giving a direct infringer instructions on how to use a patented process or designing a product to infringe." *Apple Comp., Inc. v. Articulate Sys., Inc*. 991 F.Supp. 1189, 1191 (N.D.Cal.,1997); *see also Hughes Aircraft Co.*, 857 F.Supp. 699 (inducment may be proven by circumstantial evidence).

3.    Also, proof of "[d]irect infringement by a third party is required, but may be inferred from circumstantial evidence that the accused compound has no practical use other than in an infringing composition." *Penederm Inc*. 1996 WL 724766, at 3; *see also nCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1324 (Fed. Cir. 2006)

Contributory Infringement

35 U.S.C. § 271(c) states in pertinent part:

Whoever sells a component of . . . manufacture . . . or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

1.     The doctrine of contributory infringement serves "to protect patent rights from subversion by those who, without directly infringing the patent themselves, engage in acts designed to facilitate infringement by others. *Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 188 (1980).  Under 35 U.S.C. § 271(c), the plaintiff must show "that an alleged contributory infringer knew that the combination for which his components were especially made was both patented and infringing." *Preemption Devices v. Minnesota Min. & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986).  The law is "clear that only proof of a defendant's knowledge, not intent, that his activity cause infringement was necessary to establish contributory infringement." *Hewlett-Packard Co. v. Bausch & Lomb Inc.* 909 F.2d 1464, 1469 (Fed. Cir. 1990).  Moreover, "constructive knowledge is sufficient to satisfy the knowledge element." *Philips Electronics N. Am. Corp. v. Remote Solution Co., Ltd.*, 2006 WL 266103, *1 (D.Del. Feb. 3, 2006).

3.     The law requires that the infringing component "is not a staple article suitable for substantial noninfringing use." *Preemption Devices v. Minnesota Min. & Mfg. Co.,* 803 F.2d 1170, 1174 (Fed. Cir. 1986).  But, it is the accused infringer's burden to establish substantial non-infringing uses for the component.  *See CFMT, Inc. v. Steag Microtech Inc.*, 14 F.Supp.2d 572, 592 (D. Del. 1998) (an accused infringer "did not present any evidence that customers use the (accused product) in some non-infringing way."); *Regents of the Univ. of Cal. v. Hansen*, 54 USPQ2d 1473, 1480 (E.D. Cal. 1999) ("Aside from defendants' statements that the (articles) can be used for other uses than [in the patented method] and that 'from time to time customers mention their intent' to use the [articles] for another use, defendants have shown no facts indicating that anyone actually does use the [the articles] for anything other than [in the patented method]."); *Sing v. Culture Prod., Inc.*, 469 F. Supp. 1249, 1252, (E.D. Mo. 1979)("The evidence

failed to establish that the product could be used except in accordance with the patented process.").

    4.    Key to the infringer's burden is evidence that the non-infringing uses are substantial. "Occasional aberrant use of a product that is clearly designed to be used in a particular matter . . . does not make defendant's device a staple article or commodity of commerce suitable for substantial noninfringing use." *Hansen*, 54 U.S.P.Q.2d at 1480 (citing *Dennison Mfg. Co. v. Ben Clements & Sons, Inc.*, 467 F.Supp. 391, 428 (S.D.N.Y. 1979)).

    5.    "Proof of contributory infringement may be based on circumstantial evidence." *Lucas Aerospace, Ltd. v. Unison Indus., L.P.*, 899 F. Supp. 1268, 1286 (D. Del. 1995).

### B.    Willfulness

    1.    Willful infringement is a question of fact. *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1459 (Fed. Cir. 1991). Infringement will be considered willful "when, upon consideration of the totality of the circumstances, clear and convincing evidence establishes that the infringer acted in disregard of the patent, [and] that the infringer had no reasonable basis for believing it had a right to engage in the infringing acts." *Electro Med. Sys., S.A. v. Cooper Life Sciences*, 34 F.3d 1048, 1056 (Fed. Cir. 1994); *see also SRI Int'l, Inc. v. Advanced Tech. Lab. Inc.*, 127 F.3d 1462, 1464-65 (Fed. Cir. 1997) (stating that the "primary consideration in determining [whether there has been willful infringement] is whether the infringer, acting in good faith and upon due inquiry, had sound reason to believe that it had the right to act in the manner that was found to be infringing"); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1022 (1990).

    2.    To establish willful infringement, LML must prove first, that each Defendant was aware of the '988 patent; and second, that once Defendants became aware of the '988 patent,

they did nothing to form a good faith basis that they did not infringe the patent.  *John Hopkins v.*

*CellPro*, 894 F. Supp. 819, 843 (D. Del. 1995).  Actual knowledge of the patent is not required

for a finding of willful infringement.   *Jurgens*, *v. CBK, Ltd.*, 80 F.3d 1566, 1573 (Fed. Cir.

1996) ("Actual notice of the patent would, of course, render constructive notice unnecessary to

trigger the affirmative duty of due care to avoid infringement.");  *Mor-Flo*, 883 F.2d at 1581

("Actual knowledge is not required.");  *Afros S.p.A. v. Krauss-Maffei Corp.*, 671 F. Supp. 1402,

1438 (D. Del. 1987) ("The issue of willfulness does not rest solely on the timing or knowledge of

the patent, but on the totality of the circumstances.").  Knowledge of the infringed upon patent

may be inferred.  *ADC Telecomm., Inc. v. Siecor Corp.*, 954 F. Supp. 820, 834 (D. Del. 1997)

(holding that a "reasonable factfinder might infer knowledge" of the infringed-upon patent from

internal memoranda mentioning "some patent issues" and "clones" as well as from information

contained in competitive reports).

     3.    Once an alleged infringer has obtained notice of a pertinent patent, it has "an

affirmative duty of due care to avoid infringement of the known patent rights of others." *Knorr-*

*Bremse Systeme v. Dana Corp.*, 383 F.3d 1337, 1345-46 (Fed. Cir. 2004), quoting *L.A. Gear*

*Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1127 (Fed.Cir.1993); *see also Underwater Devices,*

*Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380, 1389 (Fed. Cir. 1983); *Imonex Services, Inc.*

*v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005).  Whether

that duty is satisfied is viewed in the totality of the circumstances.  *King Instrument Corp. v.*

*Otari Corp.*, 767 F.2d 853, 867 (Fed. Cir. 1985).  Factors that are considered include "evidence

that the infringer copied the ideas or design, evidence that the infringer had actual notice of the

patent, and evidence that the infringer sought, obtained and justifiably relied on legal advice

from counsel on whether or not the patents were invalid or infringed."  *Thorn EMI N. Am. v.*

*Micron Tech., Inc.*, 837 F. Supp. 616, 620 (D. Del. 1993); *see also Read Corp. v. Portec, Inc.*,

970 F.2d 816, 828 (Fed. Cir. 1992) (listing nine factors, including, "whether the infringer

deliberately copied the ideas or designs of another," "whether the infringer, when he knew of the

other's patent protection, investigated the scope of the patent and formed a good faith belief that

it was invalid or not infringed," "the infringer's behavior as a party to the litigation," "closeness

of the case," and others), *abrogated on other grounds by Markman v. Westview Instruments, Inc.*,

52 F.3d 967, 975 (Fed. Cir. 1995).

    4.   That an opinion of counsel was obtained does not dictate a finding that the

infringement was not willful—the opinion must be competent. *Golden Blount, Inc. v. Robert H.

Peterson Co.*, 2006 WL 335607 (Fed. Cir. Feb. 15, 2006) (noting that the patentee "is free to

introduce as evidence whatever opinions were obtained and to challenge the competence of those

opinions in satisfaction of the patentee's burden on willfulness); *nCube Corp. v. Seachange Int'l,

Inc.*, 436 F.3d 1317, 1324 (Fed. Cir. 2006) (affirming finding of willful infringement where

infringer obtained incompetent opinion); *CFMT, Inc. v. Steag Microtech Inc.*, 14 F. Supp. 2d

572, 592 (D. Del. 1998), *aff'd in part & rev'd in part on other grounds*, 194 F.3d 1336 (Fed.

1999) ("[T]he mere fact that a party obtains a legal opinion does not preclude a finding that the

party acted wilfully.").

