**EXHIBIT 5**
**Pretrial Order**
**Civil Action No. 04-858 (SLR)**

**DEFENDANTS' STATEMENT OF ISSUES OF LAW**
**THAT REMAIN TO BE LITIGATED**

Defendants expect that they will present the following issues of law at trial.[1]  Defendants

reserve the right to modify, supplement, or change this Statement of Issues of Law That Remain

to be Litigated (the "Statement") to reflect the Court's rulings on claim construction and the

dispositive motions presently pending.  Defendants also reserve the right to modify, supplement

or change this Statement to the extent necessary to fairly respond to any new issues plaintiff

raises in its Statement of Issues of Law.  To the extent that any of these issues is deemed an issue

of fact rather than an issue of law, Defendants incorporate said issue by reference into

Defendants' Statement of Issues of Fact that Remain to be Litigated.  Conversely, to the extent

that any issue in Defendants' Statement of Issues of Fact that Remain to be Litigated is deemed

an issue of law, Defendants incorporate said issue by reference into this Statement.

**I.      ISSUES ON WHICH DEFENDANTS BEAR THE BURDEN OF PROOF**

**A.      Invalidity**

A patent is presumed valid, and the challenging party must prove invalidity by clear and

convincing evidence.  35 U.S.C. § 282; *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d

1317, 1320 (Fed. Cir. 2004).  The presumption of section 282, however, is only "'a procedural

device which places on [the challenger] the initial burden of going forward to establish a prima

facie case on that issue.'"  *Cable Elec. Prods., Inc., v. Genmark*, 770 F.2d 1015, 1022 (Fed. Cir.

---

[1]    Defendants moved to bifurcate the issues of damages and willfulness.  Plaintiff did not
disagree with defendants' motion to bifurcate in principle, but only disputed the timeliness of the
motion.  Accordingly, the issue of bifurcation is not addressed in Defendants' Statement of
Issues of Law That Remain to be Litigated.  Defendants reserve the right to supplement this
Statement should the Court deny their bifurcation motion.

1985).  When a party presents evidence establishing a prima facie case of invalidity, the patentee

must come forward with evidence to counter the challenge to the presumption of section 282.  *Id.*

(citation omitted).  Prior art references relied upon to invalidate the claims of the patent-in-suit

must have been publicly accessible as of the priority date of the asserted claims to constitute

valid prior art.  35 U.S.C. § 102; *In re Carlson*, 983 F.2d 1032, 1037 (Fed. Cir. 1992); *In re

Cronyn*, 890 F.2d 1158, 1160-61 (Fed. Cir. 1989).

### 1.    Anticipation

Section 102 of Title 35 of the United States Code states that a patent is invalid as

anticipated if "the invention was patented or described in a printed publication in this . . . country

. . . more than one year prior to the date of the application for patent in the United States."  35

U.S.C. § 102(b).  A single prior art reference must disclose each and every limitation of the

claimed invention for a patent to be anticipated.  *Schering Corp. v. Geneva Pharms.*, 339 F.3d

1373, 1379-80 (Fed. Cir. 2003).  Anticipation is a question of fact.  *SmithKline Beecham Corp. v.

Apotex Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005).

A prior art reference may disclose features of the claimed invention either explicitly or

inherently.  "[A] prior art reference may anticipate without disclosing a feature of the claimed

invention if that missing characteristic is necessarily present, or inherent, in the single

anticipating reference."  *SmithKline*, 403 F.3d at 1343; *Continental Can Co. v. Monsanto Co.*,

948 F.2d 1264, 1268 (Fed. Cir. 1991).  As such, "anticipation does not require actual

performance of suggestions in a disclosure.  Rather, anticipation only requires that those

suggestions be enabling to one of skill in the art."  *Bristol-Myers Squibb Co. v. Ben Venue

Laboratories, Inc.*, 246 F.3d 1368, 1378 -1381 (Fed. Cir. 2001).  "Where . . . the result is a

necessary consequence of what was deliberately intended, it is of no import that the article's

authors did not appreciate the results." *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1366 (Fed. Cir. 1999); *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1348-49 (Fed. Cir. 1999) ("Because 'sufficient aeration' was inherent in the prior art, it is irrelevant that the prior art did not recognize the key aspect of [the] invention . . . . An inherent structure, composition, or function is not necessarily known.").

