Exhibit 12

**LML'S STATEMENT OF MISCELLANEOUS EVIDENTIARY ISSUES**

Set forth below is a brief summary of the evidentiary issues LML would like to address at

the pre-trial conference.  LML believes resolution of these issues will significantly narrow the

issues for trial as well as the time needed for trial.  Some issues (as indicated below) have been

raised by LML, at least in part, either during summary judgment briefing or through motions to

strike.

**1.      Defendants should be precluded from arguing new defenses that were never
          disclosed during fact discovery.**

Based on Defendants' Proposed Jury Instructions, Defendants appear to be poised to

improperly raise a number of defenses that either were not disclosed in discovery, or have never

before been disclosed.  These include:

- **On-Sale Bar:** Defendants' proposed jury instructions include an instruction on the on-
  sale bar.  Throughout discovery, Defendants never raised and maintained an on-sale bar
  defense with respect to the '988 Patent, only the '528 and '366 Patents (which have now
  been dropped from the case).  The first time that Defendants ever raised the defense of
  the on-sale bar for the '988 patent with respect to an alleged Chequemark commercial
  embodiment was after the close of fact discovery in the report of their invalidity expert.[1]
  LML was not afforded an opportunity to take proper discovery on this issue and would be
  prejudiced by Defendants' raising it during trial.  In addition, Defendants never
  maintained any other on-sale bar defense in this case, nor provided any detailed
  description of any such defense during discovery to permit LML to defend itself against
  any such allegations.

- **Prior Invention**: During discovery, Defendants disclosed improper inventorship
  defenses based solely on 35 U.S.C. §§ 102(f) and 116.  Indeed, LML moved for summary
  judgment of no improper inventorship on these disclosed theories (D.I. 329 and 330).
  Defendants' Prior Invention jury instruction, however, is nearly word-for-word identical
  to 35 U.S.C. 102(g)(2), a defense that was never disclosed either during fact or expert
  discovery.  The first time LML became aware of this new defense was when Defendants

---

[1] In addition, Defendants' arguments regarding the priority date of the '988 patent are mooted if Defendants' on-sale
bar defense is precluded as untimely.  No other issue in the case relates to the priority date of the '988 patent.

exchanged their proposed jury instructions with LML.  The late disclosure of this defense precluded LML from conducting any discovery on this defense, prevented LML's validity and enforceability expert from opining on this issue and also prevented LML from including it in its motion for summary judgment.

- **Anticipation**: Defendants argued for the first time in their summary judgment briefs that the Carlson '607 patent anticipates the asserted claims of the '988 patents.  Defendants never disclosed this defense during discovery, and Defendants' invalidity expert provided only a conclusory opinion (with no explanation whatsoever) that Carlson '607 anticipated the '988 patent.  LML objected to Defendants' untimely disclosed anticipation defense in its Reply Memorandum in Support of its Motion for Summary Judgment No. 4.  (D.I. 497 at 11-12).

- **Indefiniteness**:  Defendants argued for the first time in their summary judgment briefs that the phrase "any [consumer] bank check" was indefinite.  Defendants never disclosed this defense during fact discovery, nor did Defendants' expert timely provide any opinion on this issue.  LML objected to this new invalidity contention in its Reply to its Motion for Summary Judgment No. 5 (D.I. 498 at 19 n. 24).

- **Non-Infringement**:  TeleCheck argued for the first time in its summary judgment briefs that it did not infringe claim 16 because TeleCheck's consumers or merchants practice certain steps of the claim, as opposed to TeleCheck itself.  During discovery, TeleCheck never disclosed these non-infringement contentions, nor did TeleCheck's infringement expert provide any opinion with respect to such contention.  LML objected to this new non-infringement contention in its Reply to its Motion for Summary Judgment No. 1 (D.I. 489 at 10-12).

Defendants should be limited to those contentions it fairly and properly disclosed during discovery and which LML had adequate opportunity to explore. Defendants' "new" non-infringement and invalidity contentions should be stricken.

