**EXHIBIT 13**
**Pretrial Order**
**Civil Action No. 04-858 (SLR)**

**DEFENDANTS' STATEMENT OF MISCELLANEOUS ISSUES**

Pursuant to the Court's March 23, 2005 Order, defendants provide the following list of evidentiary issues to be addressed by the Court at the pretrial conference or during trial. Defendants respectfully reserve the right to supplement this list up to and during trial as warranted.

**I.     Evidentiary Issue No. 1: Plaintiff Should Be Precluded From Introducing or Referring to PTX 0831 at Trial**

PTX 0831 is only relevant, if anything, to issues of willfulness as they relate to TeleCheck, and should be precluded from any trial where willfulness is bifurcated.

Even if willfulness is not bifurcated, LML should be precluded at trial from offering into evidence or otherwise referring to plaintiff's proposed exhibit PTX 0831, a set of handwritten notes from the files of former First Data Corporation employee Cynthia Somerville. Those notes were apparently taken during the course of a 1997 meeting with counsel, more than a year before the commercial roll-out of the accused ECA Service. The notes contain sentence fragments that read "high likelihood of infringement" and "claim 1 – broad." Since these notes were taken in early 1997, however, they cannot reflect comments regarding the accused ECA Service. The notes were generated over a year before the commercial launch of the ECA service and even before an earlier ECA pilot program.

Moreover, without further context, the meaning of the notes is unclear. They provide no indication as to whether the author believed that an unnamed TeleCheck service was generally likely to infringe, or whether there might be infringement *only under the broad construction offered by Mr. Hills and his attorney*s (a construction rejected by TeleCheck from the outset).

Ms. Somerville, a third party and non-employee, was not deposed during the course of discovery in this action, and no other deponent authenticated these notes or testified as to the context in which they were made. Any purported probative value is substantially outweighed by the risk of prejudice, and PTX 0831 should be excluded.

### II.     Evidentiary Issue No. 2:  Plaintiff Should Be Precluded From Introducing or Referring to PTX 293, 294, and 304 at Trial

PTX 293, 294 and 304 are only relevant, if anything, to issues of willfulness as they relate to TeleCheck, and should be precluded from any trial where willfulness is bifurcated.

Even if willfulness is not bifurcated, LML should be precluded at trial from offering into evidence or otherwise referring to these proposed exhibits, which reflect handwritten notes from the files of former First Data Corporation employee Cynthia Somerville. The notes contain information regarding various options available to TeleCheck when faced with Mr. Hills accusations of infringement. Each also contains inflammatory comments of little to no probative value in assessing relevant issues, for example a sentence in PTX 0304 that reads "if he accuses us of infringement (hasn't yet) we cd file DJ action & settle on theory that we get better deal by settling litigation." Without further context, the meaning of the notes is unclear.

There is no indication whether the author of the notes believed any of the various options to be viable courses of action or simply possible courses of action suggested by counsel, and there is no further evidence to indicate that TeleCheck adopted any such reasoning in its dealings with Mr. Hills and LML regarding the patent-in-suit. Ms. Somerville, a third party and non-employee, was not deposed during the course of discovery in this action, and no other deponent authenticated these notes or testified as to the context in which they were made. Any purported probative value of this document is substantially outweighed by the risk of prejudice, and PTX 293, 294 and 304 should be excluded under FRE 402 and 403 accordingly.

### III. Evidentiary Issue No. 3: LML Should Be Precluded From Offering Any Evidence or Argument Relating to Infringement Based on the Doctrine of Equivalents where Its Expert Provided No Such Analysis

LML has offered no evidence or analysis to support a doctrine of equivalents argument as to certain limitations of the claims in suit and should thus be precluded from presenting such evidence at trial. LML's interrogatory responses include no substantive analysis under the doctrine of equivalents. Likewise, while LML's expert includes "opinions" under the doctrine of equivalents, his report contains only bare, conclusory statements that, with respect to each asserted claim, the accused services perform the substantially the same function in substantially the same manner to achieve substantially the same result as the claim limitation not literally present. LML's expert report fails to contain any element-by-element substantive analysis regarding equivalents that may exist with respect to asserted claim 1(a)(2), (3), (4) and (5), claim 4, claim 8(a)(4), (5), (6), claim 9(a)(2), (3), (4), (6), claim 10 or claim 16.[1]

Because LML's expert performs no analysis to support his conclusory statements that the accused services infringe any of the asserted claims under the doctrine of equivalents, LML should be precluded from offering any evidence to that effect, including expert testimony from Mr. Tinkel, at trial.

### IV. Evidentiary Issue No. 4: LML Should Be Precluded From Offering Any Evidence or Argument Relating to Legal Theories Not Addressed in the Pretrial Order and Exhibits Thereto, the Verdict Forms, or Jury Instructions

LML should also be precluded at trial from offering any evidence or argument relating to legal theories not addressed in the pretrial order and exhibits thereto, the proposed verdict forms, or the proposed jury instructions. If a legal theory is not addressed in any of the aforementioned

---

[1] There may be other bases for precluding equivalence on certain claim elements regarding which the parties are still meeting and conferring. Several of these bases are set forth in Defendants' motions for summary judgment of non-infringement.

