# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LML PATENT CORP. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.        04-858-SLR |
| vs. | ) | |
| | ) | Judge Sue L. Robinson |
| TELECHECK SERVICES, INC. | ) | |
| ELECTRONIC CLEARING HOUSE, INC., | ) | |
| XPRESSCHEX, INC., AND | ) | |
| NOVA INFORMATION SYSTEMS, INC. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

# PROPOSED FINAL JURY INSTRUCTIONS

## RED = LML'S PROPOSED LANGUAGE

## BLUE = DEFENDANTS' PROPOSED LANGUAGE

## BLACK = AGREED UPON LANGUAGE

# TABLE OF CONTENTS

GENERAL INSTRUCTIONS ................................................................................................1
    1.1     INTRODUCTION ............................................................................................1
    1.2     JUROR'S DUTIES ...........................................................................................2
    1.3     BURDENS OF PROOF ....................................................................................3
    1.4     EVIDENCE DEFINED .....................................................................................4
    1.5     DIRECT AND CIRCUMSTANTIAL EVIDENCE ........................................5
    1.6     CONSIDERATION OF EVIDENCE ..............................................................6
    1.7     CREDIBILITY OF WITNESSES ....................................................................7
    1.8     NUMBER OF WITNESSES ...........................................................................9
    1.9     EXPERT WITNESSES ..................................................................................10
    1.10    DEPOSITION TESTIMONY .......................................................................11

THE PARTIES AND THEIR CONTENTIONS .......................................................12
    2.1     THE PARTIES................................................................................................12
    2.2     PLAINTIFF'S CONTENTIONS ...................................................................13
    2.3     DEFENDANTS' CONTENTIONS ...............................................................15

INFRINGEMENT..........................................................................................................18
    3.1     THE ASSERTED CLAIMS ..........................................................................18
    3.2     DEPENDENT AND INDEPENDENT CLAIMS ..........................................19
    3.3     OPEN ENDED OR "COMPRISING" CLAIMS...........................................20
    3.4     CONSTRUCTION OF CLAIMS ..................................................................21
    3.5     PATENT INFRINGEMENT GENERALLY .................................................22
    3.6     LITERAL INFRINGEMENT .........................................................................23
    3.7     INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS .................25
    3.8     WILLFUL INFRINGEMENT .......................................................................27

VALIDITY ......................................................................................................................28
    4.1     AFFIRMATIVE DEFENSE OF INVALIDITY GENERALLY...........................28
    4.2     PRIOR ART....................................................................................................30
    4.3     EFFECTIVE PATENT APPLICATION DATE ...................................................31
    4.4     ANTICIPATION ...........................................................................................34
    4.4     ANTICIPATION BY PRINTED PUBLICATION OR A PRIOR PATENT........36
    4.5     ON-SALE BAR ..............................................................................................37
    4.6     ON-SALE BAR - COMMERCIAL OFFER FOR SALE .....................................39
    4.7     ON-SALE BAR - EXPERIMENTAL USE EXCEPTION ...................................41
    4.8     OBVIOUSNESS ............................................................................................44
    4.9     OBVIOUSNESS - SCOPE AND CONTENT OF THE PRIOR ART .................45
    4.10    OBVIOUSNESS - DIFFERENCES OVER THE PRIOR ART..........................46
    4.11    OBVIOUSNESS - LEVEL OF ORDINARY SKILL .........................................48
    4.12    OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS
             (SECONDARY CONSIDERATIONS)................................................................49
    4.13    OBVIOUSNESS - HINDSIGHT ..................................................................50
    4.14    OBVIOUS TO TRY .......................................................................................51

4.15    INDEPENDENT INVENTION BY OTHERS.......................................................52
4.16    ENABLEMENT ..................................................................................................53
4.17    WRITTEN DESCRIPTION.................................................................................55
4.18    PRIOR INVENTION............................................................................................56
4.19    INDEFINITENESS...............................................................................................58

DAMAGES.......................................................................................................................60
5.1    COMPENSATORY DAMAGES IN GENERAL .................................................60
5.2    FORESEEABIILTY .............................................................................................61
5.3    REASONABLE CERTAINTY .............................................................................62
5.4    REASONABLE ROYALTY AS A MEASURE OF DAMAGES .......................63
5.5    THE HYPOTHETICAL NEGOTIATION .........................................................65
5.6    FACTORS FOR DETERMINING REASONABLE ROYALTY .......................66
5.7    CLOSING STATEMENT - DAMAGES .............................................................68
5.8    CURATIVE INSTRUCTION..............................................................................69

DELIBERATION AND VERDICT .................................................................................70
6.1    INTRODUCTION................................................................................................70
6.2    UNANIMOUS VERDICT....................................................................................71
6.3    DUTY TO DELIBERATE ...................................................................................73
6.4    COURT HAS NO OPINION................................................................................75

## GENERAL INSTRUCTIONS

### 1.1    INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. I will explain the positions of the parties and the law you will apply in this case. I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).

## 1.2     JUROR'S DUTIES

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on each of the issues presented.  It is my job to instruct you about the law, and about what the claims of the patents mean.  You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

## 1.3    BURDENS OF PROOF

This is a civil case in which LML is charging Defendants with patent infringement and

LML is seeking damages for the alleged infringement.  LML has the burden of proving patent

infringement and proving its damages, if any, by what is called a preponderance of the evidence.

That means LML has to produce evidence which, when considered in light of all of the facts,

leads you to believe that what LML claims is more likely true than not.  To put it differently, if

you were to put LML's and Defendants' evidence on the opposite sides of a scale, the evidence

supporting LML's claims would have to make the scale tip somewhat to LML's side in order for

LML to meet its burden.  LML is also charging TeleCheck, ECHO, and Nova with willful

infringement.  LML has the burden of proving willful infringement by clear and convincing

evidence.[1]

In this case, TeleCheck, ECHO, and Nova contend that the asserted claims of the patent-

in-suit are invalid.  Since a patent is presumed to be valid, Defendants have the burden of

proving by clear and convincing evidence that an asserted claim is invalid.  Clear and convincing

evidence is evidence that produces an abiding conviction that the truth of a factual contention is

highly probable.  Proof by clear and convincing evidence is a higher burden than proof by a

preponderance of the evidence.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D.
Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-
SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United
States District Court for the District of Delaware, 2004.

---

[1] Defendants disagree that the doctrine of equivalents, willfulness, financial issues, and damages
should be included in these jury instructions.  Nevertheless, Defendants have inserted
comments for these issues in the event such instructions are included.

## 1.4    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way. The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. None of my comments or questions are evidence. The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to or identify evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked or I may have struck things from the record. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

Based on: Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

## 1.5    DIRECT AND CIRCUMSTANTIAL EVIDENCE

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact. If a witness testified that he or she saw it raining outside, and you believed him or her, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

Based on: Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

## 1.6    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of

your everyday experience with people and events, and give it whatever weight you believe it

deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you

are free to reach that conclusion.

Based on: Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D.
Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-
SLR (D. Del. Jan. 20, 2006).