    5.   In order to be competent, an opinion must contain an authoritative, complete, and

objective analysis of the patent's validity and/or the infringer's potential to infringe and must

have been obtained *before* the initiation of any possible infringing activity. *Jurgens*, 80 F.3d at

1572; *Underwater Devices,* 717 F.2d at 1390. Disingenuous opinions which are tendered

subjectively in an attempt to shield an infringer from liability should be ignored. *Jurgens*, 80

F.3d at 1572. Such opinions do not satisfy the duty of care and cannot prevent a finding of

willfulness.  *In re Hayes Microcomputer Prods., Inc. Patent Litig.*, 982 F.2d 1527, 1544 (Fed. Cir. 1992) ("The evidence shows that the advice of counsel was more of a protective device than a genuine effort to determine before infringing whether the patent was invalid.")

6.     Other factors to be considered in evaluating the competency of an opinion of counsel and the reasonableness of an infringer's reliance upon it include: (1) whether the attorney issuing the opinion seeks the advice of an independent expert or relies merely on interested parties, (*see Minnesota Mining*, 976 F.2d at 1580-81); and (2) whether the opinion is based on sufficient and accurate facts.  *Id.* at 1582 (finding that potential infringer's ability to rely on counsel's case analysis was limited because it did not accurately inform counsel of the facts in its possession); *Goodwall Const. Co. v. Beers Const. Co.*, 991 F.2d 751, 758 (Fed. Cir. 1993) (upholding finding of willful infringement where potential infringer concealed information from its patent attorney when seeking an opinion).  Additionally, "oral opinions are not favored" and "carry less weight, for example, because they have to be proved  perhaps years after the event, based only on testimony which may be affected by faded memories and the forces of contemporaneous litigation."  *Minnesota Mining*, 976 F.2d at 1580.

7.     The existence of an opinion cannot be a defense to willful infringement if the infringer does not actually rely on the opinion.  *See Amsted Indus. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 182 (Fed. Cir. 1994) ("What matters is the nature of that opinion and what effect it had on an infringer's actions.").

C.    **Damages**

<u>Permanent Injunction</u>

35 U.S.C. § 283 states:

> The several courts having jurisdiction of cases under this title may
> grant injunctions in accordance with the principles of equity to
> prevent the violation of any right secured by the patent, on such
> terms as the court deems reasonable.

1.    "It is the general rule that an injunction will issue when infringement has been

adjudged, absent a sound reason for denying it." *Richardson v. Suzuki Motor Co., Ltd.*,  868 F.2d

1226, 1247 (Fed. Cir. 1989).  "Entry of a permanent injunction following a finding of

infringement is usually granted."  *Genentech, Inc. v. Wellcome Found. Ltd.*, 826 F. Supp. 828,

829 (D. Del. 1993).  "A patent conveys the right to exclude others from making, using, or selling

the invention, and this right implies the propriety of an injunction enforcing exclusivity."  *Matter*

*of Mahurkar Double Lumen Litig.*, 831 F. Supp. 1354, 1397 (N.D. Ill. 1993), *aff'd*, 71 F.3d 1573

(Fed. Cir. 1995).

2.    Moreover, a patentee's willingness to license its patents should not "deprive it the

right to an injunction to which it is otherwise entitled."  *Mercexchange L.L.C. v. eBay, Inc. and*

*Half.Com, Inc*, 401 F.3d 1323, 1339 (Fed. Cir. 2005).  As the Federal Circuit explained,

"[i]njunctions are not reserved for patentees who intend to practice their patents, as opposed to

those who choose to license.  The statutory right to exclude is equally available to both groups,

and the right to an adequate remedy to enforce that right should be equally available to both as

well."  *Id.*

Reasonable Royalty

35 U.S.C. § 284 states in pertinent part:

> Upon finding for the claimant the court shall award the claimant
> damages to compensate for the infringement, but in no event less
> than a reasonable royalty for the use made of the invention by the
> infringer, together with interest and costs as fixed by the court.

1.    The assessment of damages is a question of fact and is decided by the jury.[1]

*Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1578 (Fed. Cir. 1993).

Although LML's damages may not be speculative, LML's burden of proof in demonstrating its

damages is not an absolute one, but merely one of showing a reasonable probability.  *Del Mar*

*Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987); *King*

*Instruments Corp. v. Otari Corp.*, 767 F.2d 853, 863 (Fed. Cir. 1985); *Lam, Inc. v.*

*Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).  Moreover, any doubts regarding

the amount of LML's damages must be resolved against Defendants. *Kalman v. Berlyn Corp.*,

914 F.2d 1473, 1482 (Fed. Cir. 1990); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065

(Fed. Cir. 1983)

2.    LML's damages award shall be "in no event less than a reasonable royalty,'" as a

reasonable royalty sets the "floor below which damage awards may not fall."  *See Rite-Hite*

*Corp. v. Kelley Co.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995) (citation omitted).  "The royalty may be

based upon an established royalty, if there is one, or if not, upon the supposed result of

hypothetical negotiations between the plaintiff and defendant." *Rite-Hite*, 56 F.3d at 1554.  "A

reasonable royalty is the amount of money that would be agreed to in a hypothetical arms length

---

[1]The jury will assess damages through December 31, 2005.  LML will seek, an accounting of damages accruing
from January 1, 2006 through such time as defendants are enjoined from further infringement.

negotiation [at the time infringement began] between the owners of the patent rights and the

infringer, with both operating under the assumption that the negotiated patent is not invalid and

is infringed." *Johns Hopkins University v. Cellpro*, 894 F. Supp. 819, 838 (D. Del. 1995); *see*

*also Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 869 (Fed. Cir. 2003).   The "book

of wisdom" rationale should be applied, meaning it should be assumed that both parties knew all

pertinent information at the time of the hypothetical negotiation and all events and facts that

occurred after the date of the hypothetical negotiation even if those events could not have been

known to or predicted by the hypothetical negotiators.   *Honeywell Int'l, Inc. v. Hamilton*

*Sundstrand Corp.*, 378 F. Supp. 2d 459, 465 (D. Del. 2005).

      3.    Some of the factors for determining the results of such a hypothetical negotiation

are:

      (1)    the royalties received by the patentee for the licensing of others under the

          [patents- in-suit] and the rates paid by the licensee for the use of other patents

          comparable to the [patents-in-suit];

      (2)    the nature and scope of the license, as exclusive or non-exclusive; or as restricted

          or nonrestricted in terms of territory or with respect to whom the manufactured

          product may be sold;

      (3)    the licensor's established policy and marketing program to maintain his patent

          exclusivity by not licensing others to use the invention or by granting licenses

          under special conditions designed to preserve that exclusivity;

      (4)    the commercial relationship between the licensor and licensee, such as, whether

          they are competitors in the same territory in the same line of business; or whether

          they are inventors or promoters;

(5)     the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

(6)     the duration of the patent and the term of the licenses;

(7)     the established profitability of the product made under the patent, its commercial success, and its current popularity;

(8)     the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

(9)     the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who nave used the invention;

(10)    the extent to which the infringer has made use of the invention, and any evidence probative of the value of that use;

(11)    the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

(12)    the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

(13)    the opinion testimony of qualified experts; and

(14)    any other economic factor that a normally prudent businessman would, under

similar circumstances, take into consideration in negotiating the hypothetical

license.

*See SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1168 (Fed. Cir. 1991);

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp 1116 (S.D.N.Y. 1970),

modified and *aff'd*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971).

<u>Marking</u>

1.    Generally, Section 287(a) requires that patent owners "making, offering for sale, or

selling within the United States any patented article…give notice to the public that the same is

patented."  35 U.S.C. § 287(a).  However, the marking requirement applies only when apparatus

claims are asserted.  *See Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075 (Fed. Cir. 1983).

Thus, the marking requirement does not apply "where the patent is directed to a process or

method."  *State Contracting & Eng'g v. Condotte Am. Inc.*, 346 F.3d 1057, 1073 (Fed. Cir. 2003)

(internal quotations omitted); *see also Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523,

1538 (Fed. Cir. 1993) ("The law is clear that the notice provisions of Section 287 do not apply

where the patent is directed to a process or method."); *Loral Fairchild Corp. v. Victor Co. of

Japan, Ltd.*, 906 F. Supp. 813, 816 (E.D.N.Y. 1995) ("The notice provisions of section 287 do

not apply to a process or method patent because there is nothing to mark.").  A system, like a

method, is merely a way of doing something—it is an action, not an article that can be marked.