## 2.    Obviousness

Section 103 of Title 35 of the United States Code states that "[a] patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103. Obviousness is a question of law, but it is based on a number of underlying facts. *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1220 (Fed. Cir. 2003). Those facts include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; and (3) the difference between the claimed invention and the prior art. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). Secondary factual considerations such as commercial success, long felt but unsolved needs, and failure of others must also be used to take into account the circumstances surrounding the origin of the subject matter sought to be patented. *See id.*; *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983) ("It is jurisprudentially inappropriate to disregard any relevant evidence on any issue in any case, patent cases included. Thus evidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness.").

A patent is invalid as obvious under section 103 if the prior art suggests a motivation to combine prior art elements in a manner that would result in the claimed invention.

"[O]bviousness does not require the prior art to reach expressly each limitation exactly.  Rather, obviousness may render a claimed invention invalid where the record contains a suggestion or motivation to modify the prior art teaching to obtain the claimed invention." *Beckson Marine v. Nfm, Inc.*, 292 F.3d 718, 727 (Fed. Cir. 2002).  In assessing the differences between an invention and the prior art, section 103 requires consideration of the claimed invention as a whole. *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1275 (Fed. Cir. 2004).

A suggestion or motivation to combine prior art references may be implicit, as well as explicit, in the prior art. *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999).  Such a suggestion or motivation to combine can also "derive solely from the existence of a teaching, which one of ordinary skill in the art would be presumed to know, and the use of that teaching to solve the same or similar problem which it addresses." *In re Oetiker*, 977 F.2d 1443, 1448 (Fed. Cir. 1992).  For the purpose of an obviousness inquiry, the hypothetical "person of ordinary skill in the art" is attributed "knowledge of all prior art in the field of the inventor's endeavor and of prior art solutions for a common problem even if outside that field." *In re Nilssen*, 851 F.2d 1401, 1403 (Fed. Cir. 1988).  While the Federal Circuit warns against employing hindsight in an obviousness analysis, "[t]hat warning does not provide a rule of law that an express, written motivation to combine must appear in prior art references before a finding of obviousness.  Stated differently, this court has consistently stated that a court or examiner may find a motivation to combine prior art references in the nature of the problem to be solved." *Ruiz*, 357 F.3d at 1276.

### 3.    Written Description

Section 112 of Title 35 of the United States Code states that a patent specification must contain "a written description of the invention."  35 U.S.C. §112, ¶ 1.  In order to fulfill the

written description requirement of section 112, the specification must "describe an invention and do so in sufficient detail that one skilled in the art can clearly conclude that 'the inventor invented the claimed invention.'" *Regents of the Univ. of Cal. v. Eli Lilly and Co.*, 119 F.3d 1559, 1566 (Fed. Cir. 1997) (internal citations omitted). The test is whether possession of the claimed invention is shown at the time of the earliest application to which priority is claimed. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991. Claims may be no broader than the supporting disclosure, and a narrow disclosure will limit claim breadth. *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998).

To be adequately supported by the disclosure, claimed subject matter must be explicitly or inherently disclosed in the original application. While the meaning of terms, phrases, or diagrams in a disclosure is to be explained or interpreted from the vantage point of one skilled in the art, the question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification. *Martin v. Mayer*, 823 F.2d 500, 504 (Fed. Cir. 1987) (stating that it is "not a question of whether one skilled in the art might be able to construct the patentee's device from the teachings of the disclosure . . . it is a question whether the application necessarily discloses that particular device.") Rather, the application itself must describe the invention, and must do so in sufficient detail that one skilled in the art can clearly conclude that the inventor was in possession of the claimed invention as of the filing date sought. *Lockwood v. American Airlines*, Inc., 107 F.3d 1565, 1572 (Fed. Cir. 1997).

Inherent disclosure may be inferred where a person of skill in the art would immediately discern that limitation at issue in the claims is necessarily present in the original disclosure. *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000). Inherency in the context of the written description requirement is a strict requirement that cannot be satisfied by

educated guesswork.  "In order for a disclosure to be inherent, 'the missing descriptive matter must necessarily be present in the [original] application's specification such that one skilled in the art would recognize such a disclosure." *Turbocare Div. of Demag Delaval Turbomachinery Corp. v. Gen'l. Elec. Co.*, 264 F.3d 1111, 1119 (Fed. Cir. 2001) (quoting *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998)).  Further, "[a] disclosure in a parent application that merely renders the later-claimed invention obvious is not sufficient to meet the written description requirement; the disclosure must describe the claimed invention with all its limitations." *Tronzo*, 156 F.3d at 1158.  Section 112 always requires that the claim limitation must be necessarily present in the original disclosure, regardless of whether the disclosure is explicit or inherent.