2.    **Defendants should be precluded from relying on documents produced after the close of document discovery.**

Document discovery in this case closed on March 4, 2005.  (D.I. 35).  Despite this deadline, Defendants failed to produce a significant percentage of their production by March 4, 2005.  Consequently, LML raised this issue with the Court at the March 22, 2005 status conference.  (D.I. 89 at 5).  After hearing argument on the issue, this Court extended the document discovery deadline to April 5, 2005, with the following admonition to Defendants:

> And may I say that if document production isn't completed by April 5th, we'll start talking about sanctions because this is your date and you told me you could do it and, obviously, April 5th is substantially past March 4th.

(*Id.* at 8:17-21).    Despite the Court admonition, Defendants did not complete document discovery by the extended April 5th, 2005 deadline.  Instead, Defendants continued to produce documents after the Court's April 5 deadline, throughout discovery, after the close of all fact discovery on July 16, 2005, as attachments to summary judgment motions,[2] and even as recently as February 24, 2006.    Therefore, this Court should preclude Defendants from relying on documents that they produced after the extended April 5, 2005, deadline.  *Philips Elecs. N. Am. v. Contec Corp.*, No. Civ.A. 02-123-KAJ, 2004 WL 769371, at *1 (D. Del. April 5, 2004) (granting motion to exclude untimely produced documents); *Cemar, Inc. t/a Rising Sun Motors v. Nissan Motor Corp.*, 1990 WL 3038, *6 (D. Del. 1990) (citations omitted) (penalizing attorney and client for late production of documents).  These documents are: DTX 10, DTX 21, DTX 68, DTX 72-4, DTX 85, DTX 195, DTX 200-8, DTX 210-19, DTX 253-62, DTX 393-403, DTX 600, DTX 615, DTX 634-46, DTX 648-59, DTX 676, DTX 678-83, DTX 694 and DTX 829.

**3.     Defendants should be precluded from relying on alleged prior art documents that were not publicly available.**

To constitute prior art for purposes of invalidating a patent, "the knowledge must be publicly accessible."  *Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1306 (Fed. Cir. 2002).  Defendants' exhibit list, however, identifies several alleged prior art references even though they were "confidential," and thus, not "publicly accessible."  *See, e.g.*, DTX 1,

---

[2] Plaintiff has already moved this Court to strike the documents attached to Defendants' summary judgment motions as untimely in its Opposition to ECHO's and Nova's Motions for Summary Judgment of Non-Infringement (D.I. 424 at 11-12, 30-31 (ECHO); D.I. 429 at 27-28, 28-29 n. 19 (Nova)) and its Replies to its Motions for Summary Judgment Nos. 1 and 2 (D.I. at 2-3, 7-8; D.I. at 3-5, 10).

DTX 95-96 DTX 200, DTX 201, and portions of DTX 397 (DTX 397 is a compilation including

DTX 95-96)[3].

First, DTX 95-96 and portions of DTX 397 ("the CheckMate Electronics documents")

are not prior art because they were not publicly available.  In the first instance, the final Business

Plan DTX 96 specifically states:

> This Business plan is ***solely for the internal use*** of the Company, its officers, directors and employees, and for use by qualifies [sic] prospective investors and financial institutions which may be extending credit to the Company.

DTX 96 at 3539 (emphasis added).  Defendants have no evidence to rebut this explicit statement

of confidentiality.  Indeed, the one witness who did testify about DTX 96 stated that it was sent

to a limited number of "qualified" individuals.  Moreover, DTX 95 was simply a draft of DTX

96 with handwritten notes on it—not even a final business plan.  Neither DTX 95 or 96 were

publicly available, and thus cannot be prior art.

Similarly, Defendants also attempt to qualify DTX 1 and 200[4] ("Checkcash Associates

document") as prior art.  But the very title of the document—"Checkcash Associates, Ltd.