3

documents, it would be unduly prejudicial and unfair to the defendants were LML permitted to offer any such evidence or make any such argument at trial.

In particular, LML should be precluded at trial from offering any evidence or argument relating to allegations of contributory infringement or inducement to infringe.  Since filing its complaint, LML has done nothing whatsoever to develop its indirect infringement allegations and has offered no evidence or expert testimony to substantiate those baseless allegations.  LML's interrogatory responses include no analysis of indirect infringement.  Likewise, LML's expert was silent with respect to the issue of indirect infringement in both his expert report and his deposition.  Accordingly, any evidence and argument regarding LML's indirect infringement allegations should be precluded at trial

**V.     Evidentiary Issue No. 5:  LML Should Be Precluded From Introducing Its Proposed "Green Sheet" Articles at Trial**

LML should be precluded from offering into evidence at trial proposed exhibits PTX 0262 and PTX 0664-68, all articles taken from a website called the Greensheet.com.  These articles were all ostensibly authored by Mr. Paul Green, the proprietor of that website.  Mr. Green was not deposed during discovery in this action.  It is defendants' understanding, after speaking informally to Mr. Green, that the articles LML seeks to admit into evidence as PTX 0262 and PTX 0664-68 were written based solely on information provided to Mr. Green by LML itself.  Those articles are nothing more than LML self-promotional pieces and have no probative value.  Because no foundation has been laid or authentication provided for these six proposed plaintiffs' exhibits, and because they have little or no probative value, LML should be precluded from offering PTX 0262 and PTX 0664-68 into evidence at trial or otherwise referencing these exhibits during the trial proceedings.

**VI.     Evidentiary Issue No. 6:  Plaintiff Should Be Precluded From Introducing or Referring to PTX 766, PTX 767, and PTX 768 at Trial**

LML should be precluded from offering into evidence at trial proposed exhibits PTX 766, PTX 767, and PTX 768 (or any other emails in the string for that matter), as the documents disclose the client's search for documents and/or information pursuant to instructions from ECHO's litigation counsel, and were inadvertently produced.

The document is a string of emails among ECHO management, evidencing the internal enquiry undertaken by ECHO personnel in response to a request from its counsel for information. Aside from evidencing privileged attorney-client and attorney work-product communications, the documents' prejudicial effect outweighs any asserted probative value. LML has already received the fruits of the search and has had an opportunity to examine the witness who generated the transaction count information to explore the manner in which it was generated. The subject documents at best will confuse the issues for the jury; likely lead to undue prejudice to ECHO; and disclose privileged attorney-client communications and attorney work-product.

**VII.    Evidentiary Issue No. 7:  LML Should Be Precluded from Relying on Evidence Regarding Withdrawn Patents (PTX 002 and 003) in Support of Validity or Enforceability of the Asserted Claims**

LML should not be entitled to submit evidence regarding the claims of patents withdrawn from this suit (e.g., PTX 002 and 003), as well as their prosecution histories (e.g., PTX 005 and 006), and related documents, in support of any argument that the asserted claims of the '988 patent are not invalid, or in support of any argument that certain prior art would have been material to prosecution of the patent in suit. The later two patents, PTX 002 and 003, are unrelated patents and have different claims than those in suit, and any such argument would confuse the jury and be legally irrelevant.

**VIII. Evidentiary Issue No. 8: LML Should Be Precluded from Relying on the POP Guidelines in Support of Any Argument Regarding the Limitation "without using the check as a negotiable instrument" and Corresponding Limitations**

LML should be precluded from offering evidence of the NACHA "POP" rules and guidelines (e.g., PTX 193-199) and related documents (e.g., PTX 493 and 494) in support of any assertion that Defendants' accused services meet the limitation "without using the check as a negotiable instrument." As set forth in all parties claim construction briefing, this limitation and the corresponding limitations in other independent claims have particularized meaning within the context of the '988 patent to one of ordinary skill in the art at the time of the invention. The original application leading to the '988 patent was filed in 1992, and these limitations were added in 1994.

The NACHA POP rules were not even adopted as interim rules until 1999, and not fully adopted until 2000, years after the claimed invention of the '988 patent. The associated guidelines regarding POP rules, also adopted at these late dates, include a discussion of which regulatory scheme would cover POP transactions. This discussion includes statements that "the check is not accepted by the merchant as a negotiable instrument" and "the check is not negotiated by the merchant or accepted into the check collection system." These statements are different than the express language of the '988 patent claims, as well as the particularized meaning of the phrase reflected in the parties' claim constructions, but are similar enough that a jury would be easily confused. Any probative value of such evidence regarding the limitation "without using the check as a negotiable instrument" is substantially outweighed by the threat of prejudice and jury confusion. LML should be precluded from relying on such evidence for that purpose.