## 1.7     CREDIBILITY OF WITNESSES

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence which tends to show whether he or she is worthy of belief. Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having inaccurate recollection of these matters. Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, the testimony of a witness may be discredited or impeached by showing that the witness has made an incorrect statement or has given a prior statement or testimony which is inconsistent with his or her testimony at this trial. It is the province of the jury to determine whether an incorrect statement or prior inconsistent statement discredits the witness's testimony.

But bear in mind that an innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it

pertains to a matter of importance or to an unimportant detail, and whether the discrepancy

results from innocent error or intentional falsehood.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

## 1.8     NUMBER OF WITNESSES

One more point about the witnesses.  Sometimes jurors wonder if the number of

witnesses who testified makes any difference.  Do not make any decisions based only on the

number of witnesses who testified.  What is more important is how believable the witnesses

were, and how much weight you think their testimony deserves.  Concentrate on that, not the

numbers.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D.
Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-
SLR (D. Del. Jan. 20, 2006).

## 1.9     EXPERT WITNESSES

When knowledge of technical or financial subject matter might be helpful to the jury, a person who has special training or experience in that technical or financial field - he or she is called an expert witness - is permitted to state his or her opinion on those technical or financial matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

## 1.10    DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you through depositions that were read into evidence or played on videotape.  This testimony is entitled to the same consideration you would give it had the witness personally appeared in court.  Like the testimony of a live witness, the statements made in deposition are made under oath and are considered evidence that may be used to prove particular facts.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).

## THE PARTIES AND THEIR CONTENTIONS

### 2.1    THE PARTIES

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

Plaintiff is LML Patent Corp., which I will refer to as "LML."

Defendants are TeleCheck Services, Inc., which I will refer to as "TeleCheck," Electronic Clearing House, Inc. and Xpresschex, Inc. which I will collectively refer to as "ECHO," and Nova Information Systems, Inc., which I will refer to as "Nova."

LML is the current owner of United States Patent No. 5,484,988, which I will refer to as "the '988 patent" or "the patent-in-suit. The '988 patent relates generally to electronic check conversion at the point of sale. As the owner of the '988 patent, LML has the right to exclude others from making, using selling, offering for sale and importing any electronic check conversion product, system or service that is covered by the '988 patent. TeleCheck, ECHO, and Nova have each made, marketed, sold, offered for sale, and used point of sale, electronic check conversion systems and services.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).

## 2.2    PLAINTIFF'S CONTENTIONS

LML contends that TeleCheck, ECHO, and Nova have each infringed claims 1, 2, 4, 5, 6, 9, 10, 11, 14, 16, and 18 of the '988 patent by making, using, selling or offering for sale point of sale, electronic check conversion systems and services. LML further contends that each of the Defendants' infringement of the '988 patent was willful. LML also contends that, as a result of the infringement of the '988 patent by Defendants, Defendants are liable to LML for damages. Specifically, LML contends that it is entitled to damages in the form of a reasonable royalty for each electronic check conversion transaction conducted by each Defendant.

LML contends that TeleCheck's Electronic Check Acceptance service infringes one or more of the asserted claims. The Electronic Check Acceptance service may be referred to as "TeleCheck's Accused Service."

LML contends that the following ECHO services infringe one or more of the asserted claims:

- XpressConversion

- CHEXpedite Electronic Payments Solution

- ECHO's VISA POS Check Service.

These products may be referred to together as "ECHO's Accused Services."

LML contends that Nova's Electronic Check Service infringes one or more of the asserted claims. The Electronic Check Service may be referred to as "Nova's Accused Service."

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

## 2.3     DEFENDANTS' CONTENTIONS[2]

TeleCheck, ECHO, and Nova each contend that their accused services do not infringe any of the asserted claims of the '988 patent.  TeleCheck, ECHO, and Nova also contend that the asserted claims of the '988 patent are invalid because:

(1) each asserted claim of the '988 patent is anticipated by the prior art;

(2) each asserted claim of the '988 patent would have been obvious to a person of ordinary skill in the art as of the date the invention was made based on one or a combination of references;

(3) the '988 patent lacks an enabling disclosure for each asserted claim;

(4) the '988 patent contains an inadequate written description of the invention of each asserted claim;

(5) each asserted claim of the '988 patent is indefinite;

(6) the invention of each asserted claim of the '988 patent was invented by others;

(7) each asserted claim of the '988 patent contains new matter;

(8) each asserted claim of the '988 patent is subject to the on-sale bar.

---

[2] LML disagrees that indefiniteness, prior invention, and on-sale bar are issues that should be included in these jury instructions.  Nevertheless, LML has inserted comments on these issues throughout these instruction should the Court decide they are properly included.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).

## 2.4     SUMMARY OF PATENT ISSUES

In this case, you must decide several things according to the instructions that I shall give you.  They include:

1.   Whether LML has proven by a preponderance of the evidence that TeleCheck, ECHO, and Nova have each infringed any asserted claims of its '988 patent, either literally or under the doctrine of equivalents?

2.   Whether LML has proven by clear and convincing evidence that each of TeleCheck's, ECHO's, and Nova's alleged infringement was willful?

3.   Whether TeleCheck, ECHO, and Nova have proven by clear and convincing evidence that each and every asserted claim of LML's '988 patent is invalid?

4.   The amount of damages LML is entitled to recover as compensation for TeleCheck's, ECHO's and Nova's alleged infringement, if any.

Do not make any decisions based on the number of claims LML has asserted.  What is important is whether LML has proven that the accused services infringe any of the asserted claims and whether TeleCheck, ECHO, and Nova have proven that any of the asserted claims are invalid.  Concentrate on that, not on the number of claims.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); *Boston Scientific Corp. v. Cordis Corp.*, D. Del., C.A. No. 03-027-SLR (June 30, 2005).

**INFRINGEMENT**

**3.1    THE ASSERTED CLAIMS**

Before you can decide whether or not any of the Defendants have infringed the '988 patent, you will have to understand the patent "claims." The patent claims are the numbered paragraphs at the end of the patent.

The purpose of the claims is to provide notice to the public of what a patent covers and does not cover. The claims are intended to describe, in words, the boundaries of the invention described and illustrated in the patent. The claims define the patent owner's property rights. Infringement is the act of trespassing on those rights. Only the claims of the patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of the patent can be infringed.

In addition, the claims of a patent do not have to cover every feature of the patented invention. Each claim is a separate statement of the patented invention and, therefore, each of the asserted claims must be considered individually. To show infringement of a particular patent, LML needs only to establish that one of the asserted claims in that patent has been infringed.

There are a number of claims involved here. LML asserts that each Defendant infringes claims 1, 2, 4, 5, 6, 9, 10, 11, 14, 16, and 18 of the '988 patent. Claim 1 begins at column 11, line 36 of LML's '988 patent which is PTX1 in evidence. These claims shall be referred to hereafter as "the asserted claims."

Based on: Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).

## 3.2     DEPENDENT AND INDEPENDENT CLAIMS

There are two different types of claims in a patent.  The first type is called an "independent" claim.  An independent claim does not refer to any other claim of the patent.  An independent claim is read alone to determine its scope.

The second type, a "dependent" claim, refers to at least one other claim in the patent and, thus, incorporates whatever that other claim says.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, claim 1 of the '988 patent is an "independent" claim.  You know this because claim 1 does not refer to any other claim.  Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

On the other hand, claim 2 of the '988 patent is a" dependent" claim.  If you look at claim 2, it refers to claim 1.  Therefore, to determine what claim 2 covers, you must consider both the words of claims 1 and 2 together.