In fact, a "system" claim is composed of combinations of methods.  *See CFMT, Inc. v. Yieldup

Int'l Corp.*, 349 F.3d 1333, 1339 (Fed. Cir. 2003) (noting that most systems claims disclose

several combinations of methods).

<u>Pre-Judgment Interest</u>

1.    The patent owner is entitled to prejudgment interest on its damages award. *Uniroyal,*

*Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991). In *General Motors Corp. v.*

*Devex Corp.*, "[t]he Supreme Court explained that the denial of prejudgment interest simply

creates an incentive to prolong litigation, and that prejudgment interest in patent cases is

withheld only under exceptional circumstances….[A]n award of prejudgment interest serves to

make the patent owner whole, for damages properly include the forgone use of money of which

the patentee was wrongly deprived." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d, 1566, 1574

(Fed. Cir. 1996), quoting *General Motors*, 461 U.S. at 655-56.

<u>Enhanced Damages and Attorneys Fees</u>

1.    Up to three times the amount found as actual damages can be granted as enhanced

damages for willful infringement. 35 U.S.C. § 284. Actual bad faith need not be shown to

obtain these increased damages. *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 902 (Fed. Cir.

1986).

2.    When a case is found to be exceptional, the Court may award "reasonable attorney

fees to the prevailing party." 35 U.S.C. § 285. If the patent owner prevails, the court may find

the case exceptional because the infringement was willful, *e.g., Avia Group Int'l, Inc. v. L.A.*

*Gear Cal., Inc.*, 853 F.2d 1557, 1567 (Fed. Cir. 1988); *Imonex*, 408 F.3d at 1377. A court may

also hold a case "exceptional" because of the infringer's litigation misconduct even though the

infringer was not guilty of willful infringement. In *Beckman Instruments, Inc. v. LKB Produkter*

*AB*, 892 F.2d 1547 (Fed. Cir. 1989), the Federal Circuit held that the district court did not

commit clear error in finding the case "exceptional" because of the infringer's "strategy of

vexatious activity." *Id.* at 1551-53. The Federal Circuit did hold, however, that in this context

- 17 -

the trial court should only award those attorneys fees made necessary by the "extra legal effort to

counteract [the infringer's] misconduct." *Id.* at 1552.

## II.   ISSUES ON WHICH DEFENDANTS BEAR THE BURDEN OF PROOF

### A.   Validity

35 U.S.C. § 282 (Supp. 1999) states in pertinent part:

> A patent shall be presumed valid.  Each claim of a patent (whether in
> independent, dependent or multiple dependent form) shall be presumed
> valid, independently of the validity of the other claims; dependent or
> multiple dependent claims shall be presumed valid even though dependent
> upon an invalid claim….The burden of establishing invalidity of a patent
> or any claim thereof shall rest on the party asserting such invalidity."

1.   Because the '988 patent is presumed valid, Defendants' standard for proving

invalidity is high.  *Ajinomoto Co., Inc.  v. Archer-Daniels-Midland Co.*,1996 WL 621830, at *3

(D. Del. Oct. 21, 1996)("The presumption of validity imposes the burden of proving invalidity

on the attacker."). "Invalidity must be established by facts supported by clear and convincing

evidence." *Kegel Co., Inc. v. AMF Bowling, Inc*, 127 F.3d 1420, 1429 (Fed. Cir. 1997). "Clear

and convincing evidence has been described as evidence which proves in the mind of the trier of

fact 'an abiding conviction that the truth of [the] factual contentions are [sic] 'highly probable.'"

*Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 830 (Fed. Cir. 1991) (citation

omitted).

2.   "[A] patent is presumed valid, and this presumption exists at every stage of the

litigation." *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir.

1998). "'[T]he burden of persuasion is and remains always upon the party asserting invalidity.'"

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1358 (Fed. Cir. 1984)

(citation omitted). "The presumption is never annihilated, destroyed, or even weakened,

regardless of what facts are of record." A*CS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1574-75 (Fed. Cir. 1984).

   3.   "The burden of proof arises from the presumption that the Patent Office properly carried out its administrative functions." *BOC Health Care*, 892 F. Supp. at 602. "It is not necessary that the court hold a patent valid; it is only necessary that it hold that the patent challenger has failed to carry its burden." *Ajinomoto*, 1996 WL 621830, at *5. "[W]here the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue." *Canon Computer Sys.*, 134 F.3d at 1088.

   4.   "When determining the validity of the claims of a patent, each claim must be separately considered." *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1379 (Fed. Cir. 2002).

   Prior Art

   1.   One who challenges the validity of a patent bears the burden of establishing that a reference is "prior art" by clear and convincing evidence. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996). "The presumption of validity…requires those challenging validity to introduce clear and convincing evidence on all issues relating to the status of a particular reference as prior art." *Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001). The burden is "most formidable" when the party asserting invalidity relies on prior art that was considered by the PTO. *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1577 (Fed. Cir. 1983). To constitute prior art for purposes of invalidating a patent, "the knowledge must be publicly accessible." *Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1306 (Fed. Cir. 2002).

Anticipation

35 U.S.C. § 102(a) and (b) states in pertinent part:

A person shall be entitled to a patent unless —

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country,  more than one year prior to the date of the application for patent in the United States, or….

1.   "Anticipation under 35 U.S.C. § 102 means lack of novelty, and is a question of fact." *Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001), *cert. denied*, 535 U.S. 970 (2002). "Invalidity based upon lack of novelty requires that the same invention, including each element and limitation of the claims, was known or used by others before it was invented by the patentee." *Oney v. Ratliff*, 182 F.3d 893, 895 (Fed. Cir. 1999) (citing *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 302 (Fed. Cir. 1995)).

2.   A claim is anticipated only "when a single prior art reference discloses each and every limitation of the claim." *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047 (Fed. Cir. 1995), *cert denied*, 516 U.S. 988 (1995).  The "anticipating reference must describe the patented subject matter with sufficient clarity and detail to establish that the subject matter existed in the prior art and that such existence would be recognized by persons of ordinary skill in the filed of the invention." *Crown Operations Int'l, Ltd. v. Solutia, Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002).  "[A]nticipation does not permit an additional reference to supply a missing claim limitation." *Teleflex, Inc. v. Ficosa N.Am. Corp.*, 299 F.3d 1313, 1335 (Fed. Cir. 2002). Moreover, "an expert's conclusory testimony, unsupported by the documentary evidence, cannot supplant the requirement of anticipatory disclosure in the prior art reference itself.  *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1473 (Fed. Cir. 1997).

- 20 -

3.   If a prior art reference does not expressly state an element of a claim, "that reference may still anticipate if that element is 'inherent' in its disclosure." *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999).  Whether a claim limitation is inherent in a prior art reference is a question of fact. *Telemac Cellular Corp. v. Topp. Telecom, Inc.*, 247 F.3d 1316, 1328 (Fed. Cir. 2001). "Inherency, however, may not be established by probabilities or possibilities.  The mere fact that a certain thing *may* result from a given set of circumstances is not sufficient." *Cont'l Can Co., USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1268-69 (Fed. Cir. 1991) (citations omitted) (emphasis in original).  "Inherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present in the prior art." *Triitec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002).

4.   "Prior art does not 'anticipate' for purposes of § 102 even 'if the general aspects are the same and the differences in minor matters is [sic]…such as would suggest itself to one of ordinary skill in the art.'" *BOC Health Care*, 892 F. Supp. at 603 (quoting *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 716 (Fed. Cir. 1984).  In order to anticipate, "[t]he prior art reference must also be enabling, thereby placing the allegedly disclosed matter in the possession of the public." *Key Pharms.,* 981 F. Supp. at 311.

    <u>Obviousness</u>

35 U.S.C. § 103 states in pertinent part:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the manner in which the invention was made.