If amendments to the claims are not adequately supported by the original disclosure, the claims are invalid for failing to meet the written description requirement of 35 U.S.C. §112. *Vas-Cath*, 935 F.2d at 1563 ("The test for sufficiency of support . . . is whether the disclosure of the application relied upon 'reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter.'") (quoting *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1575 (Fed. Cir. 1985)).

### 4.    New Matter

No new matter may be added to a patent application after the application is filed.  35 U.S.C. § 132  ("No amendment shall introduce new matter into the disclosure of the invention."). Thus, an applicant may never rely upon new matter that is added after the effective filing date of an application to satisfy the written description requirement. *Turbocare*, 264 F.3d at 1119-20. Each and every amendment to the disclosure submitted after the application's date of filing must be supported by the disclosure as originally filed. *Id.* at 1118 ("When the applicant adds a claim

or otherwise amends his specification after the original filing date, . . . the new claims or other added material must find support in the original specification.") (citing *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1352 (Fed. Cir. 2000) ("The fundamental inquiry is whether the material added by amendment was inherently contained in the original application.")).

### 5. Enablement

So that the public knowledge is enriched by a patent specification at least to a degree commensurate with the scope of the claims, a patent specification must enable "those skilled in the art to make and use the full scope of the claimed invention without 'undue experimentation.'" *National Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195 (Fed. Cir. 1999); 35 U.S.C. §112. "The *sine qua non* of a valid patent is a full, clear, enabling description of the invention." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480 (1974). "The purpose of [the enablement] provision is to assure that the inventor provides sufficient information about the claimed invention that a person of skill in the field of the invention can make and use it without undue experimentation, relying on the patent specification and the knowledge in the art." *Scripps Clinic & Res. Found'n v. Genentech, Inc.*, 927 F.2d 1565, 1571 (Fed. Cir. 1991). A description is not sufficiently enabling to meet this requirement if it would require undue experimentation. *Atlas Powder Co. v. E. I. Du Pont de Nemours & Co.*, 750 F.2d 1569, 1576 (Fed. Cir. 1984).

As with the written description requirement, the enablement requirement must be satisfied as of the original filing date of the application. *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1339 (Fed. Cir. 2003). Whether a disclosure is enabling under 35 U.S.C. § 112 "is a legal conclusion based upon underlying factual inquiries." *Johns Hopkins University v. CellPro, Inc.*, 152 F.3d 1342, 1354 (Fed. Cir. 1998); *Amgen, Inc. v. Chugai*

*Pharmaceutical Co., Ltd.*, 927 F.2d 1200, 1212 (Fed. Cir. 1991); *In re Wands*, 858 F.2d 731, 735, 736-37, (Fed. Cir. 1988).

Therefore, it is not sufficient that one of skill in the art would have been able to recognize what the applicant has invented; the disclosure must be also sufficiently detailed to enable one of ordinary skill in the art to practice each claimed aspect of the invention without undue experimentation. The scope of the claims can be no broader than the scope of what the applicant has enabled. *National Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999).

### 6.    Indefiniteness

A patent claim is invalid as indefinite if it does not "particularly point out and distinctly claim the subject matter which the applicant claims as his invention." 35 U.S.C. § 112. If the scope of a claim limitation cannot be determined from the claims themselves, the specification, or the prosecution history, the claim fails to meet the definiteness requirement of 35 U.S.C. § 112.

The test for indefiniteness turns on whether a person of ordinary skill in the art would understand what is claimed (and what is not claimed) in light of the specification. *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1469 (Fed. Cir. 1993); *Amgen, Inc. v. Chugai Pharma Co.*, 927 F.2d 1200, 1217 (Fed. Cir. 1991); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed. Cir. 1986). A patentee is required to put the public on fair notice of what is and is not covered by a patent. "When the meaning of claims is in doubt, especially when . . . there is close prior art, they are properly declared invalid" for indefiniteness. *Amgen*, 927 F.2d at 1218.