***Confidential*** Private Placement Memorandum"    (emphasis added)—dispels this attempt.

Moreover, to have access to the document, investors must sign the document representing:

> That he ***has not distributed*** the Memorandum to anyone other than his designated Purchaser Representative and no one except such Purchaser Representative has used this Memorandum and he has not made any copies thereof.

---

[3] The remaining portions of DTX 397 were never disclosed by either the Defendants or their experts as invalidating.

[4] DTX 1 and DTX 200 are duplicative exhibits on Defendants' exhibit list.

DTX 1 and 200 at I-4 (emphasis added). Defendants have no evidence that DTX 1 or 200 was publicly accessible.

Finally, DTX 201 ("the Manta Systems document") was not publicly accessible, and thus is not prior art. The document itself appears only to be an incomplete draft document. No witness has authenticated DTX 201 through discovery let alone testified that it was publicly accessible, and thus cannot be prior art.

Defendants have not demonstrated that DTX 1, DTX 95-96 DTX 200, DTX 201, and portions of DTX 397 constitute prior art. Therefore, this Court should preclude Defendants from offering or using DTX 1, DTX 95-96 DTX 200, DTX 201, and DTX 397 at trial.

**4.    Defendants should be precluded from offering evidence or argument directed to a commercial embodiment of the '988 patent for purposes of infringement.**

It is well-settled that the proper infringement analysis is a comparison of the accused product with the asserted clams of a patent—not a comparison of the accused product with a commercial embodiment of the patent. *Zenith Labs, Inc. v. Bristol Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994); *see also Praxair, Inc. v. ATMI, Inc.*, 2005 WL 3159054, *2 (D. Del. Nov. 28, 2005) (citing *Zenith* in precluding evidence of the commercial embodiment of a patent-at-issue and the events in its development). Despite this bedrock law, Defendants place numerous exhibits on their exhibit list relating to not only the commercial products of the inventors of the patent-in-suit, but also of LML Patent Corp.'s sister company, LML Payment Systems Corporation, DTX 11, DTX 17-18, DTX 34, DTX 89-90, DTX 109-11, DTX 191, DTX 280, DTX 292, DTX 293, DTX 316, DTX 322-24, DTX 326-28, DTX 333, DTX 337-46, DTX 348, DTX 355, DTX 358, DTX 359, DTX 361, DTX 380-84, DTX 387-88, and DTX 633. LML is not seeking lost profits in this case, and thus, the commercial products of the inventors and LML are irrelevant and could only serve to confuse the jury. Thus, Defendants should be

precluded from making comparisons to LML's commercial embodiment, specifically to exhibits DTX 11, DTX 17-18, DTX 34, DTX 89-90, DTX 109-11, DTX 191, DTX 280, DTX 292, DTX 293, DTX 316, DTX 322-24, DTX 326-28, DTX 333, DTX 337-46, DTX 348, DTX 355, DTX 358, DTX 359, DTX 361, DTX 380-84, DTX 387-88, and DTX 633, for infringement purposes.

**5.     Defendants should be precluded from offering evidence or argument relating to an investigation by the British Columbia Securities Commission unrelated to any issue in this case.**

During Discovery, Defendants' continuously sought information regarding an investigation by the British Columbia Securities Commission ("BCSC") involving Globe-Tel Communications Limited—a company with no relation to this litigation—of which LML's current President and CEO, Patrick Gaines, was a shareholder.  While Mr. Gaines was interviewed during this investigation, he was never implicated in any wrongdoing.  This investigation, in its entirety, simply has no relevance to this case and would be unduly prejudicial to LML if presented to the jury.  *See* Fed. R. Evid. 401, 402, 403.  Even further though, not only was Mr. Gaines not implicated in any wrongdoing, Mr. Gaines was not convicted of any wrongdoing (nor has Mr. Gaines ever been convicted of any crime of dishonesty or false statement)—thus, the BCSC investigation and Mr. Gaines' prior history are not relevant pursuant to Rule 609.  *See* Fed. R. Evid. 609.  As such, Defendants should be precluded from introducing any evidence or argument relating to this securities investigation or other prior history of Mr. Gaines at trial.