If you find that a claim to which a dependent claim refers is not infringed, then you must find that the dependent claim is not infringed.

Some claims of the patents in suit are broader than other claims.  You are not to read limitations or words of a narrower or dependent claim into a broader or independent claim if the broader claim does not explicitly contain the same limitations.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

### 3.3     OPEN ENDED OR "COMPRISING" CLAIMS

Some of the asserted claims of the '988 patent use the transitional term, "comprising." "Comprising" is interpreted the same as "including" or "containing." In patent claims, "comprising" means that the claims are open-ended. As such, the claim is not limited to only what is in the claim.

Based on this explanation, if you find that any of Defendants' accused services includes all of the limitations in any one of the asserted claims of the '988 patent, but also include additional elements, the fact that it may also include additional elements is irrelevant. The presence of additional elements in the accused service does not mean that the service or method of operation does not infringe a patent claim.

Similarly, if you find that the prior art includes all of the limitations in any of the asserted claims that use the term "comprising," the fact that it may also include additional elements is irrelevant.

Based on: Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); *Boston Scientific Corp. v. Cordis Corp.*, D. Del., C.A. No. 03-027-SLR (June 30, 2005).

### 3.4     CONSTRUCTION OF CLAIMS

To decide the questions of infringement and validity, you must first understand what the claims of the patent cover.  It is my duty under the law to define what the patent claims mean.  I have made my determination on the meaning of each asserted claim.  I will now instruct you on the meaning of the asserted claims.  You must use the same meaning for each claim for both your decisions on infringement and your decisions on validity.

You must ignore any different interpretations given to these terms by the witnesses or attorneys.

If I have not provided a specific definition for a given term,  you are to use the ordinary meaning of the term.  I instruct you that the following claim terms have the following definitions:

[[INSERT CLAIM CONSTRUCTION]]

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

### 3.5     PATENT INFRINGEMENT GENERALLY

A patent owner may enforce its right to exclude others from making, using, offering to sell, or selling the patented invention by filing a lawsuit for infringement.  Here, LML, the patent owner, has alleged that each of TeleCheck's, ECHO's, and Nova's accused services infringe each of the asserted claims of the '988 patent.  LML has the burden of proving by a preponderance of the evidence that each Defendant has infringed at least one of the asserted claims.

A company may infringe a patent without knowledge that what it is doing is an infringement of the patent.  A company may also infringe even though, in good faith, it believes that what it is doing is not an infringement of any patent.  Knowledge or intent to infringe is not relevant.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005).

### 3.6    LITERAL INFRINGEMENT

There are two ways in which a patent claim may be infringed. First, a claim may be literally infringed. Second, a claim may be infringed under what is called the "doctrine of equivalents," which I will address shortly.

For an accused service to literally infringe an asserted claim, the subject matter of the claim must be found in the accused service. In other words, an asserted claim is literally infringed if the accused service includes each and every limitation in the patent claim. Literal infringement must be determined with respect to each asserted claim individually by comparing the accused service to each of the asserted claims. If the accused service omits any single limitation recited in a given claim, that service does not literally infringe that claim.

Therefore, in determining whether each of TeleCheck's, ECHO's, and Nova's accused services literally infringe any asserted claim, you must:

First, determine the scope of the asserted claim by reading the claim language, limitation by limitation, as those limitations have been construed by the court or, if they have not been specifically construed, according to their meaning to one of ordinary skill in the art.

Second, compare the accused service to each of the limitations of the asserted claim.

If you find each and every limitation of the asserted claim in TeleCheck's, ECHO's, and Nova's accused services, you must return a verdict of literal infringement as to that claim for that Defendant. If you do not find each and every limitation of the asserted claim in TeleCheck's, ECHO's, and Nova's accused services, you many not return a verdict of literal infringement as to that claim for that Defendant.

You must repeat the above analysis with every asserted claim.

Remember, the question is whether TeleCheck's, ECHO's, and Nova's accused services infringe any of the asserted claims, and not whether the accused services are identical or even similar to a product made by LML. Accordingly, you must be certain to compare each Defendants' accused services with the claims it is alleged to infringe and not with any product made by LML. LML's products are irrelevant to the infringement issues in this case.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).

### 3.7     INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS[3]

If you do not find literal infringement, you may consider infringement under the "doctrine of equivalents."  Under the doctrine of equivalents, an accused service or method can infringe an asserted claim if it includes elements that are identical or equivalent to the limitations of the claim.  Under the patent law, an infringing equivalent is not treated any differently than a service or method that literally infringes the limitations of the asserted claims.

The test to determine equivalence under the doctrine of equivalents is whether the differences between the claim limitation which you have found not to be literally present and the element present in the accused service are insubstantial.  In determining whether the differences are substantial or insubstantial, you may consider whether or not the claim limitation and the element in the accused service perform substantially the same function in substantially the same way to produce substantially the same result.

If you find only insubstantial differences between the claim limitation and the corresponding element in the accused service, then you will have determined that the corresponding element in the accused service is equivalent to the claim limitation.  On the other hand, if you find that the claim limitation and the corresponding element in the accused service have substantial differences, then you will have determined that the corresponding element in the accused service is not equivalent to the claim limitation.

---

[3] The parties agree that they will discuss this jury instruction after the Court's orders on claim construction and motions for summary judgment.

The doctrine of equivalents must be applied to the individual limitations of the claims In this case, the doctrine of equivalents may only be applied to the _____ limitations of the asserted claims, but not to the invention as a whole.  Thus, if you find that a claim limitation the _____ limitations is are not literally infringed, you must compare that claim limitation to the corresponding element in the accused service to determine equivalence.  You must not attempt to compare the entire accused service to the entire claimed invention.

Based on:  Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).

### 3.8    WILLFUL INFRINGEMENT

If you find, on the basis of the evidence and the law as I have explained it that one or more of the Defendants infringes at least one claim of the '988 patent, you must further decide whether or not LML has proven by clear and convincing evidence that such infringement was willful.  Willful infringement is established where LML has proven two things:  first, that the Defendant was aware of the '988 patent; and second, that the Defendant had no reasonable good faith basis for concluding  that it did not infringe the '988 patent or that the '988 patent was invalid.

To determine whether each Defendant acted with a reasonable good faith belief or whether it willfully infringed the '988 patent, you should consider the totality of the circumstances and all the facts.

Based on:  Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).

<u>**VALIDITY**</u>

**4.1    AFFIRMATIVE DEFENSE OF INVALIDITY GENERALLY**

TeleCheck, ECHO, and Nova contend that all of the asserted claims of the '988 patent

are invalid.

The granting of a patent by the Patent Office carries with it the presumption that the

patent is valid.  From issuance of the patent, it is presumed that its subject matter is new, useful,

and constitutes an advance which was not, at the time the invention was made, obvious to one of

ordinary skill in the art.  The law presumes, in the absence of clear and convincing evidence to

the contrary, that the Patent Office acted correctly in issuing the patent.  Nevertheless, once the

validity of a patent has been put in issue, it is the responsibility of the jury to review what the

Patent Office has said or done, consistent with these instructions on the law.