1.   "Whether a claimed invention is unpatentable as obvious under 35 U.S.C. § 103 is a question of law based on underlying findings of fact." *Okajima v. Bourdeau*, 261 F.3d 1350,

1354 (Fed. Cir. 2001) (citation omitted), *cert. denied*, 534 U.S. 1128 (2002).  The "underlying

factual inquiries [the Graham factors] include: (1) the scope and content of the prior art; (2) the

level of ordinary skill in the art; (3) the differences between the prior art and the claimed

invention; and (4) extent of any objective indicia of non-obviousness."  *Winner Int'l Royalty*

*Corp. v. Wang*, 202 F.3d 1340, 1348 (Fed. Cir. 2000), *cert. denied*, 530 U.S. 1238 (2000);

*Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966).  "[Federal Circuit]

precedent clearly establishes that the district court must make *Graham* findings before

invalidating a patent for obviousness."  *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663 (Fed. Cir.

2000).  Throughout the obviousness determination, "a patent retains its statutory presumption of

validity…and the movant retains the burden to show the invalidity of the claims by clear and

convincing evidence as to underlying facts."  *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339,

1349 (Fed. Cir. 2001).

        2.    "The consistent criterion for determination of obviousness is whether the prior art

would have suggested to one of ordinary skill in the art that this process should be carried out

and would have a reasonable likelihood of success, viewed in the light of the prior art." *In re*

*Dow Chem. Co.*, 837 F.2d 469, 473 (Fed. Cir. 1988).  "Both the suggestion and the expectation

of success must be founded in the prior art, not in the applicant's disclosure." *Merck & Co. v.*

*Danbury Pharmacal, Inc.* , 694 F. Supp. 1, 29 (D. Del. 1988) (citation omitted), *aff'd*, 873 F.2d

1418 (Fed. Cir. 1989).

        3.    "35 U.S.C. §  103 requires that obviousness be determined with respect to the

invention as a whole. This is essential for combination inventions, for generally all combinations

are of known elements." *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1143 (Fed. Cir.

1985) (citations omitted); *Grain Processing Corp. v. American Maize-Prod.* Co., 840 F.2d 902,

907 (Fed. Cir. 1988)("The inquiry is not whether each element existed in the prior art, but whether the prior art made obvious the invention as a whole for which patentability is claimed."); *see also Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 698 (Fed. Cir. 1983).

4.    "[A]n invention is not obvious just because all the claimed elements are found in the prior art. There must be something in that prior art to suggest the combination." *Key Pharms.*, 981 F. Supp. at 316.  Accordingly, it is insufficient for Defendants to establish obviousness based on the mere showing that the separate elements of the '988 patent existed in the prior art, absent some teaching or suggestion, in the prior art, to combine the elements.  *Arkie Lures*, *Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d, 953, 957 (Fed. Cir. 1997). "The absence of such a suggestion to combine is dispositive in an obviousness determination." *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997); *In re Kotzab*, 217 F.3d at 1371(finding patent valid where "there was no finding as to the specific understanding or principle within the knowledge of a skilled artisan that would have motivated one with no knowledge of [the] invention to make the combination in the manner claimed."); *Robotic Vision Sys.*, 189 F.3d at 1377 (finding patent valid where record failed to disclose suggestion to combine prior art teaching).

5.    Likewise, it is improper to "pick and choose among the individual elements of assorted prior art references to recreate the claimed invention," but rather, one must "look for some teaching or suggestion in the references to support their use in the particular claimed combination." *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569,1576 (Fed. Cir. 1991) (citation omitted).  Clear and convincing evidence must be presented that the prior art contains a suggestion to combine or a patent cannot be found invalid as obvious.  *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1356-57 (Fed. Cir. 1999).   There must be an explanation

of "the reasons one of ordinary skill in the art would have been motivated to select the references and to combine them to render the claimed invention obvious." *In re Rouffet*, 149 F.3d 1350, 1359 (Fed. Cir. 1998); *In re Kotzab*, 217 F.3d at 1370. Where the prior art does not specifically teach or suggest combining prior art to make the claimed invention, it is rare that such a suggestion can be supplied simply by the level of skill in the art. *See Al-Site Corp. v. VSI Intern. Inc.*, 174 F.3d 1308, 1324 (Fed. Cir. 1999). Moreover, a motivation to combine cannot come simply from the fact that the asserted prior art is within the same field. *See Winner Int'l Royalty Corp.*, 202 F.3d at 1349.

6.   Instead, the "motivation to combine must be clear and particular, and it must be supported by actual evidence." *Teleflex*, 299 F.3d at 1334 (citation omitted). In *Teleflex*, the court rejected defendant's contention that the nature of the problem could provide the motivation to combine where defendant "offer[ed] no evidence in support of its conclusory assertion…much less a clear and particular showing." *Id.*

7.   "The decision of obviousness *vel non* is made not from the viewpoint of the inventor, but from the viewpoint of a person of ordinary skill in the field of the invention." *Arkie Lures*, 119 F.3d at 956. "The purpose is to assure an appropriate perspective of the decisionmaker, and to focus on conditions as they existed when the invention was made." *Id.* Accordingly, "[t]he issue of obviousness is determined entirely with reference to a *hypothetical* 'person having ordinary skill in the art.' It is only that hypothetical person who is presumed to be aware of all the pertinent prior art." *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985) (emphasis added).

8.   "It is critical that the question of obviousness not be viewed 'in the light of the accomplished result,' an analysis recognized by the Supreme Court as unsound. . . ." *BOC Health*

*Care*, 892 F. Supp. at 603 (citation omitted). "The Federal Circuit likewise has consistently rejected obviousness analyses based upon hindsight." *Id.* "The invention must be viewed not with the blueprint drawn by the inventor, but in the state of the art that existed at the time." *Interconnect Planning*, 774 F.2d at 1138.

9.    The Federal Circuit and this Court "have consistently held that 'obvious to try' is not to be equated with obviousness under 35 U.S.C. § 103." *Gillette Co. v. S.C. Johnson & Son, Inc.*, 919 F.2d 720, 725 (Fed. Cir. 1990). "[T]he governing standard is emphatically not whether a particular method or process leading to an invention would be 'obvious to try,' but whether such an experiment would have been expected to succeed." *Merck*, 694 F. Supp. at 29 (citation omitted).

10.    Objective evidence of nonobviousness or secondary consideration, including commercial success, long-felt but unsolved needs, failure of others to develop the invention, copying by others, and licenses showing industry respect for the invention, must be considered prior to reaching a conclusion of nonobviousness. *See WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359 (Fed. Cir. 1999); *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1569 (Fed. Cir. 1987); *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 306 (Fed. Cir. 1985). These indicia "are often most probative and determinative of the ultimate conclusion of obviousness or nonobviousness." *Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1573 (Fed. Cir. 1996).

11. "[W]hen differences that may appear technologically minor nonetheless have a practical impact, particularly in a crowded field, the decision-maker must consider the obviousness of the new structure in this light. Such objective indicia as commercial success, or filling an existing need, illuminate the technological and commercial environment of the

inventor, and aid in understanding the state of the art at the time the invention was made."
*Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1273 (Fed. Cir. 1993).

12. "[L]ong-felt need is analyzed as of the date of an articulated identified problem and
evidence of efforts to solve that problem." *Texas Instruments v. United States Int'l Trade Com'n*,
988 F.2d 1165, 1178 (Fed. Cir. 1993). "Nonobviousness is suggested by the failure of others to
'find a solution to the problem which the patents in question purport to solve. Such evidence
shows indirectly the presence of a significant defect in the prior art.'" *Symbol Techs.*, 935 F.2d at
1578-79 (citation omitted). This objective evidence of nonobviousness therefore must be taken
into account. *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1380 (Fed. Cir.
1986), *cert. denied*, 480 U.S. 947 (1987). Copying is an indicium of nonobviousness, and is to
be given proper weight. *See Windsurfing Intern., Inc. v. AMF, Inc*., 782 F.2d 995, 1000
(Fed.Cir. 1986), *cert. denied*, 477 U.S. 905 (1986) ("the district court correctly noted that
copying the claimed invention, rather than one within the public domain, is indicative of non-
obviousness"); *see also Panduit*, 774 F.2d 1082, 1099 (Fed. Cir. 1985).