The developed and improved condition of the patent law, and of the principles which govern the exclusive rights conferred by it, leave no excuse for ambiguous language or vague descriptions. The public should not be deprived of rights supposed to belong to it, without being clearly told what it is that limits these rights. *Merrill v. Yeomans*, 94 U.S. 568, 573 (1876). The inventor must "inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not." *Gen. Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 369 (1938) (quoting *Permutit Co. v. Graver Corp.*, 284 U.S. 52, 60 (1931)). *See also Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996) (citing *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942); *Gen. Elec.*, 304 U.S. at 369). In short, "[patent] claims must be 'particular' and 'distinct,' as required by 35 U.S.C. § 112, so that the public has fair notice of what the patentee and the Patent and Trademark Office have agreed constitute the metes and bounds of the claimed invention." *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991).

To further the strong policy goal of informing the public as to exactly what is claimed by a patent, the Federal Circuit recently ruled in *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, No. 05-1009, 05-1487, 2005 WL 3097877 (Fed. Cir. Nov. 21, 2005), that patent claims reciting both system features and method steps in the same claim are indefinite under § 112, second paragraph. The patent at issue in the *IPXL* case included a comparable claim in the financial transaction field, reciting both a transaction system and a method step in which a user "uses" an input means to change or accept certain transaction data. 2005 WL 3097877 at *1, *7. The *IPXL* Court found, in a case of first impression, that such claims are improper as a matter of law. *Id*. at *7. The Federal Circuit reasoned that reciting both a system and a method for using that

system in the same claim is improper, because one of ordinary skill in the art would not be able to determine the claim's scope. *Id.*

### 7.    Improper Inventorship

A patent may also be invalid for failure to name the correct inventors or for failure to name each person who made an inventive contribution to the invention described in the patent-in-suit. 35 U.S.C. §§ 102(f), 103, 116; *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1472-73 (Fed. Cir. 1997). This statutory provision has been interpreted to require that a patent accurately list the correct inventors of a claimed invention. "Since the word 'he' refers to the specific inventive entity named on the patent, this subsection mandates that a patent accurately list the correct inventors of a claimed invention." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998). "To determine whether [a person] made a contribution to the conception of the subject matter of [a patent's] claim . . ., this court must determine what [the person's] contribution was and then whether that contribution's role appears in the claimed invention." *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998). Unless all proper inventive entities are named on a patent, the patent can and should be invalidated. *Pannu*, 155 F.3d at 1349; *Schulze v. Green*, 136 F.3d 786, 792 (Fed. Cir. 1998); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1562 (Fed. Cir. 1984).

Persons may be joint inventors "even though they do not physically work on the invention together or at the same time, and even though each does not make the same type of amount of contribution." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227 (Fed. Cir. 1994); 35 U.S.C. § 116. "The statute does not set forth the minimum quality or quantity of contribution required for joint inventorship," but "[c]onception is the touchstone of inventorship, the completion of the mental part of invention." *Id.* at 1460; *Burroughs Wellcome*, 40 F.3d at

1227. To be a joint inventor, "an individual must make a contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention." *Fina Oil*, 123 F.3d at 1473.

Whether particular contributions and suggestions made by third parties amount to co-inventorship turns on the facts of each individual case. *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 981 (Fed. Cir. 1997). Taken together, the testimony of any alleged co-inventor and the corroborating evidence presented (including both direct and circumstantial evidence) must show inventorship by clear and convincing evidence. *Ethicon*, 135 F.3d at 1461; *Fina Oil*, 123 F.3d at 1474.

Another basis for finding invalidity under Section 102(f) for improper inventorship is the derivation requirement. A patent is invalid for improper derivation if the party challenging validity establishes, by clear and convincing evidence, "(1) prior conception of the invention by another; and (2) communication of the complete claimed invention, in enabling detail, to the patentee." *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1577 (Fed. Cir. 1997).

### B.     Unenforceability for Inequitable Conduct

Inequitable conduct is a violation of the duty of disclosure as set forth in 37 C.F.R. § 1.56 ("Rule 56"), the Rules of Practice of the United States Patent and Trademark Office. Because a patent by its very nature is infected with the public interest, "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [Patent] Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability." 37 C.F.R. § 1.56 ("Rule 56"). Inequitable conduct may occur by omission, such as failing to disclose a material prior art reference to the

Patent Office, or commission, such as by making a material misrepresentation to a patent examiner. *Merck & Co. v. Danbury Pharmacal, Inc.*, 8873 F.2d 1418, 1420 (Fed. Cir. 1989). The term "information" is intended to be all-encompassing and includes both prior art documents and statements from related litigation, including information arising from the "pleadings, admissions, discovery including interrogatories, depositions, and other documents and testimony." MPEP § 2001.04; MPEP § 2001.06(c). A patent that has been obtained by inequitable conduct is deemed unenforceable. *Merck*, 973 F.2d at 1420.