- 7 -

**6.     Defendants should be precluded from offering any argument or evidence directed to an invalidity contention related to a system developed by Signature Guarantee Systems.**

During discovery, Defendants argued that a single document from a company called Signature Guarantee Systems (SGS), a Private Placement Memorandum for CheckCash Associates, Ltd. dated Sept. 2, 1983—DTX 1 and DTX 200[5], was allegedly invalidating prior art to the '988 patent.  In addition, during expert discovery, Defendants' expert on issues relating to invalidity, David Kurrasch, similarly alleged that this single SGS document was invalidating prior art.  Throughout discovery, Defendants never raised and maintained any contention that an alleged system or product of SGS constituted prior art.[6]  Moreover, Defendants' invalidity expert provided no opinion regarding the SGS system.   In fact, Defendants and their expert's contentions with respect to SGS related exclusively to two documents -- DTX 1 and DTX 200 -- nothing else.  Yet, Defendants now identify on their exhibit list numerous documents, other than DTX 1 and DTX 200, relating to a system allegedly developed by SGS.  *See* DTX 91-92, DTX 94, DTX 97-107, DTX 113, DTX 208, DTX 394-96, DTX 397 (compilation of multiple documents including documents related to the SGS system), DTX 398-403.  Defendants have never provided any detailed description of a defense regarding a system allegedly developed by SGS, and thus, they should not now be permitted to develop new theories "on-the-go" and on the eve of trial.  Moreover, these documents can only serve to confuse the jury as there is significant danger that the jury will look at these other documents in determining whether DTX 1 and DTX

---

[5] DTX 1 and DTX 200 are duplicative exhibits on Defendants' exhibit list.

[6] Indeed, the testimony of SGS witnesses during discovery revealed that the SGS system was never publicly disclosed.

200 are invalidating prior art.[7]  Thus, DTX 91-92, DTX 94, DTX 97-107, DTX 113, DTX 208,

DTX 394-96, DTX 397 (compilation of multiple documents including documents related to the

SGS system), and DTX 398-403 should be stricken and Defendants should be precluded from

offering any argument or evidence related to the SGS system at trial.

**7.　　TeleCheck should not be permitted to call Frederick Kim, Ronald Laurie, or Randy Templeton as witnesses at trial.**

Throughout discovery in this case, TeleCheck did not identify Randy Templeton as a

person with any knowledge relating to this case—that is, until the close of business on the last

day of fact discovery.  Despite this belated disclosure, TeleCheck now seeks to call Mr.

Templeton as a witness at trial.  LML relied on Mr. Templeton's absence from TeleCheck's

initial disclosures in making the decision not to depose him (or others that may have contradicted

Mr. Templeton's testimony) during discovery and would be prejudiced if he were permitted to

testify at trial.

TeleCheck also seeks to call two individuals who provided opinions of counsel to

TeleCheck—Frederick Kim and Ronald Laurie.  However, the only relevant inquiry with respect

to LML's allegation of willful infringement is TeleCheck's state of mind— Mssrs. Kim and

Laurie can provide no relevant evidence of TeleCheck's state of mind and can only serve to

unduly prejudice LML.  In fact, during discovery, TeleCheck agreed that Mssrs. Kim and

Laurie's testimony was *irrelevant*.  LML issued document and deposition subpoenas to both of

these individuals in May 2005.  In response, TeleCheck demanded that LML withdraw the

subpoenas because Mssrs. Kim and Laurie's testimony did not go to TeleCheck state of mind

---

[7] DTX 1 and DTX 200 do not even constitute prior art as on their face, they are "confidential" and thus, not publicly available.

and therefore, was irrelevant.  On TeleCheck's representation, LML agreed to withdraw the subpoenas.  TeleCheck later recanted its relevance objection (after LML withdrew the subpoenas), insisted that Mssrs. Kim and Laurie's testimony was relevant, and identified Mr. Kim and Mr. Laurie on their initial witness list.  Given the admitted lack of relevance of these witnesses' testimony, and the undue prejudice LML would incur if these individuals were allowed to testify, TeleCheck should be precluded from calling Mssrs. Kim or Laurie at trial.