This presumption of validity puts the burden of proving invalidity on Defendants, which

they must prove by clear and convincing evidence.  Each of the asserted claims is presumed

valid independently of the validity of each other claim.

Only a valid patent may be infringed.  For a patent to be valid, the invention claimed in

the patent must be new, useful, and non-obvious.  A patent cannot take away from people their

right to use what was known or what would have been obvious when the invention was made.

The terms "new," "useful," and "non-obvious" have special meanings under the patent laws.  I

will explain these terms to you as we discuss TeleCheck's, ECHO's, and Nova's grounds for

asserting invalidity.

The invention claimed in a patent must also be adequately described.  In return for the

right to exclude others from making, using, selling, or offering for sale the claimed invention, the

- 28-

patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

TeleCheck, ECHO, and Nova have challenged the validity of the asserted claims on a number of grounds.  The Defendants must prove that a patent claim is invalid by the highly probably standard.

I will now explain to you each of the Defendants' grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each claim separately.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004 Fed. Cir. Bar Ass'n, Model Patent Jury Instructions 10.1; *Morton Int'l v. Cardinal Chem. Co.*, 5 F.3d 1464, 1471-72 (Fed. Cir. 1993); *Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988); *DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 427 (Fed. Cir. 1986); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir. 1983).

## 4.2    PRIOR ART[4]

You have heard the term "prior art" used throughout this trial, particularly in connection with the issue of the validity of the '988 patent. The term "prior art" is a legal term of art in the patent law and I will explain this term to you.

Prior art is the legal term used to describe what others had done in the field before the time the invention was made, which is not the same time as when the patent application was filed. Prior art is the general body of knowledge in the public domain. To constitute prior art for the purposes of invalidating a patent, the knowledge must be publicly accessible. TeleCheck, ECHO and Nova have the burden of proving that a reference is publicly accessible by clear and convincing evidence.

Based on: Federal Circuit Bar Association Model Patent Jury Instruction 10.6; 35 U.S.C. § 102; *Lindemann Machinenfabrik GmbH v. American Hoist & Derrick Co.,* 730 F.2d 1452, 1459-60 (Fed. Cir. 1984); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1534 (Fed. Cir. 1983); *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1576 (Fed. Cir. 1996); *Minnesota Mining & Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294, 1306 (Fed. Cir. 2002).

---

[4] TeleCheck, ECHO, and Nova disagree with LML's proposed jury instruction. Defendants present their own version of this instruction immediately following this instruction.

## 4.2     PRIOR ART[5]

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before.  That which came before is referred to as the "prior art."

TeleCheck, ECHO, and Nova are relying on various items of prior art.  TeleCheck, ECHO, Nova, and LML all agree that some references, such as U.S. Patent No. 5,175,682 to Higashiyama, and U.S. Patent Nos. 4,678,896; 4,758,714; and 5,053,607 to Carlson, are prior art, and there is no dispute that these items came before the effective patent application date, which I will explain later.  Other references, such as the SGS CheckMate System and the Manta System references, are in dispute.  For those references that are in dispute, TeleCheck, ECHO, and Nova must prove by clear and convincing evidence that the references fall within one or more of the different categories of prior art recognized by the patent laws.  The categories include:

1.     A public use in the United States more than one year prior to the effective patent application date, where the use is not limited by obligations of secrecy or other restrictions;

2.     A sale or offer for sale in the U.S. more than one year prior to the effective patent application date;

---

[5] LML disagrees with TeleCheck, ECHO, and Nova's proposed jury instruction and LML does not believe all issues presented in this instruction are properly in the case.  LML does not believe that these generic categories of prior art should be listed as Defendants have not disclosed invalidating prior art from each of the categories.  To the extent that the Court is inclined to list prior art, LML believes that only the specific prior art defenses (i.e. references or combinations of references) that Defendants have disclosed should be listed.  LML presents its own version of this instruction immediately preceding this instruction.

3.      Patents issued more than one year prior to the effective patent application date for the patent in suit;

4.      Printed publications having a publication date more than one year prior to the effective patent application date;

5.      Information known or used by others in the U.S. before the invention date;

6.      U.S. patents filed before the effective patent application date regardless of issuance date of the patents.

Based on:  Fed. Cir. Bar Ass'n, Model Patent Jury Instructions 10.6; *Boston Scientific Corp. v. Cordis Corp.*, D. Del., C.A. No. 03-027-SLR (June 30, 2005).

### 4.3    EFFECTIVE PATENT APPLICATION DATE[6]

The parties dispute the effective patent application date, or the "priority date" of the asserted claims of the '988 patent.  TeleCheck, ECHO, and Nova contend that the effective patent application date is June 8, 1994.  LML contends that the effective patent application date is November 13, 1992.

The effective patent application date is the date at which the application provides a sufficient written description of the claimed invention.  To meet the written description requirement, the application does not have to describe the claimed invention in the same words.  Instead, the application only needs to reasonably convey to one skilled in the art that the inventors had possession of the claimed invention.  In deciding the issue, the patent as a whole must be considered.  Drawings alone may provide a written description of an invention.

TeleCheck, ECHO, and Nova must demonstrate by clear and convincing evidence that the asserted claims of the '988 patent in issue are not entitled to LML's asserted effective patent application date.

Based on:  *Boston Scientific Corp. v. Cordis Corp.*, D. Del., C.A. No. 03-027-SLR (June 30, 2005).

---

[6] LML disagrees that priority date is an issue in this case and does not believe this instruction should be included.

## 4.4     ANTICIPATION[7]

TeleCheck, ECHO and Nova contend that the asserted claims of the '988 patent are invalid because the inventions as described in those claims are not new. A person cannot obtain a patent on an invention if someone else has already made the same invention. If someone else has already made the same invention, we say that the invention of the asserted claim is "anticipated" by the prior art. An invention that is anticipated by the prior art is not entitled to patent protection.

In order to prove that a claim is anticipated, all of the limitations of the claim must be found in a single prior art reference or public use by clear and convincing evidence. Although a duplication of the claimed invention that was accidental, or unrecognized, unappreciated and incidental to some other purpose is not an invalidating anticipation, a prior art reference or public use anticipates a claim if it discloses the claimed invention sufficiently that a person of ordinary skill in the art could take its teachings, together with his or her own knowledge of the art, and be in possession of the claimed invention. A prior art reference sufficiently discloses the claimed invention to enable a person of ordinary skill in the art to be in possession of the claimed invention where it describes the invention at a level of detail similar to that in the patent.

A claim also is anticipated if the invention defined in the claim was disclosed in a prior patent application. A patent may be found invalid if the claimed invention was described in a

---

[7] LML's disagrees with this instruction in its entirety and has proposed the anticipation instruction that immediately follows this one.

patent granted on an application as filed by another in the United States before the invention was made by LML in the United States.

You may not combine two or more items of prior art to make out an anticipation. You should, however, take into consideration not only what is expressly disclosed or embodied in the particular item of prior publication, public use, invention, or patent, but also what is inherent as a natural result of the practice of the prior art.

Where the description in a reference is silent about an asserted inherent characteristic, such a gap in a prior art reference may be filled with recourse to other clear and convincing evidence that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill in the field of the invention.