## Enablement

35 U.S.C. § 112, ¶ 1 states:

> The specification shall contain a written description of the invention, and
> of the manner and process of making and using it, in such full, clear,
> concise, and exact terms as to enable any person skilled in the art to
> which it pertains, or with which it is most nearly connected, to make and
> use the same, and shall set forth the best mode contemplated by the
> inventor of carrying out his invention.

1. "Invalidity for lack of enablement is a conclusion of law and must be supported by
facts proved by clear and convincing evidence, for the grant of the patent by the PTO carries
with it the presumption of validity compliance with § 112." *N. Telecom, Inc. v. Datapoint Corp.*,
908 F.2d 931, 941 (Fed. Cir. 1990).

2.   The Federal Circuit has interpreted the enablement provision of § 112 to require that the specification "teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d, 1142, 1155 (Fed. Cir. 2004) (citing *Genetech Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)).  "An inventor need not, however, explain every detail…patent specifications would turn into product specifications….That some experimentation is necessary does not preclude enablement." *DeGeorge v. Bernier*, 768 F.2d 1318, 1323 (Fed. Cir. 1985) (internal citations omitted).  For example, the Federal Circuit "has repeatedly explained that a patent applicant does not need to include in the specification that which is already known to and available to one of ordinary skill in the art" such as things that are "standard in the industry." *Koito*, 381 F.3d at 1156.  Additionally, only the claimed invention must be enabled by the specification and not all related, unclaimed devices or systems with which the claimed invention might interface.  *DeGeorge*, 768 F.2d at 1324.

3.   Whether an application meets the criteria set forth in 35 U.S.C. § 112, first paragraph, must be judged as of the application's filing date.  *Vas-Cath Inc. v. Mahurka*, 935 F.2d 1555, 1566 (Fed. Cir. 1991).  "The enablement requirement is met if the description enables any mode of making and using the invention." *Johns Hopkins Univ. v. Cellpro, Inc.* 152 F.3d 1342, 1361 (Fed. Cir. 1998)  (quoting *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1533 (Fed. Cir. 1991)).

4.   Moreover, "the determination of what constitutes undue experimentation in a given case requires the application of a standard of reasonableness, having due regard for the nature of the invention and the state of the art. The test is not merely quantitative, since a considerable amount of experimentation is permissible, if it is merely routine." *Boston Scientific Scimed, Inc.*

*v. Cordis Corp.*, 392 F.Supp.2d 676, 682 (D. Del. 2005) (Robinson, C.J.) (denying summary

judgment for lack of enablement).

5.    The time and expense that might be required to practice every possible embodiment

of the claims of an invention is not determinative, since the time and cost may not be totally due

to experimentation: the emphasis is properly placed on *experimentation,* not the time and cost

standing alone.  *U.S.  v. Telectronics, Inc.,* 857 F.2d 778, 785 (Fed. Cir. 1988).  The time and

cost of developing an embodiment of an invention are "factors [that] may be taken into account

[but] standing alone [do not] show the experimentation to be excessive."  *Id.*  If one embodiment

of an invention is disclosed in a patent specification, it is likely that "other permutations of the

invention could be practiced by those skilled in the art without undue experimentation."  *Id.* at

786.  In determining whether claims are enabled, "[i]t is not a function of the claims to

specifically exclude" all possible inoperative embodiments. *Atlas Powder Co. v. E.I. duPont De*

*Nemours & Co.*, 750 F.2d 1569, 1576 (Fed. Cir. 1984).

Written Description

35 U.S.C. § 112 states in pertinent part:

The specification shall contain a written description of the invention, and
of the manner and process of making and using it, in such full, clear,
concise, and exact terms as to enable any person skilled in the art.

1.    Whether the written description requirement of § 112 has been met is a question of

fact.  *In re Hayes Microcomputer Prods., Inc. Patent Litig.*, 982 F.2d 1527, 1533 (Fed. Cir.

1992).  The burden of proof is on the party alleging that a claim is invalid for failure to comply

with the written description requirement to prove by clear and convincing evidence.  *Mobil Oil*

*Corp. v. Amoco Chems. Corp.*, 779 F. Supp. 1429, 1498-99 (D. Del. 1991), *aff'd*, 980 F.2d 742

(Fed. Cir. 1992).

2.    The written description requirement of § 112 serves two purposes.  First, "the 'essential goal' of the description of the invention requirement is to clearly convey information that an applicant has invented the subject matter which is claimed."  *In re Barker*, 559 F.2d 588, 592 n.4 (C.C.P.A. 1997).  Second, the written description puts the public in possession of what the applicants have described as their invention.  *Id.*; *see also Regents of the Univ. of Cal. v. Eli Lilly*, 119 F.3d 1559, 1566 (Fed. Cir. 1997).

3.    The Federal Circuit has interpreted the written description requirement to require that the patent specification "describe the claimed invention so that one skilled in the art can recognize what is claimed."  *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 968 (Fed. Cir. 2002).  "Compliance with § 112 requires sufficient information in the specification to show that the inventor *possessed the invention at the time of the original disclosure*."  *Pandrol*, 424 F.3d 1161, 1165 (Fed. Cir. 2005) (citing *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1561 (Fed. Cir. 1991)) (emphasis added).  Thus, for claim language added after the filing of the original specification, the originally filed specification must "convey to those skilled in the art that applicant had invented the subject matter later claimed."  *In re Wilder*, 736 F.2d 1516, 1520 (Fed. Cir. 1984).

4.    However, the written description requirement does not require that the specification "describe the claimed subject matter *in exactly the same terms as used in the claims.*" *Koito*, 381 F.3d at 1154 (citing *Eiselstein v. Frank*, 52 F.3d 1035, 1038 (Fed. Cir. 1995) (emphasis added)).  "[T]he failure of the specification to specifically mention a limitation that later appears in the claims is not a fatal one when one skilled in the art would recognize upon reading the specification that the new language reflects what the specification shows has been invented."  *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779 (Fed. Cir. 2002)

(holding that it was improper to grant summary judgment of invalidity for failure to satisfy the written description requirement where the limitation at issue was described in the original specification although the exact phrase later added to the claims was not specifically used); *see also In re Wright*, 866 F.2d 422, 425 (Fed. Cir. 1989) (holding that the fact that the words of the claim limitation at issue—"not permanently fixed"—were not in the specification was not important in evaluating the adequacy of the written description because the original specification described the process of the claim limitation containing those words).

5.     No new matter may be added to a patent application after the application is filed.  35 U.S.C. § 132.  Making the determination as to whether an amendment constitutes new matter is closely related to evaluating the written description requirement of § 112.  *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1352 (Fed. Cir. 2000).  "The fundamental inquiry is whether the material added by amendment was inherently contained in the original specification."   *Id.* "[T]o avoid the new matter prohibition, an applicant must show that his original application supports the amended matter."  *Id.*  However, an applicant may *clarify* something disclosed in his original application without the clarification being treated as new matter.  *See Brook-Hill 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1303-1304 (Fed. Cir. 2003) (holding that an amendment clarifying a limitation supported by the original disclosure was not a new matter violation).  In cases where the PTO has allowed amendments during prosecution without objection thereto as new matter, the presumption of validity "is entitled to a*n especially weighty presumption of correctness."  Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574-75 (Fed. Cir. 1992) (emphasis added).

Definiteness

35 U.S.C. § 112, paragraph 2 states:

The specification shall conclude with one or more claims
particularly pointing out and distinctly claiming the subject matter
which the applicant regards as his invention.

1.    A "determination of claim indefiniteness is a legal conclusion that is drawn from the

court's performance of its duty as the construer of patent claims." *Exxon Research & Eng'g Co.*

*v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001).  The accused infringer has the burden of

showing by clear and convincing evidence that the claims are invalid for indefiniteness under §

112, second paragraph.  *N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1579 (Fed. Cir.

1993).