Inequitable conduct requires a finding that the patentee or one of its agents intentionally failed to disclose material information to the patent examiner and that this failure was done with an intent to deceive. *E.g.*, *Molins PCL v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995); *Baxter Int'l. v. McGaw*, 149 F.3d 1321, 1327 (Fed. Cir. 1998). Thus, a pleading of inequitable conduct requires identification of material information and evidence from which intent can be inferred. Because of its fraud implications, inequitable conduct is typically held to the heightened pleading standard of Rule 9(b). *See Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys.*, LLC, 350 F.3d 1327, 1343 (Fed. Cir. 2003) (stating that "inequitable conduct, while a broader concept than fraud, must be pled with particularity"); *see also Enzo Life Sci., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 488 (D. Del. 2003) (stating that "this district and the majority of the federal courts that have addressed the issue, have held that Rule 9(b) applies to inequitable conduct claims in patent cases.").

The current version of Rule 56 provides that information is "material" to patentability when it is not cumulative to information already of record or being made of record in the application, and (1) it establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (2) it refutes, or is inconsistent with, a position the

applicant takes in: (i) opposing an argument of unpatentability relied on by the Office, or (ii) asserting an argument of patentability.  37 C.F.R. 1.56.  Thus, a misrepresentation or omission is material if there is a substantial likelihood that a reasonable examiner would consider the information important in deciding whether to allow the application to issue as a patent.  Elk Corp. of Dallas v. GAF Bldg. Materials Corp., 168 F.3d 28, 31 (Fed. Cir. 1999).

Generally, evidence of intent to deceive is "inferred from the facts and circumstances surrounding the applicant's overall conduct."  *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1189 (Fed. Cir. 1993); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997).  Direct evidence of intent to deceive is not required. *Merck & Co., Inc. v. Danbury Parmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir. 1989).

An inference of intent arises when the patentee or its agent fails to provide a credible explanation for its failure to disclose a known material reference.  *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1354 (Fed. Cir. 2005) (upholding finding of intent to deceive where patentee withheld material prior art that it had disclosed to the FDA, and offered no credible, good faith explanation for the withholding.); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256-1257 (Fed. Cir. 1997) (upholding finding of intent to deceive where patentee and its counsel knowingly withheld a prior art reference relating to a point of novelty and made no effort to offer a good faith explanation of why it was never cited); *see also Paragon Podiatry Lab.*, 984 F.2d at 1193 (upholding finding of intent to deceive where there was evidence of a knowing failure to disclose pre-critical date commercial sales of the patented device and no explanation was offered).  Intent to deceive will be more readily inferred if an undisclosed reference is highly material.  *Baxter Int'l*, 149 F.3d at 1327

(noting that the more material the omission, the less evidence of intent will be required in order to find that inequitable conduct has occurred).

The inequitable conduct inquiry involves a balancing of materiality and intent to mislead the Patent Office. Once the requisite threshold levels of materiality and intent are shown, they are balanced to determine whether inequitable conduct should be found. *Baxter Int'l*, 149 F.3d at 1327.

### C.    Attorneys Fees for Defendants

An award of attorneys' fees may be justified against a plaintiff who has initiated the action in bad faith by asserting unenforceable patents or otherwise, or who has engaged in inequitable conduct before the PTO in securing the patent-in-suit, either under Section 285 or under the Court's plenary authority. 35 U.S.C. § 285; *Tate Access Floors, Inc. v. Maxcess Tech., Inc.*, 222 F.3d 958, 971-72 (Fed. Cir. 2000); *L.E.A. Dynatech v. Allina*, 48 F.3d 1527, 1530 (Fed. Cir. 1995); *Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050-51 (Fed. Cir. 1992); *Fox Indus., Inc. v. Structural Preservation Sys.*, 922 F.2d 801 (Fed. Cir. 1990).

## II.    ISSUES ON WHICH PLAINTIFF BEARS THE BURDEN OF PROOF

### A.    Infringement

35 U.S.C. § 271(a) states:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent.

Infringement requires proof by a preponderance of the evidence. *Kahn v. Gen'l Motors Corp.*, 135 F.3d 1472, 1476-77 (Fed. Cir. 1998); *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1425 (Fed. Cir. 1997).