**8.    Defendants should be precluded from offering any argument or evidence directed to due diligence opinions of counsel related to the '988 patent (DTX 198, DTX 334, DTX 362-68, and DTX 832).**

Defendants' exhibit list contains multiple exhibits relating to two opinion letters pertaining to the '988 patent produced by LML, including DTX 198, DTX 334, DTX 362-68, and DTX 832. The first of these opinion letters (DTX 362-68) was provided from one counsel to another counsel as part of a due diligence effort prior to LML's purchase of the '988 patent and provides differing worse-case scenarios with respect to the validity of the '988 patent under different claim constructions.  LML subsequently provided the opinion to another investor as part of another company's due diligence of LML in a potential merger and acquisition.  Despite Defendants' claims to the contrary, LML never adopted this opinion as its own, nor is it a business record—it is hearsay.  *See* Fed. R. Evid. 801.  The due diligence opinion is also irrelevant to any issue at trial and unduly prejudicial to LML as it discusses and relies on opinions regarding claim construction—an issue that will have already been decided at trial.  *See* Fed. R. Evid. 401, 402.  Finally, the issue of invalidity should be decided by the jury based on the content of prior art and the law and not prejudicially influenced by the opinion of a third party attorney.. *See* Fed. R. Evid. 403.

The second of the opinion letters was provided by counsel for the inventors of the '988 patent to TeleCheck during licensing discussions.  *See* DTX 198, DTX 334, DTX 832.  The letter

distinguishes certain prior art references from the '988 patent.  For the same reasons stated above with respect to the first opinion letter, this letter is also hearsay, irrelevant to any issue at trial, and unduly prejudicial to LML.

Thus, Defendants should not be permitted to argue or offer any evidence at trial related to either of these letters.[8]

**9.     ECHO and Nova should be precluded from offering any argument or evidence related to tests performed by their expert using untimely produced foreign checks (DTX 694).**

In their summary judgment briefing, ECHO and Nova relied on tests involving foreign checks that were performed by their expert Stephen Schutze to support their non-infringement position that the MICR readers used with their products cannot read foreign checks.  However, the foreign checks that were given to Mr. Schutze by ECHO and Nova (DTX 694) to perform his alleged "tests" were not produced to LML until September 23, 2005—well after the close of document production, after the close of fact discovery, and after all expert reports had been submitted.  Defendants' delinquent production denied LML the opportunity to retain its own expert to address this issue and perform tests of its own on such checks.  Thus, Defendants should be precluded from offering DTX 694 at trial as well as any argument or evidence related to the delinquent checks, Mr. Schutze's tests on such checks, and any opinions related thereto.[9]

---

[8] LML consistently objected to Defendants' reliance on these documents throughout its summary judgment briefing.

[9] LML objected to ECHO's and Nova's reliance on these foreign checks in its Memoranda in Opposition to ECHO and Nova's Motions for Summary Judgment  (D.I. 424 at 30-31 (ECHO), D.I. 429 at 27-28 (Nova)) and in its Replies to its Motions for Summary Judgment Nos. 2 and 3 (D.I. 491 at 7-8 (ECHO), D.I. 494 at 3-4 (Nova)).