You must determine invalidity with respect to each asserted claim individually.

Based on: *Boston Scientific Corp. v. Cordis Corp.*, D. Del., C.A. No. 03-027-SLR (June 30, 2005); *IMX, Inc. v. Lendingtree, LLC*, D. Del., C.A. No. 03-1067-SLR (Jan. 20, 2006).

**4.4    ANTICIPATION BY PRINTED PUBLICATION OR A PRIOR PATENT[8]**

TeleCheck, ECHO, and Nova contend that the asserted claims of the '988 patent are invalid because they are anticipated by certain prior patents or publications.  An invention that is "anticipated" by such prior art is not entitled to patent protection because the invention is not new.  A party challenging the validity of a patent must prove anticipation by clear and convincing evidence.

For an asserted patent claim to be anticipated by such prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication or a prior patent.  You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

There must be no difference between the limitations of the asserted claims and the features of the prior art.  A prior art disclosure that almost meets the claim does not anticipate. In order to anticipate, the prior art must enable one skilled in the art to practice the invention such that it is available to the public.

In deciding whether a single item of prior art anticipates a patent claim, you should consider both that which is expressly stated or present in the item of prior art, and also that which is inherently present.  Something is inherent in an item of prior art if it is necessarily present in the art.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005.)

---

[8] TeleCheck, ECHO, and Nova disagree with this instruction in its entirety and have proposed the anticipation instruction that immediately precedes this one.

### 4.5     ON-SALE BAR[9]

TeleCheck, ECHO, and Nova also contend that the asserted claims are invalid because of the on-sale bar.  It is against public policy to allow an inventor to commercially exploit his invention by selling or offering it for sale more than one year before the effective filing date of the patent, because this would have the effect of extending the term of the patent as fixed by Congress.

Thus, the on-sale bar applies when: (i) an embodiment of the patent is the subject of a commercial offer for sale more than one year before the effective patent application date; and (ii) the invention was ready for patenting at that time.  In this case, the parties dispute the effective patent application date.  Defendants contend that the effective patent application date is June 8, 1994.  Under Defendants' effective patent application date, the '988 patent is invalid if you find that the invention claimed in the patent was "on sale" before June 8, 1993.  LML contends that the effective patent application date is November 13, 1992.  Under LML's effective patent application date, the '988 patent is invalid if you find that the invention claimed in the patent was "on sale" before November 13, 1991.

If you find that such offers for sale were made, then the responsibility shifts to LML to prove that the offers were for an experimental use or did not involve completely functional machines or processes.

---

9 LML disagrees that on-sale bar is an issue in this case and does not believe this instruction should be included.

Based on:   Proposed Uniform Jury Instructions for Patent Cases in the United States District
Court for the District of Delaware, 2004; 2003 DSBA IP Section Model Patent Jury Instruction
Subcommittee; 35 U.S.C. § 102(b); *Pfaff* v. *Wells Elecs., Inc.*, 525 U.S. 55 (1998); *Special
Devices,* Inc. v. *OEA, Inc.*, 270 F.3d 1353 (Fed. Cir. 2001); 1993 District of Delaware
Instructions; *Pechiney Rhenalu* v. *Alcoa, Inc.*, C.A. No. 99-301-SLR (Jan. 18, 2001); *Linear
Technology Corp.* v. *Micrel, Inc.*, 275 F.3d 1040, 2001 WL 1669382 (Fed. Cir. 2001).

### 4.6     ON-SALE BAR - COMMERCIAL OFFER FOR SALE[10]

In order for there to be an offer for sale, two requirements must be met: (i) the product must have been the subject of a commercial offer for sale; and (ii) the product must be "ready for patenting."

To establish a commercial offer for sale, TeleCheck, ECHO, and Nova must demonstrate that there was a definite sale or offer for sale in the United States more than one year before the effective patent application date, and that the subject matter of the sale or offer for sale anticipated the claimed invention, or would have rendered the claimed invention obvious in combination with prior art.

A commercial offer for sale occurs when an offer can be accepted in order to make a binding contract. Determining if a commercial offer has been made requires looking closely at the language of the proposal itself and the interaction between the parties.

An invention is ready for patenting either through a reduction to practice or by proof that the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.

A single sale or even a single offer to sell primarily for profit, rather than for experimental purposes, is sufficient to trigger the on-sale bar, even if the offer is not accepted.

---

10  LML disagrees that on-sale bar is an issue in this case and does not believe instructions related to the on-sale bar should be included. However, if the instruction 4.5 is included, instruction 4.6 should also be included. The parties provide their respective edits if instruction 4.6 is included.

Based on:  Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004; 2003 DSBA IP Section Model Patent Jury Instruction Subcommittee; 35 U.S.C. § 102(b); *Pfaff* v. *Wells Elecs., Inc.*, 525 U.S. 55 (1998); *Special Devices,* Inc. v. *OEA, Inc.*, 270 F.3d 1353 (Fed. Cir. 2001); 1993 District of Delaware Instructions; *Pechiney Rhenalu* v. *Alcoa, Inc.*, C.A. No. 99-301-SLR (Jan. 18, 2001); *Linear Technology Corp.* v. *Micrel, Inc.*, 275 F.3d 1040, 2001 WL 1669382 (Fed. Cir. 2001).

### 4.7    ON-SALE BAR - EXPERIMENTAL USE EXCEPTION[11,12]

The law recognizes that it is beneficial to permit the inventor the time and opportunity to develop his invention.  As such, there is an "experimental use" exception to the on-sale bar.

TeleCheck, ECHO, and Nova must demonstrate that a sale or offer for sale occurred before the critical date. If they can carry their initial burden, LML must come forward with evidence that the experimental use exception applies.  At all times, however, the burden of persuasion remains with Defendants.

An experimental use is one performed to perfect or complete an invention to the point of determining that it will work for its intended purpose as stated in the patent.  Any commercial exploitation that is not incidental to the primary purpose of experimentation is not an experimental use, even if the invention was still in its experimental stage.  However, experimental use ends with a reduction to practice.

To determine whether a sale or offer for sale constitutes an experimental use rather than a commercial use, you may consider a variety of factors, including whether:

---

[11] LML disagrees that on-sale bar is an issue in this case and does not believe instructions related to the on-sale bar should be included.  However, LML has proposed this instruction should the issue go to the jury.

[12] LML never raised experimental use prior to seeking this jury instruction and TeleCheck, ECHO, and Nova do not believe such an instruction is warranted even if on-sale bar is an issue in this case.

1.      The invention reasonably required evaluation under the actual conditions of intended use;

2.      Records of the testing were kept during the experimentation process;

3.      All the test results were reported back to the inventors and the inventors kept records of those results;

4.      The product was subjected to destructive testing; that is, testing in which the product sample was entirely or partially destroyed;

5.      There is a custom in the industry of having customers conduct testing on behalf of the inventor;

6.      The patentee was simultaneously engaged in other activities to commercially exploit the invention;

7.      Payment was made for the product that was tested;

8.      There was an obligation of confidentiality between the parties; and

9.      The inventor conducted or controlled the testing.  Inventor control is an important but not determinative factor.