2.    The definiteness requirement does not "compel absolute clarity."  *Datamize, LLC v.*

*Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005).  In ruling on an assertion of

claim indefiniteness, "a court must determine whether those skilled in the art would understand

what is claimed when the claim is read in light of the specification."  *Bancorp Services, L.L.C. v.*

*Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004).  A determination that a patent

claim is invalid for failure to meet the definiteness requirement is a conclusion "that is drawn

from [a] court's performance of its duty as the construer of patent claims," and likewise is a

question of law.  *Id.*

3.    Only claims "not amenable to construction" or "insolubly ambiguous" are indefinite.

*Datamize*, 417 F.3d at 1347 (internal citations omitted) (emphasis added).  "Thus, the

definiteness of claim terms depends on whether those terms can be given any reasonable

meaning."  *Id.*  The law is clear that a claim is not indefinite merely because it poses a difficult

question of claim construction.  *Bancorp*, 359 F.3d at 1371 (citing *Honeywell Int'l, Inc. v. Int'l*

*Trade Comm'n*, 341 F.3d 1332, 1338-39 (Fed. Cir. 2003).  In other words, if the meaning of a

- 31 -

claim is discernable, "even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, . . . the claim [is] sufficiently clear to avoid invalidity on indefiniteness grounds." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). Moreover, in the face of an allegation of indefiniteness, "general principles of claim construction apply." *Datamize*, 417 F.3d at 1348. This means that "intrinsic evidence in the form of the patent specification and file history should guide a court." *Id.*

4. The Federal Circuit has noted that "[b]y finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity, *see* 35 U.S.C. § 282, and 'we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal.'" *Bancorp*, 359 F.3d at 1371 (quoting *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)). Thus, "close questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee." *Exxon Research*, 265 F.3d at 1380.

<u>On-Sale Bar</u>

1. Under 35 U.S.C. § 102(b), a patent is invalid by reason of the on-sale bar if the "invention was . . . on sale in this country . . . more than one year prior to the date of application for the patent in the United States." 35 U.S.C. § 102(b)

2. Defendants must prove, by clear and convincing evidence, that the invention of the asserted claims of the '988 patent was on sale one year prior to its critical date. *Helifix Limited v. Blok-Lok, Ltd.,* 208 F.3d 1339, 1346 (Fed. Cir. 2000).

3. "The ultimate determination that a product was placed on sale [ ] is a question of law, based on underlying facts." *Tec Air, Inc. v. Denso Manufacturing Michigan Inc.*, 192 F.3d 1353, 1358 (Fed. Cir. 1999) (citation omitted).

4.   In *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55 (1998), the Supreme Court held that the on-sale bar applies when two conditions are met before the critical date: first, "the product must be the subject of a commercial offer for sale"; and second, "the invention must be ready for patenting." *Id.* at 66-67..

5.   To prove the first prong of the Pfaff analysis – offer for sale – Defendants "must demonstrate by clear and convincing evidence that there was a definite sale or offer to sell more than one year before the application for the subject patent, and that the subject matter of the sale or offer to sell fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art." *Stx, LLC, v. Brine, Inc.*, 211 F.3d 588, 590 (Fed. Cir. 2000) (citations omitted).

6.   In order for Defendants to demonstrate – under the first prong of the *Pfaff* analysis – that there was a definite sale or offer to sell more than one year before the application for the subject patent,  the Federal Circuit has consistently found direct evidence of  "a definite sale or offer to sell" necessary, such as an accepted purchase order or signed purchase agreement.  *Pfaff*, 119 S.Ct. at 311-12 (relying on direct evidence of an accepted purchase order);  *Weatherchem Corp. v. J.L. Clark, Inc.*, 163 F.3d 1326, 1333 (Fed. Cir. 1998) (relying on record evidence of signed purchase agreement before critical date);  *Evans Cooling Systems, Inc. v. General Motors Corp.*, 125 F.3d 1448, 1451 (Fed. Cir. 1997), *cert. denied*, 118 S.Ct. 1050 (1998) (finding clear and convincing evidence of sale offer includes "a specific and definite offer for sale of a successfully tested device, such as that evidenced by a completed contract for sale");  *Zacharin v. United States*, No. 213 F.3d 1366 (Fed. Cir. 2000) (defining definite sale or offer for sale as  "a contract between parties to give and pass rights of property for consideration which the buyer pays or promises to pay the seller for the thing bought or sold.").

7.   In addition, in order for Defendants to demonstrate by clear and convincing evidence that there was a commercial offer for sale  under the first prong of the *Pfaff* analysis, Defendants must also show that the subject matter of the alleged sale or offer to sell met "each of the limitations of the claim, and thus was an embodiment of the claimed invention." *Scaltech Inc. v.*

*Retec/Tetra, L.L.C.*, 178 F.3d 1378, 1383 (Fed. Cir. 1999) (vacating grant of summary judgment under statutory on sale bar, where there was no determination that process previously offered for sale satisfied each of patent's claim limitations); *Tec Air, Inc.*, 192 F.3d at 1358 (upholding jury verdict of no on-sale bar where subject matter of offers did not fully anticipate the claimed invention).

8.   "A showing that a patentee has publicly used or sold its device prior to the critical date does not necessarily trigger the on-sale bar." *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1258 (Fed. Cir. 2001).  The first prong of the *Pfaff* test also entails "an assessment of whether the circumstances surrounding a pre-critical date sale objectively show that it was primarily made for experimentation." *Electromotive Div. Of General Motors Corp. v. Transportation Systems Div. Of General Elec.*, 417 F.3d 1203, 1210 (Fed. Cir. 2005).  The question posed by the experimental use doctrine is "whether the primary purpose of the inventor at the time of the sale, as determined from an objective evaluation of the facts surrounding the transaction, was to conduct experimentation." *Id.* (internal citations omitted).  "If the sale was primarily for experimentation rather than commercial gain, then the sale is not invalidating under § 102(b)." *Id.*

9.   To prove the second prong of the *Pfaff* analysis – ready for patenting – Defendants must show, by clear and convincing evidence, that at the time of sale or offer for sale, the invention was either reduced to practice before the critical date, or "that prior to the critical date, the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Pfaff*, 525 U.S. at 67-68, 119 S.Ct. at 312-313 (footnote omitted).

10. An invention is reduced to practice when an actual embodiment that includes all elements of the claim has been built. *Correge v. Murphy*, 705 F.2d 1326, 1329 (Fed. Cir. 1983). "[A]ctual reduction to practice, which constitutes in law the final phase of invention, cannot be established absent a showing of practical utility." *Fujikawa v. Wattanasin*, 93 F.3d 1559, 1563 (Fed. Cir. 1996); *Newkirk v. Lulejian*, 825 F.2d 1581, 1582 (Fed. Cir. 1987).

- 34 -

11. Additionally, reduction to practice requires that the invention be sufficiently tested to demonstrate that it will work for its intended purpose. *Seal-Flex, Inc. v. Athletic Track and Court Construction*, 98 F.3d 1318, 1324 (Fed. Cir. 1996); *Cordant Technology, Inc. v. Alliant Techsystems Inc.*, 45 F. Supp.2d 398, 406 (D.Del. 1999); *Estee Lauder Inc. v. L'Oreal S.A.*, 129 F.3d 588, 593 (Fed. Cir. 1997) (finding no reduction to practice where test results were not received and analyzed prior to critical date); *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1445 (Fed. Cir. 1984) ("While evidence of in-house testing may be prima facie evidence of conception, reduction to practice requires that an invention be sufficiently tested to demonstrate that it will work for its intended purpose.").

12. Absent a showing of reduction to practice, Defendants must show that prior to the critical date of the patent-in-suit the inventor had prepared drawings or other descriptions of the inventions that were sufficiently specific to enable a person skilled in the art to practice the inventions. *Pfaff*, 525 U.S. at 67-68.

13. The offer for sale must disclose and enable each element of the method claimed in the patent-in-suit in order to be considered an enabling description of the invention. *Helifix Limited*, 208 F.3d at 1350.

14. Additional necessary testing and development of core aspects of the invention should preclude a finding that the invention was "ready for patenting." *Pfaff*, 525 U.S. at 68 n.14 (taking into account "the possibility of additional development after the offer for sale" as example of invention that would not be ready for patenting); *Chemical Separation Technology, Inc. v. United States*, 45 Fed.Cl. 513, 518-19 (Ct.Cl. 1999).