A determination of infringement under 35 U.S.C. § 271(a) requires a two-step analysis. Initially, the claims at issue are interpreted to define their scope. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (*en banc*). Claim construction is a matter of law to be decided by the Court. *TechSearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002); *Markman v. Westview Instr., Inc.*, 52 F.3d 967, 979-81 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). Next, the evidence must be examined to ascertain whether the properly interpreted claim has been infringed by the accused product. *Kegel*, 127 F.3d at 1425. Whether the claims, as construed by the Court, are infringed is a question of fact to be determined by the trier of fact. *TechSearch*, 286 F.3d at 1369; *Markman*, 52 F.3d at 979-81.

### 1.    Literal Infringement

"To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001). In other words, the properly construed claim must read on the accused device exactly. *Cortland Line Co. v. Orvis Co.*, 203 F.3d 1351, 1358 (Fed. Cir. 2000). The absence of a single limitation is fatal to the patentee's case. *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998). If an independent patent claim is not infringed it follows as a matter of law that any claims depending from that claim are also not infringed. *Wolverine World Wide Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994).

Further, the accused device must meet all the limitations of the claim as-is. "A device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim … The question is not what [a device] might have been made to do, but what it was intended to do and did do." *High Tech Medical Instrumentation v. New Image Indus.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995).

### 2.    Infringement Under the Doctrine of Equivalents

Defendants contend that Plaintiff should not be permitted to seek a finding of infringement under the doctrine of equivalents.  Defendants have included this issue within their listing of Miscellaneous Issues, attached as Exhibit 13.  If evidence of equivalents is permitted at trial, Defendants offer the following outline of the issues of fact and law:

Where there is no literal infringement, a patentee may in some circumstances resort to the doctrine of equivalents.  "For infringement by equivalency, all of the elements of the claimed invention or an equivalent thereof must be present in the accused system."  *Netword*, 242 F.3d at 1354.  "A finding of equivalence is a determination of fact . . . like any other issue of fact, final determination requires a balancing of credibility, persuasiveness and weight of evidence." *Viskase Corp. v. American Nat'l Can Co.*, 261 F.3d 1316, 1324 (Fed. Cir. 2001).  In a recent opinion, the Federal Circuit has reinforced its holding that generalized evidence in support of infringement under the doctrine of equivalents is insufficient: specific evidence of equivalents must be presented for each claim limitation:

> The expert declaration and other evidence relied on by [plaintiff] supporting infringement by equivalents are generalized and do not provide particularized testimony and linking argument on a limitation-by-limitation basis.  For this reason the evidence did not raise a genuine issue of material fact.  Summary judgment of non-infringement under the doctrine of equivalents regarding metafiles was therefore proper.

*Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005); *see also PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005).

Prosecution history estoppel further limits the scope of equivalents a patentee may claim under the doctrine of equivalents.  *Bayer AG*, 212 F.3d 1241, 1251 (Fed. Cir. 2000).  "[E]ven when technological equivalency is present, the patentee is estopped from enforcing the patent against an equivalent process if the inventor surrendered, during prosecution of the patent

application, claim scope which included the now-asserted element or its equivalent." *Canton Bio Med. Inc. v. Integrated Linear Techs. Inc.*, 216 F.3d 1367, 1370 (Fed. Cir. 2000). "Estoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 736 (2002). This is true because "the doctrine of equivalents . . . is not a tool for expanding the protection of a patent after examination has been completed." *Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995).

The presumption of prosecution history estoppel applies to all claims containing the limitation at issue, regardless of whether a particular claim was amended to contain the limitation or included it as originally filed. *Deering Precision Instruments, L.L.C. v. Vector Distribution Systems, Inc.*, 347 F.3d 1314, 1326 (Fed. Cir. 2003). The prosecution history as a whole, including all parent applications, must be examined to determine whether estoppel applies. *Mark I Marketing Corp. v. R.R. Donnelley & Sons Co.*, 66 F.3d 285, 291 (Fed. Cir. 1995). In addition to estoppel arising from amendment to the patent claims, surrender of subject matter may also arise as a result of argument to secure allowance of a claim. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (*en banc*).