**10.      Defendants should not be permitted to reference any unasserted patents or claims in the presence of the jury at trial.**

Throughout this case, LML has sought to narrow the issues for trial.  In that vein, LML has dismissed two patents (the '528 and '366 patents) in exchange for Defendants dismissing particular defenses, and has further limited the number of claims of the '988 patent it is asserting at trial to claims 1, 2, 4, 5, 6, 9, 10, 11, 14, 16, and 18.  Defendants apparently are attempting to capitalize on this effort to streamline by offering into evidence a letter from LML's litigation counsel dropping certain claims of the '988 patent.  *See* DTX 215.  Defendants' attempt to offer this letter into evidence is not only inappropriate, but the letter itself is hearsay, irrelevant, and unduly prejudicial to LML.  *See* Fed. R. Evid. 401, 402, 403, 801.  Defendants should be precluded from offering DTX 215 into evidence, and further be precluded from referencing any claim or patent not asserted at trial.

**11.      Mr. Kurrasch should be precluded from testifying about invalidity opinions not set forth in his expert report.**

Defendants' Answering Brief in Opposition  to LML's Motion for Summary Judgment No. 5 (D.I. 438) included a declaration from David Kurrasch, Defendants' expert on issues of invalidity, which set forth pages of opinions with respect to Defendants' written description, new matter, enablement and indefiniteness defenses that had not been previously disclosed, in violation of Fed. R. Civ. P. 26(a)(2)(B).  Mr. Kurrasch only provided cursory opinions on these defenses in his expert report and attempted to expand on his opinions in his declaration.  Mr.

Kurrasch should not be permitted to testify at trial on any of the "new" opinions set forth in his declaration that were not previously disclosed in his expert report.[10]

**12.  Mr. Kurrasch should be precluded from offering opinions at trial that were untimely disclosed.**

Defendants' expert report regarding invalidity was due on August 12, 2005 pursuant to this Court's Amended Scheduling Order.  This Court also set September 6, 2005 as the deadline for supplementation of that report, but supplement was only allowed to the extent it was necessary as a result of the deposition of Robert Hills.  However, Mr. Kurrasch, Defendants' expert on issues of validity and TeleCheck's expert on issues of infringement, filed a supplemental expert report on September 6, 2005, that contained new, previously undisclosed invalidity contentions based on an ECC Pilot Guide and the combination of U.S. Patent No. 5,175,682 with the 1990 ACH Rules that had no connection with the Hills deposition.  Mr. Kurrasch then filed a Second Supplemental Report on September 28, 2005 containing new, previously undisclosed invalidity opinions regarding the 1990 ACH Rules and NACHA Operating Guidelines—a document that had never even been produced to LML until Mr. Kurrasch attached it to this report.  Mr. Kurrasch filed a Third Supplemental Report on December 16, 2005 containing new, previously undisclosed opinions relating to claim construction and indefiniteness.  This report was filed over two months after LML had disclosed its claim constructions to Defendants.  LML has moved to strike all of Mr. Kurrasch's untimely opinions (D.I. 263, 284, 538) and he should not be permitted to offer any of these "new" opinions at trial.

---

[10] LML objected to these new opinions in detail in its Reply Memorandum in Support of its Motion for Summary Judgment No. 5.  (D.I. 498 at 2-3 (written description), 7 n.10 (new matter), 9-10 (enablement), 19-20 (indefiniteness)).  The impacted paragraphs of his declaration are ¶¶ 14-18, 20-22, 25-28.

**13.     Defendants should be precluded from offering evidence or argument relating to inequitable conduct.**

This Court has observed that "[a] finding of inequitable conduct is 'an equitable determination' and, therefore, 'is committed to the discretion of the trial court.'" *Syngenta Seeds, Inc. v. Monsanto Co.*, 404 F. Supp. 2d 584, 590 (D. Del. 1995) (quoting *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1261 (Fed. Cir. 2001)); *see also PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225   F.3d 1315, 1318 (Fed. Cir.  2000) ("The defense of inequitable conduct is entirely equitable in nature, and thus not an issue for a jury to decide."). Because inequitable conduct is an issue for the Court, argument and evidence on this issue are irrelevant to the issues being considered by the jury and could confuse and mislead the jury on other issues properly before them. Despite this precedent, Defendants continue to argue that inequitable conduct should be tried before the jury.  Thus, Defendants should be precluded from offering any evidence of inequitable conduct before the jury.