Testing a product in order to determine whether it is suitable for a particular customer application is not an experimental use that will avoid the on-sale bar.  Rather, for the experimental use exception to apply, the testing must be to determine whether the product will work for its intended purpose as stated in the patent claims.

Based on:   Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004

## 4.8    OBVIOUSNESS

TeleCheck, ECHO, and Nova also contend that the asserted claims are invalid as being obvious.  In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made.

The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made without the teachings of the patent in suit.

In determining obviousness or nonobviousness of the claimed subject matter of the asserted claim, the following steps should be taken by you:

First, you should determine the scope and content of the prior art;

Second, you should identify the differences between the asserted claim and the prior art;

Third, you should determine the level of ordinary skill in the pertinent art at the time the claimed invention was made; and

Fourth, you should consider objective evidence of nonobviousness, if any which I will explain in further detail in a few minutes.

Against this background, and without using hindsight, you will make your decision as to whether the claimed subject matter would have been either obvious or nonobvious to a person of ordinary skill in the pertinent art at the time the invention was made.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

### 4.9     OBVIOUSNESS - SCOPE AND CONTENT OF THE PRIOR ART

In arriving at your decision on the issue of whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art was reasonably pertinent to the particular problem with which the inventor was faced. The scope and content of the prior art includes references that would be considered by a person with ordinary skill in the art to solve a particular problem. A person of ordinary skill in the art knows of all such references.

In considering whether a claim is obvious, you should also consider the categories of prior art identified previously in the Prior Art section.

Based on: Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004; *Boston Scientific Corp. v. Cordis Corp.*, D. Del., C.A. No. 03-027-SLR (June 30, 2005).

### 4.10     OBVIOUSNESS - DIFFERENCES OVER THE PRIOR ART

In reaching  your conclusion as to whether or not the claimed invention was obvious, you should consider the difference or differences between the prior art and the claimed invention. When doing so, each claim must be considered in its entirety and separately from the other claims.

Although it is proper for you to note the differences between the claimed invention and the prior art, you must still determine the obviousness or nonobviousness of the invention as a whole.

The fact that the claimed invention incorporates or combines elements already known in the prior art, in and of itself, does not render the claim obvious.  If you find that that individual limitations of an asserted claim are present in the art, you must further determine whether it would have been obvious to a person of ordinary skill in the art to combine or modify the prior art elements in the same manner as that asserted in the claim.[13]

For the prior art to suggest the invention of a claim, it is not necessary that one of ordinary skill in the art, looking at the prior art, could predict with certainty that the invention of the claim would be successful.  Rather, it is sufficient that the prior art would have suggested to one of ordinary skill that the invention of the claim would have a reasonable likelihood of success.

---

[13] While LML does not believe either contested paragraph is necessary to this instruction, LML objects to Defendants' proposed additional paragraph as incomplete.  If the Court is inclined to include such a paragraph, the complete instruction from *Boston Scientific* should be included.

Based on:  Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004; *Boston Scientific Corp. v. Cordis Corp.*, D. Del., C.A. No. 03-027-SLR (June 30, 2005).

## 4.11    OBVIOUSNESS - LEVEL OF ORDINARY SKILL

Next, you are to determine the level of ordinary skill in the art to which the claimed

invention pertains at the time the claimed invention was made.  Factors to be considered in

determining the level of ordinary skill in the pertinent art include the educational level of the

inventors, the types of problems encountered in the art, the prior art patents and publications, the

activities of others and prior art solutions to the problems encountered by the inventors, the

sophistication of the technology and the education of others working in the field.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D.
Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-
SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United
States District Court for the District of Delaware, 2004.

## 4.12    OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS

## (SECONDARY CONSIDERATIONS)

Before reaching a conclusion as to whether a claim is obvious or non-obvious, you must consider "objective evidence" of nonobviousness, if present.  Examples of this type of "objective evidence" may include:

1.  a long felt need in the art which was satisfied by the inventions of the '988 patent

2.  praise of the claimed invention by people in the field;

3.  the failure of others to solve the problem solved by the claimed invention;

4.  commercial success, or lack of commercial success, of products covered by the '988 patent;

5.  copying of the invention by people in the field; and

6.  the taking of a license under the patent by others.

There must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the service other than those in the asserted claims, then any commercial success may have no relation to the issue of obviousness.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

## 4.13    OBVIOUSNESS - HINDSIGHT

Obviousness is determined by comparing the prior art to the asserted claims; therefore, it is not improper to review the asserted claims at the start of the obviousness inquiry.  However, a determination of obviousness cannot be based upon the hindsight combination of prior art, despite the strong temptation to rely on hindsight while undertaking this evaluation.  It is wrong to use each asserted claim as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the asserted claims.  The teachings of different prior art references may only be combined if the prior art as a whole teaches, suggests or motivates such a combination.  A suggestion to combine references may also flow from the nature of the problem or from the ordinary knowledge of those skilled in the art that certain references are of special importance.  If the prior art references as a whole do not expressly teach, suggest, or motivate that combination, then they may not be combined.  The mere fact that the prior art can be modified does not make the modification obvious unless the prior art suggests the desirability of the modification.


Based on:  Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004; *Boston Scientific Corp. v. Cordis Corp.*, D. Del., C.A. No. 03-027-SLR (June 30, 2005); *IMX, Inc. v. Lendingtree, LLC*, D. Del., C.A. No. 03-1067-SLR (Jan. 20, 2006).

## 4.14    OBVIOUS TO TRY

The evidence might indicate to you that what the inventor did was obvious to try. Even if this were the case, this does not indicate the asserted claim is invalid for obviousness. "Obvious to try" is not the standard. The test is whether the claimed invention as a whole would have been obvious to those of ordinary skill in the art at the time the invention was made.

Based on: Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

### 4.15    INDEPENDENT INVENTION BY OTHERS[14]

In reaching your determination on the issue of obviousness, you should consider whether the subject matter of the invention was also invented independently by other persons, either before the inventors of the `988 patent or at about the same time.  Just as the failure of others to make the invention can be evidence of nonobviousness, independent making of the invention by persons other than the inventors prior to or about the same time can be evidence that the invention would have been obvious.

The simultaneous or near simultaneous invention by two or more persons working independently may or may not be an indication of obviousness when considered in light of all the circumstances.

Based on:  *IMX, Inc. v. Lendingtree, LLC*, D. Del., C.A. No. 03-1067-SLR (Jan. 20, 2006).

---

[14] LML does not believe that this instruction should be included because Defendants never disclosed independent invention by others as part of their obviousness defense during discovery.

## 4.16    ENABLEMENT

TeleCheck, ECHO, and Nova contend the asserted claims of the '988 patent are invalid because the patent specification lacked an enabling disclosure.  Defendants bear the burden of proving lack of enablement by clear and convincing evidence.  Patent law requires that the disclosure or written description portion of a patent be sufficiently detailed to enable those skilled in the art to practice the invention. The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the invention.

To prove that an asserted claim is invalid for lack of enablement, Defendants must show by clear and convincing evidence that the '988 patent does not enable one of ordinary skill in the art to practice the claimed invention without undue experimentation.  Because descriptions in patents are addressed to those skilled in the art to which the invention pertains, an applicant for a patent need not expressly include information that is commonly understood by persons skilled in the art.  Similarly, a patent need not contain a working example so long as the patent discloses enough information to enable a person of ordinary skill in the art to practice the invention. Moreover, the fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that the specification is not enabling.  A specification is enabling so long as undue experimentation is not needed.