### Inventorship

1. Section 102(f) of the Patent Act states that a person is not entitled to a patent if he did not invent the subject matter sought to be patented. 35 U.S.C. § 102(f). A patent is invalid if more or less of the true inventors are named. *Trovan, Ltd. v. Sokymat*, 299 F.3d 1292, 1302 (Fed. Cir. 2002). The starting point for any improper inventorship allegation is proving by clear

and convincing evidence that the alleged inventor conceived of some aspect of the patented invention. *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998). However, explaining well-known concepts and/or the current state of the art to the named inventor is not enough to prove conception. *Id.*; *see also Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). Moreover, inventorship is evaluated on a *claim-by-claim basis* so Defendants must also set forth which claims of the patent are impacted by their improper inventorship allegation. *See, e.g.*, *Trovan*, 299 F.3d at 1302 (citing *Ethicon*, 135 F.3d at 1460).

2. An allegation of improper inventorship must be supported with more than just the testimony of an alleged co-inventor. *Trovan, Ltd. v. Sokymat*, 299 F.3d 1292, 1302 (Fed. Cir. 2002) ("To meet their clear and convincing burden of proof, alleged co-inventors must prove their contribution to the conception with more than their own testimony."); *eSpeed, Inc. v. Brokertec USA L.L.C.*, 342 F. Supp. 2d 244, 254 (D. Del. 2004) ("Nor can the proposed inventor's own testimony be relied on, as the 'temptation for even honest witnesses to reconstruct, in a manner favorable to their own position, what their state of mind may have been years earlier, is simply too great.'"). An alleged co-inventor's testimony must be corroborated with additional evidence, or the defense fails as a matter of law. *Trovan*, 299 F.3d at 1302-03.

3. To prove that an inventor improperly derived his invention from another under § 102(f), the party seeking to prove invalidity for improper inventorship must overcome the presumption of validity by proving by clear and convincing evidence (1) prior conception of the patented invention by another; and (2) communication of the complete claimed invention, in enabling detail, to the patentee. *See Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1577 (Fed. Cir. 1997). Proving communication between the patentee and another about the subject matter of the invention is not enough—"the communication must be sufficient to

enable one of ordinary skill in the art to make the patented invention." *Eaton Corp. v. Rockwell Intern. Corp.*, 323 F.3d 1332, 1344-45 (Fed. Cir. 2003) (holding that evidence of communication between the patentee and another about the subject matter of the invention was insufficient to prove a case of improper inventorship where none of the communication was sufficiently detailed to constitute a complete and enabling disclosure of the claimed invention).

Prior Invention

1.  For activity of "another" to be prior art against a patentee's claims under § 102(g), the other 's activity must satisfy the requirements of § 102(g) for making an invention.  "[P]riority of invention [under § 102(g)] goes to the first party to reduce an invention to practice unless the other party can show that it was the first to conceive of the invention and that it exercised reasonable diligence in later reducing that invention to practice." *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998).  "Priority therefore depends upon conception and reduction to practice.  Priority, conception, and reduction to practice are questions of law which are based on subsidiary factual finding." *Id.*

2.  "Conception is the formation 'in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is therefore to be applied in practice.'" *Kridl v. McCormick*, 105 F.3d 1446, 1449 (Fed. Cir. 1997) (citations omitted).  "Conception is the touchstone of inventorship, the completion of the mental part of invention . . . .  Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1227 (Fed. Cir. 1994) (citations omitted).

- 37 -

3. "A reduction to practice can be either a constructive reduction to practice, which occurs when a patent application is filed, or an actual reduction to practice." *Cooper*, 154 F.3d at 1327. "In order to establish an actual reduction to practice, the inventor must prove that: (1) he constructed an embodiment or performed a process that met all the limitations of the [claim]; and (2) he determined that the invention would work for its intended purpose." *Id.*

4. "Depending on the character of the invention and the problem it solves, determining that the invention will work for its intended purpose may require testing. When testing is necessary, the embodiment relied upon as evidence of priority must actually work for its intended purpose. In addition, the inventor must contemporaneously appreciate that the embodiment worked and that it met all the limitations of the [claim]." *Id.* (citations omitted). Where an invention "'includes a structural feature recited as a positive limitation, conception and reduction to practice of that invention require a contemporaneous recognition of that feature.'" *Id.* at 1328 (citations omitted).

5. "'It is well-settled that conception and reduction to practice cannot be established *nunc pro tunc*. There must be *contemporaneous recognition and appreciation* of the invention . . .'" *Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 593 (Fed. Cir. 1997) (citation omitted); *see also Loral Fairchild Corp. v. Victor Co. of Japan*, 931 F. Supp. 1014, 1026-29 (E.D.N.Y. 1996), *aff'd*, 181 F.3d 1313 (Fed. Cir. 1999) (no reduction to practice of claimed process until inventor tested product made by process and showed that it worked for its intended purpose); *Kimberly-Clark*, 745 F.2d at 1437.

6. "In the United States, the person who first reduces an invention to practice is 'prima facie the first and true inventor.'" *Mahurkar*, 79 F.3d at 1577 (citation omitted). "However, the person 'who first conceives, and, in a mental sense, first invents . . . may date his patentable

invention back to the time of its conception, if he connects the conception with its reduction to practice by reasonable diligence on his part, so that they are substantially one continuous act.'" *Id.* (citation omitted). "Stated otherwise, priority of invention 'goes to the first party to reduce an invention to practice unless the other party can show that it was the first to conceive the invention and that it exercised reasonable diligence in later reducing that invention to practice.'" *Id.* (citation omitted).

7. "Conception, and consequently inventorship, are questions of law . . . ." *Sewall*, 21 F.3d at 415. "Conception must be proved by corroborating evidence which shows that the inventor disclosed to others his 'complete thought expressed in such clear terms as to enable those skilled in the art' to make the invention." *Kridl*, 105 F.3d at 1449-50 (citations omitted).

8. "Reduction to practice follows conception." *Id.* at 1578. "Reduction to practice is ultimately a legal question, which is based on underlying factual determinations." *Estee Lauder*, 129 F.3d at 592. "[A]ctual reduction to practice, which constitutes in law the final phase of invention, cannot be established absent a showing of practical utility." *Fujikawa v. Wattanasin*, 93 F.3d 1559, 1563 (Fed. Cir. 1996). "It is well established . . . that proof of actual reduction to practice requires demonstration that the embodiment relied upon as evidence of priority actually worked for its intended purpose." *Newkirk v. Lulejian*, 825 F.2d 1581, 1582 (Fed. Cir. 1987). "To prove actual reduction to practice, an inventor must establish that he "'actually prepared the composition and knew it would work.'" *Estee Lauder*, 129 F.3d at 592 (citations omitted). "[R]eduction to practice requires 'the discovery that an invention actually works.'" *Id.* (citation omitted).

9. "[W]here testing is required to establish utility . . . [there must] be some recognition of successful testing prior to the critical date for an invention to be reduced to practice . . . ." *Id.*

at 593.  "[A] reduction to practice doe not occur until an inventor, or perhaps his agent, knows

that the invention will work for its intended purpose." *Id.* "[W]hen testing is necessary to

establish utility, there must be recognition and appreciation that the tests were successful for

reduction to practice to occur." *Id.* at 594-95.  "While evidence of in-house testing may be prima

facie evidence of conception, reduction to practice requires that an invention be sufficiently

tested to demonstrate that it will work for its intended purpose." *Kimberly-Clark*, 745 F.2d at

1445.  "'When the invention has not quite passed beyond experiment and has not quite attained

certainty and has fallen short of demonstrating the capacity to produce the desired result, the

invention itself is still inchoate.'" *Id.* (citation omitted).

10. One who challenges a patent under 35 U.S.C. § 102(g) must show that the alleged

prior invention was not "abandoned, suppressed, or concealed."  "'[W]ether there was

suppression [or] concealment under the statute is an ultimate conclusion of law.'"  *Lutzker v.

Plet*, 843 F.2d 1364, 1366 (Fed. Cir. 1988) (citation omitted).  The party asserting that a patent is

invalid under § 102(g) bears the burden of proving by clear and convincing evidence that the

alleged prior invention was not abandoned, suppressed or concealed.  *Oak Indus., Inc. v. Zenith

Electronics Corp.*, 726 F. Supp. 1525, 1530-31 (N.D. Ill. 1989); *Procter & Gamble Co. v.