There are additional legal limitations on the doctrine of equivalents. No range of equivalents is permissible where it encroaches upon the subject matter described by the prior art, or would be obvious in light of the prior art. *Wilson Sporting Goods, Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684-85 (Fed. Cir. 1990). Because the equivalents inquiry is conducted for each limitation, any theory of equivalents that would result in the vitiation of a claim limitation must fail as a matter of law. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,, 520 U.S. 17, 39 n.8; *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998). A patentee may not assert

equivalents over an embodiment of the invention that is disclosed in the written description but is not claimed in the patent, because the patentee has dedicated that embodiment to the public by disclosing it and not specifically claiming it. *Maxwell v. J. Baker*, 86 F.3d 1098, 1106-08 (Fed. Cir. 1996). Finally, "where the patent document expressly identifies a role for a claim limitation, the doctrine of equivalents cannot be used to capture subject matter that does not substantially fulfill that role." *K2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1367 (Fed. Cir. 1999).

### B.    Willful Infringement

To establish willful infringement, the patentee must prove, by clear and convincing evidence, "that the infringer acted in disregard of the patent . . . [and] had no reasonable basis for believing it had the right to do the acts." *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1565 (Fed. Cir. 1983). Whether or not the infringement of a patent has been willful is a question of fact that requires examination of the totality of the circumstances in each case, including any mitigating or ameliorating facts. *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 792 (Fed. Cir. 1995); *American Med. Sys., Inc. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1531 (Fed. Cir. 1993). Accordingly, willfulness is a jury question. *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1250 (Fed. Cir. 1989).

In determining whether infringement has been willful, the primary consideration is "whether the infringer, acting in good faith and upon due inquiry, had sound reason to believe that it had the right to act in the manner that was found to be infringing." *SRI Int'l*, 127 F.3d at 1464-65. A potential infringer having actual notice of another's patent has an affirmative duty of due care that normally requires the potential infringer to obtain competent legal advice before infringing or continuing to infringe. *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1580 (Fed. Cir. 1992).

> To serve as exculpatory legal advice the opinion of counsel is to be
> viewed objectively, to determine whether it was obtained in a
> timely manner, whether counsel analyzed the relevant facts and
> explained the conclusions in light of the applicable law, and
> whether the opinion warranted a reasonable degree of certainty that
> the infringer has the legal right to conduct the infringing activity.

*Id*. at 1467.  At base, the inquiry regarding willfulness is whether, under all the circumstances, a

reasonable person would prudently conduct himself with any confidence that a court might hold

the patent invalid or not infringed.  *State Indus., Inc. v. Mor-Flo Indus*., 883 F.2d 1573, 1581

(Fed. Cir. 1989).  "The proper time to assess willfulness is at the time the infringer received

notice. . . ."  *Odetics, Inc. v. Storage Tech. Corp*., 185 F.3d 1259, 1276 (Fed. Cir. 1999).

### C.    Damages for Patent Infringement

35 U.S.C. § 284 states:

> Upon finding for the claimant the court shall award the claimant
> damages adequate to compensate for the infringement, but in no
> event less than a reasonable royalty for the use made of the
> invention by the infringer, together with interest and costs as fixed
> by the court.

"The assessment of damages is a question of fact, and is decided by the jury when trial is to a

jury."  *Weinar v. Rollform, Inc*., 744 F.2d 797, 808 (Fed. Cir. 1984).

"The Supreme Court has interpreted [section 284] to mean that 'adequate' damages

should approximate those damages that will fully compensate the patentee for infringement."

*Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*).  Section 284 sets a

"reasonable royalty" as the floor below which the damage award may not fall.  *Id*. at 1545.

The patent owner must prove the amount of its damages by a preponderance of the

evidence.  *SmithKline Diagnostics, Inc. v. Helena Lab. Group*, 926 F.2d 1161, 1164 (Fed. Cir.

1991).

### 1.     Reasonable Royalty

The determination of a "reasonable royalty" involves imagining a "hypothetical negotiation" between a willing licensor and a willing licensee at the time the alleged infringement began.  *Wang Labs. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993).  Both the hypothetical licensor and the hypothetical licensee are assumed to know the patent is valid and infringed, and are assumed to possess a "book of wisdom" that allows them to consider events that occurred after the date infringement began.  *Fromson v. Western Plate and Supply Co.*, 853 F.2d 1568, 1574-76 (Fed. Cir. 1988).