In determining whether undue experimentation is needed you should weigh a number of factors, including:  (1) the quantity of experimentation necessary; (2) the amount of direction or guidance presented; (3) the presence or absence of working examples; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in that art; (7) the predictability or unpredictability of the art; and (8) the breadth of the claims.  A permissible

amount of experimentation is that amount that is appropriate for the complexity of the field of

invention and for the level of expertise and knowledge of persons in that field.


Based on:  Proposed Uniform Jury Instructions for Patent Cases in the United States District
Court for the District of Delaware, 2004; *ArthroCare* v. *Smith & Nephew*, D. Del., C.A. 01-504
(SLR) (May 9, 2003).

## 4.17    WRITTEN DESCRIPTION

TeleCheck, ECHO, and Nova contend that the asserted claims  of the '988 patent are invalid because they lack an adequate written description.  Defendants bear the burden of proving lack of an adequate written description by clear and convincing evidence.  The patent law requires that a patent application contain an adequate written description of the invention to ensure that the inventor was in possession of the invention at the time the patent application was filed.

The specification and claims as originally filed must convey to persons of ordinary skill in the art that the inventor had invented the subject matter that is spelled out in the claims that ultimately issued as a patent.  The description must be sufficiently clear that persons of ordinary skill in the art will recognize that the applicant made the invention having each of the limitations described in the claims.

That is, to prove a claim invalid for lack of an adequate written description, Defendants must prove by clear and convincing evidence that the patent application does not reasonably convey to a person of ordinary skill in the art that the inventors had possession of the invention (at the time of the application) as that invention was finally claimed in the issued patent.  No particular form of written description is required.

Based on:  Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

## 4.18   PRIOR INVENTION[15]

TeleCheck, ECHO, and Nova contend that the '988 patent is invalid because a person invented the invention before the patentee did.

In the United States, a patent is awarded to the first inventor.  A patent claim is invalid if: (i) the invention defined by that claim was invented by another person in the United States, before it was invented by the patentee; and (ii) that other person did not abandon, suppress, or conceal the invention.

A party abandons, suppresses or conceals the invention if, after reducing the invention to practice, the party unreasonably delays making the invention public, selling it or otherwise using it for a commercial purpose.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor.  An invention is reduced to practice either when a patent application is filed with an enabling disclosure or when the invention is actually made and is shown to work for its intended purpose.  Thus, if another person reduces to practice an invention before the inventor on the patent, then the invention reduced to practice by the other person generally will be prior art.

Based on:  2003 DSBA IP Section Model Patent Jury Instruction Subcommittee; 35 U.S.C. §§ 102, 151; *Dow Chemical Co.* v. *Astro-Valcour, Inc.*, 267 F.3d 1334, 1342 (Fed. Cir. 2001); *Singh* v. *Brake*, 222 F.3d 1362 (Fed. Cir. 2000); *Checkpoint Systems,* Inc. v. *U.S. Intern. Trade*;

---

[15] LML disagrees that this is an issue in the case and does not believe this instruction should be included.  However, LML has proposed changes to the instruction should the issue go to the jury.

*Comm'n*, 54 F.3d 756, 761-63 (Fed. Cir. 1995); *Eaton* v. *Rockwell*, C.A. No. 97-421-JJF (June 30, 1998); *Arigenetics* v. *Monsanto, et al.*, C.A. No. 96-505-RRM (Jan. 30, 1998); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

## 4.19    INDEFINITENESS[16]

TeleCheck, ECHO, and Nova contend that the asserted claims of the `988 patent are invalid for indefiniteness.  The patent laws require the claims of a patent to be sufficiently definite so that one skilled in the art can determine the scope of the claimed invention.  To establish indefiniteness, TeleCheck, ECHO, and Nova must prove by clear and convincing evidence that the claims, when read in light of the specification, do not reasonably apprise those skilled in the art of the scope of the invention.

The amount of detail required to be included depends on the particular invention and the prior art, and is not evaluated in the abstract but in conjunction with the disclosures.  If the claims, read in light of the disclosures, reasonably apprise those skilled in the art of the proper scope of the invention, then the claims are not indefinite.

Simply because some claim language may not be precise does not automatically render a claim invalid.  Patentable inventions cannot always be described in terms of exact measurements, symbols or formulas.  For instance, patentees can use terms such as "substantially" or "about" when defining their invention.  Claims do not have to be plain on their face or be as precise or specific as they might possibly be drafted, so long as the meaning of the claim is discernible.

---

[16] Indefiniteness is a matter of law and, therefore, is not an issue for the jury and should not be included in these instructions.  *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims."); *Praxair, Inc. v. ATMI, Inc.*, 2005 WL 3159054, *2 (D. Del. Nov. 28, 2005) (Robinson, J.) (holding that claims are definite, as a matter of law, because the Court was able to construe the limitation at issue). Indeed, the definiteness instruction that appeared in the 1993 District of Delaware Instructions was deleted from the 2004 Instructions   *See* Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004 at p.35.

Compliance with the definiteness requirement depends on what one skilled in the art would determine to be the bounds of the claims in light of the specification. Even if one skilled in the art needed to experiment so as to determine the limits of the claims of the patents that would not necessarily be a basis for holding the claims invalid.

One type of indefiniteness is when a patent system claim includes a method step. Such claims may be indefinite because one skilled in the art would not be able to determine whether infringement would be found based only on the structure of the accused system, or instead was based on how the system was used.

If you find that TeleCheck, ECHO, and Nova have proven by clear and convincing evidence that an asserted claim of the `988 patent is not definite enough that a skilled person reading them knows what is covered by the claim and what is not then you must find that claim invalid.

Based on: *ArthroCare* v. *Smith & Nephew*, D. Del., C.A. 01-504 (SLR) (May 9, 2003); *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, No. 05-1009, 05-1487, 2005 WL 3097877 (Fed. Cir. Nov. 21, 2005).

## DAMAGES

**5.1     COMPENSATORY DAMAGES IN GENERAL**

If you have determined that either TeleCheck, ECHO, or Nova have infringed any of the asserted claims, and have further determined that those asserted claims are valid, then you must next determine the damages to be awarded to LML by that Defendant. The patent laws provide that, in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringing party. Damages are compensation for all losses suffered as a result of the infringement.

Whether TeleCheck, ECHO, or Nova have benefited from, realized profits from, or even lost money as a result of the acts of infringement is not the measure of damages. The only issue is the amount necessary to adequately compensate the patentee for the infringement. Adequate compensation should return LML to the position it would have occupied had there been no infringement.

Based on:   Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

## 5.2    FORESEEABIILTY

The fact that TeleCheck, ECHO, and Nova did not foresee that they would cause LML's

damage at the time they infringed is irrelevant to the computation of damages.

Based on:  Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

### 5.3    REASONABLE CERTAINTY

Once the fact of damages has been proven by a finding of infringement, you must determine the extent of damages.  Under the patent law, LML is entitled to all damages that can be proven with "reasonable certainty."  Reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages does not preclude awarding LML damages.  You may base your evaluation of "reasonable certainty" on opinion evidence.  On the other hand, LML is not entitled to speculative damages; that is, you should not award any amount for loss, which although possible, is wholly remote or left to conjecture and/or guess.

Any doubts regarding the computation of the amount of damages should be resolved in favor of LML and against TeleCheck, ECHO, and Nova.

Based on:  Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

**5.4     REASONABLE ROYALTY AS A MEASURE OF DAMAGES**

LML is seeking a reasonable royalty as its measure of damages.  A reasonable royalty in this case is the amount of money that represents the value of the claimed inventions to the parties and represents fair compensation for use of the claimed invention.

A reasonable royalty is the minimum permissible measure of damages and is not necessarily the actual measure of damages but is merely the floor below which damages should not fall.  Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so warrant.

One of the factors in determining the value of the claimed invention is the royalty that would be agreed to in a hypothetical arms-length negotiation between LML and TeleCheck, ECHO, and Nova, with both operating under the assumption that the negotiated patent is valid and is being infringed.

In determining a reasonable royalty, you should place yourself in the period of time during which the hypothetical arms-length negotiation would have occurred between LML and TeleCheck, ECHO, and Nova.  This is typically just before the infringement began.  For TeleCheck, that would have been on or about September 1997 .  For Nova, that would have been on or about January 2003.  For ECHO, that would have been on or about April 2000.

You should also assume that both LML and TeleCheck, ECHO and NOVA knew all pertinent information at the time of the hypothetical negotiation.

- 63-

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for TeleCheck's, ECHO's and NOVA's use of the patented invention, including the opinion testimony of experts.

Based on:  Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); *AIPLA Model Patent Jury Instructions,* Patent Damages Nos. 17 & 19 (1998); *Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1574 (Fed. Cir. 1988) (stating that a reasonable royalty is the floor).

## 5.5     THE HYPOTHETICAL NEGOTIATION[17]

In the hypothetical arms-length negotiation, you must assume that the person negotiating on behalf of each Defendant, and who was willing to take a license, would have known that LML's patent was valid, was enforceable, and was infringed. You should also assume that both LML and each Defendant knew all pertinent information at the time of the hypothetical negotiation. You can and should also consider events and facts that occurred after the date of the hypothetical negotiation even if those events could not have been known to or predicted by the hypothetical negotiators. This is called the "Book of Wisdom" and it should be considered in assessing damages.

Having that in mind, you may consider any relevant facts in determining the reasonable royalty for each Defendant's use of the patented invention, including the opinion testimony of experts.

Based on:  Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004*; Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 378 F. Supp. 2d 459, 465 (D. Del. 2005).

---

[17] This instruction is redundant of the immediately preceding instruction "Reasonable Royalty as a Measure of Damages."

**5.6    FACTORS FOR DETERMINING REASONABLE ROYALTY**

In determining a reasonable royalty, some of the factors that may be considered are:

1.    The royalties received by LML for licensing others under the '988 patent;

2.    The rates paid by TeleCheck, ECHO, and Nova for the use of other patents comparable to the '988 patent;

3.    The nature and scope of the license, as exclusive or non-exclusive; or as restricted or nonrestricted in terms of territory;

4.    Whether LML had an established policy and marketing program to maintain its patent exclusively by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.    The commercial relationship between LML and TeleCheck, ECHO, and Nova, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventors or promoters;

6.    The effect of selling the patented specialty in promoting sales of other services of TeleCheck, ECHO, and Nova;

7.    The duration of the '988 patent and the term of the licenses;

8.    The established profitability of the product made under the patent, its commercial success, and its current popularity;

9.    The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for working out similar results;

- 66-

10.     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by LML, and the benefits to those who have used the invention;

11.     The extent to which TeleCheck, ECHO, and Nova have made use of the invention, and any evidence probative of the value of that use;

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.     The portion of the realizable profit that should be credited to the invention as distinguished from nonpatented elements, business risks, or significant features or improvements added by TeleCheck, ECHO, and Nova;

14.     The opinion testimony of qualified experts; and

15.     Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

Based on:  Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

**5.7     CLOSING STATEMENT - DAMAGES**

In determining the issue of damages, the Court instructs you that the law does not permit an award of a greater sum than the monetary loss which LML has suffered as a result of the alleged infringement. If, under the Court's instructions, you find that LML is entitled to damages, you may not include and/or add to an otherwise just award any sum for purposes of punishing TeleCheck, ECHO and/or Nova or to set an example.

Based on:  *IMX, Inc. v. Lendingtree, LLC*, D. Del., C.A. No. 03-1067-SLR (Jan. 20, 2006).

## 5.8     CURATIVE INSTRUCTION

The fact that I have instructed you regarding damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of LML.


Based on: *IMX, Inc. v. Lendingtree, LLC*, D. Del., C.A. No. 03-1067-SLR (Jan. 20, 2006).

## DELIBERATION AND VERDICT

### 6.1     INTRODUCTION

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a  piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this court is the juror seated in the first seat, first row.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your vote.  For example, do not write down or tell anyone that you are split 4-4 or 6-2, whatever your vote happens to be.  That should stay secret until you are finished.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004.

## 6.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are judges - judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  The verdict form asks you a series of questions about LML's claims of infringement and TeleCheck's, ECHO's, and Nova's claims of invalidity.  Unless you are directed otherwise in the form, you must answer all of the questions posed and you all must agree on each answer.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.  It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United

States District Court for the District of Delaware, 2004; *Boston Scientific Corp. v. Cordis Corp.*, D. Del., C.A. No. 03-027-SLR (June 30, 2005).

## 6.3     DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that - your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

If you did not take notes, you should rely upon your own memory of what was said and not be overly influenced by the notes of other jurors.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 4:30.  If we do not hear from you by 4:30, I will be sending a note into you to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and resume your deliberations tomorrow morning.  You will need to respond in writing to that question.

I am going to remind you now, if you go home this evening and resume your deliberations tomorrow, although you can talk about the case in the jury room, you can only talk when you are all present and participating.  And when you go home, you are still not to talk about the case among yourselves or with anyone else.  You are only supposed to talk about the case while you all are in the jury room.

So if you do go this evening, keep that instruction in mind.  Unless I hear from you that you have a different schedule in mind, I will expect you all to come back tomorrow morning at 9:30, unless you reach a verdict today.  If you are recessing for the evening and coming back in the morning, again, you are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 1:00 and 2:00 to step away from the phone. So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question between 1:00 and 2:00, you probably will not get an answer back right away because we are all going to be stepping away from our phones for a few minutes.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D. Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, 2004; *Boston Scientific Corp. v. Cordis Corp.*, D. Del., C.A. No. 03-027-SLR (June 30, 2005).

- 74-

### 6.4    COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have

said or done during this trial was meant to influence your decision in any way.  You must decide

the case yourselves based on the evidence presented.

Based on:  Charge to the Jury, *Praxair, Inc. v. ATMI, Inc.*, Civil Action No. 03-1158-SLR (D.
Del. Dec. 7, 2005); Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, Civil Action No. 03-1067-
SLR (D. Del. Jan. 20, 2006); Proposed Uniform Jury Instructions for Patent Cases in the United
States District Court for the District of Delaware, 2004.