Paragon Trade Brands, Inc.*, 989 F. Supp. 547, 582 (D. Del. 1997).

11. "'The courts have consistently held that an invention, though completed, is deemed

abandoned, suppressed, or concealed if, within a reasonable time after completion, no steps are

taken to make the invention publicly known.'"  *Correge v. Murphy*, 705 F.2d 1326, 1330 (Fed.

Cir. 1983) (citation omitted).  "[F]ailure to file a patent application; to describe the invention in a

publicly disseminated document; or to use the invention publicly have been held to constitute

abandonment, suppression or concealment." *International Glass Co. v. United States*, 408 F.2d

395, 403 (Ct. Cl. 1969) (citations omitted).  "[S]ome step is required to be taken by the prior

inventor which allows the public to learn of the method to satisfy section 102(g) (even if the

inventors wanted to keep the invention secret)."  *Levi Strauss & Co. v. Golden Trade, S.r.L.*,

Nos. 92 CIV. 1667 (RPP), 90 CIV. 6291 (RPP), 90 CIV. 6292 (RPP), 1995 WL 710822, at *18

(S.D.N.Y. Dec. 1, 1995).

12. A prior method or process is deemed suppressed or concealed if kept secret even if

the product of that process is disclosed to the public.  *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*,

721 F.2d 1540, 1550 (Fed. Cir. 1983).  "As between a prior inventor who benefits from a process

by selling its product but suppresses, conceals, or otherwise keeps the process from the public,

and a later inventor who promptly files a patent application from which the public will gain a

disclosure of the process, the law favors the latter."  *Id.*  "[I]t is the simple rule that the property

right shall reside in the second inventor who disclosed and not in the first inventor who

concealed, *i.e.*, the law prefers and will reward earlier disclosure over earlier invention."

*Horwath v. Lee*, 564 F.2d 948, 950 (C.C.P.A. 1977).

13. A prior process is considered suppressed or concealed when it is kept secret and a

purchaser of a product would not be able to "discover the process merely by looking at the

product."  *Levi Strauss*, 1995 WL 710822, at *18.

**B.    Enforceability**

Inequitable Conduct

1.    The standard for proving inequitable conduct is high, requiring proof by clear and

convincing evidence:  "To hold a patent unenforceable to inequitable conduct, a court must find,

by clear and convincing evidence, [1] that the applicant omitted or misrepresented [2] material

facts [3] with the intention of misleading or deceiving the patent examiner.  Once the challenger

has shown the requisite levels of materiality and intent, the district court must balance the equities to determine whether the patentee committed inequitable conduct that warrants holding the patent unenforceable." *Monsanto Co. v. Bayer Bioscience N.V.*, 363 F.3d 1235, 1239 (Fed. Cir. 2004); *see also Kingsdown Med. Consultants Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988) ("Inequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence.").

2. "Inequitable conduct entails a two-step analysis: first, a determination of whether the withheld reference meets a threshold level of materiality and intent to mislead, and second, a weighing of the materiality and intent in light of all of the circumstances to determine whether the applicant's conduct is so culpable that the patent should be unenforceable." *Juicy Whip, Inc.*, 292 F.3d at 744. Both intent and materiality must be proven by clear and convincing evidence. *M. Eagles Tool Warehouse v. Fisher Tooling Co., Inc.*, 2006 WL 454355 (Fed. Cir. Feb. 27, 2006)

3. "Information is material when there is a substantial likelihood that a reasonable Examiner would have considered the information important in deciding whether to allow the application to issue as a patent. *Life Technologies, Inc.*, 224 F.3d at 1325. "[T]he mere fact that a patent application attempts to distinguish its patent from the prior art does not constitute a material omission or misrepresentation where the patent examiner has the prior art before him or her, and therefore, is free to make his or her own conclusions regarding the claimed invention." *LifeScan, Inc. v. Home Diagnostics, Inc.*, 103 F. Supp. 2d 379, 386 (D. Del. 2000); *see also Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1482 (Fed. Cir. 1986).

4.   When the inequitable conduct defense is based on the alleged failure to disclose a prior art reference to the PTO, "the applicant's *actual* knowledge of the reference's existence must be proved." *Nordberg, Inc. v. Telsmith, Inc.*, 82 F.3d 394, 397 (Fed. Cir. 1996) (emphasis in original).  An applicant has "no duty to conduct a prior art search" and hence there is no "obligation to disclose any art of which …he 'reasonably should be aware.'"  *American Hoist & Derrick Co.*, 725 F.2d at 1362; *see also Therma-Tru Corp. v. Peachtree Doors, Inc.*, 44 F.3d 988, 996 (Fed. Cir. 1995) ("There can not have been culpable intent in withholding information that the inventor did not have.").

5.   When the allegedly withheld prior art reference is information concerning a § 102(b) "public use" or "on sale" event, "the failure to tell the examiner about this purported bar cannot be deemed material or culpable" if the § 102(b) bar did not in fact arise. *Allied Colloids Inc. v. American Cyanamid Co.*, 64 F.3d 1570, 1578 (Fed. Cir. 1995); *see also Hupp v. Siroflex of Am. Inc.*, 122 F.3d 1456, 1466 (Fed. Cir. 1997) (rejecting contention that "even if the submission were not an on-sale event, it should have been presented to the patent examiner so that the patent examiner could decide whether it was.  There is no obligation to present the examiner with information that is not material to patentability, on pain of loss of patent rights based on inequitable conduct.").

6.   Cumulative information is also not material, and an applicant's failure to disclose such information to the PTO is not inequitable conduct.  *See* 37 C.F.R. § 1.56(b) ("information is material to patentability when it is not cumulative to information already of record or being made of record in the application"); *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1110 (Fed. Cir. 2001) ("failure to cite cumulative references is not inequitable conduct").

7.  "Intent is an independent element of inequitable conduct, and must be separately established."  *Hupp*, 122 F.3d at 1465; *see also Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1352 (Fed. Cir. 2002) ("[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct"); *M. Eagles Tool Warehouse v. Fisher Tooling Co., Inc.*, 2006 WL 454355 (Fed. Cir. Feb. 27, 2006) (same). A showing that an undisclosed reference was material and that the inventor knew about it is not sufficient.  *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1342-43 (Fed. Cir. 2005).  "[C]lear and convincing evidence must prove that an applicant had the specific intent to accomplish an act that the applicant ought not to have performed, *viz.*, misleading or deceiving the PTO."  *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995).  "[I]ntent as an essential predicate to patent enforceability does not mean that the inventor intended to do what he did in patent prosecution….[I]nvalidity for inequitable conduct requires a showing, by clear and convincing evidence, of intent to deceive or mislead the patent examiner into granting the patent." *Therma-Tru*, 44 F.3d at 995-96; *see also Juicy Whip*, 292 F.3d at 744 (challenger has burden by clear and convincing evidence to show that applicant acted with "intent to mislead" the examiner).  All evidence, including evidence of good faith, informs the intent to deceive inquiry.  *See, e.g., Gambro Lundia AB*, 110 F.3d at 1581; *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550, 1557 (Fed. Cir. 1995).

8.  A finding of simple or gross negligent "does not of itself justify an inference of intent to deceive; the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *Molins*, 48 F.3d at 1181 (quoting *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988)).  A court "will not find inequitable conduct on an

evidentiary record that is completely devoid of evidence of the patentee's intent to deceive."

*Amgen*, *Inc.*, 314 F.3d at 1358; *see also Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327

(Fed. Cir. 2000) (rejecting contention that "intent could be found without any factual basis").

For this reasons, "[i]ntent to deceive can not be inferred solely from the fact that information was

not disclosed." *Herbert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996). Failure to disclose

prior art "where the only evidence of intent is lack of a good faith explanation for the

nondisclosure, cannot constitute clear and convincing evidence  sufficient to support a

determination of culpable intent." *M. Eagles Tool Warehouse v. Fisher Tooling Co., Inc.*, 2006

WL 454355 (Fed. Cir. Feb. 27, 2006).