The fifteen factors recited in *Georgia-Pacific Co. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971), are an appropriate basis for the determination of what constitutes a reasonable royalty.  *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 n.7 (Fed. Cir. 1995).  These factors are:

1.     The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty;

2.     The rates paid by the licensee for the use of other patents comparable to the patent-in-suit;

3.     The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4.     The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

5.     The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

6.     The effect of selling the patented specialty in promoting sales of other products of the licensee, that existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

7.    The duration of the patent and term of the license;

8.    The established profitability of the product made under the patent, its commercial success, and its current popularity;

9.    The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

10.    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11.    The extent to which the infringer has made use of the invention, and any evidence probative of the value of that use;

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.    The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14.    The opinion testimony of qualified experts; and

15.    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia-Pacific*, 318 F. Supp. at 1120.

### D.    Prejudgment Interest

The court may award prejudgment interest to a prevailing patentee. 35 U.S.C. § 284.

The rate of prejudgment interest and whether it should be compounded or uncompounded are

matters left to the discretion of the district court. *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d

795, 800 (Fed. Cir. 1988); *Bio-Rad Labs., Inc. v. Nicolet Instr. Corp.*, 807 F.2d 964, 969 (Fed.

Cir. 1986).  The court has discretion to limit the interest awarded where, for example, the

patentee has caused undue delay in the lawsuit.  *Nickson Indus., Inc. v. Rol. Mfg. Co*., 847 F.2d

795, 800 (Fed. Cir. 1988).

     **E.**    **Enhanced Damages**

If willful infringement is found, a district court has the discretion to award damages up to

three times the amount found or assessed as a compensatory award.  35 U.S.C. § 284.  Enhanced

damages are to be awarded only "as a penalty for an infringer's increased culpability, namely

willful infringement or bad faith."  *Beatrice Foods Co. v. New England Printing &*

*Lithographing Co.*, 923 F.2d 1576, 1579 (Fed. Cir. 1991).  Plaintiff must establish that it is

entitled to increased damages, and the amount of any increase, only after first proving by clear

and convincing evidence that defendants' alleged infringement was willful.  35 U.S.C. § 284;

*American Original Corp. v. Jenkins Food Corp*., 774 F.2d 459 (Fed. Cir. 1985); *Read Corp*., 970

F.2d at 826.

The district court nonetheless has discretion to refuse to increase damages even if there is

a willfulness finding.  *Read Corp*., 970 F.2d at 826.  In deciding whether to increase damages,

the court should consider a number of factors, including (1) whether the infringer deliberately

copied the invention, (2) whether the infringer, upon being notified that he might be infringing

the patent, investigated the scope of the patent and formed a good-faith belief that it was invalid,

(3) the infringer's behavior during the litigation, (4) the infringer's size and financial condition,

(5) the closeness of the case, (6) the duration of the willful infringement, (7) remedial action by

the defendant, (8) the defendant's motivation for harm, and (9) whether the defendant tried to

conceal its actions.  *Id*. at 826-27.  All circumstances must be considered, and the court may not

focus on one factor to the exclusion of all others.  *Jurgens v. McKasy*, 927 F.2de 1552, 1562

(Fed. Cir. 1991).  A court must also specifically explain any increase in damages awarded.  *Read Corp.*, 970 F.2d at 828.

### F.    Attorneys Fees for Plaintiff

In "exceptional cases" only, the court may award attorneys fees to a prevailing patent owner based on a finding of willful infringement, proven by clear and convincing evidence.  35 U.S.C. § 285; *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1567 (Fed. Cir. 1988); *Revlon, Inc. v. Carson Prods. Co.*, 803 F.2d 676, 679 (Fed. Cir. 1986); *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990).  Attorneys' fees are awarded only to "avoid a gross injustice," and not simply to penalize a party for defending or prosecuting a lawsuit.  *Revlon*, 803 F.2d at 679.  Indeed, even an exceptional case does not require an award of fees.  *Modine Mfg.*, 917 F.2d at 543.

### G.    Injunctive Relief

Under 35 U.S.C. § 283, courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent."  *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1247 (Fed. Cir. 1989).  In deciding whether permanent injunctive relief should be granted and the scope of such an injunction, the Court may take into account the fact that plaintiff willingly licenses the patent-in-suit to others and does not itself sell a product or service practicing the claims of the patent-in-suit.  *Rite-Hite Corp.*, 56 F.3d at 1549; *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 772-73, 775 (Fed. Cir. 1993).  "If a patentee's failure to practice a patented invention frustrates an important public need for the invention, a court need not enjoin infringement of the patent."  *Rite-Hite*, 56 F.3d at